**DANIEL A. CROLEY** (SBN: **154386**)
FUTTERMAN DUPREE DODD CROLEY MAIER LLP
601 Montgomery Street, Suite 333
San Francisco, California 94111
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
Email: dcroley@fddcm.com

*Attorneys for Defendant*
Anthony Nino Giarratano

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, and JOHN DOE 12, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, THE UNIVERSITY OF SAN FRANCISCO, ANTHONY N. (AKA NINO) GIARRATANO, and TROY NAKAMURA,<br><br>*Defendants.* | Case No.: 3:22-cv-01559-LB<br><br>**DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[**Fed. R. Civ. P. 12(b)(6) and 12(e)**]<br><br>Date:     December 8, 2022<br>Time:    9:30 a.m.<br>Judge:   Hon. Magistrate Laurel Beeler<br><br>Amended Complaint Filed: July 15, 2022 |

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

## **TABLE OF CONTENTS**

NOTICE OF MOTION …….……………………………………………………………….....1

STATEMENT OF RELIEF SOUGHT ……………………………………………………...1

PREFACE TO MOTION TO DISMISS …………...…………………………………….....1

MEMORANDUM OF POINTS AND AUTHORITIES ……………………………….…....2

      I.     INTRODUCTION ……...……………………………………………………….2

      II.    PLAINTIFFS' ALLEGATIONS AGAINST GIARRATANO  ……………....…3

      III.   ARGUMENT……………………………………………………………………...4

            A.    The Claims of Plaintiffs John Doe Nos. 4-12 Are Barred
                  by the Statute of Limitations..……………………………………………..4

            B.    Plaintiffs' Claim for "Gross Negligence" Should Be
                  Dismissed, Because California Law Does Not Recognize
                  Such a Claim and It Is Duplicative of Plaintiffs'
                  General Negligence Count …..…………………………….…………...8

            C.    Plaintiffs Fail to Allege Facts Sufficient to State a
                  Claim for Negligent Infliction of Emotional Distress ……………….….8

            D.    Plaintiffs Fail to Allege Facts Sufficient to State a
                  Claim for Intentional Infliction of Emotional
                  Distress……………………………………………………………………11

CONCLUSION ...…………………………………………………………………….…....14

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

i

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

## TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................... 4

*Belen v. Ryan Seacrest Productions,*
    65 Cal.App.5th 1145 (2021) ..................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007)........................................................................................... 4

*Burgess v. Superior Court,*
    2 Cal.4th 1064 (1992) ................................................................................................ 9

*Casanova v. UIlibarri*,
    595 F.3d 1120 (2010) ................................................................................................ 1

*Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.,*
    947 F.3d 342 (6th Cir. 2020) ................................................................................... 11

*Christensen v. Superior Court,*
    54 Cal.3d 868 (1991) ............................................................................................ 9, 11

*Dahlia v. Rodriguez*,
    735 F.3d 1060 (9th Cir. 2013) ................................................................................... 4

*Eclectic Prop. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ..................................................................................... 4

*Eriksson v. Nunnink*,
    191 Cal.App.4th 826 (2011) ...................................................................................... 8

*Falamore, Inc. v. Edison Bros. Stores, Inc.*,
    525 F. Supp. 940 (E.D. Cal. 1981) ........................................................................... 1

*Fletcher v. Western National Life Ins. Co.*,
    10 Cal.App.3d 376 (1970) ....................................................................................... 13

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (2005) ........................................................................................... 6, 7

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

ii

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

*Friedman v. Merck & Co.*,
    107 Cal. App. 4th 454 (2003) ................................................................................................8

*Geertz v. Ausonio*,
    4 Cal.App.4th 1363 (1992) ...................................................................................................7

*Grappo v. McMills*,
    11 Cal. App. 5th 996 (2017) .................................................................................................8

*Gu v. BMW of North America, LLC*,
    132 Cal.App.4th 195 (2005) ...............................................................................................10

*Gutierrez v. Mofid*,
    39 Cal.3d 892 (1985)........................................................................................................6, 7

*Hughes v. Pair*,
    46 Cal.4th 1035, 1050 (2009) ............................................................................................11

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .............................................................................................4

*Janken v. GM Hughes Electronics*,
    46 Cal.App.4th 55 (1996) ..................................................................................................13

*Jolly v. Eli Lilly & Co.*,
    44 Cal. 3d 1103 (1988) ........................................................................................................6

*Malaivanh v. Humphreys College*,
    No. 2:16-cv-01081-KJM-GGH (E. D. Calif., 2017)............................................................5

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*,
    48 Cal.3d 583 (1989) ...........................................................................................................8

*Mills v. Forestex Co.*,
    108 Cal.App.4th 625 (2003) .................................................................................................7

*Molien v. Kaiser Foundation Hospitals*,
    27 Cal.3d 916 (1980) .......................................................................................................8, 9

*Norgart v. Upjohn Co.*,
    21 Cal. 4th 383 (1999) .........................................................................................................6

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

iii

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

*Ochoa v. Superior Court*,
    39 Cal.3d 159 (1985) ................................................................................................. 13

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal.4th 965 (1993) .................................................................................................... 9

*Purcell v. Tulane Univ. of La.*,
    2017 U.S. Dist. LEXIS 80903 (E.D. La. 2017) ........................................................ 11

*Ragan v. Merchs. Transfer & Warehouse Co., Inc.*,
    337 U.S. 530 (1949) ..................................................................................................... 5

*Ragland v. U.S. Bank National Assn.*,
    209 Cal.App.4th 182 (2012) ........................................................................................ 9

*Reamsnyder v. Jaskolski*,
    10 Ohio St. 3d 150 (Ohio 1984) ................................................................................ 13

*Rivera v. Peri & Sons Farms, Inc.*,
    735 F.3d 892 (9th Cir. 2013) ....................................................................................... 5

*Saenz v. Whitewater Voyages, Inc.*,
    226 Cal.App.3d 758 (1990) ......................................................................................... 8

*Sanchez v. South Hoover Hospital*,
    18 Cal.3d 94 101 (1976). ............................................................................................. 7

*Taissa & Ray Achcar-Winkels v. Lake Oswego Sch. Dist.*,
    2017 U.S. Dist. LEXIS 80404 (D. Or. 2017) ............................................................ 13

*Thing v. La Chusa*,
    48 Cal.3d 644 (1989) ................................................................................................... 9

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..................................................................................................... 1

**Statutes**

Cal. Code Civ. Proc. § 338(a) .......................................................................................... 5

Cal. Code Civil Proc. § 335.1 .......................................................................................... 5

California Education Code § 66270 ......................................................................... *passim*

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

iv

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

California Education Code § 220 .................................................................................................. 11, 12

**Other Authorities**

Restatement (Second) of Torts, § 46 cmt. d .......................................................................................... 10

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

v

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 8, 2022, at 9:30 a.m., before Magistrate Judge Laurel Beeler via a Zoom webinar. Defendant Anthony N. Giarratano will move for an order under Rule 12(b)(6) to dismiss certain claims alleged against him in Plaintiffs' First Amended Complaint ("Complaint" or "FAC") or, in the alternative, for a more definite statement under Rule 12(e). This motion is based on this Notice, the following Memorandum of Points and Authorities, all papers on file in this matter, and any authority or argument as may be presented in reply and at any hearing.

## STATEMENT OF RELIEF SOUGHT

Defendant Anthony N. Giarratano seeks an order under Rule 12(b)(6), dismissing all claims brought by Plaintiffs John Doe Nos. 4-12, on the ground, that these Plaintiffs' claims are barred by the statute of limitations.[1] In addition, Giarratano seeks an order dismissing the following counts as to all Plaintiffs, on the grounds of failure to state a claim: Count 7 (Gross Negligence); Count 10 (Intentional Infliction of Emotional Distress); and Count 11 (Negligent Infliction of Emotional Distress).

## PREFACE TO MOTION TO DISMISS

This case is driven by two factors. First, there are the sour grapes bunch: a handful of former University of San Francisco baseball players, who sued anonymously for no apparent reason, none of whom raised any complaints about the "atmosphere" of the USF baseball program until they were off the team. Of the more than 300 students Defendant Anthony N. Giarratano coached during his 26 years at USF, only these few – and principally Does 1-3 – have ever complained about how

---

[1] In the event this is not granted under 12(b)(6), he seeks an order under Rule 12(e) for a more definite statement alleging when each John Does last played for USF; while typically disfavored, such relief is appropriate here because Coach Nino is harmed each passing day these allegations remain in dispute, and he cannot adequately frame a response by anonymous players over a twenty-year period without this additional information. See *Falamore, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981). But see *Casanova v. Ullibarri*, 595 F.3d 1120 (2010) (stating rule Rule 12(e) is the "preferable procedure" to obtain a specific date in connection with the statute of limitations defense. Moreover, the Court retains wide authority to issue such an order as part of an amendment or by way of affidavit. *Warth v. Seldin*, 422 U.S. 490 (1975).

FUTTERMAN DUPREE DODD CROLEY MAIER LLP

1

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

he treated them. And their Complaint paints a completely false picture of these players' experience on the USF baseball team. For example, John Doe 2 alleges he visited the emergency room five times in the fall of 2021 but fails to state this was due to strep throat. Plaintiffs' allegations concerning the transfer rate from USF are also misleading, as they fail to acknowledge the impact of the COVID-19 pandemic on baseball, including curtailed recruiting by professional teams (with the MLB draft being compressed to five rounds of 150 selections instead of 20 rounds of 600); the NCAA extending player-eligibility by a year; and many seniors staying at the college level instead of turning pro. This meant roster challenges for every Division 1 baseball program in the country. The evidence in this case will show Giarratano did nothing wrong and treated these players appropriately, just like he has the hundreds of USF baseball players who came before them.

The second engine behind this lawsuit is the Plaintiffs' counsel, who apparently want to rewrite NCAA rules and obligations by going after not only the NCAA, but USF and its coaches, pleading a scandalous tale (in a 145-page Complaint) of decades-long misconduct at a prestigious Jesuit university. But that tale will not hold up to scrutiny, as it is contradicted by the evidence and common sense. The Complaint invents events and alleges conduct that never happened, and it disingenuously paints the Plaintiff players, who were all adults, as helpless victims of sex-based harassment, even though all of the players were male; the fact that Plaintiffs may have been criticized, even assuming yelled at, does not show unlawful discrimination. Sadly, after the unproven allegations in this lawsuit, Giarratano lost the coaching job he had held and loved for more than 26 years. Coach Giarratano has been severely wronged by this lawsuit and intends to vigorously defend his reputation from the Plaintiffs' absurd smears.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In this sweeping class action lawsuit, 12 anonymous former student-athletes who played baseball for the University of San Francisco ("USF") sued the university; the National Collegiate Athletic Association ("NCAA"); Giarratano, who is the former head coach of USF's baseball team; and former assistant USF baseball coach, Troy Nakamura. Plaintiffs, identified only as John Doe

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

2

Nos. 1-12 alleges that, while they were on the USF baseball team, they were subjected to "an intolerable sexualized environment" because of the misconduct of Nakamura. They claim Giarratano tolerated this behavior and also was "abusive" toward them. Plaintiffs purport to represent a class of former USF baseball players who, they allege, have been subjected to sexual harassment over the past 20 years.[2]

As to Giarratano, the Complaint suffers from several deficiencies. First, it is apparent from the face of the Complaint that the claims alleged by Plaintiffs John Doe Nos. 4-12 are barred by the applicable statutes of limitations. Second, Plaintiffs' Complaint fails to state a cause of action for "gross negligence," negligent infliction of emotional distress, or intentional infliction of emotional distress. Thus, the only claims that should survive against Giarratano are those brought by John Doe Nos. 1-3 for general negligence and negligent supervision of Coach Nakamura.

## II. PLAINTIFFS' ALLEGATIONS AGAINST GIARRATANO

Throughout their 148-page Complaint, Plaintiffs allege a litany of misconduct by former assistant coach Nakamura. See Dkt, [ECF 38], Complaint, ¶¶148-194. But the allegations against Giarratano, which are scattered throughout the Plaintiffs' pleading, show he was, at most, a bystander to Nakamura's misbehavior. Complaint, ¶¶ 6-7,154-184, 215. Plaintiffs allege Giarratano observed and tolerated Nakamura's behavior, laughing at Nakamura's antics; harshly criticized players, including for their abilities and their attitude; used foul language; and wouldn't give them playing time. *See, e.g.,* Complaint, ¶¶ 8, 155-157, 176, 210. Insofar as Plaintiffs allege sexually inappropriate conduct by Giarratano himself, the Complaint fails to allege any factual detail, including what Giarratano allegedly said or did or specific dates on which the offending behavior occurred.

Despite the lack of factual support, Plaintiffs allege the following causes of action against Giarratano: negligent supervision and retention of Coach Nakamura (Count 3, ¶¶511-520); Gross Negligence (Count 7, ¶¶541-551); Negligence (Count 8, ¶¶552-562); Intentional Infliction of

---

[2] Giarratano, aka "Coach Nino," was the head baseball coach at USF for more than 26 years. . USF terminated his employment on March 13, 2022, only two days after the Plaintiffs filed this lawsuit. Complaint, ¶¶16, 52.

Futterman Dupree
Dodd Croley
Maier LLP

3

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

Emotional Distress (Count 10, ¶¶569-578); and Negligent Infliction of Emotional Distress (Count 11, ¶¶579-587).

### III.  ARGUMENT

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court accepts factual allegations as true, this rule is "inapplicable to legal conclusions." *Id*. The Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The factual allegations must "rise above the speculative level" and do more than "create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555, 561 (citation and quotation mark omitted); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013). In making this determination, a court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. This analysis provides a critical gatekeeping function, because claims must be sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Eclectic Prop. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).

**A.  The Claims of Plaintiffs John Doe Nos. 4-12 Are Barred by the Statutes of Limitations**.

Plaintiffs allege two types of claims against Giarratano: common law tort claims for negligent supervision, general and "gross" negligence, and negligent and intentional infliction of emotional distress, arising under California law. All of these claims are brought "pursuant to California law." Complaint, ¶ 512 (negligent supervision); ¶542 (gross negligence), ¶553 (negligence), ¶570 (intentional infliction of emotional distress), and ¶580 (negligent infliction of emotional distress). California law therefore governs the applicable limitations period on these claims.[3] Jurisdiction over the state law claims is asserted under 28 USC 1367, under which the state

---

[3] When a "cause of action is created by local law, the measure of it is found only in local law. It

4

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

statute of limitations applies. *Malaivanh v.. Humphreys College*, No. 2:16-cv-01081-KJM-GGH (E. D. Calif., 2017), *citing Ragan v. Merchs. Transfer & Warehouse Co.*, Inc., 337 U.S. 530, 532 (1949) ("Erie's logic applies equally to supplemental jurisdiction cases: '[R]ights enjoyed under local law should not vary because enforcement of those rights was sought in federal court rather than in the state court'").

All of the common law tort claims are governed by California's two-year statute of limitation. Cal. Code Civil Proc. § 335.1 (two years for action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another). The original Complaint in this action was filed on March 11, 2022, meaning that any tort claims are barred if they accrued before March 11, 2020.

As to any Plaintiffs who were last coached by Giarratano outside the applicable limitation periods, their claims are time-barred as to Giarratano. This includes John Does 4-12, each of whom, according to the Complaint, left USF well before March 2020.[4] Complaint, ¶¶41-49. The only players whose claims appear to be within the limitations period are Does 1-3. Complaint, ¶¶38-39. This applies to all claims alleged against Giarratano in this case. A statute of limitations bar that appears on the face of the complaint is grounds for dismissal. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (a court may consider the statute of limitations issues that are "apparent on the face of the complaint" on a motion to dismiss).

The Complaint alleges the statute should be tolled for John Does 4-12, because they "did not discover that they had viable claims until March 11, 2022, when the San Francisco Chronicle published a story entitled '"Intolerable sexualized environment': Ex-USF baseball players sue

---

carries the same burden and is subject to the same defenses in the federal court as in the state court. It accrues and comes to an end when local law so declares." *Ragan v. Merchs. Transfer & Warehouse Co., Inc.*, 337 U.S. 530, 532 (1949).

[4] We note that nowhere in the Complaint do Plaintiffs allege any basis for tolling or extending the statutes of limitations as to Giarratano. There are no facts alleged to show any conduct by Giarratano that would operate to stop him from asserting a limitations defense, and a continuing violation theory will not apply to the kinds of claims alleged – i.e., harassment and other misconduct that happened, if at all, only while Plaintiffs were on the team. Plaintiffs' conclusory allegations of estoppel and tolling of the statutes of limitations relate only to USF and the NCAA and are insufficient to assert these theories against Giarratano. See Complaint, ¶¶454-465.

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

5

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

coaches, school, NCAA." Complaint, ¶463. But the delayed discovery doctrine does not and could not apply under the facts alleged.

Under California law, the statute of limitations "usually commences when a cause of action 'accrues,' and it is generally said that 'an action accrues on the date of injury.' *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988). Generally speaking, a cause of action accrues at "the time when the cause of action is complete with all of its elements." *Norgart v. Upjohn Co*., 21 Cal. 4th 383, 397 (1999). *See also Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th 797 (2005).

An exception to the general rule of accrual is the "discovery rule," which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. *Norgart*, 21 Cal.4th at 397. A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." *Norgart*, 21 Cal.4th at 398; *see also Gutierrez v. Mofid,* 39 Cal.3d 892, 897 (1985) ["the uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the facts essential to his claim"].) Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. *Norgart*, 21 Cal.4th at 398, fn. 3. *Norgart* explained that by discussing the discovery rule in terms of a plaintiff's suspicion of "elements" of a cause of action, it was referring to the "generic" elements of wrongdoing, causation, and harm. 21 Cal.4th at 397. In so using the term "elements," California courts do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, the courts look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them. *Id.*

The discovery rule only delays accrual until the plaintiff has, or should have, an inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have " ' "information of circumstances to put [them] on inquiry" ' " or if they have " ' "the opportunity to obtain knowledge from sources open to [their] investigation." ' " *Gutierrez v. Mofid*, supra, 39 Cal.3d at pp. 896–897,

Futterman Dupree
Dodd Croley
Maier LLP

6

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

*quoting Sanchez v. South Hoover Hospital,* 18 Cal.3d 94 101 (1976). In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation. *See also Fox v. Ethicon Endo-Surgery, Inc*, 35 Cal. 4th 797, 807-808 (2005). **There is no basis for applying the delayed discovery rule to extend the limitations period on Plaintiffs' claims. Given the nature of their claims, Plaintiffs could not have been ignorant of their alleged "injury."** Ignorance of the legal consequences of a tort is not sufficient to toll the statute of limitations, because the limitations period begins to run once plaintiff has notice or information of circumstances to put a reasonable person on inquiry." *Jolly*, supra, at pp. 1110-1111. "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id*. Here, plaintiffs clearly were on notice by the end of the event on which they relied (and certainly by the end of their last season) and had a duty of inquiry by that time.

Here, each Plaintiff would have known of all the events and circumstances that might support a claim against Coach Giarratano. Each, therefore, had a duty of inquiry by that time; the discovery rule uses an objective test that looks not to what the particular Plaintiffs actually knew but to what a reasonable inquiry would have revealed. *Geertz v. Ausonio* 4 Cal.App.4th 1363, 1369-1370 (1992); *Mills v. Forestex Co*. 108 Cal.App.4th 625, 649-650 (2003). Ignorance of the legal ramifications of the defendant's conduct is not "delayed discovery" under California law and cannot be used to toll the limitations period as Coach Nino.

  **B.**  **Plaintiffs' Claim for "Gross Negligence" Should Be Dismissed, Because California Law Does Not Recognize Such a Claim and It Is Duplicative of Plaintiffs' General Negligence Count**.

Count 7 of Plaintiffs' Complaint should be dismissed, because there is no cause of action for "gross negligence" under California law. "'California does not recognize a distinct cause of action for "gross negligence" independent of a statutory basis.'" *Grappo v. McMills*, 11 Cal. App.

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

7

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

5th 996, 1014 (2017). *See also Saenz v. Whitewater Voyages, Inc.,* 226 Cal.App.3d 758, 766, footnote 9 (1990) ("In reality, California does not recognize a distinct cause of action for 'gross negligence' independent of a statutory basis."); *Eriksson v. Nunnink*, 191 Cal.App.4th 826, 856, fn. 18 (2011) (same). Because this cause of action is not supported by California law, and because it is duplicative of Count 8 (negligence), it should be dismissed.

> C.  **Plaintiffs Fail to Allege Facts Sufficient to State a Claim for Negligent Inflection of Emotional Distress**.

Under California law, negligent emotional distress infliction is not an independent tort; rather, it is the tort of negligence to which the duty element applies. *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 463-64 (2003). "The traditional elements of duty, breach of duty, causation, and damages apply. Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability." *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 588 (1989) (internal citations omitted). The doctrine allows certain persons to recover damages solely for emotional distress on a negligence cause of action even though they were not otherwise injured or harmed. *See Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 928 (1980).

California law permits the recovery of emotional distress damages without physical injury in only two, limited circumstances. First, a plaintiff may recover if he is a "bystander" who suffered serious emotional distress as a result of perceiving an injury to or death of another. Recovery under this theory is limited to situations where the plaintiff had a close, family relationship with the injured person. "Absent exceptional circumstances, recovery should be limited to relatives residing in the same household, or parents, siblings, children, and grandparents of the victim." *Thing v. La Chusa*, 48 Cal.3d 644, 668, fn. 10 (1989). *See also Judicial Council of California Civil Jury Instructions* (2022 edition) *("CACI"),* Nos. 1620 (direct victim) and 1621 (bystander).

The other scenario is a "direct victim" case, in which the plaintiff's claim of emotional distress is based on the violation of a duty that the defendant owes directly to the plaintiff. *Ragland v. U.S. Bank National Assn.*, 209 Cal.App.4th 182, 205 (2012). The California Supreme Court has

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

8

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

allowed plaintiffs to recover damages as "direct victims" in only three types of factual situations: (1) the negligent mishandling of corpses (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 879); (2) the negligent misdiagnosis of a disease that could potentially harm another (*Molien, supra*, 27 Cal.3d at p. 923); and (3) the negligent breach of a duty arising out of a preexisting relationship (*Burgess v. Superior Court*, 2 Cal.4th 1064, 1076 (1992). Whether a defendant owes a duty of care is a question of law for the court rather than the jury to resolve. *Burgess, supra*, 2 Cal.4th at p. 1072. "'Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability.'" *Id.*

The California Supreme Court has held that "there is no duty to avoid negligently causing emotional distress to another." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993). As the Court explained in *Potter*, "[D]amages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff." 6 Cal.4th at p. 984. The independent duty may be imposed by law, assumed by the defendant, or exist by virtue of a special relationship between the parties. *Id*. at pp. 984-985. As the California Supreme Court:

> [U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. ***Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.***

6 Cal. 4th at 985 (internal citations omitted; emphasis added).

As to Giarratano, Count IX of Plaintiffs' Complaint fails to allege facts sufficient to state a claim for emotional distress caused by Giarratano's negligence. Complaint, ¶¶579-587. Their allegations are insufficient to state a claim under the "bystander" theory, as they do not allege they witnessed physical harm to a family member. Plaintiffs also do not allege any basis for claiming that any of them was a "direct victim" of negligence causing emotional distress, under any of the theories recognized by California law. They do not allege that Giarratano had a "special relationship" that imposed on him a duty to protect them from emotional distress. Instead, they allege that they and other players in the putative class were "in a specific zone of danger training

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

9

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

with Coach Defendants and at risk of physical harm, causing their fear." Complaint, ¶582. And no duty should be imposed on Giarratano, to protect these players – *who were all adults* – from harsh language or criticism that might hurt their feelings. It is a coach's job to critique players, to honestly assess the ones who can help the team win on the field, and to press them to perform. The allegations that Giarratano yelled at them about their abilities or attitudes are insufficient to show that Giarratano owed or breached a duty of care arising from a special relationship and therefore failed to state a claim for negligent infliction of emotional distress under the authorities cited above. This claim, therefore, should be dismissed.

There is no case in California finding a coach has a "special relationship" with a player, sufficient to impose a general duty on the coach to protect the player from negligence causing only emotional distress. As explained in *Gu v. BMW of North America, LLC,* 132 Cal.App.4th 195, 207 (2005), "the special relationships that our Supreme Court has deemed sufficient to give rise to a duty of care are clearly related to the plaintiff's mental or emotional well-being. Valid claims for negligent infliction of emotional distress have been found where the defendant breached the duty of care that arises in the physician-patient relationship [citations], as well as in the psychotherapist-patient relationship [citation], and in the relationship between a mortuary and the close relatives of the decedent for whose benefit the mortuary was to provide funeral services [citation]. In short, '[c]ases permitting recovery for emotional distress typically involve mental anguish stemming from more personal undertakings the traumatic results of which were unavoidable.'"

  **D.**  **Plaintiffs Fail to Allege Facts Sufficient to State a Claim for Intentional Infliction of Emotional Distress**.

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair,* 46 Cal.4th 1035, 1050 (2009). "A defendant's conduct is 'outrageous' when it is so ""extreme as to exceed all bounds of that usually tolerated in a civilized community."" [Citation.] And the defendant's conduct must be "'intended to inflict injury

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

10

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

or engaged in with the realization that injury will result.'" *Id.* at 050-1051. "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court,* 54 Cal.3d 868, 903 (1991).

Stripped of its invective and inflammatory language, the most Plaintiffs allege against Giarratano is that he was harshly critical of some players, used foul language, and tolerated Coach Nakamura's offensive behavior. There are no facts alleged to show that Giarratano did anything with the intent to cause injury to Plaintiffs or that his conduct was out of line with what other college coaches do to manage players on their team. *See, e.g., Purcell v. Tulane Univ. of La.*, 2017 U.S. Dist. LEXIS 80903 (E.D. La. 2017) (college coach's harsh criticism of player was insufficient to state a cause of action for intentional infliction of emotional distress under Louisiana law). Accepting the allegations as true as we must for this motion, Giarratano's behavior might have been rude, boorish, tyrannical, or mean, but that is not sufficient to support an IIED claim.[5]

The decision in *Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.,* 947 F.3d 342 (6th Cir. 2020), is helpful.  In this case under Title IX and Ohio common law, high school football players alleged their coach "harassed them by using numerous derogatory terms—most notably, the term "pussy"—with the intent to insult (and presumably to motivate) the two in front of their teammates." *Id*. The Sixth Circuit held the coach could not be liable for intentional infliction of emotional distress under Ohio law, because plaintiffs failed to show his conduct was so extreme and outrageous as to go beyond all possible bounds of decency or that their resulting mental anguish was so severe that no reasonable player could be expected to endure it. The Court found that the coach's "conduct was distasteful, and no doubt offensive to many. But as a matter of law, his conduct did not constitute sex-based discrimination, in violation of Title IX, nor was it conduct intolerable in a civilized society, in violation of Ohio tort law." 947 F.3d at 345.  The recognized "coaches push their players to achieve, often in the face of adversity" and, "[t]hrough their words and actions, many coaches push quite hard." *Id*.  The Court noted:

---

[5]  It is worth noting that Giarratano has coached hundreds of players during his career at USF and only these few have ever complained about his behavior – and they only did so after they were cut from or left the team for other reasons.

11

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

> Of course, Plaintiffs cannot be faulted for finding [coach] Frye's use of the term "pussy" offensive, even in a football setting. But crude or vulgar language alone does not rise to the level of a Title IX violation. After all, Title IX, like Title VII, is not a "general civility code." Plaintiffs may also be correct that Frye used the term as an assault on their masculinity. To Frye, the term was a vehicle for criticizing male athletes for not acting in an aggressive or "tough" manner. Yet the mere use of an offensive or gendered term does not in itself rise to the level of discrimination on the basis of sex. . . . Here, [coach] Frye's aim was to chide Plaintiffs for not acting with the forcefulness Frye believed was called for on the football field. . . . On the football field, where emotions and adrenaline can run high, it is not unheard of for coaches and players alike to use offensive or gendered language, especially in the heat of a game. Viewed in this light, Frye's conduct, while less than laudable, does not meet the high bar for severe, pervasive, and objectively offensive conduct.

947 F.3d at 350-52 (internal citations omitted). Analyzing the players' claim for intentional infliction of emotional distress, the Sixth Circuit held the coach's conduct was not "'so extreme and outrageous as to go beyond all possible bounds of decency,' let alone conduct "considered as utterly intolerable in a civilized community." *Id*. at 353. Even though the coach's comments were "offensive and inappropriate at best," the "are also not unheard of on the gridiron, where the foul-mouthed coach is something of an unfortunate cultural cliché. All things considered, Frye's statements were not 'utterly intolerable in a civilized community.'" *Id*. There is no liability for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *See* Restatement (Second) of Torts, § 46 cmt. d. *See also Reamsnyder v. Jaskolski*, 10 Ohio St. 3d 150, 10 Ohio B. 485, 462 N.E.2d 392, 394 (Ohio 1984) ("Hurt feelings caused by insults, threats, and other indignities are not "outrageous"); *Taissa & Ray Achcar-Winkels v. Lake Oswego Sch. Dist.*, 2017 U.S. Dist. LEXIS 80404 at *12 (D. Or. 2017) (coach's rude behavior toward student was not "extreme or outrageous" conduct).[6]

---

[6] California law is in accord. A cause of action for intentional infliction of emotional distress requires (1) extreme and outrageous conduct by [defendants] with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the [defendants'] outrageous conduct. [Citation.]" (*Belen v. Ryan Seacrest Productions, LLC* 65 Cal.App.5th 1145, 1164 (2021)) "Conduct is considered outrageous when it is "so extreme as to exceed all bounds of

FUTTERMAN DUPREE
DODD CROLEY
MAIER LLP

12

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB

Furthermore, even if Giarratano's conduct was extreme or outrageous, it is unreasonable to conclude that he was acting intentionally rather than negligently or recklessly. Absent evidence of conduct intended to cause the plaintiff harm, this cause of action will not lie. "It has been said in summarizing the cases discussing intentional infliction of emotional distress that 'the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is ***especially calculated to cause, and does cause, mental distress of a very serious kind***.' [Citations.] Here, although defendants' conduct did cause the plaintiffs untold distress, it is evident that the defendants acted negligently rather than with the purpose of causing the plaintiffs emotional distress." *Ochoa v. Superior Court*, 39 Cal.3d 159,165, fn. 5 (1985)(emphasis added).

Taken together, Plaintiffs' allegations of what Giarratano actually said and did do not rise to the level necessary to support a claim for intentional infliction of emotional distress.

## IV.  CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety, with prejudice, as to John Does 4 through 12 and dismissed as to John Does 1 through 3, with prejudice, as to Counts 7, 10 and 11.

Dated:  September 12, 2022

Respectfully submitted,

FUTTERMAN DUPREE DODD CROLEY MAIER LLP

By: ___/s/ Daniel A. Croley_____
     Daniel A. Croley
     *Attorneys for Defendant*
     Anthony Nino Giarratano

---

that usually tolerated in a civilized community." *Id*. "Severe emotional distress means, then, emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Fletcher v. Western National Life Ins*. Co., 10 Cal.App.3d 376, 397 (1970). "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Electronics,* 46 Cal.App.4th 55, 80 (1996).

FUTTERMAN DUPREE DODD CROLEY MAIER LLP

13

DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 3:22-cv-01559-LB