1   CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
    Carolyn.Luedtke@mto.com
2   MUNGER, TOLLES & OLSON LLP
    560 Mission Street, Twenty-Seventh Floor
3   San Francisco, CA 94105-2907
    Telephone: (415) 512-4000
4   Facsimile: (415) 512-4077

5   HAILYN J. CHEN (State Bar No. 237436)
    Hailyn.Chen@mto.com
6   BRANDON E. MARTINEZ (State Bar No. 318749)
    Brandon.Martinez@mto.com
7   ARIEL TESHUVA (State Bar No. 324238)
    Ariel.Teshuva@mto.com
8   APRIL YOUPEE-ROLL (State Bar No. 331761)
    April.Youpee-Roll@mto.com
9   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, Fiftieth Floor
10  Los Angeles, California 90071-3426
    Telephone: (213) 683-9100
11  Facsimile: (213) 687-3702

12  Attorneys for Defendant The National Collegiate
    Athletic Association

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

15

16

| | |
|---|---|
| 17   JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, and JOHN DOE 12, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-01559-LB **DEFENDANT THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |

17   JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,
18   JOHN DOE 4, JOHN DOE 5, JOHN DOE 6,
     JOHN DOE 7, JOHN DOE 8, JOHN DOE 9,
     JOHN DOE 10, JOHN DOE 11, and JOHN
19   DOE 12, individually and on behalf of all
     others similarly situated,

20                    Plaintiffs,

21         vs.

22   NATIONAL COLLEGIATE ATHLETIC
     ASSOCIATION, THE UNIVERSITY OF
23   SAN FRANCISCO, ANTHONY N. (AKA
     NINO) GIARRATANO, and TROY
24   NAKAMURA,

25                    Defendants.

Case No. 3:22-cv-01559-LB

**DEFENDANT THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

*[Filed Concurrently with Declaration of Kris Richardson in Support of Motion and Request for Application of the Incorporation by Reference Doctrine or Judicial Notice]*

Judge:  Hon. Magistrate Laurel Beeler
Trial Date:  None Set
Hearing Date: December 8, 2022
Hearing Time: 9:30 a.m.

26

27

28

# TABLE OF CONTENTS

Page

STATEMENT OF RELIEF SOUGHT ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................. 4

     A.     The NCAA and Its Relationship with Member Institutions ...................... 4

     B.     The University of San Francisco and Allegations Involving the Coach Defendants ........................................................................................... 5

III.    ARGUMENT ....................................................................................... 5

     A.     This Court Lacks Personal Jurisdiction over the NCAA. ......................... 5

     B.     Venue in This Court Is Improper as to the NCAA. ................................. 12

     C.     Does 4–12 Lack Standing to Seek Injunctive Relief. .............................. 14

     D.     The Claims of Does 4–12 Are Time-Barred. .......................................... 16

          1.     California Law Supplies the Relevant Limitations Periods. ...................... 16

          2.     The Claims of Does 4–12 Arose more than Four Years Ago. ................... 16

          3.     The Discovery Rule Does Not Revive the Claims of Does 4–12 .............. 17

          4.     Tolling Is Unwarranted. ...................................................................... 19

     E.     The NCAA Does Not Owe an Actionable Duty to Plaintiffs. ................... 21

          1.     Choice of Law for Direct Liability Negligence-Based Claims. ................. 21

          2.     Plaintiffs Fail to Establish the Required Duty to Plaintiffs. ..................... 23

              (a)    The NCAA Owes No Legally Actionable Duty of Care as a Matter of Law to Plaintiffs. ......................................................... 23

              (b)    The NCAA Did Not Assume a Duty to Plaintiffs. ........................... 26

              (c)    The NCAA Does Not Owe a Fiduciary Duty to Plaintiffs. .............. 28

              (d)    The NCAA Does Not Owe a Duty to Support Plaintiffs' "Negligent Misrepresentation/Omission" Claim. ............................. 28

              (e)    The NCAA Did Not Have a Duty to Supervise the Actions of the Coach Defendants. ...................................................................... 29

     F.     Plaintiffs' Contract and Third-Party Beneficiary Claims Fail as a Matter of Law. ................................................................................................. 29

1            1.     Choice of Law for Contract Claims ................................................. 29

2            2.     Breach of Express/Implied Contract .............................................. 30

3            3.     Breach of Contract as Third-Party Beneficiaries ......................... 32

4     G.    The NCAA Is Not in an Employment or Agency Relationship with the Coach Defendants and Is Not Vicariously Liable for Their Actions. ...................... 34

1.     Choice of Law ................................................................................. 34

2.     Respondeat Superior Is Inapplicable Because USF, Not the NCAA, Employed and Controlled the Coach Defendants. ......................... 34

3.     Respondeat Superior Is Also Inapplicable Because Sexual Misconduct Is Outside the Coach Defendants' Scope of Employment as Coaches. ................................................................. 35

4.     Plaintiffs' Ratification Theory Fails. ............................................. 37

IV.    CONCLUSION ............................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abdulaziz v. Twitter, Inc.*,
2020 WL 6947929 (N.D. Cal. Aug. 12, 2020) ............................................................. 6

*Aldrich v. Nat'l Collegiate Athletic Ass'n*,
484 F. Supp. 3d 779 (N.D. Cal. 2020) ........................................................... 2, passim

*Aldrich v. Nat'l Collegiate Athletic Ass'n*,
565 F. Supp. 3d 1094 (S.D. Ind. 2021) ..................................................................... 2, 15

*Amiri v. DynCorp Int'l, Inc.*,
2015 WL 166910 (N.D. Cal. Jan. 13, 2015) ................................................................ 6

*Anderson v. AMR*,
348 F. App'x 322 (9th Cir. 2009) .............................................................................. 37

*Arno v. Club Med Inc.*,
22 F.3d 1464 (9th Cir. 1994) ..................................................................................... 34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................... 39

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ..................................................................................... 8

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ........................................................................................ 9

*B.C. ex rel. Powers v. Plumas Unified Sch. Dist.*,
192 F.3d 1260 (9th Cir. 1999) ................................................................................... 15

*Baas v. Dollar Tree Stores, Inc.*,
2009 WL 1765759 (N.D. Cal. June 18, 2009) ............................................................ 16

*Black v. City & Cnty. of Honolulu*,
112 F. Supp. 2d 1041 (D. Haw. 2000) ....................................................................... 36

*BNSF Ry. Co. v. Tyrrell*,
137 S. Ct. 1549 (2017) ................................................................................................. 7

*Bradley v. Nat'l Collegiate Athletic Ass'n*,
249 F. Supp. 3d 149 (D.D.C. 2017) ........................................................................... 32

*Bristol-Myers Squibb Co. v. Super. Ct.*,
137 S. Ct. 1773 (2017) ............................................................................................ 5, 8

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................................ 10, 11

*Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742 (1998) ........................................................................................................ 36

*Calder v. Jones*,
    465 U.S. 783 (1984) .......................................................................................................... 9

*Castaldi v. Signature Retail Servs., Inc.*,
    2016 WL 74640 (N.D. Cal. Jan. 7, 2016) ...................................................................... 29

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .......................................................................................................... 14

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................................................ 14

*Cover v. Windsor Surrey Co.*,
    2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ............................................................ 22, 23

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ................................................................................................... 5, 6, 7

*Daviton v. Columbia/HCA Healthcare Corp.*,
    241 F.3d 1131 (9th Cir. 2001) ........................................................................................ 20

*Denver & Rio Grande W. R.R. Co. v. Bhd. of R.R. Trainmen*,
    387 U.S. 556 (1967) ........................................................................................................ 12

*Deutsch v. Turner Corp.*,
    324 F.3d 692 (9th Cir.2003) ........................................................................................... 16

*Doe v. Univ. of S. Cal.*,
    2019 WL 4229750 (C.D. Cal. July 9, 2019) .................................................................. 20

*Edwards v. U.S. Fid. & Guar. Co.*,
    848 F. Supp. 1460 (N.D. Cal. 1994) ............................................................................. 37

*Flood v. Nat'l Collegiate Athletic Ass'n*,
    2015 WL 5785801 (M.D. Pa. Aug. 26, 2015) ............................................................... 28

*Fractional Villas, Inc. v. Tahoe Clubhouse*,
    2009 WL 465997 (S.D. Cal. Feb. 25, 2009) .................................................................. 13

*Frezza v. Google Inc.*,
    2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ................................................................ 22

*Gamboa v. USA Cycling, Inc.*,
    2013 WL 1700951 (C.D. Cal. Apr. 18, 2013) ................................................................ 13

*Gen. Bldg. Contractors Ass'n v. Pennsylvania,*
    458 U.S. 375 (1982) ........................................................................................... 34

*George v. Nat'l Collegiate Athletic Ass'n,*
    2008 WL 5422882 (C.D. Cal. Dec. 17, 2008) ..................................................... 8

*Goodyear Dunlop Tires Ops., S.A. v. Brown,*
    564 U.S. 915 (2011) ............................................................................................. 6

*Grimmett v. Brown,*
    75 F.3d 506 (9th Cir. 1996) ................................................................................ 20

*Groth-Hill Land Co. v. Gen. Motors LLC,*
    2013 WL 3853160 (N.D. Cal. July 23, 2013) ................................................... 20

*Hairston v. Pacific 10 Conference,*
    101 F.3d 1315 (9th Cir. 1996) ........................................................................... 33

*Hall v. Nat'l Collegiate Athletic Ass'n,*
    985 F. Supp. 782 (N.D. Ill. 1997) ................................................................ 31, 33

*Imageline, Inc. v. CafePress.com, Inc.,*
    2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) ..................................................... 35

*Jablon v. Dean Witter & Co.,*
    614 F.2d 677 (9th Cir. 1980) ............................................................................. 16

*Knelman v. Middlebury Coll.,*
    898 F. Supp. 2d 697 (D. Vt. 2012) .................................................................... 33

*Kurisu v. Svenhard Swedish Bakery Supplemental Key Mgmt. Ret. Plan,*
    2021 WL 2474439 (N.D. Cal. June 17, 2021) ................................................... 13

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................... 14

*Lukovsky v. City & Cnty. of S.F.,*
    535 F.3d 1044 (9th Cir. 2008) ...................................................................... 17, 19

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
    647 F.3d 1218 (9th Cir. 2011) ......................................................................... 5, 6

*Mazza v. Am. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ....................................................................... 21, 23

*Miller v. Bank of Am., Nat'l Ass'n,*
    858 F. Supp. 2d 1118 (S.D. Cal. 2012) ............................................................. 16

*MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.,*
    2018 WL 5086623 (C.D. Cal. Aug. 13, 2018) ................................................... 13

*Murphy v. Schneider Nat'l, Inc.,*
   362 F.3d 1133 (9th Cir. 2004) ............................................................................. 13

*Nat'l Collegiate Athletic Ass'n v. Ken Grody Mgmt., Inc.,*
   2018 WL 5099489 (C.D. Cal. Apr. 13, 2018) ......................................................... 8

*Nev. Power Co. v. Monsanto Co.,*
   955 F.2d 1304 (9th Cir.1992) .............................................................................. 16

*Ortiz v. Ga. Pac.,*
   973 F. Supp. 2d 1162 (E.D. Cal. 2013) .............................................................. 39

*Pokorny v. Quixtar, Inc.,*
   601 F.3d 987 (9th Cir. 2010) ............................................................................. 29

*Ranza v. Nike, Inc.,*
   793 F.3d 1059 (9th Cir. 2015) ............................................................................. 6

*Rivera v. Peri & Sons Farms, Inc.,*
   735 F.3d 892 (9th Cir. 2013) ............................................................................. 17

*Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.,*
   2017 WL 4123050 (S.D. Ind. Sept. 18, 2017) ..................................................... 29

*Rosenbaum v. Seybold,*
   2008 WL 513205 (N.D. Ind. Feb. 22, 2008) ...................................................... 21

*Santa Maria v. Pac. Bell,*
   202 F.3d 1170 (9th Cir. 2000) ........................................................................... 19

*Spierer v. Rossman,*
   798 F.3d 502 (7th Cir. 2015) ............................................................................. 21

*Updike v. Multnomah Cnty.,*
   870 F.3d 939 (9th Cir. 2017) ...................................................................... 14, 15

*Vachani v. Yakovlev,*
   2016 WL 1598668 (N.D. Cal. Apr. 21, 2016) .................................................. 9, 10

*Walden v. Fiore,*
   571 U.S. 277 (2014) .................................................................................. 5, 6, 12

*Walsh v. Kindred Healthcare,*
   798 F. Supp. 2d 1073 (N.D. Cal. 2011) ............................................................ 39

*Walsh v. Nev. Dep't of Hum. Res.,*
   471 F.3d 1033 (9th Cir. 2006) ........................................................................... 15

*Wistron Corp. v. Phillip M. Adams & Assocs., LLC,*
   2011 WL 4079231 (N.D. Cal. Sept. 12, 2011) .................................................... 39

*Zhang v. Walgreen Co.*,
    2010 WL 4174635 (N.D. Cal. Oct. 20, 2010) ........................................... 37

**STATE CASES**

*Acoustics, Inc. v. Trepte Constr. Co.*,
    14 Cal. App. 3d 887 (1971) ........................................... 30

*Acuna v. Regents of Univ. of Cal.*,
    56 Cal. App. 4th 639 (1997) ........................................... 20

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
    225 Cal. App. 4th 1451 (2014) ........................................... 16

*Anderson v. Fay Improvement Co.*,
    134 Cal. App. 2d 738 (1955) ........................................... 37

*Baptist v. Robinson*,
    143 Cal. App. 4th 151 (2006) ........................................... 37, 38

*Barenborg v. Sigma Alpha Epsilon Fraternity*,
    33 Cal. App. 5th 70 (2019) ........................................... 35, 38

*BGC Ent., Inc. v. Buchanan ex rel. Buchanan*,
    41 N.E.3d 692 (Ind. Ct. App. 2015) ........................................... 29

*Binder v. Aetna Life Ins.*,
    75 Cal. App. 4th 832 (1999) ........................................... 30, 32

*Brown v. USA Taekwondo*,
    11 Cal. 5th 204 (2021) ........................................... 22

*Cline v. Homuth*,
    235 Cal. App. 4th 699 (2015) ........................................... 30

*Cmty. Health Network, Inc. v. McKenzie*,
    185 N.E.3d 368 (Ind. 2022) ........................................... 21

*Collier v. City of Pasadena*,
    142 Cal. App. 3d 917 (1983) ........................................... 20

*Cruz v. HomeBase*,
    83 Cal. App. 4th 160 (2000) ........................................... 38

*Emery v. Visa Int'l Serv. Ass'n*,
    95 Cal. App. 4th 952 (2002) ........................................... 37, 38

*In re Estate of Neu*,
    588 N.E.2d 567 (Ind. Ct. App. 1992) ........................................... 28

*Farmers Ins. Grp. v. Cnty. of Santa Clara*,
  11 Cal. 4th 992 (1995) ................................................................. 35, 36, 37

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) .......................................................................... 17

*Frontier Oil Corp. v. RLI Ins.*,
  153 Cal. App. 4th 1436 (2007) ............................................................. 30

*Goodwin v. Yeakle's Sports Bar & Grill, Inc.*,
  62 N.E.3d 384 (Ind. 2016) ............................................................. 24, 26

*Harper v. Wausau Ins.*,
  56 Cal. App. 4th 1079 (1997) ............................................................... 32

*Huntington Mortg. Co. v. DeBrota*,
  703 N.E.2d 160 (Ind. Ct. App. 1998) ................................................... 28

*John R. v. Oakland Unified Sch. Dist.*,
  48 Cal. 3d 438 (1989) ..................................................................... 35, 36

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988) ................................................................... 17, 19

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ............................................................... 21, 22, 27

*Lanni v. National Collegiate Athletic Ass'n*,
  42 N.E.3d 542 (Ind. Ct. App. 2015) ................................................ 27, 28

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
  12 Cal. 4th 291 (1995) .......................................................................... 36

*Neal v. IAB Fin. Bank*,
  68 N.E.3d 1114 (Ind. Ct. App. 2017) ................................................... 23

*Norgart v. Upjohn Co.*,
  21 Cal. 4th 383 (1999) .......................................................................... 17

*Passmore v. Multi-Mgmt. Servs., Inc.*,
  810 N.E.2d 1022 (Ind. 2004) ............................................................... 29

*Patterson v. Domino's Pizza, LLC*,
  60 Cal. 4th 474 (2014) ..................................................................... 34, 35

*Rakestraw v. Rodrigues*,
  8 Cal. 3d 67 (1972) ............................................................................... 37

*S.G. Borello & Sons v. Dep't of Indus. Rels.*,
  48 Cal. 3d 341 (1989) ........................................................................... 34

*Schmitz v. Nat'l Collegiate Athletic Ass'n,*
    67 N.E.3d 852 (Ohio Ct. App. 2016) .......................................................................... 28

*Smith v. Delta Tau Delta, Inc.,*
    9 N.E.3d 154 (Ind. 2014) ............................................................................................ 25

*Unruh-Haxton v. Regents of Univ. of Cal.,*
    162 Cal. App. 4th 343 (2008) ..................................................................................... 16

*Webb v. Jarvis,*
    575 N.E.2d 992 (Ind. 1991) ........................................................................... 22, 23, 25

*Wickham v. Southland Corp.,*
    168 Cal. App. 3d 49 (1985) ........................................................................................ 34

*Williams v. Cingular Wireless,*
    809 N.E.2d 473 (Ind. Ct. App. 2004) ......................................................................... 23

*Yost v. Wabash Coll.,*
    3 N.E.3d 509 (Ind. 2014) .................................................................................21, passim

**FEDERAL STATUTES**

28 U.S.C. § 1391 ................................................................................................................... 13

28 U.S.C. § 1406(a) ......................................................................................................... 12, 14

**STATE STATUTES**

Cal. Civ. Code § 1646 ..................................................................................................... 29, 30

Cal. Civ. Proc. Code § 335.1 ................................................................................................. 16

Cal. Civ. Proc. Code § 337 .................................................................................................... 16

Cal. Civ. Proc. Code § 339 .................................................................................................... 16

**FEDERAL RULES**

Rule 12 ............................................................................................................................ 1, passim

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 315 ..................................................................................... 23

**PLEASE TAKE NOTICE** that on December 8, 2022, before the Honorable Laurel Beeler in Courtroom B, 15th Floor, 50 Golden Gate Ave., San Francisco, CA 94102, Defendant The National Collegiate Athletic Association ("NCAA") will move for an order dismissing all claims against it brought by Plaintiffs Does 1–12 in their First Amended Class Action Complaint (ECF No. 38) ("Complaint" or "FAC"). The NCAA will also move to strike Plaintiffs John Doe 4 through John Doe 12's request for injunctive relief. This motion is based on this Notice, the following Memorandum of Points and Authorities, the Request for Application of the Incorporation by Reference Doctrine or Judicial Notice ("RJN"), the Declaration of Kristopher L. Richardson ("Richardson Decl."), all papers on file in this matter, and any authority or argument as may be presented in reply and at any hearing.

## STATEMENT OF RELIEF SOUGHT

The NCAA seeks an order under Federal Rule of Civil Procedure 12(b) and/or 12(f) dismissing or striking all twenty claims against it for lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), lack of Article III standing under Rule 12(b)(1), and failure to state a claim under Rule 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

This case is brought by three current and nine former student-athletes who played baseball at Defendant University of San Francisco ("USF") at various times since 1999 and who allege that two of their coaches at USF, Defendants Troy Nakamura and Anthony Giarratano (the "Coach Defendants"), sexually harassed them. Together, Plaintiffs assert twenty claims against the NCAA for, among other causes of action, negligence, intentional infliction of emotional distress, and breach of fiduciary duty, alleging that the NCAA should have adopted policies or taken other steps to prevent the alleged harassment by the Coach Defendants. Plaintiffs purport to represent three nationwide classes: (1) all student-athletes who participated in any NCAA sport at any member institution during the past four years; (2) all student-athletes who participated in any NCAA sport at a California NCAA member institution during the past four years; and (3) all members of the USF baseball team since 2000.

This is not the first time this set of Plaintiffs' counsel have attempted to assert claims of this nature against the NCAA.  Only two years ago, Plaintiffs' counsel filed a similar action in this district before Judge Davila against the NCAA on behalf of different former college-athlete plaintiffs involving a different coach.  Most of the First Amended Class Action Complaint ("FAC") in this matter as it relates to the NCAA is a wholesale cut-and-paste from the complaint in that matter.  But Judge Davila dismissed that case against the NCAA for lack of personal jurisdiction and transferred it to Indiana, where the NCAA is headquartered.  *See Aldrich v. Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779, 790–96 (N.D. Cal. 2020) ("*Aldrich I*").  The Southern District of Indiana then dismissed one plaintiff's claims for damages and all plaintiffs' prayers for injunctive relief against the NCAA without prejudice for lack of Article III standing and dismissed all the remaining plaintiffs' claims against the NCAA with prejudice because they were time-barred as a matter of law.  *See Aldrich v. Nat'l Collegiate Athletic Ass'n*, 565 F. Supp. 3d 1094, 1101–10 (S.D. Ind. 2021) ("*Aldrich II*").  The *Aldrich* plaintiffs chose not to appeal either decision.  These same defects plague this present action against the NCAA.

The NCAA is a voluntary unincorporated association created by member colleges and universities across the country to administer intercollegiate athletics.  The NCAA has the specific powers its members have vested in it.  In defining the NCAA's legislative powers, the NCAA's members have explicitly retained for themselves the direct responsibility for the health and safety of their student-athletes.  The NCAA's role is to provide support to its members in carrying out that retained responsibility.  This support takes many forms, such as model policies, educational resources, and forums for members to share approaches.  And, consistent with the member institutions retaining responsibility for student-athlete health and safety, the NCAA's Board of Governors has adopted a policy directing athletic departments to follow campus-wide policies and local and state law related to sexual abuse.

Colleges and universities across the country recognize that sexual abuse and harassment on their campuses is a serious problem, and the NCAA has supported its member institutions with resources those members can use on their respective campuses to combat this misconduct.  As with the *Aldrich* case, this case is not about whether the NCAA opposes sexual abuse and

harassment and works to support its member institutions in eradicating it—it does.  Instead, this case is about what the NCAA's legal duty is to take action with respect to sexual abuse or harassment on campuses nationwide and, more specifically, what the NCAA's legal responsibility is for alleged misconduct by two coaches formerly employed by USF.  The NCAA respectfully submits that the FAC is flawed as a matter of law and that all claims against the NCAA should be dismissed and/or stricken.

To begin, the FAC suffers from two global deficiencies.  *First*, this Court lacks personal jurisdiction over the NCAA because the NCAA is a resident of Indiana, not California, and Plaintiffs' claims against the NCAA are not alleged to have arisen from any suit-related contacts by the NCAA with California.  Just like in *Aldrich I*, the NCAA should be dismissed from this case for lack of personal jurisdiction.  *Second*, venue in this district over Plaintiffs' claims against the NCAA is improper because this Court lacks personal jurisdiction over the NCAA and because the FAC fails to show that any of the alleged events and omissions by the NCAA giving rise to Plaintiffs' claims against the NCAA occurred in this District.

If the Court gets past these global deficiencies—and the NCAA respectfully suggests that it should not—the FAC nonetheless suffers from further fatal defects that require it to be dismissed entirely.  All of the claims asserted against the NCAA by Plaintiffs Does 4–12 are barred by the relevant statutes of limitations as a matter of law.  Plaintiffs' direct negligence-based claims (Counts III–IV, VII–XXI, XIII, XVIII–XXI) should be dismissed with prejudice because the NCAA does not owe a legally cognizable duty to Plaintiffs.  Plaintiffs' contract-based claims (Counts XV–XVII, XXII–XXIV) should be dismissed with prejudice because there is no enforceable contract between Plaintiffs and the NCAA, nor were Plaintiffs third-party beneficiaries of any contract between the NCAA and its members.  Plaintiffs' indirect claims alleging that the NCAA is vicariously liable for the Coach Defendants' conduct should be dismissed with prejudice because the NCAA lacks any employment or agency relationship with the Coach Defendants, cannot be vicariously liable for their alleged misconduct, and did not ratify any such misconduct.  Finally, Does 4–12's request for injunctive relief should be dismissed or

1  stricken for lack of Article III standing because they are no longer student-athletes and thus not at

2  any risk of further alleged injury.

3  **II.      FACTUAL BACKGROUND**

4  **A.      The NCAA and Its Relationship with Member Institutions**

5          Colleges and universities created the NCAA as a voluntary unincorporated association,

6  delegating to it the power to administer intercollegiate athletic competition.  The NCAA is based

7  in Indiana.  FAC ¶ 50.  Nearly 1,100 schools across the country are members.  *Id.*

8          The participating colleges and universities ("the member institutions") adopted the NCAA

9  Constitution, which defines the NCAA's purposes and sets out its fundamental policies.  *Id.* ¶ 89.

10  The NCAA takes action only where its member institutions have delegated it responsibility.  For

11  example, the NCAA member institutions set rules governing the recruitment of athletes, the rules

12  of competition, and how postseason competition will work, and they delegated to the NCAA the

13  power to enforce those rules.  The member institutions have explicitly not delegated responsibility

14  for health and safety or the student-athlete/coach relationship.  Specifically, the Constitution

15  provides it "*is the responsibility of each member institution* to protect the health of, and provide a

16  safe environment for, each of its participating student-athletes." *Id.* ¶ 90 (citing NCAA Const. art.

17  2, § 2.2.3, emphasis added).  Similarly, it provides it "*is the responsibility of each member*

18  *institution* to establish and maintain an environment that fosters positive relationship between the

19  student-athlete and coach." *Id.* (citing NCAA Const. art. 2, § 2.2.4, emphasis added).

20          Consistent with its Constitution, the NCAA's role has been to provide support and

21  educational resources to member institutions so schools can act to better protect the health and

22  safety of everyone on their campuses, including student-athletes, with respect to sexual abuse and

23  harassment.  The NCAA is committed to working with its member institutions to combat sexual

24  misconduct and provides members with resources to do so.  For example, as Plaintiffs

25  acknowledge, the NCAA has assembled commissions to bring attention to the subject and

26  developed publications and model policies that campuses and their athletics departments can use.

27  *See, e.g.*, *id.* ¶¶ 111–113.

28

1

2

**B.**     **The University of San Francisco and Allegations Involving the Coach Defendants**

The FAC alleges that Plaintiffs are twelve current and former student-athletes who played baseball at USF—an NCAA member institution—between 1999 and present.  *See* FAC ¶¶ 38–49. They allege generally that two former USF baseball coaches, the Coach Defendants, engaged in conduct that created a sexualized, abusive environment, causing them harm.  *See, e.g.*, FAC ¶ 5.

Does 1–3 filed a complaint against the NCAA, USF, and Coach Defendants on March 11, 2022.  *Id.* ¶ 16.  Plaintiffs amended their complaint on July 15, 2022, adding Does 4–12.  *See* FAC ¶¶ 41–49.  The operative FAC alleges twenty-four claims for relief on behalf of three putative classes.  Plaintiffs seek to recover on behalf of the class injunctive relief and damages from all Defendants.  Against the NCAA specifically, Plaintiffs seek both damages and an injunction requiring the NCAA to make policy changes.  *Id.* ¶¶ 18–19, 21.

**III.**     **ARGUMENT**

**A.**     **This Court Lacks Personal Jurisdiction over the NCAA.**

This Court should dismiss Plaintiffs' claims against the NCAA—an unincorporated association headquartered in Indiana, *id.* ¶ 50; Richardson Decl. ¶ 3—for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Plaintiffs bear the burden of establishing personal jurisdiction over the NCAA.  *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  For a court to exercise personal jurisdiction over a defendant, due process requires that the defendant have "certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (cleaned up).  "The primary focus of [the] personal jurisdiction inquiry" is thus "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779 (2017) (citing *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014)).  Personal jurisdiction may be either general ("all-purpose") or specific ("case-linked").  *Id.* at 1779–80.  General or all-purpose jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile)."  *Walden*, 571 U.S. at 283 n.6.  Specific or case-linked jurisdiction, on the other hand,

1   "focuses on the relationship among the defendant, the forum, and the litigation," requiring that

2   "the defendant's suit-related conduct must create a substantial connection with the forum State."

3   *Id.* at 284 (cleaned up).

4         Here, both general and specific personal jurisdiction over the NCAA are lacking.

5         **1.**     **This Court Lacks General Personal Jurisdiction over the NCAA.**

6         For a court to exercise general jurisdiction, a defendant's contacts with the forum state

7   must be "so 'continuous and systematic' as to render them essentially at home in the forum State."

8   *Daimler*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919

9   (2011)). Supreme Court precedent is clear that general jurisdiction over an entity is disfavored

10  outside of the "paradigm" bases for general jurisdiction: place of incorporation or principal place

11  of business. *Id.* at 137. It is not disputed that the NCAA is an unincorporated association with its

12  principal place of business in Indiana. *See* FAC ¶ 50; Richardson Decl. ¶ 3.[1]

13        "Only in an exceptional case will general jurisdiction be available anywhere" but the place

14  of incorporation or the principal place of business. *Abdulaziz v. Twitter, Inc.*, 2020 WL 6947929,

15  at *8 (N.D. Cal. Aug. 12, 2020) (Beeler, M.J.) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069

16  (9th Cir. 2015)). The bar to establish an exceptional case is "very high" and the test for general

17  jurisdiction outside the place of incorporation or principal place of business "rarely satisfied."

18  *Amiri v. DynCorp Int'l, Inc.*, 2015 WL 166910, at *2 (N.D. Cal. Jan. 13, 2015). This is not an

19  exceptional case. The FAC's allegations in support of general jurisdiction over the NCAA—

20  recycled wholesale from Plaintiffs' counsel's submissions in *Aldrich I* and rejected by Judge

21  Davila—fall far short of meeting this very high bar. *See* FAC ¶¶ 26–31; *Aldrich I*, 484 F. Supp.

22  3d at 790–94.

23        To begin, that the NCAA works with member institutions in California does not create an

24  exceptional case. Indeed, for many defendants, that exception would swallow the rule. "Rather,

25

26  ───────────────────

27  [1] On a Rule 12(b)(2) motion, the Court may consider materials outside the pleadings, and the "plaintiff cannot simply rest on the bare allegations of its complaint." *Mavrix*, 647 F.3d at 1223

28  (cleaned up). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Id.* (cleaned up).

1  the inquiry calls for an appraisal of a corporation's activities in their entirety; a corporation that

2  operates in many places can scarcely be deemed at home in all of them." *BNSF Ry. Co. v. Tyrrell*,

3  137 S. Ct. 1549, 1559 (2017) (cleaned up) (quoting *Daimler* and finding no jurisdiction where

4  BNSF operated 2,000 miles of tracks in the state).  Given that the NCAA has members in all fifty

5  states, *see* Richardson Decl. ¶ 5, jurisdiction based on a member's residency would subject the

6  NCAA to jurisdiction in "every [s]tate," a theory of general jurisdiction the Supreme Court has

7  rejected as "unacceptably grasping." *Daimler*, 571 U.S. at 138.  Judge Davila concurred in

8  *Aldrich I.  See Aldrich I*, 484 F. Supp. 3d at 790–91 (observing that "a defendant cannot be 'at

9  home' in all fifty states").[2]

10      The FAC cuts and pastes additional allegations from *Aldrich I* that Judge Davila found

11  insufficient to confer general jurisdiction—such as assertions that the NCAA derives revenues

12  from member institutions in California, that it hosts significant games in California, and that it

13  monitors and participates in the policy-making process and in litigation in California on matters

14  important to college athletics.  *See* FAC ¶¶ 27, 29–30.  As Judge Davila explained, "[b]ecause

15  Plaintiffs have not shown that the NCAA's [physical, policy-making, and economic] contact with

16  California is 'special' as compared to its contact with other States, the NCAA can 'scarcely be

17  deemed at home in California.'" *Aldrich I*, 484 F. Supp. 3d at 794 (cleaned up) (quoting *BNSF*,

18  137 S. Ct. at 1559).

19      Further, the FAC's allegations that the NCAA "avails itself of California courts when it so

20  chooses" and has "admitted that personal jurisdiction" is "appropriate in California" (FAC ¶ 31,

21

22  [2] The FAC's allegation that the NCAA's exercises "significant control over its California
    members" also does not and cannot confer general jurisdiction.  As this Court explained in *Aldrich

23  I*, Plaintiffs' "control" theory is outdated and contravenes *Daimler*, which rejected the notion that a
    corporation's "substantial[] control" over an in-forum subsidiary is sufficient to confer general

24  jurisdiction over the corporation in that forum.  *Aldrich I*, 484 F. Supp. 3d at 793 n.4 (citing
    *Daimler*, 571 U.S. at 136 & n.15).  Indeed, Plaintiffs' control theory would impermissibly "subject

25  an out-of-state entity to jurisdiction 'whenever they have an in-state subsidiary or affiliate.'" *Id.*
    (quoting *Daimler*, 571 U.S. at 136 & n.15).  In any case, the allegedly controlling actions of the

26  NCAA, such as disciplining members for rule violations, are centered at the NCAA's headquarters
    in Indiana.  Richardson Decl. ¶ 3.  And were the Court to accept the (incorrect) argument that the

27  NCAA is subject to general jurisdiction everywhere the NCAA's rules *apply*, then the NCAA
    would be subject to general jurisdiction in all fifty states—a result this Court and *Daimler* have

28  expressly condemned.  *Aldrich I*, 484 F. Supp. 3d at 793 (citing *Daimler*, 571 U.S. at 138).

again copied from *Aldrich I*) are misleading and immaterial.  Plaintiffs cite the same two cases for these contentions that they cited in the *Aldrich I* complaint: one where the NCAA sued to defend its trademark from unauthorized use by a California car dealer and one where it was sued in California.  *See id.* nn.10, 11 (citing *Nat'l Collegiate Athletic Ass'n v. Ken Grody Mgmt., Inc.*, 2018 WL 5099489 (C.D. Cal. Apr. 13, 2018); *George v. Nat'l Collegiate Athletic Ass'n*, 2008 WL 5422882 (C.D. Cal. Dec. 17, 2008)).  But the NCAA did not concede in *George* that personal jurisdiction was proper, as the FAC incorrectly alleges.  *See George*, 2008 WL 5422882, at *3.  It is unclear, moreover, where the NCAA could have sued the California car dealer in *Ken Grody* to vindicate its trademark rights except in California.  And in any event, as this Court held in *Aldrich I* (when looking at the same allegations referencing these same two California cases), "that there is some prior action involving the defendant in the forum" is "not enough" to confer general jurisdiction over it.  *Aldrich I*, 484 F. Supp. 3d at 792.

Because the FAC fails to allege facts showing that this is an "exceptional case" warranting the exercise of general jurisdiction outside of Indiana, where the NCAA has its principal place of business, this Court lacks general personal jurisdiction over the NCAA.

### 2.     This Court Lacks Specific Personal Jurisdiction over the NCAA.

Plaintiffs also have not and cannot meet their burden to show specific jurisdiction over the NCAA in California.  "For specific jurisdiction, a defendant's general connections with the forum are not enough." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.  Instead, "(1) the defendant must either purposefully direct its activities toward the forum or purposefully avail itself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [must] be reasonable." *Aldrich I*, 484 F. Supp. 3d at 795 (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)); *see also, e.g., Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780–81 ("In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum. . . . [S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." (cleaned up)).

In a prior submission to this Court, Plaintiffs have staked their argument for personal jurisdiction and venue on the FAC's allegations that the Coach Defendants mistreated them in California.  (ECF No. 44 at 1, 3–4.)  But those allegations are insufficient to confer personal jurisdiction over the NCAA.  Plaintiffs have failed to allege any facts showing their claims arise out of or relate to any purposeful direction of any activities toward, or purposeful availment of, California *by the NCAA* as opposed to alleged activity here by USF or the Coach Defendants.  This Court must look at the actions of the NCAA, not that of other entities or individuals, when analyzing whether there is specific jurisdiction here for the NCAA.  As this Court has explained, "[p]urposeful direction exists when a defendant . . . (1) commit[s] an intentional act (2) expressly aimed at the forum state (3) that causes harm that the defendant knows is likely to be suffered in the forum state." *Vachani v. Yakovlev*, 2016 WL 1598668, at *4 (N.D. Cal. Apr. 21, 2016) (Beeler, M.J.) (citing *Calder v. Jones*, 465 U.S. 783, 788–89 (1984)).  "Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because the plaintiff cannot be the only link between the defendant and the forum.  Something more—conduct directly targeting the forum—is required to confer personal jurisdiction." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (cleaned up).

Alleged mistreatment in California does not confer specific jurisdiction here.  None of the FAC's allegations show any suit-related, "intentional act" by the NCAA that was "expressly aimed" at California and gave rise to Plaintiffs' alleged injuries here.  All of Plaintiffs' claims against the NCAA are expressly premised on alleged *inactions or omissions* by the NCAA in violation of a duty, either in tort or in contract.  Specifically, Plaintiffs contend the NCAA "has failed to implement any rules prohibiting sexual harassment and retaliation," FAC ¶ 2; failed to "promulgate rules for schools to report abuse and deter predators," *id.* ¶ 4; or failed to protect Plaintiffs from the Coach Defendants by removing or controlling them or warning Plaintiffs about them, *see, e.g.*, *id.* ¶¶ 514, 516–519, 523, 525–528 (negligent-supervision claims), thereby allegedly causing Plaintiffs injury in California.  But, as this Court explained in *Aldrich I*, the NCAA facilitates the implementation of nationwide "legislat[ion] in Indiana, where it is headquartered," meaning that any alleged "harm caused by the NCAA's [supposed] failure to

enact particular legislation arises out of Indiana," not California. *Aldrich I*, 484 F. Supp. 3d at 795; *see also* Richardson Decl. ¶¶ 3–4. The same goes for the FAC's notion that "the NCAA failed to protect [Plaintiffs] from" the Coach Defendants: "[T]o the extent the NCAA had a duty to legislate in ways to prevent alleged abusers from transferring schools," to supervise the behavior of coaches employed by member institutions, or to warn students about such coaches—and, as explained in Part III.E *infra*, it does not—"that duty arose," and any purported breach of that duty occurred, "in Indiana, not California." *Aldrich I*, 484 F. Supp. 3d at 795. "A contrary finding would improperly subject the NCAA to jurisdiction anywhere because the NCAA failed to implement legislation in all 50 states." *Id.* Because Plaintiffs' claims against the NCAA uniformly rest on its purported inactions or omissions in breach of a duty (either in tort or in contract), and because none of those alleged inactions or omissions by the NCAA were "intentional act[s] . . . expressly aimed" at California, *Vachani*, 2016 WL 1598668, at *4, there is no basis for specific jurisdiction over the NCAA here.[3]

Plaintiffs' contract claims also do not confer personal jurisdiction over the NCAA. Even assuming that Plaintiffs have entered into any contract with the NCAA or are beneficiaries of contracts between it and its members, it is well established that a "contract with an out-of-state party alone" does not "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985). Rather, to evaluate whether a defendant has "purposely availed" itself of a forum State by virtue of having formed a contract with a forum resident, the Court must evaluate the parties' "prior negotiations and

[3] Plaintiffs' contention in a prior submission that "Judge Davila expressly tethered his personal jurisdiction analysis" in *Aldrich I* "to the fact that the *Rembao* plaintiffs 'were not abused in California,' but elsewhere in the country" (ECF No. 44 at 3–4) misapprehends and misstates Judge Davila's reasoning. Judge Davila articulated multiple bases for his finding of lack of jurisdiction. One was because the claims were based on inaction by the NCAA and that inaction happened in Indiana, not California. Specifically, he wrote: "The NCAA legislates in Indiana, where it is headquartered. Thus, the harm caused by the NCAA's failure to enact particular legislation arises out of Indiana. A contrary finding would improperly subject the NCAA to jurisdiction anywhere because the NCAA failed to implement legislation in all 50 states. . . . [T]o the extent the NCAA had a duty to legislate in ways to prevent alleged abusers from transferring schools" or otherwise harming students, "that duty arose in Indiana, not California." *Aldrich I*, 484 F. Supp. 3d at 795. That reasoning applies just as much in this case as it did in *Aldrich I*, notwithstanding the FAC's allegations that Plaintiffs were harmed in California.

1   contemplated future consequences," along with the terms of the contract and the parties' actual

2   course of dealing," and assess whether the defendant "deliberately reached out beyond" its home

3   state and entered into a contract that "envisioned continuing and wide-reaching contacts with" the

4   plaintiff in the forum state.  *Id.* at 476, 478–80 (cleaned up).  Here, Plaintiffs' lone allegation that

5   the NCAA entered into an alleged contract with California-based Plaintiffs is not enough to confer

6   specific jurisdiction.  Further, the FAC does not (and cannot) allege that, when the NCAA

7   allegedly entered into the supposed contracts with Plaintiffs or member institutions, the NCAA did

8   or reasonably should have expected the contracts to result in "continuing and wide-reaching

9   contacts" with Plaintiffs in California.  *Id.* at 478–80.  Nor does the FAC allege facts showing any

10   "actual course of dealing" between the NCAA and any other counterparties that could give rise to

11   such an expectation.  *Id.*  Indeed, the fact the FAC asserts the exact same contract claims based on

12   the exact same allegations not only on behalf of Plaintiffs and California student-athletes but also

13   on behalf of *student-athletes in every state* (*compare* FAC ¶¶ 613–629, 631–637, *with id.* ¶¶ 690–

14   707, 709–716) only confirms that the NCAA's purported contracts with Plaintiffs, any other

15   student-athletes, and its member institutions did *not* "envision[] continuing and wide-reaching

16   contacts with" California, *Burger King*, 471 U.S. at 478–80.[4]

17         Finally, Plaintiffs' allegations that Plaintiff John Doe 6's parents sent a letter describing

18   objectionable conduct by the Coach Defendants to USF's NCAA Faculty Athletics Representative

19   (FAC ¶¶ 146, 379, 456, 489) do not supply the suit-related purposeful direction by the NCAA that

20   is otherwise missing from the FAC.  Faculty Athletics Representatives ("FAR") are neither

21   employees nor agents of the NCAA; they are instead employees or agents of, and selected or

22

23

---

24   [4] The FAC's theory of breach further illustrates the point.  Like their tort claims, Plaintiffs'
contract claims allege that the NCAA assumed, but then breached, a contractual obligation to

25   implement policies and legislation to prohibit sexual misconduct and retaliation, provide for
monitoring and reporting of violations, and otherwise protect Plaintiffs and all student-athletes

26   from unsafe environments.  *See* FAC ¶¶ 621, 627, 635, 698, 705, 714.  Even if true, "that duty
arose," and any purported breach of that duty occurred, "in Indiana, not California."  *Aldrich I*,

27   484 F. Supp. 3d at 795.  "A contrary finding would improperly subject the NCAA to jurisdiction
anywhere because the NCAA failed to implement legislation in all 50 states."  *Id.*

28

1   appointed by, the member institutions with whom the NCAA works.[5]  Indeed, each institution's

2   FAR is "designated" and controlled by "the institution's president or chancellor" and has his or

3   her "[d]uties" set "by the member institution."  Richardson Decl., Ex. 1 (Manual) at 17 (NCAA

4   Const. art. 4, § 4.02.2), 42 (NCAA Const. art. 6, § 6.1.3).  That John Doe 6's parents allegedly

5   reported some sort of misconduct by the Coach Defendants to USF's FAR therefore has no

6   bearing on whether the *NCAA* is subject to personal jurisdiction here.  *See Walden v. Fiore*, 571

7   U.S. 277, 284 (2014) (the defendant's "substantial connection with the forum State" must "arise

8   out of contacts that the defendant *himself* creates with the forum" (cleaned up)).

9       Because the FAC fails to allege facts showing that Plaintiffs' claims against the NCAA

10  arise out of or relate to any purposeful contacts by the NCAA with California, *Aldrich I*, 484 F.

11  Supp. 3d at 795, this Court lacks specific personal jurisdiction over the NCAA.  All claims against

12  the NCAA should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(2).

13       **B.**     **Venue in This Court Is Improper as to the NCAA.**

14       Because this Court lacks personal jurisdiction over the NCAA, venue over Plaintiffs'

15  claims against the NCAA is improper, and those claims must be dismissed under Federal Rule of

16  Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  *See, e.g.*, *Aldrich I*, 484 F. Supp. 3d at 796.

17       This is so notwithstanding the FAC's incorrect allegation that this Court is the proper

18  venue for Plaintiffs' claims against the NCAA because the NCAA "resides in every district in

19  which its members reside," FAC ¶ 36.  Like personal jurisdiction, venue does not depend on the

20  residency of the NCAA's members.  *See, e.g.*, *Denver & Rio Grande W. R.R. Co. v. Bhd. of R.R.*

21  *Trainmen*, 387 U.S. 556, 559 (1967) (holding that unincorporated association's residency for

22

23  _____

24  [5] *See* Richardson Decl., Ex. 1 (2021–2022 NCAA Division I Manual, eff. Aug. 1, 2021)
    (hereinafter, "Manual") at 16 (NCAA Const. art. 4, § 4.02.2) ("A faculty athletics representative is

25  a member of an institution's faculty or administrative staff who is designated by the institution's
    president or chancellor or other appropriate entity to represent the institution and its faculty in the
    institution's relationships with the NCAA and its conference(s), if any . . . ."), 42 (NCAA Const.

26  art. 6, § 6.1.3) ("A member institution shall designate an individual to serve as faculty athletics
    representative.  An individual so designated after January 12, 1989, shall be a member of the

27  institution's faculty or an administrator who holds faculty rank and shall not hold an
    administrative or coaching position in the athletics department.  Duties of the faculty athletics

28  representative shall be determined by the member institution.").

venue purposes "should be determined by looking to the residence of the association itself rather than that of its individual members").  Rather, the NCAA, an unincorporated association, resides in any judicial district in which it "is subject to the court's personal jurisdiction."  *See* 28 U.S.C. § 1391(c)(2).

Moreover, the FAC's conclusory incantation that "a substantial part of the events and omissions giving rise to the claims occurred in this District," FAC ¶ 36, is insufficient to make venue here proper over the NCAA.  It is well established that a plaintiff bears the burden of establishing that venue is proper as to each cause of action and each defendant.  *See, e.g.*, *Gamboa v. USA Cycling, Inc.*, 2013 WL 1700951, at *2–4 (C.D. Cal. Apr. 18, 2013) ("Once a defendant has raised a timely objection to venue, the plaintiff has the burden of showing that venue is proper. . . . [F]ederal courts have generally held that venue requirements must be satisfied for each separate cause of action and as to each defendant." (collecting cases)); *Fractional Villas, Inc. v. Tahoe Clubhouse*, 2009 WL 465997, at *2 (S.D. Cal. Feb. 25, 2009) (same principles).  Because, as explained in Part II.A.2 above, Plaintiffs have failed to allege any acts or omissions by the NCAA *in California*, they have failed to establish that any of "the events and omissions giving rise to [their] claims" against the NCAA—let alone a "substantial part" of those "events and omissions"—"occurred in this District," as venue under 28 U.S.C. § 1391(b)(2) would require.  Indeed, Plaintiffs' claims as against the NCAA explicitly arise from alleged inactions by the NCAA in Indiana, where it is headquartered and where its agents and employees are located (Richardson Decl. ¶¶ 3, 6),[6] not in California.  Thus, Plaintiffs have failed to carry their burden to establish that venue is proper here as to the NCAA.  *See, e.g.*, *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, 2018 WL 5086623, at *9 (C.D. Cal. Aug. 13, 2018) (plaintiffs failed to establish "that a substantial part of the relevant transactions occurred in this district with respect to their claims against each defendant" under 28 U.S.C. § 1391(b)(2) because "the transactions

---

[6] "In a 12(b)(3) motion, 'the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings.'"  *Kurisu v. Svenhard Swedish Bakery Supplemental Key Mgmt. Ret. Plan*, 2021 WL 2474439, at *2 (N.D. Cal. June 17, 2021) (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004)).

1    directly giving rise to plaintiffs' claims"—"defendants' failure[s] to pay or reimburse" the

2    plaintiffs—took place in other districts).

3         Section 1406(a) provides that this Court "shall" dismiss an action for improper venue.

4    Plaintiffs' claims against the NCAA should therefore be dismissed.  But, in the alternative, and

5    only if the Court determines that the "interest of justice" so requires, the NCAA requests transfer

6    of the claims against it to the Southern District of Indiana, the district in which the NCAA is

7    headquartered and in which those claims "could have been brought."  28 U.S.C. § 1406(a); FAC

8    ¶ 50; Richardson Decl. ¶ 3.

9         **C.     Does 4–12 Lack Standing to Seek Injunctive Relief.**

10        Even if personal jurisdiction and venue over the NCAA in this Court were proper, which

11   they are not, Does 4–12 lack Article III standing to demand injunctive relief from the NCAA

12   because they are former USF students no longer competing in collegiate sports and thus no longer

13   face any threat of allegedly irreparable harm traceable to the NCAA not adopting policies related

14   to sexual abuse and harassment.  This Court should therefore dismiss those Plaintiffs' prayers for

15   injunctive relief against the NCAA (FAC, Prayer for Relief ¶ D) under Federal Rule of Civil

16   Procedure Rule 12(b)(1), or in the alternative, strike them under Rule 12(f).

17        To have Article III standing, a plaintiff must plead and prove (1) injury in fact; (2) a causal

18   connection between the injury and the defendant's purportedly unlawful conduct; and (3) a non-

19   speculative likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Defs. of*

20   *Wildlife*, 504 U.S. 555, 560–61 (1992).  To have "standing for injunctive relief," a plaintiff must

21   "show a real and immediate threat of repeated injury."  *Updike v. Multnomah Cnty.*, 870 F.3d 939,

22   947 (9th Cir. 2017) (cleaned up).  A plaintiff may not rely "on mere conjecture about possible

23   [future] actions" to demonstrate injury and must instead plead and prove "concrete evidence to

24   substantiate their fears."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013).  "Past exposure

25   to illegal conduct does not in itself show a present case or controversy regarding injunctive relief,"

26   *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up), so a plaintiff seeking such

27   relief must plead and prove facts showing "a 'real or immediate threat' that he would be 'wronged

28   again'" by the defendant absent injunctive relief, *Updike*, 870 F.3d at 947–48 (quoting *Lyons*, 461

U.S. at 111); *see also, e.g.*, *Aldrich II*, 565 F. Supp. 3d at 1102 ("To show an injury in fact based on an increased risk of future harm, there must be certainly impending future harm. . . . [T]here must be a substantial risk that the harm will occur and the risk cannot be too speculative." (cleaned up)).  Does 4–12 have not and cannot carry this burden:

- John Does 5, 6, 8, 9, 10, and 12 have graduated from or otherwise left college, and the FAC alleges no facts to indicate that they continue to play college baseball or any other college sports.  FAC ¶¶ 42, 352, 355, 358, 360 (Doe 5), 367–368, 372, 382 (Doe 6), 45, 410, 414 (Doe 8), 46, 428–429 (Doe 9), 296 (Doe 10), 330–333 (Doe 12).

- John Doe 4 started playing baseball at USF as a freshman in 2017 before transferring in 2018.  *Id.* ¶¶ 41, 298, 307.  John Doe 7 attended and played baseball at USF as a freshman from 1999 to 2000 before transferring to a community college.  *See id.* ¶¶ 44, 396–397.  John Doe 11 attended and played baseball at USF as a freshman from 1999 to 2000 before transferring to a community college.  *See id.* ¶¶ 48, 446.  The FAC alleges no facts to indicate that Does 4, 7, or 11 continue to be collegiate athletes.

Because none of these Plaintiffs are current student-athletes, none of them could be subject to "a real and immediate threat of repeated injury" traceable to any allegedly unlawful inactions by the NCAA.  *Updike*, 870 F.3d at 948.  They therefore lack standing to seek injunctive relief requiring the NCAA to "adopt, implement, and enforce appropriate policies and procedures to prevent, or properly respond to, sexual misconduct and psychological abuse of students and student-athletes."  FAC, Prayer for Relief ¶ D.  Their demands for such relief must be dismissed or stricken.[7]  *See, e.g.*, *B.C. ex rel. Powers v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (former student lacked standing to seek injunctive relief following illegal dog sniff at school because "he no longer is a student" at the school or within the defendant district); *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1036–37 (9th Cir. 2006) (former employee lacked standing to seek "injunction requiring the anti-discriminatory policies she requests at her former

---

[7] Indeed, the FAC itself acknowledges that injunctive relief requiring the NCAA to take such measures would be necessary only on the theory that it would benefit "current and future students and student-athletes."  FAC ¶ 453.

1    place of work"); *Baas v. Dollar Tree Stores, Inc.*, 2009 WL 1765759, at *2–3 (N.D. Cal. June 18,

2    2009) (striking former employees' request for injunctive relief because "they cannot show that

3    there is a real and immediate threat that they will suffer future wage and hour violations").

4         **D.      The Claims of Does 4–12 Are Time-Barred.**

5         All twenty claims of Does 4–12 concern conduct that allegedly occurred more than four

6    years ago, dating as far back as 1999.  Although the NCAA takes these allegations seriously and

7    does not condone conduct like that alleged, all of these legal claims are untimely, and Does 4–12's

8    attempts to invoke exceptions that would alter applicable limitations periods are unavailing.  *See*

9    FAC ¶¶ 454–465.  As a result, the claims of Does 4–12 should be dismissed.  See *Jablon v. Dean*

10   *Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("If the running of the statute [of limitations] is

11   apparent on the face of the complaint, the defense may be raised by a motion to dismiss.").

12        **1.      California Law Supplies the Relevant Limitations Periods.**

13        Where federal jurisdiction is premised on diversity, federal courts apply the pertinent state

14   statute of limitations.  *Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir.1992).

15   California's approach to choice-of-law in the statute of limitations context "generally leads

16   California courts to apply California law, and especially so where California's statute would bar a

17   claim." *Deutsch v. Turner Cor*p., 324 F.3d 692, 716 (9th Cir.2003) (citations omitted).

18        **2.      The Claims of Does 4–12 Arose more than Four Years Ago.**

19        Plaintiffs' claims for negligence, intentional infliction of emotional distress, and breach of

20   implied contract are subject to a two-year statute of limitations.  Cal. Civ. Proc. Code § 335.1; *see*

21   *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 357 (2008) (applying § 335.1 to

22   negligent supervision claim); *Miller v. Bank of Am., Nat'l Ass'n*, 858 F. Supp. 2d 1118, 1127 (S.D.

23   Cal. 2012) ("In California, intentional and negligent infliction of emotional distress claims have a

24   two-year statute of limitations."); Cal. Civ. Proc. Code § 339 (two-year statute of limitations on

25   "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing").

26   Plaintiffs' claims for breach of fiduciary duty and breach of a written contract are subject to a

27   four-year limitations period.  *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th

28   1451, 1479 (2014) (breach of fiduciary duty); Cal. Civ. Proc. Code § 337 (breach of written

contract).

The FAC alleges that Does 4–12 each attended USF, experienced wrongful conduct there, and left the school more than four years before the filing of the FAC on July 15, 2022.  FAC ¶¶ 41–49.  Specifically: **Does 4**, **10**, and **12** left USF in spring 2018, *id.* ¶¶ 41, 47, 49; **Doe 6** attended USF until 2015, *id.* ¶ 43; **Does 5** and **7** left USF in 2014, *id.* ¶¶ 42, 44; **Doe 8** left USF in 2013, *id.* ¶ 45; and **Does 9** and **11** left USF in 2000, *id.* ¶¶ 46, 48.  These allegations render the claims of Does 4–12 untimely, and they should be dismissed.  *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (a court may consider statute of limitations issues that are "apparent on the face of the complaint" on a motion to dismiss).  In apparent recognition of these fatal defects, Does 4–12 assert that their claims remain viable under the discovery rule, and alternatively tolling under equitable estoppel/fraudulent concealment.  FAC ¶¶ 454–465.

### 3. The Discovery Rule Does Not Revive the Claims of Does 4–12

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (affirming dismissal).  A "plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements."  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).  "[I]gnorance of the legal significance of known facts" does not delay accrual.  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988); *see also Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1049–50 (9th Cir. 2008) (A "claim accrues upon awareness of the actual injury . . . and not when the plaintiff suspects a legal wrong.").

Does 4–12 claim that they "did not discover that they had viable claims until March 11, 2022," when the *San Francisco Chronicle* published an article about the first Complaint in this action.  FAC ¶ 463.  Plaintiffs' specific allegations are to the contrary.  Does 4–12 allege specific facts showing that they all appreciated the wrongfulness of the conduct alleged, and were aware of the actual injury at the time it happened.  For example:

- **Doe 4** alleged experiences in "2017-18" where he was "mortified" and "humiliated" by the alleged conduct at the time it occurred, he was "crushed" by it, and he called his mother daily in tears.  *Id.* p. 64, ¶¶ 303, 305–307.

- **Doe 5** alleged experiences in "2011-14" where he felt "unsafe," "very upset," and "isolated and threatened," and that he has suffered adverse psychological consequences such as nightmares about USF baseball "[s]ince 2012." *Id.* p.70, ¶¶ 339, 341, 343, 349, 352, 360, 362.

- **Doe 6** alleged that his parents wrote a letter in May 2014 in which they described certain conduct as "completely unacceptable behavior" creating a "hostile environment." *Id.* p. 76, ¶ 379.

- **Doe 7** alleged that he experienced "the worst night of [his] life" in 2014, and that he developed anxiety, experienced sleep deprivation, and feared for his safety that same year. *Id.* p. 79, ¶¶ 391, 395–396.

- **Doe 8** alleged that his "confidence and his mental state" were "destroyed" during his single semester at USF in 2013; he also "sought counseling" and "began hating going to the field each day" at that time. *Id.* p. 81, ¶¶ 406–407, 410–411, 45.

- **Doe 9** alleged that he experienced "dread," and became "severely depressed" by October of his freshman year (in 2000) and that his mother allegedly called one of the coaches "to demand the abuse stop" while Doe 9 was still a member of the USF baseball team. *Id.* p.84, ¶¶ 420, 424–425.

- **Doe 10** alleged that he "was disgusted" by conduct he experienced in early 2018, that he "confided in the pitching coach" while "crying hysterically" after a baseball game that same year, and that "[b]y the end of the year, John Doe 10 and his parents agreed that John Doe 10 needed to leave in order to protect his mental health." *Id.* p. 61, ¶¶ 284–287, 293, 47.

- **Doe 11** alleged that he "became highly uncomfortable during practices" during the 1999–2000 school year, such that "[h]e did not want to go to practices," and his "mental, emotional, and physical condition declined." *Id.* p. 87, ¶¶ 438, 440, 48.

- **Doe 12** alleged that his father flew to USF sixteen times during Doe 12's freshman year in 2017–2018 "to provide his son emotional support out of concern" stemming from the allegedly wrongful conduct. *Id.* p. 66, ¶¶ 329, 49.

These specific allegations in the FAC show that Does 4–12 recognized the wrongfulness of the Coach Defendants' alleged actions in real time or shortly thereafter, meaning their claims all accrued more than four years ago.  It is of no consequence for the statute of limitations analysis if they in fact did not know the legal injury at that time.  It is a "well established rule that ignorance of the legal significance of known facts" does not delay accrual.  *Jolly*, 44 Cal. 3d at 1110; *Lukovsky*, 535 F.3d at 1051 (finding that plaintiffs' claims accrued when they "knew they had been injured and by whom even if at that point in time the plaintiffs did not know of the legal injury" (citation omitted)).  Again, although the NCAA takes these allegations and the alleged impacts seriously, these allegations prove that each claim of Does 4–12 accrued before each left USF, all more than four years ago.  The discovery rule does not revive the time-barred claims of Does 4–12.

### 4.    Tolling Is Unwarranted.

Plaintiffs' allegations fail to merit tolling under the equitable estoppel/fraudulent concealment doctrines because they: (1) fail to allege active conduct by the NCAA different from the alleged wrongdoing on which they base their claims; and (2) fail to allege they were unable to discover the underlying facts due to active concealment by the NCAA.  *First*, "[f]raudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed."  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000).  But Plaintiffs' claims of fraudulent concealment, at best, allege that the NCAA "fail[ed] to act," FAC ¶ 459, "intentionally ignored" them, *id.* ¶ 456, or directed them to contact the school directly, *id.* ¶ 459, not that the NCAA actively suppressed their complaints.  Even if these claims sufficiently alleged "active conduct," they allege the same wrongdoing as their substantive claims—that NCAA failed to act to protect them—which is inadequate for tolling.  Plaintiffs cannot and do not allege, for example, that NCAA "t[ook] active steps to prevent [Does 4–12] from suing in time, [such] as by promising not to plead the statute of limitations."  *Santa Maria*, 202 F.3d at 1176.

*Second*, the FAC fails to plead facts to support concealment by the NCAA.  "[T]he plaintiff seeking to toll the limitations period must show that she was diligent in attempting to

discover the facts underlying her cause of action and was unable to do so only because of the defendant's efforts to conceal that information." *Doe v. Univ. of S. Cal.*, 2019 WL 4229750, at *6 (C.D. Cal. July 9, 2019); *see also Grimmett v. Brown*, 75 F.3d 506, 515 (9th Cir. 1996) ("A failure to 'own up' does not constitute *active* concealment."). Here, Plaintiffs plead no facts demonstrating or even suggesting that NCAA did—or could have—concealed the facts underlying the abuse Does 4–12 alleged to have suffered. In fact, the FAC alleges that Doe 6's parents shared information about the facts underlying their causes of action with the NCAA through the FAR. *See* FAC ¶ 379. Leaving aside that this allegation cannot show concealment by the NCAA as the FAR is not an NCAA employee, this allegation is the exact opposite of the required showing that the NCAA concealed information from Plaintiffs. *Third*, a "party seeking tolling on this basis must demonstrate that it had neither actual nor constructive notice of the facts constituting the[] claims for relief." *Groth-Hill Land Co. v. Gen. Motors LLC*, 2013 WL 3853160, at *7 (N.D. Cal. July 23, 2013) (cleaned up). Here, the FAC shows that Does 4–12 had notice of all of the facts underlying their claims, including as discussed at Part II.D.3, *supra*. Finally, "allegations of fraudulent concealment . . . must be pled with particularity," with "allegations about the 'time, place, and specific content of the false representations.'" *Doe*, 2019 WL 4229750, at *5 (cleaned up). Plaintiffs' fraudulent concealment allegations are not pled with particularity.

Plaintiffs also invoke "equitable tolling." FAC ¶¶ 454, 464. But "[e]quitable tolling applies where the injured person has several legal remedies for the same harm and in good faith pursues one." *Acuna v. Regents of Univ. of Cal.*, 56 Cal. App. 4th 639, 647 (1997). The rule recognizes that Plaintiffs are not required "to initiate and maintain duplicative proceedings," *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir. 2001) (en banc), such as where a worker's compensation claim and a subsequent civil action concern the same harm. *See, e.g.*, *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 927–33 (1983) (plaintiff who filed a worker's compensation claim premised on the same essential factual elements as a subsequent disability pension claim satisfied equitable tolling test). Plaintiffs here do not point to *any* prior proceeding involving the "same wrong." Equitable tolling simply does not apply.

**E.      The NCAA Does Not Owe an Actionable Duty to Plaintiffs.**

If this Court does not dismiss the Complaint as to the NCAA for one of the defects above, it should dismiss the negligence-based claims because the NCAA does not owe a legally actionable duty required to support those claims.  Specifically, Plaintiffs' negligence-based claims (Counts III–IV, VII–XXI, XIII, XVIII–XXI) allege that the NCAA should have taken certain steps to protect Plaintiffs from the Coach Defendants.  *See, e.g.*, FAC ¶ 656 (alleging NCAA owed a duty to implement rules).  But absent a legally recognized duty owed by the NCAA to Plaintiffs, their negligence claims fail.  *See Yost v. Wabash Coll.*, 3 N.E.3d 509, 520 (Ind. 2014) (negligence requires proof of duty); *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 379 (Ind. 2022) (same as to negligent supervision).  Plaintiffs' failure to plead that the requisite duty exists here justifies dismissal as a matter of law.  *See Spierer v. Rossman*, 798 F.3d 502, 513 (7th Cir. 2015) (affirming dismissal of negligence claim for failure to allege duty under Indiana law); *Rosenbaum v. Seybold*, 2008 WL 513205, at *2 (N.D. Ind. Feb. 22, 2008) ("Whether [defendant] had a duty of care to the Plaintiffs . . . is purely a legal question that may potentially be resolved on a motion to dismiss.").

**1.      Choice of Law for Direct Liability Negligence-Based Claims.**

The law of Indiana—where the NCAA is headquartered, FAC ¶ 50—applies to the issue of whether the NCAA owed Plaintiffs a duty of care.  Application of California's choice-of-law rules makes clear that the law of Indiana—where the NCAA is headquartered and maintains its principal place of business, FAC ¶ 50—applies to the issue of whether the NCAA owed Plaintiffs a duty.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).  Under California's three-part "government interest" test, courts analyze:

*First*, "whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different."  *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006).  California law regarding duty is materially different from the law of Indiana.  Whereas in California, courts must first find a special relationship between the parties and then apply an eight-factor test that considers not only foreseeability but also a myriad of specific public policy concerns, ranging from moral blame to insurance availability, Indiana relies

on a three-factor test—and the only factor in common between the two is foreseeability.  *Compare Brown v. USA Taekwondo*, 11 Cal. 5th 204, 217 (2021) *with Webb v. Jarvis*, 575 N.E.2d 992, 997 (Ind. 1991).

*Second*, if there is a difference in law, "the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists."  *Kearney*, 39 Cal. 4th at 107–08.  Here, California's interest in applying its law is attenuated, as it was in *Cover* and *Frezza*, because the place of the alleged wrong has the predominant interest.  *Cover v. Windsor Surrey Co.*, 2016 WL 520991, at *8 (N.D. Cal. Feb. 10, 2016); *Frezza v. Google Inc.*, 2013 WL 1736788, at *7 (N.D. Cal. Apr. 22, 2013).  Although any alleged wrong by the Coach Defendants took place in California, none of the wrongs alleged by Plaintiffs as to *the NCAA* took place in California.  Plaintiffs allege that the NCAA owed a duty to Plaintiffs to enact certain rules, *e.g.*, FAC ¶ 656, and to supervise coaches at member institutions, *e.g.*, *id.* ¶ 517, and Indiana, the state where the NCAA is headquartered and maintains its principal place of business, *id.* ¶ 50, is where it would have facilitated work with its member institutions and from where it would have implemented any rules adopted by its member institutions.

*Third*, if there is a true conflict, the court "compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated," and the law of the jurisdiction whose policy would be more impaired applies.  *Kearney*, 39 Cal. 4th at 108 (cleaned up).  Here, Indiana has a strong interest in the application of its own laws to an association headquartered in Indiana, which is alleged to have acted wrongly in its official acts or omissions—none of which is alleged to have occurred anywhere other than where the NCAA is headquartered.  In contrast, California does not have a strong interest in the application of its laws on the issue of the NCAA's duty, as none of the *NCAA's* wrongdoing is alleged to have occurred in California.  Although Plaintiffs allege that the USF FAR engaged in wrongdoing by failing to act on a complaint by Doe 6's parents, as noted above, the FAR at a university is a university employee, not someone affiliated with the NCAA, and their actions cannot be attributed to the NCAA.  *See supra* pp.11–12 & n.4.  Just as in *Cover*, where the alleged harm occurred in Rhode Island and the court rejected plaintiff's invocation of

1   California law, here California has an insufficient interest in the application of its laws as

2   compared to Indiana, where the "events necessary for liability in this case" as to the NCAA's duty

3   occurred.  *Cover*, 2016 WL 520991, at *8.

4           Allowing California to trump Indiana's interests in applying its laws to conduct within its

5   borders would be inconsistent with the "principle of federalism that each State may make its own

6   reasoned judgment about what conduct is permitted or proscribed within its borders."  *Mazza*, 666

7   F.3d at 591 (cleaned up).  The NCAA's alleged actions and omissions in addressing sexual abuse

8   and harassment occurred in Indiana, and none occurred in California.  Indiana's interest outweighs

9   California's, requiring the application of Indiana law.

10          **2.      Plaintiffs Fail to Establish the Required Duty to Plaintiffs.**

11                  *(a)     The NCAA Owes No Legally Actionable Duty of Care as a Matter of
                            Law to Plaintiffs.*

12          "A duty of reasonable care is 'not, of course, owed to the world at large,' but arises out of a

13   relationship between the parties."  *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind. Ct.

14   App. 2004) (quoting *Webb*, 575 N.E.2d at 997).  Nor is there a "duty . . . to control the conduct of

15   a third person as to prevent him from causing physical harm to another" without a special

16   relationship between the defendant and the third person or the defendant and the plaintiff.  *See*

17   *Neal v. IAB Fin. Bank*, 68 N.E.3d 1114, 1118 (Ind. Ct. App. 2017) (quoting Restatement (Second)

18   of Torts § 315).  In determining whether a duty exists, Indiana courts balance the so-called *Webb*

19   factors: the parties' relationship, the reasonable foreseeability of the harm, and public policy

20   concerns.  *Webb*, 575 N.E.2d at 995.  All three *Webb* factors weigh against imposing a duty here.

21          *First*, with over 460,000 student-athletes competing in NCAA sports annually, at more

22   than 1,000 schools, FAC ¶¶ 50, 471, Plaintiffs cannot plausibly allege that the NCAA has "direct

23   oversight and control" over student-athletes like Plaintiffs.  *See Yost*, 3 N.E.3d at 521 (no duty

24   imposed on national fraternity for incidents by members when the fraternity had no "direct

25   oversight and control" of members and when relationship was "remote").  Indeed, the NCAA's

26   member institutions and conferences have delegated to themselves—not the NCAA—the

27   responsibility of overseeing student-athletes' health and safety.  FAC ¶ 90 (citing NCAA Const.

28

art. 2, § 2.2.3).  Plaintiffs allege that the NCAA maintains "control over and responsibility *for intercollegiate sports*," *id*. ¶ 89 (emphasis added), and that it does so by "enforc[ing] rules," *id*. ¶ 656.  But Indiana law makes clear that this kind of supervisory role does not suffice to impose a general duty of care.  Rather, Plaintiffs must show that the NCAA had "day-to-day management" over the specific actions of coaches, or that its employees were present on campus and in a position to exercise "direct oversight and control."  *Yost*, 3 N.E.3d at 521.  Plaintiffs do not allege that the NCAA had "direct oversight and control" over coaches and student-athletes.  To the contrary, Plaintiffs urge the NCAA to enact policies requiring "athletics department personnel" at member institutions (that is, those with day-to-day control) to report coach misconduct to the NCAA, FAC ¶ 656, thereby acknowledging that the NCAA has no day-to-day oversight over member institutions' coaches and athletes.  Nor does the presence of the FAR—who, as noted above, is selected and employed by the member institution—provide the NCAA with the ability to exercise direct oversight and control over coaches.  Just as the national fraternity in *Yost* designated an advisor that acted as a liaison between the national and local fraternities, but that appointment of the advisor, although "subject to approval by the national fraternity," did not give rise to a duty for the national fraternity because he was not under its control.  *Yost*, 3 N.E.3d at 520.

Second, Plaintiffs do not make any factual allegations showing their harassment was reasonably "foreseeable" by the NCAA.  The Indiana Supreme Court holds that foreseeability turns on "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it."  *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 392 (Ind. 2016).  Plaintiffs identify policies issued by other sports associations in the 1990s and more recently prohibiting coach-athlete sexual harassment and abuse.  FAC ¶¶ 69–75.  But non-collegiate sports associations' issuance of policies condemning such conduct are not events that make the type of harassment Plaintiffs suffered either "probable" or "likely" such that the NCAA could have reasonably foreseen the Coach Defendants' alleged harassment of Plaintiffs here.  There is nothing in the FAC to support the requisite showing of reasonable foreseeability that Plaintiffs faced a risk of sexual harassment such that the NCAA should have acted.  Notably,

too, Plaintiffs have not alleged that they informed the NCAA about any wrongdoing by coaches at their institutions.  As explained above, the FAR is not an NCAA employee or agent, and Plaintiffs' use of the disjunctive "or" in asserting that the NCAA "knew or should have known" of the alleged harassment suggests Plaintiffs have no basis for making this speculative allegation. *E.g.*, FAC ¶ 546.

*Third*, the final *Webb* factor—public policy—strongly counsels against finding a duty for the NCAA because it would penalize the NCAA for taking steps to support its member institutions in combatting sexual harassment.  The Indiana Supreme Court in *Yost* recognized that a national fraternity "should be encouraged, not disincentivized, to undertake programs to promote safe and positive behavior and to discourage hazing and other personally and socially undesirable conduct." *Yost*, 3 N.E.3d at 521.  The national fraternity in *Yost* "strongly disapproved of hazing . . . in its printed charters and bylaws" and, "through its aspirational enactments and promotional materials," informed its members that its insurance policies prohibited hazing, required that individual members complete trainings on the dangers of hazing, and retained the power to "issue and suspend charters" and to "discipline or expel individual members of the fraternity." *Id.* at 520. The court reasoned that public policy weighed against finding a duty given the national fraternity's lack of direct oversight and control over individual fraternity members and given the public policy in favor of encouraging education to promote positive behavior.  *Id.* at 521.  Like the national fraternity in *Yost*, the NCAA has organized commissions to raise awareness about campus sexual abuse, (FAC ¶ 110), and developed publications and model policies that member institutions can use to combat sexual abuse, (*id.* ¶¶ 66, 109, 112–113).  As in *Yost*, these actions "should be encouraged, not disincentivized."  *Yost*, 3 N.E.3d at 521.

Moreover, Indiana courts have consistently expressed a strong public policy against imposing a duty on national entities like the NCAA where the national entity "lack[s] any direct oversight and control" over the individual actors whose conduct causes injury and where "day-to-day management" of those individuals is the responsibility of local entities and not the national entity.  *See Yost*, 3 N.E.3d at 521; *Smith v. Delta Tau Delta, Inc.*, 9 N.E.3d 154, 163 (Ind. 2014) (finding no duty where national fraternity provided educational information and policies on hazing

but lacked day-to-day oversight and control over the behavior of local fraternities and its members). Although sexual harassment is unfortunately "in the broadest sense . . . foreseeable," just like crime in *Goodwin* or fraternity-related hazing in *Yost*, allowing such general foreseeability to turn the NCAA into an "insurer[]" of safety from sexual harassment is contrary to the public policy of Indiana. *Goodwin*, 62 N.E.3d at 394 (cleaned up).

### (b)   The NCAA Did Not Assume a Duty to Plaintiffs.

The NCAA has not, through its efforts to assist member institutions in combatting sexual abuse, assumed a duty toward Plaintiffs. In Indiana, "[a] duty of care may arise where one party assumes such a duty, either gratuitously or voluntarily. The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Yost*, 3 N.E.3d at 517 (cleaned up). This "requires affirmative, deliberate conduct such that it is apparent that the actor specifically undertook to perform the task that he is charged with having performed negligently." *Id.* (cleaned up). "[T]he concept of assumed duty . . . requires a focus upon the specific services undertaken. While an actor may be accountable for negligence in the performance of certain services actually undertaken, such liability does not extend beyond the undertaking." *Id.* at 521.

Plaintiffs allege the NCAA's duty arises from its constitution, bylaws, and website that allegedly established a duty to protect student-athletes' health and well-being, along with the NCAA's "positioning itself as the exclusive authority in intercollegiate athletics to preserve amateurism." FAC ¶ 657. Such general, aspirational statements regarding student-athlete well-being or about the roles of the NCAA in collegiate athletics are insufficient to allege the NCAA undertook "affirmative, deliberate conduct" to protect Plaintiffs from the Coach Defendants' alleged abuse. *See, e.g.*, *Yost*, 3 N.E.3d at 517 (college did not voluntarily assume duty through a general policy against hazing that "evince[d] no more than a general intent to elicit good behavior from and maintain general order among the student body").

Plaintiffs also identify several steps the NCAA has taken to support its member institutions in working to prevent sexual abuse on campuses, such as issuing publications explaining the imbalance of power in coach-athlete relationships and providing a toolkit for member institutions

to use for sexual violence prevention.  *See* FAC ¶¶ 66, 109, 112–113.  But none of these specific "undertakings" extend to direct oversight and control of the day-to-day behavior of individual coaches at member institutions.  The Indiana Supreme Court has twice held that national fraternities did not voluntarily assume duties of care to their members to prevent hazing injuries, reasoning that educational programs and bylaws discouraging hazing did not create "actual oversight and control" over their members.  *Yost*, 3 N.E.3d at 518, 521; *Smith*, 9 N.E.3d at 160–63.

Even more on point, in *Lanni v. National Collegiate Athletic Ass'n*, 42 N.E.3d 542 (Ind. Ct. App. 2015), a college fencer sued the NCAA following an eye injury at a competition.  The NCAA had, among other things, established rules of competition, modified safety guidelines, and collected data to "provide athletes with a safe competitive environment."  *Id*. at 553 (alteration omitted).  The court held that "the specific duties undertaken by the NCAA with respect to the safety of its student-athletes was simply to provide information and guidance to the NCAA's member institutions and student-athletes."  *Id*.  Although the steps taken by the NCAA to actively engage its member institutions and student-athletes in how to avoid unsafe practices were "commendable," the court found they did "not rise to the level of assuring protection of the student-athletes from injuries that may occur at sporting events."  *Id*.  The court reasoned that "[a]ctual oversight and control cannot be imputed merely from the fact that the NCAA has promulgated rules and regulations and required compliance with those rules and regulations."  *Id*.  And the court held that "[t]he NCAA's conduct does not demonstrate that it undertook or assumed a duty to actually oversee or directly supervise the actions of the member institutions and the NCAA's student-athletes."  *Id*.

Similarly here, the steps identified by Plaintiffs—including the publication of informational resources for member institutions and promulgation of model policies that member institutions may adopt, FAC ¶¶ 112–113—are simply informational resources and guidance for member institutions and student-athletes.  As in *Lanni*, actual oversight and control "cannot be imputed merely from the fact that the NCAA has promulgated rules and regulations and required compliance" with them.  *Lanni*, 42 N.E.3d at 553.  These actions do not, under *Yost*, *Smith*, or

*Lanni*, demonstrate that the NCAA specifically undertook or assumed a duty to directly supervise coaches like the Coach Defendants and protect student-athletes from them.

     (c)  *The NCAA Does Not Owe a Fiduciary Duty to Plaintiffs.*

    Plaintiffs' assertion in Count XIII (breach of fiduciary duty) that the NCAA owes a fiduciary duty to Plaintiffs arising from a "special relationship of trust and confidence" between the NCAA and its student-athletes, FAC ¶ 596, is incorrect given the narrow circumstances in which Indiana law recognizes fiduciary duties. A fiduciary relationship requires a "confidential relationship," which exists "whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998) (citation omitted). Certain specified relationships create a presumption of influence—for instance, an attorney and client. *See In re Estate of Neu*, 588 N.E.2d 567, 570 (Ind. Ct. App. 1992). Plaintiffs do not allege facts showing they personally had or have a confidential relationship with the NCAA resulting in influence over them. Nor could they. Relationships between the NCAA, a national association of colleges and universities, and student-athletes are not recognized as having this presumption of influence. *See Flood v. Nat'l Collegiate Athletic Ass'n*, 2015 WL 5785801, at *11 (M.D. Pa. Aug. 26, 2015), *report and recommendation adopted*, 2015 WL 5783373 (M.D. Pa. Sept. 30, 2015) ("[C]ourts have flatly rejected the notion that the relationship between student-athletes, colleges, and the NCAA somehow rises to the level of a fiduciary relationship."); *Schmitz v. Nat'l Collegiate Athletic Ass'n*, 67 N.E.3d 852, 870 (Ohio Ct. App. 2016) ("To suggest that the NCAA maintains a 'special relationship' akin to a fiduciary relationship with all of its 400,000 students who participate in intercollegiate athletics is simply not supported under the law.").

     (d)  *The NCAA Does Not Owe a Duty to Support Plaintiffs' "Negligent Misrepresentation/Omission" Claim.*

    To support their "negligent misrepresentations and omissions" claim, Count XIV, Plaintiffs allege the NCAA "concealed facts and information material to" them. FAC ¶ 605. Indiana does not recognize a negligent misrepresentation claim outside of the context of professionals, such as brokers, attorneys, abstractors, and surveyors, and employer-employee

relationships. *See Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, 2017 WL 4123050, at *9 (S.D. Ind. Sept. 18, 2017). Even if it did, Plaintiffs have not identified any affirmative misrepresentations by the NCAA to support their claim. *See Passmore v. Multi-Mgmt. Servs., Inc.*, 810 N.E.2d 1022, 1025 (Ind. 2004) (negligent misrepresentation requires an "affirmative misrepresentation").

              (e)       *The NCAA Did Not Have a Duty to Supervise the Actions of the Coach Defendants.*

      Plaintiffs' claims that the NCAA was negligent in "supervising and/or retaining [the Coach Defendants]," Counts III and IV, FAC ¶¶ 519, 528, fail because there was no employment or agency relationship between the NCAA and the Coach Defendants. Because it is the "master-servant" relationship that gives rise to a "duty to control the conduct of a third person," a negligent supervision claim requires that there be an employment or agency relationship. *See BGC Ent., Inc. v. Buchanan ex rel. Buchanan*, 41 N.E.3d 692, 703 (Ind. Ct. App. 2015) (cleaned up). Here, as is discussed below, there is neither an agency nor an employment relationship between the NCAA and the Coach Defendants. *See infra* section III.G.2. The NCAA therefore did not have a duty to supervise them.

    **F.**      **Plaintiffs' Contract and Third-Party Beneficiary Claims Fail as a Matter of Law.**

        **1.**      **Choice of Law for Contract Claims**

      California law applies to Plaintiffs' breach of contract (Counts XV and XXII) and breach of implied contract (Counts XVI and XXIII) claims. Under California's choice-of-law rules, the government-interest analysis applies to whether a contract is valid and enforceable. *See Castaldi v. Signature Retail Servs., Inc.*, 2016 WL 74640, at *5 (N.D. Cal. Jan. 7, 2016) (citing *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010) (applying government interest test to contract enforceability). For purposes of this motion, there are no material differences between California and Indiana law on the contract enforceability questions at issue in this case, and California law therefore applies.

      California law also applies to the third-party beneficiary claim. The choice-of-law rules codified in Section 1646 of the California Civil Code apply to questions of contract interpretation.

*See Frontier Oil Corp. v. RLI Ins.*, 153 Cal. App. 4th 1436, 1449 (2007).  Whether a contract was intended to benefit a third party is a question of contract interpretation.  *Cline v. Homuth*, 235 Cal. App. 4th 699, 705 (2015).  Under Section 1646, a court applies the law of the contract's "place of performance."  Cal. Civ. Code § 1646.  Plaintiffs identify the Division I Manual as the "contract" for which Plaintiffs were beneficiaries.  FAC ¶ 634.  Assuming the Manual constitutes a contract between the NCAA and member institutions (which it does not), the Manual's intended "place of performance" was on the member institution's campus: here, the University of San Francisco.  Thus, California law applies to Plaintiffs' third-party beneficiary claim.

## 2.  Breach of Express/Implied Contract

Plaintiffs' breach of express and implied contract claims (Count XV–XVI and XXII–XXIII) should be dismissed because Plaintiffs have not identified a valid contract between themselves and the NCAA.  *See Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971).  A mutual manifestation of assent is required for both claims.  *See Binder v. Aetna Life Ins.*, 75 Cal. App. 4th 832, 850 (1999) ("The distinction between *express* and *implied in fact* contracts relates only to the *manifestation of assent;* both types are based on the expressed or apparent intention of the parties." (citation omitted)).  Plaintiffs point to the NCAA's Student-Athlete Statement form (hereinafter "form") FAC ¶ 616, but the form contains no manifestation of mutual assent between a student-athlete and the NCAA to enter into a contractual relationship.  The form sets forth its "purpose" in its header: "[t]o assist in certifying eligibility."  *See* FAC Ex. A at 2.  The form requires student-athletes to attest that they have reviewed the Manual for the portions that "address [their] eligibility."  *Id.*  It references the Manual, but only the requirements relating to "[t]he conditions [student-athletes] must meet to be eligible and the requirement that [they] sign this form."  *Id.* at 3.  And the form does not contain *any* affirmative commitment by the NCAA to do anything, not even a commitment to process the form—rather, the form states that it is to be returned to the *member institution's* director of athletics and kept there for six years.  *Id.* at 8.  As the Manual explains, while the NCAA "prescribe[s] [the contents]" of the form, the member institution administers the form and maintains the form.  Richardson Decl., Ex. 1 (Manual) at 80 (NCAA Bylaws art. 12, §§ 12.7.2.1–12.7.2.2).

In short, the form does not constitute a contract between the NCAA and student-athletes; instead, it allows member institutions to collect information on students' eligibility to participate in NCAA sports. *Cf. Hall v. Nat'l Collegiate Athletic Ass'n*, 985 F. Supp. 782, 794 & n.27 (N.D. Ill. 1997) (concluding that a different form verifying the coursework eligibility of prospective student-athletes constituted a contract for the NCAA's processing agent to "process and then evaluate [the] application" in consideration of a fee and that the student could sue for breach only if the agent "had not processed the information, but cashed the check anyway"). There is no authority for the proposition that an organization that publishes a template form enters into a binding contract with anyone who fills out that form.

Plaintiffs attempt to cobble together a contract by arguing that the form references the Manual, in which they allege the NCAA makes promises to student-athletes. This, they contend, makes the Manual a contract between student-athletes and the NCAA. FAC ¶¶ 617–618. This argument fails. First, Plaintiffs do not allege that the NCAA is the author of the Manual, as opposed to the publisher of a Manual authored by the member institutions. Further, a review of the Manual makes clear that the NCAA did not make any promises for the student-athletes' benefit in the Manual. Instead, the Manual divides responsibilities between the NCAA and member institutions. Plaintiffs allege that the Manual promises that the NCAA will "conduct intercollegiate athletics programs 'in a manner designed to protect and enhance' student-athletes' physical and educational well-being." *See* FAC ¶ 618(d). But Plaintiffs omit the fact that the Manual, in fact, states that it is the "responsibility of *the member institution*," who oversees the day-to-day operations of their respective programs, to do so. *Compare* FAC ¶ 618(e)–(g), *with* Richardson Decl., Ex. 1 (Manual) at 2 (NCAA Const. art. 2, §§ 2.2.3, 2.2.4, 2.2.1). Contrary to Plaintiffs' selective quotation of the Manual (which they also selectively quoted in *Aldrich I and II*), the Manual does not pledge that the NCAA will require the member institutions to do anything. Instead, the Manual makes it "*the responsibility of each member institution* to protect the health of, and provide a safe environment for, each of its participating student-athletes," "to establish and maintain an environment that fosters a positive relationship between the student-athlete and coach," and "to establish and maintain an environment in which a student-athlete's

activities are conducted as an integral part of the student-athlete's educational experience."
Richardson Decl., Ex. 1 (Manual) at 2 (NCAA Const. art. 2, §§ 2.2.3, 2.2.4, 2.2.1 (emphasis
added)).  The NCAA's role, meanwhile, is to "assist the institution" in achieving compliance
while "uphold[ing] the principle of institutional control."  *Id.* at 1 (NCAA Const. art. 1, § 1.2(b)),
3 (NCAA Const. art. 2, § 2.8.2).

Because the Manual contains no promises by the NCAA to student-athletes, there is no
valid contract between the NCAA and student-athletes in the form or the Manual, and the claim
must be dismissed.  *See Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 172–73
(D.D.C. 2017) (dismissing claim because plaintiff failed to plead valid contract with the NCAA).

Plaintiffs' implied contract claim (Count XVI) fails for the same reasons.  Plaintiffs
predicate their implied contract claim on "the facts and circumstances set forth" in support of their
express contract claim.  FAC ¶ 626.  These facts and circumstances, as explained above, do not
establish the "manifestation of assent" to be bound that is the lynchpin of an implied contract.
*Binder*, 75 Cal. App. 4th at 850.  That claim must also be dismissed.

### 3.     Breach of Contract as Third-Party Beneficiaries

Plaintiffs also cannot show that they are the third-party beneficiaries of an alleged contract
between the NCAA and member institutions, embodied in the NCAA Manual (Counts XVII and
XXIV).  A third party suing for breach of contract must show that the contracting parties *intended*
to benefit that third party.  *See Harper v. Wausau Ins.*, 56 Cal. App. 4th 1079, 1087 (1997) ("A
third party may qualify as a beneficiary under a contract where the contracting parties must have
intended to benefit that individual and such intent appears on the terms of the agreement.").

Plaintiffs thus must point to a statement in the alleged contract between the NCAA and its
member institutions indicating that by publishing the (451-page long) Manual, the NCAA
intended to assume binding contractual obligations to each of its 460,000 student-athletes.  They
fall far short of that.  The Manual provisions cited by Plaintiffs as the alleged "promises" allocate
responsibilities for student welfare between the NCAA and its member institutions, as discussed
above.  FAC ¶¶ 634, 713.  They embody the NCAA's commitment to supporting its member
institutions in advancing student-athletes' well-being.  *Id.*  But while students might benefit from

that division, they are at most incidental—not intended—beneficiaries, and thus cannot sue for breach of contract. *See Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 715 (D. Vt. 2012), *aff'd*, 570 F. App'x 66 (2d Cir. 2014) (casting doubt on the idea that a student was the intended beneficiary of the NCAA Manual's fairness provisions); *Hall v. Nat'l Collegiate Athletic Ass'n*, 985 F. Supp. 782, 796–97 (N.D. Ill. 1997) ("There can be no doubt that an important function of the NCAA and its constitution, bylaws, and regulations, is to benefit student athletes. It is not clear, however, that this fact is sufficient to elevate a student from an incidental to an intended beneficiary.").

Indeed, the Ninth Circuit considered, and rejected, a similar argument in *Hairston v. Pacific 10 Conference*, 101 F.3d 1315 (9th Cir. 1996), *as amended* (Dec. 19, 1996). In *Hairston*, student-athletes contended that they were third-party beneficiaries of a contract between the Pacific-10 ("Pac-10") Conference and its member institutions, embodied in the Pac-10 Constitutions. *Id.* at 1320. The *Hairston* plaintiffs pointed to statements that are indistinguishable from those highlighted by Plaintiffs here: the *Hairston* plaintiffs, too, pointed to commitments to "'administer [an] athletic program in accordance with the Constitution, Bylaws, and other legislation of the Conference,' 'conduct [their] intercollegiate athletic program in keeping with the highest recognized standards and in a manner which will enhance the reputation for integrity of the Pacific–10 Conference,' 'assure the intercollegiate athletic program is maintained as an integral part of the educational objectives and programs on the campus of each Pacific–10 Conference member institution,' and 'participate in the sports of football and basketball.'" *Id.* The Ninth Circuit rejected the argument, agreeing that "these pronouncements are not sufficient to support the players' claims that the Pac–10 intended to assume a direct contractual obligation to every football player on a Pac–10 team." *Id.* (citation omitted). So too here. Plaintiffs "have not demonstrated that the parties intended to create direct legal obligations between themselves and the students." *Id.* Their third-party beneficiary claim must be dismissed.

**G.** **The NCAA Is Not in an Employment or Agency Relationship with the Coach Defendants and Is Not Vicariously Liable for Their Actions.**

**1.** **Choice of Law**

California's government interest analysis applies to tort claims, including issues involving vicarious liability. *See Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 (9th Cir. 1994). For purposes of this Motion and these Plaintiffs, there are no material differences between the relevant jurisdiction's laws for vicarious liability, so California law applies.

**2.** **Respondeat Superior Is Inapplicable Because USF, Not the NCAA, Employed and Controlled the Coach Defendants.**

Plaintiffs ask this Court to hold the NCAA vicariously liable for the Coach Defendants' conduct under theories of respondeat superior and ratification (Counts VII (FAC ¶ 550), VIII (FAC ¶ 561), X–XI). Both fail against the NCAA.

The doctrine of respondeat superior does not allow for "the imposition of liability on a defendant based on the acts of a party with whom it had no agency or employment relationship." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 392 (1982); *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 499 (2014). Plaintiffs do not allege that the Coach Defendants were employed by the NCAA. Instead, they allege that both were employed by USF until early 2022. FAC ¶¶ 52–53. Plaintiffs thus fail to allege the employment relationship traditionally required for respondeat superior.

Nor do Plaintiffs allege the kind of "right to control the manner and means of accomplishing the result desired" required to prove either an employment or another agency relationship. *S.G. Borello & Sons v. Dep't of Indus. Rels.*, 48 Cal. 3d 341, 350 (1989) (citations omitted); *Wickham v. Southland Corp.*, 168 Cal. App. 3d 49, 59 (1985). To hold the NCAA liable, Plaintiffs must show that, as to the Coach Defendants, the NCAA "has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior." *See Patterson*, 60 Cal. 4th at 478. Plaintiffs' allegations confirm that it is USF—not the NCAA—that supervised the Coach Defendants' day-to-day conduct; it faults USF for failing to act on "complaints made to the very highest levels of the Athletic Department," FAC ¶ 10, and recounts numerous alleged instances of

athletics department personnel exercising supervisory authority (according to Plaintiffs, poorly) as to the Coach Defendants.  *E.g.*, FAC ¶¶ 212–214 (alleging that USF's athletics director failed to act on complaints of the Coach Defendants' misconduct and instead told them about the complaints).  This is insufficient to hold *the NCAA*, which Plaintiffs do not allege had a right of day-to-day control over the Coach Defendants, liable for their conduct.  *See Patterson*, 60 Cal. 4th at 497 (franchise contract that sets out standards and procedures for franchisee to follow but leaves day-to-day control to the franchisee is not sufficient to impose vicarious liability on the franchisor for the conduct of the franchisee's employee); *Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 85 (2019) (national fraternity not vicariously liable for conduct of local fraternity members, even though the national fraternity had post-conduct disciplinary powers, because the national fraternity lacked day-to-day control over the relevant conduct).  Thus, to the extent Plaintiffs contend that the Coach Defendants are the NCAA's agents, this allegation is implausible and should not be credited by this court.  *See Imageline, Inc. v. CafePress.com, Inc.*, 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011) ("To sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent.").

### 3.  Respondeat Superior Is Also Inapplicable Because Sexual Misconduct Is Outside the Coach Defendants' Scope of Employment as Coaches.

Even if Plaintiffs could show that the Coach Defendants were the NCAA's employees or agents, which they cannot, their alleged conduct was not "committed within the scope of [their] employment" as a matter of law.  *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 447 (1989) (citation omitted).

"If an assault" or other intentional tort "is motivated by personal malice and is totally unrelated to the employment, the act is outside the scope of employment and the employer is not vicariously liable."  *Id.* at 464.  California cases have long applied this rule to hold that "except where sexual misconduct by on-duty police officers against members of the public is involved, the employer is not vicariously liable to the third party for such misconduct" as a matter of law.  *See Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1006 (1995) (citations omitted).  Courts consistently have held that an employee's taking advantage of a professional position of

trust to commit a sexual assault does not place that assault within the employee's scope of employment. *See Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 301 (1995) (hospital not liable for sexual molestation by a technician during an examination, as the technician "took advantage of" a vulnerable situation "to commit an assault for reasons unrelated to his work," even though his employment was what made the assault possible); *John R.*, 48 Cal. 3d at 449 (school not liable for teacher's sexual abuse of student even where "[t]he teacher told [the student] that sexual conduct was part of a teacher-student relationship and was intended to help [the student] with his problems"). This rule has been applied to claims seeking to hold employers vicariously liable for sexual harassment. *Farmers Ins. Grp*, 11 Cal. 4th at 1017 (holding that sexual harassment "was not within the scope of employment even though it occurred during work hours in a workplace that may be characterized as traditionally male-dominated"). The alleged sexual harassment and abuse of Plaintiffs by the Coach Defendants might have been made possible by their employment as coaches, but was entirely unrelated to their coaching duties and therefore was outside the scope of their employment.

Nor can Plaintiffs escape this rule by clothing their vicarious liability claims in negligence theories. *E.g.*, FAC ¶ 558 (seeking to hold the NCAA vicariously liable for the "Coach Defendants' negligent conduct in sexually harassing Plaintiffs in the course of their employment, agency, and/or representation of USF and the NCAA as baseball coaches"); *id.* ¶¶ 584, 587 (claiming that the NCAA is responsible for negligence infliction of emotional distress caused by the Coach Defendants' abuse of plaintiffs). "Sexual harassment and sexual assault are intentional acts." *Black v. City & Cnty. of Honolulu*, 112 F. Supp. 2d 1041, 1048 (D. Haw. 2000). Plaintiffs seek to hold the NCAA liable because the Coach Defendants harassed them, used demeaning and sexualized language, and created an "intolerable sexualized environment" while in a position of trust and power over Plaintiffs. *E.g.*, FAC ¶¶ 210–211, 346, 362, 369, 421, 433–435, 439. Those are allegations of inherently intentional, tortious conduct. *Cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 743 (1998) (in Title VII context, noting that "sexual harassment . . . presupposes intentional conduct"). Any alleged negligence by the Coach Defendants is inextricably intertwined with this intentional conduct and cannot be used as the basis of negligence claims.

*Edwards v. U.S. Fid. & Guar. Co.*, 848 F. Supp. 1460, 1466 (N.D. Cal. 1994), *aff'd*, 74 F.3d 1245 (9th Cir. 1996) ("[W]here the conduct alleged is intentional, it cannot be used as a basis for a negligent infliction of emotional distress claim."); *Anderson v. AMR*, 348 F. App'x 322, 324 (9th Cir. 2009) (same); *Zhang v. Walgreen Co.*, 2010 WL 4174635, at *4 (N.D. Cal. Oct. 20, 2010) (denying leave to amend to add a negligent infliction of emotional distress claim because the only conduct alleged was intentional).  The allegations constitute intentional sexual harassment that, as a matter of law, would be outside of the scope of Coach Defendants' employment or agency (even if such a relationship existed, which it does not).  *Farmers Ins. Grp*, 11 Cal. 4th at 1017.

### 4.     Plaintiffs' Ratification Theory Fails.

Ratification is "the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person."  *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972).  However, like vicarious liability, ratification is not a cause of action but rather is simply a means by which to hold a principal liable for an agent's torts.  *See Baptist v. Robinson*, 143 Cal. App. 4th 151, 169 (2006) (describing ratification as an alternate theory to vicarious liability).  Plaintiffs' "Ratification" cause of action (Count XII) should be dismissed for that reason alone.  Plaintiffs' ratification allegations fail for two additional reasons.

*First*, Plaintiffs fail to plausibly allege a relationship between the NCAA and the Coach Defendants that would allow this Court to find that the NCAA ratified their conduct.  Ratification requires, at the time of the unauthorized act, "a relationship, either actual or assumed, of principal and agent, between the person alleged to have ratified and the person by whom the unauthorized act was done."  *See Anderson v. Fay Improvement Co.*, 134 Cal. App. 2d 738, 748 (1955) (cleaned up).  As discussed above, there was no actual agency relationship between the NCAA and the Coach Defendants.  Nor was there an assumed agency relationship because Plaintiffs do not allege that *in committing the alleged sexual harassment*, the Coach Defendants purported to act on the NCAA's behalf, or that they had reason to believe that the Coach Defendants were acting as the NCAA's agent.  *See Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 961–62 (2002) ("A principal cannot ratify the act of the alleged agent, unless the 'agent' purported to act on behalf of the principal.").  That the Coach Defendants may have been incidentally associated with the

NCAA while acting as coaches does not suffice to create such a relationship.  *See id.* (display of a logo was "simply not enough to establish an agency by ratification").

*Second*, Plaintiffs fail to allege that the NCAA knew of the Coach Defendants' alleged conduct, which is required to show ratification.  *See Cruz v. HomeBase*, 83 Cal. App. 4th 160, 168 (2000) ("A corporation cannot confirm and accept that which it does not actually know about."); *Baptist*, 143 Cal. App. 4th at 169.  Here, the only allegation of knowledge that Plaintiffs make is the allegation on information and belief that "a number of parents complained to both USF and NCAA about the USF baseball program . . . ."  FAC ¶ 145.  This thin allegation on information and belief does not say when these complaints happened, what conduct the parents described in their purported complaints, whether that conduct was about alleged sexual harassment or something different (such as failure to give fair playing time, use of overly harsh language, or use of expletives), who complained, or to whom at the NCAA they complained.  This barebones, speculative allegation can be given no weight.  Then, Plaintiffs allege that John Doe 6's parents sent a letter to the USF associate athletic director and the "NCAA Faculty Athletic Representative" in May 2014.  *Id.* ¶¶ 146, 379, 489.  Again, there is no allegation that this letter was about sexual harassment as opposed to other alleged wrongful conduct.  And, importantly, as is discussed above, whatever the nature of this complaint was, it was not a complaint to the NCAA as the FAR is an employee of a member institution, not the NCAA.  *See supra* pp.11–12 & n.4.[8] A complaint to USF cannot be attributed to the NCAA.  *See Barenborg*, 33 Cal. App. 5th at 85 (absent day-to-day control, actions of local fraternity and its members could not be attributed to national fraternity under agency theory).

Beyond these allegations, Plaintiffs allege the NCAA's knowledge in conclusory terms.  *See* FAC ¶ 592 (alleging the NCAA and USF "had knowledge that the Coach Defendants *and/or*

---

[8] The Plaintiffs also allege the father of John Doe 8 (who played baseball at USF for one semester in 2013, FAC ¶ 45) reported concern to a USF employee (the athletics director), *id.* ¶ 502. Plaintiffs allege in FAC ¶ 459 in passing: "[t]he NCAA's failure to act on Plaintiffs' complaints, including directing John Doe's [sic.] 8's parents to complain to the school . . . ."  Nowhere in the FAC do Plaintiffs allege any report by John Doe 8 or his parents to the NCAA, nor any direction from the NCAA to John Doe 8 or his parents.

other coaches like Coach Defendants were in sexual relationships with student-athletes *and/or* were sexually abusing or harassing student-athletes" (emphasis added)).  The use of "and/or" suggests Plaintiffs do not have a basis for this allegation.  Such a "[t]hreadbare recital[]" of knowledge, "supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), is insufficient and the Court should disregard it.  *See, e.g.*, *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, 2011 WL 4079231, at *5 (N.D. Cal. Sept. 12, 2011) (in a patent case, noting that "[p]ost-*Twombly* and *Iqbal*, courts have typically rejected conclusory allegations of knowledge").  Plaintiffs' ratification theory therefore fails.  *See Ortiz v. Ga. Pac.*, 973 F. Supp. 2d 1162, 1186 (E.D. Cal. 2013) (under California law, an employer who "did not have knowledge of the details of [an employee's] conduct . . .  therefore could not possibly ratify any . . . conduct in which she may have engaged"); *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1084 n.5 (N.D. Cal. 2011) (allegation that defendants were "acting with the express or implied knowledge, consent, authorization, approval, and/or ratification of their co-defendants" too conclusory for motion to dismiss).  Plaintiffs' claims for battery, assault, false imprisonment, intentional and negligent infliction of emotional distress, and "ratification" should be dismissed.

## IV.    **CONCLUSION**

For the foregoing reasons, all of Plaintiffs' claims against the NCAA should be dismissed for lack of personal jurisdiction and venue under Federal Rules of Civil Procedure 12(b)(2) and (3).  In the alternative, all Plaintiffs' claims against the NCAA should be dismissed with prejudice for failure to state a claim under Rule 12(b)(6).  In the further alternative, at a minimum, Plaintiffs Does 4–12's prayers for injunctive relief should be dismissed for lack of Article III standing under Rule 12(b)(1).

1   DATED:  September 12, 2022        MUNGER, TOLLES & OLSON LLP

2

3                                      By:        */s/ Carolyn Hoecker Luedtke*

4                                              CAROLYN HOECKER LUEDTKE

5                                  Attorneys for Defendant The National Collegiate

6                                    Athletic Association

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28