SCOTT B. RAPKIN (SBN 261867)
E-Mail: scottrapkin@rapkinesq.com
MICHAEL S. RAPKIN (SBN 67220)
E-Mail:  msrapkin@gmail.com
RAPKIN & ASSOCIATES, LLP
475 Washington Blvd.
Marina del Rey, CA 90292
Telephone: (310) 319-5465
Facsimile: (310) 306-1339

Attorneys for Defendant Troy Nakamura

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, JOHN DOE 12, individually and on behalf of all other similarly situated,<br><br>                    Plaintiffs,<br><br>   vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, THE UNIVERSITY OF SAN FRANCISCO, ANTHONY (AKA NINO) GIARRATANO, and TROY NAKAMURA,<br><br>                    Defendants. | Case No.: 3:22-CV-01559-LB<br><br>**DEFENDANT TROY NAKAMURA'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  Hon. Magistrate Laurel Beeler<br>Date:    December 8, 2022<br>Time:    9:30 a.m.<br>Place:   Courtroom B |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 8, 2022, at 9:30 a.m., before the Honorable Laurel Beeler in Courtroom B of the United States Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Troy Nakamura ("Nakamura") will move to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, and any other matter which may be brought to the attention of the Court at or before the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the claims of John Does 4-12 are barred in their entirety by the statute of limitations.
2. Whether John Does 1-12 fail to state a claim upon which relief can be granted.

## RELIEF REQUESTED

Nakamura seeks an order dismissing all claims brought by John Does 4-12 because they are barred by the statute of limitations.  Nakamura also seeks an order dismissing all Plaintiffs' claims for Negligence, Gross Negligence, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress, for failure to state a claim upon which relief can be granted.


Dated: September 12, 2022                    RAPKIN & ASSOCIATES, LLP


By: */s/ Scott Rapkin*
    Scott Rapkin

Attorneys for Defendant
Troy Nakamura

1
2

## **TABLE OF CONTENTS**

3

I.    **INTRODUCTION** ............................................................................................. 1

II.   **RELEVANT FACTS IN FIRST AMENDED COMPLAINT** .............................. 2

    A.   Troy Nakamura ...................................................................................... 2

    B.   John Does 1-12's Experiences with Nakamura ....................................... 2

III.  **LEGAL STANDARD** ......................................................................................... 5

IV.  **ARGUMENT** ..................................................................................................... 6

    A.   The Claims of John Does 4-12 Are Barred by the Statute of Limitations ............................... 6

        1.   The Claims Against Nakamura Have a Two-Year Limitations
            Period. ......................................................................................... 6

        2.   The Claims of John Does 4-12 Were Filed After Expiration of the
            Two-Year  Statute of Limitations Period. ..................................... 6

        3.   The Discovery Rule Does Not Extend the Statutes of Limitations
            on These Claims. ......................................................................... 8

    B.   Plaintiffs' Tolling Allegations Do Not Apply to Their Claims Against
         Nakamura ........................................................................................... 9

        1.   John Does 4-12 Cannot Rely on a Theory of Fraudulent Concealment
            to Toll the Statutes of Limitations on Their Claims Against Nakamura. ....................... 10

        2.   John Does 4-12 Cannot Rely on a Theory of Equitable Estoppel to
            Toll the Statutes of Limitations on Their Claims Against Nakamura. .......................... 11

        3.   John Does 4-12 Cannot Rely on a Theory of Equitable Tolling to
            Toll the Statutes of Limitations on Their Claims Against Nakamura. .......................... 12

    C.   The Seventh Cause of Action Must Be Dismissed Because There is No
         Independent Cause of Action for Gross Negligence ............................... 13

    D.   John Does 1-12 Fail to State a Claim Against Nakamura for Intentional
         Infliction of Emotional Distress ............................................................ 13

    E.   The Court Should Dismiss the Eleventh Cause of Action for Negligent
         Infliction of Emotional Distress Because Plaintiffs Have Also Pleaded a
         Cause of Action for Negligence ............................................................ 21

    F.   Plaintiffs Fail to State a Claim for Negligence ...................................... 22

        1.   John Does 1-12 Do Not Allege that Any Breach by Nakamura
            Threatened Physical Injury .......................................................... 22

        2.   John Does 1, 3, 6, 7 and 11 Also Fail to Allege That They Suffered
            Serious Emotional Distress Due to the Conduct of Nakamura. .................. 23

V.    **CONCLUSION** ................................................................................ 23

DEFENDANT TROY NAKAMURA'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alaniz v. Enterline*,
2020 WL 230893 (N.D. Cal. Jan. 15, 2020) ................................................................ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 5

*Audrey G. v. City of Lafayette*,
2021 WL 5565839 (N.D. Cal. Nov. 29, 2021) ............................................................... 22

*Barker v. Am. Mobil Power Corp.*,
64 F.3d 1397 (9th Cir. 1995) .................................................................................... 10, 11

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 5

*Braunling v. Countrywide Home Loans Inc.*,
220 F.3d 1154 (9th Cir. 2000) ....................................................................................... 14

*Cervantez v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) ............................................................................................ 13

*Cervantez v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) .......................................................................................... 5

*Chaconas v. JP Morgan Chase Bank*,
713 F.Supp.2d 1180 (S.D. Cal. 2010) ............................................................................ 22

*Chisholm v. St Mary's City School Dist. Bd. of Education*,
 947 F.3d 342 (6th Cir. 2020) .................................................................................... 16, 21

*Dees v. California State Univ., Hayward*,
33 F.Supp. 2d 1190 (N.D. Cal. 1998) ............................................................................ 13

*Deirmenjian v. Deutsche Bank, A.G.*,
526 F.Supp.2d 1068 (C.D. Cal. 2007) .............................................................................. 5

*DeLarge v. Walmart, Inc.*,
2019 WL 6771746 (N.D. Cal. Dec. 12, 2019) ............................................................... 12

*Doe v. USC*,
2019 WL 4228371 (C.D. Cal. Apr. 18, 2019) ......................................................... 8, 9, 11

*Fortson v. Big Lots, Inc.*,
2018 WL 4854413 (C.D. Cal. Jun. 14, 2018) ................................................................. 13

*Grimmett v. Brown,*
75 F.3d 506 (9th Cir. 1996) .................................................................................. 10

*Hip Hop Beverage Corp v. Michaux,*
2016 WL 8578912 (C.D. Cal. Nov. 30, 2016) ....................................................... 10

*Holden v. Target Corp.,*
2016 WL 3938950 (N.D. Cal. Jul. 21, 2016) .............................................. 14, 15, 20

*Johnston v. Covidien L.P.,*
2019 WL 2410720 (N.D. Cal. Jun. 7, 2019) ............................................................ 6

*Liu v. Marriott Vacation Worldwide,*
2019 WL 8106290 (C.D. Cal. Jul. 1, 2019) ........................................................... 13

*Lukovsky v. City & Cty. Of San Francisco,*
535 F.3d 1044 (9th Cir. 2008) .......................................................................... 11, 12

*Mendia v. Garcia,*
165 F. Supp. 3d 861 (N.D. Cal. 2016) ................................................................... 22

*Power Quality Electrical Systems, Inc. v. BP West Coast Products LLC,*
2017 WL 6375760 (N.D. Cal. Dec. 12, 2017) ....................................................... 12

*Ransom v. Lee,*
2017 WL 10525951 (C.D. Cal. Apr. 20, 2017) ...................................................... 19

*Rustico v. Intuitive Surgical, Inc.,*
424 F.Supp.3d 720 (N.D. Cal. 2019) ................................................................ 11, 12

*Schneider v. TRW, Inc.,*
938 F.2d 986 (9th Cir. 1991) ...................................................... 14, 16, 20, 21

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) ............................................................................ 10, 11

*Taylor v. Honeywell, Inc.,*
599 Fed. Appx. 664 (9th Cir. 2015) ...................................................................... 22

*Wells v. Regents of the University of California,*
2015 WL 6746820 (N.D. Cal. Nov. 5, 2015) ................................................... 17, 19

*Yumul v. Smart Balance, Inc.,*
733 F.Supp.2d 1117 (C.D. Cal. 2010) ................................................................... 10

**<u>STATE CASES</u>**

*Belen v. Ryan Seacrest Productions, LLC,*
65 Cal.App.5th 1145 (2021)................................................................................... 22

DEFENDANT TROY NAKAMURA'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Bernson v. Browning-Ferris Indus.,*
7 Cal.4th 926 (1994) .............................................................................................................. 10

*Christensen v. Superior Court,*
54 Cal.3d 868 (1991) ...................................................................................................... passim

*Cochran v. Cochran,*
65 Cal.App.4th 488 (1998) ................................................................................................ 14, 16

*Cont'l Ins. Co. v. Am. Prot. Indus.,*
197 Cal.App.3d 322 (1987) ..................................................................................................... 13

*Eriksson v. Nunnink,*
191 Cal.App.4th 826 (2011) ................................................................................................... 13

*Fox v. Ethicon Endo-Surgery, Inc.,*
35 Cal.4th 797 (2005) ......................................................................................................... 8, 9

*Graham v. Hansen,*
128 Cal.App.3d 965 (1982) ....................................................................................................... 9

*Gutierrez v. Mofid,*
39 Cal.3d 892 (1986) ................................................................................................................ 6

*Haberman v. Cengage Learning, Inc.,*
180 Cal.App.4th 365 (2009) ............................................................................................... passim

*Honig v. San Francisco Planning Dep't,*
127 Cal.App.4th 520 (2005) .................................................................................................... 11

*Hughes v. Pair,*
46 Cal.4th 1035 (1989) ...................................................................................................... passim

*Jolly v. Eli Lilly & Co.,*
44 Cal.3d 1103 (1988) ............................................................................................................ 6, 9

*Kraslawsky v. Upper Deck Co.,*
56 Cal.App.4th 179 (1997) ...................................................................................................... 18

*McDonald v. Antelope Valley Cmty. Coll. Dist.,*
45 Cal.4th 88 (2008) ............................................................................................................... 12

*Ochoa v. Sup. Ct.,*
39 Cal.3d 159 (1985) ................................................................................................. 14, 15, 16, 20

*Potter v. Firestone Tire & Rubber Co.,*
6 Cal.4th 965 (1993) ........................................................................................................... 21, 22

DEFENDANT TROY NAKAMURA'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Rita M. v. Roman Catholic Archbishop,*
187 Cal. App. 3d 1453 (1986) ........................................................................ 6, 11

*Spinks v. Residential Briarwood Apartments,*
171 Cal.App.4th 1004 (2009) ............................................................................. 21

*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.,*
231 Cal.App.4th 1131 (2014) ............................................................................. 12

*Vasquez v. Franklin Mgmt. Real Estate Fund, Inc.,*
222 Cal.App.4th 819 (2013) ............................................................................... 19

*Wassmann v. South Orange County Comm. College Dist.,*
24 Cal.App.5th 825 (2018) ................................................................................... 6

*Wilson v. Southern California Edison Co.,*
234 Cal.App.4th 123 (2015) ............................................................................... 22

*Wong v. Jing,*
189 Cal.App.4th 1354 (2010) ................................................................. 17, 19, 23

*Yurick v. Superior Ct.,*
209 Cal.App.3d 1116 (1989**)** ..................................................................... passim

**FEDERAL STATUTES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 5

Federal Rule of Civil Procedure 9(b) ................................................................. 10

**STATE STATUTES**

Cal. Code Civ. Proc. § 335.1 ............................................................................... 6

DEFENDANT TROY NAKAMURA'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

For more than 20 years, Troy Nakamura ("Nakamura") was the assistant baseball coach at the University of San Francisco ("USF").   During this time, he successfully coached and mentored several hundred players, earning their respect and admiration, as well as the respect of their family members and those who he coached with and against.   Therefore, it is extremely unfortunate that Plaintiffs have sullied Nakamura's reputation (and his livelihood) by grossly misstating the facts and alleging conduct that never occurred.   Worse - apparently not satisfied with their misrepresentations - Plaintiffs seek to compare this alleged conduct to the sex abuse scandals at other schools, invoking the names of convicted sexual predators dozens of times throughout the First Amended Complaint ("FAC").   Yet even a cursory review of the FAC reveals that no plaintiff alleges that he was a victim of sexual assault or anything close to it, and there is not a single allegation of inappropriate contact by Nakamura.   In fact, most of the allegations against Nakamura concern conduct - primarily "sexual banter" - not directed to any particular plaintiff, and in the presence of the entire team during practices on the public baseball field.

Regardless, accepting the allegations as true, the FAC is legally flawed on multiple grounds. *First*, the claims brought by John Does 4-12 against Nakamura are barred in their entirety by the applicable two-year statute of limitations.   Each of these plaintiffs alleges conduct by Nakamura that occurred no later than 2018; several plaintiffs allege conduct from 10-20 years ago.   They cannot rely on the delayed discovery rule because the allegations show that they were all aware of the alleged wrongful conduct by Nakamura in real time.   Indeed, John Does 4-12 all allege that, more than two years prior to the filing of this lawsuit, they either quit the team or left the school "due to the actions of Defendants."   Nor have they sufficiently alleged tolling of the statute of limitations as to Nakamura; in fact, the only tolling allegations in the FAC apply to conduct by other defendants – the NCAA and USF.

*Second*, Plaintiffs' Gross Negligence claim (Count VII) is not an independent cause of action. *Third*, Plaintiffs' Negligent Infliction of Emotional Distress claim (Count XI) should be dismissed because is duplicative of Plaintiffs' Negligence cause of action.   *Fourth*, each Plaintiff fails to allege

essential elements of their respective claims for Intentional Infliction of Emotional Distress (Count X). *Finally*, all Plaintiffs fail to state a claim for Negligence (Count VIII).

## II.   RELEVANT FACTS IN FIRST AMENDED COMPLAINT

### A.   Troy Nakamura

Nakamura was the assistant coach of the baseball team at USF for 15 years until the head coach Nino Giarratano ("Giarratano") promoted him to the position of Associate Head Coach in 2015.  FAC ¶ 53.  USF's Executive Senior Associate Athletic Director described Nakamura as "an amazing man who truly defines what it means to be a Diamond Don." *Id.* ¶ 149.  Giarratano praised Nakamura "as a person, as a friend, as a coach, as a mentor," and said he is "the best." *Id.* ¶ 150.  Nakamura remained as the Associate Head Coach until January 2022, when USF announced that he was no longer associated with the USF baseball program.  *Id.* ¶ 53

### B.   John Does 1-12's Experiences with Nakamura

**John Doe 1** entered USF as a freshman in the fall of 2020. FAC ¶ 38.  The coaches regularly told John Doe 1 he was not working hard enough, and Nakamura berated him at practice and in his office.  *Id.* ¶ 211.  During practices, Nakamura "spoke and encouraged sexual banter."  *Id.*  ¶¶ 160-162. During the summer between his freshman and sophomore year, Nakamura called John Doe 1 multiple times to tell him that he should transfer from USF, and he refused to allow John Doe 1 to discuss the matter with his parents.  *Id*. ¶ 215.  During these calls, Nakamura told John Doe 1 that he was "the most irrational person he had ever met;" that "[t]he people here don't believe in you;" that he was "tearing up the fabric of the program and not protecting the culture; and that he was "going to make sure that it is not an enjoyable experience for you."  *Id*.   When John Doe 1 returned for the fall season of his sophomore year, Giarratano and Nakamura largely ignored John Doe 1 from a coaching perspective, refusing to help him.  *Id.*  ¶ 218.

**John Doe 2** entered USF as a freshman in the fall of 2020.  FAC ¶ 39.  Throughout the fall of 2020, Giarratano and Nakamura did not provide John Doe 2 with opportunities to play, nor did they provide coaching direction.  *Id.*  ¶ 235.  During a game in the spring of 2021, Nakamura called John

Doe 2 a "fucking cunt" while they were in the dugout.  *Id.*  ¶ 237.  During practices, Nakamura "spoke and encouraged sexual banter."  *Id.*  ¶¶ 160-162.

**John Doe 3** entered USF as a freshman in the fall of 2021.  FAC ¶ 40.  His sole allegation against Nakamura is that, during practices, Nakamura "spoke and encouraged sexual banter."  *Id.*  ¶¶ 160-162.

**John Doe 4** attended USF as a freshman in the fall of 2017, but he transferred out of USF in 2018 "due to the actions of Defendants."  FAC ¶¶ 41, 307.   He began having problems "once [he] arrived on campus," which included coaches often being nude around players.  *Id.* ¶ 299.  John Doe 4 "felt extreme pressure from Coach Naks to respond to the coaches' questions in a sexual manner because he would get angry with players who did not."  *Id.*  ¶ 164.  He recalls "Coach Defendants constantly talking with the players about the shape and size of the players' penises."  *Id.* ¶ 300.  On certain Saturday mornings, the team would go to the beach for military style exercises, where "players would strip down to their underwear…and the Coach Defendants would comment on how shriveled up all the players' penises were."  *Id.*  ¶ 182.  Because John Doe 4 did not participate in the sexualized behaviors, the Coach Defendants belittled him throughout the school year in an effort to force him off the team.  *Id.*  ¶ 301.

**John Doe 5** attended USF from 2012 to 2014.  FAC ¶ 42.   At the end of the spring season in 2014, he quit USF's baseball team "due to the actions of the Defendants."  *Id.* ¶¶ 42, 352.   In November 2011, Coach Nakamura emailed John Doe 5 a visualization technique that was supposed to "free you up to attack like a rabid, horny Rottweiler." *Id.* ¶ 336.  John Doe 5 witnessed Coach Nakamura expose himself as a joke in front of players.  *Id.*  ¶ 337.  Coach Nakamura also frequently asked John Doe 5 and other teammates sexual questions about women.  *Id.*

**John Doe 6** attended USF from 2012 to 2015.  He quit the baseball team after two years, in 2014, "due to the actions of Defendants," (FAC ¶ 43), specifically "due to Coach G's constant abuse and belittlement throughout the year."  *Id.*  ¶ 378.  Coach Nakamura sometimes showered at the same time the players did.  *Id.*  ¶ 369.  One time, John Doe 6 recalls Coach Nakamura crawling on the field naked, which he found extremely bizarre.  *Id.*  John Doe 6 also recalls Coach Nakamura speaking about trying to get the female students in the dorm rooms overlooking the baseball field to flash their breasts and

DEFENDANT TROY NAKAMURA'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

performing in skits, making animal sounds, and holding a bat between his legs like it was a penis.  *Id.*  ¶ 371.  In May 2014, John Doe 6's parents sent a letter to the USF's Associate Athletic Representative and the NCAA Faculty Athletic Representative that the baseball team had a "hostile environment."  *Id.* ¶ 379.

**John Doe 7** committed to play baseball at USF in 2014, but only stayed one semester "due to the actions of Defendants."  FAC ¶¶ 44, 396.  During this one semester, John Doe 7 endured Coach Nakamura's sexual displays and efforts to persuade females to expose themselves in front of dorm windows.  *Id.* ¶ 392.  He also participated in drills where players would have to remove articles of clothing during practice when they made errors.  *Id.*  ¶ 393.

**John Doe 8** left USF in 2013 after only one semester "due to the actions of Defendants."  FAC ¶¶ 45, 410.  At one of his first practices as a freshman in 2013, Coach Nakamura made comments referencing the girls in the undergraduate dormitories overlooking the baseball field.  *Id.* ¶ 402.  John Doe 8 was also subjected to games where each pitcher had to take an item of clothing off when they made an error during practice.  *Id.* ¶ 403.

**John Doe 9** left USF after completing the 2000 academic year "due to the actions of Defendants."  FAC ¶ 46.  During his year at USF, John Doe 9 recalls Coach Nakamura talking about sexual topics and attempting to engage John Doe 9 in discussions about John Doe 9's sexuality.  *Id.* ¶ 418.  He also recalls Nakamura gesturing to the undergraduate dormitories overlooking the baseball field and making sexual comments about female students.  *Id.*  ¶ 157.  Coach Nakamura also encouraged female students to flash their breasts.  *Id.* ¶ 157.

**John Doe 10** attended USF and was a member of the baseball team from 2017-2018.  *Id.* ¶ 47. He transferred from USF after finishing his spring 2018 semester "due to the actions of Defendants." *Id.* Giarratano and Nakamura called him a loser, made fun of his learning disabilities, and told him that ADHD was not "real."  *Id.*  ¶ 280.  During practice, the pitchers played a game where the players would have to take off a layer of clothing during practice when they made an error.  *Id.*  ¶ 281.  John Doe 10 also alleges that the coaches encouraged the players to perform skits that were "sexual in nature."  *Id.*

¶ 282.  Nakamura would also talk about female athletes in a sexualized and offensive manner in front of the team.  *Id.* ¶ 283.

John Doe 11 attended USF only for his freshman year from 1999-2000, and then transferred "due to the actions of Defendants."  FAC. ¶ 48.  John Doe 11 does not make any allegations concerning Nakamura.

John Doe 12 attended USF his freshman year and was a member of the baseball team from 2017-18, when he transferred "due to the actions of Defendants."  FAC, ¶ 49.  One night during the season, Coach Nakamura called John Doe 12 a "completely ball-less pussy" and said that if John Doe 12 did not practice, he would be "looked at like a pussy by everyone, especially Coach G."  *Id.* ¶ 321.  John Doe 12 remembers the Coach Defendants commenting on each other's penises, as well as those of other players.  *Id.* ¶¶ 300, 326.  At a game in 2018, the coaches showered with the players, commented on the players' private parts, and Nakamura swung his penis around.  *Id.* ¶ 328.  On certain Saturday mornings, the team would go to the beach for military style exercises, where "players would strip down to their underwear…and the Coach Defendants would comment on how shriveled up all the players' penises were."  *Id.* ¶ 182.

## III.   **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the claims stated in the complaint.  Fed. R. Civ. Proc. 12(b)(6).    To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

"A district court may dismiss a claim if the running of the statute is apparent on the face of the complaint."  *Cervantez v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (internal quotation marks and brackets omitted); *see also Deirmenjian v. Deutsche Bank, A.G.*, 526 F.Supp.2d 1068, 1073 (C.D. Cal. 2007) ("A complaint is properly dismissed under Rule 12(b)(6) where it is apparent on the face of the pleading that plaintiff's claims are barred by the statute of limitations.")

IV.     **ARGUMENT**

A.     **The Claims of John Does 4-12 Are Barred by the Statute of Limitations**

1.     **The Claims Against Nakamura Have a Two-Year Limitations Period.**

California has a two-year statute of limitations period that applies to "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another." Cal. Code Civ. Proc. ("CCP") § 335.1.  As the court explained in *Rita M. v. Roman Catholic Archbishop*, this general personal injury limitations period (previously CCP § 340(3)) "embraces not only bodily injuries but all infringements of personal rights as opposed to property rights." 187 Cal. App. 3d 1453, 1460 (1986).  Accordingly, "[i]ntentional infliction of emotional distress has a two-year statute of limitations." *Wassmann v. South Orange County Comm. College Dist.*, 24 Cal.App.5th 825, 852-53 (2018).  Likewise, the statute of limitations for negligence and negligent infliction of emotional distress is two years. *Johnston v. Covidien L.P.*, 2019 WL 2410720, at *3 (N.D. Cal. June 7, 2019).

2.     **The Claims of John Does 4-12 Were Filed After Expiration of the Two- Year Statute of Limitations Period.**

Under California law, the "statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (1988).  A plaintiff only needs a "suspicion of wrongdoing" to trigger the limitations period: "So long as suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id.* at 1111; *see also Gutierrez v. Mofid*, 39 Cal.3d 892, 897-898 (1986) ("[T]he uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the facts essential to his claim") (emphasis added).   An action for intentional infliction of emotional distress accrues once a plaintiff suffers severe emotional distress as a result of defendant's outrageous conduct. *Wassmann*, 24 Cal.App.5th at 853.

The allegations by John Does 4-12 describe conduct by Nakamura that occurred between 1999-2018.  The allegations also show that John Does 4-12 recognized the wrongfulness of Nakamura's conduct - and suffered emotional distress - in real time.   Indeed, as set forth below, each of these

plaintiffs alleges that he either quit the team or transferred from USF "due to the actions of Defendants." Thus, each of their claims accrued more than two years prior to the filing of this lawsuit.

**John Doe 4** transferred out of USF "due to the actions of Defendants" in 2018.  FAC ¶¶ 41, 307. John Doe 4 also alleges that he suffered emotional distress in 2018: he lost all confidence, dreaded going to practice, wanted off the team, was severely depressed, could not complete his homework, and would call his mother every day in tears.  *Id.* ¶ 306.   This was more than three years prior to the filing of this lawsuit.  Even if his claim for intentional infliction of emotional distress did not accrue until he sought counseling to overcome the trauma "caused by Defendants' conduct," that was in 2019, more than two years prior to the filing of this lawsuit.  *Id.* ¶ 308.

**John Doe 5** quit the baseball team "due to the actions of the Defendants" in 2014, more than seven years prior to the filing of this lawsuit.    *Id.* ¶ 42.   John Doe 5 has suffered from recurring nightmares about USF baseball, frequent anxiety attacks, and bouts of depression since 2012, more than nine years prior to the filing of this lawsuit.  *Id.* ¶ 360.

**John Doe 6** quit the baseball team "due to the actions of Defendants" in 2014, more than seven years prior to the filing of this lawsuit.  *Id*. ¶ 43.  John Doe 6's parents sent a letter to USF's Associate Athletic Representative and the NCAA Faculty Athletic, in May 2014, complaining that the baseball team had a "hostile environment."  *Id.*  ¶ 379.

**John Doe 7** left USF in 2014, after one semester, "due to the actions of Defendants."  *Id*. ¶¶ 44, 396.   Prior to transferring out of USF in 2014, John Doe began experiencing anxiety and sleep deprivation, and he dreaded attending practice.  *Id.* ¶ 395. This was more than seven years before the filing of this lawsuit.

**John Doe 8** left USF in 2013 after only one semester "due to the actions of Defendants." *Id.* ¶¶ 45, 410.   In 2013, he became severely depressed and suicidal because he was constantly berated and told that he was a failure.  *Id.* ¶ 408.  During his one semester at USF in 2013, John Doe 8 sought counseling, was diagnosed with severe depression and anxiety, started taking anti-depressant medication, and was desperate to leave the school.  *Id.* ¶¶ 411-412. This was more than eight years before the filing of this lawsuit.

**John Doe 9** left USF "due to the actions of Defendants" in 2000, more than 21 years prior to filing this lawsuit. *Id.* ¶ 46. By October of his freshman year, John Doe 9 was severely depressed, and he stopped going to class, rarely left his dormitory, and gained weight. *Id.* ¶ 424.

**John Doe 10** transferred from USF "due to the actions of Defendants" in 2018. *Id.* ¶ 47. Prior to leaving the school in 2018, John Doe 10 would call his parents crying, and they were concerned he would hurt himself. *Id.* ¶ 292. By the end of the school year, John Doe 10 and his parents agreed that John Doe 10 needed to leave in order to protect his mental health and get the coaching support he deserved. *Id.* ¶ 293. At the exit meeting at the end of the season, John Doe 10 asked for a release from the team because of the abuse. *Id.* This all happened more than three years prior to the filing of the lawsuit

**John Doe 11** transferred from USF "due to the actions of Defendants" in 2000, more than 21 years before the filing of this lawsuit. *Id.* ¶ 48.

**John Doe 12** transferred from USF "due to the actions of Defendants" in 2018, more than three years prior to the filing of the lawsuit. *Id.* ¶ 49. Before he left the school in 2018, John Doe 12's father flew to USF 16 times to provide his son emotional support for fear that his son would harm himself due to Coach Defendants' abuse. *Id.* ¶ 329.

### 3. The Discovery Rule Does Not Extend the Statutes of Limitations on These Claims.

John Does 4-12 cannot rely on the "discovery rule" to avoid application of the two-year limitations period. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.* 35 Cal.4th 797, 806 (2005). "A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (citation omitted). In pleading such facts, the burden is on the plaintiff to show diligence, and "conclusory allegations will not withstand dismissal." *Doe v. USC,* 2019 WL 4228371, at *5 (C.D. Cal. Apr. 18, 2019) (citation omitted).

In the FAC, John Does 4-12 allege that they "did not discover that they had viable claims until March 11, 2022, when the San Francisco Chronicle published a story" about the filing of the lawsuit by John Does 1-3.  FAC ¶ 463.  This allegation is insufficient to invoke the discovery rule for multiple reasons.  *First*, the FAC is replete with allegations showing that John Does 4-12 were aware of the relevant facts and appreciated the wrongfulness of Nakamura's conduct in real time, which for all of them was more than two years prior to the filing of the lawsuit.  *See Doe v. USC,* 2019 WL 4228371, at *4 (discovery rule did not apply where plaintiff alleged that she only became aware of her claim by reading LA Times article in 2018, because relevant facts pertaining to plaintiff's claims against doctor were known to plaintiff at time of the incident in 1991).  *Second*, to the extent that Plaintiffs invoke the discovery rule on the ground that they did not know of the existence of a viable cause of action against Nakamura, "[t]he statute of limitations is not tolled by belated discovery of legal theories, as distinguished from belated discovery of facts."  *Id.* at *5 (citing *Graham v. Hansen*, 128 Cal.App.3d 965, 972 (1982)); *see also Jolly*, 44 Cal.3d at 1110 (discussing the "well established rule that ignorance of the legal significance of known facts" does not delay accrual).  *Third*, Plaintiffs fail to satisfy the second element of the discovery rule: the FAC does not allege *any* specific facts explaining why John Does 4-12 had "the inability to have made earlier discovery despite reasonable diligence."  *Fox*, 35 Cal.4th at 808.

## B. Plaintiffs' Tolling Allegations Do Not Apply to Their Claims Against Nakamura

The tolling allegations in the FAC only apply to USF and the NCAA, not Nakamura.  *See* FAC ¶ 456 ("USF and the NCAA intentionally ignored these Plaintiffs' complaints to…cause those Plaintiffs to believe they did not have any legal rights"), ¶ 457 ("USF's failure to act was intended to deceive and silence those Plaintiffs…"), ¶ 459 ("The NCAA's failure to act on Plaintiffs' complaints…were also intended to divert Plaintiffs so they would not make the events public or otherwise bring suit"), ¶ 461 ("USF and NCAA should be equitably estopped from relying on any statutes of limitations defenses…"), ¶ 464 ("It would be fundamentally unfair to allow USF and the NCAA to rely on a statute of limitations defense…").  Plaintiffs make clear that it is "these actions and failings" by USF and the NCAA that toll the statute of limitations.  *Id.* ¶ 461

DEFENDANT TROY NAKAMURA'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiffs cannot use these allegations against USF and the NCAA to assert tolling against Nakamura. *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995), *as amended* (Nov. 15, 1995) ("the doctrine of fraudulent concealment tolls the statute of limitations only as to those defendants who committed the concealment") (citation omitted).   Nonetheless, in an abundance of caution, Nakamura addresses Plaintiffs' claims to show that they fail on the merits.

### 1. John Does 4-12 Cannot Rely on a Theory of Fraudulent Concealment to Toll the Statutes of Limitations on Their Claims Against Nakamura.

Fraudulent concealment tolls the statute of limitations for the duration that the plaintiff could not reasonably discover his claim due to "the defendant's fraud in concealing a cause of action against him." *Bernson v. Browning-Ferris Indus.*, 7 Cal.4th 926, 931 (1994).   Because allegations of fraudulent concealment pertain to fraudulent conduct, "a claim that fraudulent concealment tolls an applicable…statute of limitations must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure." *Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1132-33 (C.D. Cal. 2010) (collecting cases); *Hip Hop Beverage Corp v. Michaux*, 2016 WL 8578912, at *5 (C.D. Cal. Nov. 30, 2016), *aff'd,* 729 F. App'x 599 (9th Cir. 2018) ("The Ninth Circuit has previously held that a claim that fraudulent concealment tolls an applicable state statute of limitations must be pled with particularity under Rule 9(b)…") (internal citations omitted).   Pleading fraud under 9(b) requires the plaintiff to include allegations about the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007)

Here, there are *no* allegations in the FAC that Nakamura misled any plaintiff or concealed any facts, let alone allegations pled with the particularity required under Rule 9(b).   "Failure to plead these facts waives this tolling defense." *Grimmett v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996); *accord Yumul*, 733 F.Supp.2d at 1133 ("Because Yumul has failed to plead facts sufficient to establish tolling under the…fraudulent concealment rule, and further because she has not stated with particularity the basis on which she contends that [the defendant] fraudulently concealed the claims, the court dismisses Yumul's complaint to the extent it alleges conduct occurring outside the relevant statutes of limitations").   As

noted above, it is insufficient that Plaintiffs allege fraudulent conduct by *other defendants.  Barker*, 64 F.3d at 1402; *see also Swartz,* 476 F.3d at 764-765 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud'").

Furthermore, even if Plaintiffs did sufficiently allege that Nakamura engaged in fraudulent conduct, Plaintiffs' tolling argument still fails because the doctrine of fraudulent concealment "does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, *if a plaintiff is on notice of a potential claim*."  *Rita M.*, 187 Cal. App. 3d at 1460 (emphasis added); *see also Doe v. USC,* 2019 WL 4228371, at *5 (holding that fraudulent concealment did not toll the statute of limitations, because "regardless of any efforts to conceal those facts," the plaintiff "knew of the factual basis for her causes of action against [defendant] by herself").

The allegations in the FAC show that John Does 4-12 had knowledge of the facts sufficient to put them on notice of Nakamura's tortious conduct more than two years prior to the filing of the lawsuit. *See* Section II.B. Therefore, fraudulent concealment is inapplicable to the claims against Nakamura.

## 2.    John Does 4-12 Cannot Rely on a Theory of Equitable Estoppel to Toll the Statutes of Limitations on Their Claims Against Nakamura.

"Under California law, equitable estoppel requires: (1) the party to be estopped be apprised of the facts; (2) that party must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and, (4) he must rely upon the conduct to his injury." *Lukovsky v. City & Cty. Of San Francisco*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (quoting *Honig v. San Francisco Planning Dep't*, 127 Cal.App.4th 520, 529 (2005)).  "Where the facts are undisputed and support only one reasonable conclusion, the question of equitable estoppel may be resolved as a matter of law."  *Rustico v. Intuitive Surgical*, Inc., 424 F.Supp.3d 720, 732 (N.D. Cal. 2019) (citation omitted).

Here, there is no basis for Nakamura to be equitably estopped from invoking a statute of limitations defense.  Plaintiffs fail to allege any "conduct" by Nakamura that he intended "be acted

upon" by Plaintiffs such that equitable estoppel is now appropriate.  *See Lukovsky*, 535 F.3d at 1052 ("[A] plaintiff must point to some fraudulent concealment, some active conduct by the defendant… 'to prevent the plaintiff from suing in time.'")  Plaintiffs also "fail to explain how [Nakamura's] conduct rendered Plaintiffs 'ignorant' of any 'true state of facts,' as required for equitable estoppel to apply." *Rustico*, 424 F.Supp.3d at 732.  To the contrary, the allegations in the FAC show that John Does 4-12 were each aware of the true state of facts more than two years prior to the filing of this lawsuit. Additionally, Plaintiffs fail to allege any conduct by Nakamura that they "reli[ed] upon" that caused them injury.  *See Power Quality Electrical Systems, Inc. v. BP West Coast Products LLC,* 2017 WL 6375760, at *7 (N.D. Cal. Dec. 12, 2017) (it is "of critical importance" [to a claim of equitable estoppel] that a plaintiff "show actual and reasonable reliance on the defendant's conduct or representations") (citation omitted).  In sum, Plaintiffs allege no facts showing that anything Nakamura did or said was the cause of Plaintiffs' failure to file suit within the statute of limitations.  "Such causation is essential to estoppel…" *Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*, 231 Cal.App.4th 1131, 1149 (2014).

### 3.    John Does 4-12 Cannot Rely on a Theory of Equitable Tolling to Toll the Statutes of Limitations on Their Claims Against Nakamura.

"Equitable tolling is sparingly applied."  *Alaniz v. Enterline*, 2020 WL 230893, at *5 (N.D. Cal. Jan. 15, 2020) (citation omitted).  It "applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one."  *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal.4th 88, 100 (2008) (internal quotation marks omitted).  "Courts evaluate three factors to determine whether a statute of limitations should be tolled: (1) timely notice to defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by plaintiff in filing the second claim."  *DeLarge v. Walmart, Inc.*, 2019 WL 6771746, at *4 (N.D. Cal. Dec. 12, 2019) (citation omitted). The first requirement "requires that the first claim be filed within the statutory time period."  *Id.* at *5.  The second requirement requires that "the defendant in the first claim is the same defendant that is being sued in the second claim."  *Id.*  This test is used to determine "whether two claims are 'similar' enough that the pendency of the one should toll

the limitations period for the other." *Cervantez v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Similarity is required because the first action must "alert[] the defendant to the necessity to investigate facts which form the basis for the [second] claim." *Dees v. California State Univ., Hayward*, 33 F.Supp. 2d 1190, 1205 (N.D. Cal. 1998)

Plaintiffs cannot satisfy *any* of the three requirements, because there is *no* allegation in the FAC that John Does 4-12 filed a prior claim within the statutory time period against Nakamura.  In fact, there was never a first action - at any time - that would have "alert[ed] [Nakamura] to the necessity to investigate facts which form the basis for [this case]."  *Dees*, 33 F. Supp. 2d at 1205.  Therefore, this is not a "second" or "similar" claim against Nakamura, and Plaintiffs' equitable tolling claim against Nakamura fails.

### C.   The Seventh Cause of Action Must Be Dismissed Because There is No Independent Cause of Action for Gross Negligence

 "California does not recognize a distinct common law cause of action for gross negligence apart from negligence."  *Liu v. Marriott Vacation Worldwide*, 2019 WL 8106290, at *7 (C.D. Cal. Jul. 1, 2019) (citation omitted)); *see also Fortson v. Big Lots, Inc*., 2018 WL 4854413, at *2 (C.D. Cal. Jun. 14, 2018) (stating that a separate claim for gross negligence is "barred under California law"); *Eriksson v. Nunnink*, 191 Cal.App.4th 826, 856 (2011) ("California does not recognize a distinct cause of action for gross negligence independent of a statutory basis"); *Cont'l Ins. Co. v. Am. Prot. Indus*., 197 Cal.App.3d 322, 330 (1987) ("Do Our Courts Recognize a Cause of Action for 'Gross Negligence?' No.").  Accordingly, the Court should dismiss the Gross Negligence cause of action for John Does 1-12.

### D.   John Does 1-12 Fail to State a Claim Against Nakamura for Intentional Infliction of Emotional Distress

 To plead a cause of action for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct by the defendant with the intent of causing or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous

conduct.  *Hughes v. Pair,* 46 Cal.4th 1035, 1050-1051 (1989).  Plaintiffs must describe conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cochran v. Cochran*, 65 Cal.App.4th 488, 496 (1998) (internal quotations omitted).   These requirements "are rigorous, and difficult to satisfy." *Yurick v. Superior Ct*., 209 Cal.App.3d 1116, 1129 (1989) (citations omitted).

Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. And mere insulting language or threats, without more, does not constitute outrageous conduct." *Holden v. Target Corp*., 2016 WL 3938950, at *4 (N.D. Cal. Jul. 21, 2016) (internal quotations and citations omitted) (emphasis added).  *See, e.g., Braunling v. Countrywide Home Loans Inc*., 220 F.3d 1154, 1158 (9th Cir. 2000) (being "forced to withstand a tirade" was "mere discomfort" that "does not approach the level of extreme and outrageous conduct"); *Schneider v. TRW, Inc*., 938 F.2d 986, 992 (9th Cir. 1991) (characterizing incident where defendant "screamed and yelled" at plaintiff, "threatened to throw her out of the department and made gestures she interpreted as threatening" to be "rude[] and insensitiv[e]" but not outrageous); *Hughes*, 46 Cal.4th at 1040 (comments by trustee to decedent's former wife, in front of minor son, such as "I'll get you on your knees eventually. I'm going to fuck you one way or another," "fall far short of conduct that is so 'outrageous' that it exceed[s] all bounds of that usually tolerated in a civilized society").

In addition, this "extreme and outrageous conduct," must be "directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware" and it must be "*intended to inflict injury or engaged in with the realization that injury will result*." *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991) (emphasis added).  This factor "distinguishes intentional infliction of emotional distress from the negligent infliction of such injury." *Id.*; *see also Ochoa v. Sup. Ct*., 39 Cal.3d 159, 165 fn. 5 (1985) (defendants' conduct must be "*especially calculated to cause*…mental distress…. Here, although defendants' conduct did cause the plaintiffs untold distress, it is evident that the defendants acted negligently rather than with the purpose of causing the plaintiffs emotional distress") (emphasis in original).

Finally, Plaintiffs must allege that they suffered severe emotional distress, which is emotional distress "of such substantial quality or ensuring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes,* 46 Cal.4th at 1050-1051. The Supreme Court has cautioned that this is a "high bar." *Id*.

**John Doe 1**

John Doe 1 alleges that Nakamura made certain comments to him during a series of phone calls. FAC ¶¶ 211, 215.   Even if these comments were insensitive, they fall into the category of "insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Holden*, 2016 WL 3938950, at *4.

John Doe 1 also alleges that Nakamura "spoke and encouraged sexual banter" as part of team exercises, at the beginning of some practices. FAC ¶¶ 160-162.  To be clear, John Doe 1 does not allege *any* other "sexual conduct" by Nakamura.   He does not allege that Nakamura directed sexual comments to him, threatened him, propositioned him, or made physical contact with him.  Nor does he allege that he was ever alone with Nakamura when Nakamura engaged in this "sexual banter." Without more, this "sexual banter," during practices in front of the entire team, does not constitute extreme and outrageous conduct.  *See Haberman v. Cengage Learning, Inc*., 180 Cal.App.4th 365, 389 (2009) (sexual comments by supervisors were not "extreme and outrageous" conduct, finding it relevant that plaintiff made no allegation of physical contact by supervisors and supervisors never propositioned the plaintiff or even asked her on a date). In fact, this banter is surely less offensive than the comments in *Hughes* that were actually directed to the plaintiff and still "f[e]ll far short of conduct that is so 'outrageous' that it exceed[s] all bounds of that usually tolerated in a civilized society." *Hughes,* 46 Cal.4th at 1050-1051.

But even if these comments can be found to be extreme and outrageous, John Doe 1's claim fails for two additional reasons.  *First*, he does not allege that any of this sexual banter was "directed at" him or that Nakamura "intended to inflict injury or engaged in [the conduct] with the realization that injury will result." *Christensen*, 54 Cal.3d at 903.  Nor does John Doe 1 contend that Nakamura's actions were "especially calculated" to cause him severe emotional distress.  *Ochoa*, 39 Cal.3d at 165 fn. 5. *Second*, John Doe 1 does not allege that he suffered severe emotional distress.

**John Doe 2**

John Doe 2 alleges that Nakamura called him a "fucking cunt" while they were in the dugout during the middle of a game.  FAC ¶ 237.   Even if true, this one comment, without more, falls into the category of "insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *See Yurick*, 209 Cal.App.3d at 1128 ("I]t is generally held that there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation…The plaintiff cannot recover because of hurt feelings"); *Schneider*, 938 F.2d at 992 (screaming and yelling at plaintiff, while "rude and insensitive," is not outrageous); *Cochran*, 65 Cal.App.4th at 546 (absent allegations of physical threats, hostile messages "fall outside the tort of intentional infliction of emotional distress").[1]

John Doe 2's sole allegation of Nakamura engaging in "sexual" conduct is the same one made by John Doe 1.  FAC ¶¶ 160-162.  As discussed above, this is not extreme and outrageous conduct. And, as with John Doe 1, this sexual banter was not "directed at" John Doe 2 or "intended to inflict injury or engaged in with the realization that injury will result."  *Christensen*, 54 Cal.3d at 903.  Nor does the FAC demonstrate that this sexual banter was "especially calculated" to cause John Doe 2 severe emotional distress.  *Ochoa*, 39 Cal.3d at 165 fn. 5.

**John Doe 3**

Nearly all of John Doe 3's allegations describe conduct by Defendant Giarratano, not Nakamura.  FAC at pp. 58-60.   The only allegation relating to conduct by Nakamura is the same allegation of "sexual banter" made by John Does 1 and 2.  FAC ¶¶ 160-62.   As with those plaintiffs, this does not constitute extreme and outrageous conduct, it was not "directed at" him, and it was not

---

[1] In *Chisholm v. St Mary's City School Dist. Bd. of Education*, 947 F.3d 342 (6th Cir. 2020), a high school football player brought a claim for intentional infliction of emotional distress because, "on a daily basis," his coach called him various names, including "pussy, bitch, and pretty boy," and complained that it was impossible for the team to win with him on the team.   The Sixth Circuit - interpreting Ohio law, which has a similar standard for intentional infliction of emotional distress - held that this conduct was not "so extreme and outrageous as to go beyond all possible bounds of decency."  *Id.* at 353-54.   This Court should come to the same conclusion.  Indeed, unlike the plaintiff in *Chisholm*, who was a high school student and heard these comments "on a daily basis," John Doe 2 is a college student who was called a name one time.

"intended to inflict injury or engaged in with the realization that injury will result." *Christensen*, 54 Cal.3d at 903.[2]

In addition, John Doe 3 fails to sufficiently allege that he suffered severe emotional distress. He alleges that, during part of one semester, he had anxiety and depression, and that he had trouble sleeping or eating.  FAC ¶ 262.  Other courts have found similar allegations to be deficient. *See Wells v. Regents of the University of California*, 2015 WL 6746820, at *9 (N.D. Cal. Nov. 5, 2015) (dismissing intentional infliction of emotional distress claim, because allegations that plaintiffs "suffered and continue to suffer humiliation, lack of self-confidence, embarrassment, emotional distress, mental anguish…[,] anxiety, sleeplessness, anger, loss of sleep, hyper-vigilance consistent with post-traumatic stress disorder, depression, sadness, and excessive ruminations about their daily experiences at the hands of Defendants" were conclusory); *Wong v. Jing*, 189 Cal.App.4th 1354, 1376 (2010) (plaintiff's symptoms of lost sleep, upset stomach, and anxiety, did not constitute severe emotional distress); *Hughes,* 46 Cal.4th at 1050-1051 (concluding that "plaintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" are not "severe").

### John Doe 4

John Doe 4 alleges that Nakamura was frequently nude and, along with Giarratano, showered at the same time as the players.  FAC ¶ 299.   However, the fact that the coaches were nude in the locker room (presumably while changing in and out of their uniforms) and showered at the same time as the players (not just John Doe 4), without more, is not extreme and outrageous conduct.  Notably, John Doe 4 does not allege that Nakamura was ever nude for an improper purpose or that he engaged in any improper conduct while nude.   Furthermore, there is no allegation that this conduct was "intended to inflict injury or engaged in with the realization that injury will result." *Christensen*, 54 Cal.3d at 903.

The other allegation concerning Nakamura is that, along with Giarratano, Nakamura talked with the players about the size and shape of their penises.  FAC ¶ 300.  Even if this can be considered

---

[2] John Doe 3 alleges that he was "verbally abused" and "berated" by "Coach Defendants."  FAC ¶ ¶ 254, 260.  However, he does not cite a single example of Nakamura engaging in this conduct; he only describes specific conduct by Giarratano.  Vague claims of being "verbally abused" and "berated," without any specificity, do not rise to the level of extreme and outrageous conduct.

outrageous conduct, John Doe 4 does not allege that *he* had such a conversation with Nakamura; thus, he does not allege that these comments were ever "directed at" him.  Nor does he allege that the coaches engaged in this talk with the "inten[t] to inflict injury or…with the realization that injury will result." *Christensen*, 54 Cal.3d at 903.[3]

**John Doe 5**

John Doe 5 makes three allegations relating to Nakamura: (i) Nakamura emailed him a visualization technique that was supposed to "free [him] up to attack like a rabid, horny, Rottweiler;" (ii) he witnessed Nakamura exposing himself "as a joke" in front of players, which was accepted as a normal part of team culture; and (iii) Nakamura frequently asked John Doe 5 and other teammates sexual questions about women.  FAC ¶¶ 336-37.  The first and third allegations – comments made by Nakamura – do not qualify as outrageous conduct.  *See Hughes*, 46 Cal.4th at 1040; *Haberman*, 180 Cal.App.4th at 389.  Nor is there any basis in the FAC to indicate that these comments were "intended to inflict injury or engaged in with the realization that injury will result." *Christensen*, 54 Cal.3d at 903.  The second allegation was admittedly done "as a joke" in front of the players and was not "directed at" Plaintiff or "intended to inflict injury or engaged in with the realization that injury will result." *Id.*

**John Doe 6**

John Doe 6 alleges that (i) Nakamura sometimes showered at the same time the players did, which appeared to be "normal" to the other players; (ii) he recalls seeing Nakamura crawling on the field naked "one time;" (iii) Nakamura spoke about trying to get female students in the overlooking dorm rooms to flash their breasts; and (iv) Nakamura performed skits where he was often grunting and making animal sounds and would sometimes hold a bat between his legs like it was a penis.[4]  FAC ¶¶ 369-71.  These allegations do not constitute extreme and outrageous conduct.  *See Hughes*, 46 Cal.4th at 1040; *Haberman*, 180 Cal.App.4th at 389; *Yurick*, 209 Cal.App.3d at 1128.  Nor was any of this

---

[3] While John Doe 4 alleges that the "Coach Defendants belittled him throughout the school year in an effort to force John Doe 4 off the team," (FAC ¶ 301), he does not cite a single example of Nakamura engaging in this conduct.

[4] John Doe 6's allegation that he was selected for a random drug test even though he was not on the team is not extreme and outrageous conduct.  *Kraslawsky v. Upper Deck Co.*, 56 Cal.App.4th 179, 194 (1997).

DEFENDANT TROY NAKAMURA'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

conduct "directed at" John Doe 6 or done with the "inten[t] to inflict injury or engaged in with the realization that injury will result." *Christensen*, 54 Cal.3d at 903.

Furthermore, John Doe 6 does not allege that Nakamura's conduct proximately caused him to suffer severe emotional distress.  To the contrary, he states that he "quit the team due to *Coach G's constant abuse and belittlement* throughout that year." FAC ¶ 376 (emphasis added).  In addition, John Doe 6 does not allege that he suffered severe emotional distress.

### John Doe 7

While John Doe 7 alleges that he "endured [Nakamura's] sexual displays and efforts to persuade females to expose themselves in front of dorm windows," (FAC ¶ 392), he does not provide any details of what Nakamura did or said.  In order to avoid dismissal, a plaintiff "must allege with 'great specificity' the acts which he or she believes are so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Ransom v. Lee*, 2017 WL 10525951, at *15 (C.D. Cal. Apr. 20, 2017) (quoting *Vasquez v. Franklin Mgmt. Real Estate Fund, Inc.*, 222 Cal.App.4th 819, 832 (2013)).  Without these specific allegations, neither the parties nor the Court can evaluate whether the alleged conduct was "extreme and outrageous," whether it was "directed at" John Doe 7, and whether it was done with the intent to "inten[t] to inflict injury or engaged in with the realization that injury will result." *Christensen*, 54 Cal.3d at 903.

John Doe 7 also fails to sufficiently allege that he suffered severe emotional distress.  He alleges that he had "anxiety and sleep deprivation" (FAC ¶ 395), and "severe depression" (*id*. ¶ 398), but other courts have found similar conclusory allegations to be deficient.  *See Hughes,* 46 Cal.4th at 1050-1051; *Wells*, 2015 WL 6746820, at *9; *Wong*, 189 Cal.App.4th at 1376.

### John Doe 8

John Doe 8 alleges that, at one practice, Nakamura made sexual comments regarding girls in the undergraduate dormitories overlooking the baseball field.  FAC ¶ 402. This comment is not extreme and outrageous conduct.  *See Hughes*, 46 Cal.4th at 1040; *Haberman*, 180 Cal.App.4th at 389; *Yurick*, 209 Cal.App.3d at 1128. John Doe 8 also participated in drills where pitchers had to take off a piece of clothing if they made an error.  *Id*. ¶ 403.  But this, too, is not extreme and outrageous conduct – in fact,

he does not allege that he took off a single piece of clothing (not even his hat).  Moreover, John Doe 8 does not allege that any of this conduct was "directed at" him or made with the "inten[t] to inflict injury or engaged in with the realization that injury will result."  *Christensen*, 54 Cal.3d at 903.

### John Doe 9

John Doe 9 alleges that Nakamura regularly encouraged females in nearby dorms to flash their breasts and talked about sexual topics, including asking John Doe 9 about his sexual experiences. FAC ¶¶ 417-18.  Without more, this is not extreme and outrageous conduct.  *See Hughes*, 46 Cal.4th at 1040; *Haberman*, 180 Cal.App.4th at 389.  Nor was it "especially calculated" to cause John Doe 9 severe emotional distress.  *Ochoa*, 39 Cal.3d at 165 fn. 5.

Furthermore, while John Doe 9 states that these conversations made him "uncomfortable" (FAC ¶ 419), he does not allege that Nakamura's conduct proximately caused him to suffer severe emotional distress.  Instead, the allegations show that he suffered emotional distress due to the conduct of Giarratano.  *See* FAC ¶ 424 ("John Doe 9 no longer wanted to be around Coach G because he was afraid of him.  By October of his freshman year, John Doe 9 was severely depressed."), ¶ 420 (John Doe 9 came to "dread weekly meetings he had with Coach G in Coach G's office because he was afraid of Coach H's volatility"); FAC ¶ 422 (describing harassment by Giarratano); ¶ 425 (John Doe 9 complained to his mother about Giarratano's bullying behavior).

### John Doe 10

John Doe 10 alleges that "Coach G and Coach Naks called him a loser, made fun of his learning disabilities, and told him that ADHD is not 'real.'"  FAC ¶ 280.  While "rude and insensitive," *(Schneider,* 938 F.2d at 992), these comments fall into the category of "insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Holden*, 2016 WL 3938950, at *4.  John Doe 10's other allegations are that (i) Nakamura would talk about female athletes in a sexualized and offensive manner in front of the team and (ii) the pitchers played a game where each pitcher would have to take off a layer of clothing during practice when they made an error.   FAC ¶¶ 281-83.  This is not extreme and outrageous conduct.  Nor was this conduct "directed at" Plaintiff or "intended to inflict injury or engaged in with the realization that injury will result."  *Christensen*, 54 Cal.3d at 903.

**John Doe 11**

John Doe 11 does not make *any* allegations against Nakamura.  His claim must therefore be dismissed.

**John Doe 12**

John Doe 12 alleges that, one time, Nakamura called him "a complete ball-less pussy" and said that if he did not practice he would be "looked at like a pussy by everyone."  FAC ¶ 321.  These comments are not extreme and outrageous conduct.   *See Schneider,* 938 F.2d at 992; *Chisholm*, 947 F.3d 353-54; *Yurick*, 209 Cal.App.3d at 1128.

John Doe 12 also alleges that the coaches would "make [jokes] about each other's penises, as well as those of the other players," but he provides no specific examples of Nakamura doing so.  FAC ¶ 326.  Regardless, without more, this is not extreme and outrageous conduct.  *See Haberman*, 180 Cal.App.4th at 389; *Yurick*, 209 Cal.App.3d at 1128.  Nor does John Doe 12 allege that these "jokes" were "directed at" him or "intended to inflict injury or engaged in with the realization that injury will result."  *Christensen*, 54 Cal.3d at 903.

John Doe 12's last allegation concerning Nakamura is that the coaches showered at the same time as the players at an away game, waited in line with towels on their shoulders and genitals uncovered, and that Nakamura swung his penis around during that time.  FAC ¶ 328.  John Doe 12 does not allege that any of this conduct was "directed at" him or "intended to inflict injury or engaged in with the realization that injury will result."  *Christensen*, 54 Cal.3d at 903.

**E.**    **The Court Should Dismiss the Eleventh Cause of Action for Negligent Infliction of Emotional Distress Because Plaintiffs Have Also Pleaded a Cause of Action for Negligence**

In California, "[n]egligent infliction of emotional distress does not exist as an independent tort.  The tort is simply negligence."  *Spinks v. Residential Briarwood Apartments*, 171 Cal.App.4th 1004, 1045 (2009) (citing *Potter v. Firestone Tire & Rubber Co*., 6 Cal.4th 965, 984 (1993)).  Here, Plaintiffs have pleaded causes of action for negligence and negligent infliction of emotional distress based on the same underlying conduct.  Accordingly, this eleventh cause of action is duplicative and should be

dismissed.  *Belen v. Ryan Seacrest Productions, LLC*, 65 Cal.App.5th 1145, 1165-66 (2021) (striking cause of action for negligent infliction of emotional distress, because "no such independent tort exists," and "it is part and parcel of the negligence cause of action"); *see also Audrey G. v. City of Lafayette*, 2021 WL 5565839 (N.D. Cal. Nov. 29, 2021) (dismissing NIED claim "as duplicative of Plaintiffs' negligence claim"); *Mendia v. Garcia*, 165 F. Supp. 3d 861, 879 (N.D. Cal. 2016) ("As Plaintiff brings a separate claim for negligence, it would be redundant to allow him to also bring a claim for negligent infliction of emotional distress").

## F.    Plaintiffs Fail to State a Claim for Negligence

### 1.    John Does 1-12 Do Not Allege that Any Breach by Nakamura Threatened Physical Injury.

"There is no duty to avoid negligently causing emotional distress to another, and [ ] damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff." *Potter*, 6 Cal.4th at 984.  "***Even then, with rare exceptions***, *a breach of duty must threaten physical injury*, not simply damage to property or financial interests."  *Id.* at 985 (emphasis added); *see also Taylor v. Honeywell, Inc*., 599 Fed. Appx. 664, 665 (9th Cir. 2015) ("When there is a breach of duty, 'a person who is in the path of negligent conduct *and reasonably fears for his or her own safety* may recover for resulting emotional distress'") (citation omitted; emphasis added); *Chaconas v. JP Morgan Chase Bank*, 713 F.Supp.2d 1180, 1187 (2010) (plaintiff could not state a claim for negligent infliction of emotional distress because defendant's breach of legal duty did not threaten serious physical injury to plaintiffs) (citing *Potter*, 6 Cal.4th at 985); *Wilson v. Southern California Edison Co*., 234 Cal.App.4th 123, 156 (2015) ("[B]ecause the only injury Wilson claimed in her lawsuit was emotional distress, she was required to show that Edison's breach threatened physical injury to her").

Here, even if Nakamura did breach a legal duty, John Does 1-12 do not allege that this breach threatened physical injury or caused them to reasonably fear for their physical safety.  Therefore, they cannot state a claim for negligence.

**2.      John Does 1, 3, 6, 7, 9 and 11 Also Fail to Allege That They Suffered Serious Emotional Distress Due to the Conduct of Nakamura.**

To recover emotional distress damages on a claim for negligence where there is no physical injury, a plaintiff must show that the emotional distress was "serious." *Wong*, 189 Cal.App.4th at 1376. This is "functionally the same as the articulation of 'severe emotional distress'" required for intentional infliction of emotional distress. *Id.* at 1378.

Here, Plaintiffs do not allege that they suffered a physical injury; thus, to state a claim for negligence or negligent infliction of emotional distress, they must sufficiently allege that they suffered serious/severe emotional distress.   As discussed above, John Does 1, 3, 6, 7, and 11 have not done so. *See* Section IV.D.   Accordingly, these five plaintiffs have failed to state a claim for negligence or negligent infliction of emotional distress.

John Does 6, 9 and 11 have failed to state a claim for negligence for an additional reason:  even if they did suffer serious emotional distress, they do not sufficiently allege that Nakamura's conduct *proximately caused* this injury. As discussed above, John Does 6 and 9 allege that *Defendant Giarratano's conduct* caused them to suffer emotional distress, and John Doe 11 does not allege *any* wrongdoing by Nakamura.   *See* Section IV.D.

## V.      <u>CONCLUSION</u>

For the foregoing reasons, Nakamura respectfully requests that the Court grant this Motion in its entirety.

Dated: September 12, 2022                    RAPKIN & ASSOCIATES, LLP

                                                     By: */s/ Scott Rapkin*
                                                            Scott Rapkin

                                                     Attorneys for Defendant
                                                     Troy Nakamura