Jonathan M. Baum (SBN 303469)
*jbaum@steptoe.com*
Sonja Arndt (SBN 322728)
sarndtjohnson@steptoe.com
STEPTOE & JOHNSON LLP
One Market Plaza
Spear Tower, Suite 3900
San Francisco, California 94105
Telephone: (415) 365-6700 / Facsimile: (415) 365-6699

Attorneys for Defendant
UNIVERSITY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, and JOHN DOE 12, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, THE UNIVERSITY OF SAN FRANCISCO, ANTHONY N. (AKA NINO) GIARRATANO, and TROY NAKAMURA,<br><br>        Defendants. | Case No. 3:22-cv-01559-LB<br><br>**DEFENDANT USF'S MOTION TO DISMISS**<br><br><br>Judge:  Hon. Laurel Beeler<br><br>Trial Date:  None Set<br><br>Hearing Date: Dec. 8, 2022 |

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION .................................................................................................. 1

II. PLAINTIFFS' FACTUAL ALLEGATIONS ...................................................... 2

III. STANDARD OF REVIEW .................................................................................. 5

IV. ARGUMENT ........................................................................................................ 5

    A. *ALL CLAIMS BY JOHN DOES 4-12 ARE TIME BARRED AND MUST BE DISMISSED* .................. 5

    B. *PLAINTIFFS' TITLE IX CLAIMS (COUNT 1 AND 2) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM ON THE "BASIS OF SEX"* ................................................... 12

    C. *PLAINTIFFS' TITLE IX DISCRIMINATION CLAIM (COUNT 1) MUST BE DISMISSED FOR FAILURE TO ALLEGE THAT USF HAD "ACTUAL NOTICE"* ..................................... 13

    D. *PLAINTIFFS' RETALIATION CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE THEY ENGAGED IN A "PROTECTED ACTIVITY"* ...................................... 15

    E. *PLAINTIFFS' NEGLIGENCE CLAIMS AGAINST USF (COUNTS 3, 4, AND 9) FAIL BECAUSE THEY DO NOT ADEQUATELY ALLEGE FORESEEABILITY* ............................... 17

    F. *COUNT 5 MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER THE CAL. EDUC. CODE 66270 (CALIFORNIA'S EQUITY IN HIGHER EDUCATION ACT)* ........................ 18

    G. *COUNT 6 MUST BE DISMISSED BECAUSE CAL. GOV. CODE § 66281.5 DOES NOT SUPPORT A PRIVATE RIGHT OF ACTION FOR DISCRIMINATION* ............................................. 18

    H. *PLAINTIFFS' CLAIMS FOR NEGLIGENCE UNDER COUNTS 7 (GROSS NEGLIGENCE) AND 8 (ORDINARY NEGLIGENCE) MUST BE DISMISSED* ....................................... 19

    I. *COUNT 10 MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS* ................................................... 20

    J. *COUNT XI MUST BE DISMISSED FOR FAILURE TO ALLEGE A NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM.* ................................................... 21

    K. *RATIFICATION (COUNT 12) IS NOT AVAILABLE HERE BECAUSE USF DID NOT AFFIRMATIVELY ADOPT COACHES' CONDUCT AS ITS OWN* .......................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aguilar v. Corral,*
   No. CIVS 07-1601 ............................................................................................................25

*Barten v. State Farm Mut. Auto. Ins. Co.,*
   28 F. Supp.3d 978 (D. Ariz. 2014) ...................................................................................18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..........................................................................................................12

*Bostock v. Clayton County, Georgia,*
   140 S. Ct. 1731 (2020)......................................................................................................19

*Brown v. Napa Valley Unified Sch. Dist.,*
   No. 3:11-CV-05673-JCS, 2012 WL 4364673 (N.D. Cal. Sept. 24, 2012) ......................18

*Burgess v. Superior Court*
   (1992) 2 Cal.4th 1064 .......................................................................................................27

*Christensen v. Superior Court*
   (1991) 54 Cal.3d 868 ........................................................................................................27

*Deirmenjian v. Deutsche Bank, A.G.,*
   526 F. Supp.2d 1068 (C.D. Cal. 2007) .............................................................................16

*Doe 1 v. Baylor Univ.,*
   240 F. Supp.3d 646 (W.D. Tex. 2017).........................................................................14, 15

*Emeldi v. University of Oregon,*
   698 F.3d 715 (9th Cir. 2012) ............................................................................................22

*Ernest v. Univ. of Phoenix,*
   No. 08-CV-2363-H (POR), 2010 WL 11508435 (S.D. Cal. July 27, 2010)....................17

*Ervin v. Los Angeles County,*
   848 F.2d 1018 (9th Cir. 1988) ..........................................................................................18

*Farmers Ins. Grp. v. Cnty. of Santa Clara,*
   11 Cal. 4th 992 (1995) ......................................................................................................25

*Fowler v. Univ. of Phoenix, Inc.,*
   No. 18CV1544-WQH-KSC, 2019 WL 1746576 (S.D. Cal. Apr. 18, 2019),
   aff'd, 817 F. App'x 442 (9th Cir. 2020) ...........................................................................16

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

*Fowler v. Varian Assocs., Inc.*,
196 Cal.App.3d 34 (1987) .................................................................................26

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal.4th 797 (2005) ...............................................................................13, 15

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998).......................................................................14, 20, 21, 22

*Green v. Bastyr Univ., LLC*,
295 F. App'x 128 (9th Cir. 2008) ................................................................18

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) ....................................................................12, 15

*Hoesterev v. City of Cathedral City*,
945 F.2d 317 (9th Cir. 1991) .........................................................................13

*Hughes v. Pair*,
46 Cal. 4th 1035 (2009) ..................................................................................26

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980) ..........................................................................12

*Jaeger v. Howmedica Osteonics Corp.*,
No. 15-cv-00164-HSG, 2016 WL 520985 (N.D. Cal. Feb. 10, 2016).....................16

*Jeffrey E. v. Central Baptist Church*,
197 Cal.App.3d 718 (1988) ..........................................................................25

*Jennings v. University of North Carolina*,
482 F.3d 686 (4th Cir. 2007) .........................................................................20

*John R. v. Oakland Unified School Dist.*,
48 Cal.3d 438 ...............................................................................................25

*Johnson v. Henderson*,
314 F.3d 409 (9th Cir. 2002) .........................................................................17

*Lopez v. Regents of Univ. of California*,
5 F.Supp.3d 1106 (N.D. Cal. 2013) ..........................................................20, 21

*T.L. ex rel. Lowry v. Sherwood Charter Sch.*,
68 F. Supp.3d 1295 (D. Or. 2014) ............................................................22, 23

*Lowry v. Sherwood Charter Sch.*,
691 F. App'x 310 (9th Cir. 2017) ....................................................................22

*Lozano v. Montoya Alvarez*,
   572 U.S. 1 (2014).................................................................................18

*Lukovsky v. City & County of San Francisco*,
   535 F.3d 1044 (9th Cir. 2009)..............................................................16

*Molien v. Kaiser Foundation Hospitals*
   (1980) 27 Cal.3d 916............................................................................27

*Ollier v. Sweetwater Union High School Dist.*,
   768 F.3d 843 (9th Cir. 2014)................................................................23

*Oncale v. Sundowner Offshore Services, Inc.*,
   523 U.S. 75 (1998)...........................................................................19, 20

*Pincay v. Andrews*,
   238 F.3d 1106 (9th Cir. 2001)..............................................................17

*Ratcliff v. The Roman Cath. Archbishop of Los Angeles*,
   79 Cal. App. 5th 982 (2022)............................................................24, 28

*Reese v. Jefferson Sch. Dist. No. 14J*,
   208 F.3d 736 (9th Cir. 2000)................................................................20

*Ryan v. Microsoft Corp.*,
   147 F. Supp.3d 868 (N.D. Cal. 2015)...................................................16

*Santa Maria v. Pacific Bell*,
   202 F.3d 1170 (9th Cir. 2000)..............................................................17

*Stanley v. Trustees of California State University*,
   433 F.3d 1129 (9th Cir. 2006)........................................................13, 14

*Thorman v. Am. Seafoods Co.*,
   421 F.3d 1090 (9th Cir. 2005)..............................................................16

*Volk v. D.A. Davidson & Co.*,
   816 F.2d 1406 (9th Cir. 1987)..............................................................16

*Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*,
   24 Cal. App. 5th 825 (2018).................................................................26

*William L. Lyon & Assocs., Inc. v. Superior Ct.*,
   204 Cal. App. 4th 1294 (2012).............................................................25

*Wong v. Tai Jing*,
   189 Cal.App.4th 1354, 117 Cal.Rptr.3d 747 (Ct. App. 2010)...............27

1

2

*Zumbrun v. Univ. of S. Cal.*,
    101 Cal. Rptr. 499 (Ct. App. 1972) ............................................................17

3

**Statutes**

4

20 U.S.C. § 1681(a) ..................................................................................................19

5

Cal. Civ. Proc. Code §335.1 ....................................................................................23

6

Cal. Civ. Proc. Code § 335.1, 361 ...........................................................................13

7

Cal. Educ. Code 66270 (Donahoe Higher Education Act) ......................................24

8

Cal. Gov. Code § 66281.5.................................................................................24, 25

9

California Education Code Section 66270...................................................................8

10

11

California Equity in Higher Education Act .................................................................8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT USF'S MOTION TO DISMISS**
DM1\13451925.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    <u>INTRODUCTION</u>

Plaintiffs in this case are twelve current and former baseball players at the University of San Francisco, whose attendance spans a quarter century. While plaintiffs' Amended Complaint ("AC") is written to capture headlines, likening USF's baseball team to notorious (and totally unrelated) scandals at other schools and casually tossing around the term "assault," the reality is that not a single USF player ever alleges he was sexually assaulted. Instead, plaintiffs' claims boil down to allegations their former coaches were verbally abusive and sometimes made improper comments about sexual topics or engaged in inappropriate conduct. USF takes these allegations seriously, and within days of learning of these complaints, it launched an investigation, suspended the head coach, and, ultimately, made the decision to terminate both coaches earlier this year.

Plaintiffs now bring several claims against USF, including that it: (1) discriminated against the male baseball players "on the basis of sex" in violation of Title IX; (2) retaliated against them for complaining of sex discrimination in violation of Title IX (even though no complaint of sexual harassment was ever filed; (3) negligently supervised Coach Nakamura; (4) negligently supervised Coach Giarratano; (5) discriminated against the players because of their gender, sexual orientation, and disability status in violation of California Education Code Section 66270; (6) discriminated against the players in violation of California's Equity in Higher Education Act, California Education Code Section 66250; (7) was grossly negligent toward the players; (8) was negligent toward the players; (9) negligently failed to warn players of the risk of sexual harassment by their coaches; (10) intentionally inflicted emotional distress on players;

(11) negligently inflicted emotional distress on players; and (12) ratified all the actions of the baseball coaches.[1]

All of these claims fail as a matter of law for two simple reasons. First, the claims brought by nine of the twelve plaintiffs are barred by the statute of limitations. John Does 4-12 all played baseball at USF between 1999 and 2018, but never filed a Title IX claim or reported any sexual harassment to USF during their time at the school. Because a two-year statute of limitations applies to all claims against USF, these claims are time-barred. Second, each of plaintiffs' claims against USF fail as a matter of law because plaintiffs do not allege USF was ever notified of sexual harassment on the baseball team. Without "actual notice" to a narrowly defined group of university officials, Title IX's discrimination and retaliation provisions are inapplicable. Plaintiffs' related state law claims similarly collapse because plaintiffs never allege USF was aware of the discrimination and harassment that allegedly occurred.

## II.    PLAINTIFFS' FACTUAL ALLEGATIONS

Baseball head coach Nino Giarratano and assistant coach Troy Nakamura worked at USF from 1999 to 2022. AC ¶ 5. During this time, they coached hundreds of student athletes. Plaintiffs are 12 such players who allege they experienced a variety of misconduct, ranging from verbal abuse and sexualized banter, to inappropriate sexualized behavior, including the following:

- Being told they are "worthless" or that they are "pussies" and "faggots," AC ¶ 154;

---

[1] It is unclear whether plaintiffs mean to bring Count 13 (Breach of Fiduciary Duty) against USF. Under the heading for Count 13, plaintiffs state "The NCAA and USF are thus responsible for Coach Defendants' actions," but then in the next line plaintiffs say that claim is only brought against the NCAA, and they fail to allege any duty on the part of USF. AC ¶¶ 594-602.

**DEFENDANT USF'S MOTION TO DISMISS**
DM1\13451925.1

- Seeing coaches whistle at female students to suggest they flash their breasts, and being told "Trust me, I want to fuck them too." AC ¶ 157;

- Being forced to participate in games during baseball practice where players would take off an article of clothing if they made an error, down to their underwear, AC ¶ 158;

- Hearing coaches talk about women they wanted to have sex with, AC ¶ 161;

- Seeing their coaches shower naked in the locker room after practice, AC ¶ 178;

- Seeing their coach expose himself as a joke in front of players, AC ¶ 337;

- After the players went swimming in their underwear at the beach, hearing their coach comment about how shriveled all the players' penises were, AC ¶ 182;

- Hearing their coaches make homophobic jokes about players, AC ¶ 183;

- Hearing their coaches talk about their penis sizes and the penis sizes of other players, AC ¶ 326;

- Hearing a coach make fun of a player's learning disability and say "ADHD is not real," AC ¶ 280.

Notwithstanding the serious nature of these claims, it is clear from the face of plaintiffs' Amended Complaint that a critical allegation has been omitted: No one ever filed a complaint or informed USF's leadership about alleged sexual harassment on the baseball team.

The Amended Complaint makes the following statements regarding what USF learned concerning alleged sexual harassment allegations on the baseball team:

- In May 2014, John Doe 6's parents sent the USF Associate Athletic Director a letter. AC ¶ 146. In this letter, John Doe 6's parents wrote that changes in the coaching personnel have created a "hostile environment," because "Players are being called out and they are told they are 'pathetic,' 'weak-minded,' 'a cancer to the team,' and that they 'need to

3

understand that their baseball career is over.'" AC ¶ 379. Plaintiffs do not allege this letter mentioned sexual harassment or anything related to sexual conduct. *Id.* The four-page letter is attached in its entirety as Exhibit 1.

- In 2020, John Doe 1 and several older baseball players had a conversation among themselves where they discussed reporting the coaches' behavior to the school's Title IX office, but they never did so. AC ¶ 190.

- In 2021, John Doe 1's mother left several voicemails for USF's Athletic Director, which were not returned. AC ¶ 212. Plaintiffs do not allege that these voicemails communicated any concerns about the baseball team, let alone that they gave actual notice of sexual harassment to USF. *Id.*

- On May 30, 2021, John Doe 2's parents sent an email with the subject line "URGENT MEETING REQUEST" to USF's Athletic Director. AC ¶ 239. The Athletic Director never responded to this email. *Id.*; *See* Exhibit 2 (full copy of email, which is just a meeting request).

- In November 2021, several players performed a skit with the coaches present, where they pretended to make a complaint about Coach Nakamura to USF's Title IX Office. AC ¶ 193. Plaintiffs do not allege that anyone from USF aside from the coaches was present at this skit, or that USF was ever informed about this skit. *Id.*

- On Dec. 17, 2021, USF issued a statement announcing that it had received complaints about the USF baseball team and had suspended both coaches pending the results of an internal investigation. AC ¶ 225.

Far from ignoring plaintiffs' complaints, USF discovered these allegations through its own affirmative outreach. In late 2021, USF's Athletic Director reached out to schedule a call

4

with Does 1-3 after noticing they had dropped off the baseball team. AC ¶ 220-221. John Doe 1 did not respond, and shortly thereafter, John Doe 1's mother contacted the USF Athletic Director AC ¶ 221. Within weeks of learning of the allegations about sexual harassment on the baseball team, USF launched an investigation and suspended both coaches. AC ¶ 225.

## III.   STANDARD OF REVIEW

A complaint must be dismissed under Rule 12(b)(6) when a plaintiff's allegations fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If plaintiff fails to allege actual facts supporting a claim for relief, the claim must be dismissed as a matter of law. Furthermore, dismissal is warranted under Fed. R. Civ. P. 12(b)(6), where the running of the statute of limitations period is "apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

Additionally, plaintiffs' fraudulent concealment allegation is subject to a heightened pleading requirement. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). To survive a motion to dismiss, a plaintiff alleging fraudulent concealment must plead "that the defendant affirmatively misled [him], and that the plaintiff had neither actual nor constructive knowledge of the facts giving rise to [his] claim despite its diligence in trying to uncover those facts." *Id.*

## IV.   ARGUMENT

### A.   All Claims by John Does 4-12 Are Time Barred and Must Be Dismissed

Under California law, the statute of limitations period for Title IX is the same

1   as for personal injury actions—two years. Cal. Civ. Proc. Code § 335.1, 361; *Stanley v. Trustees*

2   *of California State University*, 433 F.3d 1129, 1136 (9th Cir. 2006). The statute of limitations

3   begins to run once a cause of action accrues. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797,

4   808 (2005).

5

6              i.   All Claims Accrued Once Does 4-12 Left the Baseball Team

7                   a.   Once Plaintiffs 4-12 Left the Sexual Harassment Environment
                         Their Federal Claims Accrued

8

9          "Although Title IX borrows a state statute of limitations period, federal law governs the

10  determination of the point at which the limitations period begins to run." *Stanley*, 433 F.3d at

11  1136 (quotations omitted). "[T]he touchstone for determining the commencement of the

12  limitations period is notice: a cause of action generally accrues when a plaintiff knows or has

13  reason to know of the injury which is the basis of his action." *Hoesterev v. City of Cathedral*

14  *City*, 945 F.2d 317, 319 (9th Cir. 1991) (quotations omitted).

15

16         The U.S. Supreme Court makes clear that for "hostile environment claims . . . to be

17  timely, the employee need only file a charge within . . . [the limitations period] of any act that is

18  part of the hostile . . . environment" *Stanley*, 433 F.3d at 1136. In *Stanley*, the Ninth Circuit held

19  that plaintiff's Title IX claim against California State University was time barred because more

20  than one year (the California statute of limitations at that time) had passed since plaintiff left the

21  university so it was impossible for her to allege "that she was subject to any sexually-natured

22  conduct at the University during a period when she was not present." *Id.* at 1137. Applying the

23  same logic, it is impossible for plaintiffs who left the USF baseball team between four and

24  twenty years ago to claim the sexual harassment was on-going after they left.

25

26

27         This is apparent on the face of the Amended Complaint, where it is alleged: Doe 4 left the

28  USF baseball team in 2018 (AC ¶ 297), Doe 5 left in 2014 (AC ¶ 334), Doe 6 left in 2014 (AC ¶

367), Doe 7 left in 2014 (AC ¶ 385), Doe 8 left in 2014 (AC ¶ 399), Doe 9 left in 2010 (AC ¶ 416), Doe 10 left in 2018 (AC ¶ 274), Doe 11 left in 2000 (AC ¶ 430), and Doe 12 left in 2018 (AC ¶ 309). Since none of Does 4-12 were present at USF after 2018, they cannot allege USF "caused [them] to undergo, or to be vulnerable to, any harassment during the limitations period, a time when [they] were not present at the University." *Stanley*, 433 F.3d at 1137.

Plaintiffs' argument that Does 4-12 "did not discover they had viable claims" until they saw a San Francisco Chronicle article about this case in March 2022 misapprehends the law. AC ¶ 463. To seek damages against a university under Title IX, a plaintiff must either allege that a university had an "official policy" that was discriminatory, or that the institution should be held liable because it "has actual knowledge of discrimination and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 276 (1998). Here, plaintiffs point to no official USF policy they allege is discriminatory, so the accrual period for the statute of limitations starts when plaintiffs left the sexual harassment environment (the baseball team). *Stanley*, 443 F.3d at 1137.

Alternately, if Does 4-12 were to amend their Amended Complaint to allege that USF had an "official policy" that was discriminatory, their claims would still be time barred, because, under the circumstances, they would have had more than enough information to suspect the discrimination they suffered may have been linked to USF. *See Doe 1 v. Baylor Univ.*, 240 F. Supp.3d 646, 663 (W.D. Tex. 2017) (for statute of limitations to begin accruing, "all that must be shown is the existence of circumstances that would lead a reasonable person to investigate further.").

1

2

        b.      State Law Claims Have the Same Accrual Period as the Federal Claims.

3

For state law claims against USF (Counts 3-12), a cause of action accrues at "the time

4

when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery,*

5

*Inc.*, 35 Cal.4th 797, 808 (2005). The California Supreme Court held in *Richards v. CH2M Hill,*

6

*Inc.* that harassment claims accrue when the course of conduct is ended through either cession by

7

the harasser or when the harassee leaves the harassing environment. 26 Cal.4th 798 (2001). Here,

8

Does 4-12 all left the baseball team by 2018, so the two-year statute of limitations has run.

9

10

Additionally, the discovery rule does not save plaintiffs' time-barred claims because,

11

"[i]n order to rely on the discovery rule for delayed accrual of a cause of action," plaintiffs "must

12

specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have

13

made earlier discovery despite reasonable diligence."  *Fox*, 35 Cal. 4th at 808. Plaintiffs fail to

14

allege they exercised reasonable diligence.

15

16

        c.      Plaintiffs Fail to Properly Allege Fraudulent Concealment

17

Plaintiffs argue the statute should be tolled because USF's failure to respond to a letter

18

sent in 2014 by Doe 6's parents somehow constitutes "fraudulent concealment." AC ¶ 456. This

19

allegation that not responding to a letter from the parent of an adult college student constitutes

20

"fraudulent concealment" misapprehends that doctrine. To give rise to fraudulent concealment, a

21

"Plaintiff must plead facts showing that the defendant *affirmatively* misled it, and that the

22

plaintiff had neither actual nor constructive knowledge of the facts giving rise to its claim despite

23

its diligence in trying to uncover those facts." *Hexcel Corp., supra,* 681 F.3d at 1060 (emphasis

24

added).

25

26

At the motion-to-dismiss stage, claims of fraudulent concealment to circumvent the

27

statute of limitations are subject to the heightened pleading standard in Rule 9(b). *Jaeger v.*

28

8

*Howmedica Osteonics Corp.*, No. 15-cv-00164-HSG, 2016 WL 520985, at *11 (N.D. Cal. Feb. 10, 2016) ("a plaintiff alleging fraudulent concealment must satisfy the heightened pleading requirements of [Federal] Rule [of Civil Procedure] 9(b)."); a plaintiff "must point to some fraudulent concealment, some active conduct by the defendant above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2009) (quotations omitted).

Here, rather than pleading fraud with particularity, plaintiffs allege that USF "intentionally ignored" Doe 6's parents' letter. AC ¶ 379. But failing to respond to a letter is not an "affirmative" act sufficient to support a finding of fraudulent concealment. *Ryan v. Microsoft Corp.*, 147 F. Supp.3d 868, 886 (N.D. Cal. 2015) ("passive concealment of information" is insufficient); *see also Volk v. D.A. Davidson & Co*., 816 F.2d 1406, 1416 (9th Cir. 1987) ("[S]ilence or passive conduct does not constitute fraudulent concealment"; *see also Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1095–96 (9th Cir. 2005) ("Merely keeping someone in the dark is not the same as affirmatively misleading [her].").

The only circumstance where courts have found failure to disclose information to constitute fraudulent concealment is where the relationship imposes a fiduciary duty that requires disclosure. *Deirmenjian v. Deutsche Bank, A.G.*, 526 F. Supp.2d 1068, 1090 (C.D. Cal. 2007). However, in this context, courts have found that universities have a "contractual, 'normal relationship'" with their students, rather than a fiduciary duty. *Fowler v. Univ. of Phoenix, Inc.*, No. 18CV1544-WQH-KSC, 2019 WL 1746576, at *15 (S.D. Cal. Apr. 18, 2019), aff'd, 817 F. App'x 442 (9th Cir. 2020). '[T]he normal relationship between a student and the university and its agents is contractual.... The mere placing of a trust in another person does not create a

fiduciary relationship.' *Zumbrun v. Univ. of S. Cal.*, 101 Cal. Rptr. 499, 506 (Ct. App. 1972); *see also Ernest v. Univ. of Phoenix*, No. 08-CV-2363-H (POR), 2010 WL 11508435, at *5 (S.D. Cal. July 27, 2010) ("The allegation that universities, university officials, directors, and professors have a fiduciary relationship to students because they extend guidance in shaping careers and provide direction to students does not give rise to a fiduciary duty."). Here, the university's supposed failure to disclose was not even to one of its students, but to his parent, where the argument in favor of finding a fiduciary duty is one step weaker.

Even if Doe 6 were able to make out a fraudulent concealment claim, which he cannot, that claim would not extend to Does 4-5 and 7-12 because they do not allege any facts giving rise to such a claim. *See Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001) ("Fraudulent concealment applies to toll statute of limitations only if plaintiff establishes affirmative conduct upon part of defendant that would, under circumstances of case, lead reasonable person to believe he did not have claim for relief.").

     ii.  <u>Plaintiffs 4-12s' Claim are Not Revived by the Doctrine of Equitable Estoppel.</u>

Like fraudulent concealment, equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000), overturned on other grounds. A finding of equitable estoppel rests on the consideration of "a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). Here, the allegation that, upon receiving a letter from the parents of John Doe 6, USF "did nothing" does

not constitute "conduct or representations." AC ¶ 489. *See Barten v. State Farm Mut. Auto. Ins. Co.,* 28 F. Supp.3d 978, 996 (D. Ariz. 2014) ("Silence or inaction may form the basis for an equitable estoppel only where the silent party had a duty or obligation to speak or take action."). Plaintiffs have failed to establish that USF has a fiduciary duty to John Doe 6's parents that would support their argument that its alleged silence constitutes "action" for tolling doctrines to apply.

iii.   <u>Equitable Tolling Does Not Apply Because Plaintiffs Were Not Prevented by Anyone from Bringing a Timely Action</u>

Equitable tolling only occurs if "a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014); *see also Green v. Bastyr Univ., LLC*, 295 F. App'x 128, 129 (9th Cir. 2008) ("The district court properly determined that Green could not invoke the doctrines of equitable tolling and equitable estoppel because he did not diligently pursue his claims or show that the defendant engaged in any deception that caused him to miss the statutory deadline.") Here, plaintiffs fail to allege any reason they did not inform USF of the sexual harassment within the statute of limitations period, let alone, an "extraordinary circumstance." Additionally, there would be substantial prejudice to USF should plaintiffs be allowed to proceed, because this lengthy delay has greatly limited USF's ability to investigate these allegations and take appropriate action.

Lastly, bringing this suit now is unreasonable because, among other reasons, many of the witnesses who experienced these events years ago likely may not be available and their memories may have faded. *See Ervin v. Los Angeles County,* 848 F.2d 1018, 1019 (9th Cir. 1988) (declining to apply equitable tolling to plaintiff's federal civil right case following her prior state tort claim where she was aware of the facts of the case for a year and a half prior to

11

filing her claim); *Brown v. Napa Valley Unified Sch. Dist.*, No. 3:11-CV-05673-JCS, 2012 WL 4364673, at *5 (N.D. Cal. Sept. 24, 2012) (declining to apply equitable tolling where plaintiff waited two years after exhausting administrative remedies to file a subsequent claim).

**B.      Plaintiffs' Title IX Claims (Count 1 and 2) Must Be Dismissed for Failure to State a Claim on the "Basis of Sex"**

Title IX provides, with certain exceptions not at issue, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). The "ordinary meaning of 'because of' is 'by reason of' or 'on account of.'" *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1734 (2020). "That term incorporates the but-for causation standard." *Id.* As the Supreme Court explained in the analogous employment context, "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). Plaintiffs completely fail to allege this causal nexus.

Without a nexus to sex, a Title IX discrimination claim must fail. In *Oncale*, the Supreme Court explained, "Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity." 523 U.S. at 80. The Court explained that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex," but that the plaintiff must allege some sex-based motivation, such as the harasser's "general hostility to the presence of women in the workplace" or *"*direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* "Whatever evidentiary route the plaintiff chooses to follow," "he or she must

always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimination because of sex.*'" *Id.* at 81 (emphasis in original). Here, plaintiffs fail to allege any nexus between the mistreatment they allegedly suffered at the hands of their coaches and the fact they are male. In fact, plaintiffs undermine their own claims by alleging their coaches engaged in boorish behavior to students regardless of their sex. *See, e.g.,* AC ¶¶ 157, 161, 166, 186, 283, 370, 392, 418 (Defendant Coach would try to get females to flash their breasts, "Coach Naks . . . whistling and lifting his shirt [to females]"). While this conduct is completely unacceptable, Title IX was enacted to prevent sex-based discrimination, not stop inappropriate conduct more generally. *See Jennings v. University of North Carolina*, 482 F.3d 686, 688 (4th Cir. 2007) ("Title IX is not a civility code"). The conduct plaintiffs allege is abhorrent, but it does not violate Title IX unless they allege they were victimized on the basis of their sex, which they do not. 20 U.S.C. § 1681(a).

### C.      Plaintiffs' Title IX Discrimination Claim (Count 1) Must Be Dismissed for Failure to Allege that USF Had "Actual Notice"

The U.S. Supreme Court has conclusively held that universities cannot be held liable for the conduct of their employees on a *respondeat superior* or "constructive notice" basis. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 275 (1998). ("Allowing recovery of damages based on principles of *respondeat superior* or constructive notice in cases of teacher-student sexual harassment would be at odds with that basic objective" of Title IX). In order to hold a university liable for the conduct of its employees, a plaintiff must make a prima face showing that: (1) the defendant exercised substantial control over the harasser; (2) the harassment was severe and pervasive; (3) the defendant had actual knowledge of the harassment; and (4) the defendant was deliberately indifferent of said harassment.  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000).

13

1    As described herein, plaintiffs have failed to allege that USF had actual notice of their

2 Title IX claim. "Actual notice" requires that "an appropriate official possessed enough

3 knowledge of the harassment that it reasonably could have responded with remedial measures to

4 address the kind of harassment upon which plaintiff's legal claim is based." *Lopez v. Regents of*

5 *Univ. of California*, 5 F.Supp.3d 1106, 1122 (N.D. Cal. 2013). An "appropriate person" under §

6 1682 is an official "who, at minimum, has authority to address the alleged discrimination and to

7 institute corrective measures." *Gebser*, 524 U.S. at 290.

8

9    The Supreme Court's analysis in *Gebser* illustrates the high bar plaintiffs must meet to

10 show an institution had "actual notice" under Title IX. 524 U.S. 274. In that case, the parents of

11 two students complained to the school principal of inappropriate sexual comments a teacher was

12 making to students, and the principal convened a meeting with the two parents and the teacher to

13 discuss the teacher's comments. *Id.* at 278. Police later arrested the teacher for sexual intercourse

14 with a different minor, and that minor's parents filed a Title IX suit against the district. *Id.* The

15 Supreme Court found that the district did not have "actual notice" sufficient to impose liability

16 on the school because, while the principal had received prior complaints about the teacher at

17 issue, that information "consisted of a complaint from parents of other students charging only

18 that [teacher] had made inappropriate comments during class, which was plainly insufficient to

19 alert the principal to the possibility that [teacher] was involved in a sexual relationship with a

20 student." *Id.* at 291. Here, plaintiffs' allegation that USF knew of a "hostile environment,"

21 including verbal abuse by the coaches, based on the letter John Doe 6's parents sent complaining

22 about players being called "pathetic" or "weak-minded" or the email sent by John Doe 2's parent

23 seeking an urgent meeting," with nothing else in the message, is insufficient to allege "actual

24 notice" of sexual harassment under Title IX. AC ¶¶ 379, 239. General complaints about bullying

1  or name calling do not provide USF with actual notice of sexual harassment. *See Lopez*, 5

2  F.Supp.3d at 1122

3       Plaintiffs also fail to allege that USF was "deliberately indifferent" as required to impose

4  liability against a university for the acts of its employee. In *Gebser* the Supreme Court found that

5  plaintiff could not show deliberate indifference, because the school "terminated [teacher's]

6  employment upon learning of his relationship with [student]." 524 U.S. at 291. Here, like the

7  school in *Gebser*, USF acted quickly upon learning of the alleged misconduct, conducting an

8  investigation and taking disciplinary action against both defendant coaches on December 17,

9
10 2021, within weeks of when USF learned of the allegations. AC ¶ 225. Plaintiffs have made no

11
12 allegations that USF was deliberately indifferent.

13       **D.    Plaintiffs' Retaliation Claim Must be Dismissed Because Plaintiffs Fail to
14             Allege They Engaged in a "Protected Activity"**

15       Plaintiffs' retaliation claim under Title IX must be dismissed because they never alleged

16 they engaged in a protected activity. A Title IX violation for retaliation requires: "(1) [the]

17 claimant engaged in protected activity, (2) [the] claimant suffered adverse action by the

18
19 defendant, and (3) there is a causal connection between the two." *T.L. ex rel. Lowry v. Sherwood*

20 *Charter Sch.*, 68 F. Supp. 3d 1295, 1310 (D. Or. 2014), aff'd sub nom. *Lowry v. Sherwood*

21 *Charter Sch.*, 691 F. App'x 310 (9th Cir. 2017). The relevant "protected activity" in this context

22 is "speaking out against sex discrimination" by filing a complaint. *Emeldi v. University of*

23 *Oregon*, 698 F.3d 715, 725 (9th Cir. 2012) ("complaints . . . about gender-based institutional

24
25 bias, and . . .  unequal treatment of female graduate students, were protected activity under Title

26 IX."); *see also T.L. ex rel. Lowry*, 68 F. Supp.3d at 1311 ("plaintiff must show that he or she was

27 retaliated against because he or she complained of sex discrimination").

28

Here, plaintiffs fail to allege that any of the John Does ever filed complaints with USF regarding sexual harassment by Defendant Coaches. This is critical.

Each of the examples plaintiffs mention in the Amended Complaint fail to show that they ever engaged in a protected activity sufficient to support a retaliation claim. According to the Amended Complaint, "[a]t the end of Doe 1's freshman year" (spring 2021), Doe 1's parents allegedly called USF and "left several voicemails for USF's AD at the time, Joan McDermott, which were not returned." AC ¶ 212. This is not a complaint of sexual harassment. On May 30, 2021, Doe 2's parents allegedly sent an email requesting "an urgent in person meeting," and this email was not returned. AC ¶ 239. Plaintiffs never allege that this communication mentioned alleged sexual harassment, let alone constituted a report sufficient to support a retaliation claim. *Id.*

In fact, the only allegation that plaintiffs ever reported any misconduct on the part of the coaches came when Doe 6's parents sent a letter to USF's Associate Athletic Director in May 2014. While the paragraph titled "Hostile Environment" might, on first glance, seem to convey a complaint about sexual harassment, a review of the text shows the paragraph complains only about non-sexual verbal abuse, and never once mentions sexual harassment. *Id.* In fact, a review of the entire four-page letter shows that Doe 6's parents complained mainly about him not getting enough playing time on the team, and clearly is not making a sexual harassment complaint. Exhibit 1. Because Does 1-12 failed to file complaints regarding sexual harassment,

they did not engage in a protected activity under Title IX. Thus, plaintiffs' retaliation claims fail as a matter of law.[2]

### E.  Plaintiffs' Negligence Claims Against USF (Counts 3, 4, and 9) Fail Because They Do Not Adequately Allege Foreseeability

As discussed in section A, Doe 4-12s' negligence claims (Counts 3, 4, and 9) have expired and must be dismissed. Cal. Civ. Proc. Code §335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another.").

Additionally, all plaintiffs' negligence claims should be dismissed because they have failed to allege that the harm they allegedly suffered was foreseeable to USF. Educational institutions are liable "for the negligence of supervisory or administrative personnel who knew, or should have known of the foreseeable risk to students of sexual abuse by an employee and nevertheless hired, retained, and/or inadequately supervised that employee." *Ratcliff v. The Roman Cath. Archbishop of Los Angeles*, 79 Cal. App. 5th 982, 1007 (2022), as modified (June 15, 2022), review denied (Aug. 10, 2022). Here, because plaintiffs fail to allege any complaint was ever made regarding misconduct by the coaches, they cannot show the required foreseeability in order to establish that USF was negligent.

---

[2] Even if any of these individual plaintiffs (Does 1, 2, and 6) had engaged in a protected activity sufficient to support a retaliation claim under Title IX, which they have not, their later activity would not support retaliation claims by other individual plaintiffs who left USF years (sometimes decades) earlier. In *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 866 (9th Cir. 2014), the Ninth Circuit held that female student athletes who directly experience retaliation based on the protected activity of their coach are within the "zone of interests" protected by Title IX's retaliation provision. However, the court never extends this "zone of interests" protection to student athletes who did not experience retaliation because they were not on the sports team.

F.     **Count 5 Must Be Dismissed for Failure to State a Claim Under the Cal. Educ. Code 66270 (California's Equity in Higher Education Act).**

John Doe 4-12s' claims under Count 5 has expired under the statute of limitations. *See Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 935 (C.D. Cal. 2015) ("Plaintiffs' claims for sexual orientation harassment under the California Educational Code are governed by the same elements as a federal cause of action under Title IX.").

Additionally, all plaintiffs' claims under this provision must be dismissed because plaintiffs fail to allege USF had actual notice of discrimination. A violation of Cal. Educ. Code 66270 requires that Plaintiff makes a prima facie showing that: "(1) he or she suffered 'severe, pervasive and offensive' harassment that effectively deprived plaintiff of the right of equal access to educational benefits and opportunities; (2) the [educational institution] had 'actual knowledge' of that harassment; and (3) the [institution] acted with 'deliberate indifference' in the face of such knowledge." *Videckis*, 100 F. Supp. at 935. This claim must be dismissed for the same reason as plaintiffs' Title IX discrimination claim.

G.     **Count 6 Must Be Dismissed Because Cal. Gov. Code § 66281.5 Does Not Support a Private Right of Action for Discrimination**

California Education Code Section 66281.5 contains a statement of legislative intent, stating that "all persons, regardless of their sex, should enjoy freedom from discrimination of any kind in the postsecondary educational institution of the state." Courts have held that this section does support a separate cause of action for discrimination. *Aguilar v. Corral*, No. CIVS 07-1601 LKK/KJM, 2007 WL 2947557, at *4 (E.D. Cal. Oct. 9, 2007) ("This particular section does not include any implementing guidelines or rules, which is required to establish a mandatory duty claim."). Count 6 must be dismissed as a matter of law.

**H.      Plaintiffs' Claims for Negligence Under Counts 7 (Gross Negligence) and 8 (Ordinary Negligence) Must be Dismissed**

All claims by John Does 4-12 are time-barred, so counts 7-8 should be dismissed as to those plaintiffs. *See William L. Lyon & Assocs., Inc. v. Superior Ct.*, 204 Cal. App. 4th 1294 (2012) (two-year statute of limitations for a claim of negligence).

For the remaining plaintiffs, the Court should dismiss their gross negligence claim (Count 7) because "California does not recognize a distinct cause of action for 'gross negligence' independent of a statutory basis," which is not alleged here. *Eriksson v. Nunnink*, 191 Cal.App.4th 826, 856 (2011); *see also Cont'l Ins. Co. v. Am. Prot. Indus.*, 197 Cal.App.3d 322, 329 (1987) (these cases have turned upon an interpretation of a statute which has used the words 'gross negligence' in the text."). Here, plaintiffs fail to assert any statutory basis for their gross negligence claim so it must be dismissed.

Additionally, plaintiffs' gross negligence claim must be dismissed because plaintiffs fail to allege "extreme" conduct on the part of USF. *See Rosencrans v. Dover Images, Ltd.*, 192 Cal.App.4th 1072, 1082 (2011) ("to set forth a claim for 'gross negligence' the plaintiff must allege extreme conduct on the part of the defendant"). This specific conduct must be conduct showing "an extreme departure from the ordinary standard of conduct," or conduct that "involves more than ordinary carelessness, inattention, or a mistake in judgment." 46 Cal. Jur. 3d Negligence § 105.  Because plaintiffs fail to allege that USF took any actions that constitute an extreme departure from the standard of care, they cannot make out a claim for gross negligence under California law.

Plaintiffs' *respondeat superior* claims (Count 7 and 8) against USF should also be dismissed because courts have long held that school employee-student sex torts are not within the scope of employment. *See Jeffrey E. v. Central Baptist Church*, 197 Cal.App.3d 718, 722–

724 (1988) (holding a church not responsible for a Sunday school teacher's molestation of a minor); *see also John R. v. Oakland Unified School Dist.,* 48 Cal.3d 438, 449 (finding a teacher is not within his scope of employment when he assaulted a student even though "the teacher told John that sexual conduct was part of a teacher-student relationship and was intended to help John with his problems"). Courts have applied the same analysis to find that employers are not vicariously liable for sexual harassment committed by their employees. *See Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1017 (1995) ("Accordingly, consideration of the three respondeat superior policy justifications reinforces our determination that Nelson's lewd propositioning and offensive touching of his trainee and coworkers were not within the scope of his employment at the county jail.")

I.      **Count 10 Must be Dismissed for Failure to State A Claim for Intentional Infliction of Emotional Distress**

        John Does 4-12s claim for intentional infliction of emotional distress is time barred. *See Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.,* 24 Cal. App. 5th 825, 852–53 (2018) ("intentional infliction of emotional distress has a two-year statute of limitations"). Additionally, plaintiffs' IIED claims fail because they do not allege that Defendant USF engaged in "extreme and outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009). Even if the court were to find that USF's conduct was blameworthy, plaintiffs have not alleged that USF engaged in conduct that was "so extreme as to exceed all bounds of that usually tolerated in a civilized community" or that USF "intended to inflict injury or engaged in [conduct] with the realization that injury will result. *Id.* "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Fowler v. Varian Assocs., Inc.*, 196 Cal.App.3d 34 (1987).

Additionally, plaintiffs have failed to allege that their injuries were sufficiently severe to warrant recovery for IIED. "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009). Here, although plaintiffs use the word "extreme," their emotional distress allegations allege only that they experienced depression and anxiety,[3] which California courts have held is insufficient to support an IIED claim. *See Wong v. Tai Jing*, 189 Cal.App.4th 1354, 117 (2010) (California Court of Appeal held that the plaintiff's declaration that she had suffered from lost sleep, upset stomach, and generalized anxiety was not severe enough to prevail on an IIED claim).

J.      **Count XI Must Be Dismissed for Failure to Allege a Negligent Infliction of Emotional Distress Claim.**

Does 4-12s claims for negligent infliction of emotional distress are time-barred. Additionally, plaintiffs' NIED claims fail because the California Supreme Court has allowed plaintiffs to recover damages as "direct victims" (as opposed to a bystander claim, where a plaintiff sues because he witnessed an injury to another) in only three factual situations: (1) the negligent mishandling of corpses (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 879); (2) the negligent misdiagnosis of a disease that could potentially harm another (*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 928); and (3) the negligent breach of a duty arising

---

[3] Doe 1 allegedly experienced "anxiety and depression" AC ¶ 333; Doe 2 experienced "extreme stress" AC ¶ 243; Doe 3 became "anxious and depressed" AC ¶ 262; Doe 4 became "severely depressed AC ¶ 306; Doe 5 experienced "anxiety attacks, depression, and nightmares" AC ¶ 360; Doe 6 "lost all will, ambition, and love for the game of baseball; and gave up on his dream to one day play professional baseball" AC ¶ 384; Doe 7 experienced "anxiety and sleep deprivation" AC ¶ 395; Doe 8 experienced "severe depression and anxiety" AC ¶ 411; Doe 9 was "severely depressed . . . and gained weight" AC ¶ 440; Doe 10 became "depressed" AC ¶ 424; Doe 11 experienced "anxiety and panic attacks" AC ¶ 443; plaintiff 12 experienced "anxiety and depression" AC ¶ 333.

out of a preexisting relationship (*Burgess v. Superior Cou*rt (1992) 2 Cal.4th 1064, 1076). *See*
CACI No. 1620. Negligent Infliction of Emotional Distress—Direct Victim.

Courts have held that the "preexisting relationship" theory of recovery for NIED is
exceptionally narrow. *See McMahon v. Craig*, 176 Cal.App.4th 1502, 1511 (2009) (*Burgess* case
only applies to "special relationship," and would not even cover relationship between father of
newborn and obstetrician delivering his baby).  Because plaintiffs fail to meet the strict
requirements to bring an NIED claim, it should be dismissed.

**K.    Ratification (Count 12) is Not Available Here Because USF Did Not Affirmatively Adopt Coaches' Conduct as its Own**

"Ratification is not itself a tort, but a doctrine that holds the ratifying party liable for the
tort committed by another party. It is the voluntary election by a party to adopt, as its own, an act
purportedly done on its behalf by another, the effect of which is to treat the act as originally
authorized by the ratifier." *Ratcliff,* 79 Cal. App. 5th at 1002-03. Ratification is not appropriate
here, because Plaintiff fails to allege facts that USF was ever informed of sexual harassment, let
alone that it took independent steps to adopt coaches' conduct as its own.

**CONCLUSION**

For the foregoing reasons, USF requests that the Court dismiss all claims by John Does 4-
12 as time barred, and dismiss the remainder of plaintiffs' claims for failure to state a claim.


Dated:  September 12, 2022                              Respectfully submitted,

                                                       STEPTOE & JOHNSON LLP

                                                       By:    *Jonathan M. Baum*
                                                       Jonathan M. Baum (SBN 303469)
                                                       Sonja Arndt (SBN 322728)
                                                       One Market Plaza
                                                       Attorneys for Defendant
                                                       UNIVERSITY OF SAN FRANCISCO

22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANT USF'S MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBITS 1-2 FILED UNDER SEAL

DEFENDANT USF'S MOTION TO DISMISS
DM1\13451925.1