1  Scott B. Rapkin (SBN 261867)
   E-Mail: scottrapkin@rapkinesq.com
2  Michael S. Rapkin (SBN 67220)
   E-Mail:  msrapkin@gmail.com
3  RAPKIN & ASSOCIATES, LLP
   475 Washington Blvd.
4  Marina del Rey, CA 90292
   Telephone: (310) 319-5465
5  Facsimile: (310) 306-1339
6

7  Attorneys for Defendant Troy Nakamura

8

9                    **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
10                       **SAN FRANCISCO DIVISION**

11

12 | JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN    Case No.: 3:22-cv-01559-LB
   | DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE
13 | 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10,      **DEFENDANT TROY NAKAMURA'S**
   | JOHN DOE 11, JOHN DOE 12, individually and on **REPLY IN SUPPORT OF MOTION TO**
14 | behalf of all other similarly situated,       **DISMISS FIRST AMENDED COMPLAINT**

15                    Plaintiffs,                  Judge:  Hon. Magistrate Laurel Beeler
16     vs.                                         Date:   December 8, 2022
                                                   Time:   9:30 a.m.
17 NATIONAL COLLEGIATE ATHLETIC                    Place:  Courtroom B
   ASSOCIATION, THE UNIVERSITY OF SAN
18 FRANCISCO, ANTHONY (AKA NINO)
   GIARRATANO, and TROY NAKAMURA,
19

20                    Defendants.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.       INTRODUCTION .................................................................................................................. 1

II.      ARGUMENT ......................................................................................................................... 1

    A.      The Claims of Does 4-12 Are Barred by the Statute of Limitations ........................... 1

        1.      The Discovery Rule Does Not Apply to the Claims Against Nakamura ........... 1

        2.      Plaintiffs Did Not Assert Tolling Allegations Against Nakamura .................... 3

        3.      Equitable Tolling Does Not Apply to the Claims Against Nakamura .............. 3

        4.      Equitable Estoppel Does Not Apply to the Claims Against Nakamura ............ 7

        5.      Fraudulent Concealment Does Not Apply to the Claims Against Nakamura .... 8

        6.      There is No "Equity Exception" to the Statute of Limitations .......................... 9

    B.      The Seventh Cause of Action Must Be Dismissed Because There Is No
        Independent Cause of Action for Gross Negligence .................................................. 9

    C.      Plaintiffs Do Not Respond to Nakamura's Argument That Their Negligent
        Infliction of Emotional Distress Cause of Action Should be Dismissed Because
        It Is Duplicative of Their Negligence Cause of Action .............................................. 10

    D.      Plaintiffs' Argument Concerning Their Claim for Intentional Infliction of
        Emotional Distress Ignores Controlling Law and Fails to Respond to the Specific
        Arguments Made by Nakamura Against Each Plaintiff .............................................. 10

    E.      Plaintiffs Fail to State a Claim for Negligence ......................................................... 12

        1.      Does 1-12 Do Not Allege That Any Breach by Nakamura
        Threatened Physical Injury ............................................................................. 12

        2.      The Negligence Claims of Does 1, 3, 6, 7, 9, and 11 Should
        Also be Dismissed Because They Fail to Allege That Nakamura
        Caused Them to Suffer Serious Emotional Distress ........................................ 13

III.     CONCLUSION ................................................................................................................... 15

**FEDERAL CASES**

*Aldrich v. NCAA,*
484 F.Supp.3d 779 (N.D. Cal. Sep. 3, 2020) .................................................. 6

*Angeles v. U.S. Airways, Inc.,*
2013 WL 622032 (N.D. Cal. Feb. 19, 2013)..................................................... 9

*Bailey v. Unocal Corp.,*
700 F.Supp. 396 (N.D. Ill. 1988) .................................................................. 12

*Barker v. Am. Mobil Power Corp.,*
64 F.3d 1397 (9th Cir. 1995)........................................................................... 3

*Bautista v. Los Angeles Cty.,*
216 F.3d 837 (9th Cir. 2000)......................................................................... 10

*Braz v. Delta Airlines,*
2019 WL 2059658 (N.D. Cal. May 9, 2019) ................................................... 5

*Centaur Classic Convertible Arbitrage Fund Ltd v. Countrywide Financial Corp.,*
878 F.Supp.2d 1009 (9th Cir. 2011)................................................................ 3

*Doe v. Pasadena Hospital Ass'n, Ltd.,*
2020 WL 1244357 (C.D. Cal. Mar. 16, 2020) ................................................ 2

*Duarte v. Freeland,*
2007 WL 2790591 (N.D. Cal. Sept. 24, 2007)................................................ 6

*Fortson v. Big Lots, Inc.,*
2018 WL 4854413 (C.D. Cal. Jun. 14, 2018). ................................................ 9

*Groom v. City of El Paso De Robles,*
2020 WL 5077355, (C.D. Cal. Apr. 29, 2020)................................................ 8

*Jones v. County of San Diego,*
2022 WL 377012 (S.D. Cal. Feb. 8, 2022) .................................................. 4, 5

*Lacayo v. Donahoe,*
2015 WL 993448 (N.D. Cal. Mar. 4, 2015) ................................................... 6

*Liu v. Marriott Vacation Worldwide,*
2019 WL 8106290 (C.D. Cal. Jul. 1, 2019) ................................................... 9

*Lukovsky v. City & Cty. of San Francisco,*
535 F.3d 1044 (9th Cir. 2008)........................................................................ 8

-ii-

*MH Pillars Ltd. v. Realini*,
2017 WL 916414 (N.D. Cal. Mar. 8, 2017) ............................................................... 10, 11

*McDonald v. ISK Bioscience, Inc.*,
1999 WL 34590219 (S.D. Tex. Oct. 28, 1999) .................................................................. 12

*POGA MGMT PTNRS LLC v. Medfiler LLC*,
2014 WL 3963854 (N.D. Cal. Aug. 12, 2014) .................................................................... 8

*Ramirez v. GhilottiBros. Inc.*,
941 F.Supp.2d 1197 (N.D. Cal. 2013) ............................................................................... 9

*Rustico v. Intuitive Surgical*, Inc.,
424 F.Supp.3d 720 (N.D. Cal. 2019) ............................................................................ 7, 8

*Saxena v. Gino & Carlos, Inc.*,
2022 WL 617121 (N.D. Cal. Mar. 2, 2022) ...................................................................... 5

*Stoll v. Runyon*,
165 F.3d 1238 (9th Cir. 1999), ........................................................................................ 5

*Ticer v. Young*,
2018 WL 2088393 (N.D. Cal. May 4, 2018) ..................................................................... 6

*Wells v. Regents of the University of California*,
2015 WL 6746820 (N.D. Cal. Nov. 5, 2015) .............................................................. 12, 14

**STATE CASES**

*Long v. Forty Niners Football Co., LLC*,
33 Cal.App.5th 550 (2019) .............................................................................................. 4

Christensen v. Superior Court,
54 Cal.3d 868 (1991) ...................................................................................................... 11

*DeRose v. Carswell*,
196 Cal.App.3d 1011 (1987) ............................................................................................ 7

*Eriksson v. Nunnink*,
191 Cal.App.4th 826 (2011) ........................................................................................ 9, 10

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal.4th 797 (2005) ...................................................................................................... 2

*Howerton v. Harbin Clinic, LLC*,
776 S.E.2d 288 (Ga. Ct. App. 2015) ............................................................................... 12

*Hughes v. Pair*,
46 Cal.4th 1035 (1989) .......................................................................................... 1, 11, 14

DEFENDANT TROY NAKAMURA'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Jimenez v. 24 Hour Fitness USA, Inc.*,
237 Cal.App.4th 546 (2015).................................................................... 9, 10

*John R. v. Oakland Unified School Dist.*,
48 Cal.3d 438 (1989)................................................................................ 7

*Kelly Zurian v. Wohl Shoe Co.*,
22 Cal.App.4th 397 (1994),....................................................................... 14

*Mills v. Forestex Co.*,
108 Cal.App.4th 625 (2003)...................................................................... 8

*Quarry v. Doe 1*,
53 Cal.App.4th 945 (2012)........................................................................ 7

*Rita M. v. Roman Catholic Archbishop*,
187 Cal. App. 3d 1453 (1986)................................................................... 8

*Saari v. Jongordon Corp.*,
5 Cal.App.4th 797 (1992).......................................................................... 14

*Saint Francis Memorial Hospital v. State Dept. of Public Health*,
9 Cal.5th 710 (2020)............................................................................... 4, 5

*Santee v. Santa Clara County Off. Of Education*,
220 Cal.App.3d 702 (1990)....................................................................... 7, 8

*Wilson v. Southern California Edison Co.*,
234 Cal.App.4th 123 (2015)...................................................................... 12

*Wong v. Jing*,
189 Cal.App.4th 1354 (2010)..................................................................... 14

**<u>FEDERAL STATUTES</u>**

Federal Rules of Civil Procedure 9(b).......................................................... 10

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    <u>INTRODUCTION</u>**

3

  Plaintiffs do not dispute that John Does ("Does") 4-12 all allege conduct by Nakamura that

4

occurred more than two years prior to the filing of this lawsuit.  And contrary to their conclusory

5

allegation that they did not discover their cause of action until reading a newspaper article in 2022, the

6

First Amended Complaint ("FAC") is replete with allegations showing that Does 4-12 were aware of

7

Nakamura's alleged conduct in real time, including allegations that they all left the University or quit

8

the baseball team "due to the actions of Defendants."   In addition, Plaintiffs fail to address the fact that

9

the FAC omits *any* explanation for why Does 4-12 had the inability to have made earlier discovery

10

despite reasonable diligence.

11

  As to the merits of their claims, Plaintiffs' response falls far short.  As discussed below, they

12

ignore numerous arguments and controlling case law, including the seminal California Supreme Court

13

case – *Hughes v. Pair*, 46 Cal.4th 1035 (1989) – holding that liability for intentional infliction of

14

emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions,

15

or other trivialities. And mere insulting language or threats, without more, does not constitute outrageous

16

conduct."  Mot. at 14:6-17.   The claims of numerous Plaintiffs, including Does 1-3, fall into this

17

category and, therefore, must be dismissed.

18

**II.    <u>ARGUMENT</u>**

19

  **A.    <u>The Claims of Does 4-12 Are Barred by the Statute of Limitations</u>**

20

  Plaintiffs do not dispute that a two-year statute of limitations applies to each of the claims

21

against Nakamura.  Nor do they dispute that the conduct alleged by Does 4-12 against Nakamura

22

occurred more than two years prior to the filing of this lawsuit.   Thus, unless Plaintiffs can successfully

23

plead that the discovery rule applies, or allege a basis for tolling, their claims are time barred.   Plaintiffs'

24

arguments for doing so are without merit and their claims must be dismissed.

25

   **1.    The Discovery Rule Does Not Apply to the Claims Against Nakamura**

26

  The FAC does not contain sufficient allegations to invoke delayed discovery as to the claims

27

against Nakamura.  First, as Nakamura explained in his Motion, contrary to Plaintiffs' allegation that

28

they did not discover their causes of action until the San Francisco Chronicle published a story on March

11, 2022 (Opp'n. at 14:25-15:1), the FAC demonstrates that, in real time, Does 4-12 were well aware of the relevant facts and appreciated the wrongfulness of Nakamura's conduct.  Mot. at 2-5, 7-8.  Indeed, each plaintiff alleges that, more than two years prior to his lawsuit, he either quit the team or transferred from USF **"due to the actions of Defendants."**  *Id.* (emphasis added).   Based on these allegations, plaintiffs "ha[d] reason to at least suspect that a type of wrongdoing has injured them."  *Fox v. Ethicon Endo-Surgery, Inc.* 35 Cal.4th 797, 807 (2005).   As other courts have found, despite Plaintiffs' conclusory allegation that they discovered their cause of action only after reading a news article, the discovery rule does not apply.  *See Doe v. USC,* 2019 WL 4228371, at *4 (holding that discovery rule did not apply where plaintiff alleged that she only became aware of her claim by reading an LA Times article in 2018, because relevant facts pertaining to plaintiff's claims against her doctor were known to plaintiff at the time of the incident in 1991)[1]; *Doe v. Pasadena Hospital Ass'n, Ltd.*, 2020 WL 1244357, at *5 (C.D. Cal. Mar. 16, 2020) (cited by Plaintiffs) (discovery rule *did not* apply, despite allegation that plaintiffs were not aware of injury until they read a newspaper article, where plaintiffs "had reason to suspect…[that they experienced] harassment" at the time that defendant made sexual comments).[2]

Second, even if Plaintiffs sufficiently alleged that they did not discover the facts until the publication of the article, they cannot meet their burden on the second element necessary to invoke the discovery rule.  A "plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period."  *Fox*, 35 Cal.4th at 808.  The FAC does not allege *any* facts explaining why Does 4-12 had "the inability to have made earlier discovery despite reasonable diligence."  Mot. at 9:14-17 (citing *Fox*, 35 Cal.4th at 808).   Plaintiffs' Opposition is conspicuously silent on this critical omission.

---

[1]   According to Plaintiffs, unlike the plaintiff in *USC,* "Does 4-12 explicitly disavow real-time awareness of their causes of action."  Opp'n. at 17:8-9 (citing FAC ¶ 463).  But, of course, this is inaccurate and contrary to the allegations in the FAC establishing that Does 4-12 were well aware of the alleged conduct in real time.

[2]   Unlike the claim for sexual harassment, the *Pasadena Hospital* court did not dismiss plaintiffs' claims for sexual assault and sexual battery.  The court relied on Cal. Civ. Proc. Code § 340.16(a)(2), which provides for the applicability of the discovery rule in cases involving *sexual assault*.  2020 WL 1244357, at * 6.   This statute does not apply here as there are *no* allegations in this lawsuit of any inappropriate touching or physical contact by Nakamura.  If it were applicable, Plaintiffs would no doubt be relying upon it.

Furthermore, Plaintiffs misstate this second element of the discovery rule.  They argue that they were diligent *following* the discovery of the claim - "by filing their complaint only four months after discovering their harms."  Opp'n. at 15:15-16.  However, the question is whether plaintiffs acted diligently in investigating the claim "within the applicable statute of limitations period," not whether they were diligent in filing their lawsuit *after* discovering the claim.

### 2.    Plaintiffs Did Not Assert Tolling Allegations Against Nakamura

The FAC includes a separate section titled "Tolling of the Statute of Limitations."  FAC at 91. In that section, Plaintiffs only make allegations against USF and the NCAA.  Mot. at 9:18-10:5. Plaintiffs state that it is "these actions and failings" by USF and the NCAA that toll the statute of limitations.  FAC ¶ 460.  And if there were any doubt, Plaintiffs then make clear that "*USF and NCAA should be equitably estopped from relying on any statutes of limitations defenses…*" *Id.* ¶ 461 (emphasis added), and that "[i]t would be fundamentally unfair to allow *USF and the NCAA* to rely on a statute of limitations defense against Plaintiffs' claims based on the above facts."  *Id.* 464 (emphasis added).

Despite these allegations, Plaintiffs now seek to make Nakamura subject to the tolling rule. Plaintiffs attempt to do so primarily by joining the Defendants together.   Opp'n. at 18:22-26 ("Collectively, Defendants' behavior gaslighted Plaintiffs into believing Defendants had done nothing wrong, and that Plaintiffs were overreacting.").  But Plaintiffs are not permitted to use allegations against USF and the NCAA to assert tolling against Nakamura.  Mot. at 10:1-4 (citing *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995), *as amended* (Nov. 15, 1995)).

In any event, Plaintiffs' arguments are without merit and they have not sufficiently alleged any basis for tolling their claims against Nakamura.

### 3.    Equitable Tolling Does Not Apply to the Claims Against Nakamura

The state law claims against Nakamura are governed by California's statutes of limitations and equitable tolling doctrine.  *Centaur Classic Convertible Arbitrage Fund Ltd v. Countrywide Financial Corp.*, 878 F.Supp.2d 1009, 1015 (9th Cir. 2011) ("Federal courts addressing state law claims must apply state law statutes of limitation and state law applies to the question of tolling state claims").  Under California law, "equitable tolling is a narrow remedy that applies to toll the statutes of limitations only 'occasionally and in special situations.'"  *Saint Francis Memorial Hospital v. State Dept. of Public*

*Health*, 9 Cal.5th 710, 724 (2020).  "Broadly speaking, the doctrine applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one."  Mot. at 12-13 (quoting *McDonald v. Antelope Valley Cmty. Coll. Dist*., 45 Cal.4th 88, 100 (2008)).   Where a cause of action is time-barred on its face, as in this case, a plaintiff must specifically plead facts to support equitable tolling.  *Long v. Forty Niners Football Co., LLC*, 33 Cal.App.5th 550, 555 (2019).  A plaintiff is "required" to satisfy three elements: (i) timely notice to the defendant, (ii) lack of prejudice to the defendant, and (iii) reasonable and good faith conduct by the plaintiff.  Id. at 725-726, 730.[3]   Here, not only have Plaintiffs failed to specifically plead facts to support equitable tolling, but, remarkably, their Opposition does not even mention these three "required" elements.

As to the first element, "[w]hen considering whether a plaintiff provided timely notice, courts focus on whether the party's actions caused the defendant to be 'fully notified within the [statute of limitations] of plaintiffs' claims and their intent to litigate.'"  *Id.* at 726 (citation omitted).  There are *no* allegations in the FAC that *any* of the Plaintiffs apprised Nakamura within the applicable statute of limitations of their allegations and their intent to litigate against him.   Plaintiffs do not address this element, which is fatal to their claim for equitable tolling.

The "core focus" of the second element - lack of prejudice to the defendant - is "whether application of equitable tolling would prevent the defendant from defending a claim on the merits."  *Saint Francis Mem'l*, 9 Cal.5th at 728.   "It is fundamental that the primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available."  *Jones v. County of San Diego*, 2022 WL 377012, at *6 (S.D. Cal. Feb. 8, 2022) (citation omitted).   Here, again, Plaintiffs fail to allege facts showing that Nakamura will not be prejudiced by having to defend against these claims.   To be sure, Nakamura will be prejudiced if he is required to defend against these claims, particularly claims from many years ago.  He was never put on notice to investigate the claims, preserve evidence (such as emails

---

[3]    In *Saint Francis Mem'l*, the California Supreme Court explained that California's equitable tolling doctrine evolved from three lines of California cases: (1) "when a plaintiff was already involved in one lawsuit, and filed a subsequent case that could lessen the damage or harm that would otherwise have to be reminded through a separate case," (2) "where a plaintiff was required to pursue, and did indeed pursue, an administrative remedy before filing a civil action;" and (3) " 'to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits.'" 9 Cal.5th at 724 (citations omitted).  None of these situations apply here.

DEFENDANT TROY NAKAMURA'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

and text messages between himself and the plaintiffs), and interview witnesses.  *See Saxena v. Gino & Carlos, Inc.*, 2022 WL 617121, at *2 (N.D. Cal. Mar. 2, 2022) (holding that plaintiff fails to satisfy this second element where plaintiff "fails to allege facts to show the Defendants would have been able to gather or to preserve evidence necessary to defend against the claims"); *Jones*, 2022 WL 377012, at *6 (finding prejudice where four years passed since the incident and the defendant has not yet defended against plaintiff's claims or engaged in any discovery in a prior proceeding).

The third element includes "two distinct requirements: A plaintiff's conduct must be objectively reasonable and subjectively in good faith."  *Saint Francis Mem'l*, 9 Cal.5th at 729.   "An analysis of reasonableness focuses not on a party's intentions or motives behind a party's actions, but instead on whether that party's actions were fair, proper, and sensible in light of the circumstances."  *Id.*  Here, each Plaintiff was aware of the facts underlying his claim *for years* before filing this lawsuit, and they all took significant action "due to the actions of Defendants" by either quitting the team or leaving the school altogether.  Therefore, their failure to file suit within the statute of limitations was objectively unreasonable.

Despite not pleading the necessary elements, Plaintiffs nonetheless contend that equitable tolling applies to their claims.  Plaintiffs cite to *Stoll v. Runyon*, 165 F.3d 1238 (9th Cir. 1999), in which the Ninth Circuit found that equitable tolling applied to an untimely Title VII claim.  *Stoll* is inapplicable, however, because it involved a federal claim and did not apply California law regarding equitable tolling. "[E]quitable tolling under federal common law has different elements than that under California common law."  *Saint Francis Mem'l Hosp. v. State Dep't of Public Health*, 59 Cal.App.5th 965, 980 n. 10 (2021); *see also Jones*, 2022 WL 377012, at *6 ("[E]quitable tolling under federal law and California state law is distinct"); *Braz v. Delta Airlines*, 2019 WL 2059658, at *2 (N.D. Cal. May 9, 2019) (noting the difference between equitable tolling under federal law (citing *Stoll*) and California state law).

*Stoll* is also factually distinguishable.  There, the Ninth Circuit found that the plaintiff was entitled to equitable tolling because "[t]he effects of the repeated sexual abuse, rape, and assault she experienced left her severely impaired and unable to function in many respects," observing that the plaintiff had repeatedly attempted suicide, and was unable to read, open mail, function in society, and communicate with her lawyer.  165 F.3d at 1242-43.  *Stoll* was an "extraordinary circumstance," where

the plaintiff was "mental[ly] incapacit[ated]." *Id.* at 1242. After *Stoll*, "courts in this circuit have found that '[t]he threshold for incapacitation…requires a showing that the plaintiff 'was completely psychiatrically disabled during the relevant time period.'" *Ticer v. Young*, 2018 WL 2088393, at *7 (N.D. Cal. May 4, 2018) (citations omitted).

Unlike the plaintiff in *Stoll*, none of the Plaintiffs here alleges that his symptoms rendered him "completely psychiatrically disabled during the relevant time period." *Stoll*, 165 F.3d at 1242. Other courts have similarly distinguished *Stoll* and not applied equitable tolling based on mental disability even where the plaintiff suffered significant mental health issues. *See Ticer*, 2018 WL 2088393, at *7 (plaintiff's allegations of "depression, hopelessness, suicidal thoughts, insomnia, flashbacks, startle responses, severe anxiety, shame, embarrassment, and nightmares" do not arise to the 'incapacitation' required for equitable tolling based on mental disability); *Lacayo v. Donahoe*, 2015 WL 993448, at *11 (N.D. Cal. Mar. 4, 2015) (bipolar disorder, PTSD, and depression insufficient to invoke equitable tolling); *Duarte v. Freeland*, 2007 WL 2790591, at *6 (N.D. Cal. Sept. 24, 2007) (concluding that, while plaintiff alleges post-traumatic stress disorder, depression, decreased energy, anxiety, and difficulty concentrating, plaintiff "does not allege…that he is so psychiatrically disabled to be unable to protect his rights, as was the case in *Stoll*").

Plaintiffs' reliance on *Aldrich v. NCAA*, 484 F.Supp.3d 779 (N.D. Cal. Sep. 3, 2020) is likewise misplaced. First of all, the court in *Aldrich* did not apply the three elements as required under California law. In addition, the court's decision was based largely on the fact that the plaintiffs filed a report with the school in real time (during the applicable statute of limitations) and the school then issued a report which "led [the plaintiffs] to believe that they did not have a claim." *Id.* at 800. The report was a "whitewashing," and the coach was a "participant" in the whitewashing. *Id.* In contrast, there are no allegations that Plaintiffs complained about Nakamura's conduct (within the statute of limitations) and then were "led…to believe that they did not have a claim." *Id.* Also, unlike in this case, the plaintiffs were victims of sexual abuse, which was relevant to the court's holding. *Id.* ("Moreover, without equitable tolling to protect sexual abuse survivors' access to justice, the intimidation tactics allegedly used by UT Austin would be condoned").

### 4.    Equitable Estoppel Does Not Apply to the Claims Against Nakamura

Plaintiffs argue that equitable estoppel applies to toll their claims against Nakamura because "the [C]oaches created an environment of secrecy and retaliation to prevent Plaintiffs from recognizing and asserting their legal claims, in an effort to protect themselves from scrutiny for their misconduct." Opp'n. at 22:20-22.  In particular, the coaches "berated, belittled, and disparaged student-athletes; took away their playing time and scholarships and coerced student athletes into leaving USF through threats and misrepresentations." *Id.* at 23:2-5.   Plaintiffs do not allege that any of this conduct continued after they left USF.

Plaintiffs' equitable estoppel claim fails for multiple reasons.  First, "California law is clear that the 'doctrine of equitable estoppel does not apply' when a defendant did not induce a delay in the filing of a complaint 'until the limitations period provided by the applicable statutes of limitation had expired.'" *Rustico v. Intuitive Surgical*, Inc., 424 F.Supp.3d 720, 733 (N.D. Cal. Dec. 19, 2019) (citation omitted). That is the situation here.  The basis for each Plaintiff's equitable estoppel claim is conduct by Nakamura while they attended USF and he was their coach.  Therefore, even assuming the statute of limitations did not begin to run until Plaintiffs left USF and Nakamura was no longer their coach, Plaintiffs still had the full two years to file suit during which time Nakamura's conduct was not at issue. Accordingly, Nakamura did not induce any delay "until the limitations period provided by the applicable statute had expired." *Id.*

Second, and relatedly, even if estoppel did apply, a plaintiff "cannot rely on estoppel if there is still ample time to take action within the statutory period after the circumstances inducing delay have ceased to exist."  *Santee v. Santa Clara County Off. of Education*, 220 Cal.App.3d 702, 716 (1990) (plaintiffs were precluded from relying on estoppel when they still had two months to submit a late-claim application after the circumstances causing delay ceased to operate); *John R. v. Oakland Unified School Dist.*, 48 Cal.3d 438, 446 (1989) (stating that when assessing estoppel, courts should consider "whether plaintiffs acted within a reasonable amount of time after the coercive effect of the threats has ended"); *DeRose v. Carswell*, 196 Cal.App.3d 1011, 1026-1027, *superseded on other grounds as stated in Quarry v. Doe 1*, 53 Cal.App.4th 945, 963 (2012) (equitable estoppel inapplicable, because even assuming defendant's duress and coercion during the years plaintiff was being sexually assaulted

supported estoppel, plaintiff did not pursue a claim for more than one year after the alleged conduct ceased).[4]  Here, because the alleged conduct by Nakamura ceased no later than when each Plaintiff left the school and Nakamura was no longer their coach, and because each Plaintiff still had the full two years from that time to file suit, each Plaintiff had "ample time to take action within the statutory period after the circumstances inducing delay…ceased to exist." *Santee*, 220 Cal.App.3d at 716.

Third, Plaintiffs fail to explain how Nakamura's conduct rendered Plaintiffs "ignorant" of any "true state of facts," as required for equitable estoppel to apply.  Mot. at 11:18-23 (citing *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1051-52 (9th Cir. 2008)).  Plaintiffs do not address this necessary requirement, because they cannot seriously do so.  The allegations in the FAC show that Does 4-12 were each aware of the true state of facts more than two years prior to the filing of this lawsuit.  Indeed, Plaintiffs' claims are based on alleged incidents that each of the Plaintiffs *personally experienced*.  Thus, it would be nonsensical to claim that they were "ignorant of the true state of the facts."  Because Plaintiffs cannot satisfy this element, equitable estoppel does not apply.

Where, as here, "the facts are undisputed and support only one reasonable conclusion, the question of equitable estoppel may be resolved as a matter of law." *Rustico* 424 F.Supp.3d at 732; *see also, e.g.*, *Groom*, 2020 WL 5077355, at *7 (finding equitable estoppel inapplicable on a motion to dismiss); *POGA MGMT PTNRS LLC,* 2014 WL 3963854, at *9 (same).

**5.     Fraudulent Concealment Does Not Apply to the Claims Against Nakamura**

In his Motion, Nakamura argued that fraudulent concealment does not apply against him because (i) there are *no* allegations in the FAC that Nakamura misled any plaintiff or concealed any facts, let alone allegations pled with the particularity required under Fed. R. Civ. P. 9(b), and (ii) fraudulent concealment "'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.' *Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453, 1460 (1986)."  Mot. at 10-11.  Plaintiffs do not respond to either of these points and,

---

[4]     *See also Groom v. City of El Paso De Robles*, 2020 WL 5077355, at *7 (C.D. Cal. Apr. 29, 2020) (holding that equitable estoppel did not apply where plaintiff waited more than six months to file her government claim after threats ceased); *POGA MGMT PTNRS LLC v. Medfiler LLC,* 2014 WL 3963854, at *9 (N.D. Cal. Aug. 12, 2014) ("[e]ven assuming that the individual defendants' repeated promises of settlement induced POGA to delay in filing suit until the end of 2009 as POGA claims, POGA still had ample time to file suit within the statutory period after the circumstanced inducing delay ceased to operate); *Mills v. Forestex Co.,* 108 Cal.App.4th 625, 655-656 (2003) (plaintiffs had ample time to sue when a year or more remained after they stopped relying on defendant's promises).

therefore, at least as to Nakamura, concede the argument. *See, e.g., Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1210 n. 7 (N.D. Cal. 2013) (collecting cases holding that a party concedes an argument by failing to respond to it); *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("Plaintiffs…have failed to respond to the argument….The failure to respond amounts to a concession").

### 6.    There is No "Equity Exception" to the Statute of Limitations

Plaintiffs invite the Court to create a new exception to the statutes of limitations based on "equitable principles." Opp'n. at 23-24. There is no "equity exception" to the statute of limitations, and Plaintiffs fail to cite a single case where another court has done what Plaintiffs are asking this Court to do. Moreover, as illustrated by Plaintiffs' citation to CCP § 340.16, even in cases involving sexual assault (which is not alleged here), an exception to the statute of limitations must come from the Legislature.[5]

### B.    The Seventh Cause of Action Must Be Dismissed Because There Is No Independent Cause of Action for Gross Negligence

As Nakamura previously stated (Mot. at 13:11-21), "California does not recognize a distinct common law cause of action for gross negligence apart from negligence." *Liu v. Marriott Vacation Worldwide*, 2019 WL 8106290, at *7 (C.D. Cal. Jul. 1, 2019) (citation omitted)). Such a claim is "barred under California law." *Fortson v. Big Lots, Inc.*, 2018 WL 4854413, at *2 (C.D. Cal. Jun. 14, 2018). Defendants do not address either *Liu* or *Fortson*.

Plaintiffs contend that *Eriksson v. Nunnink*, 191 Cal.App.4th 826 (2011) "supports [their] position." Opp'n. at 39:14-17. However, in *Eriksson*, the plaintiff did not even allege a separate cause of action for gross negligence. 191 Cal.App.4th at 856 n. 18. In fact, the court confirmed that "California *does not* recognize a distinct cause of action for gross negligence independent of a statutory basis." 191 Cal.App.4th at 856 (citation omitted) (emphasis added); *see also Jimenez v. 24 Hour Fitness USA, Inc.*, 237 Cal.App.4th 546, 552 n. 3 (2015) (cited by Plaintiffs) ("We agree with plaintiffs that California does not recognize a distinct common law cause of action for gross negligence apart from

---

[5]   Tellingly, in recognition of the fact that there are *no* allegations of sexual assault in this case, Plaintiffs do not argue that CCP § 340.16 applies to their claims.

DEFENDANT TROY NAKAMURA'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

negligence") (citations omitted).[6]   Accordingly, this cause of action should be dismissed.

**C.**   **Plaintiffs Do Not Respond to Nakamura's Argument That Their Negligent Infliction of Emotional Distress Cause of Action Should be Dismissed Because It Is Duplicative of Their Negligence Cause of Action**

Plaintiffs' Negligent Infliction of Emotional Distress cause of action should be dismissed because it is based on the same underlying conduct as Plaintiffs' Negligence Cause of Action.  Mot. at 21:20-22:7 (citing cases).  Plaintiffs do not respond to this argument or any of the supporting case law cited by Nakamura. The law is clear and unrebutted: this cause of action is duplicative and should be dismissed.

**D.**   **Plaintiffs' Argument Concerning Their Claim for Intentional Infliction of Emotional Distress Ignores Controlling Law and Fails to Respond to the Specific Arguments Made by Nakamura Against Each Plaintiff**

Each Plaintiff "must plead facts supporting the elements of [his] claims as to *each defendant* and *each plaintiff*."  *MH Pillars Ltd. v. Realini*, 2017 WL 916414, at *7 (N.D. Cal. Mar. 8, 2017) (emphasis added); *see also Bautista v. Los Angeles Cty*., 216 F.3d 837, 840-41 (9th Cir. 2000).   Accordingly, Nakamura addressed the specific allegations made against him by each Plaintiff, showing why the various allegations were deficient.  Defendants had an opportunity to respond to the specific arguments made by Nakamura on a plaintiff-by-plaintiff basis. Instead, they opted to argue generally that all Plaintiffs have sufficiently pleaded a claim.    Plaintiffs' decision to do so is misguided.

First, it fails to account for the fact that Plaintiffs' allegations against Nakamura are not the same.[7]  For example, while some Plaintiffs allege that they saw Nakamura naked, other Plaintiffs, including John Does 1-3, do not allege that they saw him naked.  As such, if the Court finds that Nakamura taking a shower at the same time as the rest of the team, for example, can be extreme and outrageous conduct, that finding would not apply to John Does 1-3, who only allege a single instance of "sexual banter." (Mot. at 15-17).  Likewise, Plaintiffs allege various levels of emotional distress.  In

---

[6]   The discussion of gross negligence in *Eriksson* and *Jimenez* is limited to whether a defendant's conduct is outside the scope of a liability release, which is not an issue in the instant case.  *Eriksson*, 191 Cal.App.4th at 855-56 (discussing law that an agreement releasing future liability for gross negligence is against public policy and generally unenforceable); *Jimenez*, Cal.App.4th at 554-55 (same).

[7]   Plaintiffs have not refuted the arguments specific to each Plaintiff.  *See* Mot. at 15-21.

DEFENDANT TROY NAKAMURA'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

fact, John Doe 1 alleges no emotional distress at all.

Second, it fails to account for the fact that Nakamura cannot be held liable for the alleged conduct of other defendants.  For example, while John Doe 11 makes numerous allegations against Coach Giarratano, he does not allege *any* improper conduct by Nakamura.  Mot. at 21:1-3.  Plaintiffs would have this Court ignore these distinctions between Defendants.  But Plaintiffs "must plead facts supporting the elements of [his] claims as to each defendant."  *MH Pillars Ltd.*, 2017 WL 916414, at *7.

What's more, these are not the only flaws with Plaintiffs' argument.  There are other critical shortcomings:

•    Plaintiffs ignore the numerous cases cited by Nakamura, including *Hughes*, 46 Cal.4th 1035, holding that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. And mere insulting language or threats, without more, does not constitute outrageous conduct." Mot. at 14:6-17; *see also id.* at 15:16-19; 16:3-9.  For example, here, Nakamura argues that the conduct alleged by John Does 1-3 falls into this category (Mot. at 15-17), which Plaintiffs do not contest.  In fact, John Does 1-3 only allege a single instance of "sexual banter" during one practice in front of the entire team.  This conduct "falls far short of conduct that is so 'outrageous' that it exceed[s] all bounds of that usually tolerated in a civilized society."  *Hughes*, 46 Cal.4th at 1050-1051.

•    Plaintiffs ignore binding California Supreme Court precedent that even "extreme and outrageous conduct" must be "directed at the plaintiff or occur in the presence of a plaintiff of whom the defendant is aware" and it must be *"intended to inflict injury or engaged in with the realization that injury will result."*  Mot. at 14:18-26 (citing *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991) (emphasis added)).  This factor "distinguishes intentional infliction of emotional distress from the negligent infliction of such injury."  *Id.*

•    Plaintiffs ignore binding California Supreme Court precedent that they must allege emotional distress "of such substantial quality or ensuring quality that no reasonable [person] in civilized society should be expected to endure it."  Mot. at 15:1-4 (citing *Hughes*, 46 Cal.4th at 1050-1051). The Supreme Court has cautioned that this is a "high bar."  *Id.*  Plaintiffs do not distinguish any of the cases

cited by Nakamura finding that similar allegations were not "severe."  See Mot. at 17:3-14 (citing *Wells v. Regents of the University of California*, 2015 WL 6746820 (N.D. Cal. Nov. 5, 2015); *Wong v. Jing*, 189 Cal.App.4th 1354 (2010); *Hughes*, 46 Cal.4th at 1050-1051).

Plaintiffs also fail to cite a *single* case supporting their position from either a California court or a district court within the Ninth Circuit.  Instead, the best Plaintiffs can do is rely on two out-of-circuit district court cases and a Georgia state court case.  Opp'n at 44:21-45:4.  Unlike the cases cited by Nakamura, these cases are not binding on this Court and are easily distinguishable.[8]  Furthermore, none involved "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," as is the case with numerous Plaintiffs, including John Does 1-3.

     **E.**    **Plaintiffs Fail to State a Claim for Negligence**

        **1.**    **Does 1-12 Do Not Allege That Any Breach by Nakamura Threatened Physical Injury**

In his Motion, Nakamura presented binding California law, holding that when a plaintiff is claiming only emotional distress, the plaintiff is "required to show that [the defendant's breach] threatened physical injury to her."  *Wilson v. Southern California Edison Co.*, 234 Cal.App.4th 123, 156 (2015); *see also* Mot. at 22:9-25 (citing cases).  While Plaintiffs state that they "dispute this standard" (Opp'n at 37:22-23), they do not state why this is the wrong standard.  They do not submit contrary authority or respond to any of the cases cited by Nakamura.

Plaintiffs then contend that, even if this is the correct standard, they "do allege physical injuries caused by the Coach Defendants' improper actions."  Opp'n at 37:22-24.  Importantly, Plaintiffs do not allege that any of the Plaintiffs were threatened with physical injury.  Instead, Plaintiffs allege that they were actually physically injured.  However, Plaintiffs only cite to paragraphs in the FAC for five (of the

---

[8]   In each case, the defendant made sexual advances or requested sex from the plaintiff.  *See McDonald v. ISK Bioscience, Inc.,* 1999 WL 34590219 (S.D. Tex. Oct. 28, 1999) (supervisor exposed himself and requested oral sex); *Bailey v. Unocal Corp.* 700 F.Supp. 396 (N.D. Ill. 1988) (supervisor "repeatedly request[ed] and propose[ed] sexual relations with plaintiff employee, using sexual innuendoes, subjecting plaintiff to unwelcome sexual advances, and exposing himself to her"); *Howerton v. Harbin Clinic, LLC,* 776 S.E.2d 288, 302 (Ga. Ct. App. 2015) (the court found that there were two "specific incidents" that could support a claim: (1) where the defendant doctor told his assistant that he had gone into the operating room while she was undergoing a gynecological procedure following her miscarriage in order to view her genitals; and (2) when the defendant doctor exposed his penis to his assistant).

DEFENDANT TROY NAKAMURA'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

12) Plaintiffs. *See id.* at 37:24 (John Does 1, 2, 5, 6, 11). Therefore, even if the Court finds that these five Plaintiffs have adequately alleged that they suffered actual physical injuries, the Court should still find that the other Plaintiffs (John Does 3, 4, 7, 8, 9, 10, 12) have not done so. Furthermore, two of these five plaintiffs do not allege that their injuries were caused in any way by acts or omissions of Nakamura.

- **John Doe 1** alleges that he injured his hand, ACL, and meniscus during his freshman year, but he does not allege that any of these injuries are related in *any way* to Nakamura. He does not even allege that he suffered these injuries playing baseball. He then alleges that, when he returned from these injuries, the coaches would yell at him and interfere with his doctor's orders. However, he does not allege that anything that the coaches did or said caused him *any* harm, including any additional injury. FAC ¶¶ 209-210.

- **John Doe 11** does not allege *any* improper conduct by Nakamura. The paragraph cited describes an incident where Coach Giarrantano was throwing baseballs intentionally at John Doe 11 during batting practice. FAC ¶ 435.

Accordingly, at a minimum, the Court should dismiss the negligence claims of John Does 1,3, 4, 7, 8, 9, 10, 11, and 12.

## 2. The Negligence Claims of Does 1, 3, 6, 7, 9, and 11 Should Also be Dismissed Because They Fail to Allege That Nakamura Caused Them to Suffer Serious Emotional Distress

Plaintiffs acknowledge that "to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious.'" Opp'n. at 37:25-38:2. This is "functionally the same as the articulation of 'severe emotional distress'" required for intentional infliction of emotional distress. Mot. at 23:3-6. Nakamura argues that John Does 1, 3, 6, 7, 9, and 11 cannot meet this standard. *Id.* at 23:7-11. Plaintiffs do not respond to these arguments, only stating in a footnote that "if this Court finds that the allegations of distress are not sufficiently severe, Plaintiffs respectfully request leave to amend." Opp'n at 45 n. 32. Regardless of whether the Court grants Plaintiffs leave to amend, the Court should find that the current allegations in the FAC are insufficient.

13
DEFENDANT TROY NAKAMURA'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

- **John Doe 1** does not allege that he suffered any emotional distress injuries, let alone injuries that are serious/severe.

- **John Doe 3** alleges that, during part of one semester, he had anxiety and depression, and that he had trouble sleeping or eating.  Other courts have found similar allegations to be deficient.  Mot. at 14:3-14.[9]  Defendants do not respond to any of the cases cited by Nakamura.  Instead, Defendants cite two cases where the plaintiff's emotional distress injuries are much more significant than those alleged by John Doe 3 (and the plaintiffs in the three cases cited by Nakamura).[10]

- **John Doe 6** does not allege that he suffered any emotional distress injuries, let alone injuries that are serious/severe.

- **John Doe 7** alleges that he had "anxiety and sleep deprivation" and "severe depression," but other courts have found similar conclusory allegations to be deficient.  Mot. at 19:18-21.  Defendants do not respond to the cases cited by Nakamura.

- **John Doe 9** does not allege that Nakamura caused him serious emotional distress. Instead, he alleges that any emotional distress that he suffered was due to the conduct of Giarratano.  Mot. at 20:10-17.

---

[9]  *See Wells v. Regents of the University of California*, 2015 WL 6746820, at WL 6746820, at *9 (N.D. Cal. No. 5, 2015) (dismissing intentional infliction of emotional distress claim, because allegations that plaintiffs "suffered and continue to suffer humiliation, lack of self-confidence, embarrassment, emotional distress, mental anguish…[,] anxiety, sleeplessness, anger, loss of sleep, hyper-vigilance consistent with post-traumatic stress disorder, depression, sadness, and excessive ruminations about their daily experiences at the hands of Defendants" were conclusory); *Wong v. Jing*, 189 Cal.App.4th 1354, 1376 (2010) (plaintiff's symptoms of lost sleep, upset stomach, and anxiety, did not constitute severe emotional distress); *Hughes*, 46 Cal.4th at 1050-1051 (concluding that "plaintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" are not "severe").

[10]  In *Kelly Zurian v. Wohl Shoe Co.*, 22 Cal.App.4th 397, 410 (1994), in addition to anxiety, depression, and the inability to sleep, the plaintiff "suffered from tightness in the chest and heart palpitations;" "began drinking and developed a serious drinking problem;" "was diagnosed with posttraumatic stress disorder;" and "had recurring and intrusive recollections of the events, recurring nightmares of the sexual harassment and flashbacks of the events."  In *Saari v. Jongordon Corp.*, 5 Cal.App.4th 797 (1992), the court found that plaintiff had submitted sufficient evidence of emotional distress damages, but the court had no reason to determine whether the plaintiff's emotional distress damages rose to the level of serious or severe.  The case involved a crematorium's negligent mishandling of a family member's remains; in such cases, there is no similar requirement that a plaintiff must have suffered serious/severe emotional distress damages.

- **John Doe 11** does not allege any improper conduct by Nakamura; therefore, he does not allege that Nakamura caused him to suffer serious emotional distress.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Nakamura respectfully requests that the Court grant the Motion to Dismiss in its entirety.


Dated: November 11, 2022                      RAPKIN & ASSOCIATES, LLP

                                              By: */s/ Scott Rapkin*
                                                  Scott Rapkin

                                              Attorneys for Defendant
                                              Troy Nakamura