**DANIEL A. CROLEY** (SBN: 154386)
FUTTERMAN DUPREE DODD CROLEY MAIER LLP
601 Montgomery Street, Suite 333
San Francisco, California 94111
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
Email: dcroley@fddcm.com

*Attorneys for Defendant*
Anthony Nino Giarratano

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, and JOHN DOE 12, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, THE UNIVERSITY OF SAN FRANCISCO, ANTHONY N. (AKA NINO) GIARRATANO, and TROY NAKAMURA, <br><br> Defendants. | Case No.: 3:22-cv-01559-LB <br><br> **DEFENDANT ANTHONY N. (AKA NINO) GIARRATANO'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> [Fed. R. Civ. P. 12(b)(6) and 12(e)] <br><br> Date:  December 8, 2022 <br> Time:  9:30 a.m. <br> Judge:  Hon. Magistrate Laurel Beeler <br><br> Amended Complaint Filed: July 15, 2022 |

# TABLE OF CONTENTS

I.   INTRODUCTION ………………………………………………………………….....1

II.  PROCEDURAL BACKGROUND …………………………………………….....2

III. ARGUMENT ……………………....…...…………………………………….….2

    1.   BECAUSE JOHN DOES 4-12 WAITED TOO LONG TO FILE SUIT, ALL OF THEIR CLAIMS SHOULD BE DISMISSED AS TIME BARRED ……………………………….....2

    2.   ARGUMENTS APPLICABLE TO COUNTS VII, X, AND XI……..………………………………………………….……… 9

        Count VII - Gross Negligence …………………….....………………. 9

        Count X - Intentional Infliction of Emotional Distress …..……………..... 9

        Count XI - Negligent Infliction of Emotional Distress ……….…….....… 11

IV.  CONCLUSION ...…………………………………………………………..…....12

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Lindsay v. Yolanda Fryson*,
    No. 2:10-cv-02842 LKK KJN PS (E.D. Cal. July 6, 2012) ................................................. 11

*Jimenez v. 24 Hour Fitness USA, Inc.*,
    237 Cal.App.4th 546 (2015) ............................................................................................... 9

*Andersen v. Regents of University of California*,
    22 Cal.App.3d 763 (1972) .................................................................................................. 7

*Atwell v. Gabow*,
    Nos. 06-cv-2262, 07-cv-2063, 2008 WL 906105 (D. Colo. Mar. 31, 2008) ....................... 1

*Beagle v. Rite Aid Corp.*,
    No. 08-cv-1517, 2009 WL 3112098 (N.D. Cal. Sept. 23, 2009) ......................................... 6

*C.A. v. William S. Hart Union High School District*,
    53 Cal. 4th 861 (2012) ...................................................................................................... 11

*Cada v. Baxter Healthcare Corp.*,
    920 F.2d 446 (7th Cir. 1990) ............................................................................................... 4

*Chisholm v. St. Mary's City Sch. Dist. Bd. of Educ.*,
    947 F.3d 342 (6th Cir. 2020) ............................................................................................. 10

*Continental Ins. Co. v. Am. Prot. Indus.*,
    197 Cal. App. 3d 322 (1987) .............................................................................................. 9

*Davies v. Krasna*,
    14 Cal.3d 502 (1975) .......................................................................................................... 5

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) ............................................................................................................ 5

*Doe 1 v. Baylor University*,
    240 F. Supp. 3d 646 (W.D. Tex. 2017) ............................................................................... 5

*Doe v. Cherwitz*,
    518 N.W.2d 362 (Iowa 1994) ............................................................................................. 4

1  *Doe v. Pasadena Hosp. Ass'n,*
2     No. 2:18-cv-08710, 2020 WL 1244357 (C.D. Ca. Mar. 16, 2020) ....................................... 4
3  *Ellul v. Congregation of Christian Bros.,*
4     774 F.3d 791 (2d Cir. 2014) ............................................................................................... 4
5  *Fox v. Ethicon Endo-Surgery, Inc.,*
6     35 Cal. 4th 797 (2005) ........................................................................................................ 2
7  *Garamendi v. SDI Vendome S.A.,*
8     276 F. Supp. 2d 1030 (C.D. Cal. 2003) ............................................................................. 2
9  *Garcia v. Brockway,*
10    503 F.3d 1092 (9th Cir. 2007) ............................................................................................ 4
11 *Hayutin v. Weintraub,*
12    207 Cal. App. 2d 497 (1962) ............................................................................................. 8
13 *Hernandez v. Sutter W. Capital,*
14    No. C 09-03658 CRB, 2010 WL 3385046 (N.D. Cal. Aug. 26, 2010) ............................... 2
15 *Huynh v. Chase Manhattan Bank,*
16    465 F.3d 992 (9th Cir. 2006) ............................................................................................. 6
17 *Janken v. GM Hughes Electronics,*
18    46 Cal. App. 4th 55 (1996) .............................................................................................. 10
19 *Quarry v. Doe I,*
20    53 Cal. 4th 945 (2012) ....................................................................................................... 8
21 *Landgraf v. USI Film Prods.,*
22    511 U.S. 244 (1994) ........................................................................................................... 8
23 *Mark K. v. Roman Cath. Archbishop,*
24    67 Cal. App. 4th 603 (1998) .............................................................................................. 4
25 *Marsha V. v. Gardner,*
26    231 Cal. App. 3d 265 (1991) ............................................................................................. 5
27 *Martinez v. United States of America,*
28    Case No. EDCV 09-0375-SVW(RC) (C.D. Cal, March 25, 2010) .................................... 9

*Mayall v. USA Water Polo, Inc.*,
   909 F.3d 1055 (9th Cir. 2018) ................................................................................................9

*McClung v. Employment Dev. Dept.*,
   34 Cal. 4th 467 (2004) ............................................................................................................8

*McGowan v. Weinstein*,
   No. 2:19-cv-09105-ODW, 2020 WL 7210934 (N.D. Cal. Dec. 7, 2020) ............................2

*Montoya v. Regents of Univ. of Cal.*,
   No. 09-cv1279, 2010 WL 2731767 (S.D. Cal. July 9, 2010) ................................................6

*Myers v. Philip Morris Cos., Inc.*,
   28 Cal. 4th 828 (2002) ............................................................................................................8

*Persson v. Smart Inventions, Inc.*,
   125 Cal. App. 4th 1141 (2005) ..............................................................................................8

*Purcell v. Tulane Univ. of La.*,
   2017 U.S. Dist. LEXIS 80903 (E.D. La. 2017) ..................................................................10

*Richelle L. v. Roman Catholic Archbishop*,
   106 Cal. App. 4th 257 (2003) ................................................................................................7

*Rosenblum v. Yates*,
   No. 09-cv-3302, 2011 WL 590750 (E.D. Cal. Feb. 10, 2011) ..............................................6

*Saenz v. Whitewater Voyages, Inc.*,
   226 Cal. App. 3d 758 (1991) .................................................................................................9

*Sanchez v. Poole*,
   79 F. App'x 254, 255 (9th Cir. 2003) ....................................................................................6

*Simmons v. United States*,
   805 F.2d 1363 (9th Cir. 1986) ...............................................................................................4

*Thomas v. Quality Loan Service Corp.*,
   Case No. 18-cv-2791-BAS-NLS (E.D. Cal., July 10, 2019) ................................................9

*Tyler v. Children's Home Soc'y*,
   29 Cal. App. 4th 511 (1994) ..................................................................................................8

*Walker v. Pacific Maritime Assoc.*,
   No. 07-cv-3100, 2009 WL 1068886 (N.D. Cal. Apr. 29, 2009) ........................................... 6

Wallis *v. Superior Court*,
   160 Cal.App.3d 1109 (1984) .................................................................................................. 10

*Zumbrun v. Univ. of S. California*,
   25 Cal. App. 3d 1 (1972) ......................................................................................................... 7

**Statutes and Other Authorities**

Gov. Code, § 815.2 ........................................................................................................................ 11

C.C.P. § 340.16(c)(2). ................................................................................................................. 8, 9

CCP §340.16. ................................................................................................................................... 8

Penal Code § 261 ............................................................................................................................. 8

Penal Code § 262 ............................................................................................................................. 8

Penal Code § 264.1 .......................................................................................................................... 8

Penal Code § 286 ............................................................................................................................. 8

Penal Code § 287 ............................................................................................................................. 8

Penal Code §289 .............................................................................................................................. 8

Penal Code § 243.4 .......................................................................................................................... 8

Penal Code § 288a ........................................................................................................................... 8

42 Pa. Cons. Stat. § 5533(b)(2)(i.1) ................................................................................................. 8

## I. INTRODUCTION

By and large, coaches and players know there are more players than playing time, and coaches never want players to be happy about "no playing time." But they do not expect to have those players question their integrity for making those calls, let alone sue them in federal court for doing so. Whatever motivated John Does 1-3 to file the initial Complaint in March 2022 (ECF No. 1), and the First Amended Complaint ("FAC") on July 15, 2022 (ECF No. 38), their claims are massively overstated as to Defendant Giarratano. And while Defendant Giarratano will fully show a host of other fatal defects in John Does 1-3 larded-up Complaint as to him in due course, this motion first properly seeks dismissal of incurably time-barred claims for John Does 4-12 as a matter of law before the parties and the Court expend significant time and resources on meritless litigation going back decades, including by Giarratano who is now unemployed after 26 years as the head coach at USF.

In their Complaint, John Does 4-12 do not allege a year-by-year analysis of when they played for USF (much less about their performance), in order to create misdirection because their claims are barred by every applicable statute of limitations. However, John Does 4-12, each of whom, according to the Complaint, left USF well before March 2020, making their claims time-barred. FAC, ¶¶41-49. If they ever had a valid claim, they waited too long before filing suit because, at the time of last attending USF, they suspected or should have suspected that their injury was caused by wrongdoing. This is not a case involving a physician or therapist where some courts have, under the discovery rule, found the patient lacked any appreciation of suspected wrongdoing until a news publication of broad and similar misconduct against others. In such cases, the patient lacks the expertise to assess the matter, such as when a gynecologist performs medically unnecessary or extensive treatment that is actually a physical sexual battery. While Plaintiffs continued vaguely worded references to sexual misconduct are straight-ahead misdirection, such conclusory allegations are not sufficient under the *Twombly/Iqbal* pleading standards. See *Atwell v. Gabow*, Nos. 06-cv-2262, 07-cv-2063, 2008 WL 906105, at *9 (D. Colo. Mar. 31, 2008) ("[L]egal conclusions parading as 'facts' … have no place in a Rule 12(b)(6) analysis under Twombly.") Nowhere do they allege any specifics about any sexual assault or battery by Defendant

Giarratano (let alone such a cause of action), as outlined in his moving brief.

In addition, this motion also properly seeks the dismissal of Counts VII, X, and XI as to Defendant Giarratano.

## II. PROCEDURAL BACKGROUND

As the hearing on this motion, Plaintiffs will have spent over nine months advancing two complaints against Defendants based on an alleged sexualized environment in relationship to USF's baseball program. The original Complaint was filed on March 11, 2022 (ECF No. 1), and the First Amended Complaint ("FAC") on July 15, 2022 (ECF No. 38).

## III. ARGUMENT

1. **BECAUSE JOHN DOES 4-12 WAITED TOO LONG TO FILE SUIT, ALL OF THEIR CLAIMS SHOULD BE DISMISSED AS TIME-BARRED.**

Statutes of limitations exist to protect defendants from having to "defend[] stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps" and to encourage plaintiffs to pursue their claims diligently. *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th 797, 806 (2005). And "[a] defendant is permitted to raise a statute of limitations argument in a 12(b)(6) motion provided the basis for the argument appears on the face of the complaint and any materials the court is permitted to take judicial notice of." *Hernandez v. Sutter W. Capital*, No. C 09-03658 CRB, 2010 WL 3385046, at *2 (N.D. Cal. Aug. 26, 2010) (granting motion to dismiss on statute of limitations grounds based on judicially noticed dates); *see also McGowan v. Weinstein*, No. 2:19-cv-09105-ODW, 2020 WL 7210934, at *15 (N.D. Cal. Dec. 7, 2020) (holding that plaintiff could not plead facts contradictory to an article incorporated by reference in an effort to circumvent the statute of limitations).

A "plaintiff is held to discover her cause of action when she suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1038 (C.D. Cal. 2003).

John Does 4-12 recite the discovery rule correctly, but they are wrong to suggest it was not

triggered until March 11, 2022, and misapply it in making that argument. Since the alleged misconduct involved them directly while they attended USF, John Does 4-12 argument that they "did not discover their **causes of action** until March 11, 2022" rests on the fallacy that they actually have to understand their precise legal claims before triggering the limitations period. Opp'n p. 14:25-26 (emphasis added). However, this is not the standard; rather, what matters is when they first suspect or should suspect that a defendant committed wrongdoing that harmed them. Given the nature of their claims, it cannot be disputed that Plaintiffs knew or should have known of their claimed injuries from the alleged acts of Coach Giarratano well before they left the USF baseball team. To recap, Plaintiffs, allege Coach Giarratano:

- The "berated, belittled and disparaged" them. FAC, ¶8.
- They "took away their playing time and scholarships." FAC,¶8.
- The "coerced them into leaving USF." FAC, ¶8.
- Created an "intolerable sexualized environment." FAC, ¶156,
- Drove players to leave the team. FAC, ¶11.

All of these alleged harms, if they occurred, were things Plaintiffs would have been aware of at the time of alleged mistreatment. There was nothing secret to be discovered. There was nothing hidden to be found. All of this was out in the open. Plaintiffs also allege that they had spent "most of their lives playing baseball" and therefore knew the conduct at USF was "more disturbing than anything they had experienced on any other baseball team." FAC, ¶9. There is no basis for tolling based delayed discovery for these alleged wrongs.

Moreover, as Plaintiffs' Complaint explains in detail, there was ample public information available to Plaintiffs to ascertain whether the treatment they received violated their rights. See, e.g., FAC, ¶¶ 99-107. They cite published articles on this subject going back to the 1990s. Certainly, college students such as Plaintiffs would have been able to find this information in a library or online.

Nowhere does the Complaint allege facts to show that Coach Giarratano --- should be estopped from invoking the statute of limitations. See Complaint, ¶¶458-464 (tolling and estoppel alleged only as to the NCAA and USF).

Having clearly occurred before John Does 4-12 left USF (by March 2020), their claims are timed out. Cognizant of this defect, John Does 4-12 insist that they only learned the truth of Defendant's alleged misconduct when a newspaper article was published about this lawsuit, seeking extraordinary relief of being exempt from the statute of limitations, on three grounds 1) discovery rule; 2) Equitable Tolling and 3) Fraudulent Concealment. None of them has merit.[1]

Cases where only media stories put plaintiffs on notice of abuse, involve doctors and priests who engaged in physical battery under false pretense and often under circumstances overlapping or inseparable from their "official" duties. In *Doe v. Pasadena Hosp. Ass'n,* No. 2:18-cv-08710, 2020 WL 1244357, at *6 (C.D. Ca. Mar. 16, 2020), which is relied upon by John Does 4-12 in their opposition, the court refused to dismiss as untimely claims of patients victimized by Dr. Sutton, an obstetrician, who allegedly engaged in "touching their legs in a sexual manner, conducting unexpected vaginal exams, and unnecessary breast[] exams." The court ruled belated discovery was "a question of fact" not subject to a motion to dismiss because of the position and authority as a physician, and the circumstances supporting the alleged conduct"—along with his claims that his actions were for "legitimate medical purposes"—made "reasonable" plaintiffs' failure to recognize the abuse until a recent media "story describing Sutton's sexual misconduct." *See also Simmons v. United States,* 805 F.2d 1363, 1367 (9th Cir. 1986) (psychiatric malpractice claim accrued when plaintiff discovered that what she believed was romantic relationship was "misconduct" by the therapist).[2] *Doe v. Cherwitz,* 518 N.W.2d 362, 364 (Iowa 1994) (patient's claim that doctor sexually

---

[1] John Does 4-12 conflate the doctrine of discovery rule with equitable tolling. See FAC ¶¶ 463-464 (requesting "equitable tolling also tolled the accrual" on the basis that "John Does 4-12 did not discover they had a viable claim until March 11, 2022, when the San Francisco Chronicle published …." "Equitable tolling is frequently confused… with the discovery rule. It differs from the [discovery rule] in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Garcia v. Brockway*, 503 F.3d 1092, 1100 (9th Cir. 2007) (quoting *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir. 1990) (Posner, J.)). The discovery rule, by contrast, "delays the date of accrual where the plaintiff is blamelessly ignorant of the existence or cause of his injury." *Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 801 (2d Cir. 2014). John Does 4-12 appear to be claiming that they were unaware that they allegedly were injured, and thus that the discovery rule (not equitable tolling) applies. In any event, neither doctrine applies for the reasons explained herein.

[2] While John Does 4-12 correctly note that in *Mark K.* the plaintiffs did not allege they failed to apprehend the wrongful conduct, they also ignore that this only mattered, as the misconduct alleged in the first place was for sexual batteries and abuse by a priest against several plaintiffs who were minors at the time of the physical batteries. *Mark K. v. Roman Cath. Archbishop*, 67 Cal. App. 4th 603, 611 (1998). And, as much as John Does 4-12 liken their circumstances to those in *Mark K.*, in quoting that "the nature of the relationship

assaulted her during pelvic exam accrued when plaintiff knew, or should have known, she was abused). Without a news publication, the plaintiffs in such cases may not have apprehended that the experts' physical touching was in fact a physical battery and extreme misconduct. Unlike these cases, Coach Giarratano is not a physician, therapist, or priest (as in cases discussed below), and there is no allegation of physical battery or other comparable acts by him requiring a news publication for John Does 4-12 to apprehend the alleged wrongful nature of the conduct, as illustrated by John Doe 6 complaining to USF at the time.[3]

California courts have routinely rejected the argument that delayed discovery of "the extent" of one's injuries tolls the statute of limitations. For example, in *Marsha V.*, a sexual abuse case by a step-father against a minor, the plaintiff argued the statute of limitations was tolled due to her delayed discovery of "ongoing deep-seated psychological injuries and the causal link between those injuries and [the defendant's] misconduct." *Marsha V. v. Gardner*, 231 Cal. App. 3d 265, 271 (1991). The court held the delayed discovery rule did not apply because the plaintiff knew the defendant abused her against her will, which constituted a wrongful act that commenced the statutory period. *Id.* at 273. The plaintiff's unawareness of "additional harm ('feelings of great shame, embarrassment, humiliation, fear, confusion about herself, guilt, self-blame, self-hate, anxiety, extreme depression, psychosomatic and sleep-related complaints, inability to differentiate between sex and affection, and difficulty forming meaningful trust relationships) only 'created uncertainty as to the amount of damages [and did not] toll …the period of limitations." *Id.*, quoting *Davies v. Krasna,* 14 Cal.3d 502, 512 (1975).

***Equitable Tolling***: John Does 4-12's delay in filing cannot be excused by "equitable

---

between defendant and plaintiff to explain the application of the delayed accrual rule," John Does 4-12 are not minors, the Division One baseball program is not a church, and the coaches are not priests. (Opp'n, p. 15).

[3] Likewise, *Doe 1 v. Baylor University*, 240 F. Supp. 3d 646, 661 (W.D. Tex. 2017) is inapposite as to Coach Giarratano, as it involves a Title IX claim which only lie against the institution. *See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999) (plaintiff's cause of action is against the school based on the school's actions or inactions, not the actions of the person who abused the plaintiff). In contrast to the claims against Coach Giarratano, Title IX claims require administrator (e.g., institutional) indifference, where an alleged assault by one employee may not give a plaintiff knowledge of an institution's conduct without a news publication. Whatever relevance *Doe 1 v. Baylor University* has to the statute of limitations analysis here, which is governed by California law, it has none as to a John Does 4-12s' ability to suspect wrongdoing against the coach defendants.

tolling," which "is unavailable in most cases." *Walker v. Pacific Maritime Assoc.*, No. 07-cv-3100, 2009 WL 1068886, at *3 (N.D. Cal. Apr. 29, 2009) (quotation marks omitted); see also *Sanchez v. Poole*, 79 F. App'x 254, 255 (9th Cir. 2003) ("[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." As relevant here, for equitable tolling to be available, "the plaintiff bears the burden of establishing (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Montoya v. Regents of Univ. of Cal.*, No. 09-cv1279, 2010 WL 2731767, at *5 (S.D. Cal. July 9, 2010); see also *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006) (plaintiffs must allege that "extraordinary circumstances … made it impossible" to timely file). This extraordinary showing must be supported by <u>specific factual</u> allegations in the pleading. *Beagle v. Rite Aid Corp.*, No. 08-cv-1517, 2009 WL 3112098, at *11 (N.D. Cal. Sept. 23, 2009). John Does 4-12 cannot meet this burden for several reasons: First, John Does 4-12 do not allege any specific factual allegations and offer no argument or factual allegation for why timely filing was "impossible." However serious these concerns, their allegations in the FAC that they had fears and concerns are generalized in nature and do not meet *Twombly* standard or specificity standard. (FAC, ¶¶ 265, 324, 395, 507, 582)  Second, John Doe 6 alleged he filed a claim with USF. (FAC, ¶ 456).  It is difficult to square John Doe 6's ability to file an internal claim with the Coach's boss notwithstanding the alleged concerns with their contention that the same concerns made it "impossible" to file the Complaint within the limitations period.  Moreover, he filed that claim, in the same environment in which the other plaintiffs operated, which never deterred John Does 1-3 from timely filing.  Second, in any event, generalized allegations of fear and concern, such as those here, cannot support equitable tolling. See *Rosenblum v. Yates*, No. 09-cv-3302, 2011 WL 590750, at *3 (E.D. Cal. Feb. 10, 2011) (plaintiff "has merely made a generalized allegation that his fear of retaliation made him delay in filing the petition, which is insufficient to meet his high burden" of showing extraordinary circumstances).  Third, John Does 4-12 were admitted into an elite Division One baseball program and Jesuit University.  Aware of their physical and mental strengths, the FAC and Opposition resort to infantilization – referring to them as "youthful" and "young" (FAC, ¶ 147, 309, 411, and Opp'n. p. 23 "youthful victims"), while ignoring they are all powerful adults, who

are capable of serving in the United States military, voting, and entering into contracts.

***Fraudulent Concealment***:  John Does 4-12's delay in filing cannot be excused by fraudulent concealment on the part of Coach Giarratano for at least three reasons.  First, there is no allegation of fraudulent concealment by Coach Giarratano in the first place.  Compare FAC, ¶609 and 685 ("NCAA … fraudulently concealed… ").  Second, even if alleged at all and with particularity, mere concealment does not toll the limitations period, as NCAA argues.  Plaintiffs cite no case showing that coaches are fiduciaries and they are not comparable to relationships where one exits.[4]  The elements of a confidential relationship are plainly lacking here.  "The vulnerability that is the necessary predicate of a confidential relation ... usually arises from advanced age, youth, lack of education, weakness of mind, grief, sickness, or some other incapacity." *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 273 (2003).  Moreover, coaching would be untenable if every coach owed each player a special duty, in which case they might have to play each player equally and without regard to skill and ability and how could coaches push for competitive greatness, for example, in conditioning if the players could refuse because it was not in their best overall interest at that time, because perhaps they had procrastinated and needed instead to study for a chemistry examination occurring the next day. Rather, the coach-player relationship[5] is similar to and, in first instance cited below, indistinguishable from  relationships that the courts have held do not create fiduciary duties.  These include:

- university and student.  *Zumbrun v. Univ. of S. California*, 25 Cal. App. 3d 1, 13 (1972) ("in the United States that the basic legal relation between a student and a private university or college is contractual in nature."); *Andersen v. Regents of University of California,* 22 Cal.App.3d 763, 769 (1972)  (same).

- 50% shareholder of closely held corporation and other shareholder. *Persson v. Smart Inventions, Inc.,* 125 Cal.

---

[4]  A "fiduciary relationship is a recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client." *Richelle L. v. Roman Catholic Archbishop,* 106 Cal. App. 4th 257, 271 (2003) (imposing a duty upon a priest who was counseling a spiritual parishioner who he exploited to have a physical, sexual relationship, including by telling one previously chaste parishioner that he had never broken his vow of chastity or had a prior sexual relationship).

[5]  Were the law otherwise, mentors, professors, job and life coaches and countless others, who may have roles comparable to coaches, could be at risk of having a fiduciary or confidential relationship.

App. 4th 1141, 1159 (2005); *Hayutin v. Weintraub*, 207 Cal. App. 2d 497 (1962).

- adoption agency and birth parents. *Tyler v. Children's Home Soc'y*, 29 Cal. App. 4th 511 (1994).

With a paucity of analysis of how and why it applies, John Does 4-12 cite and appear to rely on CCP §340.16. Effective January 1, 2019, §340.16 expanded the statute of limitations period for adult claims of sexual abuse to the later of (a) ten years from the last act, or (b) three years from "the date the plaintiff discovers or reasonably should have discovered than an injury or illness resulted from the act." *Id*. John Does 4-12 cannot save their timed-out claim based on this statute for several reasons. First, by not developing the argument in any detail, they have waived it. Second, while they liken themselves to person protected under CCP § 340.16 (by wildly citing events at Penn State[6] having nothing to do with USF baseball), they are not, because § 340.16 applies only to certain crimes not alleged here.[7] Third, the statute does not revive claims that lapsed under the former limitations period, such as John Does 4-12s' claims. Instead, the language of the statute only revives certain specific sexual assault claims involving a physician occurring at a student health center, not applicable to this case. C.C.P. § 340.16(c)(2).

"Generally, statutes operate prospectively only." *Myers v. Philip Morris Cos., Inc.*, 28 Cal. 4th 828, 840 (2002). "The presumption against retroactive legislation is deeply rooted in our jurisprudence and embodies a legal doctrine centuries older than our Republic." *McClung v. Employment Dev. Dept.,* 34 Cal. 4th 467, 475 (2004) (quoting *Landgraf v. USI Film Prods.,* 511 U.S. 244, 270 (1994). Thus, a "legislative enlargement of a limitations period does not revive lapsed claims in the absence of express language of revival." *Quarry v. Doe I*, 53 Cal. 4th 945, 956 (2012); *see also McClung*, 34 Cal. 4th at 475 (2004) ("it has long been established that a statute that interferes with antecedent rights will not operate retroactively unless such retroactivity be 'the

---

[6] Such misdirection includes citing 42 Pa. Cons. Stat. § 5533(b)(2)(i.1), which has nothing to do with the case, but rather Plaintiffs' counsel crusade against the NCAA.
[7] Penal Code § 243.4 (sexual battery: "touch[ing] an intimate part of another person while that person is unlawfully restrained …, … against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse), § 261 (rape), § 262 (spousal rape), § 264.1 (gang rape), § 286 (sodomy), § 287 (oral copulation with a minor), or §289 (forcible penetration with a foreign object), or former Penal Code § 288a (oral copulation with a minor).

unequivocal and inflexible import of the terms, and the manifest intention of the legislature'").

Section 340.16 contains no such express language. To be sure, the California legislature knows how to include "revival" language when that is its intent, as done in §340.16(c)(2) concerning physicians at student health centers.

2. ARGUMENTS APPLICABLE TO COUNTS VII, X, AND XI

Count VII - Gross Negligence

"California does not recognize a distinct common law cause of action for gross negligence apart from negligence." *Jimenez v. 24 Hour Fitness USA, Inc.*, 237 Cal.App.4th 546, 552, n. 3 (2015). Given the adoption of the doctrine of comparative negligence in California, any attempt to categorize gross negligence separately from ordinary negligence is unnecessary. "California cases have discussed the doctrine of gross negligence turned upon an interpretation of a statute which has used the words 'gross negligence' in the text." *Continental Ins. Co. v. Am. Prot. Indus.*, 197 Cal. App. 3d 322, 328-30 (1987). *See Martinez v. United States of America*, Case No. EDCV 09-0375-SVW(RC) (C.D. Cal, March 25, 2010) ("California does not recognize a distinct cause of action for `gross negligence' independent of a statutory basis"), *citing, Saenz v. Whitewater Voyages, Inc.*, 226 Cal. App. 3d 758, 766 n.9, (1991); *Continental Ins. Co. supra at v*. 328-30. *Thomas v. Quality Loan Service Corp.*, Case No. 18-cv-2791-BAS-NLS (E.D. Cal., July 10, 2019) (same).

Ignoring the above authorities (including *Thomas* which was decided in 2019), John Does 4-12 cite a Ninth Circuit case beyond its holding, in relying on *Mayall v. USA Water Polo, Inc.,* 909 F.3d 1055, 1068 (9th Cir. 2018). Yet, the Ninth Circuit does not generally pronounce what California law is and, regardless, *Mayall* was not decided on the ground of whether gross negligence was cognizable in California. *Id.* at p. 1059 (decided by District Court based on pleading defects as "the SAC fails to allege gross negligence because it fails to allege a duty owed to [plaintiff] by USA Water Polo, and it fails to allege an "extreme departure from ordinary standards of conduct.").

Count X - Intentional Infliction of Emotional Distress

Seeking competitive greatness with a range of coaching techniques is not conduct that exceeds all bounds usually tolerated by a decent society, as illustrated in *Purcell v. Tulane Univ. of*

*La.*, 2017 U.S. Dist. LEXIS 80903 (E.D. La. 2017) and *Chisholm v. St. Mary's City Sch. Dist. Bd. of Educ.*, 947 F.3d 342 (6th Cir. 2020). In those cases, where the claims failed based on the alleged conduct of the coaches, dismissal was appropriate notwithstanding the age of students—even for the high school players in *Chisholm*. The same result should apply here, especially as to D1 baseball players at a prestigious college; their purported infantilization, in the opposition, is not supported by the FAC and, regardless, has no legal effect.

Nor can control over playing time in baseball or, awarding promotions or pay raises by an executive or similar management decisions form the basis for such a claim. Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996).

In the opposition, Plaintiffs cite that "Giarratano's abuse included threats of physical injury and actual physical assaults (*Id*. ¶¶ 256, 435, 444)." Opp'n. p. 44. First, these allegations only involve John Does 3 and 11. Second, John Does 3 alleges only a single threat and no act to follow up on that threat. Second, John Doe 11 alleges he was asked to leave the batting cage for using a non-team bat, likely in violation of the team's sponsorship contract. He then claims the coach threw a pitch at him, but says nothing about the speed of the pitch, and common sense says such a pitch from a then about fifty-five-year-old coach was hardly fast. Third, these limited acts are not severe and pervasive, much less outrageous. Fourth, none of these alleged acts were directed at John Does 1-2 and 4-10 and 12, whose claims should be dismissed.

Plaintiffs' reliance on Wallis *v. Superior Court*, 160 Cal.App.3d 1109 (1984) is of no help. In that case, the employer breached its obligation to pay an agreed upon stipend for *Wallis*' agreement not to compete, and *Wallis* asserted, among other claims, a claim for intentional infliction of emotional distress based on that breach. *Id.* at p. 1113. *Wallis* alleged that the employer intentionally abused its position of financial control over the plaintiff by terminating monthly payments without any good reason and lying about the reasons for such termination. Also, *Wallis* alleged that the defendant knew of his vulnerable position, intended to cause him harm, and that he

suffered emotional distress as a result of this. (*Id.* at p. 1120.)  In short, *Wallis* alleged that he was particularly financially vulnerable (e.g., the promise was made to him at age 55 and he had no retirement funds) and the employer knew this fact and acted with the intent to cause him harm and emotional distress.  No such conduct and financial vulnerability is alleged here.

<u>Count XI - Negligent Infliction of Emotional Distress</u>

The negligent misrepresentation claim also fails. Plaintiffs make insufficient and unpersuasive arguments aimed at saving this claim, *citing C.A. v. William S. Hart Union High School District* (hereinafter, "William S. Hart"), 53 Cal. 4th 861 (2012), for the proposition that a special relationship exists as between a private college coach and her player. (Opp'n at 42). *William S. Hart* did not involve the question of when a plaintiff may pursue a direct liability claim (in that case, against a public entity).  Instead, *William S. Hart* addressed the circumstances under which a plaintiff could pursue a vicarious liability claim against a school district where supervisory personnel knew or should have known about an employee's prior conduct or propensities to molest children. See *William S. Hart,* 53 Cal. 4th at 865 (stating that the question presented on appeal was "whether the district may be found vicariously liable for the acts of its employees (Gov. Code, § 815.2)—not for the acts of the counselor, which were outside the scope of her employment, but for the negligence of supervisory or administrative personnel who allegedly knew, or should have known, of the counselor's propensities and nevertheless hired, retained and inadequately supervised her"). "Critically, however, the California Supreme Court limited the viability of the type of vicarious liability claim at issue in *William S. Hart* to situations where the supervisory or administrative personnel have a 'special relationship' with the plaintiff or a class of plaintiffs.  The court reasoned that a school district and its employees have a special relationship with the district's pupils, a relationship arising from the **mandatory character of school attendance** and the **comprehensive control** over students exercised by school personnel, **analogous in many ways to the relationship between parents and their children**." *Lindsay v. Yolanda Fryson*, No. 2:10-cv-02842 LKK KJN PS (E.D. Cal. July 6, 2012), *citing William S. Hart*, 53 Cal. 4th at 869 (emphasis added).  As such, *William S. Hart* says nothing about the direct negligent misrepresentation claim against Coach Giarratano; whatever the relevance of the special relationship factors applied in

*William S. Hart* as to a public high school counselor, those factors do not apply here. [8]

## IV.  CONCLUSION

For the foregoing reasons, the FAC should be dismissed in its entirety as to John Does 4-12, and as to Claims VII, X, and XI as to John Does 1-3, in each case with prejudice.

Dated:  November 11, 2022              Respectfully submitted,

FUTTERMAN DUPREE DODD CROLEY MAIER LLP

By:     /s/ Daniel A. Croley
         Daniel A. Croley
         *Attorneys for Defendant*
         Anthony Nino Giarratano

---

[8]  Plaintiffs' opposition concedes they are not claiming any emotional distress as a bystander, and thus that claim should be dismissed as well.