1   Jonathan M. Baum (SBN 303469)
    *jbaum@steptoe.com*
2   Sonja Arndt (SBN 322728)
    *sarndtjohnson@steptoe.com*
3   Reid W. Gaa (SBN 330141)
    *rgaa@steptoe.com*
4   STEPTOE & JOHNSON LLP
    Steuart Tower, Suite 1070
5   San Francisco, California 94105
    Telephone: (415) 365-6700
6   Facsimile: (415) 365-6699
7
8   Attorneys for Defendant
    UNIVERSITY OF SAN FRANCISCO
9
                    UNITED STATES DISTRICT COURT
10
         NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
11
12   JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,        CASE NO. 3:22-cv-01559-LB
     JOHN DOE 4, JOHN DOE 5, JOHN DOE 6,
13   JOHN DOE 7, JOHN DOE 8, JOHN DOE 9,        **DEFENDANT USF'S REPLY IN SUPPORT**
     JOHN DOE 10, JOHN DOE 11, and JOHN         **OF MOTION TO DISMISS**
14   DOE 12, individually and on behalf of all
15   others similarly situated,
16                     Plaintiffs,
17          v.
18   NATIONAL COLLEGIATE ATHLETIC
     ASSOCIATION, THE UNIVERSITY OF
19   SAN FRANCISCO, ANTHONY N. (AKA
     NINO) GIARRATANO, and TROY
20   NAKAMURA,
21                     Defendants.
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ................................................................................ 1

II.    ARGUMENT ....................................................................................... 1

    A.    *John Does 4-12 Have Not Alleged Sufficient Facts to Toll Their Claims* .................................................................................... *1*

    B.    *Plaintiffs Fail to Adequately Allege Their Title IX Claims* ..................... 8

    C.    *Plaintiffs Fail to Adequately Allege Their California Statutory Claims* .............. 14

III.    CONCLUSION .................................................................................. 18

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Aguilar v. Corral,*
5
   No. CIVS 07-1601 ............................................................................. 15

6

*Aldrich v. National Collegiate Athletic Association,*
7
   484 F. Supp. 3d 779 (N.D. Cal. 2020) ............................................... 5

8

*Belen v. Ryan Seacrest Prods., LLC,*
   65 Cal. App. 5th 1145 (2021), review denied (Oct. 13, 2021) ............... 17

9

*Bostock v. Clayton Cnty., Georgia,*
10
   140 S. Ct. 1731 (2020) ..................................................................... 9

11

*Burch v. Regents of Univ. of California,*
12
   433 F.Supp.2d 1110 (E.D. Cal. 2006) ................................................ 13

13

*Cabral v. Ralphs Grocery Co.,*
   51 Cal. 4th 764, 248 P.3d 1170 (2011) .............................................. 14
14

*City of Brentwood v. Department of Finance,*
15
   54 Cal.App.5th 418 (2020) ............................................................... 18

16

*City of Los Angeles, Dep't of Water & Power v. Manhart,*
17
   435 U.S. 702 (1978) ......................................................................... 9

18

*Cleveland v. Taft Union High Sch. Dist.,*
19
   76 Cal. App. 5th 776 (2022) ............................................................. 17

20

*Doe 1 v. Baylor Univ.,*
   240 F. Supp. 3d 646 (W.D. Tex. 2017) .............................................. 3
21

*Doe II v. Savannah-Chatham Cnty. Pub. Sch. Sys.,*
22
   2022 WL 3041276 (11th Cir. Aug. 2, 2022) ........................................ 12

23

*Doe v. Marten,*
24
   49 Cal. App. 5th 1022 (2020) ........................................................... 6

25

*Doe v. Pasadena Hosp. Ass'n, Ltd.,*
26
   2020 WL 1244357 (C.D. Cal. Mar. 16, 2020) ..................................... 3

27

*Doe v. Snyder,*
   28 F.4th 103 (9th Cir. 2022) ............................................................. 9

28

1

*Lilah R. ex rel. Elena A. v. Smith*,
   2011 WL 2976805 (N.D. Cal. July 22, 2011) ........................................................ 11

*Ernest v. Univ. of Phoenix*,
   2010 WL 11508435 (S.D. Cal. July 27, 2010) ............................................... 7, 8, 17

*Fowler v. Univ. of Phoenix, Inc.*,
   2019 WL 1746576 (S.D. Cal. Apr. 18, 2019), aff'd, 817 F. App'x 442 (9th
   Cir. 2020) ................................................................................................... 7, 8, 17

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) .......................................................................................... 2

*Gebser v. Lago Vista Indep. School Dist.*,
   524 U.S. 274 (1998) ...................................................................................... 10, 11

*Harvey v. Carthage ISD*,
   2019 WL 1083782 (E.D. Tex. Mar. 7, 2019) ........................................................ 12

*Hughes v. Pair*,
   46 Cal.4th 1035 (2009) ................................................................................. 16, 17

*Karasek v. Regents of Univ. of California*,
   956 F.3d 1093 (9th Cir. 2020) .............................................................................. 12

*Langston v. Mid-Am. Intercollegiate Ath. Ass'n*,
   448 F. Supp. 3d 938 (N.D. Ill. 2020) .................................................................. 6, 7

*Lantzy v. Centex Homes*,
   31 Cal. 4th 363 (2003) .......................................................................................... 5

*Lawler v. Montblanc N. Am., LLC*,
   704 F.3d 1235 (9th Cir. 2013) .............................................................................. 16

*Leakas v. Monterey Bay Mil. Hous., LLC*,
   No. 22-CV-01422-VKD, 2022 WL 2161608 (N.D. Cal. June 15, 2022) ................ 16

*LeBrun v. CBS Television Studios, Inc.*,
   68 Cal. App. 5th 199, 283 Cal. Rptr. 3d 260 (2021) ............................................. 18

*Levy v. Only Cremations for Pets, Inc.*,
   57 Cal. App. 5th 203 (2020) ................................................................................. 17

*Long v. Forty Niners Football Co., LLC*,
   33 Cal. App. 5th 550 (2019) ................................................................................... 4

*M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*,
   969 F.3d 120 (3d Cir. 2020) ................................................................................. 12

2

*Machavia, Inc. v. Cnty. of Los Angeles,*
 19 Cal. App. 5th 1050 (2017) ...................................................................... 6

*Nichols v. Azteca Rest. Enters., Inc.*
 256 F.3d 864 (9th Cir. 2001) .................................................................... 10

*Ollier v. Sweetwater Union High Sch. Dist.,*
 768 F.3d 843 (9th Cir. 2014) .................................................................... 13

*P.S. by & through Stephenson v. Brownsboro Indep. Sch. Dist.,*
 2022 WL 3697965 (E.D. Tex. Aug. 25, 2022) ......................................... 13

*Price Waterhouse v. Hopkins,*
 490 U.S. 228 (1989) .................................................................................... 9

*Ranger Pipelines, Inc. v. Lexington Ins. Co.,*
 609 F. App'x 943 (9th Cir. 2015) ............................................................... 7

*Ratcliff v. The Roman Cath. Archbishop of Los Angeles,*
 79 Cal. App. 5th 982 (2022) ............................................................... 14, 15

*Regents of Univ. of Cal. v. Superior Court,*
 4 Cal. 5th 607 (2018) ......................................................................... 15, 17

*Rustico v. Intuitive Surgical, Inc.,*
 993 F.3d 1085 (9th Cir. 2021) .................................................................... 6

*S.G. v. San Francisco Unified Sch. Dist.,*
 2018 WL 1876875 (N.D. Cal. Apr. 19, 2018) ......................................... 10

*Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health,*
 9 Cal. 5th 710 (2020) ............................................................................. 4, 5

*Salazar v. S. San Antonio Indep. Sch. Dist.,*
 953 F.3d 273 (5th Cir. 2017) .................................................................... 12

*Shamoun v. Republic of Iraq,*
 441 F. Supp. 3d 976 (S.D. Cal. 2020) ...................................................... 16

*Sherman v. Regents of Univ. of California,*
 2022 WL 1137090 (N.D. Cal. Apr. 18, 2022) .................................... 10, 17

*Simpson v. Univ. of Colo. Boulder,*
 500 F.3d 1170 (10th Cir. 2007) ................................................................ 12

*Stanley v. Trustees of California State Univ.,*
 433 F.3d 1129 (9th Cir. 2006) .................................................................... 1

3

TABLE OF AUTHORITIES

*Stoll v. Runyon,*
    165 F.3d 1238 (9th Cir. 1999)..............................................................................5, 6

*Teran v. Hagopian,*
    2009 WL 900743 (E.D. Cal. Mar. 31, 2009) ...........................................................10

*Videckis v. Pepperdine Univ.,*
    100 F. Supp. 3d 927 (C.D. Cal. 2015) ....................................................................15

*Wisniewski v. Diocese of Belleville,*
    406 Ill. App. 3d 1119 (Ill. App. 2011) .......................................................................7

**Statutes**

42 U.S.C. § 1983 ...........................................................................................................12

Cal. Civ. Proc. Code § 335.1 ..........................................................................................1

Cal. Gov. Code § 66281.5(b)-(g) ...................................................................................15

Cal. Penal Code §§ 243.4, 261, 262, 264.1, 286, 287, 289 ............................................8

California Code of Civil Procedure § 340.16 ...................................................................8

California's Equity in Higher Education Act .....................................................................1

Code 66270 ....................................................................................................................15

Code 66281.5 .................................................................................................................15

**Other Authorities**

San Francisco Chronicle article........................................................................................3

## I.   INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") asserts allegations on behalf of twelve John Doe plaintiffs spanning almost twenty-two years. Even taking plaintiffs' allegations as true for the purpose of this motion, the claims brought by John Does 4-12 are time-barred by the applicable statute of limitations. Even if plaintiffs' claims were timely, however, they are still subject to dismissal, as the FAC fails to adequately allege violations of Title IX or the various California state law causes of action they assert. The FAC fails to establish that plaintiffs were discriminated against on the basis of sex, that USF had actual knowledge of or was deliberately indifferent to claims of sexual harassment, or that plaintiffs were retaliated against for engaging in a protected activity. Moreover, plaintiffs cannot now reformulate their Title IX allegations against USF as a challenge to any official policy or custom, since their FAC fails to identify any policy. Lastly, plaintiffs' state law claims also must be dismissed because they fail to plead the requisite facts to establish their negligence, California's Equity in Higher Education Act, intentional infliction of emotional distress, negligent infliction of emotional distress, and ratification claims.

## II.   ARGUMENT

### A.   John Does 4-12 Have Not Alleged Sufficient Facts to Toll Their Claims

Plaintiffs' claims are governed by a two-year statute of limitations. *See* Cal. Civ. Proc. Code § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."). Plaintiffs do not challenge this, but instead contend they have adequately alleged four independent bases to toll this limitations period. *See* Opp. at 14. As discussed herein, plaintiffs have failed to adequately plead that the statute of limitations is tolled and thus their claims are time-barred as a matter of law.

#### i.   The discovery rule offers no basis to toll the statute of limitations

Plaintiffs were aware of their claims at the time the allegedly wrongful conduct occurred and therefore cannot rely on the discovery rule. A cause of action "accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006). The discovery rule provides a narrow

exception when a plaintiff's complaint specifically pleads facts showing: (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (internal quotation marks omitted); *see id.* at 807–08 ("[P]laintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation.") (internal quotation marks omitted) (emphasis in original).

As Jon Does 4-12 allege, their experiences on the USF baseball team were ostensibly so severe that they ultimately quit or transferred as a result of the coaches' alleged wrongdoing. This demonstrates they were aware of the conduct underlying their allegations at the time it occurred. Does 4-12 allege that they responded as follows at the time the conduct occurred:

- John Doe 4 – FAC ¶¶ 299, 307 (alleging Coach Defendants wrongful conduct began immediately upon John Doe 4's arrival on campus in 2017 and ultimately causing him to transfer off the USF baseball team);

- John Doe 5 – FAC ¶¶ 336, 352 (alleging wrongful conduct as early as November 2011, ultimately causing John Doe 5 to quit the USF baseball team); FAC ¶ 362 (alleging John Doe 5 contacted Coach Giarratano in December 2021 and "explained how the incidents of abuse and the intolerable sexualized environment he experienced on the baseball team made him feel at the time");

- John Doe 6 – FAC ¶¶ 368-69, 378 (alleging many sexualized events constituted the team's culture upon John Doe 6's arrival on campus in 2012 and ultimately quitting the team due to coaches' constant and abuse and belittlement);

- John Doe 7 – FAC ¶¶ 386, 396 (alleging sexualized activities and "unrelenting cruelty" were prevalent on the team upon John Doe 7's arrival on campus in 2014 and ultimately transferring after one semester);

- John Doe 8 – FAC ¶¶ 402, 410 (alleging wrongful conduct by the coaching staff as early as 2013 and ultimately transferring after one semester);

- John Doe 9 – FAC ¶¶ 418, 426 (alleging wrongful conduct by the coaching staff upon John Doe 9's arrival on campus and ultimately deciding to relinquish his scholarship and leave USF);

- John Doe 10 – FAC ¶¶ 279-80, 293 (alleging wrongful conduct by coaching staff during the first semester of John Doe 10's freshman year in 2018 and ultimately asking to be released by the team);

- John Doe 11 – FAC ¶¶ 433, 446 (alleging coaches wrongful conduct began upon John Doe 11's arrival on campus and ultimately left the program after his freshman year); and

- John Doe 12 – FAC ¶¶ 313, 323 (alleging Coach Defendants immediately began abusing John Doe 12 in August 2017, ultimately causing him to quit the team).

Given these explicit allegations and their contemporaneous responses of leaving the team or even transferring to another university, John Does 4-12 cannot claim they only discovered their causes of action upon reading the March 11, 2022 article published in the San Francisco Chronicle article. Opp. at 14.

This case is distinct from the Baylor University case, where students alleged they did not learn of the university's role until a news article was published. *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646 (W.D. Tex. 2017). In that case, the student plaintiffs alleged they were assaulted by other students, not university employees, and their claims against the university were premised on the university's alleged failure to adequately respond, which they did not learn about until the publication of a news article. *Id.* at 663. Here, in contrast, the "causal connection" between plaintiffs' claims and USF was obvious because the plaintiffs knew the coaches were USF employees.

Straining to find some justification for their extreme delay in bringing their claims, plaintiffs cite to several cases involving rape and sexual assault, arguing that the "trauma" they experienced caused "delayed recognition" of their injuries. Opp. at 23. However, as USF documented in its motion to dismiss, plaintiffs here do not allege they were sexually assaulted, and plaintiffs fail to cite a single case where a court has found that the verbal abuse supported extending the statute of limitations. Plaintiffs also cite to a sexual assault case involving a university gynecologist, but that case is similarly unavailing, because no sexual assault occurred here and the university never did anything to "disguise" the Coach Defendants' conduct as legitimate. In *Doe v. Pasadena Hosp. Ass'n, Ltd.*, 2020 WL 1244357 (C.D. Cal. Mar. 16, 2020), the district court tolled plaintiffs' claims because the defendant actively concealed and misrepresented that the doctor's misconduct conformed to accepted medical practices. 2020 WL 1244357 at *5 (tolling statute when university possessed knowledge of misconduct ultimately brought before the Medical

Board of California and allowed the doctor to continue practicing medicine following probationary period). The situation of a doctor who disguised his sexual abuse of a patient as a legitimate medical practice is completely different from the bullying conduct that the plaintiffs allege their coaches engaged in here, and plaintiffs' argument the statute of limitations should be tolled fails as a result.

ii.   <u>Plaintiffs fail to allege sufficient facts to invoke the equitable tolling doctrine</u>

Plaintiffs have also failed to allege facts necessary to apply the doctrine of equitable tolling. Under California law, equitable tolling permits courts "in carefully considered situations, to exercise their inherent equitable powers to soften the harsh impact of technical rules by tolling statutes of limitations." *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 724 (2020) (internal quotation marks omitted) (citations omitted). "Broadly speaking, the doctrine applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one." *Long v. Forty Niners Football Co., LLC*, 33 Cal. App. 5th 550, 555 (2019), as modified (Apr. 8, 2019). In the *Saint Francis* case, the California Supreme Court clarified the three specific elements a plaintiff must meet to support equitable tolling: timely notice to the defendant, lack of prejudice to the defendant, and reasonable and good faith conduct by the plaintiff. 9 Cal. 5th at 725-26.

John Does 4-12 fail to satisfy any of the doctrine's three elements. Under the notice prong, the analysis focuses on whether the plaintiff's actions caused the defendant to be "fully notified within the [statute of limitations] of plaintiffs' claims and their intent to litigate." *Id.* at 726 (alteration in original). Here, plaintiffs allege no facts to suggest that John Does 4-12 took any action within the applicable limitations period that would cause USF to be "fully notified" of their claims or an intent to litigate. The only relevant communication that any of the plaintiffs made during the limitations period is the 2014 letter from John Doe 6' parents, but this document does not reference any of the sexual misconduct claims, nor indicate an intent to litigate. FAC ¶¶ 379, 489, 502. USF thus did not have timely notice of John Does 4-12's claims.

Additionally, there would be clear prejudice to USF if John Does 4-12's claims were to

proceed. Although plaintiffs claim that it was "USF's own decision not to investigate the coaches' misconduct in real-time in the face of complaints . . ." (Opp. at 19), by not timely bringing their claims, plaintiffs deprived USF of the ability to meaningfully investigate these claims and identify sufficient factual information to defend itself on the merits. The challenge of investigating these claims years or decades later is significant.

Third, plaintiffs do not satisfy the element requiring reasonable and good faith conduct. Although plaintiffs' conduct here may be in good faith, it is not reasonable. *See Saint Francis Mem'l Hosp.*, 9 Cal. 5th at 729 (analysis of reasonableness focuses on whether a party's actions were fair, proper, and sensible in light of the circumstances). Based on plaintiffs' own allegations, John Does 4-12 perceived the alleged conduct as wrongful at the time it occurred and subsequently transferred or quit the USF baseball team as a result. It would therefore be unfair and improper to allow them to pursue their claims now, when they had an opportunity to act and chose not to.

Relying on *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 371 (2003), plaintiffs argue the standard for equitable tolling "requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the . . . limitations statute." Opp. at 17-18. But the California Supreme Court in *Saint Francis* clarified the specific issues a court must address when conducting this balancing test. 9 Cal. 5th at 724-25 ("These requirements are designed to balance the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the operative limitations statute."). Replacing this specific test with a generalized balancing test would disregard the California Supreme Court's ruling in *Saint Francis* that addressed this very issue.

Plaintiffs' reliance on *Aldrich v. National Collegiate Athletic Association*, 484 F. Supp. 3d 779 (N.D. Cal. 2020) ("*Rembao*") and *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) do not support a different outcome. In *Rembao*, the district court used the old balancing test from *Lantzy* rather than the three-part balancing test in *Saint Francis*. 484 F. Supp. 3d at 799-800. Additionally, the district court in *Rembao* based its decision on the high degree of unjust conduct on the part of the university, including that the university had conducted a full investigation of the allegations, where it allegedly badgered the complainants to lead them to believe the defendant had done

nothing wrong. *Id.* at 800. In contrast, plaintiffs' allegations here are limited to the university's supposed failure to respond, although plaintiffs fail to even allege there were ever any reports of sexual harassment that the university could have responded to. Similarly, the "wrongful conduct" in *Stoll v. Runyon*, where the plaintiff was raped and abused by supervisors and coworkers and suffered psychological damage that prevented her from being able to communicate with her lawyer, goes far beyond anything Does 4-12 allege here. *Stoll v. Runyon*, 165 F.3d 1238, 1242-43 (9th Cir. 1999).

   iii.  <u>The doctrine of equitable estoppel would be misapplied to USF's conduct</u>

  The doctrine of equitable estoppel also does not toll the statute of limitations because plaintiffs fail to adequately allege that USF engaged in conduct preventing John Does 4-12 from filing suit. Equitable estoppel has four elements under California law: "(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1096 (9th Cir. 2021); *see also Machavia, Inc. v. Cnty. of Los Angeles*, 19 Cal. App. 5th 1050, 1055 (2017) ("Application of equitable estoppel against the assertion of a limitations defense typically arises through some misleading affirmative conduct on the part of a defendant.").

  Plaintiffs ask the Court to leap to the speculative conclusion that USF's alleged failure to respond to a letter sent on behalf of John Doe 6 in May 2014 (which did not even allege sexual harassment) shows the university intentionally ignored plaintiffs' complaints in an effort to deter them from filing suit. *See* Opp. at 21; FAC ¶¶ 456-57. But plaintiffs never articulate *how* ignoring a letter would mislead John Does 4-12 to each "believe that their complaints were isolated, not actionable, and not a systemic problem." FAC ¶ 457. Nor do they explain how this allegation bears on the timeliness of filing suit. *See Doe v. Marten*, 49 Cal. App. 5th 1022, 1028 (2020) ("The requisite act or omission must involve a misrepresentation or nondisclosure of a material fact bearing on the necessity of bringing a *timely* suit.") (emphasis added). This allegation and the conclusion plaintiffs desire to be drawn from it are simply too attenuated to bridge that logical gap.

Plaintiffs cite *Langston v. Mid-Am. Intercollegiate Ath. Ass'n*, 448 F. Supp. 3d 938 (N.D. Ill. 2020) and *Wisniewski v. Diocese of Belleville*, 406 Ill. App. 3d 1119 (Ill. App. 2011) for the proposition that a defendant's silence or concealment of facts may give rise to estoppel, but those cases make clear that this only applies when a defendant has a legal duty to speak. Additionally, the duty to speak in those cases was particularly unique to their facts. In *Langston*, plaintiffs argued that the defendant athletic conferences possessed a duty to speak about head injuries in football because the student-athletes had agreed to be bound by rules and regulations that were promulgated and implemented to fulfill the NCAA constitution's goal of ensuring collegiate sports are conducted in a manner to protect the well-being of student athletes. *Langston*, 448 F. Supp. 3d at 945. Plaintiffs here, in contrast, do not point to any duty voluntarily assumed by USF compelling it to take a particular action under these circumstances. In *Wisniewski*, the duty to speak emanated from the Catholic diocese's "special relationship" with a minor parishioner, with the court explaining that "the relationship between a priest and a parishioner reflects many aspects of a special or fiduciary relationship . . . and it is those aspects of the relationship that are relevant to the application of the fraudulent concealment statute . . . ." 406 Ill. App. 3d at 1160. Here, plaintiffs are unable to cite any case where a court has held that a university has a duty to speak in a case analogous to this. *See Ranger Pipelines, Inc. v. Lexington Ins. Co*., 609 F. App'x 943, 944 (9th Cir. 2015) ("[A]lthough an estoppel may arise from silence where there is a duty to speak, the FAC does not contain allegations establishing that [Defendant] had an affirmative duty to inform [Plaintiff] of the appropriate time limits.") (internal quotation marks omitted).

Nor do plaintiffs adequately allege that a fiduciary relationship was created between them and USF by virtue of their participation on a collegiate baseball team. Opp. at 22. Plaintiffs attempt to manufacture a fiduciary relationship by simply alleging one exists, but this is contrary to clear authority. *See Fowler v. Univ. of Phoenix, Inc*., 2019 WL 1746576, at *14 (S.D. Cal. Apr. 18, 2019), aff'd, 817 F. App'x 442 (9th Cir. 2020) ("[T]he normal relationship between a student and the university and its agents is contractual. . . . The mere placing of a trust in another person does not create a fiduciary relationship.") (internal quotation marks omitted); *Ernest v. Univ. of Phoenix*, 2010 WL 11508435, at *5 (S.D. Cal. July 27, 2010) ("The allegation that universities . . . have a

1   fiduciary relationship to students because they extend guidance in shaping careers and provide

2   direction to students does not give rise to a fiduciary duty.").

3           iv.     <u>The alleged power imbalance does not affect the tolling analysis</u>

4           Failing to meet the strict requirements of the four exceptions to the statute of limitations

5   that they cite, plaintiffs ask the Court to manufacture a new exception based on the concept of a

6   power imbalance. Plaintiffs cite dicta from the California Court of Appeals in *Mark K. v. Roman*

7   *Catholic Archbishop*, stating that "courts have relied on the nature of the relationship between

8   defendant and plaintiff to explain application of the delayed accrual rule." 67 Cal. App. 4th 603,

9   611 (1998). However, plaintiffs notably omit the sentence immediately following this quoted

10  language, which clarifies: "The rule is generally applicable to *confidential or fiduciary*

11  *relationships*." *Id.* (emphasis added). Given that no confidential or fiduciary relationship exists

12  between plaintiffs and USF (*see Fowler*, 2019 WL 1746576, at *14; *Ernest*, 2010 WL 11508435,

13  at *5), this argument is unavailing.

14          Plaintiffs further contend that equitable principles counsel in favor of tolling due to

15  plaintiffs' age at the time of the alleged misconduct, citing California Code of Civil Procedure §

16  340.16. However, this statute extends the limitations period for victims of *sexual assault*, which

17  the statute defines as: sexual battery; rape; spousal rape; sodomy; and oral copulation. Cal. Penal

18  Code §§ 243.4, 261, 262, 264.1, 286, 287, 289. No allegations related to these crimes are made in

19  the FAC. Additionally, while CCP § 340.16 includes additional language extending the statute of

20  limitations in the matter involving UCLA's medical clinic, plaintiffs make no argument that the

21  California legislature intended to extend the statute of limitations to universities more broadly, and

22  there is no evidence to support such an argument.  Plaintiffs' allegations are factually distinct from

23  cases related to sexual misconduct involving youthful individuals, and the statutes and case law

24  attendant to those crimes are inapplicable here.

25          **B.     Plaintiffs Fail to Adequately Allege Their Title IX Claims**

26

27              i.     <u>Plaintiffs fail to allege discrimination "based on sex"</u>

28          Plaintiffs failure to allege a nexus between their sex and the conduct they were allegedly

subjected to is fatal to their discrimination claim. Title IX's "based on sex" language has the same meaning as Title VII's "because of sex." *See Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) (The Ninth Circuit "construes Title IX's protections consistently with those of Title VII."). In the context of Title VII, the U.S. Supreme Court construed "the ordinary meaning of 'because of' [as] 'by reason of' or 'on account of.'" *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1739 (2020). The "because of test incorporates the simple and traditional standard of but-for causation." *Id.* (internal quotation marks omitted). Furthermore, "[t]o 'discriminate against' a person, then, would seem to mean treating that individual worse than others who are similarly situated." *Id.* at 1740. Taken together, this requires plaintiffs to allege that they were treated worse than a similarly situated person and, but-for being male, that treatment would not have occurred.

Although plaintiffs argue the Coach Defendants used offensive, sexual language and engaged in inappropriate conduct, they fail to allege that such language was directed at plaintiffs simply "because of" their sex.  *See City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978) (applying the "simple test of whether the evidence shows treatment of a person in a manner which but for that person's sex would be different") (internal quotation marks omitted). While plaintiffs cite to numerous allegations in which the Coach Defendants used vulgar and offensive terms with a sexual connotation, none of these allegations contend those statements were made because the recipient was male. *See* FAC ¶¶ 154, 183-84, 216, 257, 303, 314, 317-18, 371, 434, 480, 484-85. Without directly connecting the motivation for these acts to the sex of the targeted individual, these allegations are insufficient to bring a sex discrimination claim under Title IX. Additionally, while plaintiffs' opposition brief characterizes this conduct as "gender-based bullying" or "sex stereotyping (Opp. at 25), the FAC never alleges that plaintiffs were subject to harassment because they failed to conform to gender stereotypes related to men. *See Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (Title VII applies where female employee was denied promotion because she failed to conform to certain gender stereotypes related to women).

Courts have repeatedly rejected the argument that defendants engaged in sex discrimination simply because they used crude language or referenced sexuality. In *Oncale v. Sundowner Offshore Servs., Inc.*, the Supreme Court reiterated that workplace harassment is not

"automatically discrimination because of sex merely because the words used have sexual content or connotations" and emphasized the inquiry "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." 523 U.S. 75, 80-81 (1998). Plaintiffs also do not claim that the abusive treatment they allegedly suffered was due to any perceived shortcoming in their conformance to male stereotypes. *See Nichols v. Azteca Rest. Enters., Inc.* 256 F.3d 864, 874 (9th Cir. 2001) (plaintiff was subjected to "vulgar name-calling . . . cast in female terms" because his co-workers perceived him as effeminate and he did not conform to their stereotype of a man). Absent a clear nexus between plaintiffs' sex and the discrimination they allegedly suffered, plaintiffs' Title IX claims fail.

> ii.     Plaintiffs do not allege facts demonstrating that USF had actual knowledge of their claims or that USF acted with deliberate indifference

Absent a discriminatory policy or custom, which plaintiffs fail to allege, an institution is only liable for sexual harassment by an employee when it (1) had actual knowledge of the harassment and (2) responded to that knowledge with deliberate indifference. *See Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 290 (1998) (stating that the actual notice and deliberate indifference requirements are restricted to those cases "that do not involve [an] official policy of the [funding recipient]"); *Sherman v. Regents of Univ. of California*, 2022 WL 1137090, at *10 (N.D. Cal. Apr. 18, 2022). The actual knowledge requirement is satisfied where "appropriate official possessed *enough* knowledge of the harassment that it reasonably could have responded with remedial measures to address *the kind of harassment upon which plaintiff's legal claim is based*." *S.G. v. San Francisco Unified Sch. Dist.*, 2018 WL 1876875, at *5 (N.D. Cal. Apr. 19, 2018) (emphasis added). Constructive knowledge is insufficient to satisfy this element. *Id.*; *see also Teran v. Hagopian*, 2009 WL 900743, at *8 (E.D. Cal. Mar. 31, 2009) (dismissing Title IX claim for failure to allege facts demonstrating that prior report was sufficient to put school on notice of sexual abuse).

Plaintiffs' examples for communications that supposedly provided actual notice, which occurred over roughly an eight-year period between 2013 and 2021, fail to establish that USF had actual knowledge of the alleged harassment in this litigation. In two of plaintiffs' cited examples,

they allege attempts were made to contact USF, but fail to allege the information was ever received by an appropriate official. *See* FAC ¶ 491 (a meeting was requested but is not alleged to have occurred); FAC ¶¶ 212-14, 503-04 (voicemails were left for the current Athletic Director but went unanswered). Similarly, the allegation regarding the meeting with the former Athletic Director only states that John Doe 8's father was "concerned about his son's treatment." FAC ¶ 502. It does not allege that USF was ever told about concerns involving sexual harassment. And while the May 2014 letter contains a paragraph titled "Hostile Environment," a close reading of this letter shows it refers to "harassment" in the broader sense, and never mentions sexual harassment or sexual misconduct. *See* FAC ¶¶ 10; 145-47, 379-80, 456, 488-90. Even if these allegations included facts clearly indicating that USF was informed of specific instances of sexual harassment, four examples over an eight-year period is insufficient to conclude that USF had actual knowledge sufficient to support a Title IX claim against USF.

Plaintiffs' remaining examples fail to demonstrate that USF acted with deliberate indifference. Plaintiffs rely on a December 2021 phone conversation between John Doe 1's mother and the Athletic Director, in which John Doe 1's mother was allegedly told the Title IX office was alerted to issues on the baseball team (FAC ¶ 222), and a meeting between John Doe 2 and the Athletic Director and Assistant Athletic Director at the end of the fall 2021 (which also fails to allege the specific information communicated in the meeting). FAC ¶¶ 244-45. USF then took swift measures to end the harassment by terminating the Coach Defendants shortly after these meetings allegedly took place (FAC ¶¶ 52-53). Given that they allege the university responded within a period of weeks or months after learning about the alleged sexual harassment on the baseball team, plaintiffs cannot claim USF's response was unreasonable. *See Lilah R. ex rel. Elena A. v. Smith*, 2011 WL 2976805, at *5 (N.D. Cal. July 22, 2011) (A response is deliberately indifferent only where it is "clearly unreasonable in light of the known circumstances.") (internal quotation marks omitted); *see id.* ("If an institution takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment.") (internal quotation marks omitted).

Nor can plaintiffs rely on Coach Giarratano as an "appropriate official" for purposes of this

analysis. *See Gebser*, 524 U.S. at 291 ("Where . . . liability rests on actual notice principles, however, the knowledge of the wrongdoer himself is not pertinent to the analysis."). Plaintiffs have named Coach Giarratano as a defendant in this action and allege that he perpetrated and participated in the conduct at issue. Therefore, any "knowledge" he may possess regarding the alleged wrongful conduct is irrelevant to the analysis of whether USF had actual knowledge. *See also Salazar v. S. San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 277 (5th Cir. 2017) (holding school district was not liable for Title IX violation because wrongdoer's knowledge of his own conduct was not pertinent, citing *Gebser*); *Doe II v. Savannah-Chatham Cnty. Pub. Sch. Sys.*, 2022 WL 3041276, at *4, n. 4 (11th Cir. Aug. 2, 2022) (rejecting argument that school district acted with deliberate indifference where assistant principal had notice of his own misconduct and failed to remedy the situation, citing *Gebser*); *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 127 (3d Cir. 2020) (". . . *Gebser*'s appropriate-person standard excludes perpetrators who had authority to take corrective measures.")

### iii.   Plaintiffs' official policy claim is not supported by the FAC

Recognizing their allegations are insufficient to satisfy the actual knowledge and deliberate indifference requirements, plaintiffs now claim for the first time that "USF's failure to remedy the Coach Defendants' misconduct and failure to even respond to complaints amounted to an official policy of deliberate indifference to *sexual abuse* . . . ." Opp. at 26 (emphasis added).

To maintain this claim, plaintiffs must plausibly allege that:

> a 1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school.

*Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1112 (9th Cir. 2020).[1] Plaintiffs have

---

[1] Other Circuits analyzing whether an institution maintains such a policy of deliberate indifference have looked to civil rights cases alleging municipal liability under 42 U.S.C. § 1983 for guidance. *See Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1176 (10th Cir. 2007). Under this rubric, a plaintiff needs to allege a "persistent, widespread practice that is so common and well settled as to constitute a custom that fairly represents the [district] policy." *Harvey v. Carthage ISD*, 2019 WL 1083782, at *4 (E.D. Tex. Mar. 7, 2019) (internal quotation marks omitted). A

not met this burden, for many reasons. First, the FAC fails to allege that plaintiffs ever clearly reported sexual harassment to USF. These allegations are devoid of the factual information necessary to claim that USF maintained a policy of deliberate indifference to sexual abuse. *See P.S. & through Stephenson v. Brownsboro Indep. Sch. Dist*., 2022 WL 3697965, at *5 (E.D. Tex. Aug. 25, 2022) ("Plaintiffs assert conclusory statements that the district had knowledge, but the amended complaint is missing facts tending to show that [the district] ignored reports of sexual assault or harassment within the athletics department.") (internal quotation marks omitted). As noted above, the only allegation that could be construed as a "report" to USF is the May 2014 letter. However, the letter merely contains a paragraph titled "Hostile Environment" and never references sexual harassment, misconduct, or abuse. *See* MTD at 16; FAC ¶¶ 379, 489, 502. Notwithstanding the fact that this single example would be insufficient to establish a pattern or practice, it is not indicative of any policy regarding sexual abuse.

iv.   <u>Plaintiffs do not allege they engaged in "protected activity" as required for their retaliation claim</u>

Protected activity is clearly present when a plaintiff complains about the institution's Title IX compliance, *see Ollier v. Sweetwater Union High Sch. Dist*., 768 F.3d 843, 867-69 (9th Cir. 2014), and also when an individual makes generalized complaints such as that the institution's conduct shows "bias in favor of male[s,]" "a relative lack of support" for women, or that the time and resources of a supervisor are "relatively inaccessible" to women as compared to men. *See Emeldi*, 698 F.3d at 725. While Title IX imposes no "magic words" requirement on a plaintiff seeking to exercise her rights under Title IX, to engage in protected activity, a plaintiff must "say something to indicate that gender [is] an issue." *See Burch v. Regents of Univ. of California*, 433 F.Supp.2d 1110, 1127 (E.D. Cal. 2006).

Despite plaintiffs' assertions to the contrary, merely making complaints about their coaches is insufficient to establish that plaintiffs engaged in protected activity when the complaints do not indicate that gender is an issue. *See* FAC ¶¶ 212, 239, 379, 489, 502. Plaintiffs only allege they complained of "abuse" and that their "failure to participate in the hostile, sexualized environment

"handful of instances" is not sufficient to establish a pervasive custom or practice. *Id.*

13

that the Coach Defendants built and USF tolerated was viewed as and akin to protest and opposition to Defendants' misconduct[.]" Opp. at 29. But plaintiffs "failure to participate" alone is not the same as protected activity, and also does not support a Title IX retaliation claim.

### C.    Plaintiffs Fail to Adequately Allege Their California Statutory Claims

   i.    <u>Plaintiffs fail to adequately allege foreseeability and therefore their negligence claims (Counts 3, 4, 9) must be dismissed</u>

Educational institutions are liable "for the negligence of supervisory or administrative personnel who knew, or should have known of the foreseeable risk to students of sexual abuse by an employee and nevertheless hired, retained, and/or inadequately supervised that employee." *Ratcliff v. The Roman Cath. Archbishop of Los Angeles*, 79 Cal. App. 5th 982, 1007 (2022), as modified (June 15, 2022), review denied (Aug. 10, 2022). "[A]s to foreseeability, we have explained that the court's task in determining duty is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed." *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 772, 248 P.3d 1170, 1175 (2011) (internal quotation marks omitted).

Plaintiffs' allegations are insufficient to establish foreseeability because they rely on generalized allegations regarding the risks faced by student-athletes (FAC ¶¶ 54-67), rather than allegations specific to USF. Furthermore, it is unreasonable to extrapolate from the May 2014 letter sent by John Doe 6 (FAC ¶¶ 379, 489, 502) that USF could foresee the full scope of the Coach Defendants' alleged behavior, as it merely reflects the perceived experience of one student-athlete at discrete point in time. To draw any further conclusions would be too speculative. The same is true of the allegations regarding high transfer rates (FAC ¶¶ 198-203), as it is implausible to assume that each of these student-athletes transferred for the same alleged reasons as Plaintiffs, particularly when a significantly greater number of student-athletes remained on the team.

Moreover, plaintiffs' cited cases are clearly distinguishable to the facts here. In *Regents of Univ. of California v. Superior Ct.*, the court stated, "the question here is not whether UCLA could predict that Damon Thompson would stab Katherine Rosen in the chemistry lab. It is whether a

reasonable university could foresee that its negligent failure to control a potentially violent student, or to warn students who were foreseeable targets of his ire, could result in harm to one of those students." 4 Cal. 5th 607, 629 (2018). The foreseeability of that outcome is therefore more apparent than what plaintiffs allege here, as plaintiffs only rely on a single complaint from 2014 and suggest the only inference from a high transfer rate is problems with the coach. Similarly, in *Ratcliff v. The Roman Cath. Archbishop of Los Angeles*, the information available to the archdiocese regarding the risk posed by the priest and the underlying conduct at issue was far more extensive than that which plaintiffs allege was provided to USF. 79 Cal. App. 5th 982, 1009 (2022).

### ii. Plaintiffs fail to state a claim under California Educational Code 66270

Plaintiffs agree that this claim and the Title IX claim overlap. Thus, resolution of the Title IX claim is dispositive this claim. *See Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 935 (C.D. Cal. 2015) ("Plaintiffs' claims . . . under the California Educational Code are governed by the same elements as a federal cause of action under Title IX.").

### iii. Plaintiffs cannot bring claim under California Educational Code 66281.5

Although there is scant authority discussing this section of the Education Code, it has been described as providing "the affirmative steps that schools must take to provide notification of the prohibition against sexual harassment and the available remedies." *Aguilar v. Corral*, No. CIVS 07-1601 LKK/KJM, 2007 WL 2947557, at *4 (E.D. Cal. Oct. 9, 2007). Although plaintiffs contend they allege that "USF failed to adopt and implement appropriate policies and procedures to prevent, or properly respond to the abuse Plaintiffs suffered" (Opp. at 30), the FAC never actually makes any allegations about USF's policies. *See* FAC ¶ 143 (discussing USF's response to allegations in Sports Illustrated article regarding the *USF soccer team*) (emphasis added); FAC ¶ 496 (reciting the scope of injunctive relief plaintiffs seek). Furthermore, plaintiffs cite no authority for the proposition that the "Court may further infer that the USF did not adhere to all parts of Cal. Gov. Code § 66281.5(b)-(g) because, for example, players were unsure whether the abuse was in violation of the law, but all agreed it was not normal." (Opp. at 30). Thus, the Court should not credit this unsupported conclusion.

iv.     Plaintiffs' claims for gross negligence (Count 7) and ordinary negligence (Count 8) must be dismissed

"[T]o set forth a claim for gross negligence the plaintiff must allege extreme conduct on the part of the defendant. Such conduct involves either a want of even scant care or an extreme departure from the ordinary standard of conduct." *Leakas v. Monterey Bay Mil. Hous., LLC*, No. 22-CV-01422-VKD, 2022 WL 2161608, at *7 (N.D. Cal. June 15, 2022). Plaintiffs' allegations are insufficient to establish that USF's conduct constitutes an extreme departure from the ordinary standard of care or that USF's conduct was a "want of even scant care."   Furthermore, even assuming plaintiffs' allegations are sufficient, they may only pursue a claim for gross negligence "in the alternative to their separate claim for negligence, as they cannot recover under both theories." *Leakas v. Monterey Bay Mil. Hous., LLC*, No. 22-CV-01422-VKD, 2022 WL 2161608, at *8 (N.D. Cal. June 15, 2022).

Additionally, USF cannot be held liable for the Coach Defendants' negligence under a theory of respondeat superior because, as California courts have emphasized, "sexual misconduct falls outside the course and scope of employment and should not be imputed to the employer." *Shamoun v. Republic of Iraq*, 441 F. Supp. 3d 976, 993 (S.D. Cal. 2020) (collecting cases).

v.     Plaintiffs Fail to State a Claim for intentional infliction of emotional distress

A claim for intentional infliction of emotional distress requires (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (citing *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009)). For conduct to be outrageous, "[t]he conduct must be so extreme as to exceed the bounds of what is "usually tolerated in civilized community." *Hughes*, 46 Cal.4th at 1050.

The conduct alleged against USF falls far short. Similar to the plaintiff in *Hughes*, plaintiffs here allege that sexually explicit, offensive, and threatening comments were made to them. 46 Cal.4th at 1040. In upholding summary judgment against plaintiff, the court in *Hughes* concluded

that allegations that plaintiff "suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" as a result of the defendant's conduct "*do not* comprise emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id.* at 1051 (cleaned up) (emphasis added).

Plaintiffs also assert that USF engaged in "outrageous conduct" by allegedly failing to investigate and retaining the Coach Defendants. Opp. at 45. This assertion is too conclusory to be credited, particularly when, according to the facts alleged in the FAC, USF investigated and fired the coaches within weeks of when sexual harassment was first clearly reported.

### vi.  Plaintiffs fail to state a claim for negligent infliction of emotional distress

"[T]here is no independent tort of negligent infliction of emotional distress." *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1165 (2021), review denied (Oct. 13, 2021). "The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element. A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Id.* (internal quotation marks and citations omitted). Under California law, a duty to avoid causing emotional distress to a direct victim arises if "assumed by the defendant as a matter of law, or that arises out of a special relationship between the plaintiff and the defendant." *Levy v. Only Cremations for Pets, Inc*., 57 Cal. App. 5th 203, 217 (2020) (internal citations and quotations marks omitted).

Here, USF has not assumed a duty as a matter of law and none arises out of a special relationship with Plaintiffs. While plaintiffs cite *Regents of Univ. of California v. Superior Ct*. for the proposition that a university has a special relationship with the students enrolled in curricular activities, the duty articulated in *Regents* is narrower than plaintiffs contend. *See Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 634 (2018) ("universities owe a duty to protect students *from foreseeable violence* during curricular activities.") (emphasis added); *see also Cleveland v. Taft Union High Sch. Dist*., 76 Cal. App. 5th 776, 799 (2022) (characterizing the duty of care in *Regents* as "duty to take reasonable steps to protect students when it became aware of a foreseeable threat to their safety."); *see also Fowler*, 2019 WL 1746576, at *14

("[T]he normal relationship between a student and the university and its agents is contractual . . . ."); *Ernest*, 2010 WL 11508435, at *5 (finding that universities and university officials do not have a fiduciary duty to students); *Raiser*, 2009 WL 10692054, at *6 (finding university did not owe a fiduciary duty to plaintiff). Accordingly, plaintiffs have failed to establish the requisite duty necessary to recover under a theory of negligent infliction of emotional distress.

vii.    <u>USF did not ratify the Coach Defendants conduct</u>

"Ratification is an agency doctrine. Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him." *City of Brentwood v. Department of Finance*, 54 Cal.App.5th 418, 436 (2020) (internal quotation marks omitted). "As the leading treatise on California law explains, '[a]n agent, at the time he or she does an act, may be without authority, actual or ostensible; but the act may be rendered valid and binding on the principal, as of the time the unauthorized act was done, if the principal ratifies and thus gives effect to it.'" *LeBrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 208–09, 283 Cal. Rptr. 3d 260, 268 (2021) (quoting 3 Witkin, Summary of Cal. Law (11th ed. 2017) Agency and Employment, § 149, pp. 203–204). Here, plaintiffs fail to allege a cause of action under a theory of ratification, as plaintiffs' allegations are insufficient to establish that USF possessed knowledge of the scope of plaintiffs' claims in the complaint. Without this knowledge, USF could not, and did not, give effect to the Coach Defendants' conduct, and thus could not have ratified it. Accordingly, this claim must fail as a matter of law.

**III.    CONCLUSION**

For the foregoing reasons, USF respectfully requests that the Court grant the Motion to Dismiss in its entirety.

Respectfully submitted,

---

18

DEFENDANTS USF'S REPLY IN SUPPORT OF MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STEPTOE & JOHNSON LLP**

*/s/ Jonathan M. Baum*
Jonathan M. Baum (SBN 303469)
*jbaum@steptoe.com*
Sonja Arndt (SBN 322728)
*sarndtjohnson@steptoe.com*
Reid W. Gaa (SBN 330141)
*rgaa@steptoe.com*
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Tel: 415.365.6700
Fax: 415.365.6699
E-mail:

Counsel for Defendant
UNIVERSITY OF SAN FRANCISCO

DEFENDANTS USF'S REPLY IN SUPPORT OF MOTION TO DISMISS