1    Jonathan M. Baum (SBN 303469)
     *jbaum@steptoe.com*
2    **STEPTOE & JOHNSON LLP**
3    One Market Plaza
     Steuart Tower, Suite 1070
4    San Francisco, California 94105
     Telephone: (415) 365-6700 / Facsimile: (415) 365-6699
5
6    Geoffrey L. Warner (SBN 305647)
     *gwarner@steptoe.com*
7    **STEPTOE & JOHNSON LLP**
8    633 West Fifth Street, Suite 1900
     Los Angeles, California 90071
9    Telephone: (213) 439-9400 / Facsimile: (213) 439-9559

10   Attorneys for Defendant
     UNIVERSITY OF SAN FRANCISCO
11

12              UNITED STATES DISTRICT COURT

13      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

14

15   JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,      Case No. 3:22-cv-01559-LB
16   JOHN DOE 4, JOHN DOE 5, JOHN DOE 6,
     JOHN DOE 7, JOHN DOE 8, JOHN DOE 9,      **DEFENDANT UNIVERSITY OF SAN**
17   JOHN DOE 10, JOHN DOE 11, JOHN DOE       **FRANCISCO'S MOTION TO DISMISS**
     12, JOHN DOE 13, and JOHN DOE 14         **AND MOTION TO STRIKE SECOND**
18   individually and on behalf of all others **AMENDED COMPLAINT [FED R. CIV. P.**
     similarly situated,                       **12(b)(6); 12(f)]**
19
20              Plaintiffs,
21                                            Hearing:      May 18, 2023
        vs.                                   Time:         9:30 a.m.
22                                            Courtroom:    B
     NATIONAL COLLEGIATE ATHLETIC
23   ASSOCIATION, THE UNIVERSITY OF           Judge:  Hon. Laurel Beeler
     SAN FRANCISCO, ANTHONY N. (AKA           Trial Date:  None Set
24   NINO) GIARRATANO, and TROY
     NAKAMURA,
25
26              Defendants.
27

28

1

## TABLE OF CONTENTS

2                                                                                             **PAGE**

3

4

I.    INTRODUCTION ................................................................................................. 1

5

6
II.   PROCEDURAL BACKGOUND .......................................................................... 3

7
III.  ARGUMENT: MOTION TO DISMISS (RULE 12(B)(6)).................................... 4

8
      A.  *ALL CLAIMS OF DOES 4-14 ARE TIME BARRED.* ................................. 4

9
      B.  *COUNT II FOR TITLE IX RETALIATION MUST BE DISMISSED.*............... 12

10
      C.  *COUNT VI FOR VIOLATION OF CAL. EDUC. CODE § 66281.5 MUST BE DISMISSED BECAUSE*
11        *PLAINTIFFS DID NOT EXHAUST ADMINISTRATIVE REMEDIES.* ............................................. 14

12
      D.  *PLAINTIFFS CONTRACT CLAIMS MUST BE DISMISSED WITHOUT LEAVE TO AMEND.* ........... 15

13
          1.  *PLAINTIFFS DO NOT ALLEGE BREACH OF AN EXPRESS CONTRACT (COUNT XIII).* ............. 15

14
          2.  *PLAINTIFFS DO NOT ALLEGE BREACH OF ANY ORAL CONTRACT (COUNT XIV).* ................ 17

15
          3.  *PLAINTIFFS' THIRD-PARTY BENEFICIARY CLAIMS FAILS AT LAW (COUNT XV).* .................. 18

16
IV.   ARGUMENT: MOTION TO STRIKE (FRCP 12(F)) ......................................... 22

17
      A.  *PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF MUST BE STRICKEN.*................................. 22

18
      B.  *SAC PARAGRAPHS 61–66 REGARDING CATHOLIC ARCHDIOCESES MUST BE STRICKEN.* ..... 24

19
V.    CONCLUSION ................................................................................................... 24

20

21

22

23

24

25

26

27

28

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Acuna v. Regents of Univ. of Cal.*,
  56 Cal.App.4th 639 (1997) ..........................................................................................10

*Aldrich v. Nat'l Collegiate Athletic Ass'n*,
  565 F. Supp. 3d 1094 (S.D. Ind. 2021) .....................................................................8, 23

*B.C. v. Plumas Unified Sch. Dist.*,
  192 F.3d 1260 (9th Cir. 1999) ....................................................................................23

*Baas v. Dollar Tree Stores, Inc.*,
  No. C 07-03108 JSW, 2009 WL 1765759 (N.D. Cal. June 18, 2009)......................23

*Binder v. Aetna Life Ins. Co.*,
  75 Cal.App.4th 832 (1999) ..........................................................................................17

*Bloom v. Nat'l Collegiate Athletic Ass'n*,
  93 P.3d 621 (Colo. App. 2004) ....................................................................................21

*Bottoni v. Sallie Mae, Inc.*,
  No. C 10-03602 LB, 2011 WL 3678878 (N.D. Cal. Aug. 22, 2011) ......................22

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)........................................................................................................23

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ....................................................................................................22

*Collier v. City of Pasadena*,
  142 Cal.App.3d 917 (1983) ........................................................................................11

*Crawford v. Kaiser Found. Health Plan*,
  395 F. Supp. 3d 1279 (N.D. Cal. 2019) ................................................................22, 24

*Daviton v. Columbia/HCA Healthcare Corp.*,
  241 F.3d 1131 (9th Cir. 2001) ....................................................................................10

*Deutsch v. Turner Corp.*,
  324 F.3d 692 (9th Cir. 2003) ........................................................................................5

*Doe v. Marten*,
  49 Cal.App.5th 1022 (2020) ........................................................................................12

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION
TO STRIKE SECOND AMENDED COMPLAINT
CASE NO. 3:22-CV-01559-LB**

*Doe v. Regents of Univ. of Cal.*,
   No. 21-CV-09605-LB, 2022 WL 833627 (N.D. Cal. Mar. 20, 2022) ...................................24

*Doe v. Univ. of S. Cal.*,
   No. 2:18-cv-09530-AVW-GJS, 2019 WL 4229750 (C.D. Cal. July 9, 2019)..................10, 12

*English v. Nat'l Collegiate Athletic Ass'n*,
   439 So.2d 1218 (La. Ct. App. 1983).........................................................................................21

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal.4th 797 (2005) ...............................................................................................................5

*Gardiner v. Burket*,
   3 Cal.App.2d 666 (1935) ..........................................................................................................18

*Grant House v. Nat'l Collegiate Athletic Ass'n*,
   545 F. Supp. 3d 804 (N.D. Cal. 2021) ......................................................................................23

*Guerrero v. Gates*,
   442 F.3d 697 (9th Cir. 2006) ....................................................................................................10

*Hairston v. Pacific 10 Conference*,
   101 F.3d 1315 (9th Cir. 1996), *as amended* (Dec. 19, 1996) ............................................19, 20

*Hall v. Nat'l Collegiate Athletic Ass'n*,
   985 F. Supp. 782 (N.D. Ill. 1997) .............................................................................................19

*Harper v. Wausau Ins Co.*,
   56 Cal.App.4th 1079 (1997) .....................................................................................................19

*Hexcel Corp. v. Ineos Polymers, Inc.*,
   681 F.3d 1055 (9th Cir. 2012) ....................................................................................................8

*Holmes v. Lerner*,
   74 Cal.App.4th 442 (1999), *as modified* (Sept. 7, 1999) ...................................................16, 21

*Honig v. San Francisco Planning Dep't*,
   127 Cal.App.4th 520 (2005) .....................................................................................................11

*Jolly v. Eli Lilly & Co.*,
   44 Cal.3d 1103 (1988) .............................................................................................................6, 8

*Knelman v. Middlebury Coll.*,
   898 F. Supp. 2d 697 (D. Vt. 2012), *aff'd*, 570 F. App'x 66 (2d Cir. 2014)..............................19

*Lantzy v. Centex Homes*,
   31 Cal.4th 363 (2003) ...............................................................................................................11

iii

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION
TO STRIKE SECOND AMENDED COMPLAINT**
**CASE NO. 3:22-CV-01559-LB**

*Long v. Provide Com., Inc.*,
    245 Cal.App.4th 855 (2016) ...........................................................................15

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................22

*Lukovsky v. City & Cnty. of San Francisco*,
    535 F.3d 1044 (9th Cir. 2008) ....................................................................6, 8

*McCarthy v. Azure*,
    22 F.3d 351 (1st Cir.1994)............................................................................19

*Miller v. Bank of Am., Nat'l Ass'n*,
    858 F. Supp. 2d 1118 (S.D. Cal. 2012).........................................................5

*Nev. Power Co. v. Monsanto Co.*,
    955 F.2d 1304 (9th Cir.1992) .........................................................................5

*Norgart v. Upjohn Co.*,
    21 Cal.4th 383 (1999) .................................................................................5, 7

*Oliver v. Nat'l Collegiate Athletic Ass'n*,
    920 N.E.2d 196 (C.P. Ohio, Erie Cnty. 2008) .............................................21

*Ollier v. Sweetwater Union High Sch. Dist.*,
    768 F.3d 843 (9th Cir. 2014) ........................................................................14

*Rustico v. Intuitive Surgical, Inc.*,
    993 F.3d 1085 (9th Cir. 2021) ......................................................................11

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ........................................................................24

*Santa Maria v. Pac. Bell*,
    202 F.3d 1170 (9th Cir. 2000), *overturned on other grounds by*
    *Socop-Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2001)..............................11

*Sidney-Vinstein v. A.H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983) ........................................................................22

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ........................................................................15

*Stanley v. Trustees of Cal. State Univ.*,
    433 F.3d 1129 (9th Cir. 2006) ........................................................................5

*Susilo v. Wells Fargo Bank, N.A.*,
    796 F. Supp. 2d 1177 (C.D. Cal. 2011) .......................................................22

iv

*Tostevin v. Douglas*,
    160 Cal.App.2d 321 (1958) ...............................................................................18

*Unruh-Haxton v. Regents of Univ. of Cal.*,
    162 Cal.App.4th 343 (2008) ................................................................................5

*Updike v. Multnomah Cnty.*,
    870 F.3d 939 (9th Cir. 2017) .......................................................................22, 23

*Videckis v. Pepperdine Univ.*,
    100 F. Supp. 3d 927 (C.D. Cal. 2015) .................................................................5

*Walsh v. Nev. Dep't of Hum. Res.*,
    471 F.3d 1033 (9th Cir. 2006) ...........................................................................23

*Weston v. Big Sky Conf.*,
    466 F. Supp. 3d 896 (N.D. Ill. 2020) .................................................................21

*White Lighting Co. v. Wolfson*,
    68 Cal.2d 336 (1968) .........................................................................................18

**Statutes**

20 U.S.C. § 1681 *et seq*............................................................................... *passim*

Cal. Code Civ. P. § 335.1 ..........................................................................................5

Cal. Code Civ. P. § 337 ..............................................................................................5

Cal. Code Civ. P. § 339 ..............................................................................................5

Cal. Code Civ. P. § 361 ..............................................................................................5

Cal. Educ. Code § 66250, *et seq.* .............................................................................1

Cal. Educ. Code § 66281.5 .............................................................................. *passim*

Cal. Educ. Code §§ 66290-66293 .............................................................................14

Cal. Educ. Code § 66292.3 .........................................................................................2

Cal. Educ. Code § 66292.3(d) ...................................................................................14

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 4

Fed. R. Civ. P. 12(f) ..............................................................................................1, 22

v

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT**
**CASE NO. 3:22-CV-01559-LB**

1

**Other Authorities**

2

NCAA Const., Art.1, § 1.2(a) ............................................................................20

3

NCAA Const., Art.1, § 1.2(b) ............................................................................20

4

NCAA Const., Art. 2, § 2.2 (Revised: 11/21/05) ...............................................20

5

NCAA Const., Art. 2, § 2.2.3 (Adopted: 1/10/95) .............................................20

6

NCAA Const., Art. 2, § 2.2.4 (Adopted: 1/10/95) .............................................20

7

NCAA Const., Art. 2, § 2.8.2 ............................................................................21

8

U.S. Const. art. III ...................................................................................1, 3, 22

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT**
**CASE NO. 3:22-CV-01559-LB**

**PLEASE TAKE NOTICE** that on May 18, 2023, at 9:30 a.m. before the Honorable Laurel Beeler in Courtroom B, 15th Floor, 50 Golden Gate Ave., San Francisco, CA 94102, Defendant University of San Francisco ("USF") will move pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), for an order dismissing: (1) all Counts against it brought by Plaintiffs Does 4–14 in their Second Amended Class Action Complaint (ECF No. 93) as barred by the applicable statutes of limitations ("Complaint" or "SAC"), (2) Count II for retaliation in violation of Title IX, 20 U.S.C. § 1681 *et seq*.; (3) Count VI for sex discrimination in violation of California Education Code section 66250, *et seq*.; (4) Count XIII for breach of contract; (5) Count XIV for breach of oral contract; and (6) Count XV for breach of contract as third-party beneficiaries. USF will also move, pursuant to FRCP 12(f), to strike Plaintiffs' request for injunctive relief (SAC ¶¶ 12, 536(h), 538, 559, 689, Prayer For Relief (C)), in addition to Paragraphs 61–66 of the SAC. This Motion is based on this Notice, the following memorandum of Points and Authorities, all papers on file in this matter, and any authority or argument presented in reply and at any hearing.

## STATEMENT OF RELIEF SOUGHT

USF seeks an order under FRCP 12(b)(6) dismissing all claims brought by Does 4–14 as barred by the applicable statute of limitations; for an order under FRCP 12(b)(6) dismissing Counts II, VI, XIII, XIV and XV of the SAC for failure to state a claim; and for an order pursuant to FRCP 12(f) striking Plaintiffs request for injunctive relief for lack of Article III standing, and striking Paragraphs 61–66 of the SAC, as "redundant, immaterial, impertinent, or scandalous matter."

## I.   INTRODUCTION

On January 4, 2023, this Court granted, in part, USF's motion to dismiss the First Amended Complaint ("FAC"). (ECF No. 88.) The Court dismissed the claims of Does 4–12 as barred by the statute of limitations, Plaintiffs' Title IX retaliation claim (Count II) for failure to plead that Plaintiffs engaged in "protected activity," and the California Education Code section 66281.5 claim (Count VI) for Plaintiffs' failure to allege any defects in USF's policies or notice procedures. (*Id*. at 31.) The Court provided Plaintiffs leave to amend. (*Id.*)

Plaintiffs filed the SAC on February 8, 2023. Despite a second bite at the apple, the SAC suffers the same defects identified by the Court in its prior January Order. The "new" allegations

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT**
**CASE NO. 3:22-CV-01559-LB**

are just more of the same—each previously-dismissed claim fails again for near-identical defects.

**Statute of Limitations**. The Court dismissed the claims of Does 4–12 as barred by applicable statute of limitations. The Court held Plaintiffs claims were not subject to tolling because "[P]laintiffs knew about the [alleged] misconduct when it occurred" and "[USF] did not conceal critical facts that prevented the plaintiffs from learning the facts underlying their claims: the plaintiffs knew about the conduct and left the team because of it." (ECF No. 88 at 21, 24.) The SAC adds two additional Plaintiffs, Does 13 and 14 (each who left USF by 2018), and nearly 50 paragraphs of allegations directed at addressing the tolling of applicable statutes of limitations. (*See* SAC ¶¶ 483–529.) As demonstrated herein, these "new" allegations concern many of the same events already described previously in the FAC, and further illustrate, as this Court found before, that each Plaintiff knew and appreciated the alleged misconduct when it occurred. Plaintiffs' delay in bringing suit was, at best, caused by a misunderstanding of their legal rights, which is not attributable to USF. Further, the SAC still fails to allege USF concealed any critical facts to establish Plaintiffs claims or otherwise impaired Plaintiffs ability to bring a timely suit. The claims of Does 4–14 are time barred.

**Count II for Title IX Retaliation**. Count II must be dismissed for the same reason the Court previously dismissed it: Plaintiffs still fail to allege they each engaged in protected activity for which they suffered retaliation. None of the new allegations—*i.e.*, those concerning Doe 13's inappropriate touching of a nutritionist or the complaints of Doe 9's parents concerning "abuse"— reflect complaints about discrimination or harassment on the basis of their sex.

**Count VI for Violation of Cal. Educ. Code § 66281.5**. Count VI must be dismissed because Plaintiffs do not allege they exhausted administrative remedies prior to filing suit as required under California's Education Code section 66292.3.

**Additional Contract Claims**. Plaintiffs include three additional contract claims against USF, which are not coincidentally the same raised previously against the NCAA. These claims fail as a matter of law. Count XIII, for breach of express contract, fails because the alleged "contract" (SAC, Ex. B, an NCAA eligibility form) is not a contract. Count XIV, for breach of oral contract, fails as to all Plaintiffs because, among other reasons, the terms of the purported oral agreement

are the same as those incorporated into each player's National Letter of Intent, thus barring the action for oral contract. Moreover, Does 4, 7 and 14 cannot proceed on their claim for breach of oral contract for the additional reason that the SAC fails to allege Plaintiffs were promised any benefits that USF failed to provide. The claims of Does 2, 3, 10, 12 and 13 for breach of oral contract similarly fail because the Statute of Frauds bars those claims. Finally, Count XV, for breach of contract as third-party beneficiaries, fails because Plaintiffs are not intended beneficiaries of the contract they seek to enforce (the NCAA Constitution, Operating Bylaws, and Administrative Bylaws for Division I), nor are the provisions they claim were breached sufficiently definite to be enforced as contractual terms.

All these aforementioned claims should be dismissed without leave to amend.

**Motion to Strike.** Finally, USF moves the Court for an order striking Plaintiffs' request for injunctive relief because Plaintiffs lack Article III standing. Plaintiffs are no longer students at USF and therefore face no risk of further or imminent injury. USF also requests the Court strike the allegations found in SAC Paragraphs 61-66, which concern the sexual misconduct of priests associated with the Catholic Archdioceses that occurred over 40 years ago. These allegations are aimed only to inflame and have absolutely no bearing on the claims at issue.

## II.  PROCEDURAL BACKGOUND

Plaintiffs are fourteen former USF student-athletes who played baseball between 1999 and 2022. (SAC ¶¶ 31–44.) No Plaintiff is enrolled at USF today. (*Id.*) Plaintiffs allege that two former USF baseball Coaches, the Coach Defendants,[1] engaged in conduct that created a sexualized, abusive environment, causing them harm. (*See, e.g.*, *id*. ¶¶ 5–7.) On March 11, 2022, Does 1–3 filed a complaint against the NCAA, USF, and Coach Defendants. (*Id.* ¶ 9.) Plaintiffs filed the FAC on July 15, 2022, adding Does 4–12, who played for USF from 1999 to 2018. (*Id.* ¶ 10.)

On January 4, 2023, this Court issued an order on various motions to dismiss the FAC. (ECF No. 88.) The Court granted USF's respective motion to dismiss, in part, as to:

- All claims alleged by Does 4–12 as barred by the applicable statutes of limitations. The Court found none of the claims were tolled by the discovery rule, fraudulent

---

[1] "Defendant Coaches" or "Coach Defendants" refer to Defendants Anthony N. Giarratano ("Coach G"), and Troy Nakamura ("Coach N").

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION
TO STRIKE SECOND AMENDED COMPLAINT**
**CASE NO. 3:22-CV-01559-LB**

concealment, equitable tolling or equitable estoppel, because "the plaintiffs knew about the [alleged] misconduct when it occurred" and "[USF] did not conceal critical facts that prevented the plaintiffs from learning the facts underlying their claims: the plaintiffs knew about the conduct and left the team because of it." (*Id.* at 21, 24.)

- Count II for retaliation under Title IX (20 U.S.C. § 1681), because Plaintiffs did not allege "protected activity" (*i.e.*, speaking out against sex discrimination) and found "[t]he complaints here were about pervasive abuse and bullying, not . . . sex discrimination" which "are not actionable under Title IX." (*Id.* at 29.)

- Count VI for discrimination under the California Education Code section 66250, *et seq.* (specifically, as alleged under section 66281.5), because the FAC failed to allege "deficiencies in the policy or the notice procedures" of USF. (*Id.* at 30.)

Plaintiffs filed the SAC on February 8, 2023. The SAC adds two Plaintiffs (Does 13 and 14), each who played at USF between 2015 and 2018. (SAC ¶ 10.) The SAC (1) adds a new section concerning tolling of the statute of limitations, which reference many of the events previously pled in the FAC (*id.* ¶¶ 484-529), (2) adds allegations concerning the previously-dismissed Count II and Count VI claims (*id., e.g.*, ¶¶ 564-567, 601-602), and (3) adds three additional contract claims against USF—the same previously alleged against the NCAA (*id.* ¶¶ 657–689.) None of the new allegations justify a different outcome.

## III.   ARGUMENT: MOTION TO DISMISS (Rule 12(b)(6))

### A.   All Claims of Does 4-14 Are Time Barred.

The Court previously dismissed all claims of Does 4–12 as time-barred. (ECF No. 88 at 21-27.) The Court found Plaintiffs' asserted tolling arguments (discovery rule, fraudulent concealment, equitable tolling, and equitable estoppel) "do not suspend the statute of limitations because the plaintiffs ***knew about the misconduct when it occurred***" and "[USF] did not conceal critical facts that prevented the plaintiffs from learning the facts underlying their claims: the plaintiffs knew about the conduct and left the team because of it." (*Id.* at 21, 24 (emphasis added).)

Plaintiffs were given leave to amend to address this deficiency, but failed to do so. The SAC contains no new allegations justifying tolling of any claims alleged by Does 4-12—including the three new contract claims. The claims of Does 13 and 14 are barred for the same reasons.[2]

---

[2] Where federal jurisdiction is premised on diversity, federal courts apply the pertinent state statute

4

1

### 1.    The Claims of Does 4–14 Arose more than Four Years Ago.

Plaintiffs' claims for negligence, intentional infliction of emotional distress, and breach of implied contract are subject to a two-year statute of limitations. Cal. Code Civ. P. § 335.1; *see Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal.App.4th 343, 357 (2008) (applying Section 335.1 to negligent supervision claim); *Miller v. Bank of Am., Nat'l Ass'n*, 858 F. Supp. 2d 1118, 1127 (S.D. Cal. 2012) ("In California, intentional and negligent infliction of emotional distress claims have a two-year statute of limitations."); Cal. Code Civ. P. § 339 (two-year statute of limitations on "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing"). Claims for breach of a written contract are subject to a four-year limitations period. *See* Cal. Code Civ. P. § 337. The statute of limitations period for Title IX is the same as for personal injury actions—two years.[3] Cal. Code Civ. P. §§ 335.1, 361; *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006).

Here, Does 4–14 each attended USF, experienced individualized instances of alleged misconduct, and left the school more than four years before the filing of this SAC.[4] The claims of Does 4–14 are untimely. In recognition of these fatal defects, the SAC argues these claims are saved by the discovery rule, or were tolled through theories of fraudulent concealment, equitable tolling or equitable estoppel. (SAC ¶¶ 483–529.) None of these theories hold merit.

### 2.    The Discovery Rule is Not Applicable.

The statute of limitations starts once a "plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005). A "plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements." *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999). "[I]gnorance of the legal

---

of limitations. *See Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir.1992). California's approach to choice-of-law in the statute of limitations context "generally leads California courts to apply California law, and especially so where California's statute would bar a claim." *Deutsch v. Turner Corp.*, 324 F.3d 692, 716-17 (9th Cir. 2003) (citations omitted).

[3] A Title IX analysis governs the § 66281.5 claim. *Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 935 (C.D. Cal. 2015) (Education Code claim has the same elements as Title IX claim).

[4] Does 4, 10, and 12 left USF in spring 2018, (SAC ¶¶ 34, 40, 42); Doe 13 in 2018, (*id.* ¶ 43); Doe 6 in 2015, (*id.* ¶ 36); Does 5 and 7 in 2014, (*id.* ¶¶ 35, 37); Doe 8 in 2013, (*id.* ¶ 38); Does 11 and 9 in 2000 and 2001, respectively, (*id.* ¶¶ 39, 41); and Doe 14 in 2016, (*id.* ¶ 44).

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT**

CASE NO. 3:22-CV-01559-LB

significance of known facts" does not delay accrual. *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (1988); *see also Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1049–50 (9th Cir. 2008) ("[C]laim accrues upon awareness of the actual injury . . . not [suspicion] of a legal wrong.").

This Court previously held the discovery rule inapplicable to all claims of Does 4-12:

> The plaintiffs contend that they did not learn about their claims until March 11, 2022, when the San Francisco Chronicle published an article about the case. [Plaintiffs] liken their reaction to survivors of sexual abuse who take years to acknowledge and understand their harms . . . ***But the plaintiffs knew about the wrongful conduct when it occurred: they allege that they were humiliated, isolated, threatened, destroyed, and uncomfortable. The coaches' misconduct caused them to leave the team or transfer to another school***. The abuse they experienced . . . is not like the trauma and the suppression of memories that victims of physical sexual abuse can experience, resulting in the victim's denial and lack of understanding of legal rights . . . [Citing Cases]. ***Instead, what the plaintiffs describe is a lack of understanding of their legal rights. That does not toll the statute***. [Citing Cases].

(ECF No. 88 at 22-23 (emphasis added).) Nothing in the SAC alters the Court's conclusion. Plaintiffs again assert they did not "discover" their claims until March 11, 2022, when the San Francisco Chronicle published an article about the case. (SAC ¶ 496.) They allege they could not have discovered their claims sooner, because:

- Defendant Coaches' "open and public" encouragement or participation in "sexual behavior," led Plaintiffs to believe the behavior was "generally accepted" or "normal and acceptable in a DI baseball program" and that Plaintiffs' discomfort was their "individual defect" and that they were "deserving of punishment" if they did not participate, such that they gaslit Plaintiffs into believing "DI baseball teams were run" in the manner described above. (*Id.* ¶¶ 485-488, 491.)

- Defendant Coaches gave false pretenses defending the "sexual abuse" (that they were engaged in team building, on-field skits, pitching exercises) and chastised players with derogatory terms if they did not participate. (*Id.* ¶¶ 489-490.)

- Defendant Coaches' conduct was so widely known, Plaintiffs believed their experience was not abuse, and thought USF would not have retained Defendant Coaches over such a long tenure unless the "sexual conduct were legitimate." (*Id.* ¶¶ 492-493.)

- Plaintiffs claim "even though [they] felt uncomfortable during the Coach Defendants' actions, [Plaintiffs] did not understand or believe that the Coach Defendants had sexually abused them but instead were led to understand and believe that [they] . . . were at fault for not being able to live up to DI and USF standards." (*Id.* ¶ 495.)

None of these conclusory allegations alter the Court's prior holding. The SAC pleads the very same allegations present in the FAC, on which the Court found tolling inapplicable, (ECF No. 88 at 22 nn.70, 71.) The SAC still shows, as the Court found, that Plaintiffs "knew about the wrongful conduct when it occurred: they allege that they were humiliated, isolated, threatened, destroyed and uncomfortable." (*Id*. at 22.)[5] The same is true for new Plaintiffs, Does 13 and 14. (*See* SAC ¶¶ 157, 323, 324, 329 (Doe 13) ("humiliated" and "highly ashamed" of Christmas party incident which led to an investigation, felt "revolted" after Rookie-show, described freshman year as "so intolerable" he considered transferring); *id*. ¶¶ 336, 338, 341, (Doe 14) (experienced "culture shock," felt "extremely uncomfortable" after comments about his girlfriend, he desired to transfer).) It is of no moment that Plaintiffs now allege that they "were led to believe that such conduct was normal or acceptable", (*id*. ¶¶ 487, 491, 495), or that their "discomfort" with the alleged misconduct "was the player's personal and individual defect and deserving of punishment" (*id.* ¶ 488). That is because Plaintiffs still allege that they recognized or "at least suspect[ed]" the wrongfulness of the Coach Defendants' alleged actions at the time. *Norgart*, 21 Cal. 4th at 397.

---

[5] (SAC ¶ 13 (**all Plaintiffs**) (suffered "severe emotional and physical pain, including shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem"); *id*. ¶¶ 281–284 (**Doe 4**) (humiliated, crushed, called mother daily in tears); *id*. ¶¶ 158, 365, 371 373, 376, 507 (**Doe 5**) (felt unsafe, very upset, isolated and threatened, suffered nightmares, anxiety attacks, depression, felt like a pariah, lost his "love for the game," saw a psychologist to address "mental issues" suffered); *id*. ¶¶ 395–396 (**Doe 6**) (parents wrote May 2014 letter describing conduct as unacceptable behavior that created a hostile environment, described the situation as "abusive"); *id*. ¶¶ 413, 415–416 (**Doe 7**) (describing worst night of his life in 2014 and resulting development that year of anxiety, sleep deprivation, depression, fear for his safety); *id*. ¶¶ 427–429 (**Doe 8**) (was "disgusted by" and "refused to participate" in alleged misconduct, his confidence and mental state were destroyed during his 2013 tenure, sought counseling, hated going to practice day); *id*. ¶¶ 443–444, 446–447, 449 (**Doe 9**) (uncomfortable during conversations with Defendant Coaches, felt "bullied and harassed," afraid, experienced dread and severe depression, told mother of the "abuse"); 257–267, 269–270 (**Doe 10**) (disgusted, scared and devastated by alleged conduct, confided in pitching coach while crying hysterically, and recalled thinking "What are we doing," Doe 10's "stress was exacerbated because [Coach Defendants]" making fun of his disabilities, and left team at the end of the year to protect his mental health); *id*. ¶¶ 469, 471–476 (**Doe 11**) (uncomfortable during practices, suffered depression, anxiety, panic attacks, felt unsafe, severe emotional injuries,); *id*. ¶¶ 298, 304–305, 308 (**Doe 12**) (described feeling uncomfortable, and "stripped" "of his confidence and dignity all-year long," stating his father would fly out to provide "emotional support out of concern for how isolating" the abuse was and out of fear that Doe 12 would harm himself).)

7

As this Court previously explained, that Plaintiffs lacked an understanding of their legal rights in relation to the misconduct does not toll the statute of limitations. (*See* ECF No. 88 at 23 (citing *Lukovsky,* 535 F.3d at 1049–50; *Jolly*, 44 Cal.3d at 1110).) The Court's holding should remain intact. The discovery rule does not apply.

### 3. Plaintiffs Do Not Allege Fraudulent Concealment, and Equitable Tolling is Not Available.

In the FAC, Plaintiffs alleged their claims were tolled each by USF's alleged fraudulent concealment and principles of equitable tolling. (ECF No. 38 ¶ 460.) In the SAC, it is not clear whether Plaintiffs still pursue both or either of these tolling doctrines. USF addresses each.

#### a. USF Did Not conceal of Any Fact Supporting Plaintiffs' Claims.

A plaintiff alleging fraudulent concealment must plead "'the defendant *affirmatively* misled [him], and that the plaintiff had neither actual nor constructive knowledge of the facts giving rise to [his] claim despite its diligence in trying to uncover those facts.'" *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (citation omitted); (*see also* ECF No. 88 at 24 (fraudulent concealment "'tolls the statute of limitations only when, as a result of that concealment, the plaintiff fails to discover some critical fact'") (citing cases)). This Court previously held Plaintiffs did not allege fraudulent concealment:

> ***The defendants did not conceal critical facts that prevented the plaintiffs from learning the facts underlying their claims: the plaintiffs knew about the conduct and left the team because of it***. This landscape contrasts with *Aldrich*, where the court applied equitable tolling for the period of the University of Texas's investigation into the sexual abuse because the investigation allegedly was a sham. 484 F.3d at 800.
> …
> The plaintiffs here characterize the defendants' collective behavior as gaslighting the plaintiffs into thinking that the coaches did nothing wrong and the plaintiffs were overreacting. But the abusive atmosphere here is not equivalent to *Aldrich's* whitewashed investigation into sexual assaults concealed as romantic relationships, beginning for some plaintiffs in high school, that involved intimidation and caused the victims to believe that no wrong occurred. ***There is no similar concealment or misrepresentation here. The plaintiffs were adults who knew about the sexualized conduct when it happened, and while they suffered from the abuse, they left the team because of it***.

(ECF No. 88 at 24–25 (emphasis added).) The SAC does not affect the Court's ruling. Plaintiffs

allege again in conclusory fashion, that "USF . . . knowingly concealed complaints about the misconduct. . . . in an effort to prevent Plaintiffs and other victims of Defendants' misconduct from discovering their harms and seeking legal recourse." (SAC ¶ 499; *see id.* ¶¶ 505–521.) Plaintiffs then claim they "had no reason to know that other student-athletes (and their parents) had complained to USF." (*Id.* ¶ 516.) The SAC alleges two new instances of purported "concealment":[6]

- Doe 9's mother complained to Coach G about the alleged misconduct. "After Coach G threatened her and her son to refrain from complaining to USF, John Doe 9's mother also complained to the then-Athletic Director. Neither these complaints nor the results of any investigation were published at the time or subsequently, and thus, were actively concealed." (*Id.* ¶ 505.)

- "In or about 2013, the Coach Defendants were aware that one of the baseball players punched a gay student and physically threw him out of a USF baseball party . . . . Following that incident, the Coach Defendants called a player meeting—from which John Doe 5 was excluded—during which they told the players to 'sweep it under the rug.' Neither this incident nor the results of any investigation were published at the time or subsequently, and thus were actively concealed." (*id.* ¶ 506.) Moreover, after that incident, Coach G told Doe 5 that he had mental issues and needed to see a sports psychologist provided to him by USF. Despite revealing what had occurred to the USF psychologist, the USF psychologist never offered Doe 5 any resources, such as disclosing any reporting mechanism for the Coach Defendants' sexual harassment, sexual orientation, and discrimination. (*id.* ¶ 507.)

First, none of these new examples establish fraudulent concealment as to any fact relevant to the claims of Doe 9 or 5, let alone *all* Plaintiffs' claims. Even taking these allegations as true, the SAC still pleads each player knew of and appreciated any harm and injuries suffered when they occurred. It remains true that Does 4–14 had notice of all of the facts underlying their claims; they knew of the alleged misconduct when and how it happened, and left the team as a result. *See* Section A, 2, *supra*. Plaintiffs do not plead that USF concealed *facts* underlying the alleged misconduct to each Plaintiff individually—nor could they. That ends the inquiry.

---

[6] The SAC includes allegations made in the FAC in attempt to show concealment, such as those concerning a May 2014 letter sent by Doe 6's mother to USF's associate AD, Doe's 2 parent's "URGENT MEETING" request, Doe 1's complaint to an AD. and Doe 5's disclosures made to a USF psychologist. As these allegations were previously before the Court (*e.g.*, FAC ¶¶ 356, 379, 491, 503–504) USF respectfully submits the Court should again find them deficient to allege concealment (SAC ¶¶ 507–508, 510–511, 513; *see also* ECF No. 88 at 8, 26, 29).

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT**
**CASE NO. 3:22-CV-01559-LB**

1       Second, these examples are particularized to Doe 9 and Doe 5. The SAC does not allege

2   how the concealing of these particular complaints delayed other Plaintiffs in bringing suit.

3       Third, Plaintiffs again fail to meet the heightened pleading standard that applies. As this

4   Court explained: "The plaintiff must plead with particularity the facts supporting fraudulent

5   concealment." (ECF No. 88 at 25 (citing *Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2006)

6   (affirming district court's dismissal because the plaintiff did not plead fraudulent concealment with

7   particularity)); *Doe v. Univ. of S. Cal.*, No. 2:18-cv-09530-AVW-GJS, 2019 WL 4229750, at *5

8   (C.D. Cal. July 9, 2019) ("[A]llegations of fraudulent concealment . . . must be pled with

9   particularity," with "allegations about the 'time, place, and specific content of the false

10  representations.'") (citation omitted). Here, Plaintiffs' do not plead USF concealed complaints

11  with any intent to deceive. The example of "deception" in Paragraph 506 is not concealment,

12  because there is no indication that USF concealed anything—the Coaches allegedly held a meeting

13  where all players but Doe 5 attended. Further, the two examples provided are only cursory

14  descriptions. Plaintiffs simply conclude that USF must have desired to conceal these complaints

15  because no result of any investigation was published. That does not meet the standard of

16  particularity. The SAC omits any detail of conversations had with USF personnel, and fails to

17  allege facts demonstrating USF intended to deceive anyone by not "publishing" the complaints or

18  results of any investigation.

19      In sum, the SAC simply does not show concealment of any critical fact supporting the

20  claims alleged. The players were aware of the harm when it allegedly occurred and each left the

21  team as a result. The claims are barred.

22                                      *b.*    *Equitable Tolling is Not Available.*

23      The SAC (once again) seeks to invoke "equitable tolling." (SAC ¶ 483.) But "[e]quitable

24  tolling applies where the injured person has several legal remedies for the same harm and in good

25  faith pursues one." *Acuna v. Regents of Univ. of Cal.*, 56 Cal.App.4th 639, 647 (1997). The rule

26  recognizes that Plaintiffs are not required "to initiate and maintain duplicative proceedings,"

27  *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir. 2001), such as where

28  a worker's compensation claim and a subsequent civil action concern the same harm. *See, e.g.*,

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION
TO STRIKE SECOND AMENDED COMPLAINT**
**CASE NO. 3:22-CV-01559-LB**

*Collier v. City of Pasadena*, 142 Cal.App.3d 917, 927–33 (1983) (plaintiff who filed a worker's compensation claim premised on the same essential factual elements as a subsequent disability pension claim satisfied equitable tolling test). The SAC conflates equitable tolling with fraudulent concealment. (SAC ¶¶ 483, 497–521.) For reasons discussed above, and as recognized by this Court, Plaintiffs cannot show fraudulent concealment.

Similarly, equitable tolling does not apply because Plaintiffs do not point to any prior proceeding involving the "same wrong." In any event, as this Court previously explained (ECF No. 88 at 23), courts only apply "equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." *Lantzy v. Centex Homes*, 31 Cal.4th 363, 370 (2003). Here, USF would clearly be prejudiced. The claims of Does 4-14 span two decades—finding these claims tolled would subject the university to clear prejudice in investigating and defending those claims after substantial loss of evidence and fading of witness memories. Equitable tolling does not apply.

### 4. Equitable Estoppel Does Not Apply.

Like fraudulent concealment, equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000), *overturned on other grounds by Socop-Gonzalez v. INS*, 272 F.3d 1176, 1194–96 (9th Cir. 2001). The Court previously found equitable estoppel inapplicable, because "Plaintiffs knew about the [conduct] and left the team because of it" and "***USF's conduct did not induce another to forbear a lawsuit***." (ECF No. 88 at 26 (emphasis added).) Estoppel does not apply to the claims of Does 4–14 in the SAC for the same reason. "'A defendant will be estopped to assert the statute of limitations if the defendant's conduct, relied on by the plaintiff, has induced the plaintiff to postpone filing the legal action until after the statute has run.'" *Honig v. San Francisco Planning Dep't*, 127 Cal.App.4th 520, 529 (2005) (citation omitted).[7] Plaintiffs'

_____

[7] Equitable estoppel has four elements under California law: "'(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'" *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1096 (9th Cir. 2021) (citation

conclusory allegations that "USF led Plaintiffs to believe that there was no basis and thus need for a claim" is insufficient. (SAC ¶ 524.) Since Plaintiffs claim for estoppel sounds in fraud, it must be pled with particularity. *See Univ. of S. Cal.*, 2019 WL 4229750, at *5. As explained above, and as the Court found previously, USF did nothing to either induce or prevent Plaintiffs *from timely filing suit*. *See Doe v. Marten*, 49 Cal.App.5th 1022, 1028 (2020) ("The requisite act or omission [to invoke estoppel] must involve a misrepresentation or nondisclosure of a material fact bearing on the necessity of bringing a timely suit.") (emphasis added). The claims of Does 4–14 are barred.

## B.  Count II for Title IX Retaliation Must Be Dismissed.

The Court previously dismissed Count II for retaliation under Title IX, 20 U.S.C. § 1681, because the alleged "complaints" at issue "were about pervasive abuse and bullying, not a sexualized environment that was sex discrimination. They thus are not actionable under Title IX because they are not protected activity." (ECF No. 88 at 29.) The SAC retains allegations that this Court found insufficient to support the Count II retaliation claim. (*See* SAC ¶ 564(a), (c); *see also id.* ¶¶ 207, 395).[8] While Plaintiffs add additional allegations to Count II (SAC ¶ 564), they also reincorporate other sections of the SAC that have nothing to do with "complaints" made to USF. (SAC ¶ 567 (directing to Section VI.C).) USF thus addresses those allegations which Plaintiffs might conceivably argue show "complaints" constituting protected activity:

- In 2016, Doe 13 was told by an unidentified person to spank a nutritionist at a Christmas party held a Coach G's house. Doe 13 then placed his hand on the nutritionist's "lower back." (SAC ¶¶ 116, 157, 324–325, 566.) A NCAA liaison was informed of the incident, (*id.* ¶ 564(b)), at which time Coach G allegedly instructed Doe 13 to "accept full responsibility" and "not reveal that it was part of freshman hazing" (*id.* ¶¶ 323–325, 566).

- "In 2000, John Doe 9's mother called Coach G to demand that Coach Defendants stop their abuse[,]" to some unspecified misconduct. She also allegedly called USF's then-Athletic Director ("AD"), who "was non-responsive." Plaintiffs allege Coach G gave Doe 9 an "F" in his physical

---

omitted). As stated, Plaintiffs knew of all facts predicating their claims. Estoppel is not applicable.
[8] The SAC still alleges Does 6's parents wrote letter in May 2014 describing conduct as unacceptable behavior that created a hostile environment, and that Does 2' parents sent an email for an "URGENT MEETING" without specifying why. (*See* SAC ¶ 564(a), (c); *see also id.* ¶¶ 207, 395.) The Court previously found these allegations insufficient. (ECF No. 88 at 8, 26, 29.)

12

education class, as a result. (*Id.* ¶¶ 74, 153.)

- In the spring of 2021, Doe 1's mother attempted to contact the USF athletic director to discuss problems with the baseball program that included sexual misconduct. Plaintiffs allege Doe 1's later spoke with the AD, who informed her that "USF was aware of the issues and an investigation was being conducted. While Coach Naks was fired, Coach G retained his position, allowing the pervasive sexual environment to continue." (*Id.* ¶ 564(d).)

These allegations do not plead "protected activity;" which is, as this Court previously explained, "'protesting or otherwise opposing unlawful activity,'" including "'speaking out against sex discrimination.'" (ECF No. 88 at 29 (citing cases).) For instance, Plaintiffs do not allege Doe 13 ever complained to USF that he was discriminated against or harassed on the basis of his sex for his actions at the Christmas party. The SAC pleads, to the contrary, that Doe 13 engaged in the misconduct to avoid a "scavenger" hunt, then made no complaint thereafter. (SAC ¶¶ 324, 509, 553.) Further, alleged incident involving John Doe 13 and the nutritionist did not involve sexual harassment or sexual discrimination of a *player* based on sex, orchestrated by any USF affiliate. Rather, according to the SAC, Doe 13 was the person responsible for the alleged misconduct, and states he is "highly ashamed of his role in the incident." (SAC ¶ 327.) The SAC fails to explain how Doe 13's actions constitute any act of retaliation by USF in response to "speaking out against sex discrimination."

Similarly, the allegations concerning the complaints of John 9's mother provide no description regarding the nature of the complained-of "abuse"—*e.g.*, whether it was physical, psychological, or sexual abuse, or whether "abuse" even pertained to harassment or discrimination generally. Finally, the events following Doe 1's mother's conversation with the USF Athletic Director, do not reflect any complaint regarding "discrimination" or "harassment" on the basis of sex. Nor does the SAC even allege that Doe 1 was retaliated for that complaint. In fact, it states the opposite: Coach Nakamura was terminated as a result.

Despite adding dozens of paragraphs, the fact remains that the SAC fails to identify any "complaints" that concern harassment or discrimination on the basis of sex. Rather, Plaintiffs repeatedly allege their complaints were based on their "refusal to participate in the sexualized environment" (SAC ¶ 567) and that "Coach Defendants engaged in retaliation against any player

1   who refused to condone or participate in their intolerable sexualized environment[.]" (*Id.* ¶ 568.)

2   That is not the type of harm actionable as retaliation under Title IX. As the Court previously found,

3   complaints of "pervasive abuse and bullying" are not protected activity supporting a Title IX

4   retaliation claim. (ECF No. 88 at 29.)

5   And even if any of the 14 individual plaintiffs had, in fact, engaged in a protected activity

6   (none have), that claim would not extend to all Plaintiffs—such as players who left USF years

7   (sometimes decades) earlier. In *Ollier v. Sweetwater Union High School District*, 768 F.3d 843,

8   866 (9th Cir. 2014), the Ninth Circuit held that female student athletes who directly experience

9   retaliation based on the protected activity of their coach are within the "zone of interests" protected

10  by Title IX's retaliation provision. However, the court never extended this "zone of interests"

11  protection to student athletes who did not experience retaliation because they were not on the team

12  at the time. Stated differently, none of these examples point to complaints applicable to all

13  Plaintiffs—again, the SAC raises only individualized questions relevant to particular individuals.

14  **C.      Count VI for Violation of Cal. Educ. Code § 66281.5 Must Be Dismissed
           Because Plaintiffs Did Not Exhaust Administrative Remedies.**

15

16  California Education Code ("Education Code") sections 66290 through 66293 govern the

17  compliance and enforcement of the Equity in Education Act. Section 66292.3(d) requires:

18      [A] person who alleges that he or she is a victim of discrimination may not seek
        civil remedies pursuant to this section until at least 90 days have elapsed from the
19      filing of a discrimination complaint with the local educational agency. The 90-day
        moratorium imposed by this subdivision does not apply to injunctive relief and is
20      applicable only if the local educational agency has appropriately, and in a timely
        manner, apprised the complainant of his or her right to file a complaint.
21

22  (Cal. Educ. Code § 66292.3(d).) Count VI fails because Plaintiffs have not alleged that they filed

23  an administrative complaint with USF regarding any discrimination or harassment based on sex.

24  While the SAC contains allegations that the parents of players may have complained to various

25  school officials, nothing suggests Plaintiffs followed any formal, administrative process. Even if

26  we assume these complaints were, in fact, administrative complaints, the grievances Plaintiffs

27  identify in the SAC had nothing to do with harassment or discrimination based on sex, but instead

28  focused on other misconduct as previously described by this Court as "abuse or bullying." (ECF

14

No. 88 at 29.) Put differently, there are no allegations that show the required administrative process was handled or fulfilled by Plaintiffs prior to initiating this lawsuit. Any exception to exhaustion requirement of subsection (d) on the grounds that Plaintiffs seek injunctive relief is inapplicable because Plaintiffs lack standing to seek that relief. *See* Section IV.A, *infra* (motion to strike).

### D.   <u>Plaintiffs Contract Claims Must Be Dismissed Without Leave to Amend.</u>

The SAC asserts near-identical contract claims against USF that Plaintiffs previously asserted against the NCAA in the FAC.[9] (*Compare* SAC (Counts XIII–XV), with FAC (Counts Count XV–XVII and XXII–XXIV).) Each claim fails as a matter of law.

### 1.   Plaintiffs do Not Allege Breach of An Express Contract (Count XIII).

Plaintiffs allege USF breached each player's National Letter of Intent, Form 19-2a, and purport to attach that form to the SAC at Exhibit B. (SAC ¶ 660.) However, Exhibit B is not form 19-2a, but the same form 19-1a that Plaintiffs previous attached to their FAC in alleging breach against the NCAA. (ECF No. 38-1 (FAC), Ex. A.) Accordingly, Plaintiffs thus allege, as they did against the NCAA, that the 19-1a eligibility form for the year 2019-2020 constitutes a binding agreement between USF and each Plaintiff. (*See* SAC, Ex. B.) Plaintiffs claim USF breached that form by not providing benefits assured through the NCAA Constitution, Operating Bylaws, and Administrative Bylaws (the "Bylaws") referenced therein. These claims must be dismissed.

As an initial matter, Exhibit B is not a contract. Plaintiffs' conclusory allegations regarding the form's legal significance may be disregarded;[10] there is nothing in Exhibit B to indicate any manifestation of mutual assent between anyone—let alone USF and the student—to enter a contractual relationship. *Long v. Provide Com., Inc.*, 245 Cal.App.4th 855, 862 (2016) ("Mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.") (internal quotation marks and citation omitted). Only the NCAA's logo appears on

---

[9] The SAC concedes California law applies to these contract claims. (SAC ¶ 678.)

[10] The Court may look past Plaintiffs suggestion that USF had any part in drafting or otherwise negotiating the contents of the NCAA eligibility form based on the form's own language. The court may disregard allegations that are contradicted by exhibits to the SAC. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court may also disregard conclusory allegations and arguments which are not supported by reasonable deductions and inferences. *Id.*

15

Exhibit B. Exhibit B is not a USF form; USF is not even mentioned on the document. While the form generally refers to an "institution," it contains no affirmative commitment by the "institution" to do anything but obtain and store the completed form for 6 years. (SAC, Ex. B at 8.)

A close examination of Exhibit B reveals that it is an attestation form regarding the student's eligibility, not a contract or bargained-for exchange. Exhibit B states its "purpose" is "[t]o assist [the NCAA] in certifying eligibility." (SAC, Ex. B at 1.) The form allows the collection of information to assure a student is eligible to participate in NCAA sports.

Plaintiffs cannot unilaterally transform the eligibility form into an agreement between them and USF. *See Holmes v. Lerner*, 74 Cal.App.4th 442, 457 (1999), *as modified* (Sept. 7, 1999) ("If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation.") (internal quotation marks and citation omitted). Plaintiffs' attempt to incorporate "terms" from the NCAA Bylaws into the eligibility form is a red herring. There is nothing to indicate mutual assent to incorporate any provisions of the Bylaws into Exhibit B. Indeed, each and every reference to the Bylaws in Exhibit B only reaffirms that the purpose of Exhibit B (form 19-1a) is to ensure a player properly attests to his/her eligibility. (*See* SAC, Ex. B at 1 (directing athlete to review Bylaws to provisions that "address your eligibility"); *id.* at 2 (stating the eligibility conditions the athlete must meet are outlined in NCAA Bylaws); *id.* (identifying "Statement Concerning Eligibility" to ensure student reviewed Bylaws before affirming that he/she is eligible to participate in the NCAA).)

Perhaps most telling is the fact that Plaintiffs previously asserted these same contract claims against only the NCAA, not USF. It shows that not even Plaintiffs know who the proper parties are to the very document they allege is a "contract." In fact, Plaintiffs even plead that their decision to add these claims against USF was result of the NCAA's position taken on its prior motion to dismiss the FAC. (*See* SAC ¶ 662) ("The NCAA has taken the position that the National Letter of Intent is a contract between the student-athlete and the institution, here USF."). The NCAA's argument in its motion to dismiss is not evidence that a contract exists between Plaintiffs and USF.

Finally, the 2019-2020 eligibility form does not evidence an agreement between USF and

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT**
**CASE NO. 3:22-CV-01559-LB**

Plaintiffs who left USF before 2019. It is simply not possible for a Plaintiff to be a party to an agreement that did not exist at the time they attended the university. The single form cannot constitute a contract for all Plaintiffs, 11 of whom left USF before 2019.

### 2.  Plaintiffs do Not Allege Breach of Any Oral Contract (Count XIV).

Count XIV fails for similar reasons. To the extent Plaintiffs predicate their implied contract claim on the same allegations underlying the express contract claim (SAC ¶ 677), Plaintiffs' cannot establish "manifestation of assent" to be bound for those reasons discussed above, which is the lynchpin of an implied contract. *Binder v. Aetna Life Ins. Co.*, 75 Cal.App.4th 832, 850 (1999). And even if the Court views Plaintiffs oral contract claim in a vacuum (premised only on the allegations of Paragraph 679), the claim still fails for myriad reasons. Plaintiffs allege:

> [USF breached] an oral contract [between Plaintiffs and USF] that afforded [Plaintiffs] athletic and academic grants-in-aid (scholarships), financial aid, and other benefits in exchange for participating in USF's baseball team.

(SAC ¶ 679.) Plaintiffs allege USF breached this oral agreement by failing to:

- (a) provide the promised athletic and academic grants-in-aid (scholarships), financial aid, and other benefits;

- (b) provide a safe environment for, each of its participating student-athletes;

- (c) establish and maintain an environment that fosters a positive relationship between the student-athlete and coach; and

- (d) establish and maintain an environment in which a student-athlete's activities are conducted as an integral part of the student-athlete's educational experience.

(SAC ¶ 680(a)-(d).) First, the SAC does not allege items (b) through (d) were terms of the purported oral contract they claim breach in Paragraph 679. Those "terms" are not actionable.

Second, Plaintiffs' allegations that they were promised grant-in-aid, financial aid, and other benefits, are terms Plaintiffs concede are subject to an express agreement (the National Letter of Intent), not any oral contract. (*See* SAC ¶ 438 (Doe 9 (1999-2000) "signed a National Letter of Intent **in connection with** his receipt of his USF athletic scholarship" (emphasis added); *id*. ¶ 458 (Doe 11 (2000) alleging same). Therefore, each Plaintiffs' respective National Letter of Intent, which are not attached to the SAC, encompass any obligation USF had  to provide for any grant-

1    in-aid, scholarships, or other benefits to each player. An oral-contract claim predicated on those

2    same terms is not actionable. *See Gardiner v. Burket*, 3 Cal.App.2d 666, 669 (1935) ("Evidence

3    of a contemporaneous oral collateral contract is admissible as long as the collateral contract does

4    not conflict with the terms of the written contract, and covers a matter distinct from . . . the express

5    subject-matter of the written instrument, and is not embodied therein.").

6         Third, Does 2, 3, 4, 7, 10, 12, 13 and 14 cannot proceed on a claim for oral contract for

7    separate, but additional, defects in the SAC. The SAC concedes that Does 4, 7 and 14 were not

8    offered "grant in aid" scholarships or promised benefits in exchange to play at USF, which bellies

9    their oral contract claim for USF's purported failure to provide those benefits.[11] Further, the Statute

10   of Frauds bars any the oral contract claim of Does 2, 3, 10, 12 and 13, because the SAC alleges

11   each agreed to a four-year renewable scholarship.[12] (SAC ¶ 130) (after 2015 schools were required

12   to give guaranteed four-year scholarships). "[A] contract is invalid under the statute of frauds

13   '[w]hen it is evident from the subject matter of the contract that the parties had in contemplation a

14   longer period than one year as the time for its performance.'" *Tostevin v. Douglas*, 160 Cal.App.2d

15   321, 327 (1958) (citation omitted); *see also White Lighting Co. v. Wolfson*, 68 Cal.2d 336, 342

16   (1968) (same). In sum, Plaintiffs' oral contract claims fail at law. That is doubly true for Does 2,

17   3, 4, 7, 10, 12, 13 and 14, whose claims are barred for the additional reasons described herein.

18         **3.    Plaintiffs' Third-Party Beneficiary Claims Fails at Law (Count XV).**

19        Count XV alleges USF breached the NCAA Constitution, Operating Bylaws, and

20   Administrative Bylaws for Division I (the Bylaws) for the conduct alleged in the SAC.[13] Plaintiffs

---

22   [11] Doe 14 signed a Letter of Intent but was a walk-on (SAC ¶ 332); Does 4, 7, are only alleged to
23   have signed a Letter of Intent (*id.* ¶¶ 274, 404), there are no allegations that they were offered grant-in-aid, scholarships, or other benefits, as alleged for the other Does (*see* n.12, *infra*).

24   [12] Does 2 (2020-2022) and 3 (2021-2022) signed a "four year guaranteed four-year athletic and
25   academic grants-in-aid (scholarships)" to attend USF (SAC ¶¶ 197, 219); Doe 10 (2017-2018) also received an "athletic and academic grants-in-aid (scholarships)" to play (*id.* ¶ 251); Doe 12 (2017-
26   2018) signed a National Letter of Intent after being offered a "4-year guaranteed scholarship" (*id.* ¶ 290); Doe 13 (2016-2018), "was offered (and accepted) a renewable annual athletic and academic
27   grants-in-aid (scholarships)" (*id.* ¶ 314). Each also signed a National Letter of Intent.

28   [13] On its prior motion to dismiss the FAC, the NCAA submitted a verified excerpts of the Bylaws for the Court's consideration on the grounds that it was incorporated by reference in Plaintiffs FAC. (ECF No. 65-1, Ex. 1.) Plaintiffs did not object to Court's consideration of the Bylaws on

18

1   claim they can sue as third-party beneficiaries. They are incorrect.

2       To establish a right to sue as third-party beneficiaries, Plaintiffs must establish they were

3   denied intended benefits from the terms of the Bylaws. *See Harper v. Wausau Ins Co.*, 56

4   Cal.App.4th 1079, 1087 (1997) ("A third party may qualify as a beneficiary under a contract where

5   the contracting parties must have intended to benefit that individual and such intent appears on the

6   terms of the agreement."); *McCarthy v. Azure*, 22 F.3d 351, 362 & n.16 (1st Cir.1994) ("[A] person

7   aspiring to [sue as a third-party beneficiary] must show with special clarity that the contracting

8   parties intended to confer a benefit on him. . . . These requirements are not satisfied merely because

9   a third party will benefit [incidentally] from the performance of the contract.").

10      A close reading of the NCAA bylaws show any benefits Plaintiffs derived from the

11  provisions on which they rely were incidental. The Bylaws are intended to regulate the conduct of

12  member universities and their athletic programs. (ECF No. 65-1, Ex. 1.) While student-athletes

13  may benefit indirectly from compliance, as other courts have explained, Plaintiffs' status as

14  beneficiaries is not necessarily clear or explicit. *See Knelman v. Middlebury Coll.*, 898 F. Supp.

15  2d 697, 715 (D. Vt. 2012), *aff'd*, 570 F. App'x 66 (2d Cir. 2014) (casting doubt on the idea that a

16  student was the intended beneficiary of the NCAA Bylaw's fairness provisions); *Hall v. Nat'l*

17  *Collegiate Athletic Ass'n*, 985 F. Supp. 782, 796–97 (N.D. Ill. 1997) ("There can be no doubt that

18  an important function of the NCAA and its constitution, bylaws, and regulations, is to benefit

19  student athletes. It is not clear, however, that this fact is sufficient to elevate a student from an

20  incidental to an intended beneficiary.").

21      The Ninth Circuit considered, and rejected, a similar argument in *Hairston v. Pacific 10*

22  *Conference*, 101 F.3d 1315, 1320 (9th Cir. 1996), *as amended* (Dec. 19, 1996). In *Hairston*,

23  student-athletes contended that they were third-party beneficiaries of a contract between the Pac-

24  10 Conference and its member institutions, embodied in the Pac-10 Constitutions. *Id.*. The

25  *Hairston* plaintiffs pointed to statements that are indistinguishable from those highlighted by

26  Plaintiffs here. The *Hairston* plaintiffs, too, pointed to commitments to "'administer [an] athletic

27

28  the NCAA's motion to dismiss. USF therefore relies on the same Bylaws submitted previously by
    the NCAA in support of its present Motion.

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION
TO STRIKE SECOND AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

program in accordance with the Constitution, Bylaws, and other legislation of the Conference,' 'conduct [their] intercollegiate athletic program in keeping with the highest recognized standards and in a manner which will enhance the reputation for integrity of the Pacific–10 Conference,' 'assure the intercollegiate athletic program is maintained as an integral part of the educational objectives and programs on the campus of each Pacific–10 Conference member institution,' and 'participate in the sports of football and basketball.'" *Id.* The Ninth Circuit rejected this argument, finding that "these pronouncements are not sufficient to support the players' claims that the Pac–10 intended to assume a direct contractual obligation to every football player on a Pac–10 team." *Id.* (citation omitted). As in the Hairston case, Plaintiffs here "have not demonstrated that the parties intended to create direct legal obligations between themselves and the students." *Id.* Plaintiffs' third-party beneficiary claim must be dismissed.

Even if the Court were to find Plaintiffs were intended third-party beneficiaries of the Bylaws in some capacity, Plaintiffs must show they were intended beneficiaries of the material obligations they claim were breached. Relevant here, Plaintiffs point to various "promises" in the Bylaws made **by the NCAA**, not USF.  Plaintiffs allege the NCAA promised:

    a.    "to initiate, stimulate and improve intercollegiate athletics programs for student athletes . . . ," NCAA Const., Art.1, § 1.2(a);

    b.    "to uphold the principal of institutional control of, and responsibility for, all intercollegiate sports in conformity with the constitution and bylaws of this Association," NCAA Const., Art.1, § 1.2(b);

    c.    to conduct intercollegiate athletics programs "in a manner designed to protect and enhance the physical and educational wellbeing of student athletes," NCAA Const., Art. 2, § 2.2 (Revised: 11/21/05);

    d.    to require "each member institution to protect the health of, and provide a safe environment for, each of its participating student-athletes," NCAA Const., Art. 2, § 2.2.3 (Adopted: 1/10/95);

    e.    to require "each member institution to establish and maintain an environment that fosters a positive relationship between the student-athlete and coach," NCAA Const., Art. 2, § 2.2.4 (Adopted: 1/10/95);

    f.    to require that "each member institution to establish and maintain an environment in which a student-athlete's activities are conducted as an integral part of the student-athlete's educational experience," NCAA Const., Art. 2, § 2.2.[1]

20

(Adopted: 1/10/95); and

    g.   to "assist the institution in its efforts to achieve full compliance with all rules and regulations and shall afford the institution, its staff and student athletes fair procedures in the consideration of an identified or alleged failure in compliance," NCAA Const., Art. 2, § 2.8.2.

(SAC ¶ 686.) Plaintiffs attempt to impute these "promises" to USF, and then claim USF breached these obligations. (*Id.* ¶ 687(a)–(g).) Even assuming that the NCAA's promises could be imputed to USF (they cannot) these provisions are too indefinite to be enforced. "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Holmes v. Lerner*, 74 Cal. App. 4th 442, 457 (1999). The cited provisions (at best) provide a generalized commitment to support member institutions in advancing student welfare. These provisions provide no definite assurance to do anything on which a party's performance could be deemed sufficient or not.

    Further, Plaintiffs attempt to use the Bylaws to impute specific assurances from USF that are distinct from those in other non-binding decisions where courts have found third-party beneficiary status. *See*, *e.g.*, *Bloom v. Nat'l Collegiate Athletic Ass'n*, 93 P.3d 621, 623–24 (Colo. App. 2004) (concerning NCAA eligibility standards); *Oliver v. Nat'l Collegiate Athletic Ass'n*, 920 N.E.2d 196, 200 (C.P. Ohio, Erie Cnty. 2008) (same); *see also Weston v. Big Sky Conf.*, 466 F. Supp. 3d 896 (N.D. Ill. 2020) (concerning defendant's alleged failure to adopt and implement concussion treatment, concussion management safety protocols, and return-to-play guidelines).[14] Unlike these cases, Plaintiffs' do not allege a breach of definite Bylaw provisions related to their eligibility or performance as an NCAA athletes. Their claim for breach (SAC ¶¶ 687) is premised on language that reflects generalized goals and/or values similar to that of a mission statement, which (again) are too indefinite to be enforced.

    In sum, Plaintiffs are not third-party beneficiaries of the NCAA Bylaws. Even if they were,

---

[14] Other courts have found plaintiffs incapable raising the third-party beneficiary doctrine in other contexts involving the Bylaws. *See English v. Nat'l Collegiate Athletic Ass'n*, 439 So.2d 1218, 1223 (La. Ct. App. 1983) (student-athlete, who sought injunction against enforcement of NCAA transfer rule, was an incidental beneficiary to NCAA bylaws).

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

the assurances for which they claim breach do not constitute reasonably definite terms through which they can claim redress. The claim must be dismissed.

## IV.    ARGUMENT: MOTION TO STRIKE (FRCP 12(f))

A "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion serves "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "In the Ninth Circuit, motions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action." *Crawford v. Kaiser Found. Health Plan*, 395 F. Supp. 3d 1279, 1286 (N.D. Cal. 2019) (citing cases). "And, in any event, the obligation to conduct expensive and potentially unnecessary and irrelevant discovery is a prejudice." *Bottoni v. Sallie Mae, Inc.*, No. C 10-03602 LB, 2011 WL 3678878, at *2 (N.D. Cal. Aug. 22, 2011).

### A.    Plaintiffs' Request for Injunctive Relief Must be Stricken.

"The Court may . . . strike under [Rule] 12(f) a prayer for relief which is not available as a matter of law." *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1196 (C.D. Cal. 2011). Here, Plaintiffs' demand for injunctive relief must be stricken for lack of Article III standing. Plaintiffs are former USF students and no longer face any threat of allegedly irreparable harm traceable to USF in not adopting policies related to sexual abuse and harassment. (SAC ¶¶ 31–44.) Plaintiffs' prayers for injunctive relief should be stricken. (*See id*. ¶ 12, Prayer for Relief ¶ C.)

To have Article III standing, a plaintiff must plead and prove (1) injury in fact; (2) a causal connection between the injury and the purportedly unlawful conduct; and (3) a non-speculative likelihood that the injury will be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To have "standing for injunctive relief," a plaintiff must "show a 'real and immediate threat of repeated injury.'" *Updike v. Multnomah Cnty.*, 870 F.3d 939, 947 (9th Cir. 2017) (citation omitted). A plaintiff cannot rely "on mere conjecture about possible [future] actions" to demonstrate injury and must instead plead and prove "concrete evidence to substantiate their fears." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013). "Past exposure

to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), so a plaintiff must show "a 'real or immediate threat' that he would be 'wronged again'" absent injunctive relief. *Updike*, 870 F.3d at 947–48 (quoting *Lyons*, 461 U.S. at 111); *see also*, *e.g.*, *Aldrich v. Nat'l Collegiate Athletic Ass'n*, 565 F. Supp. 3d 1094, 1102 (S.D. Ind. 2021) ("To show an injury . . . based on an increased risk of future harm, there must be certainly impending future harm. . . . [T]here must be 'a substantial risk that the harm will occur' and the risk cannot be too speculative.") (citation omitted).

Plaintiffs cannot carry this burden. The SAC admits Plaintiffs are no longer students at USF. Does 1, 2 and 3 each transferred from USF, by no later than the end of the 2022 academic year. (SAC ¶¶ 31–33.) Does 4, 10, and 12 left USF in spring 2018. (*Id.* ¶¶ 34, 40, 42.) Doe 13 left USF in 2018. (*Id.* ¶ 43.) Doe 6 attended USF until 2015. (*Id.* ¶ 36.) Does 5 and 7 left USF in 2014. (*Id.* ¶¶ 35, 37.) Doe 8 left USF in 2013. (*Id.* ¶ 38.) Does 9 and 11 left USF in 2000. (*Id.* ¶¶ 39, 41.) Doe 14 left USF in 2016. (*Id.* ¶ 44.) Put differently, no Plaintiff is subject to "a real and immediate threat of repeated injury" traceable to any allegedly unlawful inactions by USF. *Updike*, 870 F.3d at 948.[15] Plaintiffs thus lack standing to seek injunctive relief requiring USF to "adopt, implement, and enforce appropriate policies and procedures to prevent, or properly respond to, sexual misconduct and psychological abuse of students and student-athletes." (SAC, Prayer for Relief ¶ C; *see also id.* ¶¶ 12, 536(h), 538, 559, 689.) Their demands for such relief must be dismissed or stricken. *See*, *e.g.*, *Grant House v. Nat'l Collegiate Athletic Ass'n,* 545 F. Supp. 3d 804, 818 (N.D. Cal. 2021) (recognizing former student-athlete lacked standing to seek injunctive relief); *Plumas*, 192 F.3d at 1264 (former student lacked standing to seek injunctive relief following illegal dog sniff at school because "he no longer is a student" or within the defendant district); *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1036–37 (9th Cir. 2006) (former employee lacked standing to seek "injunction requiring the anti-discriminatory policies she requests at her former place of work"); *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW, 2009 WL 1765759, at *2–3 (N.D.

---

[15] Of note, no Plaintiff alleges they intend to return to USF. *B.C. v. Plumas Unified Sch. Dist*., 192 F.3d 1260, 1264 (9th Cir. 1999) (finding Plaintiffs lacked standing to seek injunctive relief, in part, because they were no longer students and did not intend to return to the district).

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

1  Cal. June 18, 2009) (striking former employees' injunctive relief request because "they cannot

2  show . . . there is a real and immediate threat that they will suffer future wage and hour violations").

3  **B.      SAC Paragraphs 61–66 Regarding Catholic Archdioceses Must be Stricken.**

4         A motion to strike is also proper where, as here, it "is clear that the matter to be stricken

5  could have no possible bearing on the subject matter of the litigation." *Crawford*, 395 F. Supp. 3d

6  at 1286 (citing cases). Paragraphs 61–66 of the SAC refer to a 2018 report concerning the sexual

7  misconduct of members of the Catholic Archdiocese that occurred between the years 1949 and

8  1981, and public comments of USF's president, Fr. Paul Fitzgerald, made in response. These

9  allegations should be struck as "immaterial," "impertinent," or "scandalous" matters.

10        "[I]mmaterial means that the statement 'has no essential or important relationship to the

11 claim for relief or the defenses being pleaded,' and impertinent means that it does 'not pertain to

12 and are not necessary to the issues in question.'" *Doe v. Regents of Univ. of Cal.*, No. 21-CV-

13 09605-LB, 2022 WL 833627, at *10 (N.D. Cal. Mar. 20, 2022) (citations omitted). Allegations

14 concerning the Catholic Archdiocese—including Mr. Fitzgerald's comments about the same—

15 have absolutely nothing to do with Plaintiffs' claims. Catholic priests are not USF faculty. It goes

16 without saying that USF does not oversee members of the Catholic Archdiocese. Paragraphs 61-

17 66 do not implicate the actions or inactions of any USF faculty or student, let alone anyone

18 tangentially associated with USF's athletics department. Nor do the allegations touch on USF

19 student-athlete reporting policies/procedures, because (again) they do not concern the university.

20 Paragraphs 61-66 are, at best, salacious allegations included to confuse the issues and drum up

21 press for filing this suit. That is especially true because the reports "did not say whether the abuse

22 [by the dioceses that occurred over 40 years ago, even] occurred on the USF campus." (SAC ¶ 63.)

23 **V.      CONCLUSION**

24        For the foregoing reasons, USF respectfully requests the Court grant its Motion to Dismiss

25 as to the causes of action identified herein and deny leave to amend, and strike Plaintiffs' claim

26 for injunctive relief and SAC Paragraphs 61–66. *See Rutman Wine Co. v. E. & J. Gallo Winery*,

27 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where

28 the pleadings before the court demonstrate that further amendment would be futile.").

24

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION
TO STRIKE SECOND AMENDED COMPLAINT
CASE NO. 3:22-CV-01559-LB**

1

Dated:  March 8, 2023

Respectfully submitted,

2

STEPTOE & JOHNSON LLP

3

4

By: */s/ Jonathan M. Baum*
Jonathan M. Baum (SBN 303469)
Geoffrey L. Warner (SBN 305647)
*Attorneys for Defendant*
UNIVERSITY OF SAN FRANCISCO

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS AND MOTION
TO STRIKE SECOND AMENDED COMPLAINT**
**CASE NO. 3:22-CV-01559-LB**