Jonathan M. Baum (SBN 303469)
jbaum@steptoe.com
**STEPTOE & JOHNSON LLP**
One Market Plaza
Steuart Tower, Suite 1070
San Francisco, California 94105
Telephone: (415) 365-6700 / Facsimile: (415) 365-6699

Geoffrey L. Warner (SBN 305647)
gwarner@steptoe.com
Nicolena F. Farias-Eisner (SBN 336158)
nfariaseisner@steptoe.com
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 439-9400 / Facsimile: (213) 439-9559

Attorneys for Defendant
UNIVERSITY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, JOHN DOE 12, JOHN DOE 13, and JOHN DOE 14 individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, THE UNIVERSITY OF SAN FRANCISCO, ANTHONY N. (AKA NINO) GIARRATANO, and TROY NAKAMURA,<br><br>        Defendants. | Case No. 3:22-cv-01559-LB<br><br>**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT [FED R. CIV. P. 12(b)(6)]**<br><br>Hearing:     October 19, 2023<br>Time:        9:30 a.m.<br>Courtroom:  B<br><br>Judge:  Hon. Laurel Beeler<br>Trial Date:  None Set |

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................................... 1

II.  RELEVANT PROCEDURAL BACKGOUND ...................................................... 2

III. ARGUMENT .................................................................................................................. 4

   A.   THE CONTRACT CLAIMS OF DOES 4–14 MUST BE DISMISSED (AGAIN). ....................................4

       *1. In Violation of This Court's Prior Order on USF's Motion to Dismiss the Second Amended Complaint, Plaintiffs Improperly Reallege Their Contract Claims On Behalf of Does 4–14.*....................................................................................................................4

       *2. The Contract Claims of Does 4–14 are (Still) Barred by the SOL; No Tolling Theory Applies.*............................................................................................................................5

   B.   THE PLAINTIFFS' CLAIM FOR BREACH OF EXPRESS AND ORAL CONTRACT MUST BE DISMISSED WITHOUT LEAVE TO AMEND. ....................................................................................9

       *1. Plaintiffs Cannot Allege an Express Breach of Contract on Any of the Three "Contracts" Attached to the TAC (Count XIII).*....................................................................9

       *2. Plaintiffs Still Do Not Allege A Claim for Oral Contract (Count XIV).*...........................15

   C.   IN DIRECT CONTRAVENTION OF THIS COURT'S PRIOR ORDER, PLAINTIFFS REASSERT THEIR THIRD-PARTY BENEFICIARY CLAIM (COUNT XV); THE COURT SHOULD DISMISS. THIS CLAIM AGAIN. ..........................................................................................................................16

   D.   PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF MUST BE DISMISSED WITHOUT LEAVE...........19

       *1. Plaintiffs Lack Standing to Seek Injunctive Relief.*...................................................19

       *2. In any Event, Plaintiffs Cannot Seek Injunctive Relief as They have an Adequate Remedy at Law.*.......................................................................................................22

IV.  CONCLUSION .............................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acuna v. Regents of Univ. of Cal.*,
 56 Cal.App.4th 639 (1997) ........................................................................................9

*Backus v. Gen. Mills, Inc.*,
 122 F. Supp. 3d 909 (N.D. Cal. 2015) ...............................................................10, 14, 15

*Bates v. United Parcel Serv., Inc.*,
 511 F.3d 974 .........................................................................................................21

*Botello v. Morgan Hill Unified Sch. Dist.*,
 No. C09-02121 HRL, 2009 WL 3918930 (N.D. Cal. Nov. 18, 2009).................................21

*Chang v. McDonald's Corp.*,
 105 F.3d 664 (9th Cir. 1996) ...................................................................................11

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983).............................................................................................21, 22

*Cole v. Oroville Union High Sch. Dist.*,
 228 F.3d 1092 (9th Cir. 2000) .................................................................................21

*DeSisto Coll., Inc. v. Line*,
 888 F.2d 755 (11th Cir. 1989) .................................................................................23

*DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*,
 176 Cal.App.4th 697 (2009) ....................................................................................11

*Estate of Blue v. Cty. of Los Angeles*,
 120 F.3d 982 (9th Cir. 1997) ...................................................................................23

*Gardiner v. Burket*,
 3 Cal.App.2d 666 (1935) ........................................................................................15

*Graves v. Mahoning Cnty.*,
 821 F.3d 772 (6th Cir. 2016) .....................................................................................2

*Hairston v. Pacific 10 Conference*,
 101 F.3d 1315 (9th Cir. 1996) ...................................................................15, 16, 17, 18

*Hexcel Corp. v. Ineos Polymers, Inc.*,
 681 F.3d 1055 (9th Cir. 2012) ...................................................................................8

*Holmes v. Lerner*,
   74 Cal.App.4th 442 (1999) ................................................................................12

*Honig v. San Francisco Planning Dep't*,
   127 Cal.App.4th 520 (2005) ...............................................................................8

*Jajco, Inc. v. Leader Drug Stores, Inc.*,
   No. C 12-05703 PJH, 2013 WL 2403593 (N.D. Cal. May 31, 2013) ....................6

*Lantzy v. Centex Homes*,
   31 Cal.4th 363 (2003) ........................................................................................9

*Long v. Provide Com., Inc.*,
   245 Cal.App.4th 855 (2016) .........................................................................11, 12

*Misha Consulting Grp., Inc. v. Core Educ. & Consulting Sols., Inc.*,
   No. C-13-04262-RMW, 2013 WL 6073362 (N.D. Cal. Nov. 15, 2013)..........10, 15

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*,
   471 U.S. 845 (1985)...........................................................................................22

*Neel v. Magana, Okney, Levy, Cathcart & Gelfand*,
   6 Cal.3d 176 (1971) ...........................................................................................5

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)...........................................................................................19

*Perez–Encinas v. AmerUs Life Ins. Co.*,
   468 F. Supp. 2d 1127 (N.D. Cal. 2006) ..............................................................5

*Phoenix Techs. Ltd. v. VMware, Inc.*,
   No. 15-CV-01414-HSG, 2017 WL 1289863 (N.D. Cal. Jan. 6, 2017)...................6

*R.G. v. Koller*,
   415 F. Supp. 2d 1129 (D. Haw. 2006) ...............................................................22

*Richter v. Oracle America, Inc.*,
   No. 22-CV-04795-BLF, 2023 WL 4053793 (N.D. Cal. June 15, 2023) ...............22

*Rustico v. Intuitive Surgical, Inc.*,
   993 F.3d 1085 (9th Cir. 2021) ............................................................................9

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ............................................................................22

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ............................................................................2

iii

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

*Santa Maria v. Pac. Bell*, 202 F.3d 1170 (9th Cir. 2000), *overturned on other grounds by Socop-Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2001) .........................................8

*Satvati v. Allstate Northbrook Indem. Co.*,
    634 F. Supp. 3d 792 (C.D. Cal. 2022) .............................................................10, 15

*Serritella v. Markum*,
    119 F.3d 506 (7th Cir. 1997) .......................................................................................23

*Slayman v. Fedex Ground Package Sys., Inc.*,
    765 F.3d 1033 (9th Cir. 2014) ....................................................................................19

*Snyder–Hill v. Ohio State Univ.*,
    48 F.4th 686 (2022) .......................................................................................................4

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ...............................................................................12, 17

*St. John v. Kootenai Cnty., Idaho*,
    No. 2:22-CV-00074-BLW, 2022 WL 17362155 (D. Idaho Dec. 1, 2022) ...................22, 23

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...............................................................................10, 14

*Supermail Cargo, Inc. v. United States*,
    68 F.3d (9th Cir. 1995) ..................................................................................................4

*Thompson v. Oracle Corp.*,
    574 F. Supp.3d 738 (N.D. Cal. 2021) .........................................................................19

*Tostevin v. Douglas*,
    160 Cal.App.2d 321 (1958) .........................................................................................16

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) .....................................................................................22

*Trew v. Int'l Game Fish Ass'n, Inc.*,
    404 F. Supp. 2d 1173 .................................................................................................19

*Updike v. Multnomah Cnty.*,
    870 F.3d 939 (9th Cir. 2017) .......................................................................................19

*Wakefield v. Wells Fargo & Co.*,
    No. C 13-05053 LB, 2014 WL 5077134 (N.D. Cal. Oct. 9, 2014) ................................4, 5, 6

*Wexler v. Cal. Fair Plan Ass'n*,
    63 Cal.App.5th 55 (2021) .............................................................................................17

iv

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

*White Lighting Co. v. Wolfson*,
    68 Cal.2d 336 (1968) ................................................................................16

*Wilber v. Top Glob. Cap., Inc.*,
    No. SACV12-1448 AG, 2014 WL 12594138 (C.D. Cal. Nov. 4, 2014) ...................................6

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) ......................................................6

*Zapata Fonseca v. Goya Foods Inc.*,
    No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)................................22

**Statutes**

Cal. Code Civ. P. § 337.................................................................................5

Cal. Code Civ. P. § 339.................................................................................5

Cal. Educ. Code § 66270................................................................................3, 4

Fed. R. Civ. P. 11..................................................................................22, 23

Fed. R. Civ. P. 11(b)...................................................................................22

Fed. R. Civ. P. 12(b)(6)...............................................................................1

Title IX..........................................................................................3, 4, 7, 20

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

**PLEASE TAKE NOTICE** that on October 19, 2023, at 9:30 a.m. before the Honorable Laurel Beeler in Courtroom B, 15th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant University of San Francisco ("USF") will move pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), for an order dismissing: (1) Counts XIII, XIV, and XV brought by Plaintiffs Does 4–14 in their Third Amended Class Action Complaint ("TAC") (ECF No. 133) as barred by this Court's prior Order on USF's Motion to Dismiss the Second Amended Complaint ("Prior Order") (ECF No. 128) and by the applicable statutes of limitations, (2) Count XIII for breach of contract under FRCP 12(b)(6) for failure to state a claim; (3) Count XIV for breach of oral contract under FRCP 12(b)(6) for failure to state a claim; and (6) Count XV for breach of contract as third-party beneficiaries as barred by the Prior Order and under FRCP 12(b)(6) for failure to state a claim. This Motion is based on this Notice, the following Memorandum of Points and Authorities, all papers on file in this matter, and any authority or argument presented in reply and at any hearing.

## STATEMENT OF RELIEF SOUGHT

USF seeks an order under FRCP 12(b)(6) dismissing claims XIII, XIV, and XV brought by Does 4–14 as barred by this Court's prior Order on USF's Motion to Dismiss the Second Amended Complaint ("Prior Order") (ECF No. 128), and as barred by the applicable statute of limitations; and for an order under FRCP 12(b)(6) dismissing Counts XIII, XIV and XV of the TAC for failure to state a claim.

## I.    INTRODUCTION

The Federal Rules of Civil Procedure provide that, under certain circumstances, a defective pleading may be amended. The Rules, however, do not support the scenario we now are experiencing.[1] Plaintiffs have amended their complaint four times in the 18 months since they initially filed their case. The last three times, the Court has granted leave to amend, but Plaintiffs have arguably exceeded that leave, adding additional claims and plaintiffs beyond what a

---

[1] Plaintiffs' conduct in responding to the Court's orders dismissing their claims by repleading those very claims is reminiscent of the 1993 movie *Groundhog Day* (Harold Ramis dir.), the comedy where Bill Murray plays a television weatherman forced to relive February 2 repeatedly.

reasonable reading of the Court's orders permitted. Although requests to amend are to be liberally granted, "[t]he Civil Rules do not displace the reasoned discretion—the judgment—of district courts to say enough is enough." *Graves v. Mahoning Cnty.*, 821 F.3d 772, 777 (6th Cir. 2016) (district court correctly denied leave to amend when plaintiffs amended four times and "repeatedly exceeded the 'court's leave' to amend"); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124 (9th Cir. 2013) (court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended).

Enough is enough. USF respectfully requests that the Court dismiss with prejudice the claims that the Court's prior orders already make clear are legally invalid. As stated in its prior motions, USF believes that the Plaintiffs' claims are false, and the evidence here will show USF acted responsibly when uncovering wrongdoing related to its baseball program. Plaintiffs have had four chances to try to save their Complaint. It is time for the Court to dismiss these claims with prejudice, so this case can move forward.[2]

## II.   <u>RELEVANT PROCEDURAL BACKGOUND</u>

This is Plaintiffs' fourth operative pleading and USF's third Motion to Dismiss. Because the Court is readily familiar with this dispute, USF provides only a summary of the claims alleged after the Court's most recent Order.

Plaintiffs are fourteen former USF student-athletes who played baseball between 1999 and 2022. (Third Amended Complaint ("TAC") ¶¶ 28–41.) No Plaintiff is enrolled at USF today. (*Id.*) Plaintiffs allege that two former USF baseball Coaches[3] engaged in conduct that created a sexualized, abusive environment, causing them harm. (*See, e.g.*, *id.* ¶¶ 5–7.)

---

[2] Although USF does not ask the Court to impose sanctions at this time, courts in this Circuit have held that "[a]ttempting to circumvent one holding by refiling the same claims is sanctionable." *St. John v. Kootenai Cnty., Idaho*, No. 2:22-CV-00074-BLW, 2022 WL 17362155, at *4-5 (D. Idaho Dec. 1, 2022) (citing *Estate of Blue v. Cty. Of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997). Additionally, repleading claims in violation of a court's prior order constitutes a waste of judicial resources. *See Serritella v. Markum*, 119 F.3d 506, 512 (7th Cir. 1997) (Rule 11 sanction of $1,500 was warranted against plaintiff's counsel for deliberately filing pretrial order that raised issues which had already been decided adversely by the district court).
[3] "Defendant Coaches" or "Coach Defendants" refer to Defendants Anthony N. Giarratano ("Coach G"), and Troy Nakamura ("Coach N").

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

On March 11, 2022, Does 1–3 filed a complaint against the NCAA, USF, and Coach Defendants. (*Id.* ¶ 9.) Plaintiffs filed the First Amended Complaint ("FAC") on July 15, 2022, adding Does 4–12, who played for USF from 1999 to 2018. (*Id.* ¶ 10.)

On January 4, 2023, this Court issued an order on various motions to dismiss the FAC, which in pertinent part, dismissed all claims of Does 4–14 as being barred by the applicable statutes of limitations, and all claims against the NCAA for lack of personal jurisdiction. (ECF No. 88.)

On February 8, 2023, Plaintiffs filed the Second Amended Complaint ("SAC"). While Plaintiffs did not add additional Plaintiffs, they took their contract claims that had originally been pled against the NCAA and repleaded them against USF, including breach of express contract (Count XIII), breach of oral contract (Count XIV), and breach of contract as third-party beneficiaries (Count XV).

On August 4, 2023, the Court issued an Order holding that (1) all claims of Does 4–14 are barred by the statute of limitations, save for Counts I and 5 for discrimination under Title IX and Cal. Educ. Code § 66270; (2) Does 1–3 may have leave to amend their claims for breach of express and oral contract because they failed to attach the operative "contracts" to the SAC; (3) Plaintiffs' Count XV for breach of contract as third-party beneficiaries is dismissed; and (4) Plaintiffs may amend their injunctive relief claim to address any "changed circumstances" affecting the "mootness issue" of Doe 1's claim for injunctive relief. (TAC ¶¶ 11–19, 23–26, 28–30.)

Plaintiffs filed the TAC on August 30, 2023. In direct violation of the Court's latest Order, which found that except for Counts I and V of the operative Complaint the "statute of limitations does bar the remaining claims by Does 4-14," Plaintiffs reassert all of their contract claims (Counts XIII, XIV, and XV) on behalf of Does 4–14, despite the Court's careful analysis finding tolling applicable to only Counts 1 and 5. (ECF No. 128 at 19 ("***[t]here are no discernable grounds for tolling [Does 4–14] contract claims***") (emphasis added). Moreover, Plaintiffs reassert their claim for breach of contract as third-party beneficiaries under the NCAA Bylaws, despite this Court finding the hortatory pronouncements in the Bylaws do not confer any intended

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

contractual benefits on Plaintiffs. After 18 months and four different complaints, USF respectfully requests the Court dismiss these claims with prejudice so that this case can finally progress.

## III.   ARGUMENT

### A.   The Contract Claims of Does 4–14 Must be Dismissed (Again).

#### 1.   In Violation of This Court's Prior Order on USF's Motion to Dismiss the Second Amended Complaint, Plaintiffs Improperly Reallege Their Contract Claims On Behalf of Does 4–14.

In ruling on USF's previous Motion to Dismiss the SAC, the Court found only Counts I and V of Does 4–14 subject to tolling under the discovery rule; the Court found the remaining claims barred by the statute of limitations. The Court held:

> At the pleadings stage, the discrimination claims by Does 4–14 for violations of Title IX and California Education Code § 66270 (claims 1 and 5) survive. The discovery rule is better addressed at summary judgment, given the alleged coverup that was the cause of the Title IX injury. *The statute of limitations bars the remaining claims for Does 4–14: the conduct was overt, and the plaintiffs experienced it as abuse when it occurred. Similarly, other claims accrued when the plaintiffs were students.*

(ECF No. 128 at 2 (emphasis added).)[4]

The Court continued, explaining that "although the parties did not address this point, courts rarely apply the discovery rule for claims involving breach of contract . . . [and] *[t]here are no discernable grounds for tolling [Does 4–14] contract claims*." (ECF No. 128 at 19 (emphasis added) (citing *Wakefield v. Wells Fargo & Co*., No. C 13-05053 LB, 2014 WL 5077134, at *10–11 (N.D. Cal. Oct. 9, 2014).) The Court thereafter provided *leave to amend only to Does 1–3*, to reassert their claims for breach of express and oral contract: "The court grants the motion to dismiss the claims of John Does 4–14 as barred by the statute of limitations, except for claims 1 and 5 for discrimination under Title IX and Cal. Educ. Code § 66270. For Does 1–3, the

---

[4] *See id.* at 18-19 ("At the pleadings stage, the court follows *Snyder-Hill* and holds that the statute of limitations does not bar Does 4–14's Title IX or California Education Code section 66270 claims (claims 1 and 5). *Snyder–Hill v. Ohio State Univ.*, 48 F.4th 686, 705–07 (2022). The issue is better addressed at summary judgment. *Supermail Cargo, Inc. v. United States*, 68 F.3d at 1204, 1206–07 (9th Cir. 1995) . . . *The statute of limitations does bar the remaining claims by Does 4–14, though*." (emphasis added).

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

court dismisses the contract claims and the prayer for injunctive relief with leave to amend." (ECF No. 128 at 30.)

In an act of true chutzpah, Plaintiffs now reallege their breach of express and oral contract claims (and the separately-dismissed third-party beneficiary claim) on behalf of **all** Plaintiffs. By ignoring the Court's clear order, Plaintiffs have significantly delayed this litigation and caused defendants significant unnecessary expense. This conduct should not be tolerated any further.

### 2.   The Contract Claims of Does 4–14 are (Still) Barred by the SOL; No Tolling Theory Applies.

To avoid waiver, USF must again address Plaintiffs' tolling theories as applied to their contract claims (Counts XIII through XV).[5] As before, Plaintiffs allege USF breached various contractual obligations. (TAC ¶¶ 649–691.) These claims[6] are barred by the applicable statutes of limitations. *See* Cal. Code Civ. P. § 339 (two-year statute of limitations on "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing"); Cal. Code Civ. P. § 337 (claims for breach of a written contract are subject to a four-year limitations period.

Critically, *the TAC contains no new allegations regarding tolling*—in fact, the TAC completely strikes its tolling-by-estoppel section. (ECF No. 133-1 at 99.) In other words, the analysis of Plaintiffs' tolling arguments is the exact same as it was before, such that as USF previously argued and this Court found, there are no "discernable grounds" for tolling, and the claims must be dismissed with prejudice. (ECF No. 128 at 19.)

   a.   The Discovery Rule Does Not Toll Does 4–14 Contract Claims.

"A cause of action for breach of contract accrues at the time of the breach of contract, and the statute of limitations begins to run at that time regardless of whether any damage is apparent or whether the injured party is aware of his right to sue." *Perez–Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006). "The plaintiff's ignorance of the cause of action, or of the identity of the wrongdoer, does not toll the statute." *Wakefield*, 2014 WL 5077134, at *9

---

[5] For reasons discussed herein, Plaintiffs similarly reassert their previously dismissed Third-Party Beneficiary claim despite this Court not expressly authorizing them to do so. This again evidences Plaintiffs disregard for the Rules and the Court's prior orders.

[6] As USF discusses below in Sections B-C, *infra*, Plaintiffs' contractual theories are deficient as a matter of law.

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

1   (quoting *Neel v. Magana, Okney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 187 (1971)).

2       "The California Supreme Court has not yet 'considered how and when the discovery rule

3   delays the accrual of a breach of contract claim (or if it even does)[.]'"[7] *Phoenix Techs. Ltd. v.*

4   *VMware, Inc.*, No. 15-CV-01414-HSG, 2017 WL 1289863, at *7 (N.D. Cal. Jan. 6, 2017) (citation

5   omitted). The California Courts of Appeal have "extended the discovery rule rarely, and only in

6   narrow circumstances, to breach of contract claims." *Wakefield*, 2014 WL 5077134, at *10 (citing

7   cases). Indeed, "'[t]raditionally . . . the discovery rule had not been held applicable to breach of

8   contract actions except in cases involving fraud or misrepresentation.'" *Id.*(citation omitted). Here,

9   Plaintiffs allege USF breached various obligations arising from three separate agreements,

10  specifically, by failing to:

> (a)   Provide scholarships as promised;
>
> (b)   Provide athletics financial aid for one academic year (two semesters or three quarters);
>
> (c)   Protect the health of, and provide a safe environment for, each of its participating student-athletes;
>
> (d)   establish and maintain an environment that fosters a positive relationship between the student-athlete and coach; and
>
> (e)   establish and maintain an environment in which a student-athlete's activities are conducted as an integral part of the student-athlete's educational experience.

19  (TAC ¶¶ 666, 672.) As this Court already found, there are no facts alleged in the TAC justifying

20  an extraordinary finding of tolling Plaintiffs' contract claims by the discovery rule, and Plaintiffs

21  do not plead any new facts through which anyone could infer USF's fraud or a misrepresentation

22  that prevented Plaintiffs from learning of any purported breach.

23      Plaintiffs claim USF did not provide them promised scholarships or financial aid, but that

24  claim would have been known by Plaintiffs at the moment of breach—*i.e.*, when USF failed to

---

[7] California law applies to Plaintiffs' contract claims. *Wilber v. Top Glob. Cap., Inc.*, No. SACV12-1448 AG (JPRx), 2014 WL 12594138, at *2 (C.D. Cal. Nov. 4, 2014); *Jajco, Inc. v. Leader Drug Stores, Inc.*, No. C 12-05703 PJH, 2013 WL 2403593, at *4 (N.D. Cal. May 31, 2013); *see also Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 907 (N.D. Cal. 2020) (applying California law to breach of contract analysis).

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

deliver the funds. The same is true for the remainder of Plaintiffs' alleged breaches involving the NCAA Bylaws.[8] As USF has argued multiple times now, each Plaintiff left the team because of the alleged misconduct—an unsafe environment—they experienced while playing baseball for USF. That misconduct, ***not*** any "cover-up" by USF, is the core of any claim for breach of the Bylaws. Rather, the "cover-up" has no bearing on any particular Plaintiff's claim for breach of contract, because each Plaintiff would have experienced their particular "breach" of the Bylaws the moment they experienced the misconduct. Allegations regarding any "cover-up," while demonstrably false, are relevant only to Plaintiffs' Title IX claims, which this Court has already permitted to proceed. Applying the discovery rule here to Plaintiffs contract claims would serve only blur the line between tort and contract (ECF No. 128 at 26 ("More practically, this is a tort case, not a breach-of-contract case . . . .").

Perhaps most telling is that Plaintiffs allege no facts explaining how or why they were not made aware of these contractual breaches until March 11, 2022, when the San Francisco Chronicle published an article about the case. Plaintiffs do not plead that USF concealed facts underlying any Plaintiffs' contract claim—nor could they. The Court was correct when it found the statute of limitations bars all remaining claims of Does 4–14, because "the conduct was overt, and the plaintiffs experienced it as abuse when it occurred. Similarly, other claims accrued when the plaintiffs were students." (ECF No. 128 at 2.)

b.    Plaintiffs Should Not Be Allowed to Reargue Previously-Alleged and Abandoned Tolling Theories.

The TAC, like the SAC before it, asserts tolling through other theories, including equitable and/or equitable tolling, and principles of equity. As this Court has already found ***twice***, equitable tolling, equitable estoppel, and principles of equity do not suspend the statutes of limitations for any claims alleged. (ECF No. 128 at 11 (citing ECF No. 88 at 23–27.) Plaintiffs did not respond

---

[8] USF denies that Plaintiffs have any right to argue breach through the Bylaws, as the Bylaws are not a contract between USF and its students, nor are Plaintiffs third-party beneficiaries of the Bylaws as this Court found previously. (ECF No. 128 at 2, 26–27.) And, as USF argues below, even if Plaintiffs could assert some contractual right to promises made in the Bylaws, the provisions on which Plaintiffs rely in alleging breach are too indefinite to be enforced.

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

to USF's arguments in its prior Motion to Dismiss the SAC that these other theories of tolling were inapplicable or suspend the statutes of limitations, and the Court found Plaintiff conceded those issues. (ECF No. 128 at 11 ("In their opposition to the motions to dismiss, the plaintiffs address only the discovery rule . . . . By not responding to the defendants' motions to dismiss [regarding other theories of tolling], the plaintiffs effectively concede the other issues: as the court held previously, equitable tolling, equitable estoppel, and principles of equity do not suspend the statutes of limitations.").)

Plaintiffs should not be allowed a third bite at the apple, especially considering the TAC adds no new facts supporting tolling. (TAC ¶¶ 483–521; *see also* ECF No. 133-1 (TAC redline) at same).) However, to the extent Plaintiffs even attempt to argue tolling of their contact claims through other theories, those arguments are quickly dispatched.

**Fraudulent concealment**. Plaintiffs do not allege USF committed fraud or made any misrepresentation that concealed any material fact preventing Plaintiffs from discovering a purported breach of contract. As discussed above, USF's alleged "cover-up" is not identified as supporting Plaintiffs' claim for breach of any contract. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (a plaintiff alleging fraudulent concealment must plead "the defendant affirmatively misled [him], and that the plaintiff had neither actual nor constructive knowledge of the facts giving rise to [his] claim despite its diligence in trying to uncover those facts.") (citation omitted); (*see also* ECF No. 88 at 24 (fraudulent concealment "'tolls the statute of limitations only when, as a result of that concealment, the plaintiff fails to discover some critical fact'") (citing cases)).

**Equitable estoppel**. The TAC removes its prior section alleging tolling by "estoppel." (ECF No. 133-1 at 99–100.) To avoid waiver, USF reiterates that tolling under principles of equitable estoppel are not available. Equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000), *overturned on other grounds by Socop-Gonzalez v. INS*, 272 F.3d 1176, 1194–96 (9th Cir. 2001). "'A defendant will be estopped to assert the statute of limitations if the defendant's conduct, relied on by the plaintiff, has induced the plaintiff to postpone filing the legal

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

1   action until after the statute has run.'" *Honig v. San Francisco Planning Dep't*, 127 Cal.App.4th

2   520, 529 (2005) (citation omitted).[9] Plaintiffs do not allege any facts supporting a finding that

3   Plaintiffs delayed filing suit on their contact claims due to USF's actions.

4        **Equitable tolling**. As USF has argued now several times, (ECF No. 103 at 10–11),

5   equitable tolling does not apply because Plaintiffs do not point to any prior proceeding involving

6   the "same wrong." *Acuna v. Regents of Univ. of Cal.*, 56 Cal.App.4th 639, 647 (1997) ("Equitable

7   tolling applies where the injured person has several legal remedies for the same harm and in good

8   faith pursues one."). As this Court previously explained (ECF No. 88 at 23), courts only apply

9   "equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of

10   causes of action, where the defendant would suffer no prejudice." *Lantzy v. Centex Homes*, 31

11   Cal.4th 363, 370 (2003). Here, USF would clearly be prejudiced by permitting stale contract claims

12   to proceed that span over two decades.

**B.   Plaintiffs' Claim for Breach of Express and Oral Contract Must be Dismissed Without Leave to Amend.**

13

14        The Court allowed Does 1–3 leave to amend their claims for breach of express and oral

15   contract (Counts XIII and XIV) only because Plaintiffs attached the wrong contracts to their third

16   operative pleading. (ECF No. 128 at 23–24.) The Court ***did not*** provide leave to amend the Third-

17   Party Beneficiary Claim (Count XV). Regardless, USF analyzes these claims (again) as if alleged

18   on behalf of all Plaintiffs solely to avoid waiver.

19

**1.   Plaintiffs Cannot Allege an Express Breach of Contract on Any of the Three "Contracts" Attached to the TAC (Count XIII).**

20

21        Plaintiffs attach three documents they allege are contracts to the TAC. (*See* TAC, Ex. B

22   (National Letter of Intent ["NLI"]), Ex. C (Form 19-1a Student Athlete Statement), and Ex. D

23   (Grant-in-Aid Agreement).) Plaintiffs allege these documents represent exemplars of the various

24

25   ─────────────────────

26   [9] Equitable estoppel has four elements under California law: "'(1) The party to be estopped must

27   know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to

28   his injury.'" *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1096 (9th Cir. 2021) (citation omitted).

agreements signed by each Plaintiff. (TAC ¶¶ 652, 667.) Notably, the NCAA 19-1a eligibility form (Exhibit B), is the same document Plaintiffs previously attached to each the FAC and SAC. Plaintiffs allege USF breached both their obligations under these agreements by failing to:

    (a)   Provide scholarships as promised;

    (b)   Provide athletics financial aid for one academic year (two semesters or three quarters);

    (c)   Protect the health of, and provide a safe environment for, each of its participating student-athletes;

    (d)   establish and maintain an environment that fosters a positive relationship between the student-athlete and coach; and

    (e)   establish and maintain an environment in which a student-athlete's activities are conducted as an integral part of the student-athlete's educational experience.

(TAC ¶¶ 666, 672.) However, these claims suffer from the same deficiencies that undermined their contract claims the last time around. Initially, Plaintiffs ***do not identify the contractual provision*** within any of Exhibits B–D, through which their five theories of breach arise. That alone warrants dismissal of these claims. *See Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 797 (C.D. Cal. 2022) ("[t]o survive a motion to dismiss, a plaintiff must identify a specific contract provision breached by the defendant") (citing *Misha Consulting Grp., Inc. v. Core Educ. & Consulting Sols., Inc.*, No. C-13-04262-RMW, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013)). USF should not be required to read each of the three agreements now affixed to the TAC and guess what provisions that Plaintiffs claim were breached. *See Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 923 (N.D. Cal. 2015) ("Under [FRCP] 8(a), a complaint 'must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.'") (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

    Again, to avoid waiver, USF presumes the first two theories of breach (items (a) and (b)), concern obligations owed under the Grant-in-aid Agreement. The latter three theories of breach— items (c) through (e)—appear to stem from obligations Plaintiffs argue are imputed to each of the three "agreements" through the NCAA Bylaws (Manual), which Plaintiffs claim are incorporated

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

by reference into these materials. For reasons discussed below, none of these theories hold merit. The contract claims should be dismissed without leave to amend.

a.     Plaintiffs Do Not Allege a Breach of the 2020-2021 National Letter of Intent (Exhibit B).

The NLI does not guarantee the provision of any scholarship or financial aid. It assures only that a player will be provided a "written offer of athletics financial aid" for the relevant academic year, to which the athlete or their guardians must acknowledge receiving. (TAC, Ex. B ¶ 2.) Plaintiffs cannot assert any purported failure by USF to honor the terms of the NLI by failing to **provide** scholarships or financial aid—that point is doubly true, because Plaintiffs attach another contract that purportedly governs the actual provision of financial aid to student athletes (*i.e.*, TAC, Ex. D (the Grant-in-Aid Agreement)).

Plaintiffs allege that USF breached the NCAA Bylaws as incorporated into the NLI. But Plaintiffs do not (and cannot) point to any language in the NLI that indicates any intent to incorporate the Bylaws as terms. "The general rule is that the terms of an extrinsic document may be incorporated by reference in a contract so long as (1) *the reference is clear and unequivocal*, (2) *the reference is called to the attention of the other party and he consents thereto*, and (3) the terms of the incorporated document are known or easily available to the contracting parties." *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal.App.4th 697, 713 (2009) (emphasis added). The NLI includes no declaration of intent to incorporate any (let alone all) of the Bylaws. *See also Chang v. McDonald's Corp.*, 105 F.3d 664 (9th Cir. 1996) (establishing that a contract may incorporate by reference another document only if the intent to do so is clear on the face of the contract). Nor does the NLI "call to the attention" of any party consenting to the express terms therein that the Bylaws are incorporated by reference. In fact, the certification at the end of the NLI contemplates only an agreement to the express terms listed, **not** the NCAA Bylaws. (*See* TAC, Ex. B at 4] ("I certify that I have read all terms and conditions included in this document. I have discussed them with the coach and/or other staff representative of the institution named above, and I fully understand, accept and agree to be bound by them.").)

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

b.     <u>The Form 19-1a Student-Athlete Statement (Exhibit C) is Not a
Contract, Nor Does it Incorporate the NCAA Bylaws.</u>

The Form 19-1a Student Athlete Statement (Exhibit C) is not a contract. Plaintiffs'
conclusory allegations regarding the form's legal significance may be disregarded,[10] because
there is nothing on Form 19-1a to indicate any manifestation of mutual assent between USF and
the student to enter a contractual relationship. *Long v. Provide Com., Inc.*, 245 Cal.App.4th 855,
862 (2016) ("Mutual manifestation of assent, whether by written or spoken word or by conduct,
is the touchstone of contract.") (internal quotation marks and citation omitted).

Only the NCAA's logo appears on the Form. USF is not mentioned anywhere on the
document. While the form generally refers to an "institution," it contains no affirmative
commitment by the "institution" to do anything but obtain and store the completed form for 6
years. (TAC, Ex. C at 7.) In fact, a close examination of Form 19-1a reveals that it is an attestation
form regarding the student's eligibility, not a contract or bargained-for exchange. The Form states
its "purpose" is "[t]o assist [the NCAA] in certifying eligibility." (TAC, Ex. C at 1.) The form
allows the collection of information to assure a student is eligible to participate in NCAA sports.

Plaintiffs cannot unilaterally transform the eligibility form into an agreement between them
and USF. *See Holmes v. Lerner*, 74 Cal.App.4th 442, 457 (1999), as modified (Sept. 7, 1999) ("If
there is no evidence establishing a manifestation of assent to the same thing by both parties, then
there is no mutual consent to contract and no contract formation.") (internal quotation marks and
citation omitted).

Plaintiffs' attempt to incorporate "terms" from the NCAA Bylaws into the eligibility form
is unjustified. There is nothing to indicate mutual assent to incorporate any provisions of the
Bylaws into Form 19-1a. *See Holmes*, 74 Cal.App.4th at 457. Each and every reference to the
Bylaws in that form only reaffirms that the purpose of Form 19-1a is to ensure a player properly

---

[10] The Court should disregard Plaintiffs' suggestion that USF had any part in drafting or otherwise
negotiating the contents of the eligibility form, which it did not, because the form is clearly an
NCAA form. (TAC, Ex. C); *see Long*, 245 Cal.App.4th at 862. The Court may disregard
allegations that are contradicted by exhibits to the SAC. *Sprewell v. Golden State Warriors*, 266
F.3d 979, 988 (9th Cir. 2001). The Court may also disregard conclusory allegations and arguments
not supported by reasonable deductions and inferences. *Id.*

12

attests to his/her eligibility. (*See* TAC, Ex. C at 1 (directing athlete to review Bylaws to provisions that "address your eligibility"); *id.* at 2 (stating the eligibility conditions the athlete must meet are outlined in NCAA Bylaws); *id.* (identifying "Statement Concerning Eligibility" to ensure student reviewed Bylaws before affirming that he/she is eligible to participate in the NCAA).)

c.  Plaintiffs Cannot Allege a Breach of the USF "Grant-in-Aid Agreement" (Exhibit D) to any Particular Plaintiff.

Plaintiffs contend USF breached an agreement to "provide scholarships as promised" or "by failing to provide athletics financial aid for one academic year." (TAC ¶¶ 666, 672.) Initially, Plaintiffs do not identify from which of the three "contracts" these purported obligations arose, nor do Plaintiffs specify when exactly this breach occurred for any particular Doe. Once again, Plaintiffs instead cobble their allegations together in the form of a single claim, which ironically illustrates larger problems with this case in a class context.

Despite Plaintiffs' attempt to muddy the waters, and based on the limited information provided in the TAC, USF assumes Plaintiffs are claiming entitlement to benefits under the model Grant-in-Aid Agreement attached as Exhibit D to the TAC. However, the fatal flaw with Plaintiffs' allegations as framed is that ***none of the Plaintiffs have a claim for breach for USF's purported failure to provide scholarships or other financial aid***.[11]

The TAC concedes Does 4, 7, and 14 were not offered "grant in aid" scholarships or promised benefits.[12]

Similarly, Doe 6 "was allowed to retain his partial scholarship for his last year in college" despite him not playing baseball, (TAC ¶ 543; *see also* ¶ 400), which directly contradicts Plaintiffs' sweeping assertion that USF breached any such obligation to him.

The remaining Plaintiffs voluntarily relinquished their scholarships and left USF,

---

[11] What should now be clear is that each Doe (let alone the absent class members) faced different experiences regarding the claims alleged in this action—including those related to purported scholarship or financial aid obligations of USF. Not even the named Plaintiffs are similarly situated nor are their claims typical. This critical flaw undermines Plaintiffs' class allegations.

[12] Doe 14 signed a Letter of Intent but was a walk-on (TAC ¶ 332); Does 4 and 7 are alleged only to have signed a Letter of Intent (*id.* ¶¶ 274, 404), there are no allegations that they were offered grant-in-aid, scholarships, or other benefits, as alleged for the other Does.

13

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

1    removing any obligation of USF to provide scholarships or financial aid to them under any

2    applicable agreement. (*Id.* ¶¶ 561–562.) Page 2 of the Grant-in-Aid Agreement, under the section

3    entitled Reduction or Cancellation Permitted," provides that financial aid may be "reduced or

4    canceled" if the recipient "voluntarily withdraws from a sport at any time for personal reasons."

5    Here, the TAC alleges that various Plaintiffs voluntarily gave up their scholarships by leaving

6    USF: **Doe 1** transferred to another school in the fall of 2022 and knowingly relinquished his

7    scholarship. (TAC ¶ 192.) **Doe 2** "advised USF that he intended to transfer and lose his

8    scholarship." (*Id.* ¶ 210.) Despite being told he could "stay and finish the school year" and

9    acknowledging that "[t]he guaranteed scholarship was important to him" **Doe 3** entered the

10   transfer portal. (*Id.* ¶¶ 244–245.) **Doe 5** quit the team, despite his scholarship "increas[ing] over

11   the years." (*Id.* ¶¶ 345, 372.) "**Doe 8** decided to transfer" after one semester. (*Id.* ¶ 432.) Plaintiffs

12   claim USF forced "John Doe 8 to give up his scholarship," (*id.* ¶ 435), but the preceding Paragraph

13   alleges Doe 8's decision was based on his "high school baseball coach [convincing him] to

14   continue playing college baseball at a lower division." (*Id.* ¶ 434.) **Doe 9** decided to "give up his

15   scholarship and leave USF to maintain his mental health." (*Id.* ¶ 452.) **Doe 10** voluntarily asked

16   to leave the team "to protect his mental health and get the coaching support he deserved." (*Id.* ¶

17   269.) Doe 11 transferred out of USF after his freshman year, recognizing that if he stayed, he

18   would have been able to keep his scholarship, like another player did. (*Id.* ¶ 475.) **Doe 12** similarly

19   "quit the USF baseball team" to leave for another D1 school knowing he would not have financial

20   assistance. (*Id.* ¶ 309.) **Doe 13** voluntarily left the team after his sophomore year. (*Id.* ¶ 330.)

21          That means Does 1–3, 5, 8, 9, 10, and 12, who each voluntarily left the team and gave up

22   their scholarship and financial aid, have no claim against USF for its purported failure to continue

23   providing those benefits.

24          If that were not enough, the TAC contains nothing but conclusory allegations concerning

25   USF's purported failure to pay promised scholarships or financial aid. *See Backus*, 122 F.Supp.3d

26   at 923 ("'Under [FRCP] 8(a), a complaint must contain sufficient allegations of underlying facts

27   to give fair notice and to enable the opposing party to defend itself effectively.'" (quoting *Starr*,

28   652 F.3d at 1216)). The TAC provides no information regarding the timing of these breaches—

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD
AMENDED COMPLAINT**

let alone when each breach occurred over the course of more than 20 years. That information is necessary for USF to discern exactly what defenses USF may have to each individual claim. *Id.*; *see also Satvati*, 634 F. Supp. 3d at 797; *Misha Consulting Grp., Inc.*, 2013 WL 6073362, at *1 (to sufficiently plead the existence of a contract, "the plaintiff must identify with specificity the contractual obligations allegedly breached by the defendant.").

### 2. Plaintiffs Still Do Not Allege A Claim for Oral Contract (Count XIV).

Plaintiffs' oral contract claim is based on the same allegations as their express contract claims. (TAC ¶¶ 674–679.) Count XIV thus fails for the same reasons as Count XIII. The claim fails for additional reasons as well.

### a. An Oral Contract Claim Cannot be Based on the Same Terms that Plaintiffs Allege are Contained within Written "Contacts".

Plaintiffs' oral contract claims cannot proceed because the terms of any purported oral agreement are those that Plaintiffs admit are contained within express agreements. *See Gardiner v. Burket*, 3 Cal.App.2d 666, 669 (1935) ("Evidence of a contemporaneous oral collateral contract is admissible as long as the collateral contract does not conflict with the terms of the written contract, and covers a matter distinct from . . . the express subject-matter of the written instrument, and is not embodied therein."). An oral-contract claim predicated on breach of the same terms that Plaintiffs assert are contained in the very documents they affix as Exhibits B, C, and D to the TAC, is not actionable. *Id.* Plaintiffs cannot plead in the alternative to the extent they claim each Plaintiff signed an NLI and the Student-Athlete Statement for their respective years on which their claims for breach are based.

### b. The Statute of Frauds Bars the Oral Contract Claims for Does 2, 3, 10, 12, and 13.

The Statute of Frauds bars any oral contract claim of Does 1, 2, 3, 10, 12 and 13, for any failure of USF to provide scholarships or other financial aid, because the TAC alleges each of

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

these Doe Plaintiffs agreed to a four-year renewable scholarship.[13] (SAC ¶ 128) (after 2015 schools were required to give guaranteed four-year scholarships). "[A] contract is invalid under the statute of frauds '[w]hen it is evident from the subject matter of the contract that the parties had in contemplation a longer period than one year as the time for its performance.'" *Tostevin v. Douglas*, 160 Cal.App.2d 321, 327 (1958) (citation omitted); *see also White Lighting Co. v. Wolfson*, 68 Cal.2d 336, 342 (1968) (same). In sum, Plaintiffs' oral contract claims fail as a matter of law. But that is doubly true for Does 1, 2, 3, 10, 12, and 13, whose claims are barred by the Statute of Frauds.

## C. In Direct Contravention of This Court's Prior Order, Plaintiffs Reassert their Third-Party Beneficiary Claim (Count XV); The Court Should Dismiss. This Claim (Again).

The Court previously dismissed Plaintiffs' Count XV for breach of contract as third-party beneficiaries, finding Plaintiffs could not sue USF for breach of the terms of the NCAA Bylaws (Manual) in a beneficiary capacity. (ECF No. 128 at 26.) Both Plaintiffs and USF submitted substantial briefing on the issue, which contained authorities relevant to the inquiry. (*See* ECF Nos. 103, 114, 118.) Ultimately, the Court ruled in USF's favor, explaining that while students may benefit from pronouncements made in the Bylaws, the existence of these pronouncements did not "clearly manifest" intent to make Plaintiffs third-party beneficiaries. (*Id.*)

The Court found this case analogous to that of *Hairston v. Pacific 10 Conference*, 101 F.3d 1315, 1320 (9th Cir. 1996).[14] There, a group of football players, like the Plaintiffs here,

---

[13] Doe 1 (2020–2022) was offered a "four-year athletic and academic grants-in-aid (scholarships) of approximately $60,000 per year." (TAC ¶ 163.) Does 2 (2020-2022) and 3 (2021-2022) signed a "four year guaranteed four-year athletic and academic grants-in-aid (scholarships)" to attend USF (TAC ¶¶ 195, 218); Doe 10 (2017-2018) also received an "athletic and academic grants-in-aid (scholarships)" to play (*id.* ¶ 251); Doe 12 (2017-2018) signed a National Letter of Intent after being offered a "4-year guaranteed scholarship" (*id.* ¶ 290); Doe 13 (2016-2018), "was offered (and accepted) a renewable annual athletic and academic grants-in-aid (scholarships)" (*id.* ¶ 314). Each also signed a National Letter of Intent.

[14] USF's arguments regarding Plaintiffs' third-party beneficiary claim are substantially the same as they were on USF's prior Motion to Dismiss. (*See* ECF No. 103 at 18-22; ECF No. 118 at 21-22.) USF incorporates its prior arguments made in each its prior Motion to Dismiss the SAC and its Reply thereto.

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

sought to rely on "vague, hortatory pronouncements in [a] contract" to signify the Pac-10's express intent to assume direct contractual obligations to every student athlete who may benefit from them—a proposition the *Hairston* court appropriately rejected. This Court found:

> *Hairston* is persuasive. The court applies it here. ***Nothing shows an intent to create a contractual obligation to the plaintiffs.***
>
> The plaintiffs' cases are distinguishable, largely for the reasons that USF advances. ***More practically, this is a tort case, not a breach-of-contract case. The NCAA principles may describe some of the rules of the road. That is how one tries a tort case: by reference to the duty of care. But that does not make a hortatory pronouncement (however important) a contractual obligation that benefits the plaintiffs as third-party beneficiaries.***

(ECF No. 128 at 26–27 (emphasis added).) Despite this ruling—and in absence of permission by the Court providing leave to amend this claim—Plaintiffs reassert and reallege their Count XV. On this ground alone, the Court should dismiss the claim, and this time make certain to expressly state that it is dismissed without leave to amend.

While the Court should not consider Plaintiffs' additional allegations because Plaintiffs were not afforded leave to amend this claim, USF is nevertheless forced to address those new allegations to avoid waiver. On that point, Plaintiffs' additional allegations do nothing to change the Court's ruling. First, Plaintiffs add allegations concerning the NCAA's and USF's intent:

> The NCAA agreed to promulgate and enforce certain rules and regulations, including those set forth in the Manual to protect the safety and wellbeing of each student-athlete. NCAA member institutions, like USF, agreed to abide by and assist in the enforcement of NCAA rules and regulations to protect the safety and wellbeing of each student-athlete.

(TAC ¶ 683.) These allegations are conclusory and premised only on Plaintiffs' own speculative characterization of each the NCAA's and USF's specific intent with regard to the Bylaws. These allegations do nothing to show any "motivating purpose" between the NCAA and USF to affirmatively assume individual obligations to student-athletes as intended beneficiaries. *Wexler v. Cal. Fair Plan Ass'n*, 63 Cal.App.5th 55, 65 (2021). The Court can and should disregard such allegations. *See Sprewell*, 266 F.3d at 988.

Plaintiffs add other, conclusory allegations that "[t]he Manual sets out specific commitments by the NCAA and its member institutions that expressly recognize that the NCAA

17

rules are intended to benefit student-athletes like Plaintiffs." (TAC ¶ 686.) This new paragraph precedes the very same excerpts contained in Plaintiffs' SAC that the Court already rejected as establishing any clear intent to affect rights to Plaintiffs as third-party beneficiaries. (*Compare* SAC ¶ 686, *to* TAC ¶ 687.)

Plaintiffs then include other cherry-picked excerpts from the Manual which Plaintiffs summarily allege shows an intent "to create contractual obligations between themselves for the benefit of student-athletes." (TAC ¶ 688.) Plaintiffs point to the following:

(a) NCAA "[l]egislation governing the conduct of intercollegiate athletics programs of member institutions shall apply to basic athletics issues such as admissions, financial aid, eligibility and recruiting. Member institutions shall be obligated to apply and enforce this legislation, and the infractions process of the Association shall be applied to an institution when it fails to fulfill this obligation." NCAA Const., Art. 1, § 1.3.2;

(b) "Division membership criteria constitute enforceable legislation. Each member institution shall comply with all applicable criteria of its division." NCAA Const., Art. 3, § 3.01.2;

(c) Member "institutions . . . must accept and observe the principles set forth in the constitution and bylaws of the Association." NCAA Const., Art. 3, § 3.1.1;

(d) "The institution shall administer its athletics programs in accordance with the constitution, bylaws and other legislation of the Association." NCAA Const., Art. 3, § 3.2.1.2.

(*Id.*) These additional excerpts are no different than those this Court already considered and rejected. Like the provisions previously identified by Plaintiffs and considered by the Court on USF's prior Motion (ECF No. 128 at 25), these terms are generic principles regarding NCAA members' athletic programs, nothing more. As this Court previously held, just like the Court in *Hairston*, these "'vague, hortatory pronouncements'" serve nothing more than describe "some rules of the road" but do nothing to show a contract "'clearly manifest[ing]'" intent to benefit Plaintiffs. (ECF No. 128 at 25–26 (citing cases).)

Again, no court has found that student-athletes are beneficiaries to the Bylaws on claims like those alleged here. But, even if Plaintiffs were intended beneficiaries—for the several reasons stated above, they are clearly not—the provisions they claim were breached are too indefinite to

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

be enforced. *See Trew v. Int'l Game Fish Ass'n, Inc.*, 404 F. Supp. 2d 1173, 1178 (N.D. Cal. 2005 ("To be enforceable, a contract must be definite enough that a court can determine both the scope of the duties and the limits of performance involved in the contract, such that it has a rational basis for assessing damages."). Plaintiffs cannot dispute that these provisions provide no definite assurance to do anything on which a party's performance could be deemed sufficient or not. (TAC ¶ 687.) *See Thompson v. Oracle Corp.*, 574 F. Supp.3d 738, 744 (N.D. Cal. 2021) ("Under California law, where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.") (internal quotations omitted). Plaintiffs simply wish to impute on USF generalized "commitments" identified in the Bylaws. Plaintiffs cannot illustrate what would be deemed adequate performance by USF, and what would not. The ultimate problem with Plaintiffs' entire third-party beneficiary theory was previously recognized by this Court: "More practically, this is a tort case, not a breach of contract case." (ECF No. 128 at 26.) The claim must be dismissed without leave to amend.

**D.      Plaintiffs' Claim for Injunctive Relief Must be Dismissed Without Leave.**

**1.      Plaintiffs Lack Standing to Seek Injunctive Relief.**

This Court previously explained the standard for assessing standing to seek an injunction:

> "[S]tanding for injunctive relief requires that a plaintiff show a 'real and immediate threat of repeated injury[.]'" *Updike v. Multnomah Cnty.*, 870 F.3d 939, 947 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). The plaintiff must show that the defendant's "wrongful behavior is likely to recur against him." *Id.* At 948. And where circumstances change after commencement of a suit such that the wrongful behavior is no longer likely to recur against the plaintiff (for example, because the plaintiff left his job with the defendant), "his claims for prospective relief [become] moot because he [can] no longer benefit from such relief." *Slayman v. Fedex Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014) (a named plaintiff worked at fedex at the outset of suit but later left the job; his claim for prospective relief became moot such that the class action also became moot).

(ECF No. 128 at 29–30.)

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

Following settled Ninth Circuit precedent, the Court dismissed Plaintiffs' request for injunctive relief[15] on the grounds that all Plaintiffs lacked standing. Specifically, the Court found Plaintiffs' request for an injunction moot because every Plaintiff admits he is no longer a student at USF. (ECF No. 28–30.) While the Court provided Plaintiffs leave to amend, it did so solely to allow Plaintiffs the opportunity to address the "changed circumstances" surrounding Doe 1's transfer from USF after the filing of the Complaint. (ECF No. 128 at 30.) There have been no changed circumstances, and Plaintiffs' amendments to the TAC do not change the Court's prior holding: Doe 1 obviously lacks standing.

Plaintiffs altered only two paragraphs by inserting contradictory, conclusive and speculative allegations in a blatant attempt to create a live controversy to manufacture Doe 1's standing. Those changes are reflected in TAC, Exhibit A, at paragraphs 192 and 193:

> 192. USF encouraged John Doe 1 to ~~sign a document to enter the transfer portal so he could play baseball at another college or university. Contrary to the assertions USF made to John Doe 1, that document contained a location for John Doe 1's signature, agreeing that USF could~~ transfer by entering the transfer portal. However, in order to enter John Doe 1 into the transfer portal, USF gave John Doe 1 a document to sign that stated that by entering the transfer portal, USF would be entitled to revoke his scholarship. John Doe 1 refused to sign ~~that portion of~~ the document. ~~In January 2022~~ Nevertheless, USF entered John Doe 1 ~~entered~~ into the transfer portal, in January 2022. John Doe 1 finished the school year at USF remotely, and transferred to another school in the fall of 2022.
>
> 193. Although John Doe 1 was and continues to be traumatized by his experience at USF, there is a reasonable likelihood that John Doe 1 would return to USF if USF implemented and enforced appropriate policies to ensure the abuse he endured would not occur again.

Plaintiffs' attempt to manufacture standing by claiming that John Doe 1 "would return to USF if USF implemented and enforced appropriate policies" is clearly insufficient. Plaintiffs **do not** seek an order reinstating them as students; they ask for an injunction requiring USF to adopt, implement, or enforce policies related to preventing **future** Title IX violations. To justify

---

[15] Plaintiffs pray the Court to award injunctive relief requiring USF to adopt, implement, and enforce appropriate policies and procedures to prevent, or properly respond to sexual misconduct and psychological abuse of students and student-athletes. (*See* TAC, Prayer for Relief ¶ C.)

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

injunctive relief, Plaintiffs must show without such an order in place, they face imminent injury or risk of repeated harm. Plaintiffs' allegations do no such thing. Even if Doe 1 experienced misconduct earlier in his tenure at USF, past wrongs do not amount to a real and immediate threat of injury for purposes of establishing standing. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). Doe 1 does not claim that at the time of his transfer, he experienced or currently experiences or fears alleged misconduct or retaliation by USF or Defendant Coaches. As such, Doe 1 has not shown that he currently faces any threat of repeated injury. *See Lyons*, 461 U.S. at 109.

Plaintiffs' statement that Doe 1 "would return" to USF relies on a "chain of speculative contingencies" insufficient to confer standing. *See, e.g.*, *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1095, 1099 (9th Cir. 2000) (concluding that the two original plaintiffs, who had graduated, and a third, later-joined plaintiff, who graduated before the appeal, lacked standing to seek injunctive relief because they either graduated or the likelihood that they would suffer a future injury depended upon a "highly speculative assumption"); *Botello v. Morgan Hill Unified Sch. Dist.*, No. C09-02121 HRL, 2009 WL 3918930 (N.D. Cal. Nov. 18, 2009) (granting motion to strike plaintiff's request for preliminary injunction and finding that a "desire to return to the district someday fails to support a claim" that plaintiff, who transferred out of and was no longer a student at the defendant school district, was currently "at risk of immediate, irreparable injury").

Here, Plaintiffs' claim for imminent injury is based on a speculative assumption that a series of unpled events might occur. Doe 1 does not plead he has applied to transfer back to USF or that he has even started his transfer process; he does not plead that he has been accepted to USF; he does not allege he is still playing baseball or that he has any eligibility left to play. In fact, ***it is not possible for Doe 1 to transfer back to USF because the current fall quarter marks the start of Doe 1's senior year***, USF's fall quarter began only a week after the TAC was filed, the fall baseball season is underway, and the TAC fails to provide any specifics about his potential transfer back to USF.

What should now be clear from the face of the TAC, as well as Plaintiffs' filing of their ***fourth*** complaint, is that they continue to make bold proclamations absent factual support. Simply

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

put, no Plaintiff can allege imminent risk of injury to confer standing. *See Bates*, 511 F.3d at 985 ("The plaintiff class bears the burden of showing that the Article III standing requirements are met."). That is because no Plaintiff can demonstrate "that he is ***realistically threatened by a repetition of [the violation]***." *Lyons*, 461 U.S. at 109 (finding that the plaintiff cannot establish the requisite type of harm to confer standing simply by pointing to some past injury) (emphasis added). No Plaintiff can show he "'can reasonably expect to encounter the same injury in the future.'" *See R.G. v. Koller*, 415 F. Supp. 2d 1129, 1136 (D. Haw. 2006) (citation omitted).

### 2.   In any Event, Plaintiffs Cannot Seek Injunctive Relief as They have an Adequate Remedy at Law.

More important is that none of these allegations do anything to refute how Plaintiffs should be entitled to seek injunctive relief when they concede they have an adequate remedy at law.

"It is a fundamental principle . . . that a request for an injunction will not be granted as long as an adequate remedy at law is available." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 n.22 (1985); *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *8 (N.D. Cal. Sept. 8, 2016) (dismissing claims that sought injunctive relief because plaintiffs' other-asserted causes of action grounded in tort and contract provided an adequate remedy at law. Even if Plaintiffs were still students at USF (they are not), any of their alleged past injuries may be redressed through monetary damages, as Plaintiffs concede in the TAC. (*See* TAC, Prayer for Relief ¶ D (requesting compensatory damages punitive damages, damages for pain and suffering and emotional distress, and any other relief to which they are entitled under the law). This alone bars Plaintiffs' request for an injunction.

///
///
///
///
///
///
///

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**CASE NO. 3:22-CV-01559-LB**

1   **IV.      CONCLUSION**

2          For the foregoing reasons, USF respectfully requests that the Court grant its Motion to

3   Dismiss as to the causes of action identified herein and deny leave to amend. *See Rutman Wine*

4   *Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not

5   an abuse of discretion where the pleadings before the court demonstrate that further amendment

6   would be futile.").

7

8   Dated:  September 13, 2023                    Respectfully submitted,

9                                                STEPTOE & JOHNSON LLP

10

11                                               By:  ___/s/ Jonathan M. Baum_____
                                                 Jonathan M. Baum (SBN 303469)

12                                               Geoffrey L. Warner (SBN 305647)
                                                 Nicolena F. Farias-Eisner (SBN 336158)

13

14                                               *Attorneys for Defendant*
                                                 UNIVERSITY OF SAN FRANCISCO

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT UNIVERSITY OF SAN FRANCISCO'S MOTION TO DISMISS THIRD
AMENDED COMPLAINT**
                                        **CASE NO. 3:22-CV-01559-LB**