# EXHIBIT A

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, JOHN DOE 12, JOHN DOE 13, and JOHN DOE 14, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNIVERSITY OF SAN FRANCISCO, ANTHONY N. (AKA NINO) GIARRATANO, and TROY NAKAMURA,<br><br>Defendants. | Case No.  3:22-cv-01559-LB<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

**I.    PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") and Hard Copy Documents (collectively, "Document" or "Documents") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. Nothing in this Order is intended to expand or limit the parties' obligations under the Federal Rules of Civil Procedure. Any disputes arising out of the production of Documents subject to this Order shall be resolved according to Federal Rules of Civil Procedure, Local Rule 26, and the Court's Standing Orders.

**II.    COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to

cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## III. LIAISON

The parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention. The parties reserve their right to update or change the identified liaison, as needed.

## IV. PRESERVATION

The parties will discuss their preservation obligations and needs. The parties agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) ESI created or received between January 1, 1998 and the present will be preserved. Pursuant to Fed. R. Civ. P. 26(b)(2)(B), the parties agree that certain data sources identified by the Parties that are no longer in use that cannot be accessed or may not be reasonably accessible because of undue burden or cost, and ESI from these identified sources will be preserved but not searched, reviewed, or produced.

b) The parties agree to exchange a list of the types of ESI they believe should be preserved (including non-custodial sources of ESI) and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "HR head," "scientist," and "marketing manager." The parties shall negotiate in good faith regarding the specific custodians from whom a Producing Party will collect documents, and the parties shall add or remove custodians as reasonably necessary to ensure collection is proportional to the needs of the case;

c) The parties will agree on the identity of custodians for whom ESI will be preserved;

d) The parties shall have a continuing obligation to take reasonable and proportional steps to identify and preserve custodial and non-custodial data sources that may contain information that is relevant to the claims and defenses in this litigation;

e) Where applicable, sources of Documents include but are not limited to desktop servers, computers, laptops, local hard drives, file servers, databases, SANs, NASs, email servers, web servers, network home or personal file shares, any

shared drives, document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/ project/collaborative/shared storage spaces removable storage, email, removable storage media, on-line data storage (e.g., Dropbox or Google Drive), messaging phones, tablets social media, and physical or hard copy files and documents;

f) Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following: deleted, "slack," fragmented, or unallocated data only accessible by forensics, random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; and structural files not material to individual file contents (e.g. .CSS, .XSL, .XML, .DTD, etc.);

g) If a Producing Party is aware of inaccessible data that is likely to contain unique, discoverable ESI, it will identify the source from which it claims the data is not reasonably accessible to the Receiving Party.

## V.    SEARCH

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer on a reasonable basis about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery, including the use of search terms, filters, date ranges, and custodians. Within 45 days of service of a request for production of documents, a Producing Party shall specify the technique or techniques (e.g., search terms, technology assisted review ("TAR"), or manual collection) it will use to search for material it reasonably anticipates will be responsive to those requests. If the Requesting Party objects to the particular technique or techniques, the parties will timely meet and confer regarding the matter and submit any unresolved disputes to the Court for resolution.

1.     Prior to the use of search terms, the parties will agree upon a Search Protocol that will include: (a) the criteria to be used to identify the universe of documents to which search terms will be applied, and (b) search terms to be applied to that universe of documents, subject to revision based on, for example, meet and confer of the parties and the number of hits returned by each term. As necessary to reach agreement on search terms, the parties shall provide hit reports for proposed search terms to narrow the universe of documents to be searched. The Search Protocol shall include a requirement that a Producing Party review one random sample of 1,000 distinct documents that do not hit on the search terms that are agreed upon by the parties (the

3

"Null Set"). The Null Set shall come from each custodian and include documents throughout the entire date range. The Producing Party shall then review the Null Set and produce any responsive documents. If 10% or less than 10% of these documents are responsive, then the agreed-upon Search Protocol will be deemed sufficient and will remain in effect to govern the parties' collection and production of documents, until otherwise agreed by the parties or ordered by the Court. If more than 10% of these documents are responsive (i.e., 100 documents), then parties shall revisit the agreed-upon search terms by analyzing the documents produced from the Null Set and determining which additional terms are necessary. The parties agree to meet and confer regarding the Search Protocol and to raise any disputes regarding the Search Protocol for resolution by the Court.

2.      In the event TAR is used, the parties agree to meet and confer in good faith about the process to be used.

## VI.    PRODUCTION FORMATS

The parties agree to produce documents in ☒ PDF, ☒TIFF, ☒native and/or ☒paper or a combination thereof (check all that apply)] file formats, pursuant to the requirements set forth in Appendix 1 and 2. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

## VII.   DOCUMENTS PROTECTED FROM DISCOVERY

1.      The Parties will submit to the Court a Stipulated Confidentiality Agreement and [Proposed] Protective Order (the "Protective Order"), governing the production of confidential and/or privileged or work-product-protected documents, and agree to follow the provisions set forth in that Protective Order.

2.      Nothing set forth in either the Protective Order or this section constitutes a concession by any party that any Documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine. Neither the Protective Order nor this section is intended to waive or limit in any way either party's

right to contest any privilege claims that may be asserted with respect to any of the Documents produced.

## VIII.    MISCELLANEOUS

### A.    Technical Variances.

Recognizing that each Producing Party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of Documents or ESI. No party shall unreasonably object to any such variance.

### B.    Privileged Documents and Privilege Log.

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

Pursuant to the Standing Order for Judge Laurel Beeler and Fed. R. Civ. P. 26(b)(5), if a party withholds material on the basis of a claim of any privilege or other discovery limitation as privileged, it must produce a privilege log that describes the natures of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, is sufficiently detailed for the opposing party or the Court to understand and assess whether the assertion of privilege is justified.

Privilege logs will be provided as quickly as possible and no later than 28 days after any party's production of documents. Privilege logs must contain the following: (a) the title and description of the document, the number of pages, and the Bates-number range, if any; (b) the subject matter or general nature of the communication (without disclosing its contents); (c) the identity and position of its author; (d) the date of the communication; (e) the identity and position of the recipients of the communication; (f) the location where the document was found; (g) the

5

specific basis for the assertion that the document is privileged or protected (including a brief summary of any supporting facts); and (h) the steps taken to ensure the confidentiality of the communication, including an affirmation that no unauthorized persons received the communication.

The parties agree to take reasonable and proportional steps to designate any attorney or an employee of any Defendants' legal department with an asterisk on any privilege log. Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

C.    **Hard Copy Document Storage.**

During the pendency of this litigation, the parties shall make reasonable efforts to preserve the originals of all hard copy Documents as to which there may be issues of legibility of all or any part of the production copy. Each party reserves the right to request to inspect such original Documents of the opposing party or parties, which request shall not be unreasonably denied. If such request to inspect is denied, the party may seek relief from the Court.

D.    **Reproduction as Natives.**

The parties agree that to the extent any party seeks production in native format of specifically identified ESI produced originally in TIFF form, the Producing Party shall respond reasonably and in good faith to any such request.

IX.    **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

## APPENDIX 1
## PRODUCTION DELIVERY REQUIREMENTS

**I.      GENERAL PRODUCTION PROVISIONS**

The parties have agreed that ESI should be produced as TIFF images and in Native format with accompanying data and image load files. Upon a showing that certain documents warrant a different production format, the parties agree to cooperate in the arrangement of a mutually acceptable production in a different production format. The parties also agree not to degrade the searchability of documents as part of the document production process.

**A.  TIFF Image Files.**

Unless otherwise agreed by the parties, the parties agree that all Documents, with the exception of Documents produced in Native Format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the Producing Party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

**B.  Text Files.**

Each Document produced under this Order shall be accompanied by a document level text file containing all of the text for that document, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding document. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned documents as applicable. The .DAT load file shall include a link to the corresponding text file.

**C.  OCR Text File.**

The parties will provide searchable OCR text of any paper or imaged Documents, unless the party determines that the utility of the OCR is outweighed by the expense. In that case, the Producing Party will produce the documents as they are kept in the ordinary course of business.

**D.  Extracted Text Files from ESI.**

The parties shall extract the text of each ESI item directly from the ESI native file, where

extracted text is reasonably available. For contacts and calendars collected and/or processed after the execution date of this Order, fields should be extracted and produced as text.

**E. OCR Text for Redacted Documents.**

The parties will provide searchable OCR text for any redacted files.

**F. Bates Numbering.**

1. Each TIFF image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document. The Producing Party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a Producing Party skips a Bates number or set of Bates numbers in a production, the Producing Party will identify and note the gap in the cover letter or production log accompanying the production.

2. The Producing Party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. If the Receiving Party believes that a Bates number obscures the content of a Document, then the Receiving Party may request that the Document be produced with the Bates number in a different position.

**G. Re-Production of Prior or Other Litigation Documents.**

Where a Requesting Party seeks re-production of a set of documents produced in a prior litigation or any other proceeding, or where a prior production of documents or ESI by a party in a prior litigation or any other proceeding is the only reasonably accessible source of those documents or ESI to be produced by a party in this litigation, the Producing Party may re-produce such documents in the manner in which they were produced in the prior case, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the Producing Party as part of the productions set. For any such re-production in accordance with this paragraph, the Producing Party is not obligated to re-format the prior production in accordance with the production specifications in ESI stipulation, but must provide Bates numbering and confidentiality designations specific to this litigation.

**H.  Parent-Child Relationships.**

Parent-child relationships for all embedded ESI documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2. For example, if a party is producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email.

**I.  Color Documents.**

If an original ESI Document contains color text, markings or graphics, the ESI Document shall be produced in color format. The Producing Party shall produce such Document(s) and/or ESI in color JPEG format, or in native format. This section also applies to documents that are produced as TIFF images.

**J.  Confidentiality Designations.**

If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document, in the lower left-hand corner of the Document, or as close thereto as possible while preserving the underlying image. If the Receiving Party believes that a confidentiality designation obscures the content of a Document, then the Receiving Party may request that the Document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document. For each Document that is marked confidential, a Confidentiality field will be populated with the word "Confidential" in the .dat file. Also, any documents marked Confidential must be handled in accordance with the Protective Order entered in this case.

## II.    PRODUCTION OF HARD COPY DOCUMENTS

All hard copy Documents that are scanned will be produced in electronic form. Where necessary and practicable, hard copy Documents in color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color documents will be provided in JPG file format.

### A.  Unitization of Paper Document.

To the extent practicable, hard copy Documents shall be unitized using logical document determinations or "LDD."

### B.  Identification.

Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

### C.  Custodian Identification.

The parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

### D.  Metadata.

The metadata associated with each hard copy Document need only identify the Bates number, the custodian associated with that hard copy Document, and any Confidential Designation or Redaction applied to that Document.

## III.    PRODUCTION OF ESI

### A.  De-NISTING.

The producing party shall take reasonable efforts to de-NIST ESI productions using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTED files need not be produced.

### B.  Native Files.

Certain files types, such as presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), and multimedia audio/visual files such as

10

voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in native format. For files produced in native format, the Producing Party shall provide a single-page TIFF slip-sheet with the applicable Bates stamp indicating that a native item was produced. The corresponding load (.DAT) file shall include a NativeFileLink which provides the relative path linking information for each native file that is produced. In addition, the confidentiality designation will be indicated in the name of the native file where reasonably feasible.

### C. **Metadata Fields and Processing.**

1.      ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Order. The Producing Party will provide information on the time zone the data was processed in to the Receiving Party.

2.      **Hidden text.** ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments. Upon request, a Producing Party will produce files with any such information in native format.

3.      **Compressed Files and Encrypted Files.** Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

4.      **Metadata and Coded Fields.** ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the Producing Party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) Redaction status, and (i) Confidentiality

11

designation. These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process.

## IV. DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA

The Parties will produce documents collected from databases or other structured databases in a reasonably useable format. If the data cannot be produced in a reasonably useable format, the parties will meet and confer to address the production format. Prior to or during any such meet and confer, the Producing Party will provide sufficient information to enable the Receiving Party to evaluate the best method and format of production. If the parties cannot reach agreement, the matter will be decided by the Court or its designee.

## V. RESPONSIVENESS, PRIVILEGE & REDACTIONS.

**A.** The parties agree that if any part of a family of documents is responsive, the entire family of documents will be produced, even if other family members are wholly nonresponsive to the discovery requests.

**B.** To the extent that a Defendant reasonably determines that e-mail or related attachments that are responsive to Plaintiff's document request are not discoverable because they are subject to a Privilege, Defendant shall produce a log treating each e-mail and attachment withheld separately.

**C.** **Redactions:**

No redactions solely for relevance may be made within a produced document or ESI item. All redactions must be logged in a Privilege/Redaction Log, as set forth in Section IX.B above. The parties agree that where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated or where TIFF format is not practicable, in redacted native format, as noted below. Any unaffected data fields shall be provided. The redaction of any material for privilege shall be governed by the applicable rules and case law regarding privilege and the provisions contained in the Protective Order entered in this action. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with the privileged or protected portions redacted, or if a TIFF image production is not practicable (e.g.,

the file is a video or very large spreadsheet), the Producing Party may produce a copy of the native file with the privilege or protected portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction. For each Document that is redacted, a Redaction field will be populated with the word "REDACTED" in the .DAT file. Also, the Producing Party will keep a pristine original copy of the native document.

**D.      Printing Specifications for Excel and PowerPoint files:**

For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

Excel Print to TIFF Options
- Unhide columns and rows
- Unhide worksheets
- Autofit columns and rows, settings to be over by columns first and, then down by rows
- Print gridlines
- Do not apply Autofilter
- Display headings
- Display comments
- Header and Footer filename field handling: Show field code

PowerPoint Print to TIFF Options
- Print notes pages
- Print hidden slides
- Print comments

The Producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible. For redacted items which were originally ESI, all metadata fields noted in this protocol that do not contain privileged or protected information will be provided and will include all non- redacted data. A Document's status as redacted does not relieve the Producing Party from providing all of the metadata required herein.

**E.      De-duplication and Document Families:**

1.      ESI may be de-duplicated globally at the parent level using MD5 hash or SHA-1 hash.  For emails, de-duplication may be performed using a hash calculated using combination of metadata fields. Such hash shall, at a minimum, account for all sender and recipient

13

metadata including BCC recipients, the email subject, date sent, and attachment names.

The parties are permitted to produce the longest unique email chain and do not need to separately produce the lesser-included emails unless those lesser-included emails have bcc recipients or unique attachments not included in the longest chain. If a lesser-included email has a bcc recipient or unique attachment, then the lesser-included email must be separately produced with the attachments.

If a party produces only inclusive email, the parties agree to redact any privileged content or message component and produce in full the rest of the conversation in the inclusives.

"Near duplicate" documents shall be produced rather than removed. The Producing Party need only produce a single copy of a particular ESI.

The hash value for each item shall be reflected in the .DAT load file in the HashValue field specified in Appendix 2. If a Producing Party elects to de-duplicate globally, the Producing Party shall identify custodians who were in possession of a de-duplicated Document in the AllCustodian metadata field specified in Appendix 2. This means that the field "AllCustodian" will be populated showing all custodians who had a copy of the same document which is not being produced because of de-duplication.

2.      De-duplication shall not break apart families and shall be performed at a family level. A document and all other documents in its attachment range, emails with attachments and files with extracted embedded OLE documents all constitute family groups. If any member of a family group is produced, all members of that group must be also be produced or else logged and no such member shall be withheld from production as a duplicate. The Producing Party agrees that the presence of a custodian's name contained in the "AllCustodian" field in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file.

F.      **Load Files:**

The data load file should be in standard Concordance format (.DAT). The .DAT file shall contain a relative path to the corresponding Native file.

14

Concordance Data Load Files: The data load file should use standard Concordance delimiters:

- Column - ¶ (ASCII 182);
- Quote - þ (ASCII 254);
- Newline - ® (ASCII 174).
- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
- All date fields should be produced in mm/dd/yyyy format, if possible. Date fields may be combined date/time fields
- All produced attachments should sequentially follow the parent Document/email.

Sample Concordance .DAT Load File:

þBegBatesþ¶þBegattatchþ¶þCustodianþ¶þNative        Pathþ¶þExtracted        Textþ

þABC000001þ¶þABC000001þ¶þSampleþ¶þ\VOL001\NATIVES\001\ABC000001.xlsþ¶

þTEXT\001\ABC000001.t

tþþABC000002þ¶þABC000001þ¶þSampleþ¶þNATIVES\001\ABC000002.gifþ¶þTEXT\

001\ABC000002.txtþ

Image Load Files: The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

- Every image in the delivery volume should be cross-referenced in the image load file.
- The imageID key should be named the same as the Bates number of the page.

15

- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

Sample Concordance/Opticon Image (.OPT) Load File:

MSC000001,MSC001, \VOL001\IMAGES\001\MSC000001.TIF,Y,,,2

MSC000002,MSC001, \VOL001\IMAGES\001\MSC000002.TIF,,,,

MSC000004,MSC001, \VOL001\IMAGES\001\MSC000004.TIF,Y,,,2

MSC000005,MSC001, \VOL001\IMAGES\001\MSC000005.TIF,,,,

OCR/Extracted Text Files: OCR or Extracted Text files shall be provided in a separate directory containing Document level text files. The .DAT file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the .DAT file: PROD001\TEXT\001\ABC00015.txt

**APPENDIX 2:  ESI METADATA AND CODING FIELDS**

The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the Producing Party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic Documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the Receiving Party prior to processing the subject ESI for production.

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br>**The EndBates field should be populated for single-page items. |
| AttachName | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| AllCustodian | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de- duplicated |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath[1] | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |

[1] This field may be excluded if the Producing Party determines it includes information protected by any applicable privilege or immunity.

17

| Field Name | Field Description |
|---|---|
| NativeFileLink | Relative path for documents provided in native format only. **The linked file must be named per the BegBates value. |
| SourceParty | Name of entity or party producing the item |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| Parent Date/Sort Date | The date associated with a family's parent record, which is assigned as follows: Emails populated with 1st occurrence: **Date Sent** or **Date Received** or **Date Last Modified**. Email attachments populated from the date above. Outlook Appointments populated with 1st occurrence of **Start Date** or **Date Last Modified**. Loose Edocs populated with 1st occurrence of **Date Last Modified** or **Date Created**. |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent  (Date and time fields may be combined) |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (Date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar |

18

| Field Name | Field Description |
| --- | --- |
| | item |
| Number of Attachments | Number of attached, embedded or grouped items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModDate (mm/dd/yyyy) | Date the item was last modified |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| Date Last Printed | Date the document was last printed. |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item) |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| Redaction Reason | The reason for the redaction. If more than one reason, separate by semi-colons. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or "ATTORNEYS EYES ONLY" applicable. Otherwise, blank. |

19

**IT IS SO STIPULATED**, through Counsel of Record.

Dated:                                          LIEFF CABRASER HEIMANN & BERNSTEIN

By:   /s/
JONATHAN D. SELBIN (Cal. Bar No. 17022)
jdselbin@lchb.com
MICHELLE LAMY (Cal. Bar No. 308174)
mlamy@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

JESSICA MOLDOVAN (admitted *pro hac vice*)
jmoldovan@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN
250 Hudson Street
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

ELIZABETH A. FEGAN *(admitted pro hac vice)*
beth@feganscott.com
PAIGE L. SMITH (admitted *pro hac vice*)
paige@feganscott.com
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100

LYNN A. ELLENBERGER (admitted *pro hac vice*)
lynn@feganscott.com
FEGAN SCOTT LLC
500 Grant St., Suite 2900
Pittsburgh, PA 15219
Telephone: (412) 346-4104
Facsimile: (312) 264-0100

*Attorneys for Plaintiffs and the Proposed Class*

STEPTOE & JOHNSON LLP

By:   /s/
Jonathan M. Baum (SBN 303469)
*jbaum@steptoe.com*
STEPTOE & JOHNSON LLP
One Market Plaza
Steuart Tower, Suite 1070
San Francisco, California 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6699

Geoffrey L. Warner (SBN 305647)
gwarner@steptoe.com
Nicolena F. Farias-Eisner (SBN 336158)
nfariaseisner@steptoe.com
STEPTOE & JOHNSON LLP
633 West Fifth Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9559

*Attorneys for Defendant the University of San Francisco*

FUTTERMAN DUPREE DODD CROLEY MAIER LLP

By:   /s/
Daniel A. Croley
dcroley@fddcm.com
FUTTERMAN DUPREE DODD CROLEY MAIER LLP
601 Montgomery St., Suite 333
San Francisco, CA 94111
Telephone: (415) 399-3840
Facsimile: (415) 399-3838

*Attorneys for Defendant Anthony N. Giarratano*

21

RAPKIN & ASSOCIATES, LLP

By: __/s/_____

SCOTT RAPKIN
scottrapkin@rapkinesq.com
RAPKIN & ASSOCIATES, LLP
475 Washington Blvd.
Marina del Rey, CA 90292
Telephone: (310) 319-5465
Facsimile: (310) 306-1339

*Attorneys for Defendant Troy Nakamura*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:  March 25, 2024

_____

UNITED STATES ~~DISTRICT~~/MAGISTRATE JUDGE

22