# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN DOE 1, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00542-SEB-MJD |
| | ) | |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO COMPEL**

This matter is before the Court on Defendant the National Collegiate Athletic Association's ("NCAA") Motion to Compel Production of Plaintiffs' Social-Media Feeds and Associated Information. [Dkt. 97.] The motion is fully briefed, and the Court held a hearing on the motion on February 8, 2024. For the reasons set forth below, the motion is **GRANTED**.[1]

**I. Background**

The fourteen individual Plaintiffs in this putative class action are current and former college baseball players who allege that they were subjected "rampant sexualized harassment and misconduct at the hands of their coaches, Anthony Giarratano and Troy Nakamura" while they played for the University of San Francisco ("USF"). [Dkt. 95 at 3.] USF is an NCAA member school.

---

[1] The Court notes that Plaintiffs have repeatedly violated Local Rule 5-6(a)(2), which requires that attachments to motions be "given a title which describes its content." Plaintiffs shall take care to strictly comply with this rule in the future.

In their Amended Complaint, Plaintiffs assert a variety of tort claims against the NCAA, including negligence, breach of fiduciary duty, intentional and negligent infliction of emotional distress, and various breach of contract claims. [Dkt. 41.] Plaintiffs allege that,

> [a]mong other damages, as a result of the abuse inflicted on them, Plaintiffs suffered and continue to suffer severe emotional and physical pain, including shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life and baseball. Plaintiffs were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

*Id.* at 7. The Amended Complaint also contains specific factual allegations regarding the psychological injuries sustained by Plaintiffs. [*See* Dkt. 97 at 3-4 (quoting relevant allegations).] In addition to their individual claims, Plaintiffs seek to represent a class consisting of "[a]ll student-athletes who are currently participating in NCAA sports at NCAA member institutions." [*Id.* at 40.] The class relief sought is limited to equitable and declaratory relief, including an injunction "requiring the NCAA to adopt, implement, and enforce appropriate policies and procedures to prevent, or properly respond to, sexual misconduct and psychological abuse of students and student-athletes." [*Id.* at 103.]

## II. Discussion

As an initial matter, the Court notes its concern with Plaintiffs' lackadaisical approach to discovery in this case. Defendant served its discovery requests in August 2023, yet as of February 5, 2024, Plaintiffs had not yet produced **any** electronically stored information responsive to Defendant's requests. [*See* Dkt. 110.] Plaintiffs point to the impasse between them and Defendant with regard to the use of search terms to identify relevant posts and private messages from their social media accounts, but it does not appear that Plaintiffs made a robust

2

effort to explore other options, or to at least produce any obviously relevant social media information in a timely manner. Plaintiffs essentially held all of their social media information hostage to Defendant's agreement to their review proposal, not making any real effort to begin production of indisputably relevant information,[2] because the parties were debating the use of search terms as a way to reduce Plaintiffs' burden of culling their social media information. This is not an acceptable way to approach discovery.[3]

Turning to the instant motion, at issue are two of Defendant's requests for production. Request No. 23 seeks:

> A copy of each Plaintiff's social media feeds from Facebook, Instagram, Twitter, Threads, LinkedIn, Snapchat, TikTok, YouTube, or any other social media account maintained by a Plaintiff since the alleged abuse commenced for that Plaintiff to the present.

[Dkt. 98-2 at 15.] Request No. 24 seeks:

> For each Plaintiff's social media account on Facebook, Instagram, Twitter, Threads, LinkedIn, Snapchat, TikTok, YouTube, or any other social media platform that has been maintained by a Plaintiff since the alleged abuse commenced, an export of all information associated with that user's account.

[*Id.*] To each of these requests, Plaintiffs responded:

---

[2] For example, Plaintiffs could have, and should have, reviewed and produced their social media information from the time each was a student at USF.

[3] In addition, Plaintiffs also were unable to tell the Court approximately how many private messages are at issue, despite the fact that those private messages are in Plaintiffs' possession and the burden of producing them is a key issue in the instant motion. In addition, the Court notes that Plaintiffs also admitted at the February 8, 2024 hearing that they have not yet obtained the expert opinions they believe are necessary to make a settlement demand in this case, despite the fact that a settlement conference was scheduled on February 15, 2024, and all of the information relevant to those expert opinions has at all times been in Plaintiffs' possession; when the Court asked why this was not done, Plaintiffs' only response was that they just didn't do it, which is a further example of Plaintiffs' lack of urgency with regard to their prosecution of this case.

3

> Plaintiffs incorporate their General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. Plaintiffs further object to this Request as unduly burdensome and disproportionate to the needs of the case. Plaintiffs are willing to meet and confer to narrow the scope of this Request.

[*Id.*][4]

At the hearing, Plaintiffs agreed to produce their entire social media feeds in the format in which Plaintiffs obtained them using the export feature found on each social media site (hereinafter referred to as the "Raw Data"). Defendant agreed that producing the Raw Data would fulfill Plaintiffs' obligations to respond to these requests with regard to the social media feeds themselves.

The only remaining issue, then, is whether Plaintiffs must also produce the private messages from their social media accounts. With regard to the objection Plaintiffs made, the fact is that it would **not** be unduly burdensome or disproportionate to produce all of their private messages in the same manner in which they are producing their feeds. As Defendant correctly points out, any burden arises out of Plaintiffs' desire to narrow their production to avoid producing potentially irrelevant private information along with any relevant information.

There is no doubt that the private messages contain information relevant to Plaintiffs' claims for emotional distress. There is also no doubt that they likely contain wholly irrelevant information. The problem is that Defendant served its document requests on August 18, 2023,

---

[4] As a preliminary matter, Plaintiffs' General Objections, Objections to Definitions, and Objections to Instructions are overruled. *See Novelty, Inc. v. Mountain View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("'[G]eneral objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered"*); Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*, 2008 WL 2074093, at *2 (S.D. Ill. 2008) ("Making general objections is a dangerous practice, as the party who offers such general objections runs the risk of having them summarily denied.").

4

nearly six months ago, and to date Plaintiffs have failed to propose a workable way in which to identify the relevant messages, other than a message-by-message review, which they argue would be unduly burdensome and disproportionate.[5] Plaintiffs' implicit proposed solution is that they not be required to produce any of their private messages, or at least any that are not identified by the use of search terms, because the burden of finding any additional relevant information would be disproportionate to the marginal relevance of that information. Defendant's proposed solution is that Plaintiffs be ordered to produce all of their private messages.

The Court rejects Plaintiffs' proposed solution for two reasons. First, Plaintiffs have not satisfied their obligation to demonstrate specifically what the burden would be for them to review the private messages for relevancy.[6] See Heraeus Kulzer, GmbH, v. Biomet, Inc., 633 F.3d 591, 598 (7th Cir. 2011) ("A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery."); Hum. Rts. Def. Ctr. v. Jeffreys, 2022 WL 4386666, at *3 (N.D. Ill. Sept. 22, 2022) (rejecting undue burden and proportionality objection because "Defendants do not offer any specifics or even an estimate of the burden involved in producing" the discovery at issue) (citing Fed. R. Civ. P. 26(b)(1), Advisory

---

[5] As noted above, the parties attempted to negotiate search terms that Plaintiffs could use to identify potentially relevant messages. The Court agrees with Defendant that the use of search terms is not feasible given the manner in which young people use social media to communicate with one another. For example, emojis, gifs, and ever-changing, sometimes highly idiosyncratic internet slang is used to convey important information over social media, but none of that would be identified by the use of conventional search terms.

[6] Plaintiffs did provide the Declaration of Jessica A. Moldovan, [Dkt. 103-2], which discusses the burden of taking the Raw Data from Plaintiffs' social media accounts and recreating "feeds" from that Raw Data. This burden has been eliminated by the agreement that Plaintiffs may simply produce the Raw Data.

Committee Note to 2015 Amendment (explaining that the 2015 amendment regarding proportionality was not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional"); *Jenkins v. White Castle Mgmt. Co.,* 2014 WL 3809763 at *2 (N.D. Ill. Aug. 4, 2014) ("What is required is affirmative proof [of undue burden] in the form of affidavits or record evidence."); *Burton Mech. Contractors, Inc. v. Foreman,* 148 F.R.D. 230, 233 (N.D. Ind. 1992) ("An objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence."). Indeed, when asked at the hearing, Plaintiffs were unable to answer the most basic question of how many private messages there are, demonstrating that they have made little to no effort to quantify any burden that may exist.

Second, while Plaintiffs' desire to maintain the privacy of their irrelevant private messages is understandable, Plaintiffs' privacy concerns are largely obviated by the fact that they are proceeding under pseudonyms in this case. Those concerns can be further obviated with the following measures:

1. All of Plaintiffs' private messages may be designated as confidential under the protective order in this case, [Dkt. 76].
2. Any portion of Plaintiffs' private messages that is used by either party in conjunction with a court filing shall be filed under seal. The filing party shall note on the sealed document or in the docket text that it is filed under seal pursuant to this Order, and no motion to maintain it under seal shall be necessary. *See* Local Rule 5-11(d)(3).
3. The names and other identifying information of any third party shall be redacted from any private message that is filed. The filing party may identify the third party by initials

6

and may identify the relationship of the third party to the Plaintiffs if that information is relevant.

4. Defense counsel shall take extra care to ensure the relevancy of any private message to the claims or defenses in this case before using that private message in a deposition or court filing.

With these measures in place, the Court **GRANTS** Defendant's motion to compel the production of Plaintiffs' private messages in their entirety.

### III. Conclusion

For the reasons set forth above, Defendant's Motion to Compel Production of Plaintiffs' Social-Media Feeds and Associated Information, [Dkt. 97], is **GRANTED**. Plaintiffs shall produce an export of all information associated with each of their social media accounts, including any private messages, **within 14 days of the date of this Order**.

SO ORDERED.

Dated: 15 FEB 2024

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.