1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                              San Francisco Division

11   JOHN DOE 1, et al.,                    Case No. 22-cv-01559-LB

12                 Plaintiffs,
                                            **ORDER DENYING MOTION TO**
13         v.                               **CERTIFY ISSUE CLASS**

14   UNIVERSITY OF SAN FRANCISCO, et        Re: ECF No. 266
     al.,
15
                 Defendants.
16

17                              **INTRODUCTION**

18         The plaintiffs in this putative class action are former University of San Francisco Division I

19   baseball players who sued their coaches (for allegedly creating a sexualized environment and

20   punishing players who did not participate) and USF (for not stopping it). They claim discrimination,

21   retaliation, negligence, breach of contract, and infliction of emotional distress.

22         The plaintiffs moved for class certification under Fed. R. Civ. P. 23(a), (b), and (c)(4) on issues

23   arising from their discrimination, retaliation, and negligence claims. The motion is denied because

24   the plaintiffs have not proven that the proposed class satisfies the commonality requirement.

25

26                               **STATEMENT**

27         The named plaintiffs are thirteen former USF baseball players. They allege that coaches

28   Anthony Giarratano and Troy Nakamura engaged in abusive, bullying, offensive behavior for

United States District Court
Northern District of California

1

2

3

4

5

6

decades that was sexualized and directed against the plaintiffs because of their gender. When the plaintiffs did not participate in the behavior, the coaches insulted and punished them. As a result, the plaintiffs suffered anxiety, depression, and other psychological harm. Players left the team in droves and parents complained. USF allegedly engaged in a coverup because it did not address the parents' complaints, which, according to the plaintiffs, violated Title IX and constituted negligent supervision.[1]

7

8

9

    The plaintiffs propose a class defined as "[a]ll members of the University of San Francisco baseball team since 2000."[2] The class would apply to the plaintiffs' discrimination, retaliation, and negligence claims, and be further limited to certain issues pursuant to Rule 23(c)(4).

10

11

## 1. Discrimination Issues

12

13

14

15

16

17

18

19

20

21

    The proposed class would be limited to issues related to liability under the plaintiffs' pre- and post-assault discrimination theories. The issues would not include causation or damages. The plaintiffs contend that questions common to the class for its pre-assault theory are (1) whether USF had a policy of deliberate indifference to reports of sexual misconduct, (2) whether this indifference created a heightened risk of sexual harassment in a context subject to USF's control, and (3) whether the class suffered severe, pervasive, and objectively offensive harassment.[3] The post-assault common questions are (4) whether USF had substantial control over the coaches, (5) whether the coaches' harassment was severe, pervasive, and objectively offensive, (6) whether any USF officials knew of the harassment, (7) whether USF acted with deliberate indifference to the harassment, and (8) whether USF's indifference made the class vulnerable to harassment.[4]

22

23

24

25

26

27

28

---

[1] Third Am. Compl. – ECF No. 133 at 6–94 (¶¶ 45–482). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 266 at 8.

[3] *Id.* at 23.

[4] *Id.* at 22–23.

United States District Court
Northern District of California

**2. Retaliation Issues**

The proposed class would be limited to issues related to liability for the retaliation claim. The plaintiffs argue that questions common to the class are (9) whether members of the USF baseball team engaged in protected activity and (10) whether that activity was met with retaliation that resulted in a broader deterrent effect within the USF baseball team.[5]

**3. Negligence Issues**

The proposed class would be limited to issues relating to liability under the plaintiffs' claims for negligent supervision, negligence, and gross negligence. The proposed issues would not include causation or damages. The plaintiffs contend that questions common to the class are (11) whether a special relationship exists between USF and the USF baseball players or the coaches and the coaches and the USF baseball players, (12) whether abuse by the coaches was foreseeable to USF, or abuse by Nakamura foreseeable to Giarratano, (13) whether recognizing a duty as to USF or the coaches is consistent with public policy, (14) whether USF was on notice of the risks posed by the coaches, or Giarratano on notice of the risks posed by Nakamura, (15) whether USF failed to take reasonable steps with respect to the coaches, or Giarratano with respect to Nakamura, including by not terminating or adequately supervising, (16) whether the coaches' conduct arose out of their employment, and (17) whether, as head coach, Giarratano was responsible for the conduct of his subordinates.[6]

## LEGAL STANDARD

Class actions are governed by Federal Rule of Civil Procedure 23. A party seeking to certify a class must show that all the prerequisites of Rule 23(a) are met, as well as those of at least one subsection of Rule 23(b).

The prerequisites of Rule 23(a) are (1) the class is so numerous that joinder of all members is

---

[5] *Id.* at 25.

[6] *Id.* at 27.

United States District Court
Northern District of California

impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

A court may certify a class under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A class can be created to resolve an entire action or particular issues. Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."). An issues class need not satisfy the predominance requirement of Rule 23(b)(3). *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23(c)(4) authorizes the district court in appropriate cases to isolate the common issues . . . and proceed with class treatment of these particular issues." The class must, however, satisfy all requirements of Rule 23(a) and one subsection of Rule 23(b), and materially advance the litigation. *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015).

"[P]laintiffs wishing to proceed through a class action must actually prove — not simply plead — that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3).*" Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)); *Comcast Corp. v. Behrend*, 569 U.S. 27, 32–33 (2013)). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23[] have been satisfied." *Comcast*, 569 U.S. at 33 (cleaned up). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim." *Id.* at 33–34 (cleaned up). "That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 34 (cleaned up). Still, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn.*

1    *Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the

2    extent — but only to the extent — that they are relevant to determining whether the Rule 23

3    prerequisites for class certification are satisfied." *Id.*

4

5                                        **ANALYSIS**

6        The issue is whether the plaintiffs have proven that the proposed class is certifiable. The

7    answer is no because the proposed class fails the commonality requirement. The plaintiffs identify

8    questions of law or fact but have not demonstrated that they are common across the entire class

9    and central to the validity of the claims. Based on the nature of the claims and the scope of the

10   proposed class, the plaintiffs' authorities in support of commonality are distinguishable.

11       Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." "To

12   satisfy Rule 23(a)(2) commonality, 'even a single common question will do.'" *Torres v. Mercer*

13   *Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (cleaned up) (quoting *Wal-Mart*, 564 U.S. at

14   359). But "[w]hat matters to class certification is not the raising of common questions — even in

15   droves — but, rather the capacity of a classwide proceeding to generate common answers apt to

16   drive the resolution of the litigation." *Id.* (quoting *Wal-Mart*, 564 U.S. at 350). In other words, the

17   claim must depend on a "common contention" that is capable of "classwide resolution," meaning

18   that its adjudication will "resolve an issue that is central to the validity of each one of the claims in

19   one stroke." *Wal-Mart*, 564 U.S. at 350.

20

21   **1.  Proposed Questions are not Common**

22       First, the plaintiffs have not shown that many of the purported common questions apply to the

23   entire class. The proposed class is all USF baseball players since 2000. Thus, the putative class

24   includes hundreds of players and puts over two decades of conduct at issue.[7] Yet many of the

25   purported common questions are fact-dependent and plausibly varied over time. While a single

26

27   ───────────────────

28   [7] Von Klemperrer Decl. – ECF No. 266-41 at 7 (¶ 13); Selbin Decl. Ex. 17 – ECF No. 299-16; Selbin
     Decl. Ex. 18 – ECF No. 299-17; Selbin Decl. Ex. 19 – ECF No. 299-18.

United States District Court
Northern District of California

common question will suffice, consideration of these failed questions illustrates some of the problems with the proposed class.

Take the proposed common questions for the plaintiffs' discrimination claims. Question six asks if any USF officials knew of the harassment. The plaintiffs identify numerous events that allegedly provided notice to USF, including complaints to administrators in 2000, 2013, 2014, and 2021.[8] If the fact finder were to decide that the later complaints provided notice of harassment but that the 2000 complaint was insufficient — entirely possible as much of the alleged harassment had yet to occur — then the question is not capable of classwide resolution. Similarly, question one asks if USF had a policy of deliberate indifference to reports of sexual misconduct. Even under the plaintiffs' theory, USF's response to later complaints — internal investigations — was markedly different than its alleged response to the 2000 complaint: nothing.[9] Finally, the parties dispute whether USF's policies changed over the course of the class period, which could impact at least questions one, two, seven, and eight.[10] There is outstanding discovery on that topic and, though the plaintiffs may not be responsible for the delays, they *are* responsible for proving compliance with Rule 23(a).[11] They have not met their burden.

The retaliation questions fare no better. Question ten concerns whether protected activity was met with retaliation that resulted in a broader deterrent effect within the USF baseball team. All named plaintiffs identify instances of retaliation against them, but they have not shown that the resulting deterrent effect would apply to every USF baseball player since 2000.[12] Instead, the plaintiffs rely on Doe 8, who testified that players were scared to express their concerns.[13] But Doe 8 cannot testify as to whether that was true across the entire class period. Nor does players'

---

[8] Mot. – ECF No. 265-3 at 17-20.

[9] *Id.* at 17, 19.

[10] USF Opp'n – ECF No. 282 at 9; Reply – ECF No. 299-2 at 28.

[11] Reply – ECF No. 299-2 at 27 (detailing outstanding discovery requests).

[12] Mot. – ECF No. 266 at 16 (listing alleged retaliatory acts).

[13] Doe 8 Dep. – ECF No. 266-20 at 8–9 (pp. 46:15–47:5).

1    reluctance to participate in a 2021 investigation establish that earlier class members were deterred

2    by retaliation.[14]

3        Finally, the proposed negligence questions are problematic. Question fourteen asks whether

4    USF was on notice of the risks posed by the coaches, or Giarratano on notice of the risks posed by

5    Nakamura. As discussed above, USF's notice may have changed over the course of the twenty-

6    plus-year class period. This, in turn, impacts question twelve, which asks whether the alleged

7    misconduct was foreseeable. Similarly, question fifteen asks if USF's response was reasonable

8    but, given the diverse complaints ranging from 2000 to 2021, the answer could vary over time.

9

10   **2.   Proposed Questions are not Central to Validity of the Claims**

11       Second, any questions that are truly common do not resolve an issue that is central to the

12   validity of each one of the claims in one stroke. *WalMart* is instructive. 564 U.S. at 349. There, the

13   plaintiffs sought class certification based on the store's hiring and promotion practices. *Id.* at 346.

14   But the Supreme Court cautioned that the existence of common questions like "[d]o all of us

15   plaintiffs indeed work for Wal–Mart?" or "[d]o our managers have discretion over pay?" are

16   insufficient to satisfy commonality. *Id.* at 349.

17       Here too, the plaintiffs raise questions that — though relevant — are not central to the validity

18   of each claim. These include:

19       (4) Whether USF had substantial control over the coaches;

20       (9) Whether members of the USF baseball team engaged in protected activity;

21       (11) Whether a special relationship exists between USF and the USF baseball players or the

22   coaches and the coaches and the USF baseball players;

23       (13) Whether recognizing a duty as to USF or the coaches is consistent with public policy;

24       (16) Whether the coaches' conduct arose out of their employment; and

25       (17) Whether, as head coach, Giarratano was responsible for the conduct of his subordinates.

26

27

28   [14] Ex. 10 to Selbin Decl., Email Correspondence dated Dec. 22, 2021 – ECF No. 265-10 at 5–6.

United States District Court
Northern District of California

1    These are the types of common questions that, even if "raised in droves," do not resolve a

2    central issue such that a class action is justified because they do not indicate that the plaintiffs

3    suffered the same injurious conduct. *See WalMart*, 564 U.S. at 349. Rather, these are threshold

4    issues that do little to advance the plaintiffs' overall claims.[15]

5

6    **3.    The Plaintiffs' Commonality Cases are Distinguishable**

7        In view of the above, it is unsurprising that the plaintiffs' commonality cases are

8    distinguishable because of differences in class scope and underlying legal theories.

9        Concerning their post-assault discrimination theory, the plaintiffs rely on *Rapuano v. Trustees*

10   *of Dartmouth College*, 334 F.R.D. 637, 642 (D.N.H. 2020). In *Rapuano*, the plaintiffs brought a

11   class action under Title IX stemming from sexual misconduct by three professors. *Id.* at 647. The

12   court found that the proposed class satisfied the commonality requirement, albeit for preliminary

13   settlement purposes, based on the common question of whether the professors' harassment was

14   severe, pervasive, and objectively offensive.[16] *Id.* The question was capable of classwide

15   resolution because the plaintiffs demonstrated that every class member was subjected to a

16   "baseline of equally egregious sexual harassment." *Id.* at 648.

17       The same cannot be said here. In *Rapuano*, the class spanned just five years. *Id.* at 645. In this

18   case, the proposed class spans over twenty years, and thus considerably greater proof is needed to

19   establish that all class members experienced a baseline of equally egregious sexual conduct. And,

20   unlike in *Rapuano*, where the university did not oppose certification for settlement, here, the

21   underlying conduct is disputed. This highlights the possibility that some but not all putative class

22

23   [15] Even if these questions were central to validity, the plaintiffs have not shown that a Rule 23(c)(4)
     class on such discrete issues (i.e., whether USF had a special relationship with the players) would
24   "materially advance" the litigation. *Tasion*, 308 F.R.D. at 633. To the extent that threshold issues like
     existence of a duty are even disputed the court is not persuaded that an issue class is "superior to other
25   available methods" like summary judgment or *Bellwether* trials. Fed. R. Civ. P. 23(b)(3). *Cf. Butler v.*
     *Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (a trial "limited to determining *liability* on a
26   class-wide basis, with separate hearings to determine [] the damages of individual class members . . . is
     permitted by Rule 23(c)(4) and will often be a sensible way to proceed." (emphasis added)).

27   [16] The *Rapuano* court noted that while Rule 23 is not more lenient in the settlement context, it would
     "apply the Rule 23 certification requirements [differently] because plaintiffs seek certification for the
28   purposes of settlement only."

1    members experienced severe, pervasive, and objectively offensive harassment. To date, the

2    plaintiffs have not overcome that possibility because even the named plaintiffs allege various

3    types of harassment.[17]

4        For their pre-assault theory, the plaintiffs cite *Karasek v. Regents of Univ. of Cal.*, 500 F.

5    Supp. 3d 967, 985-86 (N.D. Cal. 2020) and *Simpson v. University of Colorado Boulder*, 500 F.3d

6    1170, 1173 (10th Cir. 2007).[18] The cases do not involve class actions but illustrate the breadth of

7    the plaintiffs' pre-assault theory. In *Karasek*, three students accused a university of having a

8    culture of deliberate indifference to complaints of sexual harassment, creating a heightened risk of

9    further harassment and ultimately causing separate assaults. 500 F. Supp. 3d at 970. This theory,

10   premised on school-wide policies, was cognizable under Title IX. *Id.* at 977. In *Simpson*, two

11   students argued that the school's deliberate indifference to complaints of sexual harassment

12   ultimately led to their sexual assault by football recruits. 500 F.3d at 1172–73. The Tenth Circuit

13   held that the plaintiffs' evidence — including complaints of misconduct and lack of policies —

14   was sufficient to survive summary judgment. *Id.* at 1184.

15       This theory presents a closer question because the plaintiffs allege a uniform theory of harm —

16   namely, that USF had a culture of deliberate indifference due to its complete lack of certain

17   policies throughout the class period. But, as discussed above, the plaintiffs have not shown that

18   USF's policies were the same throughout the class period, which is the topic of ongoing discovery.

19       For the commonality of their retaliation claims, the plaintiffs rely on *A. B. v. Haw. State Dep't*

20   *of Educ.*, 30 F.4th 828, 841 (9th Cir. 2022). There, the plaintiffs alleged that school administrators

21   retaliated against female water polo players whose parents complained of potential Title IX

22   violations. The proposed injunction class was all current and future female students who

23   participate, seek to participate, and/or were deterred from participating in athletics. *A. B. by C. B.*

24   *v. Haw. State Dep't of Educ.*, 334 F.R.D. 600, 604 (D. Haw. 2019). The trial court found that the

25   commonality requirement was not met because administrators specifically targeted the water polo

26

27   _____
     [17] Mot. – ECF No. 265 at 9 (detailing various types of sexual misconduct).

28   [18] Mot. – ECF No. 266 at 24.

1    team whereas the class included all female athletes. But the Ninth Circuit reversed the decision

2    because the plaintiffs presented evidence that all putative class members experienced the resulting

3    deterrent effect. *A. B.*, 30 F.4th at 841.

4         By contrast, here, there is a failure of proof. In *A. B.*, the plaintiffs demonstrated that all class

5    members experienced the deterrent effect of retaliation; by definition, the proposed class included

6    students enrolled during or after the retaliatory act, who were thus subject to the deterrent effect.

7    334 F.R.D. at 604; 30 F.4th at 841. Here, the plaintiffs allege various acts that may constitute

8    retaliation including running players off the team, cutting scholarships, reducing playing time, or

9    ostracizing and blackballing players.[19] It appears that some incidents were as early as 2000 while

10   others were as late as 2021.[20] Due to the varied nature of the conduct, and the duration of the class,

11   the plaintiffs have not shown that the issue can be resolved on a classwide basis. For example, a

12   fact finder might decide that the earlier conduct was not retaliatory or did not result in a deterrent

13   effect, but that later conduct was actionable retaliation. *See* supra Section 1.1.

14        Finally, for the commonality of their negligence claims, the plaintiffs cite *Hilario v. Allstate*

15   *Ins. Co.*, 642 F. Supp. 3d 1048, 1060 (N.D. Cal. 2022). The *Hilario* plaintiffs were homeowners

16   with insurance policies provided by Allstate. The plaintiffs alleged that Allstate double-counted

17   the square-footage of their built-in garages, resulting in incorrect premiums. The court narrowed

18   the proposed class to "[a]ll Allstate California homeowners' insurance policyholders as of March

19   2019, who paid premiums and had at least one built-in garage, and whose garage square footage

20   was counted twice in calculating insured square footage and premiums." *Id.* at 1058–59. The court

21   found that this class satisfied the commonality requirement based on common questions including

22   whether Allstate owed a duty of care to class members, and whether it breached that duty by how

23   it calculated and charged premiums. *Id.* at 1060.

24

25

26

27   [19] Mot. – ECF No. 266 at 16.

28   [20] Doe 9 Decl. – ECF No. 266-46 at 3 (¶ 9); Doe 2 Decl. – ECF No. 266-49 at 3 (¶ 8).

United States District Court
Northern District of California

Here, the theory of breach is not so simple. The plaintiffs allege that USF was negligent in its supervision of the coaches and failed to take reasonable measures to prevent their misconduct.[21] As the plaintiffs acknowledge, breach may turn on what USF knew and when USF knew it.[22] The plaintiffs have not demonstrated that the answer is necessarily common throughout the twenty-plus-year class period. Conversely, in *Hilario*, breach was a common question because, for all class members, it turned on a single practice — Allstate's double-counting error — and Allstate's notice of that risk during May 2019. *Id.* at 1060.

## CONCLUSION

In sum, the plaintiffs have not met their burden to prove that the proposed class is certifiable. The motion is denied without prejudice.

**IT IS SO ORDERED.**

Dated: March 5, 2025

_____
LAUREL BEELER
United States Magistrate Judge

---

[21] Third Am. Compl. – ECF No. 133 at 109–111 (¶¶ 564–581).

[22] Mot. – ECF No. 266 at 26 (citing *Regents of Univ. of Cal. v. Super. Ct.*, 4 Cal. 5th 607, 619 (2018) (evidence that school was on notice of a risk may be relevant to breach because it informs the reasonableness of the school's actions)).