1   JONATHAN SELBIN (Cal. Bar No. 170222)
    jselbin@lchb.com
2   MICHELLE LAMY (Cal. Bar No. 308174)
    mlamy@lchb.com
3   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
4   San Francisco, CA 94111
    Telephone: (415) 956-1000
5   Facsimile: (415) 956-1008

6   ELIZABETH A. FEGAN (Cal. Bar No. 355906)
    beth@feganscott.com
7   FEGAN SCOTT LLC
    150 S. Wacker Drive, 24th Floor
8   Chicago, IL 60606
    Telephone: (312) 741-1019
9   Facsimile: (312) 264-0100

10  *Attorneys for Plaintiffs and the Proposed Class*
    (Additional Counsel on Signature Page)

11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14               **SAN FRANCISCO DIVISION**

15

16  JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,         Case No. 3:22-cv-01559-LB
    JOHN DOE 4, JOHN DOE 5, JOHN DOE 6,
17  JOHN DOE 7, JOHN DOE 8, JOHN DOE 9,         **PLAINTIFFS' REPLY IN SUPPORT**
    JOHN DOE 10, JOHN DOE 11, JOHN DOE          **OF MOTION FOR CLASS**
18  12, JOHN DOE 13, and JOHN DOE 14            **CERTIFICATION**
    individually and on behalf of all others similarly
19  situated,                                    Hearing: February 27, 2025
                                                 Time: 9:30 a.m.
20              Plaintiffs,                       Courtroom: B

21  v.                                           Judge: Hon. Laurel Beeler
                                                 Trial Date: None Set
22  THE UNIVERSITY OF SAN FRANCISCO,
    ANTHONY N. (AKA NINO) GIARRATANO,
23  and TROY NAKAMURA,

24              Defendant.

25

26

27

28

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
                                                    CASE NO. 3:22-CV-01559-LB

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.    INTRODUCTION ................................................................................................ 1

II.   CLASS EVIDENCE ........................................................................................... 4

    A.   USF Lacks a Functioning Title IX Process............................................. 5

    B.   Plaintiffs Continue to Uncover New Evidence of the Coach Defendants' Abuse, as Well as USF's Knowledge and Cover-Up of that Abuse. ...................... 7

    C.   USF Has Internally Questioned the Reliability of Absent Class Member Support Statements, and this Court Should as Well. .............................................. 8

III.  ARGUMENT ..................................................................................................... 12

    A.   Plaintiffs' Proposed Class Is Valid ...................................................... 13

    B.   The Class Satisfies All Four Requirements of Rule 23(a). ................... 16

        1.   The Class Is Sufficiently Numerous. ......................................... 16

        2.   There Is at Least One Common Question with a Common Answer that Will Drive the Litigation............................................................ 16

            a.   USF Does Not Rebut Commonality on the Discrimination Claims. ........................................................ 17

            b.   USF Does Not Rebut Commonality on the Retaliation Claim. ............................................................. 21

            c.   Defendants Do Not Rebut Commonality on the Negligence Claims. ..................................................... 22

            d.   Plaintiffs' Common Evidence Is Admissible............................. 24

        3.   Plaintiffs' Claims Are Typical of the Class. ............................. 25

        4.   Plaintiffs and Counsel Adequately Represent the Class. ........... 26

    C.   The Class Is Appropriate for Issue Certification under Rule 23(c)(4)................. 30

        1.   Predominance Is Not at Issue. ................................................... 30

        2.   Determination of Common Issues Will Drive Resolution of this Action. ......................................................................... 31

        3.   A Class Is Manageable and Superior to Multiple Individual Actions. ......................................................................... 33

IV.   CONCLUSION .................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. B. v. Haw. State Dep't of Educ.*,
  30 F.4th 828 (9th Cir. 2022) ........................................................................ 18, 22

*ABC Distrib., Inc. v. Living Essentials LLC*,
  No. 15-cv-02064 NC, 2017 WL 2603311 (N.D. Cal. Apr. 7, 2017) ...................................... 32

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013)........................................................................ 17

*Adkins v. Facebook, Inc.*,
  424 F. Supp. 3d 686 (N.D. Cal. 2019) ........................................................ 31, 32, 33

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)................................................................................ 3

*Anders v. Cal. State Univ., Fresno*,
  No. 121CV00179AWIBAM, 2022 WL 3371600 (E.D. Cal. Aug. 16, 2022)......................... 18

*Avilez v. Pinkerton Gov't Servs., Inc.*,
  596 F. App'x 579 (9th Cir. 2015)................................................................ 13, 15

*In re Baycol Prods. Litig.*,
  218 F.R.D. 197 (D. Minn. 2003)................................................................. 33

*Berndt v. Cal. Dep't of Corr.*,
  No. C 03-3174 PJH, 2012 WL 950625 (N.D. Cal. Mar. 20, 2012) ...................................... 14

*Black Lives Matter L.A. v. City of L.A.*,
  113 F.4th 1249 (9th Cir. 2024) ................................................................. 19

*Bolla v. McClain*,
  469 F. App'x 531 (9th Cir. 2012) ............................................................... 34

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
  No. 06-CV-01848-H (POR), 2009 WL 10671818 (S.D. Cal. Apr. 22, 2009) ...................... 25

*Briseno v. Conagra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017)................................................................. 14

*Brown v. Bd. of Trs. of Univ. of Ill.*,
  No. 19-cv-02020, 2022 WL 17547575 (C.D. Ill. Dec. 9, 2022)............................... 19

*Bruce v. Teleflora, LLC*,
  No. 13-cv-03279-ODW(CWx), 2013 WL 6709939 (C.D. Cal. Dec. 18, 2013) ................ 32

*Butler II v. Sears, Roebuck & Co.*,
  727 F.3d 796, U.S. 1015 (2013)................................................................ 33

*Butler v. Sears, Roebuck & Co. ("Butler I")*,
  702 F.3d 359 (7th Cir. 2012)................................................................. 33

*Butler v. Sears, Roebuck and Co.*,
  727 F.3d 796 (7th Cir. 2013)................................................................. 3

- ii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Campion v. Old Republic Home Prot. Co.*,
  272 F.R.D. 517 (S.D. Cal. 2011)........................................................................ 32

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ....................................................................... 33

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993).......................................................................................... 21

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999).......................................................................................... 19

*Doe v. Unified Sch. Dist. 259*,
  240 F.R.D. 673 (D. Kan. 2007)................................................................... 19, 26

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)............................................................................. 26

*Freeman v. Delta Airlines, Inc.*,
  No. 15-CV-160, 2019 WL 2495471 (E.D. Ky. June 14, 2019) ............................ 28

*Garcia v. Sun Pac. Farming Coop.*,
  No. CV F 06-0871 LJO TAG, 2008 WL 2073979 (E.D. Cal. May 14, 2008) ...................... 17

*Garza v. City of Sacramento*,
  No. 20-cv-01229 WBS JDP, 2022 WL 2757600 (E.D. Cal. July 14, 2022)......................... 19

*Gonzalez v. Millard Mall Servs., Inc.*,
  281 F.R.D. 455 (S.D. Cal. 2012)........................................................................ 17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)........................................................................... 28

*Hanni v. Am. Airlines, Inc.*,
  No. C 08-00732 CW, 2010 WL 289297 (N.D. Cal. Jan. 15, 2010) ....................... 23

*Heredia v. Sunrise Senior Living, LLC*,
  No. 22-55332, 2023 WL 4930840 (9th Cir. Aug. 2, 2023) ................................. 13

*Hernandez v. Wells Fargo Bank, N.A.*,
  No. C 18-07354 WHA, 2020 WL 469893 (N.D. Cal. Jan. 29, 2020).................... 33

*Hilario v. Allstate Insurance Co.*,
  642 F. Supp. 3d 1048 (N.D. Cal. 2022), *aff'd*, No. 23-15264, 2024 WL 615567
  (9th Cir. Feb. 14, 2024)............................................................................... 22, 23

*Howard v. Cook Cnty. Sheriff's Off.*,
  989 F.3d 587 (7th Cir. 2021)............................................................................. 23

*Hub v. Sun Valley Co.*,
  682 F.2d 776 (9th Cir. 1982)....................................................................... 24, 25

*Int'l Bhd. of Teamsters v. United States*,
  431 U.S. 324 (1977).......................................................................................... 34

**TABLE OF AUTHORITIES**
(continued)

Page

*Jacks v. DirectSat USA, LLC*,
  118 F.4th 888 (7th Cir. 2024) ............................................................... 30

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014)............................................... 3, 13, 28, 30

*Jones v. BRG Sports, Inc.*,
  No. 18 C 7250, 2019 WL 3554374 (N.D. Ill. Aug. 1, 2019) .................. 32

*Leuthold v. Destination Am., Inc.*,
  224 F.R.D. 462 (N.D. Cal. 2004).......................................................... 35

*Levya v. Medline Indus., Inc.*,
  716 F.3d 510 (9th Cir. 2013)................................................................. 13

*Martin v. Behr Dayton Thermal Prods. LLC*,
  896 F.3d 405 (6th Cir. 2018)................................................................. 33

*Mazur v. eBay, Inc.*,
  257 F.R.D. 563 (N.D. Cal. 2009) .......................................................... 14

*McDonald v. Ricardo's on the Beach, Inc.*,
  No. CV 11-9366 PSG, 2013 WL 228334 (C.D. Cal. Jan. 22, 2013) ........ 34

*McGlenn v. Driveline Retail Merch., Inc.*,
  No. 18-cv-2097, 2021 WL 165121 (C.D. Ill. Jan. 19, 2021) .................. 32

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*,
  No. CV 12–cv–04457–SC, 2015 WL 4537957 (N.D. Cal. July 27, 2015)........................... 33

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008).................................................................. 33

*Moeller v. Taco Bell Corp.*,
  No. C 02-5849 PJH, 2012 WL 3070863 (N.D. Cal. July 26, 2012) ........ 33

*Moore v. Apple Inc.*,
  309 F.R.D. 532 (N.D. Cal. 2015) .......................................................... 32

*NAACP of San Jose/Silicon Valley v. City of San Jose*,
  No. 21-CV-01705-PJH, 2023 WL 2823506 (N.D. Cal. Apr. 7, 2023) ...... 19

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ........................................................... 13, 14

*Ollier v. Sweetwater Union High Sch. Dist.*,
  768 F.3d 843 (9th Cir. 2014)........................................................... 13, 18

*Ortega v. Neil Jones Food Co.*,
  No. 12-CV-05504-LHK, 2014 WL 232358 (N.D. Cal. Jan. 21, 2014).................. 24

*Pinterest, Inc. v. Pintrips, Inc.*,
  No. 13-cv-04608-HSG, 2015 U.S. Dist. LEXIS 76545 (N.D. Cal. June 12,
  2015) ...................................................................................... 24

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

*Portz v. St. Cloud State Univ.*,
    297 F. Supp. 3d 929 (D. Minn. 2018) .................................................................................. 18

4

*Rahman v. Mott's LLP*,
    693 F. App'x 578 (9th Cir. 2017) ...................................................................................... 35

5

6

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ...................................................................................... 16

7

*Rapuano v. Trs. of Dartmouth Coll.*,
    334 F.R.D. 637 (D.N.H. 2020) ......................................................................................... 18

8

9

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) .......................................................................................... 14

10

*Sali v. Corona Reg'l Med. Ctr.*,
    909 F.3d 996 (9th Cir. 2018) ............................................................................................ 24

11

12

*Sana v. Hawaiian Cruises, Ltd.*,
    181 F.3d 1041 (9th Cir. 1999) .......................................................................................... 24

13

*Siebert v. Gene Sec. Network, Inc.*,
    75 F. Supp. 3d 1108 (N.D. Cal. 2014) .............................................................................. 24

14

15

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ........................................................................................................... 13

16

*Snyder-Hill v. Ohio State Univ.*,
    48 F.4th 686 (6th Cir. 2022) ............................................................................................. 15

17

18

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ......................................................................................................... 13

19

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
    308 F.R.D. 630 (N.D. Cal. 2015) ..................................................................................... 32

20

*Tourgeman v. Collins Fin. Servs., Inc.*,
    No. 08-CV-1392 JLS (NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) ................... 14, 28

21

22

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................................... 13, 33, 34

23

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ............................................................................................ 30

24

*Van v. Ford Motor Co.*,
    332 F.R.D. 249 (N.D. Ill 2019) ........................................................................................ 23

25

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................... 16, 23

26

*Wallenstein v. Mondelez Int'l, Inc.*,
    No. 22-cv-06033-VC, 2024 WL 4293904 (N.D. Cal. Sept. 25, 2024) ............................. 14

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Willis v. City of Seattle*,
    943 F.3d 882 (9th Cir. 2019 .................................................................. 23

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................... 26

*Wollam v. Transamerica Life Ins. Co.*,
    No. 21-cv-09134-JST, 2024 WL 1117050 (N.D. Cal. Mar. 13, 2024) .................. 33

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................................... 32

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001), opinion amended ........................................ 35

*Zinser v. Accufix Rsch. Inst., Inc.*,
    273 F.3d 1266 (9th Cir. 2001) ............................................................... 32

**Court Rules**

California Rule of Professional Conduct 1.7 ................................................ 11

California Rule of Professional Conduct 4.3 ................................................ 29

Federal Rule of Civil Procedure 1 ........................................................... 3

Federal Rule of Civil Procedure 23 ................................................... *passim*

Federal Rule of Civil Procedure 23(a) .................................. 2, 16, 17, 24

Federal Rule of Civil Procedure 23(b) ............................................... *passim*

Federal Rule of Civil Procedure 23(c)(4) ........................................... *passim*

Federal Rule of Evidence 702 ................................................................ 21

Federal Rule of Evidence 804(b) ...................................................... 24, 25

**Other Authorities**

Delaney R. Davis, *Title IX at Fifty: Reimagining Institutional Liability Under
    Karasek's Pre-Assault Theory*, 58 Ga. L. Rev. 313, 313 (2023) .................... 18

Rutter Group, *Fed. Civil Trials & Evidence* ............................................ 25

## MEMORANDUM OF POINTS AND AUTHORITIES

The USF Athletics department is significantly understaffed, and this was likely a contributing factor in the failure to detect, address or prevent the occurrence of some of the previous negative situations. Sufficient checks and balances in the departmental structure and staffing should be in place to ensure issues are identified and addressed before becoming a systemic problem. In speaking with the coaches and staff, it was clear that these checks and balances were not in place, and the oversight normally provided by sport administrators was lacking due to being understaffed and conflicts of interest that permitted undesired behavior to continue undetected or unchecked.

- Conclusion of outside investigators, in a USF-commissioned report dated August 28-29, 2023 and obtained through a subpoena on December 2, 2024.[1]

I thought I should inform you about the letter that you may or may not have received from "the baseball team" about keeping G's name in good standing . . . . This letter that was "signed" by a good chunk of the team should be completely null and void. Our signing of this "confidential" letter was not confidential at all. We were completely coerced into signing it and when half the team did not want to do it we were texted [and] called by this individual infuriated asking us "why have you not signed this? Do you even care about the team? The leaders of the team will know how much you care if you just sign it."

- Email from a proposed class member (not a John Doe) to Athletic Director Joan McDermott, dated May 24, 2022.[2] The "individual" coercing players to sign the letter of support is now a declarant opposing class certification.[3] This email was not produced in discovery until December 11, 2024.[4]

- Sworn statement of USF in its arbitration against Giarratano, dated February 23, 2023. This was not produced in discovery until December 11, 2024.[5]

## I.    INTRODUCTION

Reading Defendants' papers in opposition to Plaintiffs' motion for class certification, one could be forgiven for thinking Plaintiffs sought to certify a full-blown damages class for all purposes under Rule 23(b)(3). But that is not the motion before the Court, and substantially all of Defendants' arguments against certification oppose a motion Plaintiffs did not bring. Defendants

---

[1] Declaration of Jonathan D. Selbin ("Selbin Decl."), Ex. 1 at FERRIS0000181; Declaration of Michael von Klemperer ("MvK Decl.") ¶ 3.
[2] Selbin Decl., Ex. 2 at USF_0115359.
[3] *Compare* Selbin Decl., Ex. 2 *with* ECF No. 282-24 (USF Ex. 22).
[4] MvK Decl. ¶ 4.
[5] Selbin Decl., Ex. 3 at USF 0116110; MvK Decl. ¶ 5.

1    fail to rebut Plaintiffs' showing of numerosity, commonality, typicality, and adequacy under Rule

2    23(a), and fail to demonstrate why issue certification under Rule 23(c)(4) is inappropriate or

3    impracticable here. The proposed issues class should be certified.

4        As to Rule 23(a), Defendants' arguments are predicated largely upon declarations from

5    absent class members who assert they were not harmed by the Coach Defendants' sexual

6    misconduct. But USF knows that players have been "coerced into signing" statements in support

7    of the Coach Defendants.[6] That alone is reason enough for the Court to doubt the "support"

8    expressed in these declarations. But there's more: three USF administrators and two experts (one

9    retained by USF itself) acknowledged that ███████████████████████████████████

10   ████████████████████.[7]

11       The declaration USF submitted from current Plaintiff Doe 7 is particularly troubling. USF's

12   counsel appears to have contacted an adverse pro se party with live claims against their client, and

13   drafted a declaration from him containing statements against his interest in this case, not to mention

14   demonstrably false, likely in violation of California ethical rules (as addressed below). USF's

15   counsel also put Plaintiffs' counsel in the difficult position of having to rebut a former client's

16   sworn statements.[8] In addition to obtaining a preliminary opinion from an ethics expert, Plaintiffs

17   served discovery on USF on these issues and await its production. The Court may need to convene

18   an evidentiary hearing. In the meantime, the circumstances around USF's conduct with respect to

19   Doe 7's declaration provide further reason to question all of the declarations.

20       As to Rule 23(c)(4), Defendants focus on purported differences in the way each proposed

21   class member was (or was not) harmed by the Coach Defendants' sexual misconduct. USF argues,

22   for example, that "[e]ven if they prevailed at the class stage, Plaintiffs would still need to prove

23   individual harm."[9] But this is not an argument against issue certification—it is a correct statement

24

---

25   [6] Selbin Decl., Ex. 2 at USF_0115359.

     [7] *Id.*, Ex. 4 (Nelson Dep. Tr.) at 147:8-10, 40:5-21; *id.*, Ex. 5 (Arb. Tr. Vol. IX) at 2218:13-15; *id.*,
26   Ex. 6 (Arb. Tr. Vol. VIII) at 2102:25-2103:17; *id.*, Ex. 7 (Cross Dep. Tr.) at 214:9-11.

     [8] Plaintiffs' counsel do not take these issues lightly. As discussed below, they retained an expert in
27   California legal ethics to provide an opinion on their own and USF's counsel's conduct, and to
     guide them on addressing this issue in a manner that complies with their obligations to a former
28   client under the California Rules of Professional Conduct. *See infra* at 29.

     [9] USF Opp'n at 10.

of how Rule 23(c)(4) issue certification operates. Plaintiffs already made clear—but reiterate again now—that individualized damages (or lack thereof) can and should be addressed on an individual basis for each class member, after common liability issues are resolved. In endorsing this bifurcation of common liability issues and individual damages, the Ninth Circuit affirmed that "no matter how individualized the issue of damages may be . . . it would drive a stake through the heart of the class action device to require that every member of the class have identical damages." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167-68 (9th Cir. 2014) (cleaned up).[10] And key discovery—produced only *after* Plaintiffs moved for class certification and *after* the Court set a deadline for the parties to confer regarding extensions to the briefing schedule—has only confirmed that common evidence will prove (or disprove) the common liability issues identified in Plaintiffs' motion. This discovery included previously unknown incidents of sexual misconduct as well as widespread recognition—both internally at USF and by outside investigators hired by USF—of the widespread and longstanding structural failures at USF that permitted the Coach Defendants' rampant sexual misconduct to go unchecked for decades.[11]

Curiously, USF opens its opposition by noting that other university cases involving sexual misconduct (neither cited in Plaintiffs' motion) "did not receive class certification until after settlement, when defendants supported certification of a settlement class."[12] True: when confronted with the horrifying reality that students had been harmed on their watch, other universities opted to work cooperatively to provide some measure of recompense and reform their policies and practices. USF, by contrast, has rejected all attempts by Plaintiffs to even engage in such discussions and opted instead to call the *thirteen* players spanning *twenty* years who bravely came forward (and their counsel) liars and frauds.

At bottom, the Court's job on class certification is "to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (cleaned up); *see also* Fed. R. Civ. P. 1 (Rules are to "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive

---

[10] Quoting *Butler v. Sears, Roebuck and Co. ("Butler II")*, 727 F.3d 796, 801-02 (7th Cir. 2013).

[11] *See infra* § II (detailing recently produced evidence).

[12] USF Opp'n at 11.

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

1   determination of every action and proceeding"). Plaintiffs respectfully submit that Rule 23(c)(4)

2   certification is the fairest and most efficient way to move this case forward to resolution.

3   **II.   <u>CLASS EVIDENCE</u>**

4   Contrary to USF's contention, class discovery has not "been ongoing for more than a

5   year."[13] Though the case was filed in 2022, USF's document productions did not begin until April

6   29, 2024 and were slow thereafter.[14] USF is *still* producing documents Plaintiffs identified (back

7   on September 19, 2024) as key class discovery.[15] USF admits that its most recent production on

8   January 28, 2025—nine days ago—was of documents "prioritized for class certification" last fall.[16]

9   And despite committing to make rolling productions of class discovery every two weeks, this was

10  the first custodial production USF has made in two and a half months.[17] Giarratano did not *even*

11  *begin* production of ESI until February 3, 2025—three days ago. Nakamura, to his credit, has taken

12  his discovery obligations more seriously than either USF or Giarratano.[18]

13  Nevertheless, Plaintiffs remain "eager to move for class certification."[19] There is already

14  sufficient evidence reflecting a decades-long pattern of abuse by the Coaches, as well as USF's

15  uniform failure to act either to prevent it or respond to it. However, because USF repeatedly asserts

16  that Plaintiffs have "no evidence" regarding the common issues they seek to certify,[20] Plaintiffs

17  include here some of the additional class discovery USF is only now producing. To be clear:

18  Plaintiffs cite *only* documents and testimony produced *after* Plaintiffs moved for class certification

19  and *after* the Court's deadline for the parties to confer on the briefing schedule.[21] The vast majority

20  [13] USF Opp'n at 11.

21  [14] *See* ECF Nos. 209, 228, 236 (detailing USF's discovery delays).

    [15] *See* ECF No. 236 at 4-5 (detailing requested key class discovery).

22  [16] MvK Decl. ¶ 6.

23  [17] *Id.* ¶ 7. Inexplicably, USF also failed to collect and produce text messages from any custodians
    despite this being a critical source of relevant information and agreeing to do so in its arbitration
24  against Giarratano. *Id.* ¶ 8. Plaintiffs flagged this issue for USF last summer but USF has repeatedly
    refused to engage and motion practice is likely necessary. *Id.*

25  [18] *Id.* ¶¶ 9-10. USF's and Giarratano's conduct stands in stark contrast to Plaintiffs' conduct. Indeed,
    they were able to cherry-pick text messages for irrelevant "gotcha" soundbites in their oppositions
26  precisely because Plaintiffs produced *all* of their ESI more than six months ago. *Id.* ¶ 11.

    [19] ECF No. 236 at 2.

27  [20] USF Opp'n at 17, 22.

28  [21] This reply does not include anything from the large production of documents "prioritized for
    class certification" that USF produced only days go, or any of Giarratano's ESI produced only days
    ago, which Plaintiffs of course could not review in time to incorporate. MvK Decl. ¶¶ 6, 9.

of this new, damning evidence comes from arbitration materials USF attempted to withhold, necessitating a Court order compelling their production.[22] This discovery confirms the propriety of issue certification here. Plaintiffs—and the Court—have every reason to believe more is coming.

### A.    USF Lacks a Functioning Title IX Process.

Since Plaintiffs' motion was filed, USF and third parties produced critical documents—including the findings of an internal investigation of USF's athletics department—that reflect longstanding, structural failings with USF's Title IX process. None of these documents were available to Plaintiffs' expert Robert Boland when he submitted his original report.[23] Based on his review of documents produced since that report, Boland submits here a supplemental expert report regarding these systemic failures. Boland—who served as Athletics Integrity Officer at Penn State in the wake of the Jerry Sandusky scandal—concludes: "New evidence demonstrates that not only were USF's policies and trainings inadequate, but the entire structure of its Athletic Department and administration all but ensured that misconduct was not identified, reported, or prevented. This further compounded the culture of abuse."[24]

Boland is not alone in reaching this conclusion. In the wake of this lawsuit, USF hired a team of outside investigators to assess its athletics department. USF retained Mitchell Malachowski (Faculty Athletic Representative, University of San Diego), Ellen Ferris (Senior Associate Commissioner, American Athletic Conference), and Bruce Rasmussen (Former Athletic Director, Creighton University) to conduct the investigation. In August 2023, this team concluded: "The USF Athletics department is significantly understaffed, and this was likely a contributing factor in the failure to detect, address or prevent" abuse. They noted that USF lacks "[s]ufficient checks and balances in the departmental structure and staffing [that] should be in place to ensure issues are identified and addressed before becoming a systemic problem," which together with "conflicts of interest" in the department "permitted undesired behavior to continue undetected or unchecked."[25]

---

[22] MvK Decl. ¶ 13. Though the Court ordered their production on November 25, 2024, and the documents should have been readily accessible, USF and Giarratano failed to produce any arbitration documents for weeks, and USF did not complete production until January 28, 2025. *Id.*
[23] *Id.* ¶ 14.
[24] Selbin Decl., Ex. 20 (Boland Suppl. Rep.) ¶ 9.
[25] *Id.*, Ex. 2 at USF_0115359.

Testimony by USF administrators confirms the scope of the department's structural failures. When McDermott—head of the department—was asked whether she has "███████████████████████████████████████████████," she answered: "█████████████"[26] Katrina Garry, USF's Title IX Officer, complained to Human Resources Director Diane Nelson that she "██████████████████████████████████████████████████████████████"[27] USF's President, Fr. Paul Fitzgerald testified: "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"[28] Indeed, though USF continues in this litigation to downplay the significance of the complaints the department ignored over the years (beginning in 2000), McDermott does not: ██████████████████████████████████████████████████████████████████████████████████████"[29]

USF's structural failures had real, tragic consequences for the baseball team. For example, in a previously undisclosed Title IX complaint, a member of the baseball team informed USF's Title IX Officer that: "████████████████████████████████████████████████████"[30] In response to this complaint, ████████████████████████████████████████████████████.[31] He explained to McDermott that ██████████████████████████████████████████████████████"[32] Boland opines: "USF's failure to address Giarratano's █████████████████████████████████████████ reflects a gross failure of oversight. Any reasonable administrator would have understood that Giarratano was placing the University, and the student-athletes in his care, at extraordinary risk. In my experience, coaches,

---

[26] Selbin Decl., Ex. 8 (McDermott Dep. Tr. Vol. 2) at 282:2-5.
[27] *Id.*, Ex. 10 (Arb. Tr. Vol. X) at 2601:8-2602:5, 2602:11-13.
[28] *Id.*, Ex. 5 (Arb. Tr. Vol. IX) at 2384:9-17.
[29] *Id.*, Ex. 5 (Arb. Tr. Vol. IX) at 2224:19-25.
[30] *Id.*, Ex. 11 (Giarratano Dep. Tr. Vol. 1) at 251:3-5. In the arbitration, USF offered Doe 7 to testify "████████████████████████████████████████████████████████████████████████████████" *Id.*, Ex 15 (Vartain Decl.) ¶ 9.
[31] Selbin Decl., Ex. 11 (Giarratano Dep. Tr. Vol. 1) at 259:14-260:3.
[32] *Id.* at 262:3-18.

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

1    including a national championship winning coach at Penn State, have been terminated for less

2    severe ████████████████████████████████████ "[33]

### B.    Plaintiffs Continue to Uncover New Evidence of the Coach Defendants' Abuse, as Well as USF's Knowledge and Cover-Up of that Abuse.

5    Plaintiffs' motion included extensive documentation of the Coach Defendants' sexual

6    misconduct and USF's knowledge of it. This evidence included declarations, deposition testimony,

7    and USF-internal documentation—all of it completely ignored by Defendants.[34] Since the motion

8    was filed, USF has produced even more evidence of the Coach Defendants' pervasive sexual

9    misconduct, and USF's awareness of the problem.

10    Though Defendants (and their declarants) claim Plaintiffs' allegations of sexual misconduct

11    are entirely fabricated, the record proves otherwise. When asked ████████████████████████

12    ██████████████████████████████████████████████████████████████—an

13    accusation Defendants routinely lob at Plaintiffs in this litigation—USF Human Resources Director

14    (Nelson) testified: "████████████████████████████████████████████████████

15    ████████████████ "[35] Nelson also testified to the following "██████████" of USF's investigation:

16-19    ███████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████ [36]

20    Father Fitzgerald similarly testified that Giarratano—himself a mandated reporter under Title IX—

21    "██████████████████████████████████████████████████████████████

22    ████████████████████████████████████ "[37] When asked whether Giarratano had ████████████

23    ████████, Father Fitzgerald testified: "████████████████████████████████

24    ███████████████████████████████████████████████████████████

---

[33] Selbin Decl., Ex. 20 (Boland Suppl. Rep.) ¶ 17.

[34] *See* Mot. at 2-13 (detailing evidence). The only Defendant to really engage this evidence was Nakamura, but he did so only to argue (incorrectly) that it is inadmissible. *See infra* § III.B.2.d.

[35] Selbin Decl., Ex. 4 (Nelson Dep. Tr.) at 111:12-19.

[36] *Id.*, Ex. 10 (Arb. Tr. Vol. X) at 2503:7-24.

[37] *Id.*, Ex. 5 (Arb. Tr. Vol. IX) at 2333:7-10.

1    ███████████████████████████████████████████[38] USF's counsel also

2    told the arbitrator under "penalty of perjury" that "the evidence will show that Claimant

3    [Giarratano] received a complaint from [a player] in March *before* the lawsuit, and suppressed it."[39]

4         USF's recent productions also reveal instances of sexual misconduct not previously in the

5    record. USF's former Athletics Director (McDermott) testified that ████████████████████

6    ███████████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████████████[40]

8    Another parent (not of a John Doe) testified that ██████████████████████████

9    ████████████[41] Nelson testified to additional incidents of Nakamura ████████—

10   including "████████████████████"—and to additional examples of ████████—

11   including ████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████ and one

13   with Nakamura ███████████████████████████████████████████████

14   ████████████████████████████████████████████████████████[42]

15        Finally, new statistical documentation underscores USF's notice of a serious problem on

16   the baseball team. A May 2021 report from Jeremy Howell, USF Faculty Athletic Representative,

17   charts graduation rates between 2004 and 2020. The chart reflects substantial dips throughout

18   Giarratano's tenure. In his analysis of the chart, Howell notes that "baseball now has the lowest

19   graduation rate in the athletic department."[43] Yet USF suggests in its opposition that in the team's

20   history, there are only two examples—conveniently, Does 1 and 3—of players being "run-off" the

21   team in retaliation for refusing to condone the Coaches' sexual misconduct.[44]

22        **C.    USF Has Internally Questioned the Reliability of Absent Class Member**
             **Support Statements, and this Court Should as Well.**

23

24        Defendants ask the Court to credit 21 absent class member declarations despite several

25   [38] Selbin Decl., Ex. 10 (Arb. Tr. Vol. X) at 2426:22-2427:5 (emphasis supplied).
     [39] *Id.*, Ex. 15 (Vartain Decl.) ¶ 13 (emphasis in original).
26   [40] *Id.*, Ex. 9 (McDermott Dep. Tr. Vol. 1) at 200:18-201:16.
     [41] *Id.*, Ex. 12 (Arb. Tr. Vol. I) at 275:13-276:6.
27   [42] *Id.*, Ex. 4 (Nelson Dep. Tr.) at 113:24-25, 50:10-23.
     [43] *Id.*, Ex. 13 at FERRIS0000090.
28   [44] USF Opp'n at 23.

glaring issues, all of them known to USF. Indeed, when presented with a nearly identical show of support during USF's internal investigation into the Coach Defendants, USF *did not credit the statements*. This Court should not either.

First, USF is well-aware that since this litigation was filed, absent class members have been "coerced" into signing onto support for the Coach Defendants. On May 24, 2022, a class member wrote to Athletic Director Joan McDermott, and alerted her to the fact that a letter she had received from "the baseball team" in support of Giarratano "should be completely null and void" because players "were completely coerced into signing it and when half the team did not want to do it."[45] This "half of the team" was pressured to sign through text messages and phones calls from an individual who now appears as a declarant in opposition to class certification.[46] And in an astounding display of the extent to which Defendants distort facts about these "statements," Giarratano identifies the player who reported this false statement to McDermott as not only a *supporter* but the statement's *author*.[47] This entire exchange—from submission to McDermott to distortion in this briefing—underscores that these displays of "support" are not reliable.

Second, USF *internally* acknowledges the culture of fear, silence, and coercion that pervaded the team and motivated "support" for the Coaches. USF's Human Resources Director (Nelson) testified that there was a ██████████████████████ and that players were taught ████████████"[48] McDermott likewise acknowledged that players were ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████"[49] She "████████████████ ██████████████████████████████████████████" but ████████████ ██████████████████████████████████"[50]

Third, USF *internally* acknowledges that support statements born out of this culture should

---

[45] Selbin Decl., Ex. 2 at USF_0115359.

[46] *Compare* Selbin Decl., Ex. 2 *with* ECF No. 282-24 (USF Ex. 22).

[47] *See* Giarratano Opp'n at 8, Ex. L. Giarratano's gross misrepresentation of the document is apparent on its face. *Id.*

[48] Selbin Decl., Ex. 4 (Nelson Dep. Tr.) at 147:8-10.

[49] *Id.*, Ex. 5 (Arb. Tr. Vol. IX) at 2218:13-15.

[50] *Id.* at 2102:25-2103:17.

3172431.7

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

1   not be credited. Charles Cross, Vice President of Business and Finance, testified that █████

2   ███████████████████████████████████████████████████████████████████

3   ████████████████████████████████████[51] Nelson, too, testified that █████

4   ███████████████████████████████████████████████████████████████████

5   ███████████████████████████████████████" She went on: "█████

6   ███████████████████████████[52] The same is true of the declarations

7   submitted in opposition to class certification. Nearly all of them contain the same "cookie-cutter"

8   paragraphs, down to the same paragraph numbering. For example, eight of the declarations have a

9   paragraph (usually paragraph six) that reads *exactly*:

> I did not have the same or even a similar experience playing baseball at USF
> that Plaintiffs allege they had. Nor did I experience or witness the type of
> sexualized and/or discriminatory environment that Plaintiffs allege they
> suffered, nor was I (or anyone I knew of) ever retaliated against by USF's
> coaching staff or USF administration for anything whatsoever. The experiences
> Plaintiffs allege are not typical to my own. Nor do I believe that Plaintiffs'
> experiences were common to the experiences shared by other members of
> USF's baseball team who are included in the proposed class.[53]

15  Others contain exactly this language except that, and notably, the declarant apparently insisted that

16  the drafter remove the piece about never witnessing or experiencing retaliation.[54] And the

17  remainder have very similar versions of the same sentiment.[55]

18      Fourth, Doe 7's declaration illustrates that USF and its counsel are more than willing to

19  distort the truth to manufacture support for USF's position.[56] When it suited USF in its arbitration

20  against Giarratano, USF called Doe 7 to testify to the *exact opposite* of what now appears in his

21  declaration.[57] Ahead of calling Doe 7 to testify, on July 12, 2024, USF's counsel submitted a

---

[51] Selbin Decl., Ex. 7 (Cross Dep. Tr.) at 214:9-11.

[52] *Id.*, Ex. 4 (Nelson Dep. Tr.) at 40:5-21.

[53] ECF No. 282-1 at Giosso Decl. ¶ 6; Jones Decl. ¶ 6; Keaschall Decl. ¶ 6; Tolsma Decl. ¶ 6; Westerman Decl. ¶ 6; Young Decl. ¶ 6; Sittauer Decl. ¶ 7; ECF No. 282-24 at Roe Decl. ¶ 8.

[54] ECF No. 282-1 at Lopez Decl. ¶ 8; Zahn Decl. ¶ 7.

[55] ECF No. 282-1 at Santerre Decl. ¶ 6; Corderio Decl. ¶ 7; Eaton Decl. ¶ 7; Mott Decl. ¶ 6; Knoble Decl. ¶ 7; Cirbo Decl. ¶ 6; Bond Decl. ¶ 9; Hinkle Decl. ¶ 6; Cimber Decl. ¶5; Della Cella Decl. ¶5; McGuigan Decl. ¶ 8.

[56] *See infra* at 29 (detailing Plaintiffs' counsel's retention of an expert in California legal ethics to address the unfortunate situation USF has created).

[57] Needless to say, Plaintiffs' counsel's conversations with Doe 7 hewed closer to his testimony than to the false declaration USF encouraged. Declaration of Beth Fegan ("Fegan Decl.") ¶¶ 13-33.

declaration "under penalty of perjury" explaining Doe 7 was "expected to recount instances of Nakamura's regular engagement in sexualized conduct."[58] On July 23, 2024, USF called Doe 7 to testify.[59] USF's counsel *from this lawsuit*, attended the proceedings solely for Doe 7's testimony and was thus aware of his testimony in the arbitration that supported Plaintiffs in this matter.[60]

During the arbitration, Doe 7 testified that he witnessed:

- ███████████████████████████████████████████████ Selbin Decl., Ex. 14 (Arb. Tr. Vol. VII) at 1680:9-1681:1.

- ██████████████████████████████████████████████████ *Id.* at 1707:1-7; 1785:24-1786:2.

- ████████████████████████████████████████, *id.* at 1683:2-9, ████ *id.* at 1797:5-16.

- ███████████████████████████████████████████ *Id.* at 1707:13-17.

- ██████████████████████████████████████████████████ *Id.* at 1707:17-18; 1707:22-1708:3.

- ██████████████████████████████████████████ *id.* at 1692:3-9, ████████████████ *id.* at 1694:3-5.

- ████████████████████████████████████████████████ *Id.* at 1711:1-2.

Again, USF's counsel *in this litigation* was present for all of this testimony. Yet this same counsel, some six months later, encouraged this individual to submit a sworn statement avowing that such things *never occurred*.[61] This calls into question similar claims by other declarants that they "never witnessed" the sort of abuse Plaintiffs allege here.

Fifth, an expert retained *by USF* in its arbitration against Giarratano testified that ████████ ██████████████████████████████████████████████████████████████████████████████████ The

---

[58] Selbin Decl., Ex. 15 (Vartain Decl.) ¶ 5.

[59] *Id.*, Ex. 14 (Arb. Tr. Vol. VII).

[60] *Id.* at 1608:12-16; 1666:19-20; 1799:20-21. Despite representing USF, an adverse party to Doe 7 in this lawsuit, USF's counsel purported to appear on his behalf in the arbitration. This was a violation of Rule of Professional Conduct 1.7(d)(3): counsel can only represent adverse clients where "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal."

[61] *See* ECF No. 282-22, ¶ 13 ("I never observed any USF coach exposing himself to any USF player or any other coach."); *id.* ¶ 15 ("I never saw any of the alleged sexual acts by Coach Nakamura, referenced in the complaint, for instance . . . being forced to perform sexualized skits . . . I never saw or engaged in any skits that were sexual in nature.").

1  expert—Sandy Barbour—was shown 

2  ." She observed that

3  ."[62]

4  She testified that, in her expert opinion,

5  [63] She further explained that

6  .[64]

7      Finally, Plaintiffs' expert Boland similarly opines that the purported show of support from

8  declarants is unsurprising, in context. He explains that "team dynamics commonly minimize or

9  deny misconduct," and that this "is amplified when the conduct involves hazing or sexual, taboo,

10  or embarrassing matters."[65]  Boland roots this observation in "nearly 60 investigations in collegiate

11  or Olympic sports . . . whether at Penn State, as an independent reviewer, as a member of USA

12  Weightlifting's Ethics Committee, or as an attorney," from which he could not "recall a single

13  matter where misconduct was found to have occurred where a witness or reporter did not receive

14  some pressure from others on the team to either deny or conform their testimony to that of the group

15  or coach or suffer either threat of being ostracized from the group or a physical threat."[66]

16  **III.    ARGUMENT**

17      Defendants do not credibly dispute that this case meets all requirements for Rule 23(c)(4)

18  issue certification. Instead, they focus primarily on declarations that have no bearing on the issues

19  to be certified and the veracity of which the Court has every reason to question. Classwide

20  determination of the common issues here is the best tool to fairly and efficiently adjudicate the

21  common issues for Plaintiffs and the class. If—and only if—there is a liability finding on the

22  common issues, absent class members would still be required to come forward (as Plaintiffs have)

23  to establish their damages. As detailed in Plaintiffs' motion, many courts throughout the country—

24  including the Ninth Circuit—have endorsed this process. *See* Mot. at 24-25 (citing, among other

25  authorities, *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579-80 (9th Cir. 2015);

26  [62] Selbin Decl., Ex. 6 (Arb. Tr. Vol. VIII)  at 1969:5-13.

[63] *Id.* at 1969:22-1970:3.

27  [64] *Id.* at 1970:5-9.

[65] *Id.*, Ex. 20 (Boland Suppl. Rep.) ¶ 35.

28  [66] *Id.* ¶ 36.

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

1    *Jimenez*, 765 F.3d at 1168; *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 515 (9th Cir. 2013)).

2        **A.    Plaintiffs' Proposed Class Is Valid**

3        Defendants argue that Plaintiffs' proposed class is "invalid" and/or "overbroad" because it

4    includes members who lack standing or have time-barred claims. These arguments are wrong on

5    both the facts and the law.

6        *First*, Defendants' standing argument is predicated entirely upon the declarations submitted

7    with Defendants' oppositions, in which certain class members claim not to have been harmed.[67]

8    The argument is therefore based on a false premise: that Plaintiffs must show *every single class*

9    *member* suffered the same degree of injury as the named Plaintiffs. This is not the law.

10       "[N]amed plaintiffs who represent a class 'must allege and show that they personally have

11   been injured, not that injury has been suffered by other, unidentified members of the class to which

12   they belong.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (quoting *Simon v. E. Ky.*

13   *Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).[68] And it is well-settled that the existence of

14   uninjured class members does not defeat class certification. *Tyson Foods, Inc. v. Bouaphakeo*, 577

15   U.S. 442, 460-61 (2016); *see also Heredia v. Sunrise Senior Living, LLC*, No. 22-55332, 2023 WL

16   4930840, at *1 (9th Cir. Aug. 2, 2023) (rejecting argument regarding "uninjured class members"

17   and affirming that "[a] possible need for individualized damages calculations does not . . . defeat

18   class action treatment"). Indeed, in *Olean*—cited by USF—the Ninth Circuit "reject[ed] the []

19   argument that Rule 23 does not permit the certification of a class that potentially includes more

20   than a de minimis number of uninjured class members." *Olean Wholesale Grocery Coop., Inc. v.*

21   *Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022). All the more so here: unlike the plaintiffs

22   in *Tyson* and *Olean*, Plaintiffs do not seek Rule 23(b)(3) certification for all purposes.

23       Here, there is also simply no basis to conclude that the proposed class includes a "great

24   number" of uninjured class members.[69] Plaintiffs have amassed substantial evidence that the Coach

---

[67] USF Opp'n at 11-12; Nakamura Opp'n at 14-15; Giarratano Opp'n at 12.

[68] For good reason—as their harms are well-documented—Defendants do not argue that Plaintiffs lack Article III standing. *Cf. Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 865 (9th Cir. 2014) (affirming plaintiffs possessed Article III standing to represent a class of other female student-athletes because their own "prospects for competing were hampered" by discrimination).

[69] USF Opp'n at 11.

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

1    Defendants' sexual misconduct was severe and pervasive.[70] And as set forth above, there is cause

2    for serious concern regarding the "declarations" submitted with Defendants' motions, including

3    that USF was long ago notified that participation in such shows of support are not voluntary, but

4    that players are "==completely coerced into signing==" such statements.[71] For that reason, USF has *itself*

5    *not credited* similar statements from absent class members, and multiple experts (including USF's)

6    agree they are unreliable.[72] *See also supra* § II.C (detailing other problems with the declarations,

7    including that USF knowingly submitted false statements from Doe 7).

8         Relatedly, Defendants argue that Plaintiffs' class definition is overbroad because it may

9    include uninjured class members. For example, USF cites *Berndt* for the proposition that Plaintiffs

10    must use a class definition that "limit[s] itself to class members who have actually suffered harm

11    by reason of defendants' alleged harassment." USF Opp'n at 12 (quoting *Berndt v. Cal. Dep't of*

12    *Corr.*, No. C 03-3174 PJH, 2012 WL 950625, at *11 (N.D. Cal. Mar. 20, 2012)). Since *Berndt* was

13    decided, however, the Ninth Circuit has unambiguously cautioned that such a definition would

14    constitute an impermissible fail-safe class. *See, e.g.*, *Olean*, 31 F.4th at 669 n.14 ("A court may not,

15    however, create a 'fail safe' class that is defined to include only those individuals who were injured

16    by the allegedly unlawful conduct.") (citing *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125,

17    1138 n.7 (9th Cir. 2016)). The Coach Defendants' arguments are predicated upon similarly stale

18    and improper fail-safe authorities.[73] Giarratano also appears to argue that the class is somehow not

19    ascertainable.[74] Setting aside that ascertainability is not a requirement in the Ninth Circuit,[75] the

20    class here is readily identifiable through annual baseball rosters. Indeed, Giarratano had no trouble

---

[70] *See* Mot. at 2-13; *supra* § II.

[71] Selbin Decl., Ex. 2 at USF_0115359.

[72] *See supra* § II.C.

[73] *See* Nakamura Opp'n at 15 (quoting *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) and *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392 JLS (NLS), 2011 WL 5025152, at *5 (S.D. Cal. Oct. 21, 2011) for the proposition that Plaintiffs' class should be defined to include only harmed class members); Giarratano Opp'n at 12 (arguing, without citation to any authority, that "plaintiffs' definition fails to distinguish between players who were actually subjected to and harmed by Defendants' wrongful conduct . . . and those who were not").

[74] Giarratano Opp'n at 11-12.

[75] *See Wallenstein v. Mondelez Int'l, Inc.*, No. 22-cv-06033-VC, 2024 WL 4293904, at *2 (N.D. Cal. Sept. 25, 2024) ("[W]hile the defendants invoke concerns about 'ascertainability,' this requirement does not exist in the Ninth Circuit.") (citing *Briseno v. Conagra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017)).

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

1    identifying—by name—304 class members in his Supplemental Initial Disclosures.[76]

2        *Second*, Defendants argue that an issues class cannot be certified because the statute of

3    limitations for *some* class members may have run on a *subset* of claims.[77] Again: this fundamentally

4    misunderstands the way Rule 23(c)(4) will streamline this litigation. Plaintiffs never argued that

5    any class member with time-barred claims would be permitted to re-assert those claims by virtue

6    of being a class member. To the contrary: Plaintiffs made clear that Defendants will assert any

7    individualized defenses against class members following determination of the common issues. *See*

8    Mot. at 25 (arguing that if there is a finding of liability on common issues, then the case would

9    "proceed to entertain [defendant's] affirmative defenses and cull the class accordingly") (quoting

10    *Avilez*, 596 F. App'x at 580).

11        To the extent the Court desires to make this even clearer now, it could readily do so through

12    use of two sub-classes: with John Does 1-3 to represent a subclass of "All members of the

13    University of San Francisco baseball team since March 11, 2020," who have live discrimination

14    and retaliation claims against USF, and live negligence claims against USF and the Coach

15    Defendants; and John Does 4-14 to represent a subclass of "All members of the University of San

16    Francisco baseball team between March 10, 2020 and 2000" who have live discrimination claims

17    against USF. *See* ECF No. 128 at 18-21 (holding that tolling for the discrimination claims is "better

18    addressed at summary judgment" but otherwise declining to toll the statute of limitations for Does

19    4-14). Critically, however, the issues for which Plaintiffs seek Rule 23(c)(4) certification will rise

20    or fall on the same common evidence for both classes. As particularly relevant here, this will

21    include common evidence that the Coach Defendants' misconduct was known to USF and covered-

22    up for *decades*.[78] As detailed above, in recent weeks USF has produced more of precisely such

23    evidence. In his arbitration testimony, USF President Fr. Fitzgerald noted that "

24    ---

[76] MvK Decl. ¶ 15.

25    [77] USF Opp'n at 12; Nakamura Opp'n at 13-14; Giarratano Opp'n at 12-13.

26    [78] *See Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 690, 705 (6th Cir. 2022) (holding at the motion to dismiss phase that plaintiffs' Title IX claims were not time-barred where Ohio State "actively misled students by, for example, telling complainants that no one had ever previously complained

27    about [their abuser]," such that plaintiffs could not reasonably have known they were injured by the university until public reporting on the issue in 2018). Indeed, in the face of evidence that

28    complaints were made against the Coach Defendants as early as 2000, USF is *still* (and falsely) telling Plaintiffs that no one complained until 2021. USF Opp'n at 18.

- 15 -

1    ████████████████████████████████████████████████████

2    ███████████████████████████████"[79] USF's Human Resources Director Nelson similarly

3    testified to "████████████████████████" of the abuse.[80]

    **B.**    <u>The Class Satisfies All Four Requirements of Rule 23(a).</u>

        **1.**    <u>The Class Is Sufficiently Numerous.</u>

Only Nakamura challenges numerosity. This is telling, as the requirement is readily satisfied here. Nakamura's sole argument is that Plaintiffs did not sufficiently document the class size in the declaration Plaintiffs submitted on this point.[81] For the avoidance of doubt: USF's 2020 baseball roster contained 36 players; it's 2021 roster 45 players, and it's 2022 roster 47 players. Across these three seasons alone, the rosters included 82 unique players.[82] The class size of course grows as you extend farther back into the class period. Plaintiffs therefore satisfy the numerosity requirement. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."). That would remain true even if the Court continued looking only at the 2020-2022 players and all six of Defendants' declarants who appeared on the 2020-2022 rosters ultimately opted out of the class. *Id.*

        **2.**    <u>There Is at Least One Common Question with a Common Answer that Will Drive the Litigation.</u>

Defendants do not dispute that the *seventeen* questions Plaintiffs identified are common, or that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). *See also* Mot. at 16-17, 19, 21 (listing common questions). Instead, Defendants focus their arguments on the commonality of questions not raised and, because this motion is brought under Ruler 23(c)(4), not at issue in (or in any way relevant to) this motion.

Defendants' commonality argument amounts to this: "There is zero evidence that players were injured on a class-wide basis." USF Opp'n at 14. The sum total of Defendants' evidence? The

[79] Selbin Decl., Ex. 16 (Fitzgerald Dep. Tr.) at 33:5-11; *id.* at 68:8-10 ("████████████████████████████████████████████████").

[80] *Id.*, Ex. 4 (Nelson Dep. Tr.) at 48:20-23.

[81] Nakamura Opp'n at 15.

[82] Selbin Decl., Ex. 17 (USF_0000804), Ex. 18 (USF_0000427), Ex. 19 (USF_0000808).

- 16 -

"declarations" submitted by class members, disavowing any harm from the Coach Defendants' sexual misconduct. Even if these declarations are credited—and as discussed above, there is good reason to question them—they cannot defeat commonality because they do not concern the common questions *actually at issue here*. For example, USF notes the "omission" of the following question from Plaintiffs' motion as "critical": "Was each member injured?"[83] But this question is neither omitted nor critical. Again: Plaintiffs *do not* seek certification of damages issues.[84] For example, to the extent the factfinder determines (in addition to answering other common questions) that "abuse by the Coaches was foreseeable to USF, or abuse by Nakamura foreseeable to Giarratano,"[85] then each class member would be required to individually step forward and certify that they (like Plaintiffs) were harmed by the Coaches' misconduct.[86]

As for the issues Plaintiffs *do* identify, they cited legal authorities supporting the commonality of each question.[87] Defendants either ignored or misrepresented these authorities, while also misrepresenting the record. There is no doubt that here, Plaintiffs raise more than the requisite one question. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (noting that not "*every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'") (emphasis in original) (cleaned up).

### a. USF Does Not Rebut Commonality on the Discrimination Claims.

USF's attack on the common questions for Plaintiffs' discrimination claims amounts to misstatements regarding both anti-discrimination law and the factual record.[88] Both attempts fail.

On the law, USF asserts: "Plaintiffs do not identify, nor has USF located, any case where a court granted a contested motion for class certification on these types of Title IX claims."[89] This is

---

[83] USF Opp'n at 18.

[84] This case is therefore unlike those cited by USF involving class member declarations—none of which were brought under Rule 23(c)(4), and in all of which the declarations undercut the commonality of the common questions actually raised. *See* USF Opp'n at 14 (citing *Garcia v. Sun Pac. Farming Coop.*, No. CV F 06-0871 LJO TAG, 2008 WL 2073979 (E.D. Cal. May 14, 2008) and *Gonzalez v. Millard Mall Servs., Inc.*, 281 F.R.D. 455 (S.D. Cal. 2012)).

[85] Mot. at 21.

[86] Given that Plaintiffs do, in fact, include foreseeability as a common question, USF's inclusion of this question as an "omission" is puzzling. USF Opp'n at 18.

[87] Mot. at 16-21.

[88] *See id.* at 16-17, 19 (listing questions).

[89] USF Opp'n at 15.

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

false. These claims are discrimination claims—in the main, Plaintiffs allege and will prove they were denied equal access to educational opportunities because they are men.[90] Plaintiffs cited cases where such claims were certified on contested motions. *See* Mot. at 18-19 (citing *Ollier*, 768 F.3d at 867 and *A. B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 834, 840 841 (9th Cir. 2022)). Others exist.[91] To the extent USF faults Plaintiffs for not citing examples of contested (and decided) certifications specifically on a pre-assault theory, then USF ignores the fact that this is "[a] new theory of institutional liability from the Ninth Circuit [that] poses a new avenue for plaintiffs suing universities under Title IX." Delaney R. Davis, *Title IX at Fifty: Reimagining Institutional Liability Under Karasek's Pre-Assault Theory*, 58 Ga. L. Rev. 313, 313 (2023).

USF attacks other of Plaintiffs' authorities as settlement rather than litigation certifications.[92] But Plaintiffs already noted in their motion that "[t]hough *Rapuano* was certified in the settlement context, the court made clear that its analysis was no less rigorous than if it had been analyzing the class for litigation."[93] And indeed, the *Rapuano* court noted that settlement certification "demands a searching—not a relaxed—inquiry," which may differ as between settlement and litigation, but is not less rigorous in the former context. *Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 643-44 (D.N.H. 2020). Notably, the portion of *Rapuano* in which USF claimed the court was "easing normal certification requirements" concerned Rule 23(b)(3) predominance, which is not at issue here. *Id.* at 651. USF dismisses the remainder of Plaintiffs' authorities as being "individual cases, not class actions." USF Opp'n at 15. What this ignores is how frankly remarkable it is that *thirteen people* came forward, notwithstanding the pressure to conform and the risk of retaliation, to affirm the need for a class action here.[94] And in any event, it is axiomatic that individual cases are instructive in determining the elements of the underlying claim, which necessarily informs which questions are (or are not) common for that claim.

---

[90] *See, e.g.,* ECF No. 133 (TAC) ¶¶ 532-51, 582-88.

[91] *See, e.g., Anders v. Cal. State Univ., Fresno*, No. 121CV00179AWIBAM, 2022 WL 3371600, at *8 (E.D. Cal. Aug. 16, 2022) (commonality met on a contested motion for class certification of a Title IX claim); *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 935 (D. Minn. 2018) (same).

[92] USF Opp'n at 15.

[93] Mot. at 17 n.24.

[94] *See* Selbin Decl., Ex. 20 (Suppl. Boland Rep.) at ¶¶ 25-26. Indeed, the retaliation continues in these papers. The personal attacks on the Does contained in Defendants' oppositions confirm the continued need for anonymous pleading here.

- 18 -

To support its (false) claim that discrimination class actions never happen, USF cites three opinions.[95] One plainly does not stand for that proposition, as it is not a class case at all, predates the last quarter-century of development in Title IX law, and ultimately upholds the claim. *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 654 (1999) (reversing dismissal of individual Title IX claim). The second is a nearly equally stale case out of the District of Kansas, in which the court declined to certify a class where two high school students alleged they were harassed by a male peer at "a private, back-to-school party off school grounds." *Doe v. Unified Sch. Dist. 259*, 240 F.R.D. 673, 674 (D. Kan. 2007). That is a remarkably different set of circumstances than here: the Coach Defendants abused Plaintiffs and other class members on USF grounds, on a daily basis, for two decades, all while USF not only ignored reports of this abuse but took steps to cover it up.[96] The third is a Title VII case, in which the plaintiffs brought an injunctive-relief only class to challenge their employer's policies and practices as discriminatory, but failed to establish that they—or *anyone else*—had actually suffered discrimination. *See Brown v. Bd. of Trs. of Univ. of Ill.*, No. 19-cv-02020, 2022 WL 17547575, at *4 (C.D. Ill. Dec. 9, 2022) ("[E]ven if Plaintiffs are correct in their assertion the NDP and its complaint procedure are problematic, such a finding has no bearing on whether *anyone* suffered a Title VII violation. Plaintiffs have put the cart before the horse.") (emphasis in original). Not so here: each Plaintiff has detailed his own abuse, and only class members who likewise come forward to demonstrate their harm would be entitled to damages (following a liability finding on the common issues). And Plaintiffs no longer seek injunctive relief, though one hopes USF would seriously consider it, in light of its own recognition regarding the inadequacy of its existing policies and practices.[97]

On the facts, USF first argues that "[w]hile Plaintiffs toss around words like 'deliberate indifference,' the truth is that after years of discovery in this case, Plaintiffs remain unable to show

---

[95] USF Opp'n at 16-17. In a footnote, USF also cites a series of excessive force cases under 42 U.S.C. § 1983 that plainly have no application here. *See* USF Opp'n at 17, n.9 (citing *Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249 (9th Cir. 2024); *NAACP of San Jose/Silicon Valley v. City of San Jose*, No. 21-CV-01705-PJH, 2023 WL 2823506 (N.D. Cal. Apr. 7, 2023); *Garza v. City of Sacramento*, No. 20-cv-01229 WBS JDP, 2022 WL 2757600 (E.D. Cal. July 14, 2022)).

[96] *See* Mot. at 2-13; *supra* § II.

[97] *See supra* § II.A (detailing the findings of the USF-commissioned investigative report).

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

that any player made a report of sexual harassment to the university before 2021."[98] False. In fact, Plaintiffs' motion detailed complaints to USF throughout the class period, beginning in 2000 with a complaint made directly to then-AD Bill Hogan about the Coaches' abuse.[99] In discovery produced since, Plaintiffs uncovered even more examples, as well as admissions by USF that it was *long-aware* of a culture of abuse on the baseball program.[100] And to be clear: deliberate indifference is not a buzzword Plaintiffs invented to "toss around." It is a tenet of federal and state antidiscrimination law.[101] USF's characterization of it as just a buzzword reflects the same cavalier attitude toward its responsibility to students that resulted in this lawsuit.

USF next argues that the "report from Plaintiffs' expert, Robert Boland is a red herring," because Boland "only review[ed] a select set of USF policies."[102] Also false. As noted in his materials considered—which USF calls "inflated" at the same time it suggests it is inadequate— Boland considered *every single* policy, presentation, or training USF had by-then produced in the litigation.[103] Indeed, Plaintiffs' counsel repeatedly requested that USF complete its policy productions in advance of class certification, so that Boland would have a complete record. USF refused.[104] Plaintiffs also served several interrogatories asking USF to identify all responsive policies and trainings, so Plaintiffs could themselves identify any holes. Boland considered *every policy and training USF identified*, though USF inexplicably refused to provide an "exhaustive list."[105] Plaintiffs went as far as to do homework for USF, identifying a spreadsheet that appeared

---

[98] USF Opp'n at 18.

[99] Mot. at 11-13.

[100] *See supra* § II (detailing this still incoming discovery).

[101] *See* Mot. at 16-17 (detailing elements of Plaintiffs' deliberate indifference theories).

[102] USF Opp'n at 20. Bizarrely, USF also faults Boland for not opining on whether USF's policy failures caused harm to any one class member. USF Opp'n at 21-22. But Plaintiffs do not offer *now* an expert on such harm, for the simple reason that such expertise is not at issue in this motion. Again: should the factfinder reach liability findings on the common issues, only then would each class member come forward to prove harm. As for the Plaintiffs, USF is well aware that they each retained an expert (Anthony Charuvastra, MD) to opine on the causes and extent of their harms. Indeed, USF long ago received Dr. Charuvastra's expert analysis of each Plaintiff, MvK Decl. ¶ 16, so USF's choice to fault Boland for not offering similar opinions now is puzzling. Dr. Charuvastra's reports are not discussed here because they are not relevant here.

[103] *See* Mot. at 5, n.7 ("Boland reviewed every policy and training document produced by USF through November 15, 2024.").

[104] ECF No. 236 at 4.

[105] MvK Decl. ¶¶ 17-18.

1    to include all responsive documents in this category throughout the class period, and asking USF

2    to "confirm that spreadsheet reflects the universe of responsive policies, practices, and trainings."[106]

3    Again USF refused, and explained that it was "not able to state definitively at this point" when its

4    policy production would be complete.[107] To the extent Boland did not review a policy or training,

5    it is solely because USF did not timely produce it.

6            More importantly, despite suggesting that Boland's policy review was incomplete, USF

7    does not identify a single document—policy or training—that it believes Boland should have but

8    did not review. Similarly, though USF claims that its "policies and the standard of care have

9    changed over time, providing no uniform answer across the class,"[108] USF fails to identify a *single*

10   *example* of such a policy change. And perhaps most critically, USF does not (and cannot) challenge

11   Boland's conclusion that at *no point in the class period* did USF have policies: "(1) prohibiting

12   sexual communication or sexual conduct between coaches and student-athletes, (2) mandating

13   training related to the power dynamic between coaches and student-athletes and to the inability of

14   student-athletes to consent to any form of sexual communication or sexual conduct with their

15   coaches, or (3) requiring appropriate team environments free from any form of sexual

16   communication or sexual conduct between coaches and student-athletes."[109] Nor does USF

17   challenge Boland's conclusion that "[t]hese policy failures place USF far below minimal acceptable

18   standards for college sexual misconduct policies."[110]

19                    **b.    USF Does Not Rebut Commonality on the Retaliation Claim.**

20           USF's sole response to the common questions Plaintiffs raised on their retaliation claim is

21   that Plaintiffs' case is not similar enough to another recently certified Title IX retaliation case.[111]

22   In so arguing, USF misrepresents that opinion.

23   _____

24   [106] ECF No. 236-1 at 9.

25   [107] *Id.* at 7.
     [108] USF Opp'n at 9.

26   [109] Mot. at 5 (citing Boland Rep.).

27   [110] *Id.* Despite not meaningfully challenging Boland's opinions, USF invites the Court to exclude them. USF Opp'n at 22. This is improper. To the extent USF seeks to include Boland's opinion, it must bring a motion under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

28   [111] USF Opp'n at 22-23.

1    In *A. B. v. Hawaii State Department of Education*, the Ninth Circuit reversed an order

2  denying certification, rejecting the very same argument USF makes again here: that the retaliation

3  was "unique to the named Plaintiffs." 30 F.4th 828, 834 (9th Cir. 2022) (cleaned up). The Court

4  held that where, as here, the "retaliation had a deterrent effect on female students more generally[,]

5  . . . that many of the class members were not the direct targets of the alleged retaliation would not

6  necessarily be a bar to classwide relief." *Id*. at 841. As in *A. B.*, the Coaches' years-long and

7  retaliatory practice of (among other retaliation) running players who refused their sexual conduct

8  off the team had the "effect of broadly dissuading [players] from 'raising the issue of sex

9  discrimination' out of fear that the [Coaches] would likewise retaliate against them." *Id*. at 840.

10    These holdings were detailed in Plaintiffs' motion, yet USF fails to engage them. Instead,

11  USF falsely asserts that the opinion requires plaintiffs to "point to [a] specific retaliatory action."[112]

12  As set forth above and in Plaintiffs' motion, it plainly does not. USF has simply provided no basis

13  to conclude that the two questions Plaintiffs identified for their retaliation claim are anything but

14  common. *See* Mot. at 19 (identifying questions).

15         **c.    Defendants Do Not Rebut Commonality on the Negligence Claims.**

16    Again, USF's sole response to the common questions Plaintiffs raised on their negligence

17  claims is that Plaintiffs' case is not similar enough to another case where a court in this District

18  recently certified negligence claims.[113] Here, too, USF's argument fails.

19    In *Hilario v. Allstate Insurance Co.*, the Court certified the negligence claims of a group of

20  California homeowners' insurance policyholders challenging Allstate's double counting of built-in

21  garage space in calculating the square footage of their homes. 642 F. Supp. 3d 1048, 1054 (N.D.

22  Cal. 2022), *aff'd*, No. 23-15264, 2024 WL 615567 (9th Cir. Feb. 14, 2024). The Court affirmed

23  that whether Allstate's alleged failures to catch, communicate, and correct this double-counting

24  presented "common questions of law and fact 'capable of class-wide resolution.'" *Id*. at 1060

25  (citation omitted). In so holding, the Court rejected Allstate's attacks that, like USF's attacks here,

26  focused on purportedly individualized questions of proof. *See id.* at 1061 (rejecting "Allstate's

27

28  [112] USF Opp'n at 22.
    [113] *Id*. at 23.

argument against commonality . . . that 'determin[ing] liability under Plaintiff's theory . . . would necessitate individual adjudication of the true size of each home, as well as [other unique considerations]'"). There, as here, "the 'common answers' about whether Allstate implemented [a] policy, and breached any duty . . . will 'drive the resolution of litigation.'" *Id.* (citation omitted). So again, USF has provided no basis to conclude that the seven questions Plaintiffs identified for their negligence claims are anything but common. *See* Mot. at 21 (identifying questions).

The Coach Defendant's commonality arguments fare no better. They simply repeat the misguided attack that Plaintiffs' motion fails because it is too targeted—i.e., focused on only the common issues, and not the issues Plaintiffs agree are individual and will necessitate individualized evidence (i.e., whether USF's and the Coach Defendants' actions and inactions caused them harm, and if so, the extent of that harm).[114] Like USF, they rely near exclusively on the declarations submitted in opposition to class certification.[115] Again, even if there were not good cause to question those declarations, they have zero bearing on the common issues actually identified by Plaintiffs for classwide resolution. And contrary to their suggestions, none of the authorities cited by the Coach Defendants actually stands for the proposition that no common questions can exist where the class representatives' and class members' experiences differ.[116]

---

[114] Nakamura and Giarratano argue that Plaintiffs' common questions are insufficient because they would not *entirely* resolve all elements of Plaintiffs' negligence claims—duty, breach, causation, and damages. Nakamura Opp'n at 17-18; Giarratano Opp'n at 15. This is just a failure to engage the motion Plaintiffs actually brought. Plaintiffs do not dispute that there must be individual trials to determine whether and to what extent each class member was harmed. Mot. at 24-25. But that is not a flaw in Plaintiffs' motion—it is an appropriate application of Rule 23(c)(4). *See also infra* § III.C.2 (responding to Defendants' argument that Rule 23(c)(4) is unavailable unless a plaintiff seeks issue certification on *all* potential liability issues).

[115] Nakamura Opp'n at 17; Giarratano at 17-21.

[116] Nakamura Opp'n at 16. *See Willis v. City of Seattle*, 943 F.3d 882, 887 (9th Cir. 2019) (affirming denial of Rule 23(b)(2)—not (c)(4)—certification, in case brought by unhoused individuals challenging the city's practice of destroying property during "sweeps" of encampments, because even as framed most favorably for appellants, their "arguments primarily focus on how the [city's] Guidelines give employees too much discretion," which the Supreme Court has held is precisely the sort of question that cannot be common) (citing *Wal-Mart*, 564 U.S. at 355); *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 603-04 (7th Cir. 2021) (commonality lacking because plaintiffs had not demonstrated that ambient harassment "manifests in the same way across all parts of the jail," where the jail filled 36 buildings that spanned eight city blocks and had a rotating population basis of 6,500 inmates); *Van v. Ford Motor Co.*, 332 F.R.D. 249, 260-62, 277-78 (N.D. Ill 2019) (commonality lacking where the misconduct occurred in two large Ford Motor Company facilities—akin to "mini-cit[ies]"); *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 WL 289297, at *1 (N.D. Cal. Jan. 15, 2010) (commonality lacking for 13,000 passengers whose numerous different flights were delayed for varying amounts of time).

d.      **Plaintiffs' Common Evidence Is Admissible.**

Nakamura argues that Doe 1 and 2's deposition testimony from the NCAA matter (Plaintiffs' opening Exhibits 3 and 4), along with Plaintiffs' opening Exhibits 13, 14, 15, and 19 are unauthenticated and inadmissible.[117] But the Ninth Circuit has expressly rejected the argument that evidence offered in support of class certification need be admissible. *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018) ("[T]he 'evidentiary proof' a plaintiff must submit in support of class certification . . . need not be admissible evidence.").

Nakamura's argument also fails on its merits. All of the Exhibits are authentic because USF produced them in discovery.[118] Exhibits 13 and 15 are emails reflecting USF Human Resources Director Diane Nelson's "summary of findings" from her investigation into Giarratano and Nakamura's misconduct. Exhibit 14 are her notes from calls with Giarratano and Nakamura. These documents are straightforward party admissions under Rule 801(d)(2).[119] Exhibit 19 is a complaint by Doe 8's father to USF about the Coaches. It is offered for a non-hearsay purpose: notice. *See* Mot. at 11 (exhibit offered to show USF's awareness of misconduct).[120]

As to the testimony from the NCAA matter, it is admissible under both Federal Rule of Civil Procedure 32(a)(8) and Federal Rule of Evidence 804(b). *See* Moore's Federal Practice - Civil § 32.63 (explaining that Rule 32(a)(8) and Rule 804(b) provide independent bases for admission of prior testimony). Rule 32(a)(8) permits the admission of deposition testimony from another matter with (1) "a substantial identity of issues," and (2) "the presence of an adversary with the same motive to cross-examine the deponent." *Hub v. Sun Valley Co.*, 682 F.2d 776, 778 (9th Cir. 1982). "[T]he two lawsuits need not involve identical issues and parties." *Id.* Rule 804(b) permits

---

[117] Nakamura Opp'n at 9.

[118] *See, e.g.*, *Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1115 (N.D. Cal. 2014) (act of producing document in discovery authenticates it). And none is hearsay.

[119] *See, e.g.*, *Ortega v. Neil Jones Food Co.*, No. 12-CV-05504-LHK, 2014 WL 232358, at *5 (N.D. Cal. Jan. 21, 2014) (statements made to party's HR employees admissible as party admissions when offered against party). Moreover, the documents have other "circumstantial guarantees of trustworthiness"—none of the Defendants had any incentive to substantiate the Does' allegations of misconduct, but that's exactly what USF found and what the Coaches admitted to. *See Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1046 (9th Cir. 1999) (finding employees statements within insurance investigator's report admissible as party admission).

[120] *See Pinterest, Inc. v. Pintrips, Inc.*, No. 13-CV-04608-HSG, 2015 U.S. Dist. LEXIS 76545, at *3 (N.D. Cal. June 12, 2015) (holding "both exhibits may be admitted for the non-hearsay purpose of demonstrating Pintrips' knowledge and intent").

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

admission where a "predecessor in interest . . . had an opportunity and similar motive to develop the testimony by cross examination." *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 06-CV-01848-H (POR), 2009 WL 10671818, at *8 (S.D. Cal. Apr. 22, 2009). The objecting party bears the burden of explaining "precisely why [the] motive and opportunity of defendants in the first case were not adequate to develop cross-examination that the instant defendant would have presented to the witness." *Id.* (quoting Rutter Group, *Fed. Civil Trials & Evidence*, 8:3062).

Here, the NCAA matter and this case unquestionably share a "substantial identity of issues"—the cases were originally one action[121] and the exact same conduct is at issue in both. Defendants themselves have referred to the NCAA as a related case. *See* ECF No. 228 at 32 ("[T]his action and the NCAA action are nearly identical."). Similarly, the NCAA took the depositions in question and had a similar motive as Nakamura to develop the testimony: minimizing or disproving the Does' allegations of misconduct. Nakamura makes no contrary argument despite bearing the burden to do so. And Nakamura *himself* had an opportunity to participate in the depositions in question—Plaintiffs noticed the depositions for both this and the NCAA action.[122] Nakamura refused and should not now be heard to complain that he was not present.

Finally, it is worth noting that Nakamura does not suggest that the testimony in question is inconsistent with what Does 1 and 2 offered in this case (which occurred after Plaintiffs filed their motion). Nor does he argue that Does 1 and 2 could not have made identical points in sworn declarations (just as he did in opposition). And in fact, both Does did. *See* Doe 1 Decl. ¶ 21; Doe 2 Decl. ¶ 22 (adopting their NCAA deposition testimony as a more fulsome account of the misconduct they experienced).

### 3.    Plaintiffs' Claims Are Typical of the Class.

Defendants do not dispute that courts find typicality satisfied in cases like this one. *See* Mot. at 21-22 (citing typicality findings in similar contexts). Instead, their arguments are predicated upon perceived differences in the extent of harm experienced by Plaintiffs and other class members.[123] Here, again, Defendants misunderstand the necessary inquiry.

---

[121] But for lack of personal jurisdiction, they still would be.
[122] MvK Decl. ¶ 20.
[123] USF Opp'n at 24-26; Nakamura Opp'n at 18-19.

1    The typicality requirement is met when the class representative's claims rest on the same

2  *legal theory* as absent class members, and the existence of *different factual circumstances* in

3  proving (or disproving) that theory does not defeat typicality. *See* Mot. at 21 (citing *Ellis v. Costco*

4  *Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011); *Wolin v. Jaguar Land Rover N. Am., LLC*,

5  617 F.3d 1168, 1175 (9th Cir. 2010)).[124] Where, as here, a class representative seeks only to certify

6  certain issues under (c)(4)—and not entire claims—the inquiry is necessarily limited to typicality

7  as to those issues. Here, Defendants do not even bother to argue that the either the legal theories or

8  evidence underpinning these common issues will differ in any way across the class. Instead, as

9  throughout their opposition, they attempt to direct the Court's attention to irrelevant distinctions

10  between class members' *harms* as purportedly reflected in the "declarations" obtained from absent

11  class members.[125] As discussed extensively, these declarations do not defeat certification.

12    Defendants also argue that the named Plaintiffs are subject to unique defenses, such as

13  "defenses to players whose parents paid their tuition, or covered other expenses related their

14  departure from USF."[126] Even assuming Defendants can identify individual defenses—and to be

15  clear, your parents paying your tuition is a defense to neither discrimination nor negligence—

16  Defendants will have an opportunity to present those defenses. So even assuming such defenses

17  exist, they would not defeat typicality.

18    **4.    <u>Plaintiffs and Counsel Adequately Represent the Class.</u>**

19    The Court instructed the parties to "bring down the temperature."[127] In its opposition, USF

20  did the opposite—repeatedly (and falsely) calling Does 1-3 money-grubbing liars.[128] USF (and only

21  USF) went a step further, attacking proposed class counsel's adequacy and levying serious

22  accusations regarding counsel's representation of Plaintiffs in this action.[129] While, to their credit,

---

[124] USF is the only Defendant to substantively cite any authority in its attempt to undercut typicality. USF Opp'n at 24. But it is the same case—*Doe v. Unified Sch. Dist. 259*—that USF relied upon for commonality, and remains unpersuasive for the reasons detailed above. *See supra* § III.B.2.a.

[125] USF also argues in opposing typicality that "Plaintiffs cannot even keep their own clients from recanting." USF Opp'n at 25. As discussed below, Doe 7's declaration cannot be credited and USF's conduct in eliciting it raises serious ethical concerns. *See infra* at 29.

[126] USF Opp'n at 27. *See also* Nakamura Opp'n at 19; Giarratano Opp'n at 16-17.

[127] ECF No. 235 at 2.

[128] USF Opp'n at 9-10.

[129] *Id*. at 28.

Nakamura's and Giarratano's adequacy arguments are not *ad hominem*, they are no more compelling. None of the arguments undercut the adequacy of either Plaintiffs or their counsel.

As to Plaintiffs, USF first argues that a conflict exists because Does 1-3 (and class members who played since March 11, 2020) have claims the Court found untimely for Does 4-14 (and class members who played between March 10, 2020 and 2000). USF cites *zero* authority that this presents a conflict defeating adequacy.[130] But if the Court prefers to divide the class, doing so would entirely resolve the issue: with Does 1-3 to represent a subclass of "All members of the University of San Francisco baseball team since March 11, 2020," who have live discrimination and retaliation claims against USF, and live negligence claims against USF and the Coach Defendants; and Does 4-14 to represent a subclass of "All members of the University of San Francisco baseball team between March 10, 2020 and 2000" who have live discrimination claims against USF.

USF and Giarratano further argue that Plaintiffs are not adequate because some absent class members claim—through the declarations—that they disagree with the lawsuit and support the Coach Defendants.[131] This fundamentally misunderstands the role of a class representative. In this case, as in all class actions, there may be individuals who do not want to be included in the class. This is not fatal to class certification, it is the very reason a notice and opportunity to opt-out are built into Rule 23. *If* an issue class is certified, all absent class members—including all of the declarants—will have an opportunity to remove themselves from the case.

Finally, Nakamura argues that Plaintiffs are not adequate because they may be subject to "unique defenses" that "will necessarily involve individualized" fact-finding.[132] Nakamura fails again here to actually identify any such defenses. In any event, Plaintiffs' motion contemplates a second, individual phase of trial—at which point Plaintiffs would no longer represent the class, but themselves—where any individual defenses or fact-finding would occur. This is precisely how Rule 23(c)(4) was designed to operate. *See Jimenez*, 765 F.3d at 1166-67 (adopting the prevailing view that individualized "determination of damages" may follow classwide resolution of common issues, even in the more demanding context of a Rule 23(b)(3) class). Nakamura's authorities on this point

---

[130] USF Opp'n at 28.

[131] *Id.*; Giarratano Opp'n at 21.

[132] Nakamura Opp'n at 20.

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

are therefore not instructive, as they concern different sections of Rule 23.[133]

As to proposed class counsel, USF's attacks are based on demonstrable falsehoods in the Declaration of Doe 7.[134] By relying on these statements—some of which USF unquestionably knows to be false—USF placed Plaintiffs' counsel in the difficult position of having to demonstrate the untruthfulness of statements made by a former client under penalty of perjury. Plaintiffs' counsel do not take this lightly, and retained an expert in California legal ethics to advise on how to address this unfortunate situation in a manner that complies with their obligations to this former client under the California Rules of Professional Conduct.[135] Consistent with this expert's advice, Plaintiffs' counsel detail below the false statements in Doe 7's declaration concerning their representation, and the documentation that these statements are false.[136]

> **Statement:** "In March 2024, I relieved Lieff Cabraser Heimann & Bernstein, LLP and Fegan Scott LLC as my counsel in this litigation. . . . I requested that my former lawyers stop representing me because I did not believe that they adequately represented my interests." Doe Decl. ¶ 3, 18.

> **Facts:** It is public record that Plaintiffs' counsel withdrew representation after exhaustive efforts to contact Doe 7 went unanswered. Only after being served with the Court's order granting withdrawal did Doe 7 respond. He cited personal reasons, not counsel's representation, to explain his absence. Fegan Decl. ¶¶ 16, 34-57.

> **Statement:** "When the lawsuit was filed, I was shocked to learn that I was also suing USF and the NCAA. I never agreed to sue the NCAA or the University of San Francisco, because I do not think they have done anything wrong." Doe Decl. ¶ 3.

> **Facts:** Doe 7 retained Plaintiffs' counsel specifically to sue USF. He received, *edited*, and approved multiple drafts of the complaints naming all Defendants and exhaustively detailing the Coaches' sexual misconduct. Fegan Decl. ¶¶ 19-33.

> **Statement:** "During the time they represented me, I was very surprised by how uninterested my lawyers seemed in my personal experience. The only forms of communication with my former lawyers were group e-mails or Zooms with the other Plaintiffs. At no point during their representation of me did my former lawyers speak with me individually about my experiences on the USF baseball team." Doe Decl. ¶ 5.

---

[133] *See Tourgeman*, 2011 WL 5025152 (Rule 23(b)(3)); *Freeman v. Delta Airlines, Inc.*, No. 15-CV-160 (WOB-CJS), 2019 WL 2495471 (E.D. Ky. June 14, 2019) (same); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (same).

[134] USF Opp'n at 28.

[135] Selbin Decl. ¶¶ 2-3.

[136] Falsehoods in Doe 7's declaration regarding the Coach Defendants' sexual misconduct are detailed above. *See infra* § II.C.

1    ***Facts:*** Plaintiffs' counsel was in regular, direct contact with Doe 7. Before going silent,
2    he promptly responded, thanking counsel for their efforts. Fegan Decl. ¶¶ 19-33.

3    As set forth above, USF also elicited statements from Doe 7 that are adverse to his live claims in

4    this case.[137] USF's conduct with respect to Doe 7—an adverse pro se party—implicates California

5    Rule of Professional Conduct 4.3. Plaintiffs' counsel retained an ethics expert and served discovery

6    on these topics.[138] That expert—Merri Baldwin—evaluated both Plaintiffs' counsel's conduct

7    alleged in the Doe 7 declaration and USF's conduct in obtaining and submitting it.  She concludes:

8        a.  Plaintiffs' Counsel complied with their ethical obligations and the standard of
           care in connection with its communications with Doe 7 about the complaint and
9           in seeking approval of that complaint[.]

10       b.  Plaintiff's Counsel's Reply . . . complies with the ethical duties and standards
           that apply to Plaintiffs' Counsel as former counsel to Doe 7, including the duty
11          of confidentiality and attorney-client privilege[.]

12       c.  Defense Counsel's conduct in obtaining and drafting the Doe 7 Decl. appears
13          to violate ethical rules and standards that apply to attorney communications
           with an unrepresented adverse party, given the fact that Doe 7 remains a
14          plaintiff in this matter, was apparently unrepresented with respect to that
           declaration, and disclosed otherwise privileged information to Defense Counsel
15          that is potentially harmful to Doe 7's own interests. Additionally, . . . there is a
           concern about whether Defense Counsel violated the duty of candor to the
16          Court.[139]

17   With respect to USF's counsel's interactions with Doe 7, Baldwin concluded further:

18       I am not aware of any facts that suggest that Doe 7 was represented by
         independent counsel in connection with the Doe 7 Decl., or that he was advised
19       to seek such consultation. Likewise I see no facts that suggest that Doe 7 was
         aware of the fact that he was disclosing privileged communications, or the
20       potential risk to him of doing so. Assuming there are no facts to show such
         disclosures to or awareness by Doe 7, this situation demonstrates the significant
21       risks that exist where counsel for an adverse party contacts an unrepresented
         party, and exemplifies exactly the reason CRPC 4.3 exists and the justification
22       for the protections it imposes.[140]

23       Once USF produces the discovery Plaintiffs sought on these issues, it may be appropriate

24   to convene an evidentiary hearing. For now, suffice it to say: USF's attacks on Plaintiffs' counsels'

25   adequacy—predicated entirely upon false statements—cannot be credited.

26   [137] *See supra* § II.C (detailing inconsistencies between the testimony USF elicited from Doe 7 at
     the arbitration hearing and then drafted for Doe 7 in the declaration).
27   [138] Selbin Decl. ¶¶ 2-3; MvK ¶ 19.
     [139] Preliminary Expert Report of Merri Baldwin, ¶ 9.
28   [140] *Id.*, ¶ 25.

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

1

**C.**    **The Class Is Appropriate for Issue Certification under Rule 23(c)(4).**

2

**1.**    **Predominance Is Not at Issue.**

3       Defendants acknowledge that Plaintiffs need not satisfy Rule 23(b)(3)'s predominance

4   requirement to certify a class under Rule 23(c)(4).[141] Yet all three sidestep this admission,

5   repeatedly arguing that Plaintiffs' motion fails because "common issues do not predominate." For

6   example, USF argues that "prov[ing] individual harm" will "predominate over Plaintiffs' proposed

7   class issues," and that Plaintiffs' class issues are insufficient because "[t]hese questions fail to

8   conclusively address injury."[142] It apparently bears repeating: Plaintiffs *do not seek certification of*

9   *damages issues*. And they need not, to seek certification of *other issues* under Rule 23(c)(4). Indeed,

10  the Ninth Circuit endorsed precisely this bifurcated approach in the more demanding Rule 23(b)(3)

11  context. *Jimenez*, 765 F.3d at 1166-67. In a case cited by USF, the Seventh Circuit also recently

12  rejected the very "all or nothing" approach to Rule 23(c)(4) that Defendants continue to advocate:

13  "Agreeing with the . . . Ninth Circuit[], we hold that, as part of satisfying its burden under Rule 23,

14  a party seeking certification of an issue class under Rule 23(c)(4) must show that common questions

15  predominate in the *resolution of the specific issue* or issues that are the subject of the certification

16  motion and *not as to the cause of action, taken as a whole*." *Jacks v. DirectSat USA, LLC*, 118 F.4th

17  888, 897 (7th Cir. 2024) (cleaned up, emphasis supplied).

18       As detailed in Plaintiffs' motion and the newly obtained evidence cited here, common

19  evidence will be used to establish liability on the common issues Plaintiffs identified.[143] None of

20  this evidence turns on the lived experience of any one class member: it concerns USF's and the

21  Coach Defendants' conduct—the systemic discrimination and/or negligence, over decades, that put

22  class members at risk of the harms Plaintiffs attest to experiencing. This is precisely how Rule

23  23(c)(4) operates. *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)

24  ("Even if the common questions do not predominate over the individual questions so that class

25  certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate

26  cases to isolate the common issues . . . and proceed with class treatment of these particular issues.").

27  _____

[141] USF Opp'n at 13; Nakamura Opp'n at 22; Giarratano Opp'n at 10.

28  [142] USF Opp'n at 10, 13.

[143] *See* Mot. at 16-19, *supra* § II.

2. **Determination of Common Issues Will Drive Resolution of this Action.**

Defendants argue that certification of an issues class is inappropriate here because Plaintiffs do not seek certification of every element of their negligence claim, and specifically, do not seek certification of causation and damages. *See* USF Opp'n at 29 ("Courts routinely deny requests to certify Rule 23(c)(4) classes in circumstances like this, where the determination of liability requires individualized assessment of injury and causation.") (citing cases where courts denied Rule 23(c)(4) certification of negligence claims); Nakamura Opp'n at 21-22 (same); Giarratano Opp'n at 14-15 (same).[144] This is not "routine," Rule 23(c)(4) contains no such limitation, and the Ninth Circuit has never adopted one. This Court should not either.

Defendants' primary authority is *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686 (N.D. Cal. 2019). There, a Facebook user brought a class action alleging the company's inadequate security practices "allowed hackers to break into Facebook's platform and pilfer the personal information of 29 million Facebook users worldwide." *Id.* at 689-90. Unlike here, plaintiff sought certification of his negligence claim under Rules 23(b)(2), 23(b)(3), and 23(c)(4). *Id.* at 694. The Court spent the vast majority of its analysis on Rules 23(b)(2) and 23(b)(3)—spending only one paragraph (a total of 148 words) on Rule 23(c)(4)—and cited *zero* case law in its brief Rule 23(c)(4) analysis. *Id.* at 697. In addition to being an afterthought, the harm plaintiff sought to redress through Rule 23(c)(4)—"individual damages resulting from the time spent devoted to the data breach"—is remarkably different from the harm Plaintiffs seek to redress here. *Id.* at 690, 694. It is not difficult to imagine why the Court was concerned that individualized trials regarding the "cause" of Facebook users' wasted time was an inappropriate use of Rule 23(c)(4). This is particularly true as the Court had already concluded that the *plaintiff himself* had been unable to prove causation and damages for the harms he sought to redress under Rule 23(b)(3). *See id.* at 696 (holding that because plaintiff "has incurred zero out-of-pocket expenses as a result of this breach," he "is not a member of the class he seeks to represent"); *id.* at 697 (holding that "loss of privacy and loss of royalties" was "too speculative to assert a claim for negligence"). Here, in contrast, Plaintiffs' experiences reflect that the individual causation and harm inquiries will be far more connected and far more

---

[144] USF therefore appears to have conceded that determination of the common issues on Plaintiffs' discrimination claims would materially advance resolution of those claims.

concrete, and will benefit from streamlined determinations on the issues of duty and breach.

Defendants' remaining authorities are no more compelling. In *Tasion*, plaintiffs attempted the opposite of what Defendants argue is inappropriate here: "basically asking the Court to have every element of a claim for fraudulent inducement and/or breach of express warranty subject to class treatment," including punitive damages, notwithstanding the fact that the Court had denied Rule 23(b)(3) certification for those same claims. *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 639 (N.D. Cal. 2015). In other words, the *Tasion* plaintiffs were attempting to use Rule 23(c)(4) to erase (b)(3) predominance on every issue even *damages*. *Id*. Plaintiffs make no such attempt here. Rather, Plaintiffs acknowledge that causation and damages—which will be inextricably linked in a case of this nature—will necessitate individual inquiries. But first deciding the common issues of duty and breach using common evidence will "materially advance the litigation"—an end the *Tasion* Court acknowledges is worthy. *Id*. at 633. And in *Zinser*—cited by both Nakamura and Giarratano—the Ninth Circuit did not consider Rule 23(c)(4) at all, but affirmed denial under Rules (b)(1)(A), (b)(1)(B), (b)(2), and (b)(3). *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1184 (9th Cir. 2001), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001). Notably, however, the dissent argued that the "manageability problems" identified by the Court could be resolved by Rule 23(c)(4). 253 F.3d at 1200-01. Amending that order following denial of rehearing en banc, the Court added only one line: "Of course, we do not suggest that the causation difficulties necessarily render class certification impossible." 273 F.3d at 1266.[145]

---

[145] Defendants' remaining authorities are either similarly unpersuasive or completely inapposite. *See ABC Distrib., Inc. v. Living Essentials LLC*, No. 15-cv-02064 NC, 2017 WL 2603311 (N.D. Cal. Apr. 7, 2017) (not a Rule 23(c)(4) case at all); *Moore v. Apple Inc.*, 309 F.R.D. 532 (N.D. Cal. 2015) (same); *Bruce v. Teleflora, LLC*, No. 13-cv-03279-ODW(CWx), 2013 WL 6709939 (C.D. Cal. Dec. 18, 2013) (same); *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517 (S.D. Cal. 2011) (same); *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097, 2021 WL 165121, at *11 (C.D. Ill. Jan. 19, 2021) (out-of-Circuit and out-of-date case requiring issues sought to be certified to predominate over all issues in the case, in contravention of current Ninth and Seventh Circuit precedent); *Jones v. BRG Sports, Inc.*, No. 18 C 7250, 2019 WL 3554374, at *9 (N.D. Ill. Aug. 1, 2019) (issue certification not appropriate because the issues sought to be certified "arise under eighteen different states' legal schemes"); *Hernandez v. Wells Fargo Bank, N.A.*, No. C 18-07354 WHA, 2020 WL 469893, at *2 (N.D. Cal. Jan. 29, 2020) (issue certification not appropriate where multiple states' laws governed determination of what was "outrageous" for purposes of establishing intentional infliction of emotional distress claim); *Wollam v. Transamerica Life Ins. Co.*, No. 21-cv-09134-JST, 2024 WL 1117050, at *7 (N.D. Cal. Mar. 13, 2024) (rejecting plaintiff's request made "[i]n passing" for certification under Rule 23(c)(4) and conducting no analysis separate from its Rule 23(b) analysis); *Moeller v. Taco Bell Corp.*, No. C 02-5849 PJH, 2012 WL 3070863, at *4 (N.D. Cal. July 26, 2012) (liability is truly individualized, unlike here, because case concerned

- 32 -

1    Defendants' authorities therefore do not create the categorical "causation" bar Defendants

2    ask the Court to apply to Rule 23(c)(4) here. Indeed, even the *Adkins* Court acknowledged that

3    "[t]he text does not explain when such a [Rule 23(c)(4)] class would be appropriate." 424 F. Supp.

4    3d at 697. And though the Ninth Circuit has not spoken on the issue, others have, and have explicitly

5    endorsed issue certification where "individualized issues concerning fact-of-injury, proximate

6    causation, and extent of damages can be resolved" following common determination of the certified

7    issues. *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 410 (6th Cir. 2018). *See also id.*

8    at 415 ("What is more, *Tyson* instructs that certification may remain 'proper' even if 'important

9    matters' such as actual injury, causation, and damages will have to be tried separately.") (citing

10   *Tyson*, 577 U.S. at 452).

11            **3.      A Class Is Manageable and Superior to Multiple Individual Actions.**

12   In determining whether an issues class is superior to individual actions, the question is: "Is

13   it more efficient, in terms both of economy of judicial resources and the expense of litigation to

14   the parties, to decide some issues on a class basis or all issues in separate trials?" *Butler v. Sears,*

15   *Roebuck & Co. ("Butler I")*, 702 F.3d 359, 362 (7th Cir. 2012), cert. granted, judgment vacated,

16   569 U.S. 1015 (2013), judgment reinstated, *Butler II*, 727 F.3d 796. Here, the two-phased approach

17   Plaintiffs advocate would unquestionably streamline the individualized damages inquiries that will

18   occur—with or without class certification—after determination of common issues. Defendants'

19   counterarguments do not demonstrate otherwise.

20   USF argues that "judicial economy in the Northern District would be overwhelmed in

21   attempting to adjudicate the remaining individual issues on the potential hundreds of trials."[146]

22   This misses the point that individual trials will occur *either way*, and it is far more efficient for

23   those trial to begin (or not begin at all) because common issues of, for example, duty and breach

24   individualized disability access); *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. CV 12–cv–
     04457–SC, 2015 WL 4537957, at *5 (N.D. Cal. July 27, 2015) (erroneously concluding that issue

25   certification was inappropriate under Rule 23(c)(4) based on Rule 23(b) analysis); *In re ConAgra
     Foods, Inc.*, 302 F.R.D. 537, 580 (C.D. Cal. 2014) (issue certification not appropriate where the

26   law of twelve different states would apply); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234
     (2d Cir. 2008) (out-of-Circuit case requiring issues sought to be certified to predominate over all

27   the issues, in contravention of Ninth Circuit authority); *In re Baycol Prods. Litig.*, 218 F.R.D. 197,
     209 (D. Minn. 2003) (issue certification not appropriate where laws of 51 jurisdictions "will infuse

28   complexity" into a class trial).
     [146] USF Opp'n at 31.

have first been established (or defeated) across all cases. This is not a radical approach—it is precisely how Rule 23(c)(4) was designed to operate. This approach was also long ago adopted by the Supreme Court to streamline trials in a related discrimination context. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 376 (1977) (setting forth two stages for trial of disparate treatment claims: liability, followed by a remedial phase to determine individual damages).[147] *See also Tyson*, 577 U.S. at 461 (affirming certification of class under the Fair Labor Standard Act that contained over 200 uninjured members and noting that damages may be apportioned in remedial phase so that only injured members recover).

Nakamura argues that an issues class is not superior because "as shown by their declarations, class members do not want to be part of this case."[148] Again, there is good reason to doubt the degree of "hostility" Defendants have manufactured, given the documented campaign of coercion—as reported to USF—necessary to obtain this "cookie-cutter" support.[149] Nakamura is also wrong to "presume" that Plaintiffs' counsel have not been contacted by class members who are not John Does but shared their experiences.[150] In fact, he knows they have—he attempted to access Plaintiffs' counsel's privileged communications with just such people.[151] In any event, the authorities Nakamura cites do not stand for the proposition that "hostility" defeats superiority—in both cases, the Court was concerned with how disagreements among class members would impact Rule 23(b)(3)'s inquiry into "the interest of each class member in individually controlling the prosecution or defense of separate actions." *McDonald v. Ricardo's on the Beach, Inc.*, No. CV 11-9366 PSG (MRWx), 2013 WL 228334, at *5 (C.D. Cal. Jan. 22, 2013); *see also Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469 (N.D. Cal. 2004) (same). Here, because this case is

---

[147] Title VII authorities are instructive in assessing Title IX claims. *Bolla v. McClain*, 469 F. App'x 531, 532 (9th Cir. 2012).

[148] Nakamura Opp'n at 23. Nakamura also argues that "courts are clear that a class action may be superior 'where damages suffered by each putative class member are not large.'" *Id.* (quoting *Zinser*, 253 F.3d at 1190). While it is true that class actions afford access to justice in cases that would—due to the small size of recovery—not otherwise be economically feasible, this is no bar to class actions where class members stand to recover more. That is particularly true where, as here, the process imagined would ultimately involve individualized showings of harm to access an award (substantial or otherwise).

[149] Selbin Decl., Ex. 2 at USF_0115359; *id.*, Ex. 7 (Cross Dep. Tr.) at 214:9-11.

[150] Nakamura Opp'n at 23.

[151] *See* ECF No. 250.

1    brought under Rule 23(c)(4), every class member will ultimately be in complete control over their

2    individual trial—and that will include the decision not to have one at all.

3    　　　Giarratano argues that an issues class is not superior because Plaintiffs are "vague as to

4    whether [they intend] to later certify a damages class." *See* Giarratano Opp'n at 23 (quoting

5    *Rahman v. Mott's LLP*, 693 F. App'x 578, 580 (9th Cir. 2017)). Unquestionably, Plaintiffs are not

6    vague on this point: they do not seek to certify a damages class.[152] This likewise dooms

7    Giarratano's puzzling argument that certification is not superior because "plaintiffs 'fail to show

8    any model for calculating damages that [] can be applied classwide.'" *Id.* (quotation unattributed).

9    　　　Finally, Defendants' conduct continues to demonstrate that individual trials on common

10   issues would not only be unmanageable, but unfair. As it did with Plaintiffs' motion for class

11   certification, USF again made a large document production—its first custodial production since

12   November 15, 2024—only days before this brief was due. Giarratano pulled the same trick, making

13   his *first ESI production in the case* only three days ago.[153] And as the Court knows, this comes after

14   it took many months and several Court orders to get Defendants to produce highly relevant (or in

15   Giarratano's case any) documents. The best way to manage this conduct and expeditiously get these

16   cases to trial is to certify the common issues for common liability determinations.

17   **IV.    CONCLUSION**

18   　　　Plaintiffs respectfully request that the issues detailed in their motion be certified pursuant

19   to Rule 23(c)(4).

20   Dated:  February 6, 2024    　　　Respectfully submitted,

21

22   　　　　　　　　　　　　　　　By:*/s/ Jonathan D. Selbin*
        　　　　　　　　JONATHAN D. SELBIN (Cal. Bar No. 170222)
        　　　　　　　　jdselbin@lchb.com

23   　　　　　　　　MICHELLE LAMY (Cal. Bar No. 308174)
        　　　　　　　　mlamy@lchb.com

24   　　　　　　　　LIEFF CABRASER HEIMANN &
        　　　　　　　　BERNSTEIN

25   　　　　　　　　275 Battery Street, 29th Floor
        　　　　　　　　San Francisco, CA  94111-3339

26   　　　　　　　　Telephone: (415) 956-1000
        　　　　　　　　Facsimile: (415) 956-1008

27

28   ---
     [152] *See* Mot. at 2, 24-25.
     [153] MvK Decl. ¶¶ 6-7, 9, 13.

3172431.7    　　　　　　　　　　PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JESSICA A. MOLDOVAN
(*admitted pro hac vice*)
jmoldovan@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

ELIZABETH A. FEGAN (Cal. Bar No. 355906)
beth@feganscott.com
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100

LYNN A. ELLENBERGER
(*admitted pro hac vice*)
lynn@feganscott.com
FEGAN SCOTT LLC
500 Grant St., Suite 2900
Pittsburgh, PA 15219
Telephone: (412) 346-4104
Facsimile: (312) 264-0100

MICHAEL VON KLEMPERER
(*admitted pro hac vice*)
mike@feganscott.com
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Telephone: (202) 921-0002
Facsimile: (312) 264-0100

*Attorneys for Plaintiffs and the Proposed Class*

3172431.7

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION
CASE NO. 3:22-CV-01559-LB