UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOHN DOE 1, et al., | Case No. 22-cv-01559-LB |
| Plaintiffs, | |
| v. | **ORDER** |
| | Re: ECF No. 403 |
| UNIVERSITY OF SAN FRANCISCO, et al., | |
| Defendants. | |

**INTRODUCTION**

In March 2022, in a putative class action, three former University of San Francisco (USF) baseball players (Does 1–3) sued USF, two coaches, and the NCAA, alleging misconduct by the coaches and institutional failures to respond to it, in violation of Title IX, the California Education Code, and state law. Does 4–14 were added as plaintiffs via amended complaints. The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c)(1). There have been (1) three rounds of motions to dismiss, resulting in the dismissal of the NCAA for lack of personal jurisdiction and the survival of the core discrimination claims under Title IX and the Education Code, (2) heated discovery, and (3) a class-certification motion, which the court denied in March 2025 for lack of commonality. Does 4–14 face statute-of-limitations defenses that the court reserved for summary judgment (allowing phased discovery and an early summary-judgment motion).

In June 2025, a few months after class certification was denied, new plaintiffs (Does 15–19) filed a lawsuit with similar claims. The 2025 case is related to the 2022 case but was reassigned to a district judge after the 2025 plaintiffs declined magistrate-judge jurisdiction, despite consent by the 2022 plaintiffs. A coach defendant declined magistrate-judge jurisdiction too, despite consenting in the 2022 case. The parallel proceedings caused logistical challenges for the defendants, who asked to relate or consolidate the cases. The court suggested at a December 2025 case-management conference that the plaintiffs dismiss the 2025 case and file an amended complaint in the 2022 case, adding Does 15–19 to the 2022 case (as the plaintiffs did when they added Does 4–14), obviating the need for consent for the new claims. The plaintiffs filed an amended complaint, adding Does 15–19 and then dismissed the 2025 case.

The defendants now move to rescind the amendment or, alternatively, to reassign the (effectively) consolidated case to a district judge. They contend that (1) the court lacked authority to port the 2025 claims into the 2022 case via consolidation because defendant Giarratano declined magistrate-judge jurisdiction in the 2025 case, (2) the court's action violated the party-presentation principle, and (3) the consolidated complaint prejudiced the defendants by mooting statute-of-limitations arguments for Does 15–19 based on the 2022 complaint. They seemingly agree that if they can assert all available challenges to the claims of Does 15–19 in the 2025 complaint — either by (a) opposing a motion for leave to amend the complaint in the 2022 case to add Does 15–19 and their claims or (b) a court's deciding the motions to dismiss the 2025 case based only on the complaint there — then there is no prejudice.

Whether the defendants' prior consent to magistrate-judge jurisdiction in the 2022 case extends to an amended complaint in the 2022 case adding the parties and claims from the 2025 case (where a defendant declined jurisdiction) presents a jurisdictional question that an Article III judge should resolve. The jurisdictional issues might be mooted by the court's rescinding the amended complaint and requiring the plaintiffs to move for leave to amend the 2022 complaint to add the claims of Does 15–19. This order analyzes jurisdiction and prejudice and concludes that amendment was appropriate to add new claims and parties, but the better practice would have been to require the plaintiffs to file a formal motion to amend under Rule 15, a remedy that remains

available. The court sets a further case-management conference for April 2, 2026, at 9:30 a.m. to discuss the logistical next steps and the recent discovery disputes.

## STATEMENT

### 1. The 2022 Case

On March 11, 2022, Does 1–3 filed a class-action complaint against USF, head baseball coach Anthony "Nino" Giarratano, assistant coach Troy Nakamura, and the NCAA, alleging that the coaches engaged in misconduct and that USF and the NCAA failed to respond appropriately. The complaint asserted claims under Title IX, the California Education Code, and state law.[1] Does 4–14 were added as plaintiffs in amended complaints.[2]

The parties consented to magistrate-judge jurisdiction. Each consent form stated: "In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily consent to have a United States magistrate judge conduct all further proceedings in this case, including trial and entry of final judgment."[3]

The case proceeded through three rounds of motions to dismiss. As a result of the motions practice, the NCAA was dismissed for lack of personal jurisdiction, the Title IX discrimination claims and related California Education Code claims were allowed on a coverup theory, and the statute-of-limitations defenses were reserved until summary judgment.[4] The court denied class certification on March 5, 2025, for lack of commonality.[5]

### 2. The 2025 Case

On June 25, 2025 — several months after class certification was denied in March — Does 15–19 filed a new lawsuit asserting substantially similar claims against the same defendants (minus

---

[1] Compl. – ECF No. 1. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See, e.g.*, Third Am. Compl. – ECF No. 133 (the operative complaint before December 2025).

[3] Consents – ECF Nos. 15, 30, 35, 42, 48.

[4] Orders – ECF Nos. 88, 128, 149.

[5] Order – ECF No. 312.

ORDER – No. 22-cv-01559-LB                    3

the NCAA). The 2025 case was initially assigned to this court as a related case but was reassigned to a district judge after the plaintiffs declined consent to a magistrate judge.[6]

### 3.   Motions to Relate and Consolidate

On July 22, 2025, USF moved to relate the 2025 case to the 2022 case, expressing frustration with the plaintiffs' decision to decline magistrate-judge jurisdiction in the 2025 case and observing that relating the cases would allow "the parties [to] not lose the benefit of the experience [this court] has developed in the matter" and would "avoid unduly burdensome duplication of labor and expense or conflicting results."[7] The court held that the cases were related. The 2025 case remained assigned to the district judge, and (the court held) the decision to reassign the 2022 related case belonged to the district judge.[8]

On October 8, 2025, defendant Giarratano moved to consolidate the cases. Defendants USF and Nakamura joined the next day.[9] The plaintiffs did not oppose consolidation (if it resulted in an assignment before the undersigned in the 2022 case) and agreed to consent to magistrate-judge jurisdiction in the 2025 case.[10] In reply, Giarratano stated that he "does not consent to a magistrate assignment" for the 2025 case, understood "that the other [d]efendants also do not consent" to magistrate-judge jurisdiction in the 2025 case, and said that the case should be consolidated before the Article III judge in the 2025 case.[11]

### 4.   The December 2025 Conference and Amendment

On December 18, 2025, the court's deputy clerk emailed all counsel to schedule a case-management conference the following morning. On December 19, the court convened the

---

[6] Declination, No. 25-cv-05311 – ECF No. 14; Order, *id.* – ECF No. 15.

[7] Mot. – ECF No. 353 at 4–5.

[8] Order – ECF No. 359; Order – ECF No. 351 (reassignment to be determined by the district judge).

[9] Mot., No. 25-cv-05311 – ECF No. 47; Joinders, *id.* – ECF Nos. 49–50.

[10] Opp'n, *id.* – ECF No. 55.

[11] Reply, *id.* – ECF No. 59 at 2.

ORDER – No. 22-cv-01559-LB                4

United States District Court
Northern District of California

conference. Off the record, which is how the court typically handles case-management conferences, the court proposed that the plaintiffs dismiss the 2025 case and amend the complaint in this case to add Does 15–19. It then went on the record to memorialize the suggestion, stating that this approach "does not require the defendants' consent because we already have consent."[12] The plaintiffs asked for time to confer with their clients.[13] Defense counsel did not object on the record to the court's recounting the off-the-record conversation: USF's counsel said "Merry Christmas, it's great," and Nakamura's counsel said, "well, it seems like we'll keep on going efficiently." Giarratano's counsel did not respond to this comment from the court: "Mr. Croley, . . . balancing all the interest he has with representation to his clients, and you can add anything that you want to say that is different from what I'm saying, recognizes that this probably is an efficient way to move forward."[14] Counsel asked only whether there would be any new allegations in the consolidated complaint. The answer was no, and his response was "okay."[15] At the end of the hearing, Giarratano's counsel concluded by saying, "Happy Holidays . . . [a]nd thanks for doing this." [16]

On December 22, 2025, the plaintiffs confirmed they would file an amended complaint.[17] The defendants did not object. On December 23, the plaintiffs filed the Fourth Amended Complaint, the consent form for the new Does, and the dismissal of the 2025 case.[18] On January 21, 2026, the defendants moved to rescind the amendment or reassign the case.[19] At the March 19, 2026, hearing, the defendants suggested that their concern was preserving their ability to mount timing challenges to the claims of Does 15–19.

---

[12] Order – ECF No. 394; Clerk's Notice – ECF No. 395; 12/19/2025 Tr. – ECF No. 400 at 8:25–9:4.

[13] 12/19/2025 Tr. – ECF No. 400 at 7:1–4.

[14] *Id.* at 8:19–9:8.

[15] *Id.* at 9:21–12:3.

[16] *Id.* at 16:10–13.

[17] Selbin Decl. – ECF No. 416-1 at 3 (¶ 6).

[18] Fourth Am. Compl. – ECF No. 396; Consent – ECF No. 397; Dismissal, No. 25-cv-05311 – ECF No. 65.

[19] Mot. – ECF No. 403.

United States District Court
Northern District of California

**ANALYSIS**

**1. Magistrate-Judge Jurisdiction**

A magistrate judge "may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case" if (1) voluntary consent is obtained from all parties and (2) the magistrate judge is specially designated by the district court. 28 U.S.C. § 636(c)(1); *Washington v. Kijakazi*, 72 F.4th 1029, 1035 (9th Cir. 2023) (citing *Roell v. Withrow*, 538 U.S. 580, 585 (2003) (quoting § 636(c)(1))). "Consent is the touchstone of magistrate judge jurisdiction." *Washington*, 72 F.4th at 1036 (cleaned up). "[A]ny party's objection is sufficient to prevent jurisdiction from vesting in the magistrate judge." *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017).

Consent must be knowing and voluntary. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015). It can be express (for example, by selecting the consent box on a court form) or implied, when a party is "aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the magistrate judge." *Washington*, 72 F.4th at 1036 (cleaned up) (quoting *Roell*, 538 U.S. at 590); *see Roell*, 538 U.S. at 584 (implied consent by two defendants who participated voluntarily in proceedings and voiced no objection when the magistrate judge "made it clear that she believed they had consented").

Consent, once given, is not lightly disturbed. "Nothing in [§ 636(c)(1)] or the legislative history . . . requires continuing expressions of consent before a magistrate can exercise authority under a valid reference." *United States v. Neville*, 985 F.2d 992, 1000 (9th Cir. 1993) (cleaned up). Parties may not play "fast and loose" by expressing conditional consent that can be withdrawn to escape an unfavorable outcome. *Id.* Consent must be interpreted to preserve "judicial efficiency and check[] gamesmanship." *Washington*, 72 F.4th at 1037 (citing *Wellness Int'l*, 575 U.S. at 685).

**1.1 The Consent Issue Should Be Referred to a District Judge**

The first issue is who decides the issue of magistrate-judge jurisdiction. The defendants contend that under *Branch v. Umphenour*, only a district judge may rule on a motion challenging the scope of a magistrate judge's jurisdiction under § 636(c). 936 F.3d 994, 1003 (9th Cir. 2019). They argue that regardless of how the motion is styled, it presents the question of whether consent

United States District Court
Northern District of California

exists for the claims imported from the 2025 case.[20] The plaintiffs respond that in the 2022 case, all defendants consented to this court's jurisdiction "for all further proceedings," including claims in an amended complaint, and that this court thus may decide the motion.[21]

Section 636(c)(4) provides that "[t]he court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge." *Branch*, 936 F.3d at 1001–02. "Neither mere dissatisfaction with a magistrate judge's decisions, nor unadorned accusations that such decisions reflect judicial bias, will suffice." *Id.* at 1004; *cf. Gilmore v. Lockard*, 936 F.3d 857, 861–63 (9th Cir. 2019) (where unanimous consent never existed, a party need not satisfy the good-cause or extraordinary-circumstances standard of § 636(c)(4)). Only a district judge may decide a motion to withdraw or vacate consent. *Branch*, 936 F.3d at 1003. This rule makes structural sense: a magistrate judge should not be the final arbiter of challenges to her own jurisdiction. But the defendants "are not seeking to withdraw consent in the 2022 case."[22] Instead, they rely on Giarratano's declination in the 2025 case, contending that it precludes absorbing the claims there into the 2022 case.[23]

Had the plaintiffs moved to amend their existing complaint to add Does 15–19, as they did when they added Does 4–14, then seemingly there would be no issue about the defendants' consent because the defendants expressly consented to the court's jurisdiction "for all further proceedings" in the 2022 case, "including trial and entry of final judgment." The defendants do not contend that re-consent would be required for a properly amended complaint, either by stipulation or with leave of the court.[24] But the plaintiffs' choice to file a new lawsuit has this consequence: the defendants' motion about the scope of consent should be decided by a district judge.

Although the plaintiffs are correct that the motion is technically styled as a motion to rescind an amendment rather than to withdraw consent, the motion squarely presents the question of

---

[20] Mot. – ECF No. 403 at 10–11.

[21] Opp'n – ECF No. 416 at 9.

[22] Reply – ECF No. 420 at 8.

[23] *Id.* at 8–9.

[24] *Id.* at 9.

whether this court has § 636(c) jurisdiction over the claims and parties imported from the 2025 case. That is a jurisdictional challenge to the magistrate judge's authority, which is precisely the kind of question that *Branch* holds must be resolved by a district judge. A different conclusion would mean that a party who withdrew consent would be entitled to review by a district judge under *Branch*, while a party who consented in one case but declined magistrate-judge jurisdiction in a related case (with similar claims) would not. The issues are close enough that a district judge must resolve the issue.

The court recognizes that faced with the utility of consolidation, the plaintiffs changed their minds, dismissed their separate lawsuit, and amended their existing complaint. That might have avoided any jurisdictional issue had Giarratano not declined magistrate-judge jurisdiction in the separate lawsuit. But because he did, a district judge must resolve the dispute.

Another issue is waiver. The plaintiffs argue that the defendants waived any objection by failing to object at the December 19 conference, or in the days that followed, objecting only on January 21, 2026.[25] The defendants respond that the court effectively said that consent was not required.[26] Consent can be implied, which is like waiver. *Washington*, 72 F.4th at 1036. But it must also be knowing and voluntary. *Id.*; *Wellness Int'l*, 575 U.S. at 685. There is no waiver here. The court said that consent was not required because there was consent in the 2022 case. A party's failure to object for a few weeks — especially given the timing over the holidays — cannot fairly be treated as a knowing and voluntary relinquishment of a right. Counsel's remarks ("Happy Holidays . . . and thanks for doing this") were pleasantries that attended the season, not waiver or consent to the jurisdictional implications of the proposed amended complaint.

**1.2 The Scope of the Defendants' Consent Under § 636(c)**

The next issue is the scope of the defendants' consent for the claims of Does 15–19 in the amended complaint.

---

[25] Opp'n – ECF No. 416 at 16.

[26] Reply – ECF No. 420 at 6–7, 10–11.

The defendants contend that the 2025 case involved new plaintiffs, included new claims not alleged in the 2022 case, and came after the denial of class certification, which fundamentally changes the posture of the litigation. They point to Giarratano's declination of magistrate-judge jurisdiction in the 2025 case and argue that USF and Nakamura were never given the opportunity to consent or decline.[27] They seemingly concede that the plaintiffs can amend, with leave, saying, they "do not contend that the routine addition of a party through a properly noticed motion to amend necessarily triggers a new consent obligation," a question that they say is irrelevant because the case was folded into the existing case by directive, not by amendment.[28]

The plaintiffs respond that each defendant consented to "all further proceedings" in the case, amendment of a complaint is routine, parties are added regularly in class litigation, and requiring re-consent when a party is added would undermine the magistrate-judge system and invite gamesmanship.[29] *Roell*, 538 U.S. at 590 (consent process is administered to check the risk of gamesmanship and serve judicial efficiency); *Washington*, 72 F.4th at 1037 (same).

This issue is close, and the court identifies the competing considerations.

### 1.2.1 Arguments favoring the defendants' position

The 2025 case was a separately filed lawsuit with its own docket, its own scheduling order, and pending dispositive motions before a different judge. It involved five new plaintiffs who were not parties to the 2022 case and included two new (but related) claims. The case was filed after class certification was denied.

Defendant Giarratano declined consent to magistrate-judge jurisdiction in the 2025 case. USF and Nakamura never consented or declined because the plaintiffs' early declination caused reassignment to a district judge. The consent given in 2022 was consent to proceedings in that case, not to the wholesale absorption of the 2025 case into the 2022 case. If a magistrate judge

---

[27] Mot. – ECF No. 403 at 8–13.

[28] Reply – ECF No. 420 at 9.

[29] Opp'n – ECF No. 416 at 9.

United States District Court
Northern District of California

could extend her jurisdiction over a separately filed case by directing that its claims be amended into an earlier case, the consent requirements of § 636(c) might be rendered hollow.

### 1.2.2 Arguments favoring the plaintiffs' position

Each defendant's consent form states consent to "all further proceedings in this case, including trial and entry of final judgment." The word "proceeding" is broad; the Supreme Court has defined it to encompass "all possible steps in an action from its commencement to the execution of judgment." *Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 316 (2025). Amendment of a complaint under Rule 15 is a routine proceeding within a case.

There is no question that the defendants consented to this court's jurisdiction in the 2022 case. Amendment of a complaint — including the addition of new parties and new claims — is a common event in class-action litigation, particularly after class certification is denied and absent class members file individual suits. No scheduling order set a deadline for adding parties. New parties — Does 4–12 and 13–14 — were added twice by amendment. The Ninth Circuit has rejected attempts to use consent as a strategic tool that can be withdrawn when proceedings do not go a party's way. *Neville*, 985 F.2d at 1000.

Critically, it was the defendants who moved to relate and consolidate the cases. Their motion to relate asked this court to manage both cases. Their motion to consolidate argued that all factors favored consolidation. Having sought consolidation, the defendants are in a poor position to complain that consolidation was accomplished through amendment rather than through the formal consolidation mechanism they requested. (That said, the plaintiffs also are in a poor position to rue their choice: had they proceeded as they had previously in the litigation (by amendment), likely the jurisdictional issue would not have been raised.)

### 1.2.3 The court's assessment

The better view is that consent to "all further proceedings in this case" covers the amendment of the complaint to add new parties and claims, a routine procedural step. But the court recognizes that this situation is unusual. The amendment did not arise organically through a motion to amend; it was suggested by the court as a mechanism to consolidate a separately filed case in which one

United States District Court
Northern District of California

defendant had expressly declined consent. That procedural history distinguishes this case from the ordinary amendment.

If the consent question is analyzed as one of withdrawal of consent (i.e., did the defendants validly consent and are they now seeking to undo it?), the answer is likely no: the defendants consented broadly to this court's jurisdiction, and nothing about the amendment changes that. If, however, the question is analyzed as one of initial consent (i.e., did consent ever exist for the claims imported from the 2025 case?), the answer is closer, because one defendant affirmatively declined consent to magistrate-judge jurisdiction over the specific claims in the 2025 case.

Either way, the practical effect of the December 19 restructuring was to consolidate the two cases. That is something the defendants requested. The dispute is not over whether consolidation should have occurred — all parties agree it should have — but which judge should preside.

### 2. Propriety of Sua Sponte Amendment

The next issue is the propriety of sua sponte amendment. The defendants seemingly do not dispute that if the plaintiffs had asked for leave to amend, and the court gave leave, their earlier consent would extend to the claims of Does 15–19.[30] The defendants instead argue that the court's sua sponte direction to amend was procedurally improper because the plaintiffs never moved to amend, the court never required them to show good cause, and the defendants were not given a meaningful opportunity to brief the amendment.[31] The plaintiffs respond that Rule 15(a)(2) requires leave to be "freely give[n] when justice so requires," courts may grant leave to amend sua sponte, and there was no undue delay, bad faith, or prejudice.[32]

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." The Ninth Circuit applies this standard with "extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Courts have

---

[30] Reply – ECF No. 420 at 9.

[31] Mot. – ECF No. 403 at 3, 11–12.

[32] Opp'n – ECF No. 416 at 12–16.

United States District Court
Northern District of California

authority to grant leave to amend sua sponte. *Unified Data Servs., LLC v. FTC,* 39 F.4th 1200, 1208 (9th Cir. 2022). Leave is generally denied only upon a showing of undue delay, bad faith, futility, or undue prejudice. *Eminence Cap.*, 316 F.3d at 1052. No Rule 16 scheduling order set a deadline for amendment of the pleadings to add parties.

The amendment was proper as a matter of case management. The court had broad discretion to manage its docket efficiently, and the amendment served that purpose by eliminating the burdens of parallel proceedings before two judges. There was no undue delay: the plaintiffs filed the 2025 case within four months of the denial of class certification, and the amendment followed months of discussion about consolidation. There is no allegation of bad faith. And the court had deep familiarity with the case after nearly four years of management, which counseled in favor of a single-judge approach.

The better practice would have been to require the plaintiffs to file a formal motion to amend under Rule 15, allow the defendants to oppose, and issue a written order. The court's abbreviated procedure at the December 19 conference — though well-intentioned — did not give the defendants a full opportunity to brief the procedural and jurisdictional issues now before the court.[33] The plaintiffs have offered to file a formal motion for leave to amend, which moots the defendants' procedural objection and allows full argument.[34]

There is also the issue of prejudice. The defendants argue that they are prejudiced because the restructuring mooted their statute-of-limitations arguments in the 2025 case, where they had moved to dismiss on the ground that California does not permit cross-jurisdictional tolling when a plaintiff files a second action asserting the same claims in the same federal court.[35] The plaintiffs respond that (a) *American Pipe* tolling is a purely procedural tool that does not alter substantive

---

[33] The parties will recall the compressed timeline because the district judge raised concerns (including inheriting an old case and requiring court staff to work over the holidays on the pending motions to dismiss), resulting in the court's seeking case-management advice from Judges Spero and Ryu about the procedural viability of amendment and fast-tracking the issues. *See, e.g.*, 1/29/2026 Tr. – ECF No. 409 at 6:12–14.

[34] Opp'n – ECF No. 416 at 12 & n.2.

[35] Mot. – ECF No. 403 at 11.

United States District Court
Northern District of California

rights, (b) the defendants can still raise all tolling arguments in the motions to dismiss, and (c) the Supreme Court's recent decision in *Berk v. Choy*, 146 S. Ct. 546 (2026), establishes that *American Pipe* tolling applies to state-law claims in federal court regardless of state tolling rules.[36]

The defendants are not prejudiced in any way that bears on the amendment question. The tolling issue — whether Does 15–19's claims are timely — is a merits question that will be resolved on the motions to dismiss regardless of how this motion is decided. As the court stated at the January 29, 2026, hearing, it was never the court's intent to foreclose any argument that the defendants could have advanced when the cases were separate. It planned to issue an order on the motions filed in the 2025 case, looking only at the 2025 complaint, thereby addressing fully the defendants' tolling arguments, including the argument that the 2022 and 2025 cases should be treated as separate cases for tolling purposes.

This preview notwithstanding, this order does not reach the parties' arguments about *Berk v. Choy* or the substantive tolling questions. The issues are properly resolved on the motions to dismiss. Whether the cases are styled as one or two, and whether *American Pipe* or California equitable tolling applies, are merits questions not resolvable on a motion about case structure.

There is a tension in the defendants' position. In their motion to relate, USF described the two cases as involving "the same exact claims against the same exact defendants."[37] In their motion to consolidate, the defendants argued that every factor favored consolidation. The asserted ground for consolidation was prejudice. There are two routes to avoid prejudice: considering the existing motions as filed or opposing a motion for leave to file an amended complaint. From the argument on March 19, 2026, either the defendants seek separate cases or they seek consolidation because they prefer a different judge. Objecting to consolidation in the amended complaint is gamesmanship akin to that they ascribe to the plaintiffs' declining jurisdiction in the 2025 case.[38]

---

[36] Opp'n – ECF No. 416 at 13–16.

[37] Mot. – ECF No. 353 at 2–4.

[38] *Id.* at 4–5, 5 n.4 (describing the plaintiffs' "procedural maneuvers" as an "abuse" and a "real manipulation of the justice system," citing Tr., *Solannex, Inc. v. MiaSolé, Inc.*, No. 12-832 – ECF No. 32 at 5:11–6:3 (filed in this case at ECF No. 353-3)).

ORDER – No. 22-cv-01559-LB                    13

### 3. The Party-Presentation Principle

The defendants invoke the party-presentation principle for the proposition that courts may not reshape litigation sua sponte in ways that alter the parties' substantive positions, citing *United States v. Sineng-Smith*, 590 U.S. 371 (2020), *Wood v. Milyard*, 566 U.S. 463 (2012), and *Greenlaw v. United States*, 554 U.S. 237 (2008).[39] The plaintiffs respond that those cases involved fundamentally different circumstances — increasing a criminal sentence on appeal, raising a substantive legal theory never asserted by a party, and sua sponte invoking a statute-of-limitations defense — and none involved routine case management.[40]

The party-presentation principle is not implicated here. In *Greenlaw*, a court of appeals sua sponte increased a criminal defendant's sentence by fifteen years. 554 U.S. at 240. In *Sineng-Smith*, a court invited amici to raise a constitutional theory never asserted by the parties. 590 U.S. at 374–75. In *Wood*, a court sua sponte raised a statute-of-limitations defense that the government had waived. 566 U.S. at 465–66. Each involved a court's substituting its own judgment on a substantive legal question for the arguments presented by the parties.

What the court did here was different in kind. It directed a procedural consolidation of two related cases involving overlapping parties, overlapping claims, and overlapping facts. It did not rule on any substantive legal question. It did not raise or resolve any defense. It did not take any action that altered the parties' substantive rights. The court has said consistently that all defense challenges to the claims of Does 15–19 are live because the plaintiffs made the choice to file a standalone complaint. The consolidation was the functional equivalent of what the defendants requested. Federal courts have inherent authority to manage their dockets, and the Supreme Court has recognized that this authority extends to significant procedural decisions. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962) (dismissal of a case for failure to prosecute it).

The process was compressed, and the better practice would have been to provide advance notice and a briefing schedule. But the substance of the court's action — consolidating related

---

[39] Mot. – ECF No. 403 at 11–12.

[40] Opp'n – ECF No. 416 at 11–12.

cases before a single judge — is squarely within the court's case-management authority and does not implicate the party-presentation principle.

### 4. Next Steps

The court has a draft order addressing the motions to dismiss the 2025 complaint. The court could rescind the amendment in the 2025 case and, with the parties' consent, address the merits of the motions in the 2025 case. A second approach is to rescind the amendment, as the defendants ask, and require the plaintiffs to move for leave to amend to add the claims of Does 15–19. The defendants could oppose the motion on any ground (including *American Pipe* and/or equitable tolling) and raise any objections to magistrate-judge jurisdiction based on the importing of the 2025 claims (given the Giarratano declination in the 2025 case).

### CONCLUSION

The court sets a case-management conference on April 2, 2026, at 9:30 a.m. to discuss the next procedural steps. The parties must confer by March 31, 2026, and submit a status statement by April 1, 2026, at 2 p.m., with their views. The court also will address the discovery disputes filed in the last week.

**IT IS SO ORDERED.**

Dated: March 30, 2026

_____
LAUREL BEELER
United States Magistrate Judge