JONATHAN SELBIN (Cal. Bar No. 170222)
jselbin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

ELIZABETH A. FEGAN (Cal. Bar No. 355906)
beth@feganscott.com
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100

*Attorneys for Plaintiffs John Does 1-6 & 8-19*
(Additional Counsel on Signature Page)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, JOHN DOE 12, JOHN DOE 13, JOHN DOE 14, JOHN DOE 15, JOHN DOE 16, JOHN DOE 17, JOHN DOE 18, and JOHN DOE 19, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNIVERSITY OF SAN FRANCISCO, ANTHONY N. (AKA NINO) GIARRATANO, and TROY NAKAMURA,<br><br>Defendant. | Case No. 3:22-cv-01559-LB<br><br>**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT UNIVERSITY OF SAN FRANCISCO FOR SPOLIATION OF EVIDENCE AND MEMORANDUM IN SUPPORT**<br><br>Hearing: June 18, 2026<br>Time: 9:30 a.m. PST<br>Courtroom: B<br><br>Judge: Hon. Laurel Beeler<br>Trial Date: October 12, 2027 |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF FACTS ..................................................................................... 2

    A.    In key leadership roles since 2016, McDermott personally documented the conduct at the heart of this lawsuit.................................................................. 3

        1.    McDermott was responsible for oversight of the USF baseball coaches throughout her tenure. .......................................................... 3

        2.    McDermott was aware of issues on the baseball team.............................. 4

        3.    McDermott maintained a systematic practice of taking contemporaneous handwritten notes. ........................................... 5

    B.    McDermott testified that she never received a litigation hold and that she destroyed notes regarding this lawsuit after it was filed. ........................... 6

    C.    USF never notified Plaintiffs or the Court of the destruction of evidence by a key custodian, continuing a pattern of discovery abuse. ..................................... 8

        1.    McDermott was a prioritized custodian because of her key role in the disputed events. ........................................................................ 9

        2.    USF repeatedly represented to the Court that it was fulfilling its discovery obligations. .......................................................... 10

        3.    McDermott's destruction of evidence is part of a broader disregard by USF of its discovery obligations. ......................................... 10

III.  LEGAL STANDARD......................................................................................... 11

IV.   ARGUMENT ...................................................................................................... 12

    A.    USF Had a Duty to Preserve McDermott's Contemporaneous Notes. ................. 12

    B.    Judgment against USF is warranted as a sanction for the USF Athletic Director's destruction of the only contemporaneous handwritten accounts of the events at the heart of this case............................................................. 14

        1.    The handwritten notes were destroyed through willfulness, fault, or bad faith.......................................................................... 15

        2.    Plaintiffs are severely prejudiced by the destruction of the contemporaneous handwritten notes. .................................... 16

            a.    USF's Knowledge Is Central to Plaintiffs' Claims, USF's Defenses, and Plaintiffs' Tolling Arguments............................... 16

            b.    The Law Recognizes the Unique Prejudice from Destruction of Contemporaneous Records. ....................................... 18

        3.    A lesser sanction is not appropriate given USF's litigation conduct. ....... 18

    C.    Alternatively, this Court should order sanctions in the form of an adverse inference instruction and a preclusion of evidence. ............................................. 19

        1.    Plaintiffs satisfy the requirements for an adverse inference instruction with respect to the destroyed documents. ............................. 20

        2.    A sanction precluding USF from arguing that it did not know of the Coach Defendants' abusive behavior during McDermott's tenure is warranted.................................................................................... 22

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

**TABLE OF CONTENTS**
**(continued)**

Page

3.    The Combined Sanctions Are Necessary to Remedy the Prejudice to Plaintiffs. ........................................................................................................ 24

D.    Monetary sanctions are warranted. ........................................................................ 24

V.    CONCLUSION ................................................................................................................. 25

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*AdvantaCare Health Partners, LP v. Access IV*,
No. 03-4496, 2004 U.S. Dist. LEXIS 16835 (N.D. Cal. Aug. 17, 2004) ................................. 19

*Al Otro Lado v. Wolf*,
No. 3: 17-cv-02366-BAS-KSC, 2021 U.S. Dist. LEXIS 30450 (S.D. Cal. Feb. 18, 2021) ........ 12, 13, 19

*Alexander v. Nat'l Farmers Org.*,
687 F.2d 1173 (8th Cir. 1982) ................................................................... 13

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) ...................................................................... 14

*Apple Inc. v. Samsung Elecs. Co.*,
881 F. Supp. 2d 1132 (N.D. Cal. 2012) ................................................. 12, 20, 21, 22

*Aryeh v. Canon Bus. Sols., Inc.*,
55 Cal. 4th 1185 (2013) ......................................................................... 18

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
No. ED CV 14-1926-JAK (SPx), 2016 U.S. Dist. LEXIS 184932 (C.D. Cal. 2016) .............................. 22

*Brown v. ICF Int'l*,
No. 07-CV-931, 2009 U.S. Dist. LEXIS 130154, 2009 WL 7127925 (M.D. La. Apr. 24, 2009) ........... 13

*C.B. v. Moreno Valley Unified Sch. Dist.*,
No. 5:21-cv-00194-JGB-SP, 2023 U.S. Dist. LEXIS 185824 (C.D. Cal. Sep. 18, 2023) ...................... 23

*City of Colton v. Am. Promotional Events, Inc.*,
No. EDCV 09-01864 PSG (SSx), 2011 U.S. Dist. LEXIS 163984 (C.D. Cal. Nov. 22 2011)................. 13

*Chambers v. NACSO, Inc.*,
501 U.S. 32 (1991) ............................................................................... 11

*Cobell v. Babbitt*,
No. 1-96CV01285, 1999 U.S. Dist. LEXIS 20918 (D.D.C. Dec. 3, 1999) ............................................ 16

*Cruz v. G-Star Inc.*,
No. 17-cv-7685, 2019 U.S. Dist. LEXIS 169445 (S.D.N.Y. Sep. 30, 2019) ........................................ 16

*Davis v. Monroe Cty. Bd. of Educ.*,
526 U.S. 629 (1999) .............................................................................. 17

*DR Distribs., LLC v. 21 Century Smoking, Inc.*,
513 F. Supp. 3d 839 (N.D. Ill. 2021) ................................................................. 16

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ...................................................................... 11

*Fjelstad v. Am. Honda Motor Co., Inc.*,
762 F.2d 1334 (9th Cir. 1985) ..................................................................... 14

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998) .............................................................................. 17

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Glover v. BIC Corp.*,
6 F.3d 1318 (9th Cir. 1993) ............................................................................................... 20, 21

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) ................................................................................................................ 24

*Hamilton v. Signature Flight Support Corp.*,
No. 05-0490, 2005 U.S. Dist. LEXIS 40088, 2005 WL 3481423 (N.D. Cal. Dec. 20, 2005) ................ 15

*Herman v. City of New York*,
334 F.R.D. 377 (E.D.N.Y. 2020) ....................................................................................... 12, 16

*Hyde & Drath v. Baker*,
24 F.3d 1162 (9th Cir. 1994) ................................................................................................. 11

*IO Grp. Inc. v. GLBT Ltd., No. C-10-1282 MMC (DMR)*,
2011 U.S. Dist. LEXIS 120819 (N.D. Cal. Oct. 19, 2011) .................................................12, 14, 15, 21

*Karasek v. Regents of Univ. of California*,
956 F.3d 1093 (9th Cir. 2020) ............................................................................................... 17

*Keithley v. Home Store.com, Inc.*,
2008 U.S. Dist. LEXIS 61741 (N.D. Cal. Aug. 12, 2018) .................................................... 11, 20

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998) .................................................................................................... 20

*Leon v. IDX Systems Corp.*,
464 F.3d 951 (9th Cir. 2006) ................................................................................... 11, 14, 15, 24

*Nursing Home Pension Fund v. Oracle Corp.*,
254 F.R.D. 559 (N.D. Cal. 2008) ........................................................................................... 14

*Payne v. Exxon Corp.*,
121 F.3d 503 (9th Cir. 1997) .................................................................................................. 11

*Sensonics v. Aerosonic Corp.*,
81 F.3d 1566 (Fed. Cir. 1996) ................................................................................................ 20

*Snyder-Hill v. Ohio State Univ.*,
48 F.4th 686 (6th Cir. 2022) ................................................................................................... 18

*UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.)*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006) ............................................................................ 21, 23, 24

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
982 F.2d 363 & n.2 (9th Cir. 1992) .................................................................................... 21, 23

*United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*,
857 F.2d 600 (9th Cir. 1988) .................................................................................................. 14

*United States v. Kitsap Physicians Serv.*,
314 F.3d 995 (9th Cir. 2002) ........................................................................................ 11, 15, 21

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
  269 F.R.D. 497 (D. Md. 2010) ................................................................................ 24

*Victorino v. FCA US LCC*,
  No. 16cv1617-GPC(JLB), 2017 U.S. Dist. LEXIS 168390 (S.D. Cal. 2017) ...................................20, 22

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................................ 12, 18

*Zubulake v. UBS Warburg LLC*,
  229 F.R.D. 422 (S.D.N.Y. 2004) ............................................................................ 12, 20

**Statutes**

Fed. R. Civ. P. 37 ................................................................................................*passim*

Fed. R. Civ. P. 37(b)(2)(C) ...................................................................................... 14, 24

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that under both the Court's inherent authority and Rule 37 of the Federal Rules of Civil Procedure, Plaintiffs hereby move for sanctions against the University of San Francisco for spoliation of evidence. This motion is to be heard before the Honorable Laurel Beeler in Courtroom B – 15th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, on June 18, 2026 at 9:30 a.m., or as soon thereafter as this matter may be heard.

This motion is supported by this Notice of Motion and the Memorandum of Points and Authorities below, the pleadings and papers filed in this action, and such further evidence or argument as may be presented at or prior to the hearing on this matter.

## I.    INTRODUCTION

Defendant University of San Francisco ("USF") allowed its former Athletic Director, the individual directly responsible for overseeing its baseball program from at least 2017 through her departure in 2022, to destroy years of handwritten notes documenting what USF knew about sexual misconduct by its baseball coaches. She did so more than fifteen months *after* this lawsuit was filed, and even longer after USF's duty to preserve relevant evidence no later than December 2021. McDermott testified that it was her regular practice to take contemporaneous notes throughout her tenure at USF, documenting meetings she held with athletics personnel and senior leadership, including complaints, exit interviews, and communications about sexual misconduct by USF coaches Nino Giarratano and Troy Nakamura (the "Coach Defendants").

Plaintiffs only learned that McDermott destroyed these notes when she admitted so at her deposition on March 25, 2026. McDermott testified that she was *never* instructed to preserve her handwritten notes and that USF *never* collected documents *from her* for purposes of this litigation. USF's concealment persisted across years of litigation until Plaintiffs uncovered the truth at McDermott's deposition. At no point during the years of litigation and discovery—during which USF and its counsel repeatedly assured this Court and Plaintiffs that it was conducting exhaustive document collections from key custodians, including McDermott—did USF ever inform Plaintiffs or this Court that it had allowed McDermott to destroy documents.

The prejudice to Plaintiffs is substantial. USF's knowledge of the Coach Defendants' misconduct is an essential element of Plaintiffs' Title IX, negligent supervision and retention, gross negligence, and ratification claims, and is central to assessing USF's statute of limitations defense. McDermott's notes throughout her tenure at USF would have documented what USF knew, when it knew it, and how it responded—evidence that is now irretrievably lost.

This conduct is sanctionable under both the Court's inherent authority and Rule 37 of the Federal Rules of Civil Procedure. McDermott's destruction of her notes more than fifteen months after this lawsuit was filed, USF's failure to preserve and collect documents from a central witness, and its concealment of the spoliation from Plaintiffs and this Court, all demonstrate the requisite culpability.

Plaintiffs respectfully request that this Court enter judgment against USF as a sanction for spoliation of evidence. Alternatively, Plaintiffs seek (1) an adverse inference instruction requiring the jury to infer that the destroyed evidence was unfavorable to USF; and (2) an order precluding USF from arguing or introducing evidence that it lacked knowledge of the Coach Defendants' sexual misconduct and abusive behavior alleged by Plaintiffs during the period McDermott served in the Athletic Department (2016-2022). Plaintiffs also request an award of attorneys' fees and costs incurred in bringing this motion and litigating the attendant discovery disputes. USF should not benefit from its own failure to preserve and produce critical evidence.

## II.    SUMMARY OF FACTS

This case arises from allegations that the Coach Defendants subjected student-athletes to years of sexual misconduct and psychological abuse, and that USF knew of and concealed it. Beginning in 1999, the Coach Defendants created an intolerable sexualized environment in which they subjected players to sexual degradation—including exposing themselves to players, showering with players, analyzing and commenting on players' genitals, and demanding players partake in sexualized skits. *See, e.g.*, Pls.' Mot. for Class Cert. (Dkt. No. 266), at 7. Numerous individuals raised concerns about the Coach Defendants with authority figures at USF—in 2000, 2013, 2014, and 2021—none of whom took meaningful corrective action. *Id.* at 17-19. As reflected below, the complaints continued during McDermott's tenure as Athletics Director, and in some cases were

made directly to her. Yet as reflected below, USF failed to collect, and then permitted McDermott to destroy, evidence related to these complaints.

> **A.** **In key leadership roles since 2016, McDermott personally documented the conduct at the heart of this lawsuit.**
>
> **1.** **McDermott was responsible for oversight of the USF baseball coaches throughout her tenure.**

McDermott served in various administrative capacities within USF's Athletic Department from September 2016 until her departure in June 2022. McDermott began at USF as Senior Executive Associate Athletic Director in September 2016, reporting to then-Athletic Director Scott Sidwell. Declaration of Elizabeth A. Fegan, Ex. A[1] (McDermott Dep. (Mar. 25, 2026)) at 38:10-39:20. In this role, McDermott supervised compliance, business operations, and served as sports supervisor for women's soccer, men's and women's cross country, track and field, and volleyball. *Id.* at 39:21-40:17. In July 2017, McDermott became the administrator responsible for the baseball team. Ex. B (Sidwell Dep. (Apr. 14, 2026)) at 276:4-21 (discussing a July 27, 2017 email informing Giarratano that McDermott is the new baseball supervisor). Head coaches, including Giarratano, reported to McDermott as the Associate Athletic Director who oversaw their specific team. Ex. A (McDermott Dep.) at 95:5-13. McDermott had the "ultimate responsibility for supervising the coach," including Giarratano. *Id.* at 95:14-18.

In approximately 2017 or 2018, McDermott was elevated to Deputy Athletics Director. *Id.* at 44:14-18. In March 2019, McDermott was appointed Athletic Director. *Id.* at 50:4-8. As Athletic Director, she was responsible for overseeing the entire department, including all sports programs, ensuring NCAA compliance, managing budgets, and supervising coaches. *Id.* at 54:16-55:4. She was also responsible for ensuring that all athletic activities were consistent with the University's vision, mission, and values and for supervising and controlling staff and operations of the athletics department. *Id.* at 79:11-15.

When she became Athletic Director, McDermott deliberately retained direct oversight of the baseball program: "I kept baseball because I had been trying to watch them closely." *Id.* at 84:11-12 (discussing Dec. 2021 Text Message to Jess Varga); Ex. C (Cross Dep. (Feb. 10, 2026))

---

[1] All reference to exhibits herein are exhibits to Declaration of Elizabeth A. Fegan.

at 44:18-24. McDermott claimed she wanted to keep baseball to ensure they were following NCAA compliance rules. Ex. A (McDermott Dep.) at 85:22-86:16.

After this lawsuit was filed in March 2022, USF pushed McDermott out. Ex. C (Cross Dep.) at 244:11-246:6 (rather than face termination, "Joan took the option to retire"). McDermott signed a retirement agreement and general release upon her departure, which included obligations to assist in the defense of legal actions against the University and to refrain from making disparaging statements about USF. Ex. A (McDermott Dep.) at 334:18-339:8.

**2.      McDermott was aware of issues on the baseball team.**

As Athletic Director and supervisor of the baseball program, McDermott was a "Mandatory Reporter" under USF's Title IX Policy, obligated to immediately report any known or suspected incidents of sexual misconduct to USF's Title IX office. Fourth Am. Compl. ¶ 218 (Dkt. No. 456-1). However, McDermott's attitude toward Title IX was "not always cooperative," Ex. D (Murphy Dep. (Dec. 12, 2025)) at 238:7-18; she was not "attentive to student athlete 'cries for help or needs of students except soccer team' support"; *id.* at 253:25-254:5 (cleaned up); and the Title IX office was "frustrated Joan . . . instill[ed] fear of Title IX in the department through her actions." *Id.* at 258:19-259:1 (discussing Ex. 29, Oct. 21, 2021 email from Katrina Murphy to Julie Orio and Jess Varga outlining concerns about McDermott). Indeed, the date this lawsuit was filed, March 11, 2022, USF Vice President Charles Cross raised concerns that McDermott was defensive, not forthcoming (particularly with respect to the Coach Defendants), and had failed to inform Jeremy Howell about Giarratano's improper revocation of baseball players' scholarships. Ex. C (Cross Dep.) at 250:24-256:16. A few weeks later, on March 24, Cross documented McDermott's failure to communicate her knowledge of the Coach Defendants' misconduct, lack of objectivity with respect to the baseball program, failure to adequately supervise the baseball program, failure to cooperate with the Title IX department, and a lack of trust from the community and the Board of Trustees in her leadership. *Id.* at 228:13-244:4.

As the individual responsible for oversight of the baseball team since at least mid-2017, McDermott would have been privy to the history of problems on the team. For instance, McDermott believed ███████████████████████████████████████████████. Ex. K (McDermott

Arb. Dep. (Dec. 12, 2023)) at 96:21-98:24. But she also received direct reports about problems. John Doe 1's mother attempted to contact McDermott in the spring of 2021 about problems with the baseball program involving sexual misconduct, but McDermott never returned her calls. Ex. E (Mother of Doe 1 Dep. (Feb. 25, 2026)) at 147:16-148:18. On May 30, 2021, John Doe 2's parents requested an urgent in-person meeting to discuss the Coach Defendants' misconduct, but McDermott—again—never responded. Ex. F (Father of Doe 2 Dep. (Mar. 27, 2026)) at 68:10-69:20.

McDermott testified that she personally met with Giarratano in the fall of 2021 to discuss the baseball team holding "kangaroo court," which involved nudity, after receiving concerns from Title IX staff. Ex. A (McDermott Dep.) at 248:10–249:5. And, beginning in December 2021, McDermott received and transmitted numerous complaints regarding the Coach Defendants' sexual misconduct. On December 14, 2021, McDermott received a report from John Doe 1's parent, detailing Nakamura's sexually inappropriate conduct. Ex. E (Mother of Doe 1 Dep.) at 175:14–176:14; Ex. G (Varga Dep. (Jan. 15, 2026)) at 430:20–431:8. McDermott forwarded this information to USF's Title IX office. *Id.* at 431:9–431:22; Ex. D (Murphy Dep.) at 254:17-21.

McDermott was then directly involved in meetings and communications concerning the abuse allegations throughout the investigation period in late 2021 and early 2022. She participated in discussions with Title IX Coordinator Jess Varga, Human Resources Director Diane Nelson, and Vice President Charles Cross regarding the complaints against the baseball coaches. *E.g.* Ex. C (Cross Dep.) at 69:9-72:9.

### 3. McDermott maintained a systematic practice of taking contemporaneous handwritten notes.

McDermott testified that it was her standard practice to take handwritten notes in the meetings she attended in her capacity as Athletic Director. She explained: "I always had a little like—not a binder, but like a notebook that I would take notes for every meeting I was involved in. I'd write the date down and take notes." Ex. A (McDermott Dep.) at 43:19-44:4. McDermott confirmed this was her "standard practice." *Id.* at. 44:5–8. She further explained that "I took notes all the time just because there was so much interaction. I just wanted to be reminded, you know,

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

did we talk about this, is there something I need to deal with." *Id.* at 104:8–12.

McDermott testified that she held biweekly standing meetings with the coaches she supervised, including Giarratano, took notes at those meetings, and confirmed there are no longer any calendar entries or other documentation of these meetings. *Id.* at 43:2–20. McDermott also testified that she personally conducted exit interviews with transferring student-athletes and kept notes from those interviews. *Id.* at 143:19–21. McDermott testified that she would also would have recorded information received from Title IX Coordinator Jess Varga in her notes. *Id.* at 206:15–207:5.

The subject matter of McDermott's notes covered issues directly relevant to this litigation, including student-athlete complaints about coaches, behavior issues, meetings with individual student athletes, exit interviews, and senior leadership meetings. *Id.* at 106:4–107:12; 119:2-120:4; 143:19–21; 206:15–207:5.

The notes from these meetings are now gone. *Id.* at 62:8–63:7.

**B.      McDermott testified that she never received a litigation hold and that she destroyed notes regarding this lawsuit after it was filed.**

This lawsuit was filed on March 11, 2022. McDermott confirmed that she still possessed her handwritten notebooks at that time, *id.* at 62:10–17, including from the Fall of 2021, the very period during which the Plaintiffs' Title IX complaints were first being investigated. *Id.* at 63:2-7.

McDermott testified that she moved from San Francisco in June 2023 and that she threw out notebooks that had been stored "in a box…somewhere in our garage" at or around that time. *Id.* at 63:8–19. McDermott also acknowledged that she "may have thrown some out each year," a rolling pattern of destruction even after litigation commenced. *Id.* at 63:2-3.

Critically, despite USF's awareness and belief that McDermott was defensive and not forthcoming with respect to the Coach Defendants' misconduct as of the filing of this lawsuit, *see* Ex. C (Cross Dep.) at 228:13-244:4, 250:24-256:16, McDermott testified that she was never told by anyone not to throw out her handwritten notes. Ex. A (McDermott Dep.) at 62:18–20. McDermott also testified that she never personally searched for documents related to this litigation. *Id.* at 21:18–20. Only her electronic devices were searched, and that search was conducted in

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

connection with a separate arbitration between Giarratano and USF around 2023, not for this lawsuit. *Id.* at 22:4–10.

After Plaintiffs' counsel raised concerns about McDermott's destruction of documents, USF's counsel claimed that McDermott "received a personalized formal legal hold notice on March 29, 2022[2] that specifically directed her to retain all relevant documents, including all paper records," and that McDermott "acknowledged receipt of that notice by email that day and confirmed that she would comply." Ex. H (Apr. 2, 2026 Letter from J. Marx at 1.) However, USF's counsel has produced only an entirely redacted copy of this litigation hold to Plaintiffs, such that Plaintiffs cannot tell what USF instructed McDermott to preserve or what she said in response. Ex. H at 1; Ex. I (Email from J. Marx to J. Selbin dated April 6, 2026). *See also* Ex. J (Redacted Litigation Hold to Joan McDermott and redacted March 30, 2022 emails).

Even accepting USF's representation that an adequate litigation hold was issued,[3] the record establishes that McDermott destroyed notebooks containing relevant evidence more than a year after that hold was purportedly issued. Ex. A (McDermott Dep.) at 61:17–63:19. The notebooks contained notes from meetings and events directly at issue in this litigation, including but not limited to:

a. *Notes from Biweekly Meetings with Coaches*: McDermott held standing biweekly meetings with Giarratano, took notes at those meetings, and confirmed those notes no longer exist. *Id.* at 43:2–44:8; 63:2–19.

b. *Notes About Meetings Regarding Information from the Title IX Office*: McDermott confirmed that information received from Title IX Coordinator Jess Varga would be "the type of information that you would record in your notes." She confirmed that any notes taken during these meetings would have been in the booklets that she has since thrown out. *Id.* at 206:15–207:5.

---

[2] USF knew or reasonably should have known far earlier than March 2022 that litigation was probable, having received complaints from the Does' parents in the spring of 2021 and multiple Title IX complaints specifically concerning the Coach Defendants' sexual misconduct in December 2021.

[3] Plaintiffs respectfully submit that an *in camera* review of this hold and McDermott's response is warranted to confirm USF's assertions. That is so despite the fact that even if USF sent a proper litigation hold, it did so belatedly and did nothing to ensure it was followed as evidenced by McDermott's destruction of documents thereafter.

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

c. *Notes Regarding Discussions of Complaints with Giarratano*: For example, McDermott met with Giarratano in the fall of 2021 about holding "kangaroo court" on the baseball team. *Id.* at 248:14–249:5. She confirmed that any notes taken during this meeting would have been in the booklets that she has since thrown out. *Id.* at 250:3–9.

d. *Exit Interview Notes*: McDermott claims to have personally conducted exit interviews with transferring student-athletes—many of whom left USF's baseball program allegedly due to the Coach Defendants' misconduct—and kept notes from those interviews. *Id.* at 142:22-145:3. They no longer exist. *Id.* at 145:4–10.

e. *Senior Leadership Meeting Notes*: Notes from senior leadership meetings were saved "in one of those little binders" that McDermott longer has. *Id.* at. 61:8–19.

f. *Student-Athlete Complaint Notes*: McDermott testified that if a student-athlete had a complaint about a coach, she believed she would record it in her notebook. *Id.* at 107:8–12.

McDermott also referenced a voicemail left by Giarratano on December 18, 2021—during the investigation period preceding this lawsuit. *Id.* at 275:10–11. When asked if she had that voicemail, she said: "I don't think so," explaining that "my latest software upgrade my phone is all messed up, I can't figure out my old voicemails. I don't think I deleted it." *Id.* at 275:13–18. This voicemail may have contained relevant evidence about Giarratano's communications with McDermott during the investigation.

USF has produced nearly 3,000 documents for which McDermott was a custodian. Ex. H (Apr. 2, 2026 Letter from J. Marx at 1.). However, the absence of *any* handwritten notes (or voicemails) from USF's productions confirms that these critical, contemporaneous records were not preserved and cannot be recovered.

C. **USF never notified Plaintiffs or the Court of the destruction of evidence by a key custodian, continuing a pattern of discovery abuse.**

McDermott is a central figure in this litigation. Yet Plaintiffs first learned that McDermott destroyed evidence at her March 25, 2026 deposition. Instead of proactively and promptly addressing this spoliation, USF's counsel remained silent until Plaintiffs' counsel followed up to raise their concerns. This failure is not an isolated lapse—it reflects a broader pattern of discovery

abuse that contradicts USF's representations to Plaintiffs' counsel and the Court.

### 1. McDermott was a prioritized custodian because of her key role in the disputed events.

Prior to McDermott's deposition, USF's counsel was well aware of McDermott's importance to the litigation. *See* Joint Case Management Statement (September 5, 2024) (Dkt. No. 228 (identifying McDermott as one of 11 priority custodians)); Joint Case Management Statement (October 3, 2024) (Dkt. No. 236-3 (same)); Plaintiffs' Opposition to USF's Motion for Leave to File a Partial Motion for Summary Judgment on the Statute of Limitations Email Correspondence Regarding Discovery (Exhibit F to Dkt. No. 328) (Dkt. No. 328-7 (Ex. F: listing McDermott as a custodian from whom USF was producing documents)).[4]

The Court entered numerous discovery orders, beyond mere scheduling, requiring USF to comply with its discovery obligations specifically for the period in which McDermott worked her way up in the Athletic Department to Athletic Director. *See, e.g.,* July 14, 2024 Order (Dkt. No. 204) (preliminarily resolving dispute regarding the lookback time period for USF's document production and imposing a five-year lookback period for USF's document production in response to Plaintiffs' First Set of Requests for Production, which included requests for policies, complaints about sexual misconduct within the baseball team, investigations, the Coach Defendants' personnel files, and communications with the NCAA); September 16, 2024 Scheduling Order (Dkt. No. 235) (addressing ongoing discovery delays and imposing specific obligations on USF to provide its timelines for production of documents from priority custodians)[5]; November 25, 2024 Discovery and Sealing Order (Dkt. No. 269) (confirming the court's earlier ruling regarding the lookback period and clarifying that USF was required to produce documents "back to 2012" for matters related to the baseball team.); June 27, 2025 Discovery Order (Dkt. No. 345) (ordering USF to

---

[4] McDermott's cell phone was also the subject of discovery disputes and filings before this Court. *See, e.g.,* Declaration of Jessica A. Moldovan in Support of Discovery Letter Brief re Text Messages (Dkt. No. 336-1) (citing a text message dated January 3, 2022 between McDermott and Assistant Vice President of HR Diane Nelson (USF004524) as evidence that USF employees used text messages for work purposes).

[5] Following this order, USF agreed to produce responsive documents from 11 priority custodians, including McDermott, on a bi-weekly basis.

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

come up with a reasonable timeline for production of documents).

**2.      USF repeatedly represented to the Court that it was fulfilling its discovery obligations.**

Throughout this litigation, USF repeatedly represented to the Court and Plaintiffs that it was fulfilling its discovery obligations. In a June 2024 Discovery Letter Brief, USF stated it had "run searches of terms proposed by Plaintiffs" that "yielded a total of 371,785 documents." Dkt. 199 at 7. By January 2026, USF claimed to have "produced multiple categories of documents from 44 custodians, producing 31,882 documents spanning over 215,174 pages." Dkt. 401 at 8. As recently as March 2026—days before McDermott's deposition—USF represented that it had "manually reviewed more than a quarter-million documents" from "44 custodians" and "remains committed to ensuring that custodians' documents are produced in advance of their depositions." Dkt. No. 423 at 9. *See also* Dkt. No. 214-2 at 3 (Aug. 2024: "conducting a substantive and privilege review of over 3,000,000 documents"); Dkt. No. 228-7 at 2 (Aug. 2024: "collected over 3,000,000 documents"); Dkt. No. 228 at 18 (Sept. 2024: collected from 28 individuals); Dkt. No. 236 at 6-7 (Oct. 2024: "ninth production volume" of "2,948 documents"); Dkt. No. 342 at 6 (June 2025: "produced more than 24,000 documents, spanning nearly 178,000 pages"); Dkt. No. 332 at 5 (Apr. 2025: "substantively produced all discovery that has come due").

Yet nowhere in any of these filings—spanning years of litigation and dozens of representations to this Court—did USF disclose the destruction of McDermott's notes.

**3.      McDermott's destruction of evidence is part of a broader disregard by USF of its discovery obligations.**

McDermott's destruction of evidence is unfortunately not an isolated event. It is part of a broader, systemic failure by USF to comply with its discovery obligations, which has severely prejudiced Plaintiffs and warrants appropriate relief.

That pattern continued most recently with USF's production of text messages on April 22, 2026, pursuant to the Court's May 14, 2025 Discovery Order (Dkt. No. 337). Despite taking nearly a year to comply with that Court order, USF's belated production of text messages was accompanied by a disclosure—buried at the bottom of its production email—that USF had elected knowingly to violate the Court's order by entirely failing to collect text messages from several

critical custodians (including Coach Giarratano's wife, Brenda Giarratano, whom USF employs) and by unilaterally limiting its collections from several other custodians.[6] The same disregard for preservation obligations was again evident during Scott Sidwell's April 14, 2026 deposition. Sidwell repeatedly testified that he does not recall receiving any instruction to preserve documents from USF, does not recall whether he destroyed relevant materials, and does not recall taking any steps to preserve electronic data or notes—including notes from meetings with USF coaches, or whether any such materials were provided to USF's counsel. Ex. B (Sidwell Dep.) at 18:24-24:18.

## III.    LEGAL STANDARD

Under its inherent power to control the judicial process, the Court may enter sanctions for litigation misconduct, including spoliation. *See Chambers v. NACSO, Inc*., 501 U.S. 32, 46-47 (1991) (recognizing the inherent power of the courts to impose appropriate sanctions where conduct disrupts the judicial process). *See also Keithley v. Home Store.com, Inc*., No. C-03-04447 SI (EDL)), 2008 U.S. Dist. LEXIS 61741, at *6 (N.D. Cal. Aug. 12, 2008). A party engages in willful spoliation if the party has "some notice that the documents were potentially relevant to the litigation before they were destroyed." *United States v. Kitsap Physicians Serv*., 314 F.3d 995, 1001 (9th Cir. 2002). Sanctions are available under the Court's inherent power upon a finding of willfulness, fault, or bad faith. *See Leon v. IDX Systems Corp*., 464 F.3d 951, 958 (9th Cir. 2006). Recklessness combined with an additional factor such as frivolousness, harassment, or an improper purpose constitutes willfulness. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

The Court may also enter sanctions under Rule 37 of the Federal Rules of Civil Procedure. Sanctions for violations of Rule 37 may be imposed for negligent conduct. *See* Fed. R. Civ. P. 37(b); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) ("We have not required a finding of bad faith on the part of the attorney before imposing sanctions under Rule 37."). The Court may, in deciding whether to grant a motion for sanctions under Rule 37, "properly consider all of a party's discovery misconduct . . . , including conduct which has been the subject of earlier sanctions." *Payne v. Exxon Corp*., 121 F.3d 503, 508 (9th Cir. 1997).

---

[6] Unless promptly remedied by USF, this conduct will likely be addressed in an additional motion for sanctions.

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

## IV.    **ARGUMENT**

USF had a duty to preserve McDermott's contemporaneous handwritten notes by March 2022 (when this case was filed) at the absolute latest, and likely much earlier (such as when it first received complaints from the Does and their parents). Yet USF allowed McDermott to destroy her notes more than a year after this lawsuit was filed while simultaneously representing to Plaintiffs and this Court that it had exhaustively complied with its discovery obligations. As the official directly responsible for supervising the baseball program, McDermott documented in real time what USF knew about the Coach Defendants' misconduct, when it knew it, and how it responded. The destroyed notes are critical contemporaneous evidence that go to the very heart of Plaintiffs' claims and USF's defenses, including its much-touted statute of limitations defense. And they are irreplaceable. USF's failure to preserve and collect McDermott's notes, its concealment of their destruction, and its affirmative misrepresentations to this Court constitute willful spoliation warranting severe sanctions.

### A.    <u>USF Had a Duty to Preserve McDermott's Contemporaneous Notes.</u>

The duty to preserve evidence arises "the moment that litigation is reasonably anticipated." *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012). "Litigants are under a duty to preserve 'what [they know], or should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *IO Grp. Inc. v. GLBT Ltd.*, No. C-10-1282 MMC (DMR), 2011 U.S. Dist. LEXIS 120819, at *13-14 (N.D. Cal. Oct. 19, 2011) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)). "The 'implementation of a litigation hold' is 'only the beginning' of compliance with a party's discovery obligations, and 'counsel must oversee compliance and monitor the party's efforts to retain and produce the relevant documents.'" *Al Otro Lado v. Wolf*, No. 3:17-cv-02366-BAS-KSC, 2021 U.S. Dist. LEXIS 30450, at *20-21 (S.D. Cal. Feb. 18, 2021) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)) (cleaned up).

USF "had an obligation to inquire about, preserve and produce [] hard copy handwritten notes" created by its custodians. *Herman v. City of New York*, 334 F.R.D. 377, 385 (E.D.N.Y. 2020)

(citing *Brown v. ICF Int'l*, No. 07-CV-931, 2009 U.S. Dist. LEXIS 130154, 2009 WL 7127925, at *3 (M.D. La. Apr. 24, 2009) ("At the time the notes were destroyed, the plaintiff had a duty to preserve the handwritten notes relevant to her claims. . . . [T]he evidence does not establish that these notes were transcribed verbatim, thus the plaintiff was still under an obligation to preserve and produce the notes."), *aff'd*, No. 07-931, 2011 U.S. Dist. LEXIS 131357 (Nov. 14, 2011)."); *Al Otro Lado*, 2021 U.S. Dist. LEXIS 30450, at *5-6, *28 (imposing sanctions for shredding of handwritten notes from regularly conducted meetings of relevant personnel).

Here, USF's duty to preserve arose no later than March 11, 2022, when this lawsuit was filed, and almost certainly much earlier.[7] USF's counsel represents that USF issued a litigation hold to McDermott on March 29, 2022, Ex. H (Apr. 2, 2026 Letter from J. Marx at 1.), conclusively establishing that USF (belatedly) recognized its duty to preserve by that date.[8] Yet the evidence was never collected and then destroyed more than a year later.

There can be no question that McDermott's handwritten notes are relevant. McDermott was not a peripheral witness. She was USF's Athletic Director—the person directly responsible for supervising the baseball program and the coaches accused of sexual misconduct. Her notes documented meetings with Giarratano, exit interviews with departing student-athletes, communications with the Title IX office, and senior leadership meetings about the baseball program. Ex. A (McDermott Dep.) at 43:2–44:8; 61:8-19; 106:4–107:12; 143:19–21; 206:6-207:15. The relevance of these documents was patently obvious.[9] And McDermott had a documented pattern of failing to pass on what she knew about the baseball program to senior

---

[7] USF's duty to preserve likely arose upon receipt of various complaints from players and parents, and certainly by December 2021, when it opened a Title IX investigation into the Coach Defendants.

[8] As noted above, because USF has refused to produce anything but an entirely redacted version of the purported litigation hold, Plaintiffs cannot determine the adequacy of even that purported hold. The Court should review the notice *in camera* to determine its adequacy and discoverable in light of USF's spoliation. *See City of Colton v. Am. Promotional Events, Inc.*, No. EDCV 09-01864 PSG (SSx), 2011 U.S. Dist. LEXIS 163984, at *222-23, *226-27, *237-38 (C.D. Cal. Nov. 22, 2011) (affirming special master's order to produce litigation hold to opposing party, following review *in camera* and upon a "preliminary showing of spoliation").

[9] Because "the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist," a party "can hardly assert any presumption of irrelevance as to the destroyed documents." *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982).

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

leaders. *See, e.g.*, Ex. C (Cross Dep.) at 229:9-14, 232:11-233:1, 234:14-237:14, 239:2-240:14, 252:11-253:22, 255:11-256:7 ("She doesn't share a lot of information" because "she wanted to deal with things herself"). Her notes may have been the only contemporaneous evidence reflecting USF's knowledge of—and response to—certain misconduct. Thus, this Court should find that USF had a duty to preserve McDermott's handwritten notes.

> **B.      Judgment against USF is warranted as a sanction for the USF Athletic Director's destruction of the only contemporaneous handwritten accounts of the events at the heart of this case.**

There are two sources of authority under which a district court can sanction a party who has spoliated evidence: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under [Fed. R. Civ. P. 37(b)(2)(C)] against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d at 958 (quoting *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1337-38 (9th Cir. 1985).

Dispositive sanctions are available when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). Before imposing the "harsh sanction" of entering judgment, however, the district court should consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id*. *See also IO Grp. Inc.*, 2011 U.S. Dist. LEXIS 120819, at *8 ("In determining whether and what type of sanctions to issue, courts generally consider three factors: '(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.'" (quoting *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008))). While the district court need not make explicit findings regarding each of these factors, *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir. 1988),

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

a finding of willfulness, fault, or bad faith is required for dispositive sanctions to be proper. *Leon*, 464 F.3d at 958.

**1.      The handwritten notes were destroyed through willfulness, fault, or bad faith.**

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (quoting *Kitsap Physicians Serv*., 314 F.3d at 1001). Here, USF was on notice that documents maintained by the Athletic Department generally, and McDermott specifically, were relevant to this litigation. That knowledge is demonstrated by USF's claim that it sent McDermott a litigation hold notice, prioritized her custodial files for production, and argued that the period she served in the Athletic Department should be subject to the lookback period that was in dispute before the Court. That is sufficient to find a willful spoliation of evidence. *Leon*, 464 F.3d at 959.

McDermott testified that she destroyed the documents more than a year after this lawsuit was filed. Even assuming USF's preservation obligations began with the filing of the lawsuit, USF had ample opportunity—more than a year—to collect relevant documents from a key custodian but failed to do so before those documents were destroyed.  In fact, according to McDermott, USF *never collected documents from her for purposes of this lawsuit*. Ex A (McDermott Dep.) at 21:18-22:13. USF's failure to collect McDermott's handwritten notes—whether for this lawsuit or the arbitration with Giarratano—resulting in their destruction more than a year after this lawsuit was filed is far worse than the failure to suspend an automatic email deletion system that courts have found sanctionable. USF did not merely fail to halt a routine process—it affirmatively chose not to collect any documents from one of the most critical witnesses in this case. This reflects USF's conscious disregard of its obligation to preserve evidence. *See IO Grp. Inc.*, 2011 U.S. Dist. LEXIS 120819, at *19-20 (citing *Hamilton v. Signature Flight Support Corp*., No. 05-0490, 2005 U.S. Dist. LEXIS 40088, 2005 WL 3481423, at *7 (N.D. Cal. Dec. 20, 2005) (listing cases holding sanction for failure to preserve evidence appropriate "when a party has consciously disregarded its obligation to do so")).

- 15 -

Further, the failure to notify Plaintiffs or the Court of the destruction of documents at all (much less in a timely manner) demonstrates USF's bad faith. *See Herman*, 334 F.R.D. at 385 ("Waiting for opposing counsel to unearth this [spoliation] through depositions of fact witnesses flies in the face of necessary transparency embodied in the Rules of Civil Procedure."). The failure of USF's counsel to timely disclose the destruction of evidence violates the rules requiring candor to the court and fairness to the opposing party and counsel. *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 906 (N.D. Ill. 2021). *See also Cruz v. G-Star Inc.*, No. 17-cv-7685, 2019 U.S. Dist. LEXIS 169445, at *40 n.7 (S.D.N.Y. Sep. 30, 2019) ("To be clear, once counsel discovered that relevant information had been destroyed, disclosure should have been made immediately."); *Cobell v. Babbitt*, No. 1-96CV01285, 1999 U.S. Dist. LEXIS 20918, at *196 (D.D.C. Dec. 3, 1999) ("At a minimum, those attorneys who were aware of the Hyattsville document destruction from its inception and yet chose to take no action to ensure timely notification are guilty, in my view, of violating the Rules of Professional Conduct which demand candor to the Court and fairness to the plaintiffs and plaintiffs' counsel.").

At no time has USF's counsel ever advised Plaintiffs' counsel that it failed to collect hard copy documents from McDermott, or of McDermott's destruction of handwritten notes. Rather, USF has regularly taken the position with Plaintiffs and before this Court that it has exhaustively searched for and produced relevant information. Those representations were patently false. Accordingly, this Court should find that the documents were destroyed in bad faith.

**2.    Plaintiffs are severely prejudiced by the destruction of the contemporaneous handwritten notes.**

The destruction of McDermott's handwritten notes severely prejudices Plaintiffs' ability to prove their claims and rebut USF's anticipated defenses. This prejudice is pervasive because the destroyed documents bear directly on the central issues in this litigation: what USF knew about the Coach Defendants' misconduct, when USF acquired that knowledge, and what actions USF took (or failed to take) in response.

**a.    USF's Knowledge Is Central to Plaintiffs' Claims, USF's Defenses, and Plaintiffs' Tolling Arguments.**

USF's knowledge of the Coach Defendants' abuse is an essential element of Plaintiffs' Title

IX, negligent supervision and retention, gross negligence, and ratification claims—all of which require proof that USF had actual or constructive knowledge of the Coach Defendants' sexual misconduct and abuse. Fourth Am. Compl. ¶¶ 673-724, 739-752, 790-797 (Dkt. No. 456-1). For a "post-assault" claim under Title IX, Plaintiffs must demonstrate that an "appropriate person"—such as the Athletic Director—had "actual knowledge" of the harassment and responded with "deliberate indifference."[10] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642-43 (1999). Similarly, Plaintiffs' claims for negligent supervision and retention require proof that USF "knew or should have known" of the coaches' unfitness. Fourth Am. Compl. ¶¶ 707-724 (Dkt. No. 456-1). The Fourth Amended Complaint specifically alleges that McDermott had actual knowledge of the Coach Defendants' misconduct, failed to fulfill her duties as a Mandatory Reporter, and ignored requests from Plaintiffs' parents. *Id.* ¶¶ 218-219, 646-647. McDermott's contemporaneous notes would have documented what she knew, when she knew it, and what she did in response—evidence that is now irretrievably lost. Indeed, given McDermott's documented lack of objectivity towards the baseball program, and her pattern of failing to report misconduct by the Coach Defendants to her superiors, *see, e.g.*, Ex. C (Cross Dep.) at 229:9-14, 232:11-233:1, 234:14-237:14, 239:2-240:14, 252:11-253:22, 255:11-256:7, her notes were likely the only contemporaneous evidence reflecting USF's knowledge of, and response to, at least some of the Coach Defendants' misconduct.

The destroyed notes would also have been critical to proving USF's pattern of concealment and to rebutting USF's statute of limitations defense. As Athletic Director, McDermott deliberately retained direct oversight of the baseball program, explaining: "I kept baseball because I had been trying to watch them closely." Ex. A (McDermott Dep.) at 84:11-12. Her biweekly meetings with Giarratano, discussions with the Title IX office, and exit interviews with departing student-athletes would have documented USF's contemporaneous knowledge and its decisions in response. "Institutional notice and deliberate indifference are . . . central to USF's statute-of-limitations

---

[10] And, while "actual knowledge" of the Coach Defendants' abuse is not an element of Plaintiffs' "pre-assault"/official policy Title IX claim, it is relevant to USF's "policy of deliberate indifference to reports of sexual misconduct" more broadly. *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1099 (9th Cir. 2020).

defense." Discovery Order at 5 (Dkt. No. 439) (citing *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 702 (6th Cir. 2022)). Plaintiffs allege that USF actively concealed the Coach Defendants' abuse, tolling the limitations period. Fourth Am. Compl. ¶¶ 635-657 (Dkt. No. 456-1). McDermott's notes would have documented USF's knowledge of complaints and its decisions not to disclose that information—evidence essential to Plaintiffs' tolling arguments that USF has now destroyed. *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013).

### b. The Law Recognizes the Unique Prejudice from Destruction of Contemporaneous Records.

Courts recognize that the destruction of contemporaneous handwritten notes is particularly prejudicial because such notes are uniquely probative and irreplaceable. Destroyed documents that reflect business or personal judgments carry particular evidentiary weight that cannot be replicated through testimony or other secondary sources. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. at 214 ("Documents create a paper reality we call proof" the absence of which "may stymie the search for the truth"). Here, McDermott's notes were contemporaneous records of meetings, conversations, and observations made during the events at issue and with and about critical participants in those events. Unlike testimony that is reconstructed years later in the context of active litigation, McDermott's notes would have provided an unvarnished, real-time account of what occurred. The prejudice is compounded by the fact that, according to McDermott's own testimony, she cannot recall the contents of her notes. Ex. A (McDermott Dep.) at 44:1-13; 119:2-22; 206:15-207:17. It is further compounded given her documented pattern of failing to report what she knew to others. Ex. C (Cross Dep.) at 229:9-14, 232:11-233:1, 234:14-237:14, 239:2-240:14, 252:11-253:22, 255:11-256:7. Plaintiffs are thus left without either documentary evidence or reliable testimony about what USF knew. For these reasons, Plaintiffs have been severely prejudiced by the destruction of her contemporaneous handwritten notes, warranting the imposition of the most severe sanctions.

### 3. A lesser sanction is not appropriate given USF's litigation conduct.

A sanction lesser than judgment against USF is not appropriate here. Rejection of lesser sanctions is appropriate when (1) no lesser sanction could both punish Defendants and deter others

similarly tempted and (2) the facts show that deceptive conduct has occurred and will continue. *AdvantaCare Health Partners, LP v. Access IV*, No. 03-4496, 2004 U.S. Dist. LEXIS 16835, at *6 (N.D. Cal. Aug. 17, 2004) (citations omitted).

First, no lesser sanction could both punish USF and deter others similarly tempted. While evidentiary sanctions, like those proposed in the alternative below, may help correct the evidentiary gap, they would not address USF's institutional misconduct—its affirmative concealment of spoliation, its misleading representations to this Court, and its conscious decision not to collect documents from a custodian it knew was central to this case. Its perfunctory issuance of a litigation hold notice (that McDermott denied receiving under oath) is cold comfort. USF—including its counsel—had a duty actively to "oversee compliance and monitor the party's efforts to retain and produce the relevant documents." *Al Otro Lado*, 2021 U.S. Dist. LEXIS 30450, at *20-21 (internal citation omitted) (cleaned up). It failed to do so.

Second, USF's litigation conduct confirms that lesser sanctions will not achieve deterrence. USF failed to disclose its destruction of this key evidence while making numerous representations to the Court about its exhaustive document collection and review efforts. This Court entered numerous discovery orders that covered McDermott specifically and the period of time during which she worked in the Athletics Department more generally, ordering USF to produce her custodial file and the relevant documents for that period. Further, USF has refused to provide Plaintiffs with an unredacted copy of the litigation hold letter, which it claims contradicts McDermott's testimony that she was never told to preserve her documents. A party that conceals spoliation, misleads the Court about its discovery compliance, and withholds the very document that could illuminate what preservation instructions were given will not be deterred by anything less than judgment.

### C.   Alternatively, this Court should order sanctions in the form of an adverse inference instruction and a preclusion of evidence.

In the alternative, if this Court declines to enter judgment against USF, Plaintiffs respectfully request that the Court exercise its inherent authority—or its authority under Rule 37—to impose two related sanctions: (i) an adverse inference instruction requiring the jury to infer that

the destroyed evidence was unfavorable to USF; and (ii) an order precluding USF from arguing that it lacked knowledge of the Coach Defendants' abusive conduct during the period McDermott served in the Athletic Department. These sanctions are independently justified and, taken together, would partially remedy the severe prejudice Plaintiffs suffered while preserving their right to a fair trial on the merits.

### 1.    Plaintiffs satisfy the requirements for an adverse inference instruction with respect to the destroyed documents.

An adverse inference instruction is warranted under both the Court's inherent authority and Rule 37. "The spoliation of evidence germane 'to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.'" *Zubulake*, 229 F.R.D. at 430 (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). The doctrine rests on the commonsense premise that "a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document." *Keithley*, 2008 U.S. Dist. LEXIS 61741, at *8-10 (quoting *Sensonics v. Aerosonic Corp.*, 81 F.3d 1566, 1573 (Fed. Cir. 1996)).

The adverse inference instruction serves two distinct purposes. First, it serves an evidentiary function: it allows the trier of fact to draw a reasonable inference about the contents of the destroyed evidence based on the spoliating party's conduct. Second, it serves a prophylactic and punitive function: by permitting juries to draw adverse inferences, the instruction deters parties from destroying relevant evidence and punishes those who do. *See Keithley*, 2008 U.S. Dist. LEXIS 61741, at *8-10; *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (recognizing the dual functions of the spoliation inference).

An adverse inference can be either mandatory or permissive. *Apple Inc.*, 881 F. Supp. 2d at 1150. A mandatory inference requires only a showing of willfulness, recklessness, or negligence. *Id.*; *Victorino v. FCA US L*CC, No. 16cv1617-GPC(JLB), 2017 U.S. Dist. LEXIS 168390, at *30-31, *33 (S.D. Cal. 2017) (collecting authority and imposing mandatory adverse inference for negligent conduct). It requires that the jury presume the lost evidence was "both relevant and

favorable to the innocent party." *Apple Inc.*, 881 F. Supp. 2d at 1150. A permissive inference is "the least harsh" possible instruction, and "permits (but does not require)" the jury to draw the foregoing conclusions. *Id.* Neither inference requires a finding of bad faith or intentional conduct. *See id.*; *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368-69 & n.2 (9th Cir. 1992) (affirming exclusion of evidence for negligent destruction); *see also Glover*, 6 F.3d at 1329 ("[A] finding of 'bad faith' is not a prerequisite to this corrective procedure."). Rather, the Ninth Circuit has made clear that "[a] party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Kitsap Physicians Serv.*, 314 F.3d at 1001. The standard for a mandatory adverse inference is satisfied where, as here, the spoliating party destroyed documents after litigation was reasonably anticipated or already commenced.[11]

To establish entitlement to an adverse inference instruction, Plaintiffs must demonstrate: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with culpability amounting to at least gross negligence; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.)*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006); *IO Grp. Inc.*, 2011 U.S. Dist. LEXIS 120819, at *24. As demonstrated below, Plaintiffs have satisfied each element.

*First*, as set forth in Section IV.A, USF had a clear obligation to preserve McDermott's handwritten notes starting March 11, 2022 at the absolute latest. Yet USF failed to issue (or, at a minimum, oversee and ensure compliance with) a hold notice and then failed to collect McDermott's notes for more than a year before McDermott threw them in the trash. USF was specifically required to produce these documents under the Court's discovery orders, which mandated production of documents "back to 2012" for matters related to the baseball team. *See* Dkt. No. 269 at 5. McDermott's contemporaneous notes—spanning meetings, Title IX

---

[11] While ample evidence supports a finding that a mandatory inference is appropriate, at a minimum, the standard for a permissive inference has been satisfied.

communications, and exit interviews from the relevant period—fell squarely within the scope of these orders.

*Second*, as set forth in Section IV.B.1, the destruction of McDermott's notes reflects that USF acted in conscious disregard of its obligations, i.e., willfully. *See Apple Inc.*, 881 F. Supp. 2d at 1151 (finding willfulness and adopting adverse inference where defendant failed to issue adequate hold, failed to follow-up with employees about hold, and "failed to monitor its employees' preservation efforts to ensure its employees were at all compliant"). USF's failure to collect from a key custodian, its failure to verify hold compliance, its repeated representations to this Court about its compliance with its discovery obligations, and its concealment of the spoliation far exceed the threshold for a mandatory inference. *See Apple Inc.*, 881 F. Supp. 2d at 1151; *Victorino*, 2017 U.S. Dist. LEXIS 168390, at *33 (imposing mandatory inference for negligent conduct); Blumenthal Distrib., Inc. v. Herman Miller, Inc., No. ED CV 14-1926-JAK (SPx), 2016 U.S. Dist. LEXIS 184932, at *75-76 (C.D. Cal. 2016) (imposing mandatory inference for "gross negligence and a conscious disregard towards its obligations").

*Third*, as set forth in Section IV.B.2, the destroyed evidence is highly relevant. As this Court has already held, USF's knowledge of the Coach Defendants' conduct is central to Plaintiffs' Title IX, negligent supervision, gross negligence, and ratification claims, and to USF's statute of limitations defense. *See* Discovery Order at 5 (Dkt. No. 439). McDermott's contemporaneous notes would have documented what USF knew, when it knew it, and how it responded. And she had a pattern of failing to report to others what she knew about the Coach Defendants' misconduct. A reasonable trier of fact could readily conclude that these notes would have supported Plaintiffs' claims. The destruction of this evidence satisfies the requirements for an adverse inference.

**2.    A sanction precluding USF from arguing that it did not know of the Coach Defendants' abusive behavior during McDermott's tenure is warranted.**

In addition to the adverse inference instruction, Plaintiffs respectfully request that this Court preclude USF from arguing or introducing evidence that it lacked actual or constructive knowledge of the Coach Defendants' sexual misconduct and abusive behavior during McDermott's tenure. This preclusion would apply to all claims in the Fourth Amended Complaint that require proof of

institutional knowledge, including Plaintiffs' Title IX, negligent supervision, gross negligence, and ratification claims, as well as USF's statute of limitations defense and Plaintiffs' tolling arguments. This sanction, warranted under the Court's inherent authority, is a well-recognized remedy for spoliation. *See Unigard*, 982 F.2d at 368-69 (affirming exclusion of evidence as sanction for spoliation).

Courts routinely impose preclusion sanctions where, as here, evidence destruction has deprived the opposing party of the ability to prove a particular fact. *See, e.g. In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1078 (preclusion sanctions warranted due to deletion of relevant emails, which prejudiced plaintiffs' ability to prove their claims); *C.B. v. Moreno Valley Unified Sch. Dist.*, No. 5:21-cv-00194-JGB-SP, 2023 U.S. Dist. LEXIS 185824, at *28 (C.D. Cal. Sep. 18, 2023) (allowing preclusion sanctions where "Plaintiff has been deprived of [evidence] regarding matters that concern central issues in this case."). The rationale for such sanctions is straightforward: a party that destroys evidence bearing on a disputed issue should not be permitted to benefit from that destruction by contesting the very fact the destroyed evidence would have established.

Preclusion is particularly appropriate here because the destroyed evidence goes directly to the question of USF's knowledge during McDermott's tenure. McDermott served in the Athletics Department from 2016 to 2022, as baseball supervisor from 2017 to 2022, and as Athletic Director from 2019 to 2022—during which time numerous complaints were made about the Coach Defendants' conduct. McDermott's notes would have documented these communications and her responses—or lack thereof. Given her pattern of concealing what she knew about problems on the baseball team from her superiors, her notes were likely the only contemporaneous records of at least some misconduct. Having destroyed this evidence, USF should not be permitted to deny knowledge that the destroyed evidence would have established. This narrowly tailored sanction addresses the specific prejudice caused by the destruction of McDermott's notes while preserving USF's ability to litigate other issues in this case. It is precisely the type of proportionate, issue-specific remedy that courts have found appropriate in spoliation cases.

**3.    The Combined Sanctions Are Necessary to Remedy the Prejudice to Plaintiffs.**

Both the adverse inference instruction and the preclusion order are necessary to remedy the full scope of Plaintiffs' prejudice. The adverse inference instruction will have the jury draw reasonable conclusions about the contents of the destroyed evidence, while the preclusion order will prevent USF from denying the knowledge that the destroyed evidence would have established. Absent these sanctions, USF will have successfully manipulated the evidentiary record to its advantage—destroying evidence of its knowledge while retaining the ability to deny that knowledge at trial. Together, these sanctions serve the spoliation doctrine's core purposes: deterring evidence destruction, placing the risk of error on the spoliating party, and restoring Plaintiffs to the position they would have occupied had USF met its obligations. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010).

**D.    Monetary sanctions are warranted.**

Monetary sanctions in the form of attorneys' fees may be imposed where one party has wrongfully destroyed evidence. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1078. This Court possesses broad discretion to award attorneys' fees under both Rule 37(b)(2)(C) and its inherent authority. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107-08 (2017) (recognizing inherent power to assess attorney's fees when a party has "acted in bad faith" (internal quotation marks omitted)); *see also* Fed. R. Civ. P. 37(b)(2)(C) (court "must" award attorneys' fees and expenses unless the conduct "was substantially justified or other circumstances make an award of expenses unjust"). Courts routinely impose fee awards in spoliation cases to compensate the aggrieved party for the costs incurred in uncovering and litigating the misconduct. *Leon*, 464 F.3d at 961.

Here, Plaintiffs have been forced to expend significant resources investigating USF's spoliation, briefing the present motion, and litigating the numerous discovery disputes that arose from the many barriers USF erected to the production of McDermott's custodial files and the time period in which she served in the Athletic Department. These disputes included extensive meet-and-confer efforts regarding the identification of key custodians, protracted negotiations over the

timeline for document production, and multiple court filings addressing the appropriate lookback period—all of which we now know were complicated and prolonged by USF's failure to disclose that McDermott's contemporaneous notes had been destroyed. An award of fees here would place the cost of USF's misconduct where it belongs—on USF.

Accordingly, Plaintiffs seek their attorneys' fees from USF associated with (i) bringing this motion; and (ii) all discovery disputes seeking to compel documents of which McDermott's custodial files were a part, including the identification of key custodians, the timeline for production of those key custodians, and the lookback period. This request is appropriately tailored to compensate Plaintiffs only for those costs directly attributable to USF's destruction of evidence and its litigation consequences.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant their motion for sanctions and enter judgment against USF. Alternatively, Plaintiffs respectfully request that this Court (1) grant their motion for sanctions, (2) order a mandatory adverse inference instruction to be submitted to the jury, (3) preclude USF from arguing or introducing evidence that it lacked knowledge of the Coach Defendants' sexual misconduct and abusive behavior alleged by Plaintiffs during the period Joan McDermott was a USF employee, and (4) award attorneys' fees to Plaintiffs' counsel associated with (i) bringing this motion and (ii) all discovery disputes seeking to compel documents of which McDermott's custodial files were a part, including the identification of key custodians, the timeline for production of those key custodians, and the lookback period.

Dated: May 11, 2026                Respectfully submitted,


By:      */s/Elizabeth A. Fegan*

Elizabeth A. Fegan (Cal. Bar #355906)
beth@feganscott.com
FEGAN SCOTT LLC
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100

Michael von Klemperer (admitted *pro hac vice*)
mike@feganscott.com
FEGAN SCOTT LLC
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Telephone: (202) 921-0002
Facsimile: (312) 264-0100

Georgia Jaye Zacest (admitted *pro hac vice*)
Georgia@fegamscott.com
FEGAN SCOTT LLC
708 Main, 10th Floor
Houston, TX 77002
Telephone: (830) 212-4042
Facsimile: (312) 264-0100

Jonathan Selbin (Cal. Bar No. 170222)
jselbin@lchb.com
Michelle Lamy (Cal. Bar No. 308174)
mlamy@lchb.com
Sara Evall (Cal. Bar No. 364940)
sevall@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Jessica Moldovan (admitted *pro hac vice*)
jmoldovan@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN
250 Hudson Street
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Christopher E. Coleman (admitted *pro hac vice*)
ccoleman@lchb.com
LIEFF CABRASER HEIMANN

PLAINTIFFS' MOTION FOR SANCTIONS
                CASE NO. 3:22-CV-01559-LB

& BERNSTEIN, LLP
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

*Attorneys for Plaintiffs John Does 1-6 and 8-19*

PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB