(Counsel for Defendants Listed on Signature Page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

|  |  |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, JOHN DOE 12, JOHN DOE 13, JOHN DOE 14, JOHN DOE 15, JOHN DOE 16, JOHN DOE 17, JOHN DOE 18, and JOHN DOE 19,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNIVERSITY OF SAN FRANCISCO, ANTHONY N. (AKA NINO) GIARRATANO, and TROY NAKAMURA,<br><br>Defendants. | Case No. 3:22-cv-01559-LB<br><br>**DEFENDANTS UNIVERSITY OF SAN FRANCISCO, ANTHONY GIARRATANO, AND TROY NAKAMURA'S JOINT MOTION FOR SANCTIONS AGAINST PLAINTIFFS JOHN DOES 1, 2, 3, 11, 15, 16, AND 17 FOR FALSE INTERROGATORY STATEMENTS**<br><br>Hearing: July 23, 2026<br>Time: 9:30 a.m. PST<br>Courtroom: B<br><br>Judge: Hon. Laurel Beeler<br>Trial Date: October 12, 2027 |

# TABLE OF CONTENTS

I.    LEGAL STANDARD ................................................................................................. 4

II.   FALSE STATEMENTS BY PLAINTIFFS ............................................................... 5

   A.  Doe 15 Falsely Claimed to Have Witnessed Nakamura's Alleged Nudity ....................... 5

   B.  Doe 15 Misrepresented Occurrences of Sexual Comments ................................................ 6

   C.  Doe 15 Falsely Claimed That Giarratano Was Complicit ................................................. 7

   D.  Doe 15 Falsely Stated That He "Personally Witnessed" Misconduct .............................. 8

   E.  Doe 17 Falsified Locations of Alleged Misconduct .......................................................... 8

   F.  Doe 17 Falsely Stated That Giarratano Made Sexual Comments ...................................... 9

   G.  Doe 17's False Retaliation Claim ...................................................................................... 10

   H.  Doe 16 Falsely Stated That Giarratano Laughed at Inappropriate Comments ................ 11

   I.   Doe 16 Admitted He Was Not "Forced" to Renounce His Scholarship ........................... 11

   J.   Doe 11 Falsely Attributed Misconduct to Coach Nakamura ........................................... 12

   K.  Doe 11 Falsely Stated the Reason for Seeing a USF Therapist ....................................... 13

   L.  Doe 3 Falsely Attributed Misconduct to Coach Nakamura ............................................. 13

   M.  Doe 3's False Statements About Drug Use Prior to the USF Drug Test .......................... 14

   N.  Doe 3's False Statements About Reporting Coach Abuse ................................................ 14

   O.  Doe 1's False Interrogatory Responses ............................................................................ 15

   P.  Does 1, 2, 3, And 11 — False "Cover-Up" Responses ..................................................... 16

III.  PLAINTIFFS' COUNSEL IMPROPERLY COACHED THE WITNESSES ..................... 19

   A.  Plaintiffs' Counsel Improperly Coached Doe 17 at Deposition ....................................... 19

   B.  Plaintiffs' Counsel Similarly Coached John Doe 16 to Change His Testimony ............. 20

   C.  Plaintiffs' Counsel Similarly Coached Doe 11 to Change His Testimony ...................... 21

IV.  SANCTIONS ARE WARRANTED FOR PLAINTIFFS' CONDUCT .............................. 22

   A.  Deposition Coaching ......................................................................................................... 22

B.  False Statements...................................................................................................... 23

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Better Care Plastic Tech. Co. v. Gredale, LLC*,
   No. 5:21-cv-216-JWH (SP), 2022 U.S. Dist. LEXIS 102416 (C.D. Cal. Mar. 4, 2022) .......... 25

*Combs v. Rockwell Int'l Corp.*,
   927 F.2d 486 (9th Cir. 1991) ..................................................................................... 4, 5

*ConsumerDirect, Inc. v. Pentius, LLC*,
   No. 8:21-cv-01968-JVS (ADS), 2023 U.S. Dist. LEXIS 176092 (C.D. Cal. Sept. 21, 2023) .. 4, 5, 24, 25

*Cottonwood Env't L. Ctr. v. Big Sky Water Boyne USA, Inc.*,
   No. 2:20-CV-00028-BMM, 2025 U.S. Dist. LEXIS 131374 (D. Mont. July 10, 2025) .......... 24

*Da-Silva v. Smith's Food & Drug Ctrs., Inc.*,
   No. 2:12-cv-00595-GMN-VCF, 2013 U.S. Dist. LEXIS 81217 (D. Nev. Feb. 6, 2013) ........... 3

*Englebrick v. Worthington Indus.*,
   944 F. Supp. 2d 899 (C.D. Cal. 2013) ....................................................... 3, 4, 23, 24

*Hambleton Bros. Lumber Co. v. Balkin Enters.*,
   397 F.3d 1217 (9th Cir. 2005) ...................................................................................... 21

*In re Mosaic LLM Litig.*,
   No. 24-cv-01451-CRB (LJC), 2025 U.S. Dist. LEXIS 232088 (N.D. Cal. Nov. 25, 2025) ...... 5

*In re Stratosphere Corp. Sec. Litig.*,
   182 F.R.D. 614 (D. Nev. 1998) ..................................................................................... 23

*Klein v. King*,
   132 F.R.D. 525 (N.D. Cal. 1990) .............................................................................. 5, 23

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ......................................................................................... 4

*Medicinova, Inc. v. Genzyme Corp.*,
   No. 14-CV-2513 JLS (KSC), 2021 U.S. Dist. LEXIS 135060 (S.D. Cal. July 20, 2021).... 5, 23

*Say It Visually, Inc. v. Real Est. Educ. Co. Inc.*,

    No. 23 CV 3424, 2025 U.S. Dist. LEXIS 57316 (N.D. Ill. Mar. 27, 2025) .............................. 24

*Sunrider Corp. v. Bountiful Biotech Corp.*,

    No. SACV 08-1339 DOC (AJWx), 2010 U.S. Dist. LEXIS 117347 (C.D. Cal. Oct. 8, 2010).. 4

*Taylor v. City of Chicago*,

    2019 U.S. Dist. LEXIS 161472 (N.D. Ill. Sept. 23, 2019) ....................................................... 25

*ViaSat, Inc. v. Acacia Communs., Inc.*,

    No. 16cv463 BEN (JMA), 2018 U.S. Dist. LEXIS 25357 (S.D. Cal. Feb. 15, 2018).............. 23

*Wyle v. R.J. Reynolds Indus., Inc.*,

    709 F.2d 585 (9th Cir. 1983) ................................................................................................. 4

**Rules**

9th Cir. Model Civ. Jury Instr. 1.14 (Mar. 2026)............................................................................. 4

Fed. R. Civ. P. 37(a)(4)...................................................................................................................... 4

Fed. R. Civ. P. 37(d)(1)(A)(ii) ......................................................................................................... 4

**TO ALL PARTIES AND THEIR ATTONREYS OF RECORD:**

**PLEASE TAKE NOTICE** that under both the Court's inherent authority and Rule 37 of the Federal Rules of Civil Procedure, Defendants hereby move for sanctions against Plaintiffs 1, 2, 3 11, 15, 16 and 17 for providing false interrogatory answers. Defendants also seek sanctions for improper coaching of Does 11, 16 and 17 during their depositions. This motion is to be heard before the Honorable Laurel Beeler in Courtroom B – 15th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, on July 23, 2026 at 9:30 a.m., or as soon thereafter as this matter may be heard.

This motion is supported by this Notice of Motion and the Memorandum of Points and Authorities below—including the attachments thereto, the pleadings and papers filed in this action, and such further evidence or argument as may be presented at or prior to the hearing on this matter.

Dated: June 19, 2026

By: *    /s/ Jonathan M. Baum    *

Defendants jointly seek an order imposing sanctions on Plaintiffs Does 1, 2, 3 11, 15, 16 and 17 for submitting false information in their verified interrogatory responses. Defendants also seek sanctions against Does 11, 16 and 17 for giving false answers in their depositions, as evidenced by them changing the substance of their testimony after improper "coaching" during breaks in their depositions.[1]

Plaintiffs' Complaint describes a years-long sexual abuse scandal they claim USF concealed. However, the record—now built from over 248,000 pages of documents, numerous sets of written discovery, and more than twenty-five depositions, including the sworn testimony of every relevant senior USF administrator, shows a university that had rigorous systems in place to address sexual misconduct and acted within hours after complaints were made.

In order to gain media attention, Plaintiffs' counsel filed a sensationalized Complaint attempting to compare this case to that of Jerry Sandusky—the serial child rapist convicted of more than 40 counts of sex crimes against young boys. But what has emerged from discovery is something far less extreme. There are no allegations of sexual touching of any kind. All of the athletes were adults. Coach Nakamura made some improper jokes (which other teammates did not find problematic) and exposed himself briefly one time during a pre-practice skit with most of the Plaintiffs over 90 feet away. Coach Giarratano did not report, and USF, once it learned of these allegations, acted quickly and appropriately. Doe 3 Tr. [6/25/2024] at 174; Doe 1 Tr. at 124–125. Discovery has also shown that the Plaintiffs were not upset about alleged "sexual misconduct" but instead, many were angry because they were not given playing time and were cut from the team for poor performance. Many more did not believe that their experiences constituted sexual misconduct at all and some respected the Coaches. Instead of acknowledging that many of their clients did not experience the type of sexual misconduct that might support liability under Title IX, Plaintiffs and their counsel have tried to force the issue by signing and serving false or materially misleading interrogatory responses alleging misconduct that Plaintiffs have been forced to admit never occurred.

---

[1] Defendants reserve the right to seek similar relief as to all other Plaintiffs, including those not yet deposed—particularly if their testimony also contradicts their interrogatory responses.

When tested under oath at deposition, Plaintiffs' false narrative collapsed. Plaintiff after Plaintiff recanted, qualified, or outright contradicted the very statements they had certified in written discovery responses as "true and correct" under penalty of perjury. The discrepancies are not isolated failures of memory or differences of nuance. They are wholesale fabrications of events, inflation of single incidents into habitual patterns, claims of personally witnessed conduct that Plaintiffs never observed, and the collective attribution of misconduct to Defendants against whom the Plaintiffs have no personal complaint. What emerges is unmistakable: Plaintiffs' counsel took a collection of disparate, minor incidents and experiences and twisted them together in an attempt to allege a unified theory of pervasive sexual misconduct that controverts the facts.

This practice is corroborated by the evidence. Doe 7, who has since fired Plaintiffs' counsel and recanted his allegations, declared under penalty of perjury that he "came to see that [his] former lawyers wanted this case to be about 'sexual abuse,' even though that isn't what [he] experienced," and that "they pushed the lawsuit to focus on alleged sexual misconduct by the coaches." Decl. of Plaintiff Doe 7 at 4 ¶ 17, ECF No. 282-22 (Ex. 1). In addition, 21 former players—many of whom were the Plaintiffs' teammates—submitted sworn declarations disputing Plaintiffs' allegations. ECF No. 282-1 (Ex. 2) ("I am shocked and disturbed by Plaintiffs' allegations. I find them remarkable and unbelievable.").

More troubling, evidence shows that this dishonest effort to characterize the coaches' conduct as sexual or discriminatory was the plan from the start. At the same time Doe 1's mother made the initial report of misconduct to USF, she emailed with Doe 3's mother about ██████████████████████████████████████ PLS-USF-0093500 (Ex. 3). Doe 1's mother later coached her son after retaining counsel to ████ ████████████████ texted him a standalone message, ████████████ and said, ████ ████████████████████ PLS-USF-0062612 (Ex. 4). These contemporaneous communications, as well as Doe 7's admission, shed light on the process that produced the false interrogatory responses at issue in this motion: counsel crafting inflammatory allegations that Plaintiffs then signed under penalty of perjury, only to have those allegations exposed as false when questioned under oath.

The pattern is systemic. Eighteen Doe Plaintiffs served interrogatory responses crafted to maximize the inflammatory nature of their allegations. [2] Over the course of depositions spanning more than a year, Defendants painstakingly tested these responses witness by witness, at enormous expense of time and resources. In deposition after deposition, the lawyer-led suggestions became clear: Plaintiffs could not support the allegations they had sworn to. Plaintiffs also contradicted themselves at their own depositions after consulting with counsel about their testimony on breaks.

Defendants sought to address this issue without the Court's intervention through letter correspondence and a meet and confer. *See* Attachment 1, Smith Decl. Yet despite Defendants' May 7, 2026, letter expressly identifying many of these discrepancies and requesting prompt supplementation of any and all false statements, Plaintiffs' counsel responded on May 14, 2026, asserting incredibly that there are no inaccuracies or discrepancies between their clients' interrogatory responses and their deposition testimony and refused to correct or supplement any discovery responses. Three additional Plaintiff depositions and review of prior transcripts then uncovered how pervasive and material Plaintiffs' false statements are, and dictated that amendment would no longer remove the harm. Court intervention is therefore necessary. These false statements need to end, and Plaintiffs' counsel refuse to police themselves.

Plaintiffs should not be allowed to serve false, inflammatory interrogatory responses. As courts "have long recognized[,] . . . knowingly providing incomplete and/or misleading interrogatory answers constitutes perjury and, in effect, constitutes fraud on the court." *Da-Silva v. Smith's Food & Drug Ctrs., Inc.*, No. 2:12-cv-00595-GMN-VCF, 2013 U.S. Dist. LEXIS 81217, at *4 (D. Nev. Feb. 6, 2013). "Providing false or incomplete information during a deposition or in a response to a discovery request constitutes the sort of willfulness, bad faith, or fault required for dismissal" of the entire action. *Englebrick v. Worthington Indus.*, 944 F. Supp. 2d 899, 909 (C.D. Cal. 2013).

---

[2] Plaintiffs' strategy seems to be to bury their extremely limited personal knowledge in lengthy (800 pages just in response to Giarratano), non-responsive narratives based on hearsay. *See* Giarratano's motion to compel further answers to interrogatories from Does 1-3 (ECF 259). It has been a battle simply to make Plaintiffs admit what they do not personally know.

While Plaintiffs' false statements support imposing the severest sanction—dismissal of their claims—Defendants request less drastic relief: that the Court issue an Order finding that these Plaintiffs have deliberately testified untruthfully about key details and giving a jury instruction stating that the jury may accordingly choose not to believe anything they have said or will say at trial. Such an order is consistent with 9th Cir. Model Civ. Jury Instr. 1.14 (Mar. 2026) ("if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said."). Defendants also request reasonable attorneys' fees incurred to bring this motion.

## I.      LEGAL STANDARD

*False Interrogatories*. Rule 37 makes clear that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Such a failure justifies an award of sanctions. Fed. R. Civ. P. 37(d)(1)(A)(ii). Moreover, the Court has the inherent power to impose sanctions, including terminating sanctions, when a plaintiff has "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" and "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citation omitted); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). The Court may impose sanctions for "bad faith displayed either toward an adversary or the court." *Sunrider Corp. v. Bountiful Biotech Corp.*, No. SACV 08-1339 DOC (AJWx), 2010 U.S. Dist. LEXIS 117347, at *80 (C.D. Cal. Oct. 8, 2010). Bad faith encompasses "reckless misstatements coupled with . . . [an] improper purpose." *Id*. It also specifically encompasses "[p]roviding false or incomplete information . . . in a response to a discovery request." *Englebrick*, 944 F. Supp. 2d at 909; *see Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991).

Courts may "levy an assortment of sanctions under their inherent power" for bad faith, "including monetary awards, attorneys' fees, adverse inference instructions, and even dismissal of claims." *ConsumerDirect, Inc. v. Pentius, LLC*, No. 8:21-cv-01968-JVS (ADS), 2023 U.S. Dist. LEXIS 176092, at *20 (C.D. Cal. Sept. 21, 2023) (citation omitted). An appropriate instruction is one telling jurors they may weigh bad-faith conduct in "evaluating [witnesses']

credibility" or "disregard [their] testimony . . . in its entirety." *Id.* at *26–27.

*False Deposition Testimony.* "It is improper for a witness and her attorney to discuss the substance of her testimony during breaks in a deposition, except where necessary to address matters of privilege." *In re Mosaic LLM Litig.*, No. 24-cv-01451-CRB (LJC), 2025 U.S. Dist. LEXIS 232088, at *5 (N.D. Cal. Nov. 25, 2025) (citation omitted). Where, as here, a witness provides "a sharp contrast between responses before and after a break in testimony," this "can support an inference that the witness was improperly coached." *Medicinova, Inc. v. Genzyme Corp.*, No. 14-CV-2513 JLS (KSC), 2021 U.S. Dist. LEXIS 135060, at *19 (S.D. Cal. July 20, 2021). The Northern District of California has warned that "abuses of the deposition process" may result in "severe sanctions" that "fully compensate the abused party and that deter further misconduct." *Klein v. King*, 132 F.R.D. 525, 531 (N.D. Cal. 1990); *Combs*, 927 F.2d at 488 ("Dismissal is an appropriate sanction for falsifying a deposition.").

## II.    FALSE STATEMENTS BY PLAINTIFFS[3]

### A. Doe 15 Falsely Claimed to Have Witnessed Nakamura's Alleged Nudity

Giarratano's Interrogatories Nos. 1 and 3 asked Doe 15 to identify acts he "**personally witnessed.**" In response to each, he stated that he "personally witnessed or experienced":

██████████████████████

Doe 15 Resp. to Giarratano Interrog. Nos. 1, 3 (Ex. 7); *see also id.* at No. 5 (stating it was an act he "personally witnessed or experienced").

Similarly, USF's Special Interrogatory No. 4 asked Doe 15 to state facts regarding occasions Doe 15 "suffered (or [was] subjected to) alleged misconduct," to which Doe 15 responded under penalty of perjury:

██████████████████████

---

[3] Exhibits 5 and 6 chart Plaintiffs' contradictions between interrogatories and deposition testimony, and deposition answers later changed after breaks where they spoke with counsel.
[4] Nakamura denies this ever happened and, despite this allegedly taking place on the baseball field with others around, Doe 2 is the only Plaintiff who says he ██████████████ .

Doe 15 Resp. to USF Interrog. No. 4 (Ex. 8). But at deposition, Doe 15 unequivocally admitted that he did not personally witness the incident: ██████████████ ████████████████████ Doe 15 Tr. at 94:24–95:12 (Ex. 9). Plaintiff further testified:

██████████████████████████████

Doe 15 further confirmed ████████████████████ ████████████████████ *Id.* at 94:24–95:12. When confronted with his interrogatory response, Doe 15 stated: ████████████████ ██ *Id.* at 276:2–10.

Doe 15's interrogatory answers are false. His answers repeatedly state ████ ████████████████. This is a serious accusation. But, in deposition, Doe 15 ████████████████████ ████████████ In meet and confer, Plaintiffs' counsel would not admit to falsity, instead trying to sidestep this inconsistency by arguing ████████████████████ ████████████ They attempt to rewrite the interrogatory, which was drafted clearly and deliberately to ferret out the responding Plaintiff's personal knowledge.[5] Even if Doe 15 was confused about this, his counsel was not.

**B. Doe 15 Misrepresented Occurrences of Sexual Comments**

Doe 15 verified the following interrogatory response under penalty of perjury:

██████████████████████████████

Ex. 8 at No. 4 (emphasis added). But at deposition, Doe 15 stated:

██████████████████████████████



---

[5] Giarratano's motion to compel details why this is such a problem in this case. *See* ECF 259.



██████████████████████████████████████

Doe 15 then admitted, ████████████████████████████████ *Id.* at 273:20–21. Indeed, he ██████████████████████████████ ████████████████████████████████████████ ████████████████████████

When asked further, he could not even recall ██████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ (emphasis added).

He also tried to point to ███████████████████████████ ██████ *Id.* at 281:17–22. When confronted with his sworn response, Doe 15 acknowledged: ███████████████████████████████████████ ███████████████████████████████████████ *Id.* at 277:25–278:19.

Doe 15's interrogatory responses affirmatively state that ███████████ █████████████████████████████████████ At deposition, Doe 15 admitted █████████████████████████ Yet his interrogatory response represents that he "suffered (or [was] subject to)" the comments. This is not an incomplete response—it is a false, affirmatively misleading statement that fabricates a pattern of pervasive, personally-experienced sexual remarks where none existed.

### C. Doe 15 Falsely Claimed That Giarratano Was Complicit

Doe 15's response to USF's Special Interrogatory No. 4 stated:

██████████████████████████████████████ ██████████████████████████████

Ex. 8 at No. 4. But because Doe 15 admitted ███████████████████ ███████████████████████ he necessarily could not have personal

---

7

DEFENDANTS' MOTION FOR SANCTIONS

knowledge that ███████████████████████████. Ex. 9 at 271:7–13. The assertion is stated as a fact within the sworn response—not as a belief or assumption. This misleading assertion was designed to establish Giarratano's knowledge of and complicity in Nakamura's alleged sexual misconduct—a critical element of the negligent supervision claim.

**D. Doe 15 Falsely Stated That He "Personally Witnessed" Misconduct**

Giarratano interrogatories Nos. 1 and 3 asked Doe 15 to identify each act or omission by Giarratano that Doe 15 "personally witnessed." In each of his responses, ██████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████ Ex. 7 at Nos. 1, 3; *see also id.* at No. 5. But at deposition, the following was revealed:

████████████████████████████████████████ ████████████████████ Ex. 9 at 131:21–23. ████████████████████████ *Id.* at 271:10– 13.

When asked ████████████████████████ Doe 15 conceded: ████████████ *Id.* at 271:4–6.

The repetition of these false statements across three separate interrogatory responses demonstrates that this was not an isolated error but a deliberate pattern of misrepresentation. Each response was verified under penalty of perjury and formed the basis for Doe 15's claims. The false inflation of conduct "personally witnessed" was plainly designed to bolster his individual claims with inadmissible hearsay by making it appear that he was a direct percipient witness to alleged sexual misconduct when he was not.

**E. Doe 17 Falsified Locations of Alleged Misconduct**

In his interrogatory responses, Doe 17 repeatedly verified that misconduct occurred:

████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████

Doe 17 Resp. to USF Interrog. Nos. 1, 3, 5 (Ex. 10). At deposition, Doe 17 admitted under oath

that ███████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ Regarding ███████ ████ ███████████████████████████████████████████████

Doe 17 Tr. at 291:5–9 (Ex. 11).

Doe 17 further testified that ████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████. *Id.* at 149:2–152:18, 256:25–257:9. But Doe 17 confirmed: ████████████████████████████████████████ *Id.* at 289:7–8, 289:12–290:1. In fact, ██████████████████████████████ ████████████████████████████████████████████

███ Doe 17 Dep. Ex. 639 (Ex. 12).

Regarding the ██████████ ████████████████████████████████████████████ Ex. 11 at 291:13–14.

Regarding ██████████: ████████████████████████████████████ ███ *Id.* at 291:17–19.

In fact, Doe 17 ████████████████████████ *Id.* at 287:5–8.

Doe 17's interrogatory responses affirmatively state that ████████████ ████████████████████████████████ Doe 17's own testimony and all contemporaneous records establish that he ████████████████████████ ███████████████████████████████████████████ *Id.* at 291:8–19. Doe 17 fabricated locations listed in verified discovery responses to inflate the scope and pervasiveness of the alleged misconduct.

**F.  Doe 17 Falsely Stated That Giarratano Made Sexual Comments**

Doe 17's interrogatory responses consistently state: ████████████████████ ███████████████████████████████████████████████████

Ex. 10 at Nos. 1, 3, 5 (emphasis added). At deposition, Doe 17 could not confirm these inflammatory allegations:

████████████████████████████████████████████████ Ex. 11 at 300:2–4.

He then attempted to clarify that he ████████████████████████████████████ ████████████████████████████████ but still could not recall specifically: ████ ████████████████████████████ Id. at 337:1–338:23. The use of the phrase ████████████████ in the interrogatory response is particularly egregious, as it conveys certainty about a factual assertion that Doe 17 could not support under oath. This misattribution materially strengthens the claims against Giarratano by making him a direct participant in sexual misconduct rather than a passive bystander.

**G. Doe 17's False Retaliation Claim**

Doe 17 verified in his interrogatory response that:

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████

Doe 17 Resp. to USF Interrog. No. 4 (Ex. 13) (emphasis added). At deposition, however, Doe 17 was unable to identify ██████████████████████████████████████ ████████

████████████████████████████████████████████████████████
████████████ Ex. 11 at 377:7–9. ████████████████████████
████████████████ Id. at 376:25–377:3. ████████████████████
████████████ Id. at 377:4–6.

Doe 17's interrogatory response affirmatively characterizes the alleged abuse as being ████ ████████████████████████████████ Ex. 13 at No. 4. Under oath, Doe 17 admitted he ████████████████████████████████████████████████ ████████████████████████████ and ██████████████████ Ex. 11 at 376:25–377:15. A retaliation claim requires some protected activity or opposition to trigger the

alleged retaliatory response. Doe 17's own testimony establishes there was none. This is an affirmatively false characterization of events.

**H. Doe 16 Falsely Stated That Giarratano Laughed at Inappropriate Comments**

Doe 16's interrogatory response states: ███████████████████████████ ██████████████████████ Doe 16 Resp. to USF Interrog. No. 4 (Ex. 14) (emphasis added). At deposition when questioned on this response, however, Doe 16 could not recall ██ ███████████████████████████████ ██████████████████████████████████ ████████████████████████████████████ Doe 16 Tr. at 274:6–25 (Ex. 15). He also could not confirm if ███████████████████████████████ but did generally recall that ███████████████████ *Id.* at 270:2–17, 327:6–11. Counsel pressed: ███████████████████████ ███████████████████ Doe 16 responded: ██████████████████ *Id.* at 273:13–18; *see also id.* at 272:1–274:25.

This sworn interrogatory statement is not true and is misleading. The interrogatory response affirmatively stated that Giarratano ████████████████████████ ███████ implying knowledge and acquiescence in sexual misconduct on multiple occasions. At deposition, Doe 16 could not recall a ██████████████████

**I. Doe 16 Admitted He Was Not "Forced" to Renounce His Scholarship**

Doe 16 verified in his interrogatory response that: ███████████████████ ████████████████████████████████████████ Ex. 14 at Nos. 4, 7. But in reality, four-year scholarships are guaranteed at USF regardless of whether a player is cut or plays on the team. At his deposition, Doe 16 acknowledged this. Ex. 15 at 69:7–13 (█ ████████████████████████████████████████ ██████████████████████████████████████ ). When confronted directly— ████████████████████████████ ██████████████—Doe 16's response was: ██████ *Id.* at 146:20–147:7.

The use of ███████ in the interrogatory response was materially misleading. This claim is central to Doe 16's damages theory, which includes ███████████████████.

### J. Doe 11 Falsely Attributed Misconduct to Coach Nakamura

USF's Special Interrogatory No. 6 asked Doe 11 to state all facts regarding his suffering or being subjected to alleged misconduct while at USF. Doe 11 responded under penalty of perjury that ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ███████████████████████ Doe 11 Resp. to USF Interrog. No. 6 (Ex. 16) (emphasis added).

However, at deposition, Doe 11 made clear that he didn't see Nakamura ██████████ ██████████:

████████████████████████████████████████
Doe 11 Tr. at 138:9–139:17 (Ex. 17).
Id. at 157:6–11.

The interrogatory responses use ████████████ collectively in █████████████ ██████████████████████████████████ ███████—implying both coaches engaged in the same categories of abusive behavior. At deposition, Doe 11 could not recall ████████████████████████████ and admitted ████████████████████████████████████ █████████████ Doe 11's allegations are the sole reason discovery

has extended back decades to 1999, at great expense to USF.

### K. Doe 11 Falsely Stated the Reason for Seeing a USF Therapist

Doe 11 listed ███████████████████████████████████████████████ ████████████████████████ Ex. 16 at No. 1. At deposition, however, Doe 11 revealed an entirely different, unrelated, reason for ████████████████████

███████████████████████████████████████████████████

Ex. 17 at 140:6–19.

*Id.* at 254:1–4.

The interrogatory response is materially misleading and constitutes a false statement by omission. Doe 11's deposition reveals: (1) the therapy was precipitated by ████████████ ███████████████████████████████████ (2) the therapy sessions ████████ ███████████████████████████████████████████████ ████████████████████████████

### L. Doe 3 Falsely Attributed Misconduct to Coach Nakamura

Across all three sets of interrogatory responses, Doe 3 consistently ████████████ ████████████████████████████, creating the unmistakable impression that both Coach Giarratano and Coach Nakamura engaged in the same categories of abusive conduct. For example, Doe 3 stated in his interrogatory response: ██████████████ ██████████████████████████████████████████████

Doe 3 Resp. to USF Interrog. No. 6 (Ex. 18) (emphasis added). But at deposition, he testified:

███████████████████████████████████████████████████

█████████████████████████████████████████

Doe 3 Tr. [06/24/2024] at 136:3–137:11 (Ex. 19). The use of ████████████ in the verified interrogatory responses was a deliberate drafting strategy designed to inflate the scope of alleged misconduct.

**M. Doe 3's False Statements About Drug Use Prior to the USF Drug Test**

Doe 3 verified the following response to USF Interrogatory No. 6, and a similar response to Giarratano's Interrogatory No. 1:

███████████████████████████████████████████

Ex. 18 at No. 6 (emphasis added). At deposition, however, Doe 3 testified that he ████████ ██████████████ and that he ██████████████████ ██████████ Ex. 19 at 252:14–253:16. He even attempted to ████████████ ████████████████████████ and ████████████████████████ Doe 3 Tr. [6/25/2024] at 58:18–59:13 (Ex. 20); Doe 3 Dep. Ex. 294 (Ex. 21); Doe 3 Mother Tr. at 92:1–18 (Ex. 22); PLS-USF-0058591 (Ex. 23); PLS-USF-0058639 at -0058643 (Ex. 24). The unequivocal sworn statement that ████████████████████ is directly contradicted by Doe 3 himself, his own text messages, and his mother's testimony. Ex. 18 at No. 6.

**N. Doe 3's False Statements About Reporting Coach Abuse**

Doe 3's response to USF Interrogatory No. 20 stated: ████████████████ ███████████████████████████████████████████

Doe 3 Resp. to USF Interrog. No. 20 (Ex. 25). But at deposition, he made clear that he did not ███████████████████████████████████

███████████████████████████████████████████ Ex. 19 at 153:4–22.

What Doe 3 actually shared was far more limited: ███████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* at 151:20–23. The use of ██████ ████████████ manufactured a misleading narrative that Doe 3 had ████████████ ████████████████████████████████████████████████████████ ████████████████ —when in reality, ██████████████████████████ █

### O. Doe 1's False Interrogatory Responses

Coach Giarratano's interrogatories expressly demanded only what Doe 1 "personally witnessed," which Doe 1 reframed as ██████████████████████ and stated: ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ Doe 1 Suppl. Resp. to Giarratano Interrog. Nos. 1, 3, 5 (Ex. 26) (emphasis added). He further stated that ████████████ ████████████████████████ *Id.* However, at deposition, Doe 1 testified:

████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ Doe 1 Tr. [12/12/2024] at 108:23–110:8 (Ex. 27).

████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████ *See id.* at 110:8. The verified response converts hearsay about ██████ ████████████████████ into claimed eyewitness testimony in response to a question

limited to events Doe 1 "personally witnessed."[6]

### P. Does 1, 2, 3, And 11 — False "Cover-Up" Responses

A separate category of false and misleading interrogatory responses cuts across Does 1, 2, 3, and 11. Each of these Plaintiffs served verified responses to USF Special Interrogatories (Set Two) Nos. 21–24 containing extensive, nearly identical ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ These responses cite specific deposition testimony from other witnesses in discovery, as well as dozens of specific Bates-numbered documents. They narrate detailed allegations of numerous other Plaintiffs. These interrogatories were designed to learn

_____

[6] The record contains additional mischaracterized and exaggerated interrogatory responses from Does 11, 16, and 17. Doe 17's verified interrogatory responses consistently state that ████████████ ███████████████████████████████████████████████; however, Plaintiff ██████████████████████████████████████████████. Ex. 10 at Nos. 1, 3, 5; Ex. 11 at 254:21, 297:18–298:3, 307:16– 308:14. Doe 17's interrogatory responses also state that ████████████████████████████ ████████████████████████████████████████████ after which Doe 17 ████████████ ████████████████████████████ Ex. 13 at No. 4. In his deposition, Doe 17 testified that Giarratano ████████████████████████████████████████████████████████████ significantly reducing the severity of Giarratano's behavior. Ex. 11 at 246:16–18, 172:7–10. Further, Doe 17's interrogatory responses state that ██████████████ ████████████████████████████████████████████████████████ but at deposition, Doe 17 testified that ██████████████████████████████████████████████████████████████ ███████████████████████████████████████ Ex. 10 at Nos. 1, 3, 5; Ex. 11 at 300:5–9; *see also* Ex. 13 at No. 4; *see also* Ex. 11 at 255:25–256:6 (█████████████████ ██████████). Doe 16 also falsely testified to recurring behavior in his interrogatory responses, which stated that █████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ ; while at deposition, Doe 16 acknowledged that ████████ ███████████████████████████████████████████████████████████████████ Ex. 14 at No. 4; Ex. 15 at 235:25–236:5, 237:3–13. Additional interrogatory responses display this same pattern of exaggeration. For instance, Doe 11 stated that ████████████████████████████████████████████████████████████████████ but he testified in his deposition that he could only recall ██████████████████████████ ██████████████████████████████████████████ contradicting his former statement of regularity. Ex. 16 at No. 6; Ex. 18 at 103:17–104:20; *see also id.* at 108:4–11. Further, the night before Doe 10's deposition on March 10, 2026, Plaintiffs' counsel served "supplemental responses" to Doe 10's interrogatories that substantially rewrote his responses from two years earlier and made new allegations. In his deposition, Doe 10 could offer no explanation for these last-minute changes.

about Plaintiffs' personal knowledge. But Plaintiffs' responses do not contain their personal knowledge, and these Plaintiffs confirmed at their depositions ███████████ ███████████████████████ Each Plaintiff signed these responses under penalty of perjury. While the responses include a caveat that ███████████████████████ ████████████████████████████████████████████████████ ███████████ this disclaimer does not excuse the submission of detailed factual assertions under oath they only learned of through counsel. Indeed, the disclaimer is an implicit admission that the verified responses fail to meet Rule 33(b)(5)'s requirements.

Doe 1's personal knowledge when questioned on an alleged cover-up was limited to three items: ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ Ex. 27 at 274:23–278:1. Discovery has since proven that none of these instances provided notice to the University. When asked: ████ ███████████████████████████ Doe 1 responded: ███████████ ███████████████████ Id. at 278:15–20. Most critically, when asked how he knew about ███████████████ he testified: ████████████████████████ ███████████████████ Id. at 251:13–18.

At his depositions, Doe 2 was asked whether ████████████████ ██████████████████████████████████████████████████████, and he answered ███████████████████ Doe 2 Tr. [06/21/2024] at 186:3–13 (Ex. 28). He admitted he ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████ Doe 2 Tr. [12/03/2024] at 269:12–21, 272:16–21 (Ex. 29). His actual personal knowledge was limited to just two items: ████████ ████████████████████████████████████████ ███████████████████████ Discovery has since revealed that ██ ████████████████████████████████████████

███████████████████████████████████████████████████████

Doe 2 Father Dep. Ex. 404 (Ex. 30); Ex. 29 at 14:5–12.

At his June 24, 2024 deposition, Doe 3 admitted he █████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ █████████████████████████████████████ Ex. 19 at 61:18–23. He was completely unaware of ████████████████████ and confirmed: ████████ ██████████████████ *Id.* at 188:19–25.

Doe 11, at his April 28, 2026 deposition, testified:

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████ Ex. 17 at 161:4–19. ███████████████████
███████████████████ *Id.* at 166:16–19. █████████████████

He confirmed he ████████████████████████████████████████ could not identify █████████████████████████████, and could not recall where ████████████████ was. *Id.* at 13:21–14:1, 158:16–18, 159:4–6. Yet his verified interrogatory responses narrate, in granular detail, ████████████████████ ███████████████████████████

Each Plaintiff signed under penalty of perjury interrogatory responses containing approximately ████████████████████████████ ███████████████████, citing specific deposition transcripts, Bates-numbered documents, and the detailed personal experiences of other Plaintiffs whom they have never met. Their deposition testimony reveals ████████████████████████████████████ And discovery has likewise confirmed that there was no "cover-up" at all.

The "cover-up" theory is central to Plaintiffs' opposition to USF's statute of limitations defense. By verifying ███████████████████████████████████████████

██████████████████████████████████████████████—these Plaintiffs created a materially misleading record.

## III.   PLAINTIFFS' COUNSEL IMPROPERLY COACHED THE WITNESSES

### A.  Plaintiffs' Counsel Improperly Coached Doe 17 at Deposition

One of the most striking examples of improper witness coaching concerns Doe 17's deposition testimony about the meaning of ████████—a central allegation in the operative complaint and his interrogatory responses. Over the course of the deposition, Doe 17 provided two materially different and irreconcilable definitions of this term, and the record establishes that the change occurred only after Doe 17 conferred with his attorney during a break.

Early in the deposition, counsel for USF asked Doe 17 to explain ████████████████ ████████████████████████████████ ████████████████████████████████████ ██████ Ex. 13 at No. 4. Doe 17 testified that ███████████████████ ████████████████████████████████████ ██████████████████████████████ Ex. 11 at 166:4–13. When pressed to confirm, Doe 17 agreed that ████████████████████ ██████████████████ *Id.* at 166:18–167:4. He further explained that he ██████████████████████████ ████████████ *Id.* at 166:10–13, 167:9–11.

This testimony was damaging to Doe 17's case because it described ██████ ████████████████████████████████ ████████████████████████

After a break, when Mr. Rapkin asked a follow-up question about the same topic, the witness reversed course entirely. He stated: ████████████████ ████████ He then offered an entirely new definition: ████████ ████████████████████████████████████ ████████████████████████████ ████████ *Id.* at 361:23–362:5. When USF's counsel later confronted Doe 17 about the

change, he confirmed that ███████████████████████████████████ ███████████████████████████████ *Id.* at 374:22–375:3. He admitted that ███████ ███████████████████████████████ *Id.* at 375:12–14 (██████████████ ████████████████████████████████████). Critically, when asked whether ██████████████████████████████████████ █████ Plaintiff's counsel ████████████████████████████████████ *Id.* at 375:21–24. The witness ultimately conceded the point. When asked, ████████████████████████████ ███████████████████████████████████████ ███████ Doe 17 answered: ██████ *Id.* at 376:10–13.

**B. Plaintiffs' Counsel Similarly Coached John Doe 16 to Change His Testimony**

The same pattern of improper witness coaching occurred during the deposition of Doe 16. On at least three critical topics—whether the coaches were involved in the so-called "Kangaroo Court," why he was allegedly retaliated against, and whether Coach Giarratano engaged in sexual misconduct—Doe 16 changed his testimony in ways that materially strengthened the Plaintiffs' case following what appears to be coaching by counsel.

During the deposition, Doe 16 testified that ████████████████████████ ██████████████████ Ex. 15 at 210:14–17 ████████████████████████████ ██████████████████████████████████████. Later, when questioned by his lawyer, Doe 16 materially changed his answer to: ███████████████ ████████████████████████████████████████ ███████████████████████ *Id.* at 405:6–9. This answer directly contradicted his earlier testimony. Defense counsel immediately objected, with Counsel for Giarratano stating: ████████████████████████████████████ *Id.* at 405:10–11. Counsel for USF joined, adding: ████████████████████████████████ ████████████████ *Id.* at 405:12–14. Doe 16 similarly changed his earlier testimony on retaliation. He originally testified that: ███████████████████████████ ██████████████████████████ *Id.* at 143:8–145:1. But later after a break, he changed his response to ████████████████████████████████ *Id.* at 402:18–



404:23. Then, Doe 16 changed his testimony on whether Giarratano had engaged in sexual misconduct. Earlier in the deposition, Doe 16 testified that ███████████ ████████████████████████████ *Id.* at 116:4–10, 120:9-20. Later, after a break, counsel for the Plaintiff returned to this topic and asked Doe 16 ████ ████████████████████ *Id.* at 400:13. The witness explained: ██████████████████████ ████████████████████████ ████████████ *Id.* at 400:14–19. When asked whether, █████████████████ Doe 16 answered: ███ *Id.* at 400:20–23.

After Doe 16 changed all of these answers, Counsel for USF pressed pointedly: ███ ████████████████████████ █████████████ *Id.* at 408:18–21. Doe 16 responded, ████ ████████ *Id.* at 408:22. This is precisely the kind of substantive coaching on the merits that deposition rules are designed to prevent. As the Ninth Circuit has made clear, a deposition is not a "take home examination" where witnesses can consult with counsel and then return with answers that better fit the litigation theory. *Hambleton Bros. Lumber Co. v. Balkin Enters.*, 397 F.3d 1217, 1225 (9th Cir. 2005) (citation omitted).

**C.  Plaintiffs' Counsel Similarly Coached Doe 11 to Change His Testimony**

The same improper coaching pattern is evident in Doe 11's deposition. During questioning by Defense counsel, Doe 11 testified that he ████████████████ ████████████ Ex. 17 at 198:14–18. This testimony was damaging to Plaintiffs' statute of limitations theory, which depends on demonstrating that Plaintiffs did not know—and could not have known—that they experienced actionable misconduct until recently.

After a break in which Doe 11 conferred with his counsel, Plaintiffs' counsel returned to this exact topic. Counsel asked: ███████████████████ ████████████████████████ Doe 11 ████ ████ Counsel then asked: █████████████████ Doe 11

responded: ██████████ When asked why, Doe 11 stated: ██████████████████
███████████████████████████████████

██ *Id.* at 275:25–276:10. But Doe 11 confirmed earlier at deposition that ████████

███████████████████████████████████████████████

████████████████████████████████████ *Id.* at 9:18–24.

Counsel then asked the critical leading question: ██████████████████████

██████████████████████████████ Defense counsel objected.

Doe 11 answered: ████ *Id.* at 276:11–16. Defense counsel immediately confronted the

███████████████████████████████████████████

███████████████████████████████████████████

████████████ Doe 11 responded: ███████████████████████

████████████████████████ When asked directly ████████████████

██████████████████████████ Doe 11 confirmed: ████ *Id.* at 277:3–16.

This coaching is particularly egregious because it goes directly to the heart of Plaintiffs' statute of limitations defense. Doe 11's spontaneous testimony—████████████████████ ████████████████████—would defeat the discovery rule that Plaintiffs attempt to rely upon to bring claims arising from conduct in 1999.

## IV.    SANCTIONS ARE WARRANTED FOR PLAINTIFFS' CONDUCT

The false statements and coached testimony detailed above are not attributable to faded memory or confusion at a deposition—if so, one would expect some of the discrepancies to favor Plaintiffs, and some to disfavor them. Instead, in each case, the interrogatory responses and coached testimony differ in ways to artificially bolster the Plaintiffs' claims, and to make them seem more similar to those of the other Plaintiffs.

### A.  Deposition Coaching

"Allowing a deponent to alter testimony through after-the-fact changes (potentially in consultation with [his] attorney) would undermine [] well-settled deposition rules, effectively permitting the substitution of interrogatory answers for deposition testimony and permitting attorneys to alter the deponent's testimony." *ViaSat, Inc. v. Acacia Communs., Inc.*, No. 16cv463

BEN (JMA), 2018 U.S. Dist. LEXIS 25357, at *9–10 (S.D. Cal. Feb. 15, 2018) (citation omitted). Courts in this Circuit have further held that "a questioning attorney is entitled to have the witness, and the witness alone, answer questions," and that neither the deponent nor counsel may interrupt proceedings to confer about a question or answer except to assert privilege. *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998). A "sharp contrast between responses before and after a break in testimony," "can support an inference that the witness was improperly coached." *Medicinova, Inc.*, 2021 U.S. Dist. LEXIS 135060, at *19.

Here, the inferences of improper coaching are inescapable. Plaintiffs' counsel recognized during depositions that their clients' spontaneous testimony cut against their legal theories. They used deposition breaks to coach Plaintiffs into providing materially different answers that better aligned with their theory of the case. Plaintiffs admit that their attorneys called them into breakout rooms, told them what questions were coming, and changed their answers after those conversations. Or, Plaintiffs say that nothing changed between their prior testimony under oath and their contradictory testimony to Plaintiffs' counsel later, other than a break during which they spoke to their counsel. This is precisely the kind of conduct that Federal Rule of Civil Procedure 30(d)(2) was designed to address—conduct that "frustrates the fair examination of the deponent"—and it warrants the imposition of sanctions. *See Klein*, 132 F.R.D. at 531.

## B. False Statements

Plaintiffs' false statements are not a case of an isolated one-off error. It is a systemic pattern cutting across Plaintiffs, involving the same categories of inflation and fabrication: converting single incidents into habitual patterns, converting hearsay into personal witnessing, mischaracterizing occurrences to sound like abuse when there wasn't any, and collectively attributing misconduct to Defendants who weren't there or didn't do what Plaintiffs say. Courts have "inherent authority to sanction parties who provide false testimony or engage in deceptive conduct." *Englebrick*, 944 F. Supp. 2d at 908. Moreover, Plaintiffs' counsel's refusal to correct any responses after being confronted with these discrepancies—and their affirmative representation on May 14, 2026 that no inaccuracies exist—compounds the willfulness. *See id.* at 910 (rather than "fil[ing] any amended discovery responses" to "set the record straight," the

plaintiffs "let [the defendant] spend significant time and money litigating their lies . . . ."). Such a pattern of "intentionally mischaracteriz[ing] evidence through misleading or inaccurate discovery responses or the 'failure to correct the false impressions created' is tantamount to bad faith." *ConsumerDirect*, 2023 U.S. Dist. LEXIS 176092, at *17 (quotation omitted).

The willfulness of the misconduct is further corroborated by the sworn declaration of Plaintiff Doe 7, who fired Plaintiffs' counsel and recanted his allegations. Doe 7 declared under penalty of perjury: "I came to see that my former lawyers wanted this case to be about 'sexual abuse,' even though that isn't what I experienced," and "they pushed the lawsuit to focus on alleged sexual misconduct by the coaches." Ex. 1 at 4 ¶ 17. Doe 7's declaration sheds light on the process that produced the false interrogatory responses at issue in this motion. His admission that counsel "wanted this case to be about 'sexual abuse,' even though that isn't what [he] experienced" explains why Plaintiff after Plaintiff swore under penalty of perjury to elaborate narratives of pervasive sexual misconduct—only to recant or materially qualify those narratives under examination. *See Cottonwood Env't L. Ctr. v. Big Sky Water Boyne USA, Inc.*, No. 2:20-CV-00028-BMM, 2025 U.S. Dist. LEXIS 131374, at *25–26 (D. Mont. July 10, 2025) (sanctioning "reckless misstatements and disregard of facts" made in the "relentless pursuit of an alleged theory" even when the "facts fail to support [it]").

This is the hallmark of willful discovery abuse: verified statements crafted to serve counsel's theory rather than to accurately report the verifying party's knowledge. *See Say It Visually, Inc. v. Real Est. Educ. Co. Inc.*, No. 23 CV 3424, 2025 U.S. Dist. LEXIS 57316, at *19 (N.D. Ill. Mar. 27, 2025) (plaintiff "abused the judicial process by seeking relief based on information that the plaintiff knows is false") (citation omitted).

As a court has warned in a case where the party's interrogatory responses presented a narrative that was contradicted by the party's chief strategy officer's deposition testimony, "[u]ntruthful discovery responses made in bad faith may result in sanctions far more severe than . . . monetary sanctions." *Better Care Plastic Tech. Co. v. Gredale, LLC*, No. 5:21-cv-216-JWH (SP), 2022 U.S. Dist. LEXIS 102416, at *19–20, *38 (C.D. Cal. Mar. 4, 2022) (ordering a party to "investigate the accuracy of the positions it has taken in discovery responses" and to

provide "a declaration attesting to the . . . efforts it has taken . . . ."). The court's reasoning is instructive. Contradictions in the plaintiffs' statements under oath raise "grave concerns about the veracity of [their] representations." *Id.* at *17. Indeed, such contradictions suggest that Plaintiffs "[a]t best . . . recklessly made material representations in its [interrogatory] responses . . . without a reasonable investigation," and "[a]t worst . . . may be intentionally misleading [the other side] and the court." *Id*. at *20. Regardless, such untruthful "responses and tactics obstruct the orderly and expeditious resolution of [the] litigation and hinder [the other side's] ability to prepare for trial." *Id*. Defendants' have likewise been materially prejudiced by Plaintiffs' untruthfulness.

Here, an adverse jury instruction is particularly appropriate. *See ConsumerDirect*, 2023 U.S. Dist. LEXIS 176092, at *26–27 (granting adverse inference instruction where plaintiff made false claims in sworn declarations); *Taylor v. City of Chicago*, 2019 U.S. Dist. LEXIS 161472, at *15–16 (N.D. Ill. Sept. 23, 2019) (adopting adverse inference instruction where plaintiff lied in interrogatory response).

## CONCLUSION

Discovery has revealed significant discrepancies between Plaintiffs' verified discovery responses and their deposition testimony on matters central to their claims. Several Plaintiffs verified personal knowledge that their testimony did not substantiate, relied on broad collective allegations against Defendants, and materially revised testimony after conferring with counsel during deposition breaks. Providing false or materially incomplete discovery responses and deposition testimony undermines the fairness and integrity of the discovery process and warrants appropriate sanctions under Rule 37 and the Court's inherent authority. Although Defendants submit that the record could support dismissal, we request narrower relief: an Order finding that Plaintiffs John Does 1, 2, 3, 11, 15, 16, and 17 provided false or misleading discovery responses or testimony about important matters; an instruction that the jury may choose not to believe anything those witnesses have said or will say at trial; and an award of reasonable attorneys' fees incurred for bringing this motion (Defendants will provide evidence of reasonable attorneys' fees should the Court order sanctions in any form.).

Dated:  June 19, 2026

Respectfully submitted,

HWG LLP

By:  ___/s/ Jonathan M. Baum___
Jonathan M. Baum (SBN 202469)
jbaum@hwglaw.com
William Sullivan (SBN 275059)
wsullivan@hwglaw.com
Julienne Pasichow (SBN 340486)
jpasichow@hwglaw.com
Owen Smith (*pro hac vice*)
osmith@hwglaw.com
Joy Holden (*pro hac vice*)
jholden@hwglaw.com
HWG LLP
1919 M Street NW, 8th Floor
Washington, DC 20036
Telephone: (202) 730-1300
Facsimile: (202) 730-1301

*Attorneys for Defendant*
UNIVERSITY OF SAN FRANCISCO

FUTTERMAN DUPREE DODD CROLEY
MAIER LLP

By:  ___/s/ Daniel A. Croley___
Daniel A. Croley
dcroley@fddcm.com
Katherine O'Neal
koneal@fddcm.com
FUTTERMAN DUPREE DODD CROLEY
MAIER LLP
601 Montgomery St., Suite 333
San Francisco, CA 94111
Telephone: (415) 399-3840
Facsimile: (415) 399-3838

*Attorneys for Defendant*
ANTHONY N. GIARRATANO

RAPKIN & ASSOCIATES, LLP

By:   /s/ Scott Rapkin
Scott Rapkin
scottrapkin@rapkinesq.com
RAPKIN & ASSOCIATES, LLP
475 Washington Blvd.
Marina del Rey, CA 90292
Telephone: (310) 319-5465
Facsimile: (310) 306-1339

*Attorneys for Defendant*
TROY NAKAMURA

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2026, I caused the foregoing document to be served by email upon counsel of record for all Parties listed in the service list below. I declare under penalty of perjury that the foregoing information in this Certificate of Service is true and correct.

/s/ Jonathan Baum
Jonatham Baum

CERTIFICATE OF SERVICE

CASE NO: 3:22-CV-01559-LB