UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOHN DOE 1, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 22-cv-01559-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH**<br><br>Re: ECF No. 435 |

### INTRODUCTION

Non-parties Christine Whelan, John Boland, and John Nicolai — current and former members of the University of San Francisco's Board of Trustees (the Board members) — move to quash three Rule 45 subpoenas duces tecum that the plaintiffs served.[1] The subpoenas issued one day after the plaintiffs and USF jointly submitted a discovery letter brief with the parties' dispute over USF's production of Board of Trustees materials in response to RFP No. 78.[2] The court resolved that dispute: USF must collect Board materials from the Board Secretary's centralized electronic archive

---

[1] Mot. to Quash – ECF No. 435. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Disc. Letter Br. – ECF No. 424.

ORDER – No. 22-cv-01559-LB

and search them using the parties' already-negotiated search terms, for 1999–2000 (for Does 9 and 11) and 2007 forward (for the remaining plaintiffs).[3]

In their opposition to this motion, the plaintiffs withdrew the subpoenas' request for institutional Board materials (Request 10) and narrowed the remaining requests to a single category: the Board members' personal correspondence (emails and text messages on non-USF accounts and personal devices) concerning topics the court found relevant in the Board Materials Order.[4]

The court grants the motion in part and denies it in part. The subpoenas as served — eleven requests with more than thirty subparts, spanning roughly twenty-seven years, and contemplating forensic imaging of three Board members' personal devices — are overbroad and are quashed in that form. But the court does not quash them entirely: the plaintiffs narrowed the request, and the record shows that the Board members corresponded about the events at the center of this case on personal accounts that no USF collection will capture. The court's reasoning in the Board Materials Order — that the absence of Executive Session minutes makes other contemporaneous records non-duplicative — applies with equal force here. The subpoenas are modified: each Board member must produce a defined category of personal correspondence (as ordered below), with USF's counsel performing the collection and USF bearing the cost.

### STATEMENT

This is a Title IX action alleging sexual misconduct by former USF baseball coaches Anthony Giarratano and Troy Nakamura. Nineteen John Doe plaintiffs assert Title IX claims against USF and state-law claims against the coach defendants.[5] The complaint does not name the Board of Trustees or any Board member.[6] The case is in an advanced stage of fact discovery, with a May 2026 document-discovery deadline and a September 1, 2026, fact-discovery cutoff.[7]

---

[3] Order – ECF No. 439 at 6–7 (the Board Materials Order).

[4] Opp'n – ECF No. 444-3 at 12, 16–17.

[5] Disc. Letter Br. – ECF No. 424 at 2; Board Materials Order – ECF No. 439 at 2 & n.1.

[6] Mot. to Quash – ECF No. 435 at 8.

[7] Orders – ECF Nos. 384, 421.

United States District Court
Northern District of California

Discovery has been extensive: USF has collected and produced documents from forty-four custodians after review of more than a quarter-million documents, and the plaintiffs have deposed the firsthand witnesses, including the Title IX Coordinator, the Deputy Title IX Coordinator, the Vice President of Human Resources, the Vice President of Student Life, the Vice President overseeing athletics, a former Associate Athletics Director for Compliance, USF's longtime President, the Athletics Director, and a Rule 30(b)(6) designee.[8]

### 1. RFP No. 78 and the Board Materials Order

The plaintiffs served RFP No. 78 on October 22, 2025, seeking Board materials on twelve categories of subjects. USF objected, the parties conferred without success, and on March 17, 2026, they filed a joint letter brief.[9] On April 4, 2026, the court granted the plaintiffs' motion in part. The court found "substantial Board involvement in Title IX policy, the Title IX office, evaluating the Athletic Department leadership, and addressing employee performance and misconduct," and held that "Board-level deliberations concerning Title IX compliance, notice of misconduct, and institutional response are probative of liability and the statute-of-limitations defense."[10] The court ordered collection from the Board Secretary's centralized electronic archive — emails, minutes, agendas, reports, presentations, and audio recordings maintained by the Secretary — searched with the parties' already-negotiated search terms, for 1999–2000 (Does 9 and 11) and 2007 forward (the remaining plaintiffs), and allowed USF to seek up to forty-five days beyond the May 1 document deadline for that production.[11]

Two aspects of the Board Materials Order bear on this motion. First, the court rejected USF's argument that Board knowledge is "second-hand" and cumulative of the forty-four custodians, reasoning that Board-level records "capture what was communicated to and deliberated by USF's

---

[8] Mot. to Quash – ECF No. 435 at 8–9; Reply – ECF No. 452-1 at 15.

[9] Disc. Letter Br. – ECF No. 424; Mot. to Quash – ECF No. 435 at 7.

[10] Board Materials Order – ECF No. 439 at 4, 6.

[11] *Id.* at 7.

highest governing body."[12] Second, the court held that USF's own position — that the most significant Board discussions occurred in closed Executive Sessions for which no minutes are recorded — undercuts its cumulativeness argument: "if those discussions are not reflected in minutes," then other contemporaneous records of them are "not duplicative of anything previously produced."[13]

### 2. The Subpoenas

On March 18, 2026 (the day after the joint letter brief was filed), the plaintiffs served subpoenas duces tecum on Whelan, Boland, and Nicolai. Each contains eleven requests: communications concerning (1) the coach defendants, the baseball team, and any USF baseball player or coach; (2) Title IX and the Title IX Office; (3) Human Resources; (4) the Athletics Department and Athletics Directors; (5) the Board's oversight role; (6) complaints of misconduct by Athletics Department members; (7) investigations into the Athletics Department; (8) Giarratano's arbitration against USF; and (9) the plaintiffs, this lawsuit, and the recipient's role as a witness; plus (10) all USF Board materials on those subjects and (11) documents sufficient to show committee memberships and Board roles. The temporal scope is 1999–2000 and 2011–2026.[14] The plaintiffs have withdrawn Request 10 in light of the Board Materials Order and now seek only personal correspondence on non-USF accounts and devices concerning the topics in Requests 1–9.[15]

The meet-and-confer record is contested. USF's counsel conferred with the plaintiffs' counsel twice, including a March 31, 2026, discussion the plaintiffs describe as lasting approximately two

---

[12] *Id.* at 5–6.

[13] *Id.* at 6; Pasichow Decl., Ex. C to Disc. Letter Br. – ECF No. 424-4 at 3 (¶ 3) (Board Secretary maintains no minutes or agendas from Executive Sessions).

[14] Mot. to Quash – ECF No. 435 at 7–8; Opp'n – ECF No. 444-3 at 12–13.

[15] Opp'n – ECF No. 444-3 at 12, 16–17.

United States District Court
Northern District of California

minutes. The plaintiffs assert that USF's counsel promised, but never provided, a written proposal describing what USF would produce if the subpoenas were withdrawn.[16]

### 3.  The Record Concerning Personal Accounts and Devices

USF does not issue Board members university email accounts. Board members conduct Board business through personal email accounts and personal mobile phones.[17] The opposition attaches exemplars of relevant personal-account correspondence: a March 17, 2022, email from Nicolai's and Whelan's personal accounts to USF President Father Paul Fitzgerald (at his USF address) forwarding draft questions "that May be Asked by Trustees at BOT meeting," including the statement that "USF can't defend what has occurred";[18] emails to Nicolai's personal account expressing serious concerns about the baseball program and USF's handling of it; a 2018 email from Boland's personal account to Father Fitzgerald about the need to closely manage athletics; a March 11, 2022, email from Boland's personal account expressing concern that this lawsuit might reveal issues that had not surfaced in USF's Title IX investigation; and a twenty-one-page narrative sent to Whelan in 2017 and again in 2020 by a then-Athletics Department employee describing an asserted institution-wide failure to act.[19]

USF concedes that the institutional Board materials maintained by the Board Secretary are within its possession, custody, and control, but disputes that the Board members' personal

---

[16] Reply – ECF No. 452-1 at 6 n.1; Opp'n – ECF No. 444-3 at 13; Evall Decl. – ECF No. 445-2 at 2 (¶ 2); Von Klemperer Decl. – ECF No. 444-4 at 11 (¶ 25).

[17] Opp'n – ECF No. 444-3 at 7; Von Klemperer Decl. – ECF No. 444-4 at 6 (¶ 13) & Emails, Exs. B, J–R to *id.*

[18] Opp'n – ECF No. 444-3 at 8–9; Von Klemperer Decl. – ECF No. 444-4 at 3 (¶ 4) & Emails, Ex. B to *id.* The parties dispute the characterization of this email: the plaintiffs describe the statements as the authors' "conclusions," while the Board members respond that they were draft questions USF might be asked, not Board conclusions. Reply – ECF No. 452-1 at 16. The court's prior order referenced the underlying statement. Board Materials Order – ECF No. 439 at 4. The court does not resolve the characterization dispute here, and it does not matter to the analysis: either way, the email is contemporaneous Board-leadership correspondence about the misconduct allegations sent from personal accounts.

[19] Opp'n – ECF No. 444-3 at 8–11; Von Klemperer Decl. – ECF No. 444-4 at 6–10 (¶¶ 14–22) & Emails, Exs. J–R to *id.*

ORDER – No. 22-cv-01559-LB                         5

communications on personal accounts and devices are.[20] Under USF's Bylaws, Board members are indemnified in advance for expenses arising from subpoena compliance, and USF's counsel represents the Board members for purposes of this motion.[21]

### ANALYSIS

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Rule 45 incorporates those limits and requires the court, on timely motion, to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). The issuing party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court "must enforce this duty." Fed. R. Civ. P. 45(d)(1).

Nonparties unrelated to the litigants should not be burdened to the same extent as litigants, and requests to them must be narrowly tailored to meet specific needs for information. *Updateme Inc. v. Axel Springer SE*, No. 17-cv-05054-SI (LB), 2018 WL 5734670, at *3 (N.D. Cal. Oct. 31, 2018) (collecting cases).

### 1. The Board Members Are Non-Parties Entitled to Heightened Protection

The plaintiffs contend that the Board members are not "true third parties" because USF's counsel represents them, USF indemnifies their compliance costs, and USF has conceded control over their relevant correspondence.[22] The argument conflates alignment with status. The Board

---

[20] Mot. to Quash – ECF No. 435 at 12; Reply – ECF No. 452-1 at 8–9.

[21] Opp'n – ECF No. 444-3 at 7, 15; Von Klemperer Decl. – ECF No. 444-4 at 5 (¶ 12) (citing USF Bylaws §§ 9.1, 9.3); Mot. to Quash – ECF No. 435 at 6 n.1.

[22] Opp'n – ECF No. 444-3 at 15.

ORDER – No. 22-cv-01559-LB                6

members are not named defendants, are not alleged to have engaged in the underlying misconduct, and are not USF employees. The Ninth Circuit has held that directors are not employees of the entities they govern. *Fichman v. Media Ctr.*, 512 F.3d 1157, 1160 (9th Cir. 2008); *Tyndzik v. Dir., Off. of Workers Comp. Programs*, 53 F.3d 1050, 1053 (9th Cir. 1995). Indemnification and common counsel reduce the financial burden of compliance — a point that matters to proportionality below — but they do not strip non-parties of Rule 45's protections.

**2.  USF Does Not Control the Board Members' Personal Communications**

The plaintiffs assert that the personal correspondence is within USF's possession, custody, or control, relying on USF's concession in the motion and on this court's order requiring USF to collect work-related messages from current employees' personal phones.[23] Neither source supports the theory. USF's concession addressed the institutional materials maintained by the Board Secretary, not personal accounts and devices that USF does not own, issue, or have a right to access.[24] And the employee-cell-phone order rested on premises specific to employment: current employees' work-related messages are within the employer's control, and even former employees' devices are beyond reach absent a "contractual right" to the data.[25] Board members are not employees, *Fichman*, 512 F.3d at 1160, and the plaintiffs identify no bylaw, contract, or policy giving USF the legal right to demand their personal data. *Cf. Goolsby v. County of San Diego*, No. 3:17-CV-564-WQH-NLS, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019) (control over employees' devices means the right to obtain information from them on demand).[26]

Two consequences follow. First, the plaintiffs cannot reach this correspondence through a Rule 34 request to USF, so a properly tailored Rule 45 subpoena is the only available mechanism, which answers the Board members' argument that party discovery is the exclusive proper channel. Second, the plaintiffs' alternative request — that the court "order USF to collect and produce"

---

[23] *Id.* (citing Mot. to Quash – ECF No. 435 at 12; Order – ECF No. 337 at 1).

[24] Reply – ECF No. 452-1 at 9.

[25] Order – ECF No. 337 at 1–2.

[26] *Id.* at 1 (discussing *Goolsby*, 2019 WL 3891123, at *4).

from the Board members' personal accounts — fails: the court cannot order a party to produce what the party does not control.

### 3.  Institutional Board Materials Are Duplicative; Personal Correspondence Is Not

To the extent the subpoenas seek documents reachable through the Board Secretary's centralized archive (minutes, agendas, presentations, reports, listserv communications), the Board Materials Order already directs USF to produce them on terms the court found proportionate. Requiring three Board members to run parallel searches for the same institutional records is the paradigm of "unreasonably cumulative or duplicative" discovery. Fed. R. Civ. P. 26(b)(2)(C)(i); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."). Request 10 (withdrawn in any event) and the remaining requests insofar as they target institutional Board materials are quashed.

Personal correspondence on non-USF accounts and devices is different. The Board members invoke *Jacoby v. Board of Supervisors of the University of Louisiana System*, 709 F. Supp. 3d 1087, 1091 (E.D. Cal. 2023), which quashed a non-party subpoena as "unnecessary and cumulative" where party discovery had already produced the substance and the issuing party offered only speculation that more existed. *Jacoby* is the right standard (actual, not potential, relevance), but it is distinguishable based on the record here. The plaintiffs do not merely hope that responsive personal correspondence exists; they have produced exemplars of it: Board leadership using personal accounts, during the critical late-2021-through-2022 window, to convey assessments of the misconduct allegations, the institutional response, and this lawsuit.[27]

The subject matter falls squarely within the relevance findings of the Board Materials Order: Board-level knowledge and deliberation are probative of liability and of USF's statute-of-limitations defense.[28] And the reasoning of that order controls the duplication question here. The

---

[27] Opp'n – ECF No. 444-3 at 7–11 (citing and excerpting exhibits).

[28] Board Materials Order – ECF No. 439 at 6.

United States District Court
Northern District of California

court has already rejected USF's argument that Board-level knowledge is "second-hand" and cumulative of the custodial collections. More to the point, the court held that USF's representation (that its most significant Board deliberations occurred in Executive Sessions generating no minutes or agendas) undercuts any cumulativeness argument: records of those deliberations, wherever they reside, duplicate nothing previously produced.[29] Because Board members have no USF email accounts, their member-to-member and third-party correspondence on personal accounts will appear in no USF collection at all: not the forty-four custodians, and not the Board Secretary's archive. For that discrete category, the correspondence is unique. The Board members cannot invoke the absence of institutional records to explain the archive's gaps while resisting discovery of the personal communications that may be the only contemporaneous record of the same deliberations.

The Board members respond that the plaintiffs' exemplars prove the opposite because several included USF personnel on USF accounts, so USF's collections capture them.[30] That is fair as to those specific emails (an institutional copy exists), but it does not account for correspondence that included no USF account, which is the category the narrowed subpoenas target and the category that the record (personal-account usage as the Board's ordinary course) supports.

### 4. The Subpoenas as Modified are Proportional

As served, the subpoenas are facially overbroad: eleven requests with more than thirty subparts, spanning roughly twenty-seven years, contemplating over three-hundred search terms (including sexualized terms) applied to three Board members' personal email and text messages, with forensic imaging of their devices.[31] That scope does not reflect the "reasonable steps to avoid imposing undue burden" that Rule 45(d)(1) requires of the issuing party. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (requests spanning ten-plus years facially overbroad

---

[29] *Id.*

[30] Reply – ECF No. 452-1 at 16.

[31] *Id.* at 11–13.

ORDER – No. 22-cv-01559-LB                    9

as to a non-party). The privacy intrusion is a cognizable component of the burden. Cal. Const., art. I, § 1; *see Breed v. U.S. Dist. Ct.*, 542 F.2d 1114, 1116 (9th Cir. 1976).

The plaintiffs' narrowing in their opposition does not cure the problem by itself: it reduces subject-matter volume but concentrates the search on the most private category of material, and it narrows neither the temporal scope nor the search-term universe nor the collection methodology. Nor does USF's indemnity eliminate the burden. Burden under Rule 45 is not measured in dollars alone, and the Board members retain a personal privacy interest in their own correspondence that indemnification does not address. The plaintiffs' observation that the Board members submitted no declaration quantifying burden carries little weight where the burden (a search of decades of personal email and text messages against a three-hundred-term list) is apparent.

The appropriate remedy, however, is modification, not wholesale quashing. Fed. R. Civ. P. 45(d)(3)(A) (the court "must quash or modify"). The record supports a proportionate, tailored production. The parties propose no reasonable timeframe. The court thus orders a similar production to the production in the Board Materials Order: the parties' already-negotiated terms should be used, and the temporal scope is 1999–2000 (for materials relevant to Does 9 and 11) and 2007 to the present (for the remaining plaintiffs), with the temporal period for the Board members limited to their individual period of Board service.

Collecting information from emails and mobile devices should not be difficult, given modern discovery platforms.[32] The collection will performed by USF's counsel at USF's expense, an arrangement the plaintiffs propose and USF's indemnity supports.[33] So modified, the discovery is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

The timing of service warrants a final word. The subpoenas issued one day after the parties jointly submitted the RFP No. 78 dispute, before any ruling. That service functioned, at least in part, as a hedge against an adverse ruling on pending party discovery. Courts discourage the use of Rule 45 to route around the court's dispute-resolution process. *See Marten v. Haire*, 329 F.R.D.

---

[32] Opp'n – ECF No. 444-3 at 19 (making this point).

[33] *Id.* at 18–19.

256, 260 (D. Mont. 2018); *Elec. Scripting Prods., Inc. v. HTC Am. Inc.*, No. 17-cv-05806-RS (RMI), 2021 WL 3773607, at *4 (N.D. Cal. Aug. 25, 2021). The meet-and-confer record is unedifying on both sides. The timing and process concerns weigh in favor of narrowing the subpoenas. They do not justify sanctions, and none are awarded.

### 5. Privilege Objections Require a Privilege Log

The Board members assert that substantive Board discussions of the allegations occurred in closed Executive Sessions in the context of legal advice, including Duane Morris LLP's November 15, 2022, presentation, and that requiring privilege review of personal accounts is itself an undue burden.[34] Blanket privilege assertions are "extremely disfavored," *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002), and personal communications about the baseball program, the coach defendants, or this lawsuit are not privileged merely because related subjects were also discussed with counsel. The ordinary mechanism applies: withhold specific privileged documents and log them under the ESI Order and the court's standing order.[35] Communications that convey or discuss counsel's legal advice (including advice presented in Executive Session) may be withheld and logged.

### CONCLUSION

The motion to quash (ECF No. 435) is granted in part and denied in part.

The subpoenas are modified to require each recipient to produce non-privileged emails, text messages, and other written communications on the recipient's personal (non-USF) email accounts and personal mobile devices that the recipient sent or received between 1999–2000 (for materials relevant to Does 9 and 11) and 2007 to the present (for the remaining plaintiffs), with the temporal period for the Board members limited to their individual period of Board service, concerning (1) the coach defendants, (2) the USF baseball program, (3) the Title IX investigation into the baseball program, (4) the Board's deliberation, oversight, and response to allegations of

---

[34] Mot. to Quash – ECF No. 435 at 14–15; Reply – ECF No. 452-1 at 14–15.

[35] ESI Order – ECF No. 168 at 6 (§ VIII(B)); Standing Order for Magistrate Judge Laurel Beeler at 3 (§ 2.1).

misconduct in the Athletics Department, or (5) this lawsuit. In addition, Whelan must produce the 2017 and 2020 transmittals of the twenty-one-page narrative referenced in the opposition and any personal-account correspondence concerning it. The parties' already-negotiated terms should be used absent stipulation of the parties.

Within seven days, the parties and the Board members must meet and confer on search terms and a protocol (likely similar to the process utilized following the Board Materials order). Production must be completed within forty-five days, absent stipulation of the parties or further order of the court. Documents withheld as privileged must be identified on a privilege log consistent with the ESI Order and the court's standing order.

USF must bear the costs. No sanctions or fee-shifting are awarded to any party or non-party.

This resolves ECF No. 435.

**IT IS SO ORDERED.**

Dated: July 7, 2026

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California