United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

JOHN DOE 1, et al.,

        Plaintiffs,

        v.

UNIVERSITY OF SAN FRANCISCO, et al.,

        Defendants.

Case No. 22-cv-01559-LB

**SANCTIONS ORDER**

Re: ECF Nos. 467, 489

## INTRODUCTION

In this Title IX case, nineteen former baseball players allege that USF's baseball coaches subjected them to sexual misconduct and psychological abuse and that USF knew of, and concealed, the misconduct.[1] At her deposition on March 25, 2026, USF's former Athletic Director, Joan McDermott (the administrator who supervised the baseball program from mid-2017 and the department from 2019) testified that her standard practice was to keep a notebook and take handwritten notes "for every meeting I was involved in," that no one ever told her not to throw the notes out, and that she threw out a box of notebooks, including "for sure" a notebook from the fall

---

[1] Fourth Am. Compl. – ECF No. 532. Record citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents and, for depositions, also to the deposition page numbers.

of 2021 (when USF's Title IX investigation of the coaches began), when she moved from San Francisco in June 2023, fifteen months after this lawsuit was filed.[2]

The plaintiffs move for sanctions for spoliation under the court's inherent authority and Rule 37 in the form of entry of judgment against USF or, alternatively, a mandatory adverse-inference instruction, an order precluding USF from disputing its knowledge of the coaches' misconduct during McDermott's tenure, and fees.[3] USF opposes: it issued a litigation hold to McDermott eighteen days after the complaint was filed, and she acknowledged it in writing; two more lawyers reminded her of her preservation obligations in 2022 and 2023; she reviewed her notes and reported (repeatedly) that she had nothing responsive; the one surviving notebook (submitted in camera) contains nothing about the baseball coaches; and a post-motion declaration explains that her deposition testimony was mistaken.[4] USF also asks the court to review the Walworth declaration and the surviving notebook in camera and under seal, and it objects to evidence submitted with the plaintiffs' reply.[5]

First, the court grants the administrative motion in part: it accepts the Walworth declaration and the notebook in camera, but it orders USF to produce the notebook to the plaintiffs' counsel under the protective order within seven days. The Walworth declaration must be filed on the docket, locked for entry to all but court personnel. At that point, the parties can revisit any sealing issues. Second, the court overrules USF's objection to the reply evidence; no sur-reply is needed. Third, the court does not strike the McDermott declaration, but it gives the declaration no weight where it contradicts unambiguous deposition testimony.

On the merits, the court denies terminating sanctions and denies the requested adverse-inference instruction and knowledge-preclusion order. On this record, USF negligently failed to collect and review the contemporaneous hard-copy notes of its most important custodian, but there is not bad-faith deception warranting dispositive or verdict-directing sanctions. But the failure was

---

[2] McDermott Dep., Ex. A to Fegan Decl. – ECF No. 467-3 at 5 (43:19–44:8), 8–9 (61:8–63:19).

[3] Mot. – ECF No. 466-3 at 17–31.

[4] Opp'n – ECF No. 488 at 8–22; McDermott Decl. – ECF No. 488-2.

[5] Admin. Mot. – ECF No. 489; Reply in Support of Admin. Mot. – ECF No. 500; Obj. – ECF No. 511; Pls.' Notice of Noncompliance – ECF No. 513.

United States District Court
Northern District of California

real, and potentially relevant notebooks are gone. The court therefore grants the following relief: (1) the plaintiffs may present evidence at trial of the notebooks' destruction and USF's preservation failures and may argue the inferences that evidence supports; (2) the court will settle any permissive-inference instruction at the charging conference on the trial record; (3) USF may not argue or suggest to the jury that the absence of contemporaneous notes affirmatively corroborates its claimed lack of knowledge; and (4) the court awards the plaintiffs their reasonable attorney's fees for bringing this motion (but not the broader discovery-dispute fees they seek).

## STATEMENT

### 1. McDermott's Role and Her Notes

McDermott joined USF's Athletic Department as Senior Executive Associate Athletic Director in September 2016, became the administrator responsible for the baseball team in July 2017, was elevated to Deputy Athletics Director in 2017 or 2018, and was appointed Athletic Director in March 2019. She had "ultimate responsibility for supervising the coach[es]," including defendant Nino Giarratano, and when she became Athletic Director she deliberately retained direct oversight of baseball because she "felt like I needed to watch them closer" than other teams.[6]

McDermott testified that she kept "a notebook that I would take notes for every meeting I was involved in" where she would "write the date down and take notes." She further testified that she "took notes all the time just because there was so much interaction." McDermott's notes covered subjects including her biweekly standing meetings with the coaches she supervised (including Giarratano), exit interviews with transferring student-athletes, information received from Title IX Coordinator Jess Varga, student-athlete complaints about coaches, and senior-leadership meetings.[7] Beginning no later than December 2021, McDermott received and transmitted complaints about the coaches' sexual misconduct (including a December 14, 2021, report from

---

[6] McDermott Dep., Ex. A to Fegan Decl. – ECF No. 467-3 at 4 (38:10–40:17), 5 (44:14–18), 6 (50:4–8), 11 (84:11–12), 12 (87:10–89:14), 13 (95:5–18); Sidwell Dep., Ex. B to *id.* – ECF No. 467-4 at 5 (276:4–21).

[7] McDermott Dep., Ex. A to Fegan Decl. – ECF No. 467-3 at 5 (43:2–44:8), 14 (104:8–12), 15 (106:4–107:12), 16 (119:2–120:4), 17 (143:19–21), 18 (206:15–207:5).

John Doe 1's parent that she forwarded to the Title IX office), and she met with Giarratano in the fall of 2021 about the team's "kangaroo court," which involved nudity. She testified that notes of these matters would have been in notebooks she has since thrown out.[8]

## 2. The Preservation Record

The plaintiffs filed this lawsuit on March 11, 2022. On or about March 22, 2022, USF Vice President Charles Cross conveyed to USF's general counsel his concerns that McDermott was defensive, not forthcoming (particularly about the coach defendants), lacked objectivity about the baseball program, and had lost the trust of the Board of Trustees.[9] On March 29, 2022, the general counsel sent McDermott a personalized litigation-hold notice that referenced paper records. McDermott acknowledged it by email the next day and confirmed that she would "preserve all documentation regarding the class action lawsuit."[10] USF preserved and later searched her email, Google Drive, and (with her consent) her personal phone.[11]

USF negotiated McDermott's retirement: she signed a retirement agreement and general release on May 5, 2022, and left USF on June 10, 2022. Under the agreement, ███████████ ████████████████████████████████████████████████████████████ ███████████████████████████.[12] In August 2022, Daniel Walworth of Duane Morris LLP (retained by USF to investigate the complaint's allegations, not as counsel of record here) interviewed McDermott twice, reminded her to preserve relevant documents, collected her emails, texts, and policy documents, and asked her to review her written notes; she reported that she found nothing relevant.[13] In 2023, Michael Vartain (USF's counsel in the related Giarratano arbitration) collected McDermott's laptop, phone, and other materials, discussed handwritten notes with her,

---

[8] *Id.* at 19–20 (248:10–249:5, 250:3–9); Mother of Doe 1 Dep., Ex. E to *id.* – ECF No. 467-7 at 4 (175:14–176:14); Varga Dep., Ex. G to von Klemperer Decl. – ECF No. 466-7 at 3 (430:20–431:22).
[9] Cross Dep., Ex. C to Fegan Decl. – ECF No. 467-5 at 6–10 (228:13–244:4), 12–13 (250:24–256:16).
[10] Litig. Hold Docs., Exs. 1–2 to Baum Decl. – ECF No. 488-4 at 3–7; Opp'n – ECF No. 488 at 8, 10.
[11] Opp'n – ECF No. 488 at 10.
[12] Retirement Agreement, Ex. L to von Klemperer Decl. – ECF No. 502-4 at 2 (¶¶ 1, 3(a), 3(c)), 4 (¶ 9); McDermott Dep., Ex. A to *id.* – ECF No. 467-3 at 21 (334:18–339:8).
[13] McDermott Decl. – ECF No. 488-2 at 9 (¶¶ 9–13); Walworth Decl. (lodged in camera) – ECF No. 489-2 at 1–2 (¶¶ 6–10).

United States District Court
Northern District of California

and again received her confirmation that she had nothing responsive. The plaintiffs contend, and the Vartain declaration does not clearly refute, that this contact came after her June 2023 move.[14] No lawyer for USF collected or reviewed any of McDermott's notebooks until May 18, 2026, after this motion was filed.[15]

### 3.    The Deposition, the Declaration, and the Surviving Notebook

At her March 25, 2026, deposition, McDermott testified that (1) she was "never" told by anyone not to throw out her handwritten notes, (2) she never personally searched for documents related to this litigation, and only her electronic devices were searched in connection with the 2023 arbitration, (3) she still possessed handwritten notebooks in March 2022, including "for sure" from the fall of 2021, and (4) she threw out notebooks stored "in a box . . . somewhere in our garage" when she moved from San Francisco in June 2023, and "may have thrown some out each year."[16] The plaintiffs' counsel raised the destruction with USF's counsel, who responded that McDermott had received and acknowledged a formal hold on March 29, 2022, and produced redacted copies of the hold and her response. The plaintiffs then filed this motion.[17]

McDermott submitted a declaration in support of USF's opposition. She declares that her notetaking was "occasional" and "not detailed," amounting to reminders and to-do lists; she generally stopped taking handwritten notes in March 2020 (when COVID ended most in-person meetings); she is "certain" that she "never threw away any relevant handwritten notes after I received the legal hold notice in March 2022"; she would usually throw away the prior year's notebooks at the end of each academic year and may have discarded the 2017 and 2018 notebooks when she moved offices in 2019; three different lawyers instructed her to preserve documents; she personally searched her materials in August 2022 at Mr. Walworth's direction; and, after this motion was filed, she searched her home again and found her last notebook, used from January

---

[14] Vartain Decl. – ECF No. 488-1 at 2 (¶¶ 6–9); Reply – ECF No. 502-3 at 14.

[15] Baum Decl. – ECF No. 488-4 at 2 (¶ 5); McDermott Decl. – ECF No. 488-2 at 5 (¶ 26).

[16] McDermott Dep., Ex. A to Fegan Decl. – ECF No. 467-3 at 2–3 (21:18–22:13), 8–9 (61:17–63:19).

[17] Apr. 2, 2026, Letter, Ex. H to *id.* – ECF No. 467-10 at 1; Emails, Exs. I–J to *id.* – ECF Nos. 467-11, 467-12; Opp'n – ECF No. 488 at 8, 10.

ORDER – No. 22-cv-01559-LB                 5

2019 to March 2020, which she gave to USF's counsel on May 18, 2026.[18] USF submitted that notebook for in camera review. USF represents (and says that its counsel's review confirms) that the notebook contains nothing about sexual-misconduct complaints involving the baseball coaches. It does contain a notation referencing a Title IX investigation into an alleged sexual assault by a men's-soccer player.[19]

In reply, the plaintiffs submit McDermott's retirement agreement and excerpts of her deposition video, argue that her declaration is a sham affidavit, and ask the court to strike it or hold an evidentiary hearing.[20] USF objected to the submission of the retirement agreement and the plaintiffs' characterization of the Cross and Murphy testimony, and asked in the alternative for leave to file a sur-reply, which it attached. The plaintiffs objected on the ground that the sur-reply had impermissible argument under Civil Local Rule 7-3(d)(1).[21]

### LEGAL STANDARDS

### 1. Spoliation

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *United States v. Kitsap Physicians Servs.*, 314 F.3d 995, 1001–02 (9th Cir. 2002). A party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006). This duty extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *Id.* at 1067.

---

[18] McDermott Decl. – ECF No. 488-2 at 2–5 (¶¶ 5–26).

[19] *Id.* at 3–4 (¶¶ 14, 21); Notebook, Ex. 3 to Baum Decl. – ECF No. 489-3 (lodged in camera); Reply ISO Admin. Mot. – ECF No. 500 at 10–11.

[20] Reply – ECF No. 502-3 at 9–12; Retirement Agreement, Ex. L to von Klemperer Decl. – ECF No. 502-4; McDermott Dep. Video, Ex. M to Fegan Decl. – ECF No. 503-4.

[21] Obj. – ECF No. 511; Notice – ECF No. 513.

## 2. Sanctions

Two sources of authority allow a district court to sanction a party that has spoliated evidence: the court's inherent power to respond to abusive litigation practices, and Rule 37. Rule 37(b)(2)(A) authorizes sanctions against a party that "fails to obey an order to provide or permit discovery." Rule 37(e) addresses lost electronically stored information (ESI) and (by its terms and the advisory committee's notes) applies only to ESI. Its "intent to deprive" standard does not govern the destruction of hard-copy documents. Fed. R. Civ. P. 37(e) & advisory committee's notes to 2015 amendment; *see Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 734–35 (9th Cir. 2024) (describing sanctions if ESI is lost).

ESI is not implicated here: the lost evidence is paper. There is no discovery order violated: the orders to date are about lookback periods and production timelines. Any sanctions are predicated on the court's inherent authority.

Courts are invested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (cleaned up). The Ninth Circuit has held that sanctions are available under the court's inherent power if preceded by a finding of "bad faith or conduct tantamount to bad faith," such as recklessness "combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). "A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence," including instructing the jury that it may draw an adverse inference against the party or witness responsible for destroying the evidence. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (discussing possible sanctions).

A party seeking an adverse-inference instruction based on spoliation must establish three elements: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could

United States District Court
Northern District of California

find that it would support that claim or defense." *Apple Inc. v. Samsung Elec. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012) (cleaned up).

## ANALYSIS

### 1.  Preliminary Issues

#### 1.1    USF's Motion for In Camera Review — ECF No. 489

USF moved to submit information in camera relevant to the preservation issues.[22] In camera inspection is "a commonly-used procedural method for determining whether information should be protected or revealed to other parties." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 n.6 (9th Cir. 2003). Here, the plaintiffs accuse USF of failure to preserve McDermott's notebooks, and USF's rebuttal implicates its privileged preservation instructions.[23] For now, the court accepts the Walworth declaration in camera because the declaration recounts privileged communications and work product from USF's internal investigation, and the motion it supports is a non-dispositive discovery-sanctions motion. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097–99 (9th Cir. 2016). Because the declaration is ex parte, the court relies on it only for a narrow fact: Mr. Walworth instructed McDermott in August 2022 to preserve documents and to review her notes. USF should file a declaration that reflects this fact on the docket for a clean record.

The notebook is different. The court accepts it in camera. It should be filed under seal on the public docket (it is a nonparty's personal notebook, and the sealing issues can be addressed through a further sealing motion), but USF must produce it to the plaintiffs' counsel under the protective order within seven days.[24] Two reasons support this result. First, USF's relevance objection fails: the notebook contains a notation about a Title IX investigation into alleged sexual assault involving another USF athletic team. This court has already held that programmatic indifference (including misconduct on other USF teams) "is relevant to the proof of deliberate indifference."[25] Second,

---

[22] Mot. – ECF No. 489.
[23] *Id.* at 2–3; Mot. – ECF No. 466-3 at 13 n.3, 19 n.8.
[24] Protective Order – ECF No. 174.
[25] Order – ECF No. 269 at 5; McDermott Decl. – ECF No. 488-2 at 3–4 (¶ 14).

disclosure is fair: USF relies on the notebook's contents (its sparseness and claimed irrelevance) as an argument against sanctions. Having put the document's contents at issue, USF cannot keep the plaintiffs from testing its characterization. In camera review protects privilege but is not a device to submit one-sided evidence that is not privileged.

### 1.2    USF's Objection to the Reply Evidence — ECF Nos. 511, 513

Civil Local Rule 7-3(d)(1) permits an objection to reply evidence but prohibits "further argument on the motion." Most of ECF No. 511 is argument, and the court disregards it. The evidentiary objection to the retirement agreement is overruled. It is not new evidence: the motion discussed it, USF addressed it, and it was in the McDermott deposition excerpt filed with the motion.[26] Overall, the reply fairly responded to the opposition (USF's lack of control over a "former employee" and its entitlement to rely on her self-reports).

### 1.3    The McDermott Declaration

The plaintiffs ask the court to strike the declaration as a sham affidavit or to hold an evidentiary hearing. The sham-affidavit rule is a summary-judgment doctrine, but its logic — a party cannot manufacture a factual dispute with a declaration that flatly contradicts earlier deposition testimony without explanation — informs the weight a court gives such a declaration when finding facts on a sanctions motion. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). The court does not strike the declaration. Parts of it are corroborated by documents (the hold notice and McDermott's written acknowledgment), and parts of the deposition testimony it "corrects" were equivocal ("I may have thrown some out each year"; "I don't recall").[27] But where the declaration squarely contradicts clear, unambiguous testimony — (1) McDermott's testimony that she retained a fall 2021 notebook "for sure" through March 2022, against her declaration that she stopped regularly taking notes in March 2020 and is "certain" she destroyed nothing relevant after the hold, and (2) McDermott's testimony that she took notes "for every meeting," against the

---

[26] Mot. – ECF No. 466-3 at 10; McDermott Dep., Ex. A to Fegan Decl. – ECF No. 467-3 at 21–22 (334:18–339:8); Opp'n – ECF No. 488 at 20.
[27] McDermott Dep., Ex. A to Fegan Decl.– ECF No. 467-3 at 8–9 (61:20–63:3).

<div style="margin-left:auto">United States District Court<br>Northern District of California</div>

declaration's "occasional" to-do lists — the court gives the declaration no weight.[28] An evidentiary hearing is unnecessary. Even resolving the credibility conflicts in the plaintiffs' favor, the record does not establish the intentional, bad-faith deception that their requested sanctions require, and the relief the court orders does not turn on resolving them.

## 2. Control of McDermott's Notes

USF's duty to preserve McDermott's notes arose no later than March 11, 2022, when this lawsuit was filed. The court need not decide whether it arose in December 2021, when USF opened its Title IX investigation, because nothing turns on the earlier date. USF concedes that it "immediately identified" McDermott as a relevant custodian, and it later designated her as one of eleven priority custodians.[29] Her notebooks were plainly within the duty's scope: they were the contemporaneous records of the supervisor of the accused coaches, covering meetings with those coaches, exit interviews, Title IX communications, and student complaints — subjects at the center of the plaintiffs' claims and USF's limitations defense.

USF's argument — that the notebooks were a former employee's personal property beyond its reach — fails.[30] From March 11 through June 10, 2022, McDermott was a USF employee, on notice of the hold, working on campus. USF had every practical ability to ask her about hard-copy notes and to collect them. It did not. After her departure, the question is closer, but the court need not resolve whether her separation contract, ███████████████████████████████ gave USF Rule 34 control over her personal papers. USF failed to conduct a custodian interview directed at hard-copy notes and to collect and review them during a period when USF had access to McDermott. USF interviewed her twice in August 2022, imaged her phone, collected her ESI, and

---

[28] *Compare id.* at 5 (43:19–44:8), 9 (62:8–63:7), *with* McDermott Decl. – ECF No. 488-2 at 4 (¶¶ 18–20, 24).

[29] Opp'n – ECF No. 488 at 10; Joint Case Mgmt. Statements – ECF Nos. 228, 236-3.

[30] Opp'n – ECF No. 488 at 20.

United States District Court
Northern District of California

represented her at her deposition. Its failure to collect her notebooks was not based on its inability to do so.[31]

### 3. Spoliation

Crediting the deposition testimony (as the court does where the declaration contradicts it), the record establishes by a preponderance that McDermott retained notebooks (including from the fall of 2021, the period of the "kangaroo court" meeting and the first Title IX complaints) through March 2022, and discarded a box of notebooks in June 2023, fifteen months into this litigation.[32] Those notebooks were at least potentially relevant: McDermott testified that complaints, coach meetings, Title IX information, and exit interviews were "the type of information that you would record in your notes."[33] A party that destroys documents "can hardly assert any presumption of irrelevance as to the destroyed documents." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (cleaned up). The surviving notebook cuts both ways, and not decisively for USF. USF says it shows sparse, non-substantive notetaking, but it also contains a Title IX notation of the very kind USF insists McDermott never recorded, which is some evidence that the destroyed notebooks (particularly from late 2021) contained relevant entries.[34]

Prejudice is real but uncertain. The notebooks' contents are unknown and unknowable; the surviving exemplar suggests terse reminders rather than meeting minutes, and discovery has produced substantial contemporaneous evidence from the same period (tens of thousands of documents, emails, and text messages, plus more than thirty depositions).[35] The plaintiffs' strongest point is that McDermott had a documented pattern of not sharing what she knew with her superiors, so her private notes may have been the only contemporaneous record of some of her knowledge.[36] That possibility supports a remedy.

---

[31] Reply – ECF No. 502-3 at 17; McDermott Decl. – ECF No. 488-2 at 3 (¶¶ 9–13); Vartain Decl. – ECF No. 488-1 at 2 (¶¶ 6–9).

[32] McDermott Dep., Ex. A to Fegan Decl. – ECF No. 467-3 at 9 (62:8–63:19), 19 (248:10–249:5), 20 (250:3–9).

[33] *Id.* at 18 (206:15–207:5).

[34] McDermott Decl. – ECF No. 488-2 at 3–4 (¶ 14).

[35] Opp'n – ECF No. 488 at 8, 13, 17–18.

[36] Cross Dep., Ex. C to Fegan Decl. – ECF No. 467-5 at 6 (229:9–14), 7 (232:11–233:1), 12 (252:11–253:22).

United States District Court
Northern District of California

### 4. Bad Faith

The record does not establish bad faith. USF issued a hold eighteen days after the complaint, and McDermott acknowledged it in writing. Two more lawyers reminded her of her obligations, and she repeatedly reported (in 2022 and 2023) that she had no responsive notes. McDermott cooperated: she consented to imaging of her personal phone, sat for interviews and a deposition, and volunteered her notetaking practice at that deposition, which is conduct inconsistent with concealment. The destruction itself occurred in the course of a household move, consistent with routine disposal. And the plaintiffs' concealment theory (that USF hid the spoliation while touting its discovery compliance) assumes that USF knew the notebooks existed and were destroyed. Nothing shows that. *Fink*, 239 F.3d at 994.

But USF's conduct was not blameless. A hold is the beginning of compliance, not the end. USF knew (through the same general counsel who issued the hold, and days before she issued it) that McDermott was regarded internally as defensive, not forthcoming, and lacking objectivity about the baseball program. Yet USF entrusted the preservation of this priority custodian's hard-copy records entirely to her own self-review, and for four years no lawyer asked the basic custodian-interview question that the plaintiffs' counsel asked in one conversational exchange: do you keep notes, and where are they? The result is that potentially relevant notebooks left the building in June 2022 and went into the trash in June 2023. That is fault: negligence in overseeing preservation of a key custodian's documents, attributable to USF. It is not, however, deliberate, deceptive conduct that supports dispositive or verdict-directing sanctions.[37]

### 5. Remedy

#### 5.1    Terminating Sanctions are Denied

Entry of judgment requires willfulness, fault, or bad faith of the deliberate-deception kind, weighed against the *Leon* factors. *Leon*, 464 F.3d at 958 (before dismissal, the court should

---

[37] *Id.* at 6 (228:13–19), 8 (234:5–13); Reply – ECF No. 502-3 at 12–15.

United States District Court
Northern District of California

consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions"). The public policy favoring dispositions on the merits and the availability of lesser sanctions are dispositive here: the culpability is negligence, the prejudice is uncertain, and lesser measures can cure it. The standard is not met. The request for judgment against USF is denied.

### 5.2   A Mandatory Inference and the Requested Preclusion Order are Denied

The plaintiffs' fallback — a mandatory instruction that the jury infer the destroyed evidence was unfavorable to USF, plus an order precluding USF from arguing or introducing evidence that it lacked knowledge of the coaches' misconduct throughout McDermott's 2016–2022 tenure — would, in combination, effectively direct a verdict on the central disputed element of their claims. Institutional knowledge is what this case is about. The requested preclusion covers every claim and USF's limitations defense. A sanction of that severity must be commensurate with fault, and the fault here is negligence. *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 824 (9th Cir. 2002); *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 992–93 (N.D. Cal. 2012). The advisory committee's logic is apt even outside Rule 37(e): information lost through negligence "may have been favorable to either party," and a mandatory inference "may tip the balance at trial in ways the lost information never would have." Fed. R. Civ. P. 37 advisory committee's notes to 2015 amendment. Both requests are denied.

### 5.3   Remedies at Trial

Three remedies are ordered to address the fault and cure the prejudice without directing a verdict.

*First*, the plaintiffs may present evidence at trial of the notebooks' existence, their destruction, and USF's preservation failures, and may argue the inferences that evidence reasonably supports. The court will settle whether to give a permissive spoliation instruction — one that permits, but does not require, the jury to infer that the destroyed notebooks contained information unfavorable to USF — at the charging conference. *Cf. Tipp v. Adeptus Health Inc.*, No. CV-16-02317-PHX-

DGC, 2018 WL 447256, at *4–5 (D. Ariz. Jan. 17, 2018) (permitting evidence and argument about destroyed notes in lieu of an immediate instruction).

*Second*, USF may not argue, or elicit testimony suggesting, that the absence of contemporaneous notes or documentation from McDermott corroborates its claimed lack of knowledge. USF remains free to contest knowledge with affirmative evidence — witnesses, emails, the Title IX record — but it may not convert the evidentiary gap its own negligence created into an exhibit for the defense. This narrow preclusion addresses the specific unfairness the destruction created while preserving USF's ability to litigate the merits.

*Third*, the court awards the plaintiffs their reasonable attorney's fees and costs incurred in investigating the destruction and bringing this motion. Fee awards compensate the aggrieved party for the costs of uncovering and litigating spoliation, *Leon*, 464 F.3d at 961, and USF's conduct in failing to collect a priority custodian's notes was not substantially justified. The broader request — fees for all discovery disputes touching McDermott's custodial files, the custodian lists, and the lookback period — is denied: those disputes were hard-fought for independent reasons, and the plaintiffs have not shown that the undisclosed destruction materially prolonged them. The parties must meet and confer on the amount. If they cannot agree within twenty-one days, the plaintiffs may file a fee submission of no more than five pages with supporting time records, USF may respond in five pages within seven days, and the plaintiffs may reply in two pages within seven days.

## CONCLUSION

This resolves ECF Nos. 467 and 489.

**IT IS SO ORDERED.**

Dated: July 8, 2026

_____
LAUREL BEELER
United States Magistrate Judge