JONATHAN SELBIN (Cal. Bar No. 170222)
jselbin@lchb.com
MICHELLE LAMY (Cal. Bar No. 308174)
mlamy@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

ELIZABETH A. FEGAN (Cal. Bar No. 355906)
beth@feganscott.com
FEGAN SCOTT LLP
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100

*Attorneys for Plaintiffs John Does 1-6 and 8-19*
[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, JOHN DOE 12, JOHN DOE 13, JOHN DOE 14, JOHN DOE 15, JOHN DOE 16, JOHN DOE 17, JOHN DOE 18 and JOHN DOE 19, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNIVERSITY OF SAN FRANCISCO, ANTHONY N. (AKA NINO) GIARRATANO, and TROY NAKAMURA, <br><br> Defendants. | CASE NO. 3:22-CV-01559-LB <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS UNIVERSITY OF SAN FRANCISCO, ANTHONY GIARRATANO, AND TROY NAKAMURA'S JOINT MOTION FOR SANCTIONS AGAINST PLAINTIFFS JOHN DOES 1, 2, 3, 11, 15, 16, AND 17 FOR FALSE INTERROGATORY STATEMENTS** <br><br> Judge: Hon. Laurel Beeler <br> Trial Date: October 12, 2027 |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION & SUMMARY OF ARGUMENT ......................................................... 1

II.   BACKGROUND ................................................................................................ 6

III.  ARGUMENT .................................................................................................... 8

    A.    Defendants Seek Sanctions For Testimony About Conduct They Admit Occurred. ............. 8

    B.    Rule 37 Provides No Basis for Sanctions. ................................................................. 12

        1.    Rule 37(d) Does Not Apply to Served Interrogatory Responses. ............................ 12

        2.    Defendants Fail to Satisfy Rule 37(d)'s Meet and Confer Certification. .................. 13

    C.    Defendants Cannot Establish Bad Faith for Inherent Powers Sanctions. ............................. 13

        1.    No Plaintiff Gave Willfully False Testimony on a Material Matter. .......................... 14

        2.    Plaintiffs' Counsel Did Not Improperly Coach Any Witness. ................................. 20

        3.    Defendants' Own Authorities Confirm Their Motion Fails. ................................... 23

IV.   CONCLUSION................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ........................................................................................... 13

*Better Care Plastic Tech. Co. v. Gredale, LLC*,
No. 5:21-cv-216-JWH (SP), 2022 WL 2046206 (C.D. Cal. Mar. 4, 2022)........................ 24

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
No. 06-CV-01848-H (POR), 2009 WL 10671730 (S.D. Cal. Jan. 23, 2009)........................ 4

*C. W. by & through Doe v. Smith*,
No. 24-12547, 2026 WL 1745411 (11th Cir. June 17, 2026) ............................................. 9

*Cangrade, Inc. v. Synopsys, Inc.*,
No. 25-cv-01381-NW, 2026 WL 1691600 (N.D. Cal. June 10, 2026)............................. 13, 14

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)........................................................................................................... 13

*Combs v. Rockwell Int'l Corp.*,
927 F.2d 486 (9th Cir. 1991) ........................................................................................... 24

*ConsumerDirect, Inc. v. Pentius, LLC*,
No. 8:21-cv-01968-JVS (ADS), 2023 WL 8876198 (C.D. Cal. Sept. 21, 2023) ................. 23

*Cottonwood Env't L. Ctr. v. Big Sky Water & Sewer Dist.*,
No. 2:20-CV-00028-BMM, 2025 WL 1906763 (D. Mont. July 10, 2025) ......................... 25

*Da-Silva v. Smith's Food & Drug Centers, Inc.*,
No. 2:12–CV–00595–GMN–VCF, 2013 WL 2558302 (D. Nev. June 8, 2013) ................... 24

*Englebrick v. Worthington Indus., Inc.*,
944 F.Supp.2d 899 (C.D. Cal. 2013) ............................................................................... 23

*Estrada v. Rowland*,
69 F.3d 405 (9th Cir. 1995) ............................................................................................. 12

*Fjelstad v. Am. Honda Motor Co.*,
762 F.2d 1334 (9th Cir. 1985) ..................................................................................... 12, 13

*Fox v. Studebaker-Worthington, Inc.*,
516 F.2d 989 (8th Cir. 1975) ........................................................................................... 12

*In re Girardi*,
611 F.3d 1027 (9th Cir. 2010) ........................................................................................... 5

*Gjovik v. Apple Inc.*,
No. 23-cv-04597-EMC, 2026 WL 1822985 (N.D. Cal. June 24, 2026)............................. 22

*Humphries v. Button*,
No. 2:21-cv-01412-ART-EJY, 2025 WL 588025 (D. Nev. Feb. 21, 2025) ...................... 4, 14

*Klein v. King*,
132 F.R.D. 525 (N.D. Cal. 1990)....................................................................................... 21

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ................................................................... 24

*Lofton v. Verizon Wireless (VAW) LLC*,
308 F.R.D. 276 (N.D. Cal. 2015) ............................................................. 13

*Medicinova, Inc. v. Genzyme Corp.*,
No.: 14-CV-2513 JLS (KSC), 2021 WL 3054874 (S.D. Cal. July 20, 2021) ......................................... 21

*In re Mosaic LLM Litig.*,
No. 24-cv-01451-CRB (LJC), 2025 WL 3290224 (N.D. Cal. Nov. 25, 2025) ................................... 5, 21

*Patrick v. City of Chi.*,
974 F.3d 824 (7th Cir. 2020) ................................................................... 14

*Primus Auto. Fin. Servs. v. Batarse*,
115 F.3d 644 (9th Cir. 1997) ................................................................... 13

*Robledo v. Taylor*,
No. CV-14-01864-PHX-JAT (DMF), 2016 WL 7385007 (D. Ariz. Dec. 21, 2016) ....................... 12, 13

*Santos v. TWC Admin. Ltd. Liab. Co.*,
No. CV 13-04799 MMM, 2014 WL 12558009 (C.D. Cal. Aug. 4, 2014) ............................................... 12

*Say It Visually, Inc. v. Real Est. Educ. Co., Inc.*,
No. 23 CV 3424, 2025 WL 933951 (N.D. Ill. Mar. 27, 2025) ................................................................. 24

*Schmitz v. Asman*,
No. 2:20-cv-00195-DJC-CKD (PS), 2023 WL 7342547 (E.D. Cal. Nov. 7, 2023) ........................... 4, 14

*In re Stratosphere Corp. Sec. Litig.*,
182 F.R.D. 614 (D. Nev. 1998).................................................................. 21

*Taylor v. City of Chi.*,
No. 14 C 737, 2019 WL 4602236 (N.D. Ill. Sept. 23, 2019).................................................................. 24

*The Sunrider Corp. v. Bountiful Biotech Corp.*,
No. SACV 08-1339 DOC (AJWx), 2010 WL 4590766 (C.D. Cal. Oct. 8, 2010.................................... 24

*United States v. Jimenez*,
300 F.3d 1166 (9th Cir. 2002) ................................................................. 4, 14

*ViaSat, Inc. v. Acacia Commc'ns, Inc.*,
2018 WL 899250 (S.D. Cal. Feb. 15, 2018)............................................... 21

*Wyle v. R.J. Reynolds Indus., Inc.*,
709 F.2d 585 (9th Cir. 1983) ................................................................... 24

**Court Rules**

Fed. R. Civ. P. 37(a)(4)............................................................................ 12

Fed. R. Civ. P. 37(d)(1)(A)(ii) .................................................................. 8, 12

Fed. R. Civ. P. 37(d)(1)(B) ...................................................................... 13

**TABLE OF AUTHORITIES**
(continued)

**Page**

Fed. R. Civ. P. 37, Notes of Advisory Comm.-1970 Amend. ....................................................... 12

**Other Authorities**

1 SANC. FED. LAW OF LIT. ABUSE § 27(A)(1) ...................................................................... 13

1 SANC. FED. LAW OF LIT. ABUSE § 48(C)(3) ..................................................................... 12

USF "Cabinet and Leadership Team," available at https://perma.cc/AY76-JQQ5 ...................................... 3

## I.    INTRODUCTION & SUMMARY OF ARGUMENT

Plaintiffs respectfully file this memorandum of points and authorities in opposition to Defendants' Joint Motion for Sanctions (Dkt. No. 516, "Defs.' Mot.").

The motion should be denied.

Plaintiffs did not commit perjury.

Neither they nor their counsel otherwise engaged in any improper conduct.

To be clear: Defendants ask this Court to sanction Plaintiffs for interrogatory responses and deposition testimony about events that USF itself concluded at the time, and its own witnesses now repeatedly confirm, actually *occurred*, i.e., testimony that is *true*. Defendants' motion depends on a method, not a record. First they isolate a fragment of testimony, strip it of context, and recast it as a "concession." Then they pronounce a contradiction between that distorted testimony and a prior interrogatory response, but they repeatedly mischaracterize the plain language of not only that response, but also their very own interrogatory. The purported contradictions all vanish when the deposition testimony and interrogatory responses are read in full, something Plaintiffs repeatedly urged Defendants to do before filing this motion. They declined, but Plaintiffs welcome the Court doing so. Because what becomes clear is that each Plaintiff, without exception, testified openly and honestly, and—most critically for this motion—entirely consistently with their interrogatory responses, often providing *more* detail than the interrogatories called for or their responses contained.

To wit: Doe 17 did not "mischaracterize" Giarratano throwing baseballs at his genitals; Giarratano did. Defendants base their perjury claim on an (apparently serious) contention that it somehow did not count if Giarratano threw them underhand rather than overhand. Nor did Doe 17 "fabricate" locations of coach misconduct; his responses were about the sexually abusive environment to which he was exposed, not a claim that every specific act occurred in each listed place. Doe 16 was not "forced" to admit he kept his scholarship; he testified to the opposite, that "no part of it felt like staying was an option." Doe 15 did not "recant" witnessing Nakamura "helicoptering his penis" on the field; he testified he was present on the field when it occurred, and he described what he knew, how he knew it, and how it affected him. Doe 11 did not "falsely attribute" misconduct to Nakamura; he testified that Nakamura was present and "participating in" Giarratano's misconduct. Doe 3 did not "falsely" claim he was not using drugs; he passed five drug tests, including a blood draw. And Doe 1's testimony about the frequency and nature of sexualized skits was consistent with his

operative supplemental interrogatory responses, which Defendants ignore in favor of superseded ones.[1]

Nor did the abuse Plaintiffs suffered amount to a few random isolated events, as Defendants contend. Nakamura did not "expose[] himself briefly one time during a pre-practice skit with most of the Plaintiffs over 90 feet away." Defs.' Mot. at 1. USF's *own internal investigation* concluded that *in addition to* that incident Nakamura "███████████████████████████████████████████"[2] In fact, Nakamura so regularly exposed himself to players that they developed an expression: "If Coach Naks whips his dick out, you know he's in a good mood."[3] These exhibitions were not accidental or fleeting. During one practice Nakamura "pull[ed] his pants all the way down so you could see his thighs, his inner thighs, his penis, his scrotum. Everything. . . walking out and shaking his genitalia around."[4] Both Coaches also showered with players,[5] and routinely commented on players' genitalia: one John Doe noted he was "shocked at how often Giarratano would talk about peoples' penises," while another noted the Coaches "constantly commented on the shape and size of players' penises."[6]

Again, the purported "contradictions" at issue in this motion concern sexualized misconduct that USF has repeatedly affirmed *actually happened*: first, in an internal HR investigation, then under oath in its arbitration against Coach Giarratano, and again under oath in this litigation.[7] At every turn, USF's own witnesses testify that the Coaches' behavior was improper, violated USF's own policies, and violated Title

---

[1] A detailed comparison of Defendants' mischaracterizations with the actual interrogatory responses and deposition testimony appears in the charts attached hereto as Exhibits A-F.

[2] Ex. G (USF_0001573) at -1574.

[3] Dkt. No. 266-44 (Doe 4 Decl.) ¶ 3. *See also, e.g.*, Dkt. No. 266-53 (Doe 5 Decl.) ¶ 3 ("On multiple occasions, Naks exposed himself in front of myself and other players, which was accepted as a normal part of team culture."); Ex. H (June 17, 2024 Doe 1 Tr.) at 95:10-12 ("I remember [Nakamura] crawling out onto the field like a bear, completely naked."); Ex. I (June 21, 2024 Doe 2 Tr.) at 39:13-40:1 (Nakamura naked in front of players in the locker room and on the table in the press box); Dkt. No. 266-54 (Doe 6 Decl.) ¶ 2 (Nakamura crawling on the field naked).

[4] Ex. J (Doe 19 Tr.) at 254:23-255:2.

[5] *See, e.g.*, Ex. H (Doe 1 Tr.) at 303:22-304:5 (both Coaches showering with the players); Doe 14 Decl. ¶ 4 (Nakamura's weekly showers with players); Dkt. No. 266-47 (Doe 12 Decl.) ¶ 6 (both Coaches waited to shower with the players with their genitals exposed).

[6] Dkt. No. 266-47 (Doe 12 Decl.) ¶¶ 4-5; Dkt. No. 266-44 (Doe 4 Decl.) ¶ 3.

[7] Ex. G (USF_0001573) at -1574; Ex. K (USF Arb. Suppl. Rog. Resps.); *e.g.*, Ex. L (Nelson Tr.) at 268:9-269:11; 295:16-296:13; 296:22-299:8; Ex. M (Fitzgerald Tr.) at 52:22-54:15; 131:3-6; Ex. N (Cross Tr.) at 90:5-93:21; Ex. O (Varga Tr.) at 291:18-22; 293:16-2.

IX. Indeed, USF reached these conclusions *before this lawsuit was ever filed* and ultimately fired the Coaches for this very behavior.[8]  In other words, Defendants ask the Court to sanction as *false* testimony that USF has repeatedly admitted is *true*.

This is not a new development: Defendants—particularly USF—have been gaslighting Plaintiffs about their abuse for years. The Court need not take our word for it: Dean Maggie Baker, a member of USF's "Leadership Team," wrote that "these severe violations and behaviors were tolerated, dismissed, and/or covered up [by USF] at the expense of the physical and mental health of these student-athletes," and concluded that "[t]he outright abuse and the gaslighting of these students . . . is inexcusable."[9] She's right; it is well past time for the gaslighting and cover-up to end. This sexualized misconduct occurred, and it caused devastating and lasting psychological harm to Plaintiffs, a fact confirmed in the independent Rule 35 psychological evaluations performed by *Defendants' own retained expert*, which were produced to Plaintiffs just two days prior to this opposition.[10] Those examinations do not expose invented events and harm, as Defendants undoubtedly hoped they would. The reports confirm the severity of the psychological harm Plaintiffs suffered as a result of the very misconduct Defendants now attempt to minimize.

No one put it as succinctly as Father Fitzgerald, USF's now-retired President. He testified that USF concluded *before this lawsuit was filed* that Nakamura engaged in a pattern of "gross lewdness" that "included exposing his genitals to the players [and] organizing skits for the players to perform that involved lewd behavior," and testified that Nakamura initially lied about but ultimately "admitted to" that behavior.[11] Father Fitzgerald characterized Giarratano's conduct as "grossly negligent," and testified that USF's own investigation concluded that:

> Nino Giarratano, an employee of the university, charged with being head coach of the baseball program, responsible for the culture of the program, responsible for supervising Troy Nakamura, among others, saw sexual misconduct, saw lewd behavior, told Troy to cut it out, but did not report Troy to HR, did not follow our procedures and protocols, did not assume and execute his

[8] Ex. G (USF_0001573); Ex. M (Fitzgerald Tr.) at 52:22-53:18.

[9] Ex. P (Baker Email); *see also* USF "Cabinet and Leadership Team," available at https://perma.cc/AY76-JQQ5.

[10] Exs. Q-V (Defs.' Rule 35 Examination Reports).

[11] Ex. M (Fitzgerald Tr.) at 52:19-53:18; 383:10-25.

responsibilities. So, yeah, there was an agent of the university who saw bad behavior and did not appropriately react to it.[12]

He further testified that Giarratano "lied and covered up [Nakamura's] behavior," but, like Nakamura, ultimately admitted to it.[13] And he confessed at the arbitration to being "█████████████████████████████████" on the baseball team around these issues, which he characterized as "███████"[14] Yet, through this motion, Defendants ask the Court to *sanction* Plaintiffs just for affirming the very conduct Father Fitzgerald testified occurred.

Defendants' motion also fails on the law. Even if the purported contradictions did not dissolve under scrutiny, they certainly do not constitute perjury, which requires proof that the interrogatory response was false, that the falsehood concerned a material matter, and that the respondent acted with "willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Schmitz v. Asman*, No. 2:20-cv-00195-DJC-CKD (PS), 2023 WL 7342547, at *5 (E.D. Cal. Nov. 7, 2023) (quoting *United States v. Jimenez*, 300 F.3d 1166, 1170 (9th Cir. 2002)). Nor do they reflect an "unconscionable plan or scheme to improperly influence [the] court's decision" that amounts to a "fraud on the court" warranting sanctions. *Humphries v. Button*, No. 2:21-cv-01412-ART-EJY, 2025 WL 588025, *3 (D. Nev. Feb. 21, 2025) (cleaned up). What Defendants characterize as "recantations" and "contradictions" are, in every instance, witnesses doing exactly what witnesses do: providing context, clarifying the limits of their recall of events years earlier, or explaining the difference between their lay understanding and legal terminology. That is not perjury. It is testimony which, at worst, amounts to the "[u]sual discrepancies of litigation" that "are not perjury" and "are best sorted through impeachment and credibility determinations by the jury." *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 06-CV-01848-H (POR), 2009 WL 10671730, at *3 (S.D. Cal. Jan. 23, 2009); *see also Humphries*, 2025 WL 588025, at *3 (same).

Moreover, following denial of class certification, this case involves *individual* Plaintiffs asserting individual claims. Defendants disregard that reality. They lump all seven Plaintiffs together, posit a collective scheme to defraud the Court, and seek a sweeping adverse-inference instruction against all Plaintiffs. That is

---

[12] *Id.* at 384:24-385:1; 315:25-316:12.

[13] *Id.* at 53:19-54:15; 304:9-17.

[14] Ex. CC (Fitzgerald Arb. Tr.) at 152:18-19; Ex. M (Fitzgerald Tr.) at 133:21-25.

not how sanctions are imposed. The Court must evaluate each Plaintiff individually, comparing his deposition testimony to his own interrogatory responses. Plaintiffs welcome that review because it confirms what Defendants' motion attempts to obscure: there is no perjury, no fraud, and no basis for sanctions.

Nor did Plaintiffs' counsel engage in improper "coaching." Defendants' principal authority confirms why: "If counsel believes that a witness's testimony requires clarification or needs to refresh the witness's recollection, the proper procedure is for them to question the witness on the record at the conclusion of the deposition rather than confer with the witness during breaks." *In re Mosaic LLM Litig.*, No. 24-cv-01451-CRB (LJC), 2025 WL 3290224, at *1 (N.D. Cal. Nov. 25, 2025) (cleaned up). That is precisely what occurred here: Plaintiffs' counsel asked follow-up questions on the record, in the presence of opposing counsel, exactly as *Mosaic* instructs, and exactly as Defendants' counsel have done. There is nothing improper about that.

Finally, Defendants' own conduct confirms that this motion is tactical, not remedial. As detailed below, Defendants did not engage in a good faith meet and confer, and the timing of this motion is no accident. They rushed the process in an attempt to get this motion on file before the Court could rule upon Plaintiffs' motion for sanctions regarding spoliation of evidence. They demanded a meet and confer only four business days after providing Plaintiffs with a list of 27 purported contradictions. During that cursory meet and confer, they refused to consider Plaintiffs' detailed responses as to each alleged inconsistency, and rejected Plaintiffs' offer to supplement their interrogatory responses—the appropriate remedy for any arguable deficiency. Then barely 24 hours later Defendants filed this motion, which not only fails to consider Plaintiffs' detailed responses on each reported contradiction, but also identifies *for the first time* four new alleged contradictions that Defendants never bothered to raise with Plaintiffs, including all issues as to Doe 2 and the entire "False 'Cover-Up' Responses" category applicable to Does 1, 2, 3, and 11. Defendants clearly did not want Plaintiffs to actually address their (fabricated) concerns. They wanted the leverage of a "me-too" sanctions motion.

Plaintiffs respectfully request that the Court deny Defendants' motion. In addition, as Plaintiffs explained to Defendants before they filed, the motion lacks a legal basis and contains gross mischaracterizations of the factual record made in an attempt to mislead the Court. Accordingly, the motion constitutes unreasonable and vexatious litigation in violation of 28 U.S. Code § 1927. Plaintiffs therefore respectfully request that Defendants be ordered to "satisfy personally the excess costs, expenses, and attorneys' fees" that Plaintiffs incurred responding to it. *In re Girardi*, 611 F.3d 1027, 1060-61 (9th Cir. 2010).

## II.     BACKGROUND

USF first raised purported "inaccuracies" between any Does' interrogatory responses and their deposition testimony on May 7, 2026. Ex. A to Defs.' Mot. (Dkt. No. 516-2). The letter exclusively focused on Does 11 and 15's responses and testimony. *Id.* Plaintiffs responded within one week, explaining how USF's May 7 letter grossly mischaracterized both the responses and testimony. Ex. C to Defs.' Mot. (Dkt. No. 516-4). Plaintiffs' letter refuted, point by point, each of the purported inaccuracies and inconsistencies. *Id.* Based on the pattern of mischaracterizing the interrogatories and testimony, selectively quoting both, ignoring context, and citing testimony that Defendants themselves prematurely cut-off before the witness could fully answer, Plaintiffs noted that USF appeared intent on manufacturing a discovery dispute where none exists. *Id.*

Plaintiffs did not hear from Defendants again for nearly a month. Then, in the late afternoon of June 11, 2026, USF demanded a meet and confer "today or tomorrow regarding Defendants' contemplated motion for sanctions against Plaintiffs for perjury in their interrogatory responses and at deposition, as well as for improper coaching of witnesses during depositions." Ex. X at 18 (June 11, 2026 Email from O. Smith). USF's email included no examples of purported improper testimony beyond those addressed in the parties' May 7 and May 14 correspondence. *Id.* Plaintiffs responded that day, noting the lack of detail, asking USF to identify any purported inconsistencies or coaching, and noting that Plaintiffs were happy to supplement or amend responses to the extent appropriate, once USF identified its concerns with specificity. *Id.* at 13-14 (June 11, 2026 Email from M. von Klemperer). USF refused to provide any further details and preemptively refused to accept supplemental or amended interrogatory responses, which it contended "would silently reward the false statements" it had yet to identify. *Id.* at 15-16 (June 12, 2026, 10:49 a.m. Email from O. Smith).

After further follow-up from Plaintiffs, USF finally agreed to identify the purported deficiencies in Plaintiffs' testimony and responses, which USF provided after close of business on Friday, June 12, 2026. *Id.* at 8-12 (June 12, 2026, 5:26 p.m. Email from O. Smith). USF's list did not identify any purportedly false "cover-up" interrogatory responses as to Does 1, 2, 3, and 11 (which Defendants raised for the first time in this motion). *Id.* Despite providing this list after hours on a Friday evening, USF demanded an immediate meet and confer the following Monday morning. *Id.* At that time, a hearing on Plaintiffs' motion for sanctions was scheduled for the following Thursday (June 18), Dkt. No. 467 at 1, and USF appeared intent on filing its motion for sanctions before that hearing.

Plaintiffs immediately began reviewing USF's list of purported deficiencies, and explained to USF that they needed adequate time to review and assess USF's serious accusations to ensure the parties could have a productive meet and confer. *E.g.*, Ex. X at 5-6 (June 15, 2026, 5:55 p.m. Email from M. von Klemperer); *id.* at 1 (June 15, 2026 Email from J. Selbin). Plaintiffs provided a detailed response on June 17, 2026—a mere three business days after USF first provided its list of purported perjury and coaching. Ex. Y (June 17, 2026 Letter from G. Zacest). The letter included a nine-page table refuting every single entry on USF's list in painstaking detail. *Id.* at 2-10. However, Plaintiffs' letter noted that "a limited number of interrogatory responses could be clarified in light of the Does' deposition testimony, and we are open to discussing appropriate ways to address those during our meet and confer." *Id.* at 1.

At USF's insistence, the parties met and conferred at noon the very next day—June 18, 2026. M. von Klemperer Decl. ¶ 2. During the meet and confer, USF's counsel stated that he had only "briefly" reviewed Plaintiffs' detailed table, but had somehow concluded that the table did not change Defendants' view and that they would be moving for sanctions regardless. *Id*. Plaintiffs requested that the parties walk together through the detailed table, but Defendants refused. *Id*. Plaintiffs repeatedly implored Defendants to review the entire table carefully before filing, but Defendants repeatedly stated that nothing Plaintiffs said would change their determination to move for sanctions. *Id*. Plaintiffs asked that Defendants include Plaintiffs' letter and table as an exhibit with their motion, but Defendants refused. *Id*.

Following the meet and confer, Defendants stated they would be moving for sanctions under Rule 37(d) and the Court's inherent powers. Ex. Z at 5 (June 18, 2026 Email from O. Smith). In several follow-up emails, supported by directly on point Ninth Circuit precedent, Plaintiffs explained that Rule 37(d) is inapplicable given that Plaintiffs had answered Defendants' interrogatories, and Rule 37(d) only concerns the complete failure to respond. *Id.* at 5 (June 18, 2026, 1:10 p.m. Email from M. von Klemperer); *id.* at 3-4 (June 18, 2026, 3:43 p.m. Email from M. von Klemperer). Plaintiffs also explained that Defendants could not include the certification required under Rule 37(d) given that Plaintiffs had answered their interrogatories and were willing to consider appropriate amendments or clarifications. *Id.*

Nevertheless, the next day, Defendants moved for sanctions. The motion included all of the previously rebutted examples of purported perjury and coaching, as well as new, never-before-disclosed examples of purported false testimony that were equally meritless.

## III.    <u>ARGUMENT</u>

Defendants move for sanctions under Rule 37(d)(1)(A)(ii) and the Court's inherent powers. Defs.' Mot. at 4-5. Neither provides a basis for sanctions.

Defendants' motion is fundamentally self-defeating: they accuse Plaintiffs of offering false testimony, while ignoring that the testimony Plaintiffs offered is consistent not only with their interrogatory responses, but with formal findings by USF and sworn testimony from *Defendants' own witnesses*. Even putting that fatal flaw aside, Rule 37(d) does not apply to the conduct Defendants challenge, and in any event, Defendants failed to comply with the Rule's mandatory procedural prerequisites for sanctions. Nor can Defendants invoke the Court's inherent authority, which requires clear evidence of bad faith.

### A.    Defendants Seek Sanctions For Testimony About Conduct They Admit Occurred.

All of the testimony at issue here involves events that USF itself concluded at the time, and its own witnesses repeatedly testify now, *actually occurred*. Unable to dispute the underlying events, Defendants instead attempt to minimize them. That approach says nothing about the credibility of Plaintiffs' testimony and everything about USF's continued failure to appreciate the seriousness of the misconduct at issue in this case and its impact on these student-athletes.

The parties' meet and confer before this motion makes that reality plain. During the meet and confer, and again in their motion, Defendants' repeat their claim that Doe 7 "recanted his allegations." Defs.' Mot. at 2, 24.[15] In response, Plaintiffs directed Defendants to the actual record with respect to Doe 7: his purported "recantation" appears in a declaration drafted for him by USF's counsel who contacted him while he was an unrepresented adverse party. Setting aside the ethical impropriety of USF counsel meeting with and drafting a declaration for an adverse pro se party,[16] that declaration does not erase the sworn testimony USF earlier elicited from Doe 7 when it suited USF's interests to affirm (rather than minimize) the sexual misconduct at the heart of this case. In advance of USF's arbitration with Giarratano, USF's counsel represented under penalty of perjury that Doe 7 suffered sexual misconduct:

---

[15] Doe 7 has nothing to do with this motion. Nonetheless, Plaintiffs welcome the Court's review of the full record regarding Doe 7 and USF's counsel's interactions with him.

[16] An ethics expert who evaluated both Plaintiffs' counsel's conduct and USF's conduct regarding Doe 7 concluded: "Defense Counsel's conduct in obtaining and drafting the Doe 7 Decl. appears to violate ethical rules and standards that apply to attorney communications with an unrepresented adverse party . . . . Additionally, . . . there is a concern about whether Defense Counsel violated the duty of candor to the Court." Dkt. No. 300-25 (Preliminary Expert Report of Merri Baldwin) ¶ 9.

PLS.' OPP. TO JOINT MOT. FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

> Doe 7, a former USF player from 2014, will appear voluntarily to testify. He is expected to recount instances of Nakamura's **regular engagement in sexualized conduct** and comments in the presence of the Claimant, such as making inappropriate remarks about female students and gesturing for them to expose themselves in the dorms. Additionally, Doe 7 will testify that 'Kangaroo Court' was a practice in 2014, with the coaches' knowledge and participation. He will also confirm the occurrence of stripping drills during practice . . . .

Dkt. No. 300-16 ¶ 9 (emphasis supplied). Doe 7 then testified under oath at the arbitration to precisely that. *See* Dkt. No. 299-20 ¶ 12 (quoting this and additional testimony from Doe 7, including Doe 7 affirming that Nakamura exposed his genitals in Doe 7's presence). In other words, the same witness Defendants now invoke to *undermine* Plaintiffs' allegations was previously offered by USF, under oath, to *affirm* those allegations.

When reminded of USF's own findings regarding the Coaches' misconduct, and of the testimony from their own witnesses confirming it occurred, Defendants did not—and could not—dispute the record. Instead, they insisted that Plaintiffs failed to appreciate "the factual nuance that is at the heart of our defense," which is apparently that this case "is entirely different than the widespread 'sexual abuse' accusations, with frequent references to Jerry Sandusky and Penn State peppered in, that characterize your complaint, your media strategy, and the arguments you've made to the Court." Ex. Z at 1 (June 18, 2026 Email from J. Baum). The "nuance" Defendants identify appears to be this: unless Plaintiffs suffered the most extreme conceivable forms of sexual abuse, the Coaches' misconduct (and USF's failure to protect Plaintiffs from or redress it) are not serious enough to warrant relief. But that is not "nuance." It is another clear attempt by Defendants to minimize sexualized abuse that indisputably occurred—a coach repeatedly exposing himself to players, coaches repeatedly commenting on the size and shape of players' genitals, players being forced to strip nude with nothing but a sock covering their genitals,[17] and a coach targeting a player's genitals with baseballs—as conduct that does not deserve meaningful scrutiny because it was not *even worse*. That is an absurd standard, and it is not the law. *See C. W. by & through Doe v. Smith*, No. 24-12547, 2026 WL 1745411, at \*7 (11th Cir. June 17, 2026).

The relevant question, for the purposes of this motion, is whether Plaintiffs testified falsely about the misconduct and the harm it caused. The record answers that question decisively. Whatever Defendants intend

---

[17] When deposing Doe 15, USF's counsel trivialized this incident, casually asking Doe 15 whether the "sock on cock" lasted "just real quick" or whether he "ha[d] to stand there for half an hour"—as though duration were the measure of degradation. Ex. ZZ (Doe 15 Dep.) at 85:10-16.

to argue at trial, it cannot be that this misconduct never occurred. After originally lying to USF's investigators, Nakamura admitted he regularly exposed himself to players on the baseball field and participated in sexual skits with his pants down.[18] Giarratano admitted he was present for every skit, watched Nakamura expose himself, never reported it, and knew he should have.[19] And when it suited USF—i.e., in its arbitration against Giarratano for wrongful termination—USF certified under penalty of perjury that Plaintiffs' allegations here "are true or substantially . . . true."[20]

USF's own investigation confirmed both the existence and severity of the abuse. HR Director Nelson's official findings included, among other things, that Nakamura:



Ex. G (USF_0001573) at -1574. She concluded that Giarratano:

Id. at -1573. Upon reviewing Plaintiffs' initial complaint in this lawsuit in March 2022, Athletic Director McDermott agreed: "                                    ."[21]

Father Fitzgerald's conclusion about this case echoed those of his fellow administrators. He testified that *before this lawsuit was filed*, USF concluded that Nakamura's misconduct "included exposing his genitals to the players [and] organizing skits for the players to perform that involved lewd behavior."[22] Fitzgerald also testified that Giarratano—himself a mandated reporter under Title IX—"

---

[18] Ex. AA (USF1892) at -893; *see also* Ex. BB (Nelson Arb. Dep.) at 111:12-19 ("It was confirmed by [Nakamura] that those actions were true. So it was not [a] false [accusation].").

[19] Ex. EE (Arb. Tr. Vol. V) at 1248:13-14; Ex. EE (USF_0004448) at -706-07.

[20] Ex. K (USF Arb. Suppl. Rog. Resps.) at 9-10.

[21] Ex. FF (USF_0057216) at -216.

[22] Ex. M (Fitzgerald Dep.) at 52:22-53:18.

████████████████████████████████████████████████."[23] When asked whether Giarratano had put the safety of athletes at risk, Father Fitzgerald testified: "████████████████████████████████████████████████████████████████████████████."[24] He testified that this amounted to "gross negligence on the part of the head coach, and [] lewd and very unprofessional behavior on the part of the assistant coach."[25]

Most recently, Defendants' own retained expert, Dr. Daniel Martell, confirmed in his reports that the baseball program at USF inflicted serious psychological harm on the Does. Doe 1, for example, was left with "████████████████████████████████████████████████████████."[26] After administering his own objective psychological testing, Dr. Martell found: "████████████████████████████████████████████████████████████████████████████████████████████████"[27] Dr. Martell reached similar conclusions about *every other Doe* for whom he has produced a report, to date.[28] In short, Defendants hired their own forensic psychologist—no doubt hoping to undermine Plaintiffs' allegations—only for that expert to confirm that the Does now suffer chronic mental distress caused by a sexually hostile and abusive coaching environment that Defendants created and perpetuated.

Defendants' current claim that—notwithstanding all of this evidence—Plaintiffs are "exaggerating" the harm they suffered is not a basis for sanctions. It is not evidence of perjury. And it is not evidence of a scheme to mislead the Court. It is a disagreement over the severity of the abuse at issue in this case—a disagreement contradicted by the very record Defendants created, and a disagreement Plaintiffs welcome putting before a jury.

---

[23] Ex. GG (Arb. Tr. Vol. IX) at 2333:7-10.

[24] Ex. HH (Arb. Tr. Vol. X) at 2426:22-2427:2 (emphasis supplied).

[25] Ex. M (Fitzgerald Dep.) at 131:3-6.

[26] E.g., Ex. Q (Doe 1 Rule 35 Report) at 4-5.

[27] *Id.* at 5.

[28] *See* Ex. R (Doe 2 Rule 35 Report); Ex. S (Doe 3 Rule 35 Report); Ex. T (Doe 15 Rule 35 Report); Ex. U (Doe 16 Rule 35 Report); Ex. V (Doe 18 Rule 35 Report); Ex. W (Doe 19 Rule 35 Report).

**B.    Rule 37 Provides No Basis for Sanctions.**

**1.    Rule 37(d) Does Not Apply to Served Interrogatory Responses.**

There is no legal or factual basis to impose sanctions under Rule 37(d)(1)(A)(ii). By its plain terms, Rule 37(d) applies only when a party, after being served with interrogatories or requests for production, "fails to serve its answers, objections, or written response." Fed. R. Civ. 37(d)(1)(A)(ii). As the Advisory Committee explained when adopting the Rule, it addresses "total noncompliance"—that is, when a party "remain[s] completely silent" in response to written discovery. Fed. R. Civ. 37, Notes of Advisory Comm.—1970 Amend.

The Ninth Circuit strictly construes Rule 37(d), *Estrada v. Rowland*, 69 F.3d 405, 406 (9th Cir. 1995), and has consistently held that it "d[oes] not give the district court authority to impose sanctions" where answers or objections have been served, even where those answers "were incomplete, evasive and in some cases false," *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1339-40 (9th Cir. 1985). *See also id.* (reversing sanctions order under Rule 37(d) where party served 85 pages of objections and partial answers).[29] Where a party believes responses are incomplete or evasive, "the remedy is a motion to compel under Rule 37(a)," not a sanctions motion under Rule 37(d). *Santos*, 2014 WL 12558009, at \*4.

This alone forecloses Defendants' motion. Defendants do not—and cannot—contend that any Plaintiff failed to respond to written discovery.[30] Indeed, Defendants' motion depends entirely on Plaintiffs' fulsome interrogatory responses, which Defendants quote extensively before arguing that certain responses were contradicted by later deposition testimony. Whether that premise is correct—and it demonstrably is not—Rule 37(d) does not authorize sanctions because responses were served. *Fjelstad*, 762 F.2d at 1339.

Plaintiffs specifically identified this dispositive shortcoming during the parties' meet and confer, complete with citation to binding Ninth Circuit authority. Ex. Z at 5 (June 18, 2026, 1:10 p.m. Email from M.

---

[29] *Accord Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 995 (8th Cir. 1975); *Robledo v. Taylor*, No. CV-14-01864-PHX-JAT (DMF), 2016 WL 7385007, at \*3-4 (D. Ariz. Dec. 21, 2016); *Santos v. TWC Admin. Ltd. Liab. Co.*, No. CV 13-04799 MMM (CWx), 2014 WL 12558009, at \*4 (C.D. Cal. Aug. 4, 2014).

[30] Defendants cite Fed. R. Civ. P. 37(a)(4) for the proposition that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Defs.' Mot. at 4. But Defendants omit the key limiting language from Rule 37(a)(4)—it applies exclusively "[f]or purposes of this subdivision (a)." Fed. R. Civ. P. 37(a)(4). By its express terms, it has no bearing on Rule 37(d). *Id.*; *see also* 1 SANC. FED. LAW OF LIT. ABUSE § 48(C)(3) ("By its terms, (a)(4) is applicable only to (a), not (d)"). Indeed, accepting Defendants' position would undermine the entire structure of Rule 37 and lead to absurd results. Faced with an incomplete interrogatory response, a party could elect not to move to compel under Rule 37(a) and instead move immediately for case terminating sanctions under Rule 37(d). Courts have uniformly rejected that approach. *See, e.g.*, *Santos*, 2014 WL 12558009, at \*4 ("[T]he remedy [for an incomplete response] is a motion to compel under Rule 37(a).").

PLS.' OPP. TO JOINT MOT. FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

von Klemperer). Defendants offered no coherent response or contrary authority, and elected to move under Rule 37(d) nonetheless.

### 2.    Defendants Fail to Satisfy Rule 37(d)'s Meet and Confer Certification.

A motion under Rule 37(d) "*must* include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act *in an effort to obtain the answer or response* without court action." Fed. R. Civ. P. 37(d)(1)(B) (emphasis supplied).

Defendants include no such certification because they cannot. During the parties' meet and confer, Plaintiffs offered to clarify or supplement any interrogatory responses Defendants believed required clarification in light of deposition testimony. Defendants rejected that offer outright and instead proceeded directly to this motion. This failure, too, is dispositive. *See Robledo*, 2016 WL 7385007, at *3-4 (denying motion for sanctions under Rule 37(d) where party "did respond" to interrogatory and motion does not include required certification) (emphasis omitted).

### C.    Defendants Cannot Establish Bad Faith for Inherent Powers Sanctions.

The Court's inherent power to sanction "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649-50 (9th Cir. 1997) (inherent powers sanctions only appropriate in "rare and exceptional case"). It is not enough that conduct be unreasonable, negligent, or even reckless. *See Cangrade, Inc. v. Synopsys, Inc.*, No. 25-cv-01381-NW, 2026 WL 1691600, at *4 (N.D. Cal. June 10, 2026) (collecting cases). Rather, absent a "willful violation of a court order," inherent power sanctions require clear proof of "bad faith." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). That, in turn, "requires proof of bad intent or improper purpose" and "the court must make an explicit finding" of bad faith. *Id.*; *see also id.* (reversing sanctions where there was not "any evidence of bad intent or improper purpose"). The burden of proving bad faith rests squarely with the moving party. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015). And because bad faith is personal, it cannot be imputed from one plaintiff to another absent proof that each individually participated in the alleged misconduct. 1 SANC. FED. LAW OF LIT. ABUSE § 27(A)(1).

Those principles carry particular force where, as here, the alleged misconduct is purportedly false testimony. Courts distinguish sharply between perjury, which necessitates a showing of "willful intent to provide false testimony" "concerning a material matter," from mere "confusion, mistake, or faulty memory."

*Schmitz v. Asman*, 2023 WL 7342547, at \*5 (quoting *United States v. Jimenez*, 300 F.3d 1166, 1170 (9th Cir. 2002)). The former may warrant sanctions; the latter presents, at most, "fertile ground for vigorous impeachment." *Id.*; *see also id.* (denying sanctions where "there is no indication of a willful intent to provide false testimony in" interrogatory responses). And even where a party actually lies under oath, a court may still decline to impose sanctions where the testimony concerns "peripheral matters" that were (or could be) "fully explored in cross-examination." *Patrick v. City of Chi.*, 974 F.3d 824, 831-32 (7th Cir. 2020) (affirming denial of sanctions). That is because inherent power sanctions exist to protect the integrity of the judicial process— not to punish every arguable inconsistency—and are appropriate only "where the accused's conduct necessitates the Court's intervention to ensure fundamental procedural and substantive fairness in the litigation." *Cangrade, Inc.*, 2026 WL 1691600, at \*4.

### 1.    No Plaintiff Gave Willfully False Testimony on a Material Matter.

Defendants' motion begins with a fundamental flaw: it treats seven individual Plaintiffs as though they are one. They are not. Each Plaintiff gave his own interrogatory responses, sat for his own deposition, and testified from his own experiences. Whether sanctions are warranted must be evaluated Plaintiff by Plaintiff, interrogatory by interrogatory, question by question, and answer by answer—not through generalized allegations of a collective "scheme." For each Plaintiff, Defendants must show that his interrogatory responses were false, that the falsehood concerned a material matter, and that he acted with "willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory," *Schmitz*, 2023 WL 7342547, at \*5, as part of an "unconscionable plan or scheme to improperly influence [the] court's decision" that amounts to a "fraud on the court." *Humphries*, 2025 WL 588025 at \*3 (cleaned up).

Defendants do not satisfy any element as to any Plaintiff. They do not show falsehood because the deposition testimony confirms—rather than contradicts—the substance of each interrogatory response. They do not show materiality because the differences they identify concern peripheral details, not core allegations. And they do not show willful intent because every Plaintiff, without exception, testified openly and freely, often providing *more* detail at deposition than the interrogatory responses contained. Witnesses who intend to deceive do not volunteer information that fills in the record. These witnesses did, repeatedly. Attached as Exhibits A-F are charts that detail—line by line—why each of Defendants' attacks lacks a factual basis. Plaintiffs invite the Court's close review of that evidence, and briefly summarize it below.

PLS.' OPP. TO JOINT MOT. FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB

**Doe 17.** Defendants' attack on Doe 17 is particularly revealing because their own examples confirm, rather than undermine, his allegations—a likely reason many appear only in a footnote. *See* Defs.' Mot. at 16, n.6. For example, Defendants accuse Doe 17 of falsely claiming in his interrogatory responses that Giarratano "hurled" baseballs at his genitals. But Doe 17 testified, consistent with his interrogatory responses, that Giarratano repeatedly threw baseballs at his genitals, that one struck him there, and that the abuse "kept" happening. Ex. F (Doe 17 Chart) at 1; Ex. AAA (Doe 17 Tr.) at 308:1-14; 299:2-10; 254:21-25. Defendants' accusation of perjury thus turns not on whether the abuse occurred—it did—but on whether one throw was accurately described as a "soft toss." Ex. AAA (Doe 17 Tr.) at 307:16-24. That semantic distinction does not create a contradiction; it illustrates the method underlying Defendants' entire motion: minimize admitted misconduct to manufacture inconsistency where none exists.

Defendants also fault Doe 17's interrogatory responses for claiming Giarratano "grabbed Plaintiff by the neck"—yet Doe 17 testified to exactly that. Ex. F (Doe 17 Chart) at 4; Ex. AAA (Doe 17 Tr.) at 171:15-172:6. Defendants' related contention—that Doe 17 contradicted his interrogatory response by testifying Giarratano only "put his hands" on him once—arises entirely from Defendants' questioning. Ex. F (Doe 17 Chart) at 5-6. It was USF's counsel who chose the phrase "put his hands on you," and Doe 17 reasonably understood it to mean a violent assault, not pushing or shoving described in his responses. *Id.* Indeed, Giarratano used that very phrase before he grabbed Doe 17's neck, telling Doe 17 he wished he could "put hands on" him. *Id.* at 5-6; Ex. AAA (Doe 17 Tr.) at 171:15-172:6. Any ambiguity thus arose from Defendants' poorly framed questions, not from false testimony.

The same is true of Defendants' "falsified locations" theory. Defs' Mot. at 8-9. Doe 17's interrogatory responses described the Coach Defendants' creation and normalization of a hostile, sexually abusive environment—not a representation that he personally witnessed a discrete act of misconduct in every location listed. Ex. F (Doe 17 Chart) at 10-11. At his deposition, Doe 17 consistently confirmed the underlying misconduct, while clarifying details (including locations). *Id.*; Ex. AAA (Doe 17 Tr.) at 289:7-8; 149:2-8; 168:12-169:10; 289:12-21; 291:15-19; 285:3-10.   The same is true of Defendants' remaining examples involving Giarratano's comments about players' genitals, the retaliation Doe 17 experienced, and which coach was present at "fat camp." *See* Ex. F (Doe 17 Chart) at 2-3; 7-9.

**Doe 16.** Defendants' attack on Doe 16 follows the same pattern. They claim Doe 16 "admitted" during

his deposition that he was not forced to give up his scholarship based on a single, isolated response of "Sure." Ex. E (Doe 16 Chart) at 2. But the testimony Defendants omit immediately resolves their manufactured inconsistency: Doe 16 testified that although USF's rules technically permitted him to remain on the team, "no part of it felt like staying was an option," which is precisely what he said in his interrogatory response. *Id.*; Ex. BBB (Doe 16 Tr.) at 402:4-17. Defendants' reliance on a one-worded "sure" as a supposed "contradiction" of detailed interrogatory responses, while ignoring the testimony that followed, epitomizes the selective reading that drives their motion.

None of Defendants' remaining allegations remotely approach perjury. Consistent with his interrogatory responses, Doe 16 confirmed Giarratano was present for and laughed at Nakamura's inappropriate comments, recalling that detail after honestly searching his memory. Ex. E (Doe 16 Chart) at 1; Ex. BBB (Doe 16 Tr.) at 91:9-18; 270:2-17. He likewise confirmed the recurring nature of the inappropriate café exercises, described several specific incidents in detail, and candidly acknowledged the limits of his recollection as to others. Ex. E (Doe 16 Chart) at 3; Ex. BBB (Doe 16 Tr.) at 136:1-8. He confirmed his interrogatory response concerning Giarratano's creation, normalization, and encouragement of a sexually inappropriate, hostile, and abusive environment—testifying that Giarratano co-initiated the sexualized café exercises with Nakamura, called Doe 16 a "pussy," cultivated an in-group/out-group culture in which dissenters were "shunned, buried, attacked," and fostered an atmosphere of fear that discouraged reporting. Ex. E (Doe 16 Chart) at 4-5; Ex. BBB (Doe 16 Tr.) at 91:9-92:8; 120:21-121:4; 402:25-404:20; 152:3-22.

**Doe 15.** Defendants' principal accusation against Doe 15—that he "falsely claimed to have witnessed Nakamura's alleged nudity"—rests on a gross mischaracterization of both his testimony and his interrogatory responses. Defs.' Mot. at 5-6. To be clear: *it is undisputed that Doe 15 was on the field when Nakamura helicoptered his penis at players*. Rather than confront that fact, Defendants attempt to recast the issue as whether Doe 15 literally saw Nakamura's penis. But that was never Doe 15's claim. His interrogatory responses expressly identified other players, including Doe 2, as the individuals who saw Nakamura expose himself and then immediately relayed that abuse to Doe 15. *See* Ex. C (Doe 15 Chart) at 1-2; Ex. 7 to Defs' Mot. (Dkt. No. 516-11) (Doe 15's Resp. to USF's Interrogatories). Doe 15 testified that immediately hearing about the incident was "traumatizing" and adversely affected his "ability to perform and be comfortable in life as a student athlete at [USF]." Ex. ZZ (Doe 15 Tr.) at 277:16-22. When Defendants' counsel challenged

Doe 15's testimony that he "did suffer" from this act, he attempted a further explanation but was repeatedly *cut-off mid-sentence by Defendants' counsel*:

> A: . . . That's like saying if your boss helicopters his penis in the office to one of your coworkers and your boss was rude to you, he –
>
> Q: Mr. [Doe 15], you've answered the question. My follow up question is –
>
> [Objection]: . . . [Y]ou do not get to cut off the witness' answer. He was explaining – you asked how he suffered because of this, and he is answering your question . . . .
>
> A: He's giving me some explanation about something I don't even know what. My next question is –

Ex. ZZ (Doe 15 Tr.) at 276:21-277:10. Doe 15's responses to Giarratano's interrogatories, served at the same time, reflect his understanding—which he candidly explained at his deposition—that *being present on the field when his Coach helicoptered his penis at other players*, and learning of it immediately, meant he had witnessed the event. Ex. C (Doe 15 Chart) at 1-2; Ex. ZZ (Doe 15 Tr.) at 270:21-271:3. Such an explanation is the opposite of concealment or deceit.

Defendants' remaining attacks on Doe 15 are equally meritless. Doe 15 testified about Nakamura's sexual remarks—including being called a "fucking cunt"—and acknowledged the limits of his recall as to other specific comments made years earlier. Ex. C (Doe 15 Chart) at 3-4; Ex. ZZ (Doe 15 Tr.) at 147:21-25; 279:10-19; 282:7-22. Honest limitations in recollection are not perjury. Defendants also fault Doe 15 for asserting in his interrogatories that Giarratano regularly overheard Nakamura's inappropriate comments and laughed, yet they failed to ask Doe 15 a single question on that subject during his deposition. Ex. C (Doe 15 Chart) at 3-4. Having chosen not to explore the issue, Defendants cannot now recast the absence of testimony as evidence of falsity.

**Doe 11.** Defendants fail to identify any false statement in Doe 11's interrogatory responses. They argue that Doe 11 improperly attributed misconduct to Nakamura, but Doe 11 testified that Nakamura participated "daily" in Giarratano's misconduct. Ex. D (Doe 11 Chart) at 1; Ex. CCC (Doe 11 Chart) at 138:9-21. That Nakamura did not direct misconduct at Doe 11 "individually" does not mean Doe 11 did not suffer from the misconduct, including Nakamura's participation in, and failure to stop, Giarratano's misconduct. Ex. D (Doe 11 Chart) at 1. Defendants asked virtually no follow-up questions about what Doe 11 meant by Nakamura not directing misconduct at him "individually" and cannot now manufacture perjury from an ambiguity they chose not to explore. *See* Ex. D (Doe 11 Chart) at 1; Ex. CCC (Doe 11 Chart) at 139:1-2; 138:21; 275:10.

Defendants' attack on Doe 11's statement that Giarratano "routinely" showered with players likewise fails. Defendants point out that Doe 11 personally recalled only one such incident during his deposition, but that ignores that USF's interrogatory defined "YOU" to include Doe 11's attorneys and agents, and the interrogatory asked about misconduct suffered by "any member of the USF baseball team." Ex. D (Doe 11 Chart) at 3; Ex. II (USF Interrogatories to Doe 11 at ¶1); Ex. 16 to Defs.' Mot. (Dkt. No. 516-20) (Doe 11's Resp. to USF's Interrogatories). Doe 11's response properly reflected the broader factual investigation conducted in this case, consistent with Rule 33, including evidence in the record that Giarratano routinely showered with other players. As to Doe 11's identification of medical providers, USF's interrogatory asked him to identify all providers he saw from 1996 and the present, without limiting the subject matter, and Doe 11 did so. *See* Ex. D (Doe 11 Chart) at 2; Ex. 16 to Defs.' Mot. (Dkt. No. 516-20) (Doe 11's Resp. to USF's Interrogatories). That Doe 11 could not recall, decades later, whether he discussed the baseball team during those sessions does not make that response false, especially when Giarratano referred him to the therapist in question. Ex. D (Doe 11 Chart) at 2; Ex. CCC (Doe 11 Chart) at 140:6-19; 141:14-17.

**Doe 3.** Defendants contend that Doe 3's interrogatory responses falsely claimed that he had not been taking drugs before the blood draw ordered by Giarratano—a test USF itself concluded was improper. Ex. G (USF_0001573) at -1574. But Doe 3 passed that test and others, with negative results confirming exactly what his response said. Ex. B (Doe 3 Chart) at 2; Ex. DDD (Doe 3 Tr., June 24, 2024) at 142:23-143:2; 253:17-254:4. Doe 3 testified openly and consistently that he was not a regular drug user and was candid that he might have had a single "hit" at some uncertain point in the past. Ex. B (Doe 3 Chart) at 2; Ex. DDD (Doe 3 Tr., June 24, 2024) at 150:2-8; 253:9-15; Ex. EEE (Doe 3 Tr., June 25, 2024) 52:2-11. There is no falsehood, let alone willful intent.

Defendants' claim that Doe 3 falsely attributed misconduct to Nakamura in his interrogatory responses fares no better. Far from disclaiming Nakamura's conduct, Doe 3 testified in detail about Nakamura's extensive misconduct and its impact on his mental health. Ex. B (Doe 3 Chart) at 1; Ex. EEE (Doe 3 Tr., June 25, 2024) at 28:4-9, 29:1-4, 29:15-30:23, 34:3-6, 35:10-21, 42:1-16, 85:17-86:11, 87:5-10; Ex. DDD (Doe 3 Tr., June 24, 2024) at 154:13-155:4. Defendants likewise mischaracterize Interrogatory No. 20 and Doe 3's response. The interrogatory asked Doe 3 to identify any occasion on which he complained of or reported an incident involving the "DEFENDANT COACHES"—Defendants' own defined term for Giarratano and

Nakamura collectively. Ex. B (Doe 3 Chart) at 4; Ex. JJ (USF Interrogatories to Doe 3 at ¶3 & p. 4); Ex. 25 to Defs' Mot. (Dkt. No. 516-29) (Doe 3's Resp. to USF's Interrogatories, Set Two). It did not ask him to parse his reports by coach. In any event, Doe 3's testimony confirmed his response: he testified that he discussed the "mental abuse" and his resulting mental health struggles with USF's Director of Player Development and then USF's sports therapist, and that he attributed those struggles to both Giarratano and Nakamura. Ex. B (Doe 3 Chart) at 4; Ex. EEE (Doe 3 Tr., June 25, 2024) at 135:17-21; Ex. DDD (Doe 3 Tr., June 24, 2024) at 153:14-18; 154:13-155:4; 251:14-252:8. That is exactly what the interrogatory sought.

**Doe 1.** Defendants' sole attack on Doe 1 is meritless. The operative interrogatory responses identify sexualized skits across the Fall 2020, Spring 2021, and Fall 2021 semesters and specify particular Fall 2021 instances. Ex. A (Doe 1 Chart) at 1-2; Ex. 26 to Defs' Mot. (Dkt. No. 516-30) (Doe 1's Supp. Resp. to Giarratano's Interrogatories). This is consistent with Doe 1's testimony that the skits occurred "a couple times a week, at least," beginning his first year. Ex. A (Doe 1 Chart) at 1-2; Ex. FFF (Doe 1 Tr, Dec. 12, 2024) at 106:6-25; 108:7-22. That Doe 1 recalled "extremely vulgar" skits in vivid detail while not remembering every instance of routine, repeated misconduct is the hallmark of honest testimony about earlier events—particularly from a sexual misconduct victim—not perjury. Ex. A (Doe 1 Chart) at 1-2; Ex. FFF (Doe 1 Tr, Dec. 12, 2024) at 108:13-22.

**The "False Cover-Up" Responses.** Does 1, 2, 3 and 11 served their interrogatory responses to USF Special Interrogatories (Set Two) Nos. 21–24 in May of 2025, more than a year before Defendants brought this motion. Yet Defendants never identified any purported issues with respect to their responses at any time prior to filing their motion, nor did they meet and confer about them. The same is true for Doe 2, who appears only in this allegation: at no point prior to filing their motion did Defendants identify *any* issues with respect to, or meet and confer about, Doe 2. Their motion must be denied as to this issue and as to Doe 2 on that basis alone. It also reflects the slap-dash and rushed manner with which this motion for sanctions was filed, and the impropriety of Defendants' attempt to obtain sweeping sanctions across seven Plaintiffs.

Even more troubling is Defendants' demonstrably false characterization of those interrogatories and the Does' responses to them. USF's entire argument is premised on the claim that "[t]hese interrogatories were designed to learn about Plaintiffs' personal knowledge." Defs' Mot. at 16-17. But the interrogatory is not drafted to elicit that information, and Plaintiffs expressly answered them as asked. The interrogatories

defined YOU as follows: "The terms 'YOU' and 'YOUR' as used herein refer to Plaintiff JOHN DOE 1, *and anyone else acting on his behalf, including his attorneys, agents, consultants, parents, family members and anyone else who is required by law to investigate his claims and/or provide the information sought by these requests*." Ex. KK (USF Interrogatories to Doe 1) at ¶1 (emphasis supplied). The interrogatory itself states: "STATE ALL FACTS REFERRING or RELATING TO all 'cover ups' YOU reference in YOUR Opposition to Defendants' Motions to Dismiss and USF's Motion to Strike Second Amended Complaint ('Opposition') (*see* Dkt. No. 114 at pp. 4:24-28, 5:18-19, 6:2-10, 11:22-12:8). The definition of the phrase 'cover up(s)' shall carry the same meaning as YOU intended it to carry in YOUR opposition." *Id*. at 4.

As such, all "cover ups" referenced in Plaintiffs' Opposition encompasses information over the entire relevant time period, and YOU was defined expressly to include not just each individual Plaintiff but their attorneys and others. Plaintiffs responded accordingly, as directed, noting explicitly in their response: "Plaintiff further objects to this Interrogatory in that it implies that the brief in question was filed on behalf of Plaintiff individually, when, in fact, it was filed on behalf of fourteen Plaintiffs. *Plaintiff's response below contains facts known to all Plaintiffs collectively. Plaintiff's verification to these Interrogatories should not be construed to imply that Plaintiff has personal knowledge of all facts provided in this response.*" Ex. LL (Doe 1 Resps. to USF Interrogatories) at 4 (emphasis supplied).

Defendants cannot transform an interrogatory they drafted, a response they accepted without objection, and a clarification they chose not to address, into a sanctions issue more than a year later. Plaintiffs answered the interrogatories as written, based on the definition of "YOU" included therein, and expressly cautioned that the responses included facts known collectively to Plaintiffs—not merely facts within each individual Plaintiff's personal knowledge. If Defendants wanted a narrower interrogatory seeking only each Plaintiff's personal knowledge, they could have drafted one, or met and conferred, or probed this issue during depositions. They did none of those things. Instead, Defendants now seek sanctions for answers that complied with the interrogatories they actually served. That is not a discovery violation; it is an attempt to manufacture one after the fact.

### 2. Plaintiffs' Counsel Did Not Improperly Coach Any Witness.

There was no coaching of witnesses. As the very case Defendants primarily rely upon confirms: "If counsel believes that a witness's testimony requires clarification or needs to refresh the witness's recollection,

the proper procedure is for them to question the witness on the record at the conclusion of the deposition rather than confer with the witness during breaks." *In re Mosaic.*, 2025 WL 3290224, at \*1 (cleaned up); *see also Medicinova, Inc. v. Genzyme Corp.*, No.: 14-CV-2513 JLS (KSC), 2021 WL 3054874, at \*7 (S.D. Cal. July 20, 2021) (same). As another case Defendants (selectively) quote explains: "This Court will not preclude an attorney, during a recess that he or she did not request, from making sure that his or her client did not misunderstand or misinterpret questions or documents, or attempt to help rehabilitate the client by fulfilling an attorney's ethical duty to prepare a witness. So long as attorneys do not demand a break in the questions, or demand a conference between question and answers, the Court is confident that the search for truth will adequately prevail." *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998).[31]

That is precisely what Plaintiffs' counsel did here: *following* examination by the Defendants, they conducted a brief redirect that revisited a few issues and clarified testimony. That practice is routine, proper, and no different than similar redirects conducted by USF counsel on multiple occasions. The chart attached as Exhibit MM reflects numerous instances in which Defendants' counsel conducted similar—and in many cases more extensive—redirect examinations. Defendants' argument does not identify misconduct; it identifies ordinary deposition practice that both sides properly employed throughout this case. Nevertheless, Plaintiffs address below Defendants' gross mischaracterization of the deposition testimony at issue.

**Doe 17.** Defendants' coaching allegation fails because Doe 17's testimony on the "toxic culture" on the USF baseball team never changed—Defendants simply misrepresent it. From the outset, Doe 17 defined "toxic culture" as "giving into, you know, games, hazing," and confirmed the Coach Defendants' verbally abused him for not buying into that culture. Ex. F (Doe 17 Chart) at 12-13; Ex. AAA (Doe 17 Tr.) at 164:17-19; 165:10-18; 166:4-10. When USF's counsel tried to reduce this to not participating in team hangouts, Doe 17 clarified that was only "part of it." Ex. F (Doe 17 Chart) at 12-13; Ex. AAA (Doe 17 Tr.) at 167:1-4.

Critically, *before* the break Defendants complain of, Doe 17 gave Giarratano's counsel the very testimony USF claims was "coached": "if I didn't . . . play along with . . . the team and the coaches' antics and I didn't find some of their stuff funny, I would be punished . . . I didn't participate in a lot of things that

---

[31] *ViaSat, Inc. v. Acacia Commc'ns, Inc.*, 2018 WL 899250, at \*2 (S.D. Cal. Feb. 15, 2018), on which Defendants rely, is about improper substantive changes to a deposition after the fact pursuant to Fed.R.Civ.P. 30(e). *See id.* (noting depositions "are not a take home examination"). *Klein v. King*, 132 F.R.D. 525 (N.D. Cal. 1990) is a general pre-discovery order from Magistrate Brazil setting forth general principles.

they wanted me to participate in, and clearly you see where I am today." Ex. F (Doe 17 Chart) at 12-13; Ex. AAA (Doe 17 Tr.) at 283:3-13. Defendants' theory collapses on this point. The supposedly "new" answer Doe 17 gave to Nakamura's counsel—"if I wasn't going along with [what the Coach Defendants' did], then I feel like I would have been punished"—is entirely consistent with his earlier pre-break testimony. Ex. F (Doe 17 Chart) at 12-13; Ex. AAA (Doe 17 Tr.) at 362:24-362:4. Doe 17 denied changing his answer, and any imprecision from a visibly stressed witness during a lengthy deposition is not sanctionable conduct. Ex. F (Doe 17 Chart) at 12-13; Ex. AAA (Doe 17 Tr.) at 371:2-4; 370:19-23; 369:2-4.

There is also no evidence of coaching. A lengthy break was necessitated by a dispute over questioning order precipitated by USF. Ex. AAA (Doe 17 Tr.) 366:25-368:10. Defendants' claim that Doe 17 "admitted" his attorney previewed questions is misleading: the few questions Plaintiffs' counsel asked Doe 17 on redirect dealt exclusively with the procedural posture of his case (class action to individual lawsuit), *id.* at 391:3-392:5, not toxic culture. And counsel's instruction that he not answer whether there was a "conversation [with counsel] about toxic culture" was proper, as any conversation between counsel and client is plainly privileged. It is improper to draw an adverse inference from an assertion of attorney-client privilege. *See Gjovik v. Apple Inc.*, No. 23-cv-04597-EMC, 2026 WL 1822985, at *16 (N.D. Cal. June 24, 2026) (collecting cases).

**Doe 16.** Defendants' coaching theory as to Doe 16 mistakes ordinary redirect for misconduct. On every topic Defendants identify—whether the Coach Defendants were involved in "Kangaroo Court," the nature of the retaliation Doe 16 suffered, and whether Giarratano engaged in "sexual misconduct"—Doe 16 did not change his testimony; he clarified it. Doe 16 testified consistently about retaliation by the Coach Defendants, describing the same in-group/out-group dynamic from different angles. Ex. E (Doe 16 Chart) at 7; Ex. BBB (Doe 16 Tr.) at 143:16-22; 96:13-97:8; 403:1-404:23. Likewise, Doe 16 testified that he knew the Coach Defendants were "aware" of "Kangaroo Court" but was consistent that he did not know the degree of their involvement. Ex. E (Doe 16 Chart) at 6; Ex. BBB (Doe 16 Tr.) at 210:14-17; 405:6-24. Indeed, USF's own investigation into the misconduct on the baseball team found that Giarratano "[w]as aware of the team's kangaroo court fining system and did not put an end to it." Ex. G (USF_0001573) at -1574.

Defendants' treatment of Doe 16's testimony regarding Giarratano's sexual misconduct is the clearest example of their overreach. Doe 16's testimony never changed; throughout the deposition, he testified that Giarratano called him a "pussy" and made comments about players' bodies. Ex. E (Doe 16 Chart) at 8; Ex.

BBB (Doe 16 Tr.) at 120:3-121:9. The only clarification on redirect concerned whether that conduct fell within the legal term "sexual misconduct"—a question of terminology, not fact. Ex. E (Doe 16 Chart) at 8; Ex. BBB (Doe 16 Tr.) at 400:5-23. Clarifying a witness's understanding of a legal term of art on redirect is appropriate and no different from the redirect USF's own counsel conducted. There is no evidence counsel fed Doe 16 any new facts because none of the underlying facts changed.

**Doe 11.** Defendants' coaching allegation against Doe 11 fails for the same reason. Defendants contend that, after a break, Doe 11 reversed his testimony about whether he knew he had experienced "sexual misconduct" while at USF. He did no such thing. On redirect, Doe 11 changed no facts; he explained that he had misunderstood the question and clarified that, although he always knew the Coach Defendants' behavior was "extremely inappropriate," he did not recognize it as "sexual misconduct" until decades later in counseling. Ex. D (Doe 11 Chart) at 5; Ex. CCC (Doe 11 Chart) at 198:10-13; 198:14-18; 276:3-10; 276:17-22. That is clarification, not a coached change in testimony. Defendants identify no factual inconsistency or improper instruction by counsel. As with Doe 16, Defendants seek to transform routine witness rehabilitation—of the kind its own counsel routinely conducts—into sanctionable misconduct.

### 3.    Defendants' Own Authorities Confirm Their Motion Fails.

Perjury is a serious allegation, and those making it should take care to ensure they have evidence to back it up.  Defendants do not, and none of the cases they cite are on point. Each involves demonstrably—even *admittedly*—false testimony about a material, objective, binary (yes/no) fact:

> Were you on meth when the fire started at your workstation? *See Englebrick v. Worthington Indus., Inc.*, 944 F.Supp.2d 899, 901 (C.D. Cal. 2013) ("At trial, Plaintiffs admitted to testifying falsely regarding their history of meth use at their depositions and in a response to a request for admission.").

> Did you have an ownership interest? *See ConsumerDirect, Inc. v. Pentius, LLC*, No. 8:21-cv-01968-JVS (ADS), 2023 WL 8876198, at *9 (C.D. Cal. Sept. 21, 2023) ("ConsumerDirect committed fraud on the court by continuing to lie about the existence of the CIS Amendment in its sworn declarations and depositions."); *The Sunrider Corp. v. Bountiful Biotech Corp.*, No. SACV 08–1339 DOC (AJWx), 2010 WL 4590766, at *3 (C.D. Cal. Oct. 8, 2010) ("Chen repeatedly provided verified discovery responses and sworn statements denying that he . . . held, or had held, any beneficial ownership interest in BHTC. . . . Plaintiffs subsequently obtained documentary and testimonial evidence that credibly and unambiguously contradicted [his] testimony in material respects.").

> Had you ever injured your back before? *See Da-Silva v. Smith's Food & Drug Centers,*

*Inc.*, No. 2:12–CV–00595–GMN–VCF, 2013 WL 2558302, at *1 (D. Nev. June 8, 2013) ("Plaintiff provided false deposition testimony, provided false and/or incomplete discovery responses, concealed evidence, and made false representations to her medical providers regarding the condition of her lower back before her alleged fall").

Did you market gloves using someone else's unique certification number? *See Better Care Plastic Tech. Co. v. Gredale, LLC*, No. 5:21-cv-216-JWH (SP), 2022 WL 2046206, at *6 (C.D. Cal. Mar. 4, 2022) (evidence showed "that defendant has done what it denies doing—acquiring, marketing, and selling the gloves at issue, all while using plaintiff's 510(k) number").

Did you interact with police officers on the night of the murders? *See Taylor v. City of Chi.*, No. 14 C 737, 2019 WL 4602236, at *2 (N.D. Ill. Sept. 23, 2019) (plaintiff admitted during trial that he lied in his deposition when he testified he had not).

Did you author the scripts or copy them from other sources? *See Say It Visually, Inc. v. Real Est. Educ. Co., Inc.*, No. 23 CV 3424, 2025 WL 933951, at *9 (N.D. Ill. Mar. 27, 2025) (in both interrogatory responses and again at deposition "Dunn perjured himself by falsely claiming to be the original author of the scripts of the works in suit.")

Did you provide rebates? *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 588 (9th Cir. 1983) (party "falsely represented to the court and during discovery that it had not engaged in rebating; and (2) . . . failed to comply with court orders directing the production of documents concerning [its] rebating practices").

Did you allow your attorney to substantively alter your deposition answers and falsely attest you made the changes to the transcript yourself? *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) ("Combs authorized counsel to alter his deposition in material respects[,] signed the revised deposition and swore, under penalty of perjury, that he had reviewed the transcript and had himself made the changes.").[32]

None of these cases involve a lay party's understanding of legal terms, or the interpretation of inherently subjective words like "sexual misconduct" or "toxic culture,"[33] or whether being on the field while a coach helicoptered his penis counts as "witnessing" it.

Nor is this a case where a party "persists in pushing a baseless . . . theory that has been debunked multiple times" and "simply chang[ing] its theory when the facts fail to support the previous theory."

---

[32] Defendants' citation to *Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) is curious. It is about something far different: the intentional spoliation of evidence by a party (who wiped his computer clean). But of course spoliation—which USF engaged in, *see* Dkt. Nos. 467, 503—is pernicious because it cannot be remedied by amendment of responses or cross-examination. This is why Plaintiffs relied on *Leon* in their spoliation motion.

[33] In both cases terms to which *Defendants' counsel* repeatedly objected at deposition as "vague and ambiguous." *See, e.g.*, Ex. M (Fitzgerald Dep.) at 126:15-19, 127:11-13, 129:4-10, 130:8-13, 152:9-11 ("toxic culture"); Ex. O (Varga Dep.) at 283:2-4 (same); Ex. M (Fitzgerald Dep.) at 166:4-8; 298:19-24 ("sexual misconduct").

*Cottonwood Env't L. Ctr. v. Big Sky Water & Sewer Dist.*, No. 2:20-CV-00028-BMM, 2025 WL 1906763, at *9 (D. Mont. July 10, 2025). Plaintiffs' allegations here not only have remained consistent, they have been confirmed again and again by USF's own findings, admissions, witness testimony, and expert testimony.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court deny Defendants' motion. Because the motion is devoid of any factual or legal basis, it constitutes unreasonable and vexatious litigation in violation of 28 U.S. Code § 1927, and Plaintiffs also respectfully request that Defendants be ordered to "satisfy personally the excess costs, expenses, and attorneys' fees" Plaintiffs incurred responding to the motion.

Dated: July 9, 2026                    Respectfully submitted,


By:    */s/ Jonathan Selbin*
Jonathan Selbin (Cal. Bar No. 170222)
jselbin@lchb.com
Michelle Lamy (Cal. Bar No. 308174)
mlamy@lchb.com
Sara Evall (Cal. Bar No. 364940)
sevall@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Jessica Moldovan (admitted *pro hac vice*)
jmoldovan@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Christopher E. Coleman (admitted *pro hac vice*)
ccoleman@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

Elizabeth A. Fegan (Cal. Bar #355906)
beth@feganscott.com
FEGAN SCOTT LLP
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100

Michael von Klemperer (admitted *pro hac vice*)
mike@feganscott.com
FEGAN SCOTT LLP
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Telephone: (202) 921-0002
Facsimile: (312) 264-0100

Georgia Jaye Zacest (admitted *pro hac vice*)
georgia@feganscott.com
FEGAN SCOTT LLP
708 Main, 10th Floor
Houston, TX 77002
Telephone: (830) 212-4042
Facsimile: (312) 264-0100

*Attorneys for Plaintiffs John Does 1-6 and 8-19*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2026, I caused the foregoing document to be served by email upon counsel of record for all Parties listed in the service list below. I declare under penalty of perjury that the foregoing information in this Certificate of Service is true and correct.

By:     */s/ Jonathan D. Selbin*
        Jonathan D. Selbin

PLS.' OPP. TO JOINT MOT. FOR SANCTIONS
CASE NO. 3:22-CV-01559-LB