JONATHAN SELBIN (Cal. Bar No. 170222)
jselbin@lchb.com
MICHELLE LAMY (Cal. Bar No. 308174)
mlamy@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

ELIZABETH A. FEGAN (Cal. Bar No. 355906)
beth@feganscott.com
FEGAN SCOTT LLP
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100

*Attorneys for Plaintiffs John Does 1-6 and 8-19*
[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, JOHN DOE 10, JOHN DOE 11, JOHN DOE 12, JOHN DOE 13, JOHN DOE 14, JOHN DOE 15, JOHN DOE 16, JOHN DOE 17, JOHN DOE 18 and JOHN DOE 19, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

THE UNIVERSITY OF SAN FRANCISCO, ANTHONY N. (AKA NINO) GIARRATANO, and TROY NAKAMURA,

Defendants.

CASE NO. 3:22-CV-01559-LB

**PLAINTIFFS' MOTION FOR CONTEMPT AND SANCTIONS AGAINST DEFENDANT GIARRATANO**

Judge: Hon. Laurel Beeler
Date: December 10, 2026
Time: 9:30 am
Courtroom: B

## TABLE OF CONTENTS


Page

NOTICE OF MOTION ..... 1
MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
I. INTRODUCTION ..... 1
II. BACKGROUND ..... 3
A. The Court Granted Plaintiffs Permission to Proceed Anonymously. ..... 3
B. Giarratano Knew He Was Bound by the Court's Anonymity Order, and Lied about his Compliance with the Order. ..... 3
C. Giarratano Ultimately Admitted that He Violated the Anonymity Order by Disclosing the John Does' True Identities to Third Parties. ..... 6
D. Giarratano Violated the Anonymity Order in a Clear Attempt to Disparage and Retaliate Against the John Does. ..... 7
E. Giarratano's Violations Reflect a Pattern of Defiance and Obstruction. ..... 12
III. ARGUMENT ..... 14
A. Giarratano Is in Civil Contempt of the Anonymity Order. ..... 14
B. The Court Has Inherent Power to Sanction Willful, Bad Faith Violations. ..... 15
C. Default Judgment Is the Appropriate Sanction for Giarratano's Misconduct. ..... 16
IV. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Adriana Int'l Corp. v. Thoeren*,
913 F.2d 1406 (9th Cir. 1990) ........ 16

*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ........ 15

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*,
69 F.3d 337 (9th Cir. 1995) ........ 18

*Calvillo Manriquez v. DeVos*,
411 F. Supp. 3d 535 (N.D. Cal. 2019) ........ 16

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........ 15

*Dreith v. Nu Image, Inc.*,
648 F.3d 779 (9th Cir. 2011) ........ 16, 17

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) ........ 14

*Evon v. L. Offs. of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ........ 15, 16

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ........ 16

*McComb v. Jacksonville Paper Co.*,
336 U.S. 187 (1949) ........ 16

*On Command Video Corp. v. LodgeNet Ent. Corp.*,
976 F. Supp. 917 (N.D. Cal. 1997) ........ 15

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) ........ 17

*Rockwood v. SKF USA Inc.*,
No. 08-CV-168-JL, 2010 WL 3860414 (D.N.H. Sept. 30, 2010) ........ 18

*TeleVideo Sys., Inc. v. Heidenthal*,
826 F.2d 915 (9th Cir. 1987) ........ 2

*United States v. DAS Corp.*,
18 F.4th 1032 (9th Cir. 2021) ........ 14

**TABLE OF AUTHORITIES (continued)**


**Page**

*Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir. 1999) ..... 16, 17

**Statutes**

18 U.S.C. § 401 ..... 1

**Other**

Prep Baseball Report, *PBR Scouting Directors*, available at https://pbr-affd.kxcdn.com/scoutingdirectors? ..... 8

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 10, 2026, or as soon thereafter as the matter may be heard, before the Honorable Laurel Beeler in Courtroom B, 15th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs John Does 1-6 and 8-19 ("Plaintiffs") will and hereby do move this Court for an order finding Defendant Anthony Giarratano in contempt of Court and for sanctions for his willful and repeated violations of the Court's Order granting Plaintiffs leave to proceed anonymously.

This motion is made pursuant to 18 U.S.C. § 401 and the Court's inherent authority to sanction willful violations of its orders. The motion is supported by this Notice of Motion and the accompanying Memorandum of Points and Authorities, the Declaration of Jonathan D. Selbin ("Selbin Decl.") and the Exhibits thereto, the pleadings and papers filed in this action, and any such other matters the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This motion concerns serious, repeated—and undisputed—violations of a direct order of this Court by Defendant Anthony Giarratano ("Giarratano").

At the outset of this litigation, the Court granted Plaintiffs' motion to proceed anonymously as John Does, recognizing "the nature of the allegations supports the plaintiffs' position that revealing their identities could cause mental or emotional harm and possible retaliation in the community." ECF No. 63 (the "Anonymity Order") at 1.[1] Giarratano has since committed brazen, repeated, and knowing violations of the Anonymity Order—violations that strike at the heart of the Court's authority, endanger the safety and privacy of the John Does, irreparably compromise the protections this Court specifically afforded them, and echo the very pattern of retaliation Giarratano employed when Plaintiffs refused to acquiesce in his misconduct.

[1] The Court's first order granting anonymity was dated March 21, 2022. ECF No. 14.

At his deposition, Giarratano admitted that he was aware of the Anonymity Order and understood he was bound by it. Selbin Decl., Ex. 1 (Giarratano Dep.) at 29:6-30:23. Yet he violated the Order on multiple occasions by disclosing the John Does' true identities to people other than his lawyers or spouse—including (that we know of) a professional scout, an individual working on his public relations campaign to discredit the Does, and multiple members of the USF baseball community. When questioned, Giarratano initially denied these violations—compounding his contempt with dishonesty under oath. *Id.* at 27:4-11; 30:24-31:16. Only when confronted with documentary evidence in the form of his own text messages did Giarratano acknowledge his repeated violations of the Anonymity Order. *Id.* at 33:12-34:1; 38:5-9; 41:2-10; 45:19-24; 43:9-14; 46:1-10. Even then, he continued to deny disclosing Plaintiffs' true identities to any scout—despite evidence he did so—and he concealed that individual's status as a scout when asked to identify him. *Id.* at 46:18-20; 31:7-11. The record thus establishes the elements of civil contempt beyond any meaningful dispute.

These were not inadvertent disclosures or isolated lapses in judgment. Giarratano knowingly violated the Court's Order and then repeatedly attempted to conceal those violations when questioned under oath. These violations therefore represent precisely the sort of willful, bad faith conduct that courts possess the inherent authority to sanction, including through entry of default judgment. *See, e.g.*, *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987) ("Courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices."). Giarratano's repeated denials, followed by admissions only when confronted with documentary evidence, and his continued false denials concerning disclosure to a scout, underscore that Giarratano's violations were deliberate and not inadvertent. They were calculated acts designed to cause the very "mental or emotional harm and possible retaliation" that this Court's Anonymity Order expressly sought to prevent. *See* Anonymity Order at 1. Indeed, Giarratano *expressly contemplated* sabotaging one John Doe's professional baseball career and sought to enlist others in exposing another John Doe to NCAA scrutiny—all while discussing the John Does by name to third parties and treating their careers and futures as targets. *See infra* Section II.D.

Giarratano's conduct demonstrates a fundamental unwillingness to abide by the rules of this Court. Default judgment is the only sanction commensurate with the gravity of Giarratano's misconduct; less severe sanctions cannot undo the damage done or ensure future compliance. However, at a minimum, Plaintiffs request that the Court order a mandatory adverse inference against Giarratano regarding his credibility and award monetary sanctions.

## II. BACKGROUND

### A. The Court Granted Plaintiffs Permission to Proceed Anonymously.

On March 11, 2022, John Does 1-3 filed their original complaint in this matter. The Court granted Plaintiffs' administrative motion to proceed anonymously on March 21, 2022. ECF No. 14.

On July 15, 2022, Plaintiffs filed an amended complaint adding John Does 4-12 to the lawsuit. ECF No. 38. On August 30, 2022, the Court again granted an administrative motion for the John Does to proceed anonymously. In this second order—over Defendants' opposition—the Court noted that the deeply personal and stigmatizing nature of the allegations at issue in this lawsuit justified the John Does' request to proceed anonymously:

> The court grants the plaintiffs' motion to proceed anonymously because the nature of the allegations supports the plaintiffs' position that revealing their identities could cause mental or emotional harm and possible retaliation in the community.

Anonymity Order at 1.

On February 8, 2023, Plaintiffs filed a second amended complaint adding John Does 13-14. ECF No. 93. On June 25, 2025, John Does 15-19 filed a lawsuit subsequently transferred to this Court. ECF No. 395. On October 8, 2025, the parties stipulated that John Does 15-19, like John Does 1-14, could proceed anonymously. *See* No. 3:25-CV-05311-TLT, ECF No. 46.

### B. Giarratano Knew He Was Bound by the Court's Anonymity Order, and Lied about his Compliance with the Order.

At his deposition, Giarratano confirmed he knew Plaintiffs filed this case as John Does and understood what that meant:

> Q. You're aware that the plaintiffs in this case filed this case as Does, correct?
>
> A. Yes, I am.

Q. And what's your understanding of what that means?

A. They don't want their names publicly out there.

Selbin Decl., Ex. 1 (Giarratano Dep.) at 27:21-28:2. He likewise confirmed that, even before the Court ruled on anonymity, he knew the parties had agreed not to disclose the Does' names and that he was not permitted to do so:

> Q. Are you aware that the parties agreed that no one would disclose the names of the Does unless the court otherwise ordered?
>
> A. Yes.
>
> Q. Right. So you understood that you weren't supposed to tell other people the names of the Does in this litigation, right?
>
> A. Yes.

*Id.* at 28:12-25 (objections omitted). And Giarratano admitted that he knew the Anonymity Order had been entered by the Court, had seen it, and understood that it barred him from disclosing the Does' names:

> Q. And are you aware that the court actually ruled that no one could disclose the names of the Does outside of the parties and lawyers to this litigation?
>
> A. I'm aware of that.
>
> . . .
>
> Q. The court reporter has handed you . . . the order granting plaintiffs' motion to proceed anonymously. And I'll ask you if you've ever seen this document before?
>
> A. I'm sure that I have.
>
> . . .
>
> Q. So you understand that as of March of 2022, the court had actually ordered that no one disclose the names of the Does outside of the lawyers and the parties to the case, yes?
>
> A. Yes.
>
> Q. Is that your understanding?
>
> A. That's my understanding.

*Id.* at 29:6-30:23 (objections omitted).

Giarratano then repeatedly testified under oath that he had never disclosed the Does' identities to *anyone*. At the outset of his deposition, he testified as follows:

> Q. Other than in conversations with your lawyer or your wife, at any point, have you disclosed the names of any of the plaintiffs in this lawsuit to anyone else?

A. Not that I'm aware of.

*Id.* at 27:4-10 (objection omitted). Moments later, after acknowledging the Anonymity Order, he repeated the denial:

Q. And, again, I just want to clarify. You didn't in fact disclose the names of the Does to anyone outside of the parties or your lawyer, correct?
A. Not that I am aware of.

*Id.* at 30:24-31:5 (objection omitted).

Giarratano flatly denied ever disclosing any John Doe's identity to a scout. *See id.* at 46:18-20 ("Q. Did you reveal their names to any scouts? A. No."). This is false. *See infra* Section II.D (detailing disclosure to a current college and former Major League Baseball scout). Giarratano also denied, person by person, disclosing the John Does' names to several of the individuals to whom the record shows he did just that. *See* Selbin Decl., Ex. 1 (Giarratano Dep.) at 31:7-16 (to Blaine Clemmens, a scout: "Not that I'm aware of."); *id.* at 34:9-11 (to Bryan Zahn, a former colleague: "Not that I'm aware of."); *id.* at 38:10-39:7 (to Greg Moore, a former coach: "Not that I'm aware of."); *id.* at 41:18-42:1 (to Gary Delagnes, a fan: "Not that I'm aware of."); *id.* at 44:13-15 (to John Doe 19, before he became a Plaintiff: "Not that I'm aware of.").

When confronted with a March 13, 2022 text message identifying John Does 1, 3, and 16 by name to one of these third-parties, Giarratano then shifted course. He admitted to the disclosure, but insisted it predated the Anonymity Order:

Q. So in fact, in March of 2022 you disclosed . . . the Does to Blaine Clemmens, correct?
A. Yes.
Q. Yeah. Thank you.
A. But the court order does say the 21st.

*Id.* at 33:12-34:1 (objection and colloquy omitted); *see also* Selbin Decl., Ex. 2 (PLF 343). That retreat was itself untrue: as shown below, Giarratano went on to disclose the John Does' true identities many more times after March 21, 2022. And in any event, when counsel for Plaintiffs noted "the parties had an agreement prior to the court order that they would not disclose the names to anybody," Giarratano responded: "Right." *Id.* at 34:2-8; *see also id.* at 28:12-25 (testifying that

he was aware of and understood this agreement).

### C. Giarratano Ultimately Admitted that He Violated the Anonymity Order by Disclosing the John Does' True Identities to Third Parties.

Giarratano's own text messages show that he disclosed the John Does' true identities over and over—beginning days after this case was filed and continuing for years after the Anonymity Order was entered. But only when confronted with messages post-dating the Order did Giarratano finally admit he had *ever* violated the Order.

Giarratano admitted he disclosed the identities of John Does 4 and 7 in July 2022 to Bryan Zahn:

> Q. So, again, now we're in July of 2022. You identified some of the Does or was attempting to identify some of the Does' names to Bryan Zahn, right?
>
> A. Yes.

*Id.* at 38:5-9; *see also* Selbin Decl., Ex. 3 (PLF 344). This exchange with Mr. Zahn also suggests that Giarratano had previously identified the remaining John Does to Mr. Zahn. *See* Ex. 3 (PLF 344) at A GIARRATANO 029171 ("[redacted]

Giarratano admitted he disclosed the identities of John Does 5, 6, and 7 in July 2022 to Greg Moore:

> Q. . . . I asked you if you were speculating about the identity of Does and identifying some of them. You were, yes?
>
> A. Yes.

Selbin Decl., Ex. 1 (Giarratano Dep.) at 41:2-10; *see also* Selbin Decl., Ex. 4 (PLF 345).

Giarratano admitted he disclosed the identities of John Does 1 and 3 in October 2022 to John Doe 19, unaware that John Doe 19 would ultimately join the litigation after class certification was denied:

> Q. So again you disclosed the identity of two of the Does there to [John Doe 19], correct?
>
> A. That's what the document says.

Selbin Decl., Ex. 1 (Giarratano Dep.) at 45:19-24 (objection omitted); *see also* Selbin Decl., Ex. 5 (PLF 347).

Giarratano admitted he disclosed the identity of John Doe 13 in February 2023 to Gary Delagnes:

> Q. And [John Doe 13 True Identity] is one of the Does in the litigation, right?
>
> A. Yes, he is.
>
> Q. And you identified him to Mr. Delagnes, right?
>
> A. Yes, I did.

Selbin Decl., Ex. 1 (Giarratano Dep.) at 43:9-14; *see also* Selbin Decl., Ex. 6 (PLF 346).

Finally, Giarratano conceded that none of the people to whom he disclosed the John Does' names was his lawyer, and that—other than John Doe 19—none was a party to this case:

> Q. With respect to all of the people I've asked you about and all of the documents we just looked at, were any of those individuals you disclosed the names to your lawyers?
>
> A. No.
>
> Q. With the exception of [John Doe 19], were . . . any of the . . . people you disclosed the names of Does to parties to this litigation?
>
> A. No. Other than [John Doe 19], no.

Selbin Decl., Ex. 1 (Giarratano Dep.) at 46:1-10.

To be clear, Giarratano admitted only those violations that Plaintiffs showed him in writing—and only after initially denying them all. But even that documented subset points to a far broader pattern of violations of the Court's Anonymity Order. *See* Selbin Decl., Ex. 3 (PLF 344) at A GIARRATANO 029171 (identifying several Does to a third-party and then noting that "[redacted]").

**D. Giarratano Violated the Anonymity Order in a Clear Attempt to Disparage and Retaliate Against the John Does.**

Giarratano's violations of the Anonymity Order were not idle slips. He named the John Does to people of all varieties within the baseball community—a scout, coaches, former players, parents, a fan, and a supportive press contact—and he paired those disclosures with attacks on the John Does' character and credibility. His messages make clear that he sought to disparage and retaliate against Plaintiffs for coming forward, including by directly contacting a player who—unbeknownst to Giarratano—would himself become a John Doe.

Two days after this case was filed, in March 2022, Giarratano disclosed the identities of John Does 1 and 3 to Blaine Clemmens, the Northern California Director of Scouting for *Prep Baseball Report* and a former Major League Baseball scout. *Prep Baseball Report* scouts baseball players and promotes their talent to college and MLB programs. The organization states that "[s]ince 2004, Clemmens has run a successful showcase in Northern California, Bay Area World Series (BAWS), which has seen 28 former participants reach the big leagues and over 200 draft picks."[2] Tellingly, when asked to identify Clemmens, Giarratano omitted Clemmens's current and longstanding occupation, describing him instead as a "former student athlete" and "former assistant coach." Selbin Decl., Ex. 1 (Giarratano Dep.) at 31:7-11. When Clemmens asked Giarratano, "[redacted]" Giarratano answered, "[redacted]" Selbin Decl., Ex. 2 (PLF 343) at A GIARRATANO 027733. The result of this disclosure was swift, and predictable. John Doe 3 reports that before attending USF, approximately fifteen California schools recruited him, which is consistent with USF's own scouting report for John Doe 3.[3] Since Giarratano's disclosure of his identity to Clemmens, however, no California team would respond to John Doe 3's recruiting emails. Selbin Decl., Ex. 9 (John Doe 3 Decl.) ¶ 3. John Doe 3 has explained that, "[b]ased on the timing of these events, my prior recruiting experience, and the experiences that I saw others have when they entered the NCAA transfer portal, I firmly believe that the abrupt change in response from California baseball programs was a result of Coach Giarratano blacklisting me because of my participation in this lawsuit." *Id.* ¶ 4.

Three months later, in June 2022, Giarratano forwarded an email chain titled, "[redacted]" to Joan Winkler, a partner at Boom Broadcast, a firm that "[redacted]" Selbin Decl., Ex. 10 (A GIARRATANO 013976) at -976, -983. The email chain spells out the identities of the original

---

2 *See* Prep Baseball Report, *PBR Scouting Directors*, available at https://pbr-affd.kxcdn.com/scoutingdirectors? (last accessed November 3, 2026).

3 *See, e.g.*, Selbin Decl., Ex. 7 (USF_0012128) (USF coach saying during recruiting that Doe 3 "[redacted]"); Ex. 8 (USF_0011254) (Giarratano writing of Doe 3's decision to join the team: "[redacted]").

plaintiffs: "[redacted]" *Id*. at -981. Giarratano sent these identities to Winkler after being warned by his attorney that "[redacted]" *Id*. at -977. Winkler responded that she was "[redacted]" and would "[redacted]" *Id*. at -976.

In July 2022, one day after John Does 4-12 joined the lawsuit, Giarratano exchanged texts with Bryan Zahn, former Director of Operations for baseball at USF, about the newly amended complaint. Zahn wrote that he "[redacted]" presumably Elizabeth Fegan, called her "[redacted]" and added, "[redacted]" Selbin Decl., Ex. 3 (PLF 344) at A GIARRATANO 029170. Minutes later Giarratano sent Zahn a list of the new John Does' true identities, adding "[redacted]" *Id*. at -171. Zahn then announced, "[redacted]" to which Giarratano responded: "[redacted]" *Id*. at -172.

Three days later, also in July 2022, Giarratano again identified several of the John Does by name in text messages with former USF assistant baseball coach Greg Moore, who characterized the John Does as "[redacted]" Selbin Decl., Ex. 4 (PLF 345) at A GIARRATANO 030577. Giarratano directed Moore: "[redacted]" *Id*. Moore responded, "[redacted]" *Id*. Giarratano then went on to mock the John Does' allegations, deriding their complaint as written "[redacted]" and as "[redacted]" *Id*.

In October 2022, Giarratano reached out unprompted to John Doe 19, a recent USF player who was by then playing for another program. Giarratano told John Doe 19: "[redacted]" Selbin Decl., Ex. 5 (PLF 347) at A GIARRATANO 026410. In a single message, Giarratano identified two John Does by name, blamed them for keeping him out of coaching, and cast himself as John Doe 19's

supporter—a transparent attempt to align a former player against the Plaintiffs and to keep John Doe 19 from joining the lawsuit. What Giarratano did not know was that, notwithstanding Giarratano's attempted influence, John Doe 19 would become a John Doe in this lawsuit after class certification was denied.

In February 2023, Giarratano volunteered in a text message to Craig Gianino, former Director of Player Development for the USF baseball team, "[redacted]" Selbin Decl., Ex. 11 (A GIARRATANO 028468) at -469. When Gianino responded, "[redacted]" Giarratano wrote: "[redacted]" *Id*. The next morning, when Gianino asked, "[redacted]" Giarratano supplied it and added: "[redacted]" Selbin Decl., Ex. 12 (A GIARRATANO 028470) at -471.

Days later, again in February 2023, Giarratano identified John Doe 10 to Zahn. Selbin Decl., Ex. 26 (A GIARRATANO 029316) at -317. Giarratano explained he had received the following message from the "[redacted]" an apparent reference to a professional baseball program: "[redacted]" *Id*. Giarratano then stated to Zahn: "[redacted]" *Id*. Giarratano's response makes clear that he viewed John Doe 10's career opportunity as something to be toyed with, at best, and sabotaged, at worst.

Days later, again in February 2023, Giarratano identified John Doe 13, this time to Gary Delagnes, "a baseball fan, [who] became a supporter of the program and a friend." Selbin Decl., Ex. 1 (Giarratano Dep.) at 41:18-23; Ex. 6 (PLF 346) at A GIARRATANO 031267. Asked for "[redacted]" Giarratano wrote: "[redacted]" Ex. 6 (PLF 346) at A GIARRATANO 031267. Of John Doe 13 and John Doe 14, Giarratano added: "[redacted]" *Id*. He then explained

that he was trying to raise "[redacted]" for his arbitration against USF, in which "[redacted]" *Id.*

In June 2023, Giarratano identified John Does 1, 2, and 3 in text messages with former USF assistant baseball coach Allen Smoot, revealing that he was actively tracking the John Does' collegiate baseball careers and had directed Smoot to check their status in the NCAA transfer portal. Smoot confirmed: "[redacted]" Selbin Decl., Ex. 27 (A GIARRATANO 030945) at -946. Giarratano then escalated, urging Smoot to leverage his connections with Nevada coaches and players to obtain information about John Doe 2 that could hurt his collegiate career, stating: "[redacted]" *Id.* Here, Giarratano was actively seeking information about a John Doe from a third-party, to pass to the NCAA with the evident aim of jeopardizing that John Doe's collegiate baseball future.

In August 2025, the mother of a former USF player texted John Doe 18 that "[w]ord has been spreading about this lawsuit" and that "G and the other parents are saying you are suing G." Selbin Decl., Ex. 13 (PLS-USF-0295456) at -458-59. When John Doe 18 asked, "is G telling everyone i am suing him?," the concerned mother answered, "Yes." *Id.* at -459. She went on to explain that "word about all this came out within the last month," that "[i]t's a new lawsuit and it's supposedly you, some other people I don't know and [John Doe 19's True Identity]." *Id.* Again, the results of this disclosure were exactly what the Anonymity Order was designed to prevent. For example, under questioning by USF's counsel about his desire to remain anonymous, John Doe 18 recently explained that, "Giarrantano [sic] had told people about the case and told people that I'm in the case, so I've had to defend myself." Selbin Decl., Ex. 14 ("John Doe 18 Dep.") at 15:19-21. He also testified to the real world impact of Giarratano's violations:

> Q. Is there anything that you think would happen if you were named in the lawsuit using your real name?
>
> A. I mean I've already had repercussions already for my name being spread around, so, yeah, proved if my name was in there what would happen.
>
> Q. What repercussions have you experienced already?

A. I have a lot of teammates that won't talk to me anymore, not going to my wedding because of it, spread lies about me so –

Q. Who did not go to your wedding because of this?

A. The wedding hasn't happened yet. Aren't going to my wedding.

. . .

Q. Who is it your understanding is not going to your wedding because of this?

A. [Identifies two former teammates by name].

*Id.* at 18:9-19:13.

**E. Giarratano's Violations Reflect a Pattern of Defiance and Obstruction.**

Giarratano's contempt of this Court's Order is not an aberration. It reflects his persistent refusal to respect authority and suppress the truth.

This is not Giarratano's first act of defiance toward institutional authority. In January 2022, for example, a member of the USF baseball team complained to the Title IX Office that he "[redacted]" Selbin Decl., Ex. 15 (USF_0001406 at -1407). In response, Giarratano ignored a direct instruction from the Title IX Officer handling the complaint not to speak with the players involved. He testified that he felt empowered to overrule the Title IX Officer because she was "[redacted]" *Id.*, Ex. 16 (Giarratano Arb. Dep. Vol. 1) at 259:14-260:3; 262:3-18.

That same defiance of institutional authority fueled Giarratano's cultivation of a "[redacted]" through which he enforced the "[redacted]" of "[redacted]" by retaliating against players who spoke out. Selbin Decl., Ex. 17 (Fitzgerald Arb. Dep.) at 152:19; Ex. 18 (Nelson Arb. Dep.) at 143:13-18. For example, John Doe 10—who had been drafted by a Major League Baseball team out of high school but decided to attend USF—testified that after he "spoke up" about the sexual misconduct to multiple people within the USF Athletics Department in 2018, Giarratano "retaliated against me, he buried me, he punished me, . . . he labeled me as a . . . bad kid. He tried to turn my peers, my teammates against me." Selbin Decl., Ex. 19 (Doe 10 Dep.) at 285:18-286:7.

Discovery confirms that, having witnessed such retaliation over the years, other players understandably expressed fear about participating in USF's investigation into Giarratano's misconduct in 2021. One player said the team had been "[redacted]" and another stated: "[redacted]" Selbin Decl., Ex. 20 (USF_0004612) at -615-16. Athletic Director Joan McDermott acknowledged that players were pressured into staying silent or feigning support: "[redacted]" and "[redacted]" but could not speak out because they "[redacted]" Selbin Decl., Ex. 21 (Arb. Tr. Vol. IX) at 2218:13-15; Ex. 22 (Arb. Tr. Vol. VIII) at 2102:25-2103:17.

Giarratano's pressure campaign continued even after he was terminated. In May 2022, another former player (not a John Doe) wrote an email to McDermott, explaining:

[redacted]

Selbin Decl., Ex. 23 (USF_0115359).

Yet, at his deposition, Giarratano denied *ever hearing anyone* in connection with USF baseball use the term "loose lips sink ships." Selbin Decl., Ex. 1 (Giarratano Dep.) at 61:24-62:2. Here, again, the record demonstrates otherwise. In a December 2021 text message to McDermott's husband—sent during the Title IX investigation into the allegations underlying this case—Giarratano noted with alarm: "[redacted]" Selbin Decl., Ex. 24 (PLF 383) at A GIARRATANO 026165. Notably, it was during that same internal investigation that Giarratano was found to have "[redacted]" Ex. 25

(USF_0056760) at -761.

Giarratano's violations of the Anonymity Order are only the latest iteration of his disregard for truth and authority. Just as he enforced silence within his team and punished players who spoke out, Giarratano has now exposed the John Does—naming them to allies and scouts, branding them liars, "[redacted]" and "[redacted]"—in an effort to silence, intimidate, and punish them for having the courage to seek accountability. *See supra* Section II.D.

## III. ARGUMENT

### A. Giarratano Is in Civil Contempt of the Anonymity Order.

"Civil contempt 'consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.'" *United States v. DAS Corp.*, 18 F.4th 1032, 1039 (9th Cir. 2021) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). To establish civil contempt, the moving party must show, by clear and convincing evidence, that: (1) the non-moving party violated the terms of an order; (2) the violation went beyond "the sort of technical violation that would be consistent with 'substantial compliance'"; and (3) the violation was "not based on a good faith and reasonable interpretation of the order." *Id.* All three elements are satisfied here.

*First*, there is no question that Giarratano violated the Anonymity Order. The Order prohibits disclosure of the John Does' true identities. *See supra* Section II.A. Giarratano testified that he was aware of the Order, understood what it meant, and knew he was bound by it. *See supra* Section II.B. Yet he disclosed the John Does' true identities to multiple individuals on multiple occasions thereafter. *See supra* Sections II.C-D. There is no dispute that these disclosures occurred—Giarratano was ultimately forced to admit as much under oath, after initially lying. *Id.* This amounts to irrefutable evidence that Giarratano violated the Anonymity Order.

*Second*, Giarratano's violations went far beyond "technical" non-compliance. *DAS Corp.*, 18 F.4th at 1039. Giarratano affirmatively and repeatedly disclosed protected information to third parties in a deliberate campaign to harm the John Does. He went as far as to contemplate sabotaging one John Doe's professional baseball career and to urge that another John Doe be reported to the NCAA in an effort to jeopardize his collegiate future. *See supra* Section II.D. And again: these are

only the violations *documented in writing*. They represent the antithesis of compliance with an order that the John Does' identities be protected from disclosure because "revealing their identities could cause mental or emotional harm and possible retaliation in the community." Anonymity Order at 1; *see also On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 922 (N.D. Cal. 1997) (holding that use of protected information for an unauthorized purpose is "tantamount to no compliance at all").

*Third*, Giarratano's violations were not based on a good faith and reasonable interpretation of the Anonymity Order. In fact, before realizing Plaintiffs' counsel had documentary proof, Giarratano at first denied ever violating the Anonymity Order. *See supra* Section II.B. When questioned about a disclosure of the John Does' identities that pre-dated the Anonymity Order, he then falsely claimed he had disclosed the John Does' identities only *before* the Anonymity Order took effect. *Id.*[4] It was only after being presented with numerous, written examples of him disclosing the John Does' true identities after the Anonymity Order took effect that Giarratano finally admitted he knowingly and repeatedly violated the Order. *See supra* Section II.C. In any event, there is no reasonable interpretation of an order prohibiting disclosure of a party's identity that would permit the repeated, knowing disclosures Giarratano made here.

**B. The Court Has Inherent Power to Sanction Willful, Bad Faith Violations.**

Federal courts possess inherent authority to sanction conduct that "abuses the judicial process." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)). A court acting under its inherent authority may impose sanctions where it finds either "(1) a willful violation of a court order; or (2) bad faith." *Id.* at 1090. Willfulness does not require any improper motive, "it is enough that a party acted deliberately." *Id.* (quoting *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012)). Bad faith "requires proof of bad intent or improper purpose." *Id.* The record supports both findings here.

Giarratano acted willfully. It is undisputed that he knew about the Anonymity Order, understood he was bound by it, yet chose to disclose the John Does' true identities to multiple

[4] This testimony also ignores the parties' agreement that they would not disclose the John Does' true identities pending resolution of their request to proceed anonymously—an agreement Giarratano admitted he understood. Selbin Decl., Ex. 1 (Giarratano Dep.) at 33:19-34:8.

people, on multiple occasions, notwithstanding that Order. *See supra* Section II. This is more than enough to establish willfulness. *See, e.g.*, *Evon*, 688 F.3d at 1035 (affirming sanctions for willful violations where party "knew that the protective order was in place and that filing without redacting the confidential information constituted a violation," yet did so anyway).

Giarratano's conduct is also saturated with bad faith. He disclosed the John Does' true identities for an improper purpose: to shame them, sabotage their careers, and alienate potential witnesses in this matter. *See supra* Section II.D. When asked about these violations under oath, he initially lied—demonstrating consciousness of guilt and a willingness to compound one violation of the Court's authority with another. *See supra* Section II.B. His conduct fits a documented pattern of obstruction that supports a finding of sanctionable bad faith. *See supra* Section II.E; *see also Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (affirming sanctions for reckless misstatements "coupled with an improper purpose, such as an attempt to influence or manipulate proceedings").

### C. Default Judgment Is the Appropriate Sanction for Giarratano's Misconduct.

Before imposing default judgment as a sanction, the Ninth Circuit requires consideration of five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (quoting *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)).[5] The Ninth Circuit will affirm default judgment "where at least four factors support [it], or where at least three factors strongly support [it]." *Id.* (citation omitted). These factors favor entry of default judgment against Giarratano.

*First*, the public has a strong interest in the expeditious resolution of this case, which has been pending for over four years and involves allegations of decades-long, institutionally-sanctioned sexual misconduct. Giarratano's flagrant contempt of the Court's Anonymity Order has not only frustrated this litigation but forced Plaintiffs to divert resources to address his misconduct. This factor strongly favors default judgment. *See, e.g., Yourish v. California Amplifier*, 191 F.3d

[5] In the context of sanctions for civil contempt, "[t]he private or public rights that the decree sought to protect are an important measure of the remedy." *Calvillo Manriquez v. DeVos*, 411 F. Supp. 3d 535, 540 (N.D. Cal. 2019) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)).

983, 990 (9th Cir. 1999) (noting that "the public's interest in expeditious resolution of litigation always favors dismissal" and affirming dismissal where party failed to comply with a single court-ordered deadline to amend).

*Second*, Giarratano's willful defiance of the Anonymity Order—and his initial dishonesty about it under oath—undermines the Court's ability to manage this case effectively. This Court must be able to rely on the parties' compliance with its Orders. A party who cannot be trusted to comply with the Court's most basic directives imposes extraordinary burdens on the administration of justice. This factor strongly favors default judgment. *See, e.g., Dreith*, 648 F.3d at 788 (affirming sanction of default where party "interfered with the court's management of its docket in one of the busiest districts in the country"); *Yourish*, 191 F.3d at 990 (affirming dismissal where party "filed the motion [seeking additional time] three days after the amended complaint was due to be filed").

*Third*, the prejudice to Plaintiffs is severe and, in critical respects, irreparable. Giarratano disclosed true identities that this Court ordered sealed. Once disclosed, those identities cannot be recalled. Plaintiffs now face the ongoing effects of public exposure, retaliation, and further psychological distress. These are precisely the harms the Anonymity Order was designed to prevent, and precisely why courts routinely permit anonymous pleading in cases alleging sexual misconduct. *See* Anonymity Order at 3-5 (citing authorities). Indeed, the John Does are already suffering—and will continue to suffer—as a result of Giarratano's violations of the Anonymity Order. *See supra* Section II.D (detailing impacts on Plaintiffs' professional and personal lives). Giarratano's failure to abide the Court's Anonymity Order—and the attendant, predictable harms—will follow the John Does forever. This factor strongly favors default judgment.

*Fourth*, while public policy generally favors resolution on the merits, this factor "'lends little support' to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006). Giarratano's deliberate contempt, compounded by his false testimony, forfeits any claim to the protections this factor affords.

*Fifth*, less drastic sanctions are inadequate here. The Ninth Circuit has held that "under egregious circumstances, it is unnecessary (although still helpful) for a district court to discuss why

alternatives to dismissal are infeasible." *Dreith*, 648 F.3d at 788-89 (cleaned up). In any event, monetary sanctions cannot undo the harm Giarratano caused: his disclosure of Plaintiffs' identities is irreversible, and no fine can put that genie back in the bottle. An admonishment or warning would also be futile: Giarratano testified that he knew about the Anonymity Order, understood his obligation to comply with it, and chose to violate it—repeatedly. *See supra* Sections II.B-C. His initial false denials under oath demonstrates that he will not be deterred by anything short of the most severe sanction. *See, e.g., Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 341, 352 (9th Cir. 1995) (affirming "conclu[sion] that any sanction less than dismissal would be ineffective" given party's "continuous denials under oath" and party's "repeated violations of the court's Publicity Order," which required her to "refrain from 'engaging in out of court mail publicity communications that are designed to disparage'" the other party).[6]

## IV. CONCLUSION

Giarratano's repeated violations of the Court's Anonymity Order represent an extraordinary act of contempt. They are only the latest—and most egregious—in a long line of willful acts demonstrating that Giarratano believes the rules do not apply to him. They also demonstrate extreme bad faith: Giarratano disclosed the John Does' true identities to third parties not merely to expose and disparage them, but to jeopardize their futures. Indeed, Giarratano discussed undermining one John Doe's professional baseball career and mobilized others to subject another John Doe to NCAA scrutiny. And these are only the violations and retaliatory efforts exposed by the writings produced in this litigation—the full extent of Giarratano's efforts to violate the Order, disparage the John Does, and damage their reputations remains unknown. Plaintiffs therefore respectfully request that the Court find Giarratano in civil contempt of the Anonymity Order, and

---

[6] To the extent the Court determines default judgment is not the appropriate sanction, then at minimum Plaintiffs request an adverse inference against Giarratano's credibility at trial. His credibility is undermined by his violations of the Anonymity Order and demonstrated dishonesty about those violations. His initial denials, followed by admissions when confronted with documentary proof, establish more than inconsistencies in recollection: they reveal a willingness to deny established facts until confronted with evidence he cannot explain away. *See supra* Sections II.B-C. The factfinder should therefore assess his factual assertions in light of his demonstrated pattern of dishonesty. *See, e.g., Rockwood v. SKF USA Inc.*, No. 08-CV-168-JL, 2010 WL 3860414, at *9 (D.N.H. Sept. 30, 2010) (holding that "drawing an adverse inference against [party's] credibility as a witness, should he testify at any trial in this matter, is the appropriate sanction" following "a blatant violation of both the letter and the spirit of the order").

enter default judgment against Giarratano on all claims asserted against him as a sanction for his contempt and pursuant to the Court's inherent authority.

Dated: November 3, 2026

Respectfully submitted,

By: /s/ *Jonathan D. Selbin*
Jonathan Selbin (Cal. Bar No. 170222)
jselbin@lchb.com
Michelle Lamy (Cal. Bar No. 308174)
mlamy@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Jessica Moldovan (admitted *pro hac vice*)
jmoldovan@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Elizabeth A. Fegan (Cal. Bar #355906)
beth@feganscott.com
FEGAN SCOTT LLP
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100

Michael von Klemperer (admitted *pro hac vice*)
mike@feganscott.com
FEGAN SCOTT LLP
1763 Columbia Road NW, Suite 100
Washington, DC 20009
Telephone: (202) 921-0002
Facsimile: (312) 264-0100

Georgia Jaye Zacest (admitted *pro hac vice*)
georgia@feganscott.com
FEGAN SCOTT LLP
708 Main, 10th Floor
Houston, TX 77002
Telephone: (830) 212-4042
Facsimile: (312) 264-0100

*Attorneys for Plaintiffs John Does 1-6 and 8-19*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2026, I caused the foregoing document to be served by email upon counsel of record for all Parties listed in the service list below. I declare under penalty of perjury that the foregoing information in this Certificate of Service is true and correct.

By: *<u>/s/ Jonathan D. Selbin</u>*
Jonathan D. Selbin